```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA,         : Docket #23-mj-02007

                     Plaintiff,   :

     -against-                     :

YANPING WANG,                     : New York, New York
                                    March 22, 2023
                     Defendant.

--------------------------------:

                    PROCEEDINGS BEFORE
                 THE HONORABLE SARAH NETBURN
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:       UNITED STATES ATTORNEY'S OFFICE
                     SOUTHERN DISTRICT OF NEW YORK
                     BY:  JULIANA N. MURRAY, ESQ.
                          MICAH F. FERGENSON, ESQ.
                     1 St. Andrew's Plaza
                     New York, New York 10007


For Defendant:       LIPMAN LAW, PLLC
                     BY:  ALEX LIPMAN, ESQ.
                     147 W. 25th Street, 12th Floor
                     New York, New York 10001

For Defendant:       CHAUDHRYLAW, PLLC
                     BY:  PRIYA CHAUDHRY, ESQ.
                     147 W. 25th Street, 12th Floor
                     New York, New York 10001


Transcription Service: Marissa Mignano Transcription
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None    |        |       |           |          |

E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None           |             |    |    |           |

1

2          THE DEPUTY CLERK:  Your Honor, this is

3   matter of United States v. Yanping Wang.  Case is

4   number 23-mj-2007.

5          Starting with the Government, could you

6   please state your appearance for the record.

7          MS. MURRAY:  Good morning, Your Honor.

8   Juliana Murray and Micah Fergenson on behalf of the

9   United States.

10          THE COURT:  Thank you.

11          MR. LIPMAN:  Good morning, Your Honor.

12   Alex Lipman of Lipman Law PLLC and my colleague

13   Priya Chaudhry of ChaudhryLaw PLLC here for the

14   defendant, Yanping Wang.

15          THE COURT:  Thank you.  Ms. Wang, can you

16   sorry -- go ahead.

17          MS. CHAUDHRY:  The defendant is present

18   seated between us and being assisted by a Mandarin

19   interpreter.

20          THE COURT:  Thank you.

21          Ms. Wang, is your interpreter device

22   working okay?

23          THE DEFENDANT:  Yes.  It's okay.

24          THE COURT:  Okay.  If at any point you have

25   difficulty hearing through the interpreter, please

1    let us know.  Okay?

2              THE DEFENDANT:  Understood.

3              THE COURT:  All right.  So in preparation

4    for this proceeding, I've reviewed the pretrial

5    services report that was prepared about two weeks

6    ago, maybe a week ago, when the defendant was

7    initially here.  And I have the transcript from

8    March 15th when the defendant was presented before

9    Judge Parker, which I've reviewed.

10             I understand that Judge Parker set

11   conditions for the defendant's release, required

12   that the conditions be satisfied before she be

13   released.  And I understand that we are here

14   potentially for a Nebbia hearing.  Nobody has

15   submitted anything else to me, so I don't know

16   anything else than now what I've shared with you.

17             MS. MURRAY:  Yes, Your Honor.  So we

18   received a call last night from defense counsel,

19   yesterday evening.  They provided a number of

20   potential cosigners.  We've received documents for

21   five of those and interviewed four and had not

22   gotten to the point where we had two cosigners that

23   we approved.

24             So last evening, defense informed us that

25   they wanted what they referred to as a Nebbia

1   hearing.  I understood the defense was going to file

2   something for the Court overnight, but we just

3   notified arraignment and arranged for defendant to

4   be produced.  So I will leave it to defense what

5   they want to cover here today.

6              THE COURT:  Okay.  Can I ask you just to

7   move the microphone --

8              MR. LIPMAN:  I'm sorry.

9              THE COURT:  -- directly in front of you.

10              MR. LIPMAN:  Your Honor, the reason we are

11   here is because the Government has unreasonably, in

12   our view, refused to approve the cosigners we

13   proposed.  So, as the Government said, we gave them

14   more than five names.  We gave them something like

15   nine names, and they interviewed -- they have

16   documents for five.  They interviewed four.  They've

17   rejected all of them.

18              And the reason we're here is because we are

19   going to ask Your Honor to either approve the people

20   we've proposed or change the bail conditions in such

