brownrudnick

STEPHEN R. COOK
direct dial: 949.752.7100
fax: 949.252.1514
scook@brownrudnick.com

April 19, 2023

**VIA ECF**
The Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**RE: *United States v. Kwok et al.*, Case No. 1:23-cr-00118 (AT)**

Dear Judge Torres,

This firm is counsel to defendant Ho Wan Kwok in the above captioned matter. We write to supplement Mr. Kwok's Application for Release on Bail Pending Trial (the "Application"). *See* Def. Mem. in Support of Mot. for Release on Bail Pending Trial (Mar. 31, 2023), ECF No. 24. As an initial matter, this Supplement responds to the Court's inquiry during the April 4, 2023 bail hearing (the "Bail Hearing") regarding the origins of a letter issued by the United Arab Emirates ("UAE") documenting Mr. Kwok's surrender of his UAE citizenship and passport. More importantly, this Supplement provides new information critical to the Court's bail determination that was not available until defense counsel became aware that on April 6, 2023, the U.S. District Court for the Eastern District of New York unsealed a criminal complaint charging 34 agents of the People's Republic of China in a transnational repression scheme to silence and harass Chinese dissidents, with Mr. Kwok designated "Victim-1."[1] *See* Compl. and Aff. in Support of Appl. for Arrest Warrants ("FBI Aff.") ¶¶ 89-108, *United States v. Yunpeng, et al.*, No. 1:23-mj-00334-SJB (E.D.N.Y. Apr. 6, 2023), ECF No. 2, attached hereto as Exhibit A. This Supplement addresses these two issues in greater detail below.

First, during the Bail Hearing, the Government claimed that Mr. Kwok has "at least three passports," from Vanuatu, Hong Kong, and the UAE. April 4, 2023 Bail Hr'g Tr. (Apr. 4, 2023) ("Tr.") at 7:17-18. That was both false and misleading—the Government knew at the Bail Hearing that Mr. Kwok did not have a Vanuatu or a Hong Kong passport because the Government had already seized them. The Government seized Mr. Kwok's *expired* Vanuatu passport, together with documentation reflecting Mr. Kwok's renunciation of his Vanuatu citizenship on March 15, 2023 during the execution of search warrants in this case. *See* Gov't Letter Resp. in Opp'n (Apr. 3, 2023) at 2-4, ECF No. 26. The Government seized Mr. Kwok's Hong Kong passport on March 15, 2023 while searching the residence of co-defendant Yanping Wang. *See id.* Concerning the UAE passport, counsel for Mr. Kwok explained at the Bail Hearing that this passport was surrendered to the UAE in connection with Mr. Kwok's asylum application in the

---

[1] Although the FBI Affidavit does not expressly identify Victim-1 as Mr. Kwok, the FBI Affidavit contains specific references to websites, videos, and verbatim threats directed at Mr. Kwok sufficient to identify him as Victim-1with near certainty. However, should there be any doubt concerning the identity of Victim-1, Mr. Kwok respectfully requests that the Court require the government to confirm or deny whether Mr. Kwok is Victim-1.





United States, and the undersigned proffered to the Court a letter dated April 11, 2018 from the UAE Office of Foreign Minister & International Cooperation confirming Mr. Kwok's renunciation of UAE citizenship. *See* Tr. at 20:20-21:15. The Court inquired of counsel concerning the authenticity of the letter and the source of the information concerning the surrendered passport. *See id.* at 32:19-33:21.

Attached hereto as Exhibit B is the Declaration of Victor X. Cerda, immigration counsel for Mr. Kwok. As Mr. Cerda explains, he personally surrendered Mr. Kwok's passport to a UAE government official in New York City on or about April 17, 2018. *See* Ex. B, Decl. of Victor X. Cerda ¶ 4. The UAE official then handed to Mr. Cerda the letter dated April 11, 2018 that counsel for Mr. Kwok proffered to the Court during the Bail Hearing. *See id.* ¶ 5. Attached as Exhibit 1 to Mr. Cerda's Declaration is a true and correct copy of that same letter. Following the Government's March 15, 2023 seizures, Mr. Kwok has no passports, expired or otherwise.

Second, in his Application and at the Bail Hearing, Mr. Kwok explained that unlike many other high-profile defendants that the Government believes have the resources to jump bail and flee abroad (nearly all of whom are nonetheless granted bail and dutifully make their court appearances), Mr. Kwok's unique circumstances make his flight from the United States impossible. As perhaps *the* most prominent and globally recognized leader of the anti-Chinese Communist Party ("CCP") and Chinese pro-democracy movement, Mr. Kwok has been subjected to a relentless barrage of threats, harassment, surveillance, and electronic hacking attempts. Mr. Kwok explained through counsel in his Application and at the Bail Hearing that the electronic equipment, devices, and security precautions that he employs are necessary to minimize his exposure to the CCP's relentless campaign of online and physical harassment and attacks. Being arrested in the vicinity of equipment necessary to thwart exceptional hacking efforts by agents of the CCP is not evidence of a criminal motive or flight risk as the Government wrongly suggests.

Nonetheless, the Government—at least the part of the U.S. Department of Justice that brought this case—continues to speak derisively about Mr. Kwok's "purported," "alleged" status as an anti-CCP activist, using the extraordinary electronic and physical security precautions Mr. Kwok has been required to adopt as evidence of Mr. Kwok's criminal malfeasance and risk of flight. The Government ignores the INTERPOL Red Notice issued by the CCP for Mr. Kwok, and the consequences of the Red Notice for Mr. Kwok should he attempt to travel abroad. The Government ignores the extraordinary and sophisticated propaganda and hacking campaign that has been directed against Mr. Kwok by the CCP since at least 2017. Moreover, the Government ignores the federal indictments and guilty pleas of political operatives, lobbyists, and even a senior DOJ official, all of whom infiltrated the United States government at the highest levels and took illegal payments in connection with a scheme orchestrated by the CCP to force Mr. Kwok's extradition to China. The declaration submitted by Mr. Kwok in connection with his bankruptcy case details the criminal conspiracy against him and appends copies of the Government's Criminal Information as to Republican National Committee chair Elliott Broidy,[2] Criminal Information as to lobbyist Nickie Lum Davis,[3] and Factual Basis for Plea as to U.S. Department of Justice lawyer George Higginbotham.[4] *See* Decl. of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions, *In re: How Wan Kwok*, No. 22-50073-JAM (Bankr. D. Conn. Mar. 20, 2022), ECF No. 107.

Now, undersigned counsel has become aware of *yet another* plot directed by the CCP to undermine Mr. Kwok and pressure United States law enforcement agencies to arrest or otherwise act against him—

---

[2] *See* Criminal Information, *United States v. Broidy*, No. 1:20-cr-00210 (D.D.C. Oct. 6, 2020), ECF No. 1.
[3] *See* Criminal Information, *United States v. Nickie Mali Lum Davis*, No. 1:20-cr-00068 (D. Haw. Aug. 17, 2020), ECF No. 1.
[4] *See* Factual Basis for Plea, *United States v. Higginbotham*, No. 1:18-cr-00343 (D.D.C. Nov. 30, 2018), ECF No. 13.





one that has been the subject of an ongoing investigation into CCP attacks on Chinese dissidents by the Eastern District of New York, the FBI, and the U.S. Department of Justice. On April 6, 2023, in a Complaint and Affidavit in Support of Application for Arrest Warrants ("FBI Affidavit"), a Special Agent with the FBI described in striking detail how Mr. Kwok, designated as "Victim-1", has been the victim of virtually every conceivable form of attack short of outright assassination by the CCP, in order to shut him up and to shut down his pro-democracy activities. The FBI Affidavit explains that:

1. The CCP "regard[s] political dissent as a national security threat and routinely monitor[s] and actively censor[s] political speech inconsistent with CCP-approved viewpoints . . . ." FBI Aff. ¶ 3.

2. The CCP's Ministry of Public Security ("MPS") "routinely monitors, among others, Chinese political dissidents who live in the United States . . . . The MPS regularly uses cooperative contacts both inside the PRC and around the world to influence, threaten and coerce political dissidents abroad. Indeed, ***I am aware that the PRC government has threatened and coerced Chinese political dissidents living in the United States in an effort to silence them.***" *Id.* ¶ 8 (emphasis added).

3. A task force within the MPS, defined in the FBI Affidavit as "the Group," "seeks to ***undermine the credibility of these [CCP] critics***" living in the United States and elsewhere. *Id.* ¶ 14 (emphasis added).

4. The Group was expressly tasked with creating and posting internet content targeting and maligning Mr. Kwok:

> ***A primary focus of the Group's harassment scheme*** is a critic of the CCP who fled the PRC and presently resides in New York City ("Victim-1"). ***Since at least 2017, Group members have sought to harass Victim-1*** through, among other means, anonymized social media accounts operated by the Group and by pressuring U.S. social media companies to remove Victim-1 and U.S.-based associates of Victim-1 from social media platforms. . . . [G]roup officers have a ***standing tasking requirement from MPS headquarters to post content targeting Victim-1***. Additional evidence uncovered during the investigation . . . indicates that a standing task requirement to target Victim-1 has existed since on or about December 2018 . . . ."

*Id.* ¶ 89 (emphasis added); *see also id.* ¶¶ 92-95, 96 (describing CCP propaganda attack on Mr. Kwok by accusing him of being "a fugitive who unscrupulously challenges U.S. laws on the Internet and accusing anyone giving Victim-1 money and public support as conspiring with Victim-1."); *see id.* ¶ 97.

5. Far from being limited to social media propaganda, the CCP's attacks against Mr. Kwok included attempts to incite and pressure U.S. law enforcement action against him, including criminal prosecution and/or forceful extradition to China. The CCP agents were tasked ***"to call on U.S. law enforcement to take prompt action against Victim-1***." *Id.* ¶ 99 (emphasis added). "Since Victim-1 fled the PRC, the PRC government has sought his/her return for prosecution in the PRC and has ***employed numerous methods to effect Victim-1's capture or arrest***. In May 2017, the PRC government sent several undeclared agents from the PRC's Ministry of





State Security ("MSS") to the United States to cause Victim-1's ***coerced repatriation*** to the PRC as part of the 'Fox Hunt' initiative. However, the U.S. government disrupted the PRC government's efforts to forcefully repatriate Victim-1, and Victim-1 continues to reside in the United States." *Id.* ¶ 90 (emphasis added).

6. The CCP creates false social media accounts in the names of purported U.S. residents with names including "Lacey Sutton," "Charlotte Gray," "Julie Torres," and "Stacey Altman." *Id.* ¶ 98. Those fake accounts then attack Mr. Kwok with English language comments, including "Why isn't [Mr. Kwok] in jail? What is the government doing?"; and "[Mr. Kwok] is a consummate swindler." *Id.* In September 2021, CCP agents uploaded a video (via fake social media accounts) with a caption stating that Mr. Kwok's "scams were exposed." *Id.* ¶ 100. Numerous CCP agents then commented on the video (using fake accounts), with statements including "[p]ity the people [Mr. Kwok] cheated," "[w]hat's new about [Mr. Kwok's] con," and "[Mr. Kwok's] running out of tricks." *Id.*; *see also id.* ¶ 101 ("cheat for money through various tricks," "the end of trickster [Victim-1]," "old [Victim-1] will lose everything for sure," "[Victim-1 supporters] wake up").

7. A primary goal of the CCP's attacks on Mr. Kwok has been to discredit Mr. Kwok. For example, a CCP agent tweeted: "I would like to ask all netizens not to be exploited by the media controlled rumors, gossip, and the rapist, plague ghost [Victim-1]! Plague Ghost [Victim-1] is the biggest 'national thief' on the internet." *Id.* ¶ 105.

8. CCP agents also infiltrated and disrupted events held by Chinese dissidents, or falsely accused them of violating the terms of service of social media platforms. *Id.* ¶¶ 109-11, 119-20.

As described in the FBI Affidavit, the FBI investigation provides confirmation of all of the threats, harassment, surveillance, and continuous electronic attacks that Mr. Kwok has experienced and that he described in his Application and at the Bail Hearing. Despite this, the Government bizarrely refuses to concede that since at least 2017 Mr. Kwok has been a primary focus of the CCP's disinformation and propaganda machine, and the victim of numerous attacks aimed at repatriating him to China, shutting down his dissent, or both. Other victims identified in the FBI Affidavit also described online and physical harassment by CCP agents but explained that, unlike Mr. Kwok, they did not suffer physical attacks *while in the United States*. *See, e.g.*, *id.* ¶ 150. Despite all of this, the Government implausibly maintains that Mr. Kwok presents a risk of flight.

Whether or not this case is evidence of the CCP's success in duping the Government into prosecuting Mr. Kwok—one of the CCP's known primary objectives—and whether the purported victims of the fraud alleged in the Superseding Indictment are in fact agents acting on behalf of the CCP will be decided at trial. However, the FBI Affidavit removes all doubt concerning the lengths to which the CCP will go to silence Mr. Kwok, one way or another. In the face of those threats, Mr. Kwok remained in the United States as the U.S. government's investigation swirled around him for the past year, and he will remain in the United States if he is released on bond. If, for no other reason, than because the risk to his life is simply too great for him to leave.

Nor can the Government point to Mr. Kwok's use of the electronics and electronic devices found during the execution of the search warrants as evidence that he is a flight risk. They are, as the FBI Affidavit makes clear, evidence of the extraordinary precautions Mr. Kwok was required to take to minimize CCP hacking and electronic harassment. The fact that the Government failed to mention the conclusions the FBI and the U.S. Attorney's Office for the Eastern District of New York made concerning





Mr. Kwok's status as a victim of CCP harassment, including hacking efforts, efforts to discredit him, efforts to prompt U.S. law enforcement action against him, and attempts to physically coerce him back to China, are inexcusable material omissions that are far too meaningful to ignore.

Mr. Kwok is not a flight risk. Indeed, his status as an enemy of the CCP has, perversely, ensured just the opposite. Moreover, Mr. Kwok's continued pre-trial incarceration, under near continuous lockdown and where he is subject to significant risk of grievous injury or death, makes it impossible for him to meaningfully participate in his own defense of this complex case. Accordingly, Mr. Kwok respectfully requests that the Court order his release on the conditions proposed in his Application.

Respectfully submitted,

**BROWN RUDNICK LLP**

Stephen R. Cook

cc: All counsel of record