USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/14/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

YANPING WANG,

Defendant.

23 Cr. 118-3 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Yanping Wang, appeals the detention order issued by the Honorable Robert W. Lehrburger on April 21, 2023 (the "Detention Order"), ECF No. 56. Appeal, ECF No. 81.[1] For the reasons stated below, the Detention Order is AFFIRMED.

I. Background

Pursuant to an indictment dated March 29, 2023, Wang is charged with: (1) conspiracy to commit wire fraud, securities fraud, bank fraud, and money laundering; (2) wire fraud; (3) securities fraud; and (4) unlawful monetary transactions. *E.g.*, Superseding Indictment ¶¶ 1–3, 5, 8, 10, 13, 26–36, 51–52, ECF No. 19. On March 15, 2023, Wang was presented before the Honorable Katharine H. Parker, and Judge Parker imposed conditions of bail to be satisfied before Wang's release. Detention Order at 5; ECF Nos. 3, 6. On March 24, 2023, Wang moved for an order finding that she had met her conditions of release, or, in the alternative, modifying some conditions of her release. ECF No. 8; Detention Order at 6–7. The Government argued that Wang had not fully disclosed her assets and misrepresented her employment status upon arrest, that she posed a serious risk of flight, and that she should be detained pending trial. Detention Order at 7–8; *see also* ECF Nos. 10, 22. Judge Lehrburger

[1] Wang styles her appeal as a "Motion for an Order Revoking the Magistrate Judge's Order of Detention and Authorizing Pretrial Release." ECF No. 81.

held a hearing on April 4, 2023, and requested additional information from the parties on April 10, 2023. ECF Nos. 28, 39. After receiving the requested information, Judge Lehrburger issued the Detention Order, finding that Wang had not satisfied her conditions of release, that the modified conditions proposed by Wang would not reasonably assure her presence at future proceedings, and that there are no conditions upon which Wang can be released that will reasonably assure her presence. Detention Order at 12; *see also id.* at 12–24.

Before the Court is Wang's June 5, 2023 appeal of the Detention Order, *see* Appeal, which has now been fully briefed by the parties, Gov. Opp., ECF No. 89; ECF No. 101.

II. Legal Standard

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Jones*, 566 F. Supp. 2d 288, 289–90 (S.D.N.Y. 2008). In reviewing such a decision, the district court "may rely on the record of the proceedings before the magistrate judge[.]" *United States v. Fox*, 602 F. Supp. 3d 434, 439 (W.D.N.Y. 2022) (citation omitted), *aff'd*, No. 22-1043, 2022 WL 2564600 (2d Cir. July 8, 2022).

Under the Bail Reform Act, a defendant shall be detained if "no condition or combination of conditions will reasonably assure the[ir] appearance . . . as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). A court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). The Government must prove by a preponderance of the evidence that the defendant presents an actual

risk of flight if released and that no condition or combination of conditions could be imposed on the defendant that would reasonably assure her presence in court. *United States v. Baig*, 536 F. App'x 91, 92 (2d Cir. 2013); *United States v. Sabhani*, 493 F.3d 63, 75 (2d Cir. 2007).

III. Analysis

The Court concludes that the Government has established by a preponderance of the evidence that Wang poses a serious risk of flight if released and that no condition or set of conditions can assure her presence at future proceedings. First, the offenses charged are serious and, if convicted, Wang faces a lengthy prison sentence of between 24 and 30 years. *See* ECF No. 10 at 2; Detention Order at 18. Wang argues that the allegations against her are "limited in scope and severity" compared to the charges against her co-conspirators, and that she did not personally benefit from the alleged fraud scheme identified in the Superseding Indictment. Appeal at 11–12 (emphases omitted), 15. But, she is charged with serving as a "chief of staff" for co-defendant Ho Wan Kwok; holding titles such as "President, Treasurer, and Secretary of entities" involved in the purported fraud scheme; and exercising control over fraud proceeds. Superseding Indictment ¶ 8; *see also id*. ¶¶ 10, 30–32. In other words, the Superseding Indictment charges Wang with playing a central role in an international, five-year-long scheme of fraud and concealment. Second, the Government has proffered extensive evidence in the form of financial records and recorded communications regarding Wang's role in the scheme. *See, e.g.*, Gov. Opp. at 16–27.

Third, Wang has no significant ties to the United States unconnected to the purported fraud scheme. Her family lives in China, and her social connections revolve around her work with the entities implicated in the charged fraud. Appeal at 19–21. Wang also has substantial

connections abroad, including a co-defendant, Kin Ming Je, who is still at large and believed to be in the United Arab Emirates. Gov. Opp. at 28. The entities involved in the alleged scheme, the finances of which Wang has access to and exercises control over, have accounts and offices in various countries. *See id.* at 28–30; *see generally* Superseding Indictment. And, Wang has a large network of supporters who are able and likely to provide assistance to her should she flee. Although Wang argues that this is "entirely speculative," Appeal at 16, several people involved in "the anti-[Chinese Communist Party] cause to which Wang is devoted" bare minimal personal ties to her and previously offered to serve as co-signers for her bond, Detention Order at 15; *see also id.* at 13–14. Her supporters have already offered to help her to the tune of millions of dollars. ECF No. 3 (listing bail package conditions). That they would continue to assist her were she to flee is far from speculative.

Wang contends that she is not likely to flee because she did not flee after learning that the Government began seizing funds from entities associated with her co-defendant, Kwok, or after learning about the grand jury investigation of Kwok. Appeal at 15. However, Wang states that, at that time, she understood that "criminal charges *may*" be filed against her. *Id.* (emphases in original omitted; emphasis added). Wang is now in a categorically different position; she is facing decades in prison and has been detained since March 15, 2023. She undoubtedly has more incentive to flee now than she did when the Government began seizing funds from Kwok's businesses. Wang also argues that she cannot flee internationally for fear of being repatriated to China. *See*, *e.g.*, *id.* at 17–18, 20. The question before the Court is not whether Wang will flee internationally, but whether the Court can be reasonably assured that Wang will appear at future proceedings. 18 U.S.C. § 3142(e)(1). The Court need not find that Wang is likely to flee

internationally in order to find that the Government has established that she is not likely to return for future proceedings. Because the Court finds that Wang is likely to flee within the United States, it shall not address Wang's arguments that she is unlikely to flee internationally—although, the Court notes that Wang herself states that she is willing to and has previously planned to travel internationally. *See* Appeal at 15.

Fourth, Wang has a history of engaging in obstructive behavior. In connection with her co-defendant Kwok's bankruptcy proceeding, Wang obstructed a bankruptcy court order directing her to transfer the corporate and economic rights of Kwok-associated entities to the bankruptcy trustee by instead transferring those rights to another of Kwok's associates in Switzerland. *See* ECF Nos. 89-2–89-5. After her arrest in this case, Wang continued directing co-conspirators to transfer funds from accounts associated with entities involved in the alleged fraud scheme. Gov. Opp. at 37–39. And, during her Pretrial Services interview in connection with this case, she failed to disclose $138,000 in cash. *E.g.*, Detention Order at 21. Wang argues that she believed Pretrial Services only asked whether she had cash on her person at the time of arrest. Appeal at 28–32. However, notes taken by defense counsel during the interview with Pretrial Services belie Wang's argument, because they show that Pretrial Services asked various questions about Wang's assets, including her checking and savings accounts, business accounts, retirement funds, stocks and bonds, real and other property, loans, debt, and expenses. *See* ECF No. 81-15 at 4. It strains credulity that, when Pretrial Services inquired about the assets Wang had at her disposal, Wang believed that Pretrial Services was asking only whether she had cash on her person, and that she did not understand that $138,000 in cash would be a relevant disclosure. Given her previous obstruction of a court order, her continuing control over funds

belonging to entities involved in the alleged fraud scheme in this case, and her failure to disclose assets, the Court has no reasonable assurance that Wang will abide by this Court's orders.

For these reasons, the Court finds that the Government has met its burden of showing that Wang poses a serious risk of flight.

Moreover, the Court determines that the Government has met its burden to show that no condition or set of conditions would ensure Wang's return to court. Wang's proposed bail package is insufficient. She has proposed: (1) "[a] $2 million personal recognizance bond, secured by $1 million in property, one of her bank accounts, and $138,000 in cash"; (2) restrictions on withdrawals from her other bank account; (3) "restricted [travel] to the Eastern and Southern Districts of New York"; (4) "[s]urrender of all travel documents with no new applications"; (5) "[s]trict supervision by [Pretrial Services]"; (6) "[l]ocation monitoring technology"; (7) "[h]ome confinement with GPS monitoring"; (8) "[n]o contact with co-defendants, witnesses, or purported victims without attorneys present"; and (9) "[h]ome monitoring by a friend who will live with her and will be responsible for reporting any violations." Appeal at 2–3. The proposed bond is insufficient, as Wang's assets may be subject to forfeiture, Gov. Opp. at 39, 41, and the Government has shown by a preponderance of the evidence that Wang has access to undisclosed assets, including bank accounts associated with the entities involved in the charged fraud scheme. For the same reason, restrictions on withdrawals from Wang's personal account are insufficient to ensure her return to Court. Surrender of travel documents is inadequate because, as previously noted, Wang need not flee internationally in order to avoid returning to court. Location monitoring is inadequate because ankle monitors can be removed and ensure only a reduced head start should a defendant decide to flee. *See United*

*States v. Freeman*, No. 21 Cr. 88 (S.D.N.Y.), Bail Hr'g 5:4-6, Feb. 19, 2021. ECF No. 50 ("Anyone who knows the technology of electronic monitoring knows that it is far from foolproof."); *United States v. Zarger*, No. 00 Cr. 773, 2000 WL 1134364, at *1 (E.D.N.Y. Aug. 4, 2000) (stating that electronic monitoring "at best . . . limits a fleeing defendant's head start"). Further, having a friend of Wang's be responsible for reporting violations is patently unreliable, especially given that all of Wang's social connections are with people involved in the charged fraud scheme. And, Wang's past obstructive conduct in this case and in Kwok's bankruptcy proceeding demonstrate that the Court does not have reasonable assurance that Wang will abide by any conditions of pretrial release.

Finally, the Court is not persuaded by Wang's due process arguments. Appeal at 38–39. Wang's continued pretrial detainment will not deny her the ability to meaningfully participate in her own defense, the right to the effective assistance of counsel, or a fair trial.

Accordingly, the Court AFFIRMS the Detention Order.

**CONCLUSION**

For the reasons stated above, the Detention Order is AFFIRMED. The Clerk of Court is directed to terminate the motion at ECF No. 81.

SO ORDERED.

Dated: July 14, 2023
New York, New York

ANALISA TORRES
United States District Judge