

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 18, 2023

**VIA ECF and Email**
Hon. Analisa Torres
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:   *United States v. Yanping Wang, a/k/a "Yvette,"* S1 23 Cr. 118 (AT)

Dear Judge Torres:

    The Government respectfully writes in response to the Court's order and email, dated August 11, 2023. (Dkt. 126.)

### I. *Ex Parte* Submissions Are Appropriate to Protect the Government's Confidential Information

    As an initial matter, after the Government filed its motion to disqualify Emil Bove ("Bove") on August 4, 2023 (Dkt. 120), Bove requested that the Government share with him additional material that had been redacted in the Government's filing. Following a dialogue, the Government underacted additional portions of its moving brief and provided it to Bove.[1] During those discussions, Bove stated that he was "not challenging [the Government's] determination [that *ex parte* materials contain confidential information] or seeking access to those details." (Email from E. Bove, dated August 5, 2023.) The Government does not read Bove's motion to seek access to the *ex parte* material.

    The submission of portions of the Government's motion papers and affidavits on an *ex parte* basis is warranted because they contain confidential information relating to, among other things, the Government's ongoing investigation, subjects of that investigation, and the Government's privileged work product, including its current assessments of defense, and Government, trial strategy. (*See, e.g.,* Gov't Br. at 22 & n.13; Reply (Dkt. 125) at 4-5, 6, & n.4.) These are valid reasons to prohibit defense access to this material. *Ex parte* submissions are appropriate when a submission contains information relating to ongoing investigations. *United States v. Loera*, No. 9 Cr. 466 (BMC), 2017 WL 2821546, at *2 (E.D.N.Y. June 29, 2017)

---

[1] The version of the August 4, 2023 motion provided to Bove is being submitted to the Court via email, as well as the exhibits provided to Bove, along with this letter. In that version, the Government made available to Bove (a) the text on pages 3 and 4 (which describes facts including information that was contained in the Warrants); (b) a portion of the text on page 5 (which describes the general scope of the TIN Matter AUSAs' substantive interactions with Bove in his supervisory role); and (c) the majority of the text in footnote 7 (which describes certain factual information about Mei Guo).

(collecting cases); *see also United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013) (*ex parte* communications are permitted where "there are ongoing investigations into criminal conduct related to the discovery materials"); *United States v. Paloscio*, No. 99 Cr. 1199 (LMM), 2002 WL 1585835, at *3 (S.D.N.Y. July 17, 2002). Information regarding the Government's legal theories, mental impressions, thought processes, and predictions of trial strategy is protected by the work-product doctrine, which prohibits "unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor,* 329 U.S. 495, 510, (1947); *accord In re Grand Jury,* 138 F.3d 978, 980 (3d Cir. 1998); *United States v. Nobles*, 422 U.S. 225, 238 & n. 12, (1975); *In re Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992).

The appearance of a conflicted attorney does not require a former client to divulge confidential information when seeking disqualification. *See* N.Y. Rules of Prof'l Conduct 1.9, cmt. 3 ("A former client [*i.e.*, the Government] is not required to reveal the confidential information learned by the lawyer [*i.e.*, Bove] in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter."); *see, e.g.*, *Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132, 138 (S.D.N.Y. 1995) (finding, in a disqualification motion, that a party may submit information *ex parte* to protect confidential information). Proceeding partially *ex parte* here is particularly appropriate given Bove's apparent lack of recollection. (Bove Decl. ¶ 11 (Dkt. 120-1) (Bove does "not recall the substance of [ ] conversations"), *id.* ¶ 12 ("not recall" the email communications in Exhibits A, B, and C). It would be self-defeating to disclose to Bove the *ex parte* portions of the Government's submissions that establish Bove's access to such privileged and confidential information during his Government employment. Giving Bove the *ex parte* submissions would risk refreshing Bove's memories regarding the scope of his personal and substantial involvement in the TIN Matter, which included his own mental impressions that he formed based on confidential government information to which he was privy, and his views on the status and direction of the Government's investigation. Further, were the Court to deny the Government's motion to disqualify Bove, and its request to consider certain materials *ex parte*, Bove would then be in possession of the Government's confidential information, including as relates to its trial strategy, which he could use to unfairly advantage Wang. (*See, e.g.,* Gov't Br. at 22 & n.13; Reply at 4-5, 6, & n.4.)

In his Sur-Reply, Bove quotes to various news articles relating to Guo and contends that "information in the prosecutors' holdings" that "correspond[s]" to the subject matter of such articles is not privileged under the *Evans* test. (Sur-Reply at 6-7 (ECF No. 127).) Bove is wrong. Open-source information in media reports does not constitute a broad waiver of the Government's privileges regarding any topic on which the media chooses to report. The *Government* did not publicly disclose nor confirm its confidential information; it has not, for example, ███████████████████████████████████████████████ The Government has maintained its privileges, and it continues to do so through its *ex parte* submissions.

II.  **Bove Knows Confidential Information From the TIN Matter That Would Create A Conflict In His Proposed Representation of Defendant Wang**

As an initial matter, the Government "is not required to make a specific showing that confidences were passed to [Bove]. Instead, once establishing there is a "substantial relationship" between the prior representation and the instant matter, the [Government] is entitled to the benefit of an irrebuttable presumption that confidences were shared." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 240 (2d Cir. 2016). The first question, then, is whether there is a "substantial

relationship between the representations." *Prevezon*, 839 F.3d at 238. There is, for all the reasons the Government articulated in its prior briefing. (*See* Govt. Br. at 20-24; Reply at 9-11.)

The overlap between the matters is also demonstrated by how the trial in this matter may proceed. ███████████████████████████████████████████████████████████████ Bove offers that the Court could "fashion protective measures" if there are concerns about his cross-examining witnesses. (Sur-Reply at 10.) This proposal is a tacit concession of potential future factual overlap and an acknowledgement of a potential conflict concerning Bove's representation of Wang. If the Court does not disqualify Bove, the Court may very well have to wrestle with thorny issues during trial, including the possibility that, on the eve of trial, issues may arise from Bove's prior representation of the United States in the TIN Matter that might restrict Bove's ability to defend his client beyond what is waivable. *See United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002). It is not clear what "protective measures" Bove has in mind, but it is clear that Bove's representation of Wang poses a difficult problem with much uncertainty, the dimensions of which will linger throughout his representation if he is not disqualified.

As noted, once a substantial relationship has been established—as it has here—the Government is entitled to an irrebuttable presumption that confidential information has been shared and need make no showing regarding specific confidential or privileged information accessed by the lawyer. Nonetheless, the Government has provided the Court ample evidence, including through affidavits submitted today and the classified supplement previously submitted, which demonstrates Bove knew and had access to confidential information while supervising the TIN Matter, including:

- Bove was a Co-Chief of TIN and, in that role, supervised the TIN Matter from at least in or about October 2019 through December 2021. (*E.g.* Ravener Aff. at ¶¶ 7, 14; Hanft Aff. at ¶¶ 8, 12; McEnany Aff. at ¶ 6; Gov't Ex. D.)

- The Office considers all "unit chiefs as having in fact participated personally and substantially in every matter within the chief's unit: that [is] their job." (McEnany Aff. at ¶ 5.)

- The TIN AUSAs updated Bove regarding the status of the TIN Matter. Those updates included █████████████████████████████ (Ravener Aff. at ¶¶ 7, 9, 11, 15(a); Hanft Aff. at ¶¶ 11(a), 11(b); Gov't Ex. G.)

- The TIN AUSAs' discussions with Bove included discussions about the status of the search warrant return review, which continued through at least in or about July 2020. (Ravener Aff. at ¶ 8, 9, 15(b); Hanft Aff. at ¶ 11(a); Gov't Exs. B, G.)

- Bove provided advice to the TIN AUSAs, including regarding ████████████ ████████████████████████ (Ravener Aff. at ¶¶ 9, 10; Hanft Aff. at ¶ 10.)

- Bove discussed the ▓▓▓▓ issue with the TIN AUSAs and provided strategic guidance, including ▓▓▓▓ (Ravener Aff. at ¶ 13; Hanft Aff. at ¶ 10.)

- Bove knew that Guo ▓▓▓▓ and Bove formed an opinion—which he expressed to the Office's management—that ▓▓▓▓. (Ravener Aff. at ¶ 15(b); Gov't Ex. B.)

- Bove ▓▓▓▓ was aware that Guo was also implicated in the CFU investigation. (Ravener Aff. at ¶¶ 12, 15(c), 15(d); Gov't Exs. B, C, H.)

Notably, in his Sur-Reply, Bove did not challenge the Government's assertion that "accepting Bove's arguments would require the conclusion that Bove would also be permitted to represent Kwok under the applicable Rules of Professional Conduct and the *Evans* test." (Reply at 6.) Bove's silence on that point speaks volumes. Instead, Bove attempts to distance his client from Kwok, who was the focus of the TIN Matter. (*See* Sur-Reply at 9 ("Regardless of Mr. Kwok's investigative status in the TIN Matter, my client is Ms. Wang.").) That attempt necessarily fails. For one, Wang was Kwok's chief-of-staff, who was intimately involved in virtually all aspects of Kwok's life and work for *years*. For another, Wang and Kwok have entered into a joint defense agreement. (Reply at 6; Gov't Ex. E (Dkt. 125-1) (Email from Bove "setting up a joint defense meeting").) The Government has carried its burden to demonstrate that a substantial relationship exists and that Bove's representation of Wang creates an actual conflict.

### III. Response to Bove's Sur-Reply

Leave to file a further response is "subject to the sound discretion of the court." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20 CIV. 10832 (AT), 2022 WL 329211, at *3 (S.D.N.Y. Feb. 3, 2022) (granting leave to file sur-reply to address issues raised for the first-time in a reply brief); *Newton v. City of New York*, 738 F. Supp. 2d 397, 417 n.11 (S.D.N.Y. 2010) ("courts have broad discretion to consider arguments in a sur-reply"). The Government requests that the Court consider the following response to Bove's Sur-Reply, which it believes responds to new arguments raised by Bove, and because it may be helpful to the Court's consideration of the motion. *See Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc.*, No. 19 Civ. 3351 (VEC) (RWL), 2021 WL 4312579, at *6 (S.D.N.Y. July 16, 2021) (subsequent history omitted) (considering unsolicited sur-reply and a response to it where "helpful" to the court's consideration of issues); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, No. 11 CIV. 6804 PAE, 2012 WL 32352, at *1 (S.D.N.Y. Jan. 6, 2012) (considering sur-reply which "provides a helpful response" to arguments at issue).

#### A. *Prevezon* is Binding Precedent and the Court Must Apply It

Bove overlooks that the Second Circuit's 2016 decision in *United States v. Prevezon Holdings Ltd.* is binding precedent and asks this Court to ignore its teachings in favor of *Gov't of India v. Cook Indus., Inc.*, which was decided 44 years ago. The *Prevzon* court was explicit that

it was providing "guidance to the district courts" how to apply the *Evans* factors and, in so doing, cited and considered *Cook Industries*.[2] 839 F.3d 227, 238 (2d Cir. 2016). Bove erects a strawman to argue that *Cook Industries* was not overruled. (Sur-Reply at 10.) The Government never suggested that it was. But *Prevezon* is the Second Circuit's binding interpretation of the intersection between *Evans* (decided in 1983) and *Cook Industries* (decided in 1978), as well as subsequent authorities. *Prevezon* is the instruction manual for how courts in this Circuit must consider disqualification motions, and its guidance is binding on this Court.

The Judge Rakoff opinion cited by Bove actually underscores that this Court must follow *Prevezon*. In his Sur-Reply, Bove relied on the August 10, 2023 decision by Judge Rakoff in *Jackson Hole Burger* to support the proposition that courts follow the tests as explained in *Cook Industries*. (Sur-Reply at 10.) But *Jackson Hole Burger* does not cite *Cook Industries* at all. *Jackson Hole Burger* applies the *Evans* test, and in so doing, quotes, cites to, and applies the binding Second Circuit precedent of *Prevezon*. *Jackson Hole Burger, Inc. v. Est. of Galekovic*, No. 23-Cv-04922 (JSR), 2023 WL 5112925, at *3 (S.D.N.Y. Aug. 10, 2023) ("'A substantial relationship exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation.'" (quoting *Prevezon Holdings*, 839 F.3d at 239)).[3]

It is also meritless for Bove to claim that *Prevezon's* application should be limited to civil cases. Courts in this Circuit (as they are required to do) have applied *Prevezon* to criminal disqualifications motions. *See e.g.*, *United States v. Huawei Techs. Co.*, No. 18CR457S2AMD, 2020 WL 903007, at *3 (E.D.N.Y. Feb. 25, 2020) (disqualifying former Government employee in a criminal case); *United States v. DiScala*, No. 14-Cr-399 (ENV), 2017 WL 6623985, at *5 (E.D.N.Y. Dec. 28, 2017) (disqualifying a defendant's attorney in a criminal case and declining to hold a *Curcio* hearing). Further evidence that *Prevezon* applies in criminal matters is the opinion itself, which cites at least four criminal cases in its analysis.[4] Bove's attacks against *Prevezon* appear to acknowledge that applying it here (which the Court must) disqualifies Bove, because "facts pertinent to the problems underlying the prior representation are relevant to the subsequent

---

[2] In prior submissions, the Government referred to this case as "Gov't of India," whereas Bove has referred to it as "Cook Industries."

[3] Judge Rakoff also quotes *Prevezon* for the proposition (which is also binding on this Court) that, "[o]nce a substantial relationship between the cases is established, 'where the same individual lawyer participated in the prior and current representation, . . . the movant is entitled to the benefit of an irrebuttable presumption that confidences were shared.' Given this irrebuttable presumption, plaintiff's evidence that confidences were not shared is irrelevant." *Id.* at *4 (quoting *Prevezon Holdings*, 839 F.3d at 240). Thus, Bove's claims that he does not recall the TIN Matter, that there is an insufficient "inference" of access to privileged information, and that material submitted to the Court *ex parte* is worthy of lesser consideration, should be summarily dismissed. (Sur-Reply at 11; *see also* Gov't Br. at 24; Reply 7-9.)

[4] *Prevezon Holdings*, 839 F.3d at 239 (citing *United States v. James*, 708 F.2d 40 (2d Cir. 1983) (affirming district court's disqualification of defense counsel)); *id.* at 242 (citing *United States v. Gordon*, 334 F.Supp.2d 581, 597 (D. Del. 2004) (disqualifying defense counsel); *United States v. Fawell*, No. 02-Cr-210, 2002 WL 1284388, at *7-*8, *11 (N.D. Ill. June 10, 2002) (disqualifying defense counsel); *United States v. Alex*, 788 F.Supp. 359, 365 (N.D. Ill. 1992) (disqualifying defense counsel)).

representation." *Prevezon*, 839 F.3d at 239 (quotation and citation omitted). That is unquestionably the case here.

### B. Bove's Personal Participation in the Prior Matter was Substantial

Bove offers that he stands by his *Nejad* declaration where he confirmed that, as a supervisor, he "necessarily share[s] responsibility for any failures" concerning "discovery and disclosure issues." (Gov't Ex. F (Bove Decl.); *see* Sur-Reply at 5).) It is incredible for Bove to now claim that, after a search warrant is executed (resulting in the seizure of more than a hundred devices, some of which ███████████████████████), there are no other significant steps in an investigation—such as, for example, review and analysis of the materials seized during the search. (Sur-Reply at 5.) The execution of the search warrants and collection of voluminous evidence was not the end of the TIN Matter—it was just the beginning, and it required ongoing supervision, including by Bove. (Ravener Aff. at ¶¶ 7, 8, 9, 14, 15(b); Hanft Aff. at ¶¶ 8, 11, 12; Gov't Ex. G.)

### IV. Conclusion

Bove's claims that the Government is on a "campaign" or a "mission," or engaged in a "pursuit" toward "an unconstitutional objective," is a distraction. (Sur-Reply at 1, 3, 4.) To be clear, this motion was made because Government employment is not an opportunity for individuals to access, and then exploit, confidences learned while in public service to serve their interests in the private sector. Public service is a public good; public servants must be responsible for upholding the public's trust. Through its motion, the Government asks this Court to adhere to those principles and, consistent with the rules of professional responsibility, post-Government employment statutory restrictions, and controlling precedent, protect the integrity of this matter.

For the reasons stated above and in the Government's prior submissions, Bove should be disqualified from this matter.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: *Juliana Murray*
Juliana N. Murray
Ryan B. Finkel
Micah F. Fergenson
Assistant United States Attorneys
(212) 637-2314 / 6612 / 2190

Cc: All Counsel of Record (by ECF)