# Exhibit 3

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| Debtor.[1] | : | |

**MOTION OF CHAPTER 11 TRUSTEE FOR ENTRY OF ORDER UNDER BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1 AUTHORIZING EXAMINATION OF HO WAN KWOK AND PRODUCTION OF DOCUMENTS**

Luc Despins, as the appointed Chapter 11 Trustee to the Debtor's estate (the "Trustee"), by and through his proposed undersigned counsel, Paul Hastings LLP, pursuant to Federal Rule of Bankruptcy Procedure 2004(a) (the "Bankruptcy Rules") and Local Bankruptcy Rule 2004-1 (the "Local Rules"), hereby applies (the "Application" or "Motion") to conduct the examination of Ho Wan Kwok ("Debtor"), in the above-captioned chapter 11 case (the "Case"). **Please take notice that the deadline to object to this Application is August 5, 2022, and in the absence of a timely filed objection, the proposed order filed herewith (the "Proposed Order") may enter without further notice and hearing.** In support of his Application, the Trustee respectfully states as follows:

[1] Although the Debtor's legal name is Ho Wan Kwok, he is also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases. The last four digits of the Debtor's taxpayer identification number are 9595.

**PRELIMINARY STATEMENT**

1. In authorizing the appointment of a chapter 11 trustee, the Court recognized that one of the trustee's key objectives would be to conduct an "effective investigation of the Debtor's assets, liabilities, and financial affairs." (*See* ECF. No. 465, at 14, hereinafter referred to as the "Trustee Order"). Such an investigation is imperative in this case to explore, among other things, the glaring inconsistency between the Debtor's assertion in his schedules that he owns assets valued at only $3,850 and the fact that he nevertheless has access to significant funds and resources, including for the purpose of paying his counsel in this case, and has for years lived a lavish and luxurious lifestyle as a self-proclaimed billionaire. The Trustee needs to conduct, as expeditiously as possible, an extensive, comprehensive investigation into the Debtor's financial affairs to determine whether, despite the contents of his schedules, there may be significant assets—in the form of real and personal property, equity ownership in other legal entities, litigation claims, and other property interests—that constitute property of the estate.

2. This Motion for Rule 2004 discovery—which is one of several the Trustee intends to file at the outset of his investigation—seeks an examination of the Debtor and the production of documents that could relate to potential assets of the estate. The New York Supreme Court has already determined that the Debtor has engaged in efforts to hide his wealth through a network of shell companies and otherwise, and numerous news reports and other evidence support this conclusion. Good cause therefore exists for the Trustee to seek extensive documents and testimony from the Debtor regarding his assets and affairs, including without limitation his sources of income and funding, his relationships with various affiliated entities and parties, and his business interests across the world. The Trustee respectfully requests entry of an order in the form set forth in **Exhibit A** hereto authorizing such an investigation.

**PROCEDURAL POSTURE**

3.      On March 19, 2022 the United States Trustee filed a Motion for an Order Directing the Appointment of an Examiner or, in the alternative, a Motion for Order Directing the Appointment of a Chapter 11 Trustee. (*See* ECF No. 102).

4.      On April 6, 2022, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") filed a Motion to Dismiss Chapter 11 Case, or in the alternative, Joinder to the United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee. (*See* ECF No. 183).

5.      On June 15, 2022, this Court issued the Trustee Order.

6.      The Trustee Order held, in relevant part that, "[w]hen balanced against dismissal or conversion, the complexity of the Debtor's financial affairs and lack of independent managerial oversight in this case warrants the appointment of a Chapter 11 trustee who can investigate, identify, and locate the Debtor's assets for the benefit of creditors and the estate" and further held that "[t]he Chapter 11 trustee shall perform all of the duties set forth in 11 U.S.C. § 1106." (*See id.* at 15-16, 18).

7.      The Trustee Order further held that "[t]he appointment of a Chapter 11 trustee will also allow for the effective investigation of the Debtor's assets, liabilities, and financial affairs" and "allow[] the Chapter 11 trustee to investigate the Debtor's assets, liabilities, and financial affairs and to ensure compliance with the provisions of the Stipulated Order." (*See id.* at 14, 18).

8.      On July 7, 2022, a Notice of Appointment of Chapter 11 Trustee was filed by the Office of the United States Trustee appointing Luc Despins as Chapter 11 Trustee of the Debtor's estate. (*See* ECF No. 514).

# FACTUAL BACKGROUND

## I. Petition and Debtor's Schedules

9. On February 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

10. The Debtor's schedules list aggregate unsecured claims in the amount of approximately $374 million (*See* ECF No. 78, at 1, hereinafter referred to as the "Debtor's Schedules"). The asserted $254 million claim of PAX is the largest single claim identified among the Debtor's scheduled unsecured claims. (*See id.*, Attached Schedule F). The Debtor's Schedules also list a secured claim in an unknown amount purportedly belonging to Golden Spring (New York) Ltd. ("Golden Spring"), an entity purportedly owned by the Debtor's son, Qiang Guo (the "Son" or "Qiang"), allegedly secured by "[c]ertain claims and recoveries thereto," and asserted to have arisen in connection with a "Litigation Funding Agreement." (*See id.*, Attached Schedule D).

11. Despite evidence from prior proceedings demonstrating the Debtor's lavish lifestyle and luxurious accommodations, the Debtor's Schedules list assets of only $3,850.[2] (*See id.* at 3-7). The Debtor contends that he earns no income, and that his expenses are paid for by Golden Spring (*See id.* at 1; *see also* ECF No. 107 at ¶17, hereinafter referred to as the "Debtor's Declaration").

## II. Potential Assets Owned or Controlled by Debtor Not Identified in Schedules

12. Despite the Debtor's contentions in his Schedules, reports suggest he may own and control significant real and personal property assets in New York and Connecticut, among other locations, the title of which is held by business entities affiliated with the Debtor. Reports further suggest that the Debtor also has a financial interest in myriad for-profit and purported not-for profit

[2] The Debtor has scheduled certain assets with unknown values, including disputed unregistered copyrights and litigation claims. (*See id.*, at 6).

entities. The Debtor has been found to display a pattern of manipulating ownership among those various business entities to hide assets, especially through entities owned by family members. (*See* Decision + Order on Motion, *Pacific Alliance Asia Opportunity Fund L.P. v. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Feb. 9, 2022), at 1, hereinafter referred to as the "Final Contempt Order" (finding that Debtor engaged "in efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members" and had "secreted his assets in a maze of corporate entities and with family members.")).[3]

***a. Controlled Related Entities***

13. Although a thorough investigation is necessary to identify all the various entities over which the Debtor may have ownership or control, the Trustee has reason to believe, based on publicly available information, including findings by other courts, that the Debtor has an extensive network of shell companies he uses to pursue business interests and store his wealth.

14. For example, in June 2021, a $1 million dollar judgment was awarded to Eastern Profit Corporation Limited ("Eastern Profit"), an entity allegedly controlled by the Debtor's daughter, Mei Guo ("Daughter" or "Mei"), in a breach of contract action against Strategic Vision US LLC in the United States District Court for the Southern District of New York. (*See* ECF No. 77 at 12-13; *see also Eastern Profit Corp. v. Strategic Vision US LLC*, 2021 U.S. Dist. LEXIS 116334, at *98 (S.D.N.Y. June 22, 2021), hereinafter referred to as the "Eastern Profit Lawsuit"). In its Findings of Fact and Conclusion of Law issued in connection with the Eastern Profit Lawsuit, the District Court found that Eastern Profit was "in essence, a shell corporation for" the Debtor. (*See* the Eastern Profit Lawsuit at *4).

[3] The Final Contempt Order is attached as Exhibit A to the *Objection Of Chapter 11 Trustee to Debtor's Motion For Relief From Order Appointing Luc A. Despins as Chapter 11 Trustee* [Docket No. 575].

15. Other entities that the Debtor potentially controls include: (i) Bravo Luck Limited ("Bravo Luck"), an entity purportedly owned by the Debtor's Son (*see* Debtor's Declaration, ¶ 33); (ii) Genever Holding LLC ("Genever NY"), a wholly-owned subsidiary of Genever Holdings Corporation ("Genever BVI"), whose equity is held by the Debtor in his individual capacity (*see id.*); (iii) Golden Spring, an entity purportedly controlled by the Debtor's Son (*see id.*, ¶ 17); (iv) Greenwich Land LLC ("Greenwich Land"), an entity purportedly owned by the Debtor's purported wife, Hing Chi Ngok ("Wife" or "Hing") (*see id.*); (v) Lamp Capital LLC ("Lamp"), an entity purportedly owned by the Debtor's Son (*see id.*, ¶ 51); and (vi) HK International Funds Investment (USA) Limited, LLC ("HK USA"), an entity purportedly owned by the Debtor's Daughter (*see id.*, ¶ 33).

16. The Debtor has stated that these above-listed entities, perhaps along with others, fund the lavish lifestyle the Debtor flaunts to the media and on social media. (*See, e.g.*, *id.*, ¶ 17 (stating that his Son, through Golden Spring, "provides for [the Debtor's] needs"); *id.*, ¶ 23 (contending that his Daughter owns the *Lady May*, a luxury yacht allegedly purchased in 2015 for £41 million, and that his Son provides for *Lady May's* maintenance); and *id.*, ¶ 51 (noting that his Son, through Lamp, funded a $1 million retainer for the Debtor's initial chapter 11 bankruptcy counsel). The Debtor does not explain, however, how these entities derive their income or what consideration, if any, he provides to these entities in exchange for the funding they provide him.

***b. Real and Personal Assets Potentially Owned or Controlled by Debtor***

17. In addition to this opaque network of controlled related entities, there are extensive real and personal assets—which the Debtor himself has bragged about owning to the media—that may also be property of the estate.

18. For example, when asked in a 2017 interview whether he had any regrets over how he has fought his campaign against the Chinese Communist Party, the Debtor said:

> I have absolutely no regrets for what I have done over the past nine months. I have the ***wealthy life that everyone in the world dreams about***. I have the ***biggest house in Hong Kong***, thousands of square meters. I have the ***most luxurious apartment in London***. I have the ***biggest place in Beijing***. I ***have more than 10 properties in Pangu***. I have ***two private jets***. I have the ***most advanced yachts***. I have ***hundreds of race cars***. I have ***an apartment like this in New York***. I don't have any material needs anymore.

(*See, e.g.,* Vice News, Exiled Chinese Billionaire Uses YouTube to Wage A War On Corruption, YOUTUBE, at 6:38-7:07 (Nov. 15 2017) (emphasis added) (available at https://www.youtube.com/watch?v=LkOsgh5kcgQ), hereinafter referred to as the "Vice News Interview")).[4] Notably, the Debtor has never offered a credible explanation of what has become of these assets, or any proceeds from them – a central question the Trustee believes will be answered through this 2004 examination.

19. Consistent with the Debtor's own admissions, other courts have already found that certain assets are effectively owned by the Debtor, despite his newfound contentions to the contrary in this Case.

20. **The *Lady May***. Following an evidentiary hearing to determine who held beneficial ownership of the *Lady May*, the New York Supreme Court found the Debtor beneficially owns and controls the *Lady May*. (Final Contempt Order at 9 ("The evidence clearly and convincingly demonstrates that [Debtor] holds a beneficial interest in and controls the Lady May.")). Specifically, the court, after considering all of the evidence, including lengthy testimony from the Debtor's daughter and three other witnesses presented by counsel for HK USA on behalf of the Debtor, found that "[t]he testimony adduced at the hearing out of the mouths of defendants'

[4] This quote was spoken by the Debtor in Chinese and translated into English by Vice News.

witnesses clearly and convincingly demonstrates that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process." (Final Contempt Order at 4). The court went on to state that "[i]n short, Ms. Guo's testimony that she owns and controls the Lady May cannot be credited in any respect" and that, "[n]ot only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht." (*Id.* at 6-8).[5]

21. **The Sherry Netherland Hotel Property**. The Debtor may similarly own and control a condominium in the Sherry Netherland Hotel in Manhattan, allegedly purchased in 2015 for approximately $70 million (the "Condominium"). The Debtor maintains that the Condominium is owned by Genever NY, and that Genever NY holds the Condominium in trust for his Son through Bravo Luck. (*See* Debtor's Declaration, ¶ 33). As noted, *supra*, Genever NY is itself owned by Genever BVI, an entity owned by the Debtor. (*See id.*).

22. Similar to the *Lady May*, the Condominium became subject to prepetition litigation in the separate chapter 11 bankruptcy that Genever NY filed in October 2020 in the Southern District of New York before the Honorable James L. Garrity Jr. (*See* Case No. 20-12411 (Bankr. S.D.N.Y.)). In that chapter 11 case, Genever NY and PAX entered into an agreement pursuant to which the Condominium will be sold and proceeds placed into escrow and distributed only upon further order of Judge Garrity. (*See* Second Am. and Restated Settlement Agreement, *In re Genever Holdings, LLC,* No. 20-12411, (ECF 131-1, ¶5(g))). The agreement also provided, among other things, that it would not prejudice the rights of the parties to proceed with litigation

[5] On March 1, 2022, PAX filed a Motion for Entry of an Order Confirming the Inapplicability of the Automatic Stay or, in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d)(2) of the Bankruptcy Code (ECF No. 57) (the "PAX Stay Motion"). The PAX Stay Motion was resolved pursuant to a stipulated order pursuant to which, among other conditions, HK USA agreed to return the *Lady May* to the United States, securing this obligation through the placement $37 million in an escrow account. (*See* ECF No. 299). The *Lady May* was returned to the navigable waters of Connecticut in early July 2022.

commenced by PAX against Bravo Luck and the Debtor in the British Virgin Islands, which challenges Bravo Luck's alleged beneficial ownership of the Condominium. (*Id.* ¶7(b)).

23.    The Trustee also has reason to believe that a security deposit in an amount of approximately $2 million may also remain in connection with the Condominium's acquisition. (*See* ECF No. 77 at 7).

24.    **Other Real and Personal Property**.  In addition to the foregoing, the Debtor has frequently referenced other significant real and personal property assets that he or his immediate family members own and control.  For example:

- The Debtor maintains that his Wife, through Greenwich Land, owns the Debtor's residential property located at 373 Taconic Road, Greenwich, Connecticut 06831. (*See* Debtor's Declaration, ¶¶ 6, 17).  Greenwich Land may also hold ownership rights to another residential property located in Greenwich, Connecticut at 33 Ferncliff Rd.[6]

- The Debtor has declared that he owns "billions" of "funds and property, including real estate in Hong Kong" which were frozen in 2019 by the High Court of the Hong Kong Special Administrative Region, Court of First Instance. (*See* Debtor's Declaration, ¶ 17).

- The Debtor is also a co-plaintiff in litigation in the United Kingdom that involves claims of approximately $500 million.[7]

- As noted above, in a 2017 interview, the Debtor bragged of owning, among other things, (i) the "biggest house in Hong Kong," (ii) the "most luxurious apartment in London," (iii) the "biggest place in Beijing," (iv) "more than 10 properties in Pangu," (v) two private jets,[8] and (vi) "hundreds of race cars."[9]

---

[6] (*See Supplemental Memorandum of Law of the Official Committee of Unsecured Creditors Addressing the Alternatives of Dismissal, Conversion or the Appointment of a Chapter 11 Trustee*, at 3 [ECF No. 408] (noting "other potential assets of the estate are two properties in Greenwich, Connecticut (373 Taconic Rd. and 33 Ferncliff Rd.) which [Debtor] claims are owned by [Greenwich Land].")).

[7] *See* Approved Judgment dated February 9, 2022, *Kwok Ho Wan & Ors v UBS*, Cl-2020-000345, High Court of Justice of England and Wales Queen's Bench Division Commercial Court, ¶ 30(i) ("The principal claim is for some US$495 million.").

[8] According to a press report, one of these private jets bears tail number T7-GQM.  *See* "Steve Bannon's Use of Private Jet Linked to Chinese Businessman Could Violate Campaign Finance Law," ProPublica, dated Feb. 26, 2020, (available at https://www.propublica.org/article/steve-bannon-guo-wengui-private-jet-campaign-finance-law)  (last visited July 25, 2022).

[9] *See* Vice News Interview at 6:38-7:07.

The proposed examination will help determine whether—and likely confirm—that these various property interests are property of the estate.

***c. Debtor's Potential Financial Interests in For-Profit and Purported Not-For Profit Business Entities***

25. In addition to the real and personal property assets that the Debtor may own or control through business entities owned by his family members, the Debtor may also have significant financial or ownership interests (or liabilities) in both for-profit and alleged not-for profit business entities that may provide substantial value to the estate and creditors.

26. For instance, it is reported that the Debtor has a financial interest in Gettr USA, Inc. ("Gettr"), a conservative social media platform. (*See* Will Sommer, Adam Rawnsley, A. Suebsaeng, *Trumpworld App Is Bankrolled by Fugitive Chinese Billionaire,* THE DAILY BEAST, https://www.thedailybeast.com/trumpworld-app-is-bankrolled-by-fugitive-chinese-billionaire?ref=home (July 5, 2021, 12:19 PM) (last visited July 20, 2022) (reporting that "sites associated with the billionaire have suggested that Gettr is [Debtor's] brainchild," and attributing to a host on GTV, "a media outlet that serves as a mouthpiece for [Debtor]," the observation that Gettr was "'the concentration of [Debtor]'s whole lifework'," and adding that "[Debtor] had come up with the idea for Gettr's logo, a torch."); *see also* The New York Times: Sway, *Best Of: Jason Miller*, at 30:15-30:35 (July 18, 2022) (downloaded using Apple Podcasts) (When asked who is funding Gettr, Gettr CEO Jason Miller responded, "We have multiple international investment funds that are putting into this . . . . The family foundation of Miles Kwok is one of the initial funders, one of the initial sponsors of this. There's been over $50 million that's [been] put in the

platform so far. [We] have somewhere [near] $25-$30 million range that we currently have in the bank.")).[10]

27. It has also been reported that Gettr's pay stubs list the same address as the "Himalaya Embassy," a property leased in Manhattan's Upper East Side, that is also associated with the New Federal State of China (the "NFSC"), a proclaimed "government in exile dedicated to overthrow the [Chinese Communist Party]" created by the Debtor and Steve Bannon, former chief strategist to former President Donald J. Trump. (*See* Dan Friedman, *A Fugitive Chinese Tycoon Met Steve Bannon. Misinformation Mayhem Ensued. The weird, wild, and scary tale of Miles Guo*, Mother Jones (March-April 2022 Issue) (last visited July 21, 2022), https://www.motherjones.com/politics/2022/02/guo-wengui-miles-guo-gettr-steve-bannon/).

28. The Debtor also reportedly owns or controls a "web of more than 60 commercial, nonprofit, and online groups" collectively referred to as the "whistleblower movement." (*See id.*). At least two of these nonprofits—the Rule of Law Society and the Rule of Law Foundation—are said to fund the NFSC. (*See id.*). It has been reported that as of summer 2021 the Rule of Law Society and Rule of Law Foundation had "combined receipts of about $15 million." (*Id.*).

29. The Debtor's alleged "web" of for-profit and not-for profit commercial interests may also include entities or brands such as (i) "GCoin," a cryptocurrency allegedly created by the Debtor to serve as a monetary currency for NFSC; (ii) "GFashion," a clothing line designed by the Debtor; (iii) "GMusic," a music platform that promotes the Debtor's videos; (iv) "GClubs," a membership service which provides "'concierge customer service' and special access to [Debtor's] fashion collections, music releases, and an annual GSummit"; (v) "GTV," a Chinese-language

[10] Shortly after this exchange, Miller was careful to distinguish the "family foundation of Miles Kwok" with Miles Kwok, himself, saying, "Mr. Kwok doesn't have any direct financial investment in Gettr," instead calling the Debtor an "ally" to Gettr. (*See id.* at 30:51-31:11).

video platform; (vi) "GNews," a news website that "runs articles summarizing [Debtor's] pronouncements.";[11] (vii) Saraca Media Group Inc., the parent company of *GNews* that also reportedly paid Mr. Bannon at least $1 million in consulting fees in May 2018; and (viii) the Himalaya Supervisory Organization, which oversees a number of online chat groups that promote and idolize the Debtor, and which offered members of those chat groups "various mechanisms" to send the Debtor money, including through a loan program which allegedly "promised eventual repayment with interest and a chance to invest at a discount in other [Debtor] ventures" and through stock purchases of GTV. (*See id.*). It is alleged that the GTV stock opportunity raised $114 million and that the loan program raised "at least $90 million." (*See id.*).

30.     These are just certain of the business interests and entities that either the Debtor has boasted about, or that have been reported in the media to date. It stands to reason that the Debtor may be affiliated with numerous other entities whose assets, liabilities and financial interests may be critical to the Trustee's administration of the Debtor's Estate.

31.     Because the Debtor may be the true owner of the aforementioned assets and interests, among other potentially unknown assets and interests, it is critical that the Trustee examine and investigate fully the Debtor's estate assets, including the role that his family members, their business entities and other third parties, including the law firms representing the Debtor and his affiliated family entities, have with regards to the Debtor's financial positioning.

## JURISDICTION AND VENUE

32.     The Court has jurisdiction to entertain this application under 28 U.S.C. §§ 157 and 1334.  Venue to hear this Application is proper in accordance with 28 U.S.C. §§ 1408 and 1409.

---

[11] *See id.*

33. This Application is a core proceeding pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2)(A), (E), and (F).

**RELIEF REQUESTED**

34. The Trustee seeks entry of an order, in substantially the form of the Proposed Order, pursuant to Bankruptcy Rule 2004(a) and Local Bankruptcy Rule 2004-1, authorizing the Trustee to conduct the examination of the Debtor.

**BASIS FOR RELIEF REQUESTED**

35. Pursuant to Rule 2004(a), on application of a party in interest, the Court may order the examination of any person or entity. The scope of an examination authorized under Rule 2004 is exceedingly broad and may relate to the "acts, conduct, or property or to the liabilities and financial condition of the Debtor, or to any matter which may affect the administration of the Debtor's estate." Fed. R. Bankr. P. 2004(b).

36. "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Transmar Commodity Group Ltd.*, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) (internal quotation and citation omitted). This includes revealing the nature and extent of the estate and in discovering assets of the debtor that may have been intentionally or unintentionally concealed. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 27-28 (Bankr. N.D.N.Y. 1996). *See also In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." (internal quotation and citation omitted)).

37. In the declaration he submitted on March 20, 2022 in support of the filing of this case, the Debtor represented that among the purposes for filing his chapter 11 case were "to … (b) afford stakeholders an efficient opportunity to investigate [his] assets, liabilities, and financial affairs, given what [he] perceive[d] to be misunderstandings in that regard; [and] (c) establish what assets are estate property and, in turn, available for distribution to holders of allowed claims . . . ." (Debtor's Declaration, ¶ 3). The investigation the Trustee seeks to perform is directly relevant to these stated purposes in that it will help the Trustee identify the Debtor's assets and liabilities in order to make distributions to creditors.

38. The areas for initial inquiry pursuant to the requested examination of the Debtor are readily apparent. Based on all the facts and evidence discussed above—including the Debtor's own numerous public statements and past findings by other courts—the Trustee has already identified various corporate entities and real and personal property assets of the Debtor that may provide significant value to the estate. The Trustee needs, however, the investigative tools afforded by Rule 2004 to further establish the true ownership of these assets and to explore other potential assets about which the Trustee does not yet have knowledge.

39. The Trustee requests that, in furtherance of his examination, the Court direct the Debtor to provide documentation to the Trustee's counsel, as requested in the form annexed hereto as **Exhibit B** and made a part hereof (the "Proposed Subpoena"), within thirty (30) days of the service of a subpoena, substantially similar in form and substance to the Proposed Subpoena, or such other time as agreed upon by the Trustee. These requests seek documents and communications related to, among other things, (i) the specific assets and property interests discussed herein (*e.g.*, the *Lady May*,[12] the Condominium, the Greenwich properties, and the

[12] The *Lady May* is among the topics and potential estate assets with respect to which the Trustee seeks discovery. The Trustee submits that such discovery is appropriate pursuant to Rule 2004 even though an adversary proceeding

various other homes, private jets, and other assets the Debtor has boasted about); (ii) the Debtor's interests in and relationships with other individuals, corporate entities and nonprofits, which may be a source of the Debtor's wealth; and (iii) the Debtor's communications with his counsel and other advisors, including communications with such advisors regarding corporate governance issues and the Debtor's finances and property interests.

40. As to this latter category of document requests, bankruptcy courts routinely provide for Rule 2004 discovery against professional firms when the discovery may identify and aid the recovery of assets for the benefit of the estate and creditors. *See, e.g., In re Bame,* 251 B.R. 367 (Bankr. D. Minn. 2000) (finding trustee's request to waive privilege of individual debtor and seek discovery from prepetition advisors compelling when requested to recover assets); *In re Horvath*, No. 13-34137, 2015 WL 2195060 (Bankr. N.D. Ohio May 7, 2015) (discovery related to claims on schedule of assets permissible from individual debtor because trustee sought to potentially increase the value of debtor's estate). Any assertion by the Debtor that the attorney-client privilege or other applicable privileges may obstruct the Trustee's investigation into communications with counsel are without merit, because the "Trustee now controls any attorney-client privilege or attorney work product to the extent it relates to the identification of assets, liabilities or the financial state of the Debtor's estate." *In re Tarkington,* No. 10-00012-8-JRL, 2010 WL 1416813, at *3 (Bankr. E.D.N.C. Apr. 2, 2010) ("trustee's waiver of [individual debtor's] attorney-client

---

with respect to the ownership of the *Lady May* is presently pending. The Trustee's proposed discovery related to the *Lady May* relates to the overall pattern of conduct by the Debtor to evade his creditors and is therefore broader than discovery that will likely be sought in the adversary proceeding. It is also more efficient for all parties for the Trustee to take this discovery now given that the Trustee is otherwise seeking Rule 2004 discovery from the same parties on other topics—it would be inefficient for the Trustee to have to take discovery from these same parties twice. Moreover, this is not the classic situation where an adversary plaintiff, through Rule 2004, seeks to undermine the protections provided by the Bankruptcy Rules governing discovery in adversary proceedings. Finally, given the procedural posture of the adversary proceeding, the Trustee may not be able to obtain discovery in that proceeding at present. The Trustee needs its Rule 2004 discovery now, however, to adequately protect and preserve potential assets of the estate.

privilege is valid to the extent that questions asked during the examination pertain to the administration of estate property"); *see also In re Klein*, No. 2:11-BK-12718RN, 2013 WL 6253819, at *13 (Bankr. C.D. Cal. Dec. 4, 2013) (chapter 11 trustee controls privilege between debtor and his former counsel upon appointment).

41. The Trustee submits that the facts set forth above constitute sufficient cause for the Court to order the examination of, and production of documents from, the Debtor pursuant to Rule 2004(a). The Debtor himself is a necessary source of information and documents to help the Trustee uncover the Debtor's estate's true assets. The Debtor's examination and response to document requests would be the first step in "afford[ing] stakeholders an efficient opportunity to investigate [his] assets." (Debtor's Declaration, ¶ 3).

42. Authorization of this Application is critical for the Trustee to fulfill the duties contemplated in the Trustee Order effectively, including specifically his mandate to "locate the Debtor's assets for the benefit of creditors and the estate" and "investigate the Debtor's assets, liabilities, and financial affairs." (*See* Trustee Order at 15-16, 18). No party in interest, including the Debtor, shall suffer undue prejudice upon the granting of the relief sought in this Application.

43. In the event the relief requested by the Trustee is granted, the Trustee shall issue the appropriate subpoenas to compel deposition attendance and/or production of documents at the Rule 2004 examination in the form of the Proposed Subpoena. Further, it is respectfully requested that the Rule 2004 deposition examination be held at the law offices of Paul Hastings LLP, counsel for the Trustee, located at 200 Park Avenue, New York, NY 10166 on not less than seven (7) days written notice or at such other time and location as the parties may otherwise agree.

**NO PRIOR REQUEST**

44. No prior application for the relief requested herein has been made.

**OBJECTION DEADLINE**

45. The deadline to object to this Application is **August 5, 2022**, and in the absence of a timely filed objection, the Proposed Order may enter without further notice and hearing.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Trustee respectfully requests that the Court grant this Application and enter the Proposed Order, pursuant to Fed. R. Bankr. P. 2004(a), directing the examination of Ho Wan Kwok, and directing the production of certain documents as set forth in the Requests for Production of Documents attached to the Proposed Subpoena, and for such other and further relief as the Court may deem just and proper.

Dated: July 28, 2022
New Haven, Connecticut

LUC A. DESPINS,
CHAPTER 11 TRUSTEE

By: */s/ Patrick R. Linsey*

Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
plinsey@npmlaw.com

*and*

Nicholas A. Bassett (*pro hac vice* pending)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

*and*

Avram E. Luft (*pro hac vice* pending)
Douglass Barron (*pro hac vice* pending)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
aviluft@paulhastings.com
douglassbarron@paulhastings.com

*Proposed counsel for the Chapter 11 Trustee*

**Exhibit A – Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| Debtor.[13] | : | |

**[PROPOSED] ORDER GRANTING**
**CHAPTER 11 TRUSTEE'S APPLICATION FOR**
**RULE 2004 EXAMINATION OF HO WON KWOK**

Upon consideration of the Application seeking an order authorizing a Federal Rule of Bankruptcy Procedure 2004 examination of Ho Won Kwok ("Debtor") (the "Application", ECF No. _____), filed by Luc Despins, as the appointed Chapter 11 Trustee to the Debtor's estate (the "Applicant"), after notice and a hearing, see 11 U.S.C. § 102(1), it appearing that cause exists to grant the requested relief as conditioned hereafter; it is hereby

**ORDERED**: The Rule 2004 Motion is granted as set forth below.

**ORDERED**: Paul Hastings LLP and Neubert, Pepe & Monteith, P.C., as proposed counsel for the Trustee, are hereby authorized to sign a Subpoena, in a form substantially similar to the Subpoena attached to the Rule 2004 Motion as Exhibit B, and to serve the Subpoena along with a copy of this Order in accordance with Bankruptcy Rule 2004 requiring examination and the production of documents by the Debtor.

**ORDERED**: The Debtor is hereby directed to produce all documents within 30 days of the service of the Subpoena, or such other time as agreed upon by the Trustee. To the extent the Debtor does not produce any documents requested in the Subpoena on the basis of some privilege, the Debtor is hereby directed to produce the Trustee with a privilege log that comports with Fed. R. Civ. P. 45(e)(2), made applicable by Fed. R. Bankr. P. 9016, and D. Conn. L. Civ. R. 26(e), within 30 days of service of the Subpoena, or such other time as agreed upon by the Trustee.

**ORDERED**: The Debtor is hereby directed to ensure that that all documents and other information, including without limitation in any electronic format, requested in the Subpoena or otherwise relevant to the Debtor, his business, assets, liabilities, financial condition, or this Chapter

[13] Although the Debtor's legal name is Ho Wan Kwok, he is also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases. The last four digits of the Debtor's taxpayer identification number are 9595.

11 case, are properly maintained, are available for production, inspection and copying, are not destroyed.

**ORDERED**: Paul Hastings LLP and Neubert, Pepe & Monteith, P.C., as proposed counsel for the Trustee, are hereby authorized, without further order of this Court, to take the testimony of the Debtor by examination under Bankruptcy Rule 2004 at the offices of Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, or at such other place that is mutually acceptable to the parties, on a date acceptable to the Trustee, which, at the election of the Trustee, shall be not less than 14 calendar days after the production of documents by the Debtor in compliance with the Subpoena and this Order pursuant to Bankruptcy Rule 2004, and such examination shall continue from day to day until completed.

Dated: _______________, 2022

________________________________________
Julie A. Manning,
United States Bankruptcy Judge

# Exhibit B – Subpoena and Document Requests

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of Connecticut

In re Ho Wan Kwok
Debtor

Case No. 22-50073

Chapter 11

## SUBPOENA FOR RULE 2004 EXAMINATION

To: Ho Wan Kwok
*(Name of person to whom the subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166 | |

The examination will be recorded by this method: court reporter/stenographer

☑ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Requests for Production of Documents, attached hereto.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: August __, 2022

CLERK OF COURT

OR

_______________________
*Signature of Clerk or Deputy Clerk*

_______________________
*Attorney's signature*
Patrick R. Linsey (ct29437)

The name, address, email address, and telephone number of the attorney representing *(name of party)* Luc Despins, Ch. 11 Trustee , who issues or requests this subpoena, are:

Patrick R. Linsey, Esq.; Neubert, Pepe & Monteith, P.C.; 195 Church Street, New Haven, Connecticut 06510
plinsey@npmlaw.com; 203-821-2000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Requests for Production of Documents**

## I. INSTRUCTIONS

1. Unless otherwise indicated, the requests for documents set forth below, (the "Requests," and each, a "Request"), must be responded to separately and specifically. Each Request shall be answered fully unless it is in good faith objected to, in which event the reason for Your objection shall be stated in detail, as set forth below. If an objection pertains only to a portion of a Request, or a word, phrase or clause contained within it, You are required to state Your objection to that portion only and to respond to the remainder of the Requests.

2. Electronically stored information must be produced in accordance with the following instructions:

   a. Images. Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format. File names cannot contain embedded spaces or special characters (including the comma). Folder names cannot contain embedded spaces or special characters (including the comma). All TIFF image files must have a unique file name, i.e. Bates number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image. The number of TIFF files per folder should not exceed 1000 files. Excel spreadsheets should have a placeholder image named by the Bates number of the file.

   b. Image Load File

      a. Concordance® Data File. The data file (.DAT) contains all of the fielded information that will be loaded into the Concordance® database. The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance® default delimiters: Comma ASCII character (020) Quote þ ASCII character (254). Date fields should be provided in the format: mm/dd/yyyy. Date and time fields must be two separate fields. If documents includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file. For Documents with native files, a LINK field must be included to provide the file path and

name of the native file. The native file must be named after the FIRSTBATES.

b. Concordance Image® OR Opticon Cross-Reference File. The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,Box Break,PageCoun.

c. Document Text. Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. It is recommended document level ANSI text files, named per the FIRSTBATES/Image Key. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). Text files must be provided on a document level.

d. Native Production for Certain File Types. File types that reasonably require viewing in their native format for a full understanding of their content and meaning must be produced in native format. These include, but are not limited to, spreadsheets, spreadsheet-like files (Microsoft Excel, comma separated values, tab separated values, etc.), Microsoft PowerPoint or other special presentation files, database files, and audio/visual files. Provide an image of a Bates numbered slip sheet indicating the presence of a native file, and include the path to the native as a field in the .dat file. Name the produced native file with the Bates number corresponding to the slip sheet for the file. Group native files within incrementally named "NATIVE" directories, separate from images directories.

e. De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For email messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For email attachments and standalone electronic files, consolidate duplicates based on MD5 hash of the entire file.

f. Metadata. Produce extracted metadata for each document in the form of a Concordance compliant load file (.dat). The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance default delimiters: Comma , ASCII character (020) Quote þ ASCII character (254)
Date fields should be provided in the format: mm/dd/yyyy. Date and time fields must be two separate fields. Required metadata listed below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/ TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type extension representing the Email or |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
|---|---|---|
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c 2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

3. Each Request operates and should be construed independently and, unless otherwise indicated, no Request limits the scope of any other Request.

4. All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in these Requests.

5. Each Request contained herein extends to all Documents: (a) in Your possession, custody, or control; or (b) in the possession, custody, or control of anyone acting on Your behalf,

including Your counsel or other representatives and advisors. Each Document shall be produced in its entirety.

6.      If You are requested to produce a Document that is no longer in Your possession, custody, or control, then Your response must (a) describe in detail the nature of the document and its contents; (b) identify the person(s) who prepared or authored the Document (and, if applicable, the Person(s) to whom the Document was sent); (c) identify the date on which the document was prepared or created; (d) state whether such Document (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of; (e) state the reason for, and the facts and circumstances surrounding, such disposition; (f) identify the Persons who authorized such disposition; (g) identify the date or approximate date of such disposition; (h) state when the Document was most recently in Your possession, custody or control; and (i) identify the Person, if any, presently in possession, custody, or control of such Document.

7.      If You are requested to produce a Document that has been destroyed, then Your response must state, in addition to the information required by the preceding Instruction:  (a) the reason for the Document's destruction; (b) the identity of the Person who destroyed the Document; and (c) the identity of the Person who directed that the Document be destroyed.

8.      If You claim that a requested Document is privileged or attorney work-product, then Your response must: (a) state (i) a description of the Document adequate to support Your contention that the Document is privileged, (ii) the title of the Document, (iii) the date of the Document, (iv) the author of the Document, (v) the addressee of the Document, (vi) the identity of each Person who received or saw the original or any draft, copy, or reproduction of the Document, (vii) whether the Document itself, or any information contained or referred to in the Document is in the possession, custody, or control of any other Persons, and if so, the identity of

such Persons, as well as a statement addressing how the information came into their possession, (viii) the claim of privilege under which the Document is withheld, and (ix) all of the circumstances upon which You will rely to support such claim of privilege; and (b) produce a privilege log containing all of the information requested in Part (a) of this Instruction for each Document withheld on the basis of a claim of privilege in accordance with D. Conn. L. Civ. R. 26(e).

9.     Document Request as to which a claim of privilege or work product is not made, responsive documents should be provided in full.

10.     If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions above, and the rest shall be produced.

11.     The Requests are continuing in nature. You are hereby instructed to (a) supplement or correct any responses later learned to be incomplete or incorrect immediately upon learning that a prior response was incomplete or incorrect; and (b) produce any additional Documents that are called for under the

12.     If a Document is in a language other than English, You should provide that Document.  If a Document is in a language other than English, and an English translation exists, You should provide both Documents.

13.     All references to Entities includes all affiliates thereof.

14.     All references to individual names include all alternative names, aliased, or nicknames.

15. Unless otherwise expressly indicated, the period of time covered by the Document Requests is the period from February 5, 2012 to the date responses to the Document Requests are due.

## II. RULES OF CONSTRUCTION

16. The use of (a) any singular noun shall be construed to include the plural, and vice versa, and (b) a verb in any tense shall be construed as the use of the verb in all other tenses.

17. The terms (a) "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of any request all responses that might otherwise be construed to be outside of its scope, and (b) "each" and "any" shall be deemed to include and encompass the words "every" and "all."

## III. DEFINITIONS

The definitions supplied by D. Conn. L. Civ. R. 26(c) and the rules of construction supplied by D. Conn. L. Civ. R. 26(d), as incorporated by D. Conn. Bankr. L.R. 2004-1(a), shall apply to the Document Requests. In addition, the following terms used in these Document Requests shall have the following meanings:

1. "You" or "Your" or "Yourself" or "Debtor" means and refers to Ho Wan Kwok (a/k/a Miles Kwok, Miles Guo, Guo Wengui, Guo Haoyun, 郭文贵, or any other alias), together with any of his employees, agents, counsel, advisors, or anyone acting on his behalf.

2. "Debtor's Son" means Qiang Guo (a/k/a Mileson Kwok, 郭强, or any other alias), together with any of his employees, agents, counsel, advisors, or anyone acting on his behalf.

3. “Debtor’s Daughter” means Mei Guo (a/k/a Mei Gui, 郭美, or any other alias), together with any of her employees, agents, counsel, advisors, or anyone acting on her behalf.

4. “Debtor’s Purported Wife” means Hing Chi Ngok (a/k/a Hing Chi Ng, a/k/a Yue Qingzhi, 岳庆芝, or any other alias), together with any of her employees, agents, counsel, advisors, or anyone acting on her behalf.

5. “Debtor’s Family” means, collectively, the Debtor, the Debtor’s Son, the Debtor’s Daughter, and the Debtor’s Purported Wife, and any other familial relation to the Debtor.

6. “Associated Individuals” means, individually and collectively, all individuals that (1) hold, control, have custody over, or discretion over assets owned, controlled, or enjoyed by the Debtor or the Debtor’s Family; or (2) have been employees, directors, or otherwise are affiliated with one or more Associated Entities, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing. Such Associated Individuals shall include, but are not limited to: Daniel Podhaskie, Jason Miller, Steve Bannon, Karin Maistrello, Melissa Francis, William Gertz, Arethusa Forsyth, Glenn Mellor, Jennifer Mercurio, Eduardo Eurnekian, Han Chunguang (a/k/a 韩春光), Qu Guojiao (a/k/a Qu Guo Jiao, 屈国姣), Guo Lijie (a/k/a 郭丽杰), Zhang Wei (a/k/a 张伟*), Lihong Wei Lafrenz (a/k/a Sara Wei, 魏丽红), Hao Haidong (a/k/a 郝海东), Ross Heinemeyer, Max Krasner, Kyle Bass, Melissa Mendez, Ya Li (a/k/a 李娅), Dinggang Wang (a/k/a 王定刚), An Hong (a/k/a 安红), Yvette Wang (a/k/a Yanping Wang, Yan Ping Wang, 王雁平), Fiona Yu, Je Kin Ming (a/k/a William Je, Yu Jianming, 余建明), Yaz Qingua, and Lao Jiang (a/k/a Jiang Yunfu, Jiang Yunfu Be, 姜云浮).

7. "Associated Entities" means, individually and collectively, all organizations or Entities of any type that (1) have been owned, controlled, or invested in by the Debtor or the Debtor's Family; or (2) have an interest, whether directly or indirectly, in any assets owned, controlled, or enjoyed by the Debtor or the Debtor's Family, together with the respective employees, agents, counsel, advisors, or anyone acting on behalf of any of the foregoing. Such Associated Entities shall include, but are not limited to: 7 Nod Hill LLC, AAGV Limited, ACA Investment Management Limited, ACA Capital Group Limited, Ace Decade Holdings Limited, AI Group Holdings Inc., Alfa Global Ventures Limited, Alfonso Global Limited, Allied Capital Global Limited, Alpine Fiduciaries SA, Anton Development Limited, Assets Sino Limited, Auspicious Coast Limited, Beijing Pangu Investment Co., Beijing Pangu Investment Co. Ltd., Beijing Pangu Investment Inc., Beijing Zenith Holdings Company Limited, Bravo Luck Limited, BSA Strategic Fund I, China Golden Spring (Hong Kong) Limited, Chuang Xin Limited, Crane Advisory Group LLC, Creative Apex Investments Limited, Crystal Breeze Investments Limited, Dawn State Limited, Eastern Profit Corporation Limited, Elite Well Global Limited, Empire Growth Holdings, G Club Operations LLC, G Fashion LLC, G News LLC, GETTR USA, Genever Holdings Corporation, Genever Holdings LLC, GFASHION MEDIA GROUP INC., GFNY, Inc., Globalist International Limited, GNews Media Group Inc., Golden Spring (New York) Ltd., Greenwich Land LLC, Guo Media, GTV Media Group, Inc., Hamilton Capital Holdings Inc., Head Win Group Limited, Henan Yuda, Himalaya Embassy, Himalaya Exchange, Himalaya Federal Reserve, Himalaya Supervisory Organization, HK International Funds Investments (USA) Limited LLC, Hong Kong International Funds Investments Limited, Infinite Increase Limited, Infinitum Developments Limited, Insight Phoenix Fund, Lamp Capital LLC, Leading Shine Limited, Leading Shine NY Limited, Long Gate Limited, Next Tycoon Investments Limited, New

Federal State of China (a/k/a NFSC), Noble Fame Global Limited, Rosy Acme Ventures Limited, Rule of Law Foundation III, Inc., Rule of Law Foundation IV, Inc., Rule of Law Fund, Rule of Law Society, Rule of Law Society IV, Inc., G-Translators PTY LTD, Saraca Media Group, Inc., Shiny Ace Ltd., Shiny Times Holdings Ltd., Spirit Charter Investment Limited, Stevenson, Wong & Co., Voice of Guo Media, Inc., Well Origin Ltd., World Century Limited, Worldwide Opportunity Holdings Limited, Whitecroft Shore Limited, and ZIBA Limited.

8. “Including” or any variant thereof means “including without limitation.”

9. “And” and “or” mean “and/or,” and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

10. “Any” and “all” and “each” mean “each and every.”

11. “Each” and “every” mean “each and every.”

12. “Third Party” means a Person or Entity other than Yourself.

13. “Transfer” shall have the meaning given to it by section 101(54) of the Bankruptcy Code.

14. “Document” means any information or thing within the scope of Fed. R. Civ. P. 34, and includes, without limitation, each and every written, recorded, or graphic matter of any kind, type, nature, or description that is or has been in Your Possession, Custody or Control, including all printed and electronic copies of electronic mail, computer files maintained in electronic form, electronic communication, text message, social media post, tweet, meta-data, correspondence, memoranda, tapes, stenographic or handwritten notes, written forms of any kind, charts, blueprints, drawings, sketches, graphs, plans, articles, specifications, diaries, letters, telegrams, photographs, minutes, contracts, agreements, surveys, computer printouts, data

compilations of any kind, telexes, facsimiles, voice messages, invoices, order forms, checks, drafts, statements, credit memos, reports, position reports, summaries, indices, books, ledgers, notebooks, schedules, transparencies, recordings, catalogs, advertisements, promotional materials, films, video tapes, audio tapes, CDs, computer disks, brochures, pamphlets, punch-cards, time-slips, Tweets, social media posts, or any written or recorded materials of any other kind, and all meta-data thereof, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, and also including but not limited to, drafts or copies of any of the foregoing that contain any notes, comments, or markings of any kind not found on the original documents or that are otherwise not identical to the original documents.

15. "Person(s)" means an individual, corporation, proprietorship, partnership, association, or any other Entity. "Person" also includes any agent, representatives, or expert, including but not limiting to, attorneys or financial advisors.

16. "Entity" means any natural Person, corporation, partnership, subsidiary, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic Person, as well as any affiliate, agent, parent including but not limited to legal counsel, financial advisors, or any other representative.

17. "Regarding" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

18. "Relating to," "relate(s) to" or "related to," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains,

embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

19. "Communication(s)" means, in the broadest possible sense, and without limitation, any transmittal of information or knowledge (in the form of facts, ideas, inquiries, or otherwise). Communication(s) further refers to all conversations, agreements, inquiries, or replies, whether in person, by telephone, in writing, or by means of electronic transmittal devices, and includes, but is not limited to, all correspondence, emails, recordings, transmittal slips, memoranda, telephone communications, voice messages, telegrams, telefaxes, telecopies, telexes, instant messages, chats, text messages, telephonic notes, or notes transmitted internally or with third parties.

20. "Asset(s)" means any item that can be used to produce positive economic value, including but not limited to any resource with economic value that is owned, controlled or is for the benefit of an entity, that is expected to provide a future benefit, including but not limited to, all real and personal property, intangible property, investments, rights to invest or to future revenue, cash, bank accounts, commodities, securities, claims, total or partial control of an entity, and prospective economic opportunities

## IV. DOCUMENTS TO BE PRODUCED

1. All documents regarding any income or Asset of the Debtor, the Debtor's estate, or of an Associated Entity.

2. Documents sufficient to show all entities or Assets that the Debtor or the Debtor's Estate holds or has ever held a legal, economic, or beneficial interest in, or total or partial control of, at any time from January 1, 2011 through the present.

3. For any Asset identified in response to Request No. 2 in which the Debtor asserts he or the Debtor's Estate no longer holds such an interest, all Documents relating to the disposition of that Asset, including but not limited to, when the Debtor relinquished his interest, to whom, for what value, and if the Debtor has had any use of or other interaction with the Asset since the moment he asserts he or the Debtor's Estate no longer retained an interest.

4. All Documents regarding the Associated Entities, including but not limited to their corporate structure, Assets, incorporation information, officers and directors, business purpose, and relationship to the Debtor or to any member of the Debtor's Family.

5. All Documents regarding the *Lady May*; the Sherry Netherland Hotel / Condominium; the residential property located in Greenwich, Connecticut at 373 Taconic Rd.; the residential property located in Greenwich, Connecticut at 33 Ferncliff Rd.; the residential property located in Wilton, Connecticut at 354 Nod Hill Rd.; and any financial interest that the Debtor or the Debtor's estate possesses in any Associated Entity.

6. All Documents related to the purported Declaration of Trust and Agreement, dated February 17, 2015, entered into by the Debtor, as Trustee, Genever Holdings Corporation, and Genever Holdings LLC, in favor of Bravo Luck Limited, as beneficiary.

7. All Documents regarding any balance sheet, bank statement, account statement, financial statement, statement of account, wire transfer instructions and/or confirmation, proof of funds, certificate of deposit, certificate of holdings, investment portfolio summary, or similar document relating to the Debtor, the Debtor's Estate, the Debtor's Family, an Associated Entity, or an Associated Individual, including without limitation all Documents sufficient to show all Transfers to any of the foregoing.

8. All Documents regarding any credit cards used by You, including without limitation monthly statements or other Documents sufficient to show all purchases, payments, and other transactions related thereto.

9. All Documents related to any investments or trading by the Debtor, the Debtor's Family, or an Associated Entity, in or around July 2020, or at any other time, in crude oil futures or any similar commodity, including without limitation Communications with Jiang Yunfu Be regarding any such investments or trading.

10. All Communications between You and, either, the Debtor's Family, or any Associated Individual, agent, employee, or individual acting on Your behalf, related to any business transaction relating to the Debtor, the Debtor's Estate, the Debtor's Family or the Associated Entities.

11. All communications with counsel for the Debtor's Family or the Associated Entities.

12. All communications with Qu Guo Jiao regarding any Assets, liabilities, financial interests, economic health, financial statements of the Debtor, the Debtor's Family, or any Associated Entity.

13. All communications with Daniel Podhaskie regarding any Assets, liabilities, financial interests, economic health, financial statements of the Debtor, the Debtor's Family, or any Associated Entity.

14. All Documents regarding any gifts, benefits or loans, to, from or on behalf of the Debtor, the Debtor's Estate, the Debtor's Family, the Associated Entities, or the Associated Individuals, including but not limited to, the amounts of such gifts, benefits, or loans, the

purposes for which such gifts, benefits, or loans were used, when the gifts, benefits, or loans were provided, the terms of repayment for any loans, all representations and warranties made in connection with any loans, the interest rate on any loans, and all evidence of payments of any loans.

15.    All Documents concerning any trust or similar instrument set up by, on behalf of, or for the benefit of the Debtor, the Debtor's Estate, the Debtor's Family, or Associated Entities, including but not limited to Documents showing when the trust(s) was created, by whom it was created, to whose benefit it was created, and the corpus of the trust.

16.    Tax returns for the Debtor, each Individual member of the Debtor's Family, and any Associated Entity from the years 2014 to the present.

17.    All Documents related to any sale, acquisition, disposition, purchase, investment, contribution, gift, extension of credit, loan, or Transfer involving the Debtor, the Debtor's Family, or any Associated Entity.

18.    All Documents related to any obligation, claim, liability, or debt associated with any legal dispute involving the Debtor, including but not limited to those relating to any litigation before any local, state, federal, or international body, whether an administrative body, court, panel, or alternative dispute resolution entity, and those related to the action before the High Court of Justice of England and Wales, Queen's Bench Division Commercial Court, styled *Kwok Ho Wan & Ors v UBS*, Cl-2020-000345, including those related to the basis for Your claim in such action.

19.    All Documents related to that certain U.S. Securities and Exchange Commission *Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order,* Release No. 10979/September

13, 2021, entered in Administrative Proceeding File No. 3-20537, *In the Matter of GTV Media Group, Inc., Saraca Media Group, Inc., and Voice of Guo Media, Inc.,* including but not limited to those regarding the sources of funds for all payments to legal counsel to the respondent-Associated Entities subject to that administrative proceeding, the sources of funds for all payments of fines, disgorgement, prejudgment interest, and/or civil penalties paid to the U.S. Securities and Exchange Commission pursuant to such order, and those regarding the manner of payment used by respondent-Associated Entities to satisfy the obligations of such order.

20.     All Documents regarding the place, property, or location the Debtor resides in or inhabits, including but not limited to the location of such place or property; when and how often the Debtor is there; who owns or controls the place or property; who funds any expenses or payments related to the place or property; any terms relating to the Debtor's use of the property; and anyone else who is authorized to use the property.

21.     All Documents regarding the Debtor's use of any Assets belonging to, controlled by, or whose complete or partial ownership is held by the Debtor's Family, an Associated Individual, or an Associated Entity.

22.     All Documents regarding any Entity that the Debtor, the Debtor's Estate, the Debtor's Family, or an Associated Entity holds any interest or investment in, including but not limited to the nature and value of that interest or investment; any proceeds or benefits from the entity that the Debtor, the Debtor's Estate, or the Associated Entity receives; and all Documents relating to any financial reporting or data relating to such Entity, including but not limited to all books and records, financial statement or tax Documents.

23. All Documents regarding any investment or business dealing made by, with, or on behalf of the Debtor or the Debtor's Family, on the one hand, and any Associated Entity, on the other hand.

24. All Documents regarding the "billions" of "funds and property, including real estate in Hong Kong" which were frozen in 2019 by the High Court of the Hong Kong Special Administrative Region, Court of First Instance. (*See* ECF N0. 107 at ¶17).

25. All Documents regarding each of the Assets the Debtor claimed to own during a 2017 interview with Vice News, including but not limited to, the "two private jets," the "most advanced yachts," and the "hundreds of race cars." (*See* Vice News Interview at 6:38-7:07 (Nov. 15 2017) (when asked whether he had any regrets over how he has fought his campaign against China, the Debtor said, "I have absolutely no regrets for what I have done over the past nine months. I have the wealthy life that everyone in the world dreams about. I have the biggest house in Hong Kong, thousands of square meters. I have the most luxurious apartment in London. I have the biggest place in Beijing. I have more than 10 properties in Pangu. I have two private jets. I have the most advanced yachts. I have hundreds of race cars. I have an apartment like this in New York. I don't have any material needs anymore.")).[14]

26. All Documents related to any income, revenue, Assets or advertisement revenue generated from the YouTube channel(s) possessed or controlled by the Debtor, the Debtor's Estate, Debtor's Family, or an Associated Entity.

27. Documents sufficient to show the identity, name, length of employment, and salary for each and every employee of the Associated Entities.

---

[14] This quote was spoken by Debtor in Chinese and translated into English by Vice News.

28.     All Documents related to any aircraft owned, controlled, or used by You, including without limitation the aircraft bearing tail number T7-GQM and any other aircraft registered in the Republic of San Marino, including without limitation copies of all registration documents and flight manifests showing flights taken by such aircraft and the individuals onboard such flights.

29.     All passports or similar Documents authorizing cross-border travel issued by any sovereign state, nation, city-state, or autonomous region to You, including but not limited to any expired or unused Documents, and all pages of such passports or similar Documents.

30.     All Documents related to any pledges of Assets of any Associated Entity, including Bravo Luck Limited, to any other Entity.

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ________________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ______________________________________
____________________________________________________________________________________________________
___________________________________ on (*date*) ___________________ ; or

☐ I returned the subpoena unexecuted because: ______________________________________________________________
____________________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ________________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

____________________________________________
*Server's signature*

____________________________________________
*Printed name and title*

____________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)

## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, | Case No. 22-50073 (JAM) |
| Debtor. | |

## NOTICE OF OBJECTION DEADLINE

Luc Despins, as the appointed Chapter 11 Trustee to the Debtor's Estate (the "Applicant"), has filed an Application for Rule 2004 Examination of Ho Wan Kwok (the "Rule 2004 Examination") with the U.S. Bankruptcy Court for the District of Connecticut. Notice is hereby given that any objection or response to the Rule 2004 Examination must be filed with the Court no later than August 5, 2022, in accordance with Fed. R. Bankr. P. 2002(a) and 9014 and Local Bankr. R. 2004-1(c).[1] In the absence of a timely filed objection, the proposed order regarding the Rule 2004 Examination ***may*** enter without further notice and hearing, see 11 U.S.C. section 102(1).

Dated: July 28, 2022
New Haven, Connecticut

LUC DESPINS, as appointed Chapter 11 Trustee
for HO WON KWOK

By: */s/ Patrick R. Linsey*
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 781-2847
plinsey@npmlaw.com

---

[1] Although objections to a Rule 2004 application are due seven days after filing under the Local Rules, the Trustee submits that a one-day extension of the objection deadline is appropriate given that some notice parties will not be served with the Application until Friday, July 29, 2022.

*and*

Nicholas A. Bassett *(pro hac vice* pending)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

 *and*

Avram E. Luft *(pro hac vice* pending)
Douglass Barron (*pro hac vice* pending)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
aviluft@paulhastings.com
douglassbarron@paulhastings.com

*Proposed counsel for the Chapter 11 Trustee*