# Exhibit 8

```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
                         BRIDGEPORT DIVISION


                                        .
 IN RE:                                 . Chapter 11
                                        .
 HO WAN KWOK,                           . CASE NO.: 22-50073 (JAM)
                                        .
              Debtors.                  .
 . . . . . . . . . . . . . . . . . . .
 PACIFIC ALLIANCE ASIA                  .
 OPPORTUNITY FUND L.P.,                 . Adv. Pro. No.: 22-05032
                                        .
              Plaintiff,                .
      v.                                .
                                        .
 HO WAN KWOK,                           .
                                        . Bridgeport, Connecticut
              Defendants.               . December 12, 2022
 . . . . . . . . . . . . . . . . . . .
```

### TRANSCRIPT OF MONTION FOR PRELIMINARY INJUNCTION
**BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE**

**(DAY 4)**

<u>APPEARANCES</u>:

| | |
|---|---|
| For the Plaintiffs: | PETER FRIEDMAN, ESQ.<br>DAVID HARBACH, ESQ.<br>STUART SARNOFF, ESQ.<br>DANIEL CANTOR, ESQ.<br>O'Melveny & Myers, LLP<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036 |
| Transcription Company: | Reliable<br>1007 N. Orange Street<br>Wilmington, Delaware 19801<br>(302)654-8080<br>Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1                 MR. FRIEDMAN:  Thank you, Your Honor.
2                 THE COURT:  Overrule your objection.  Continue,
3    counsel.
4    BY MR. WACHEN:
5         Q.   So --
6                 THE COURT:  I don't know if there -- I think you
7    answered that question?
8                 MR. WACHEN:  Did --
9                 THE WITNESS:  Thank you.
10                MR. WACHEN:  -- did you finish your answer?
11                THE COURT:  Yeah, I think that -- that answer,
12   you're done, you should ask another question.
13                MR. WACHEN:  Okay.  Yeah.  Thank you, Your Honor.
14   BY MR. WACHEN:
15        Q.   And what was your response to having received that
16   email with a proposed agreement?
17        A.   We decided to -- that we were -- we were sitting
18   and listening.  And if -- you know, and we would comply with
19   the agreement, and we were going to sit and listen, even
20   though there were numerous red flags.
21        Q.   And the meeting was on the 17th of November,
22   right?
23        A.   Correct, November 17th.
24        Q.   And who was at the meeting?
25        A.   So the was me, Aaron Mitchell, Nicholas Bassett,

1  the Trustee, my client Mr. Kwok, and a translator.
2       Q.   Where was it?
3       A.   It was at Brown Rudnick.
4       Q.   In New York City, right?
5       A.   In New York City, I'm sorry.
6       Q.   Did you take notes during the meeting?
7       A.   I did.
8       Q.   Do you still have those notes?
9       A.   I do.
10      Q.   And how did the meeting proceed?
11           MR. BASSETT:  Your Honor, I'm going to object
12 to -- as we objected --
13           THE COURT:  We can't hear you, Mr. Bassett.
14           MR. BASSETT:  I apologize.  For the record, Your
15 Honor, Nick Bassett from Paul Hastings, on behalf of the
16 trustee.  I'm going to raise the same objection that I raised
17 last week, when counsel attempted to inquire into the
18 substance of the meeting that occurred on the 17th.
19           Not only has counsel established that it took
20 place for the purpose of having settlement discussions, but
21 counsel has now acknowledged that he and everyone else in
22 attendance signed an NDA agreeing not to disclose the content
23 of the meeting.  I think it's entirely inappropriate for them
24 to disregard that all together, and to use it for a purpose
25 that suits their position in this matter.

1  Mr. Despins say at the meeting, and he's getting a narrative
2  response and is presumably is going to describe the entire
3  meeting, I don't see how that could possibly be consistent
4  with the ruling Your Honor just gave.
5              MR. WACHEN:  Well --
6              THE COURT:  Mr. Wachen, you need to ask the
7  question about -- maybe the way to ask it is to say, Mr.
8  Despins testified that he said X, is that what you heard Mr.
9  Despins say?
10             MR. WACHEN:  Well, unfortunately, Your Honor, I
11 don't have Mr. Despins testimony in front --
12             THE COURT:  I understand, but you've got notes,
13 you know what -- you asked the questions, you know what --
14 you know what he said.  In general you know what he said.
15             MR. WACHEN:  I know what he said in general, yes.
16 Okay.
17 BY MR. WACHEN:
18      Q.   Did Mr. Despins mention Al Capone at the meeting?
19      A.   He did.
20      Q.   And what did he say about Al Capone?
21      A.   He said was that -- he asked my -- Mr. Kwok if he
22 knew who Al Capone was, the gangster.  And he said, you know,
23 he went to jail for tax evasion.  And there was a series of
24 statements that that led to by the Trustee.  The first, with
25 respect to the whole implied tax issue, was to state that he

1  knows that there's this theory -- the -- he, meaning the
2  Trustee -- knows that there's this theory that the friends
3  and supporters of Mr. Kwok are supporting him financially.
4  And then, he said, I hope that they, or you, have declared
5  that in the United States.
6          He then proceeded to say that you, Miles, are --
7  have stated proudly that you have earned $500,000 of
8  consulting fees from one of these companies.  And again, he
9  said, you know, I assume that you've paid income tax or
10 you've declared that.  He immediately made the point that I
11 speak to the IRS and the SEC on a weekly basis, and you
12 better settle because soon it's going to be too late.
13         And so, that, among other statements that were
14 made by the Trustee -- we were perceiving that as, you know,
15 the threatening, intimidating behavior on his part.
16    Q.   Did he -- did he say at some point at the meeting,
17 pay me $250 million?
18    A.   Yes, he said, pay me $250 million.  Just to -- in
19 terms of the proposal, he described the proposal as -- to
20 Miles, you know, you keep the UBS claim, you keep the
21 share --
22         THE COURT:  Hold on, stop.  I said I didn't want
23 to hear about the terms and conditions of a settlement, so I
24 don't want to hear that.  That's not where we're going.
25         MR. WACHEN:  Okay, Your Honor.

1    Q.   And what was -- what was your reaction to his
2 request to pay him $250 million?  Without -- without going
3 into the terms of a proposal?
4    A.   Livid.  I was very upset, distraught.
5    Q.   And why was that?
6    A.   It deviated greatly from what was -- what I
7 believed a global settlement that was nearly imminent the day
8 before.
9    Q.   And do you know how Mr. Kwok perceived that
10 statement by Mr. Despins, pay me $250 million?
11        MR. BASSETT:  Objection.  Calls for speculation.
12 Calls for hearsay.
13        THE COURT:  Sustained.
14 BY MR. WACHEN:
15    Q.   At some point, did you respond to Mr. Despins in
16 his -- in his statement, pay me $250 million?
17    A.   Yes, I did.  There was two phases.  There was one
18 in the presence of everyone, and then there was a separate,
19 where I came back into the conference room, after showing my
20 client, and the translator, and Attorney Mitchell out and had
21 a response.  So --
22    Q.   Let's take them one at a time.
23    A.   Okay.
24    Q.   So what did you say in the room when everybody was
25 there?

1     A. So my immediate response was -- I actually
2 responded to the threat that the Trustee was going to lock
3 Mr. Kwok out of his apartment. That was the first response I
4 had, which came right after the $250 million demand. And I
5 told him that that was illegal, he couldn't do that. And he
6 said he was going to do it.
7     But then, I accused him of -- I said it was
8 outrageous, there was no legitimate basis for it, you know,
9 and at some point, I said that it was extortion. I either
10 said that with everybody or separately after I had shown out
11 those other individuals and confronted Nick and Luc.
12     Q. Okay. So at some point the other -- Mr. Kwok, the
13 translator, Mr. Mitchell left?
14     A. Right. I showed them out at the door, and I
15 decided to go back and confront Attorney Bassett and the
16 Trustee.
17     Q. And what -- what did you say at that point?
18     A. So I -- as I said, again, it was a lot of -- I
19 mean, I was very upset because again, I thought we were there
20 after months and months, and he was blowing it all up. And
21 at one point I said that Miles -- and when I said Miles, I'm
22 referring to his -- the support that he gets. I said, Miles
23 is never going to pay the $250 million, and the Trustee said,
24 he will when he's about to go to jail.
25     Q. And you stated that you thought that this was