21   a way that Ms. Wang can satisfy the bail conditions

22   and be released.  So if I may just start before, as

23   an initial map, right, since Your Honor has reviewed

24   the pretrial report, Your Honor can see that the

25   pretrial recommendation is much more -- much less --

1          THE COURT:  Let me stop you for one second.

2          MR. LIPMAN:  Yeah.

3          THE COURT:  I'm not really inclined to

4   overrule my colleague who heard bail arguments and

5   set a bail condition.  So I'm not sure that's what I

6   want to do, if that's what you're asking me to do.

7   If you're asking me to consider the reasonableness

8   of the proposed sureters I understand under the law,

9   I can do that.

10          I don't know anything about what that

11  standard of review is, and I don't have any names or

12  documents, so I don't know that that's something I

13  can do from the bench.

14          MR. LIPMAN:  Well, Your Honor, let me set

15  the stage for this, and maybe that'll help.

16          THE COURT:  Okay.

17          MR. LIPMAN:  Ms. Wang is a political

18  refugee from China.  She is a part of a movement of

19  people who are opposing the Chinese Communist Party.

20  And it's a pretty big movement.  And because of her

21  participation in the movement as a very senior

22  person, she cannot return to China.  If she did, she

23  would be arrested at the airport and probably

24  executed within days.

25          So she's here.  She lost her family in

1     China.  Her husband was required to divorce her.

2     She has a son she hasn't seen in something like nine

3     years because she's not allowed to be in contact

4     with him.  Her father died without seeing her.  She

5     can't contact her brother anymore.  She used to, but

6     all of the family members have been arrested at one

7     point or another and told to cut off all contact

8     with her.  Okay?

9           So the only people with whom she has

10    contact are people who are part of this movement or

11    in some way related to the main defendant in this

12    case.  The Government is well aware of this.  When

13    we actually agreed to the $5 million bond and two

14    cosigners, when we did that we understood that the

15    Government understood, and we had a conversation

16    about it, that the people who would cosign for her

17    are not going to be family members.

18          Her only friends are people who are in this

19    circle, and they're willing to sign for her, and

20    they think that they have moral suasion over her.

21          THE COURT:  Sorry.  She's been living in

22    the United States since 2017; is that correct?

23          MR. LIPMAN:  She has.

24          THE COURT:  And in those six years, she

25    hasn't befriended anybody who's not within that

1    movement?

2         MR. LIPMAN:  What she does is she works,

3    and then she goes home, and then she works.  And her

4    entire life, during this entire time, has been

5    moving from her apartment to where she works and

6    back.  She actually -- the answer is that her entire

7    world is people -- people in this -- people in this

8    community.  We did have one person who is a very

9    well-known individual in the United States who is

10   not part of that -- is not Chinese, and he

11   volunteered to post a property worth two and a half

12   million dollars to secure her bond.

13        We proposed that if he were -- if he were

14   to do two and a half million dollars of his

15   property, and she confessed judgment on her

16   apartment, that's three and a half million dollars.

17   They have $130,000 in cash that they seized from her

18   apartment.  And then there is an account with

19   approximately, I want to say, 4- to 500,000 dollars

20   in it.

21        We proposed to put all of that together for

22   $4 million security for the bond and then so that

23   they could, you know, approve the people that they

24   had interviewed, and they refused.  So we are at a

25   point now where they won't approve the people we

1    proposed because they are either not connected to

2    her or too poor or connected with the main defendant

3    and that kind of short circumstance.  There's

4    nothing we can do.

5            THE COURT:  Sorry.  They rejected the

6    $2.5 million property from somebody else because

7    that person was not connected?

8            MR. LIPMAN:  No, not because he was not

9    connected.  He is a very well-known individual, and

10   he has his own legal problems.  He wasn't going to

11   cosign the bond.  He was just going to put up the

12   property to secure her bond, and they rejected him

13   because they said that he was a convicted felon,

14   which, frankly, that's not -- neither here nor

15   there.  There is no requirement that incapacitates

16   somebody who is convicted felon from securing

17   somebody else's bond.

18           THE COURT:  And that person was prepared to

19   basically hand over the deed to the Government?

20           MR. LIPMAN:  Correct, he was prepared to

21   confess judgment on his property.

22           Now, we now -- potentially, we might have

23   other people who might be willing to do something

24   like that, but the key issue here is this:  The

25   three people that they interviewed -- there are

1    three people they interviewed they have no issues

2    with, as far as I can tell, just as far as I can

3    tell.  And they won't approve them.

4          First, they told us that they won't approve

5    them because they don't have enough assets.  Okay?

6    So then we had subsequent conversations in which

7    they said, well, the other problem is that they are

8    too remote from her.  They don't have moral suasion

9    over her.  Well, they think that they do, which is

10   why they're doing this.

11         And, by the way, Your Honor, even if they

12   don't have the $5 million to stand behind this bond,

13   they are financially responsible people.  They would

14   be ruined if the bond -- she defaulted on the bond.

15   One of them is a lawyer.  We offered another lawyer

16   who is -- who is a -- we gave them the name.  They

17   didn't run it down because they told us straight

18   away that he won't work.

19         But we offered an IT professional -- I

20   think two IT professionals, if memory serves.

21         THE COURT:  Two what professionals?

22         MR. LIPMAN:  IT.

23         THE COURT:  IT.

24         MR. LIPMAN:  We offered -- they interviewed

25   one of the lawyers.  He is not rich now, but he does

1    have his own practice.  He is a financially

2    responsible person, and the bond is secured with a

3    confession judgment on her apartment.  She's going

4    to be at home with an ankle monitor.  She's confined

5    to her apartment.  She can't leave it unless she

6    comes to visit us.

7            How do we get out of this?

8            THE COURT:  Okay.  Let me hear from the

9    Government.  Thank you.

10           MS. MURRAY:  Your Honor, the Government's

11   view is that this proceeding is premature.  There is

12   a process for the Government to interview and

13   evaluate the qualifications of potential cosigners.

14   As Your Honor noted, a week ago, Judge Parker

15   imposed conditions, and she agreed with both the

16   Government and Pretrial that those conditions needed

17   to be met before Ms. Wang could be released.

18           One of those conditions was two qualified

19   cosigners on a $5 million bond.  The reason that

20   we're here today, as I understand, is because the

21   defense is unhappy with the Government's

22   determination that various of the names that they

23   provided are not qualified.

24           There are a couple of points I want to

25   make, and I don't want to get into the details of

1    the individual because Your Honor doesn't have the

2    information in front of you right now.  But as an

3    example, the individual who is willing to pledge the

4    2.2 million in property, defense never provided us

5    with the address for the property.  So we weren't

6    able to run it down to find out how much equity was

7    in the property, what was the mortgage, what was the

8    source of funds used for the property.

9         And that prominent individual who they said

10   owned the property is an individual who is very

11   involved in the fraud in this case.  And this is a

12   billion-dollar fraud that was spearheaded by an

13   individual known as Ho Wan Kwok or Miles Guo.  The

14   individual who was going to pledge the property has

15   been involved in several organizations that are

16   alleged to be instrumentalities of the fraud.  And

17   Ms. Wang is the chief of staff for Mr. Guo.  She

18   runs all of his companies.

19        A couple of the individuals, we did advise

20   defense counsel, we couldn't even in good faith

21   interview as potential cosigners.  One of the

22   lawyers that Mr. Lipman mentioned is the outside

23   counsel for three of the different entities that

24   operated this fraud scheme.  His law firm had an

25   escrow account that held tens of millions of dollars

1    of fraud scheme funds over the course of the charged

2    conspiracy.  That is not a person that we feel

3    comfortable, even if he has the financial means to

4    cosign a bond for the defendant.

5         We have expressed a willingness to work

6    with defense on potential cosigners, particularly in

7    light of their claims.  Which we understand that

8    Ms. Wang doesn't have family here, so the moral

9    suasion angle might be different.

10        But we can't be in a position where Judge

11   Parker made a very reasoned judgment on the facts,

12   and the Government agrees that in light of the

13   substantial flight risk that Ms. Wang creates, in

14   light of both her political asylum status, the

15   strength of the Government's evidence, the amount of

16   time she's facing, and her global network of Miles

17   Guo supporters who clearly are willing to put their

18   necks out and sign a bond, even though some of them

19   have only met her once or twice or only speak with

20   her a couple of times.

21        In light of that substantial flight risk,

22   we need to be assured that we have qualified

23   cosigners on this bond.  That's all we're doing.  It

24   is a process wherein for every cosigner that we

25   evaluate, we request information, we request

1    documents, we conduct an interview, we make an

2    evaluation, and we engage in dialogue.  And if we

3    think that person isn't qualified, we ask for

4    another name.

5          In this case, we have been given names in

6    the abstract without even having their documents.

7    Defense has pushed us to approve them in the

8    abstract.  With respect to the $2.2 million property

9    that they proposed would secure the bond, for

10   example, we received a call.  They said they had an

11   individual, didn't name the individual at first, who

12   would put up 2.2 million in property.  We asked for

13   the address.  They said, "We'll get it to you.  Will

14   you just agree in principle today?"

15         Your Honor, again, we have a process of

16   going through this, and we are not slow rolling this

17   by any stretch.  We have spent a substantial amount

18   of time in the last week running down each of the

19   names and interviewing the people that defense

20   counsel has brought before us.

21         If defense is in a position where they want

22   to argue that the Government's assessment is

23   unreasonable, then under the statute under 18 U.S.C.

24   3142(c)(1)(B)(xii), for the Court to approve or

25   determine the appropriateness of an unapproved

1   surety, the Court needs to have before it all of the

2   documents and assets and evidence underlying that

3   surety's financial situation because the standard is

4   that the Court can, on its own, approve that surety

5   if such surety has a net worth which has sufficient

6   unencumbered value to pay the amount of the bail

7   bond.

8        So we're happy to keep working with

9   defense.  We would like to do that to see if there

10  are potentially qualified cosigners.  But if we get

11  to a point where defense feels there aren't, the

12  next step would be for the defense to gather

13  together the supporting materials for proposed

14  cosigners, submit them to the Court, and then if the

15  court makes its own independent evaluation that

16  those people have $5 million in unencumbered assets

17  sufficient to support the bond, then I think their

18  application would appropriately be before the Court.

19       THE COURT:  Thank you.

20       MR. LIPMAN:  Your Honor, what the

21  Government just said, essentially, is this:  We

22  interview these people, make a judgment about

23  whether they're appropriate or not, but the only

24  questions that they need to actually answer are,

25  number one, is this a financially responsible

1      person, and, two, do they have moral suasion over

2      the defendant.

3              THE COURT:  But why wouldn't the assessment

4      of whether somebody was a financially responsible

5      person include the responsible part?  Meaning if,

6      for instance, the lawyer that you proposed is, in

7      the Government's light, at least involved on some

8      level with the fraud, even if that person has

9      assets, then that person is not responsible in the

10     Government's light.

11             MR. LIPMAN:  Well, that person --

12             THE COURT:  And so if you want to make an

13     application to the Court, that's one thing.  But

14     that's not an unreasonable position for the

15     Government to take.

16             MR. LIPMAN:  Your Honor, in that situation,

17     regardless of what the Government thinks he did or

18     didn't do, he would be on the hook for $5 million.

19     And the idea of a financially responsible person is

20     a little bit of an interesting question.  The people

21     that they refuse to -- they interviewed three

22     people, one a lawyer, two -- I think they're both IT

23     professionals.  They don't have a problem with those

24     issues -- with those people.

25             What they said to us is, these people don't

1   have enough assets.  Well, you know what?  They

2   don't have enough assets.  But if Ms. Wang were to

3   default on the bond, they would be in serious

4   financial troubles.  And they understand that.

5           THE COURT:  Right.  Unless they fled.

6           MR. LIPMAN:  But there's no -- even they do

7   not suggest that.  They're completely unrelated to

8   her or to the main defendant.  I mean, they are

9   people who know her and are willing to cosign a bond

10  for her, but even the Government doesn't claim

11  there's any issue with them, that they're going to

12  flee or anything like that.  One of them is a lawyer

13  practicing in Chicago.  He's not going anywhere,

14  Your Honor.  He's not making a ton of money, but

15  he's not going anywhere.

16          And one of them is an IT professional who's

17  actually not Chinese, and he's willing to cosign

18  bond.  Again, he's not a rich person, but his

19  financial life would be ruined if Ms. Wang were to

20  default on the bond.  And he understands that, and

21  he thinks that he's willing to sign.

22          And by the way, he spoke with his wife

23  before he agreed.  They both agreed to do so.  So

24  these people making serious, serious commitment,

25  they all understand what's going on.  They are

1    financially responsible.  They're not related to the

2    fraud in any way whatsoever.

3          THE COURT:  And so what relief are you

4    seeking today?

5          MR. LIPMAN:  What I'm asking the Court to

6    do is to do one of two things:  Either direct them

7    to accept the three people being interviewed with

8    whom they didn't have -- about whom they didn't

9    have -- they didn't have an issue with them other

10    than they told us that these people were not

11    sufficiently rich, or alternatively, that you alter

12    the bail conditions in such a way that we could

13    actually reasonably meet.

14          Because if the requirement is that somebody

15    cosigns a bond over who has moral suasion over

16    Ms. Wang, all of those people are in Mr. Guo's

17    orbit, and none of them are going to work.  Her best

18    friend is his daughter.  She can't sign.  She can

19    sign for other reasons, maybe, but she can't sign.

20    We proposed her.  They rejected him.  They have good

21    reasons for doing it -- or I don't know if they are

22    good reasons.  They say they have good reasons for

23    doing it.

24          But they rejected her best friend's

25    boyfriend as a cosigner.  They rejected another

1   person who works Mr. Guo as a cosigner.  We asked

2   them.  There are people who -- she was a senior

3   person in this organization.  She interacted with

4   several senior people.  We asked -- we gave them the

5   names, we said how about this person, that person.

6   No, no, no, because they're involved in the fraud or

7   they're involved in the movement or they're involved

8   in this, involved in that.

9         Well, what are we supposed to do?  We found

10   three people they interviewed who are financially

11   responsible, willing to sign, and did not even --

12   they don't claim are involved in defrauding anyone.

13         MS. MURRAY:  Your Honor, if I just may

14   briefly respond to that point.  I do want to note I

15   don't believe there's any issue that's ripe for the

16   Court at this point procedurally or under the law.

17   And I don't think that the first prong of relief

18   that Mr. Lipman suggested is appropriate, for the

19   Court to force the Government to approve cosigners.

20   That is not the legal standard.

21         The three individuals Mr. Lipman just

22   mentioned, I want to note, while we said we could

23   get comfortable with them as financially responsible

24   persons, all three of those individuals are victims

25   of the fraud.  They all invested in various of the

1    different fraudulent arms of this scheme.  The fact
2    that they are willing to sign a bond and they have
3    potential means to support some portion, by no
4    stretch, 5 million, but some portion of that bond is
5    independent of the other prong of the assessment,
6    which is moral suasion.
7             If they sign the bond, what influence do
8    they have over Ms. Wang appearing in future court
9    appearances to protect the assets and the $5 million
10   debt that could be imposed on people she and her
11   coconspirators have already victimized in the course
12   of this fraud?
13            We have valid bases to have not accepted
14   the cosigners who have been presented.  We have a
15   process for reviewing and approving cosigners.  And
16   if there are certain people the defense wants to
17   bring to the Court's attention, they need to provide
18   the supporting documentation and make an argument,
19   and the Court can make an independent investment.
20            THE COURT:  Okay.  I think --
21            MR. LIPMAN:  Your Honor, just very briefly,
22   these people understand what they're doing.  They're
23   members of a movement of people who are dissidents
24   and are opposing Chinese Government, communist
25   party.  Ms. Wang is a very well-known person.  They

1    know who she is.  They understand the allegations.

2    One of them specifically asked me, before he agreed

3    to do it, to send him the complaint, which I did.

4    And he took time to review the complaint before he

5    gave me permission to contact the Government.  Okay?

6            So they know what they're doing.  They

7    understand that the Government used them as victims.

8    They are prepared to sign.

9            THE COURT:  Okay.  I tend to agree with

10   Ms. Murray that there is not an issue before the

11   Court.  I'm certainly not going to direct people I

12   don't even know -- I haven't even had names, much

13   less any information.  I'm not going to direct the

14   Government to accept these miscellaneous John Does

15   as sureties.  That's not how this works.  And I

16   don't believe sufficient time has elapsed that

17   justifies revisiting Judge Parker's bail conditions.

18           What I'd like to do is, first, direct you,

19   Mr. Lipman.  It sounds like you haven't given all

20   the information to the Government specifically with

21   respect to this person who has property that they

22   might post.  You know, they need to do their job.  I

23   take Ms. Murray at her word that they are not slow

24   walking this.  They are making every effort to

25   locate somebody that the Government is comfortable

1   with.  But you do need to provide information so

2   that they can do their job too.  So you need to get

3   that information to the Government as soon as

4   possible.

5          I'd like to set a date for an appropriate

6   motion based on what you are proposing.  And I guess

7   the question, Mr. Lipman, is when do you want that

8   motion to be filed?  I think it does need to be

9   filed with supporting documents and all of the

10  information necessary, and I think it'll just be

11  assigned to the judge who's on duty here.  That

12  judge will need to review the information as well.

13         So I don't know how long it'll take you to

14  assemble the paperwork that you would need to

15  assemble to satisfy the Court that the person that

16  you're proposing that you allege the Government has

17  rejected is inadequate and the Court should order

18  the Government to accept that person.

19         So I want to give you enough time to make a

20  motion that's appropriate and supported, but also to

21  continue working with the Government, because I

22  don't hear the Government saying they don't see a

23  way out of this morass.  They just need additional

24  information.  And it may be as you began,

25  Mr. Lipman, you know, there's a million-dollar

1    property.  There's a 2.2, 2.5 million dollar

2    property of somebody else.  There's a half a million

3    dollars in a bank that's frozen.  It may be that the

4    Government can work with you to cobble something

5    together.

6              But, for instance, if you have a

7    $2.5 million house in the Hamptons that has $100,000

8    in equity in it, and the rest is owned by a bank,

9    then that's not going to be helpful for your client.

10   You need to get that information to the Government.

11   They just have no idea.

12             MR. LIPMAN:  Your Honor, just to be clear,

13   in the case of this famous individual, the

14   Government says they didn't provide us the

15   information.  They knew who it was, and the question

16   was not what the property was.  The question was

17   were they going to approve him at all.  And they

18   didn't.  They said -- they told us they ran it up

19   the flag pole, couldn't do it.

20             It wasn't because the property wasn't

21   appropriate that they turned it down.  It wasn't

22   because there was not enough equity in it.  It was

23   because they don't like who it is.  And the problem

24   that we have and the reason we are in this courtroom

25   today, Your Honor, is because their criteria keeps

```
 1    shifting.  First, there was an understanding, an
 2    explicit understanding -- I told them right away,
 3    look, there are no sisters.  There are no brothers.
 4    There are no aunts.  Okay?  It's going to be
 5    somebody else.
 6            They said, "All right; we understand that."
 7    So we gave them names.  These people are not rich
 8    enough.  Okay.  Now they're telling you that they
 9    also don't have moral suasion.  Well, you knew that
10    before when I first gave you the names.  I feel like
11    we're not getting anywhere because things are
12    shifting.  And I think what they're doing is they're
13    deliberately trying to keep her in in order to put
14    pressure on her so that she becomes their friends,
15    your Honor.  I think that's what's really going on
16    here.
17            Friday.  We'll file on Friday or tee it up
18    on Friday?
19            MS. CHAUDHRY:  We'll file on Friday.
20            MR. LIPMAN:  We can file on Friday, Your
21    Honor.
22            THE COURT:  Okay.
23            MR. LIPMAN:  And, Your Honor, we will
24    continue working with them, but at a minimum, it
25    would be helpful to us if the Court could at least
```

```
 1   admonish them to work with us in good faith.

 2            THE COURT:  I'm not going to admonish them

 3   because I don't believe that they are not working

 4   with you in good faith.  So I'm happy to have your

 5   application.  I hope nothing that's in the

 6   application is information that you haven't provided

 7   to the Government, because what I'm hearing from the

 8   Government, and I don't really need to get into the

 9   sandbox to figure out who's right or who's wrong

10   here, is that they haven't received all the

11   information that they need from you.  So I hope that

12   you continue to provide that to them.

13            I'll direct the Government to expeditiously

14   respond to the proposals and to make a good faith

15   assessment of those folks.  I'm not going to

16   admonish you that you haven't done that yet, but

17   that's certainly your obligation, and I expect you

18   to do so.  So this motion is going to be filed on

19   Friday.

20            When would the Government like to file its

21   opposition?

22            MR. FERGENSON:  Without knowing what this

23   motion is going to look like, Your Honor, it's a

24   little difficult to say.

25            THE COURT:  How about if you file it
```

1    Wednesday, and we set a conference for the following

2    Friday?

3            MR. FERGENSON:  That seems reasonable, Your

4    Honor.

5            THE COURT:  Okay.  So there's going to be

6    something filed on Friday, which is March 24th.

7    There's going to be an opposition filed on

8    Wednesday, which, if my calculation is right, is

9    March 29th.

10           Is that right, Ms. Fletcher?

11           THE DEPUTY CLERK:  That's right.

12           THE COURT:  And then I will work with, I

13    believe, Judge Lehrburger, who will be hearing this,

14    for a date for the conference, which will be held on

15    March 31st.

16           If between now and March 31st, the parties

17    are able to work this out, which is my hope, you

18    should obviously notify the Court as soon as

19    possible.  And I do think the parties can figure out

20    a way to come up with a resolution here for this

21    issue.  This is not the first time the Government

22    has faced complications of this sort, so I'm

23    confident you can figure something out.  But

24    obviously, if you can't, then the Court will see you

25    the following Friday.

```
 1                    All right.  Anything further?
 2                    MR. FERGENSON:  No, thank you, Your Honor.
 3                    MR. LIPMAN:  Thank you, Your Honor.
 4                    MS. CHAUDHRY:  Your Honor, did we have a
 5     time for next Friday?
 6                    THE COURT:  We don't.
 7                    MR. LIPMAN:  Okay.
 8                    THE COURT:  We'll set it once -- it's going
 9     to be Judge Lehrburger.
10                    MS. CHAUDHRY:  Thank you.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          C E R T I F I C A T E

2

3       I, Marissa Mignano, certify that the foregoing

4   transcript of proceedings in the case of

5   UNITED STATES v. YANPING WANG, Docket #23-mj-02007,

6   was prepared using digital transcription software and

7   is a true and accurate record of the proceedings.

8

9

10   Signature   _____

11                 Marissa Mignano

12

13   Date:      March 27, 2023

14

15

16

17

18

19

20

21

22

23

24

25