UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:23-CR-118-1 (AT) |
| v. | : | |
| HO WAN KWOK, | : | |
| Defendant. | : | |

**JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN SUPPORT OF THE RESPONSE OF CHAPTER 11 TRUSTEE AND GENEVER
DEBTORS IN OPPOSITION TO DEFEDANT HO WAN KWOK'S MOTION FOR AN
ORDER AND WRIT STAYING BANKRUPTCY CASES
OR IN THE ALTERNATIVE FOR OTHER RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 bankruptcy case of Ho Wan Kwok (the "Debtor"), pending in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Case"), by and through its undersigned counsel, hereby submits this Joinder in Support of the Response of Chapter 11 Trustee and Genever Debtors in Opposition to Defendant Ho Wan Kwok's Motion for An Order and Writ Staying Bankruptcy Cases or in the Alternative for Other Relief (the "Objection") and respectfully represents in support thereof as follows:

1. The Committee joins in and incorporates by reference the arguments made in the Trustee's Objection and submits this statement and joinder to set forth additional reasons that further support the denial of Defendant Ho Wan Kwok's Motion for an Order and Writ Staying Bankruptcy Cases or in the Alternative for Other Relief (the "Motion").

2. The Committee was appointed by the Office of the United States Trustee in the Debtor's Bankruptcy Case on March 21, 2022. The Committee is charged with representing the interests of thousands of general unsecured creditors holding in excess of $30 billion dollars in claims against the Debtor.

3. Since the commencement of the bankruptcy proceedings, the Committee, as the fiduciary on behalf of the unsecured creditor body, has been involved in every major aspect of the Chapter 11 proceedings in order to protect the interests of the creditors.

4. The Committee has sought to ensure that the rights of the creditors are protected and to prevent the Defendant from avoiding his obligations under the Bankruptcy Code.

5. As a result of the Committee's opposition to the dismissal of the Debtor's Chapter 11 case (Bankruptcy Case, ECF Nos. Nos. 346, 406, 408), which was sought by his single largest creditor, Pacific Alliance Asia Opportunity L.P. ("PAX"), and consented to by the Debtor (Bankruptcy Case, ECF No. 344), and after a hearing held on May 25, 2022 (Bankruptcy Case, ECF No. 433), the Bankruptcy Court directed the appointment of a Chapter 11 Trustee by Memorandum of Decision entered June 15, 2022 (Bankruptcy Case, ECF No. 465). Thereafter, the Chapter 11 Trustee was appointed on July 8, 2022. The Committee strongly supported the Chapter 11 Trustee's appointment in light of the clear abuses by the Defendant of his obligations to his creditors and the Bankruptcy Court.

6. Shortly after his appointment, the Defendant sought to have the Chapter 11 Trustee removed (Bankruptcy Case, ECF No. 1274). The Committee opposed the Defendant's efforts (Bankruptcy Case, ECF No. 1313) on the basis that it was in the best interests of the creditors for the Chapter 11 Trustee to thoroughly investigate the Defendant's financial affairs and tenaciously pursue the recovery of the Defendant's assets that had been fraudulently

transferred or were otherwise held with family members or their companies that were alter egos of the Debtor or equitably owned by the Debtor. The Chapter 11 Trustee has been highly successful thus far in recovering such assets for the Chapter 11 estate and its creditors.

7. Any stay of the Defendant's Chapter 11 proceedings will cause significant harm to the creditors as the path to a potential recovery of their claims will grind to a halt for an undetermined period of time leaving open the possibility for the Defendant's family and associates to abscond with, and further dissipate, assets beneficially, if not legally, owned by the Defendant. The Committee thus strongly opposes a stay of the bankruptcy proceedings.

### A. The Bankruptcy Court Is the Proper Forum To Adjudicate The Debtor's Stay Motion

8. As the Trustee correctly points out in his Objection, pursuant to 28 U.S.C. § 1334(a), "the district courts shall have original *and exclusive* jurisdiction of all cases under title 11." (emphasis added). In turn, 28 U.S.C. § 157(a) provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Such a referral was made in the Connecticut District by the standing Order of the United States District Court for the District of Connecticut (Daly, J.), entered September 21, 1984, whereby the Connecticut District Court "referred to the Bankruptcy Judges of this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C., pending on June 27, 1984, or filed on or after June 28, 1984…."[1] Thus, by virtue of the foregoing, the Connecticut Bankruptcy Court has the exclusive jurisdiction over the Debtor's Chapter 11 case and is the only court that has the jurisdictional authority to stay same.

---

[1] The Standing Order may be found at https://www.ctd.uscourts.gov/sites/default/files/general-orders/1984_Standing_Order.pdf (last visited September 5, 2023).

9. The Connecticut Bankruptcy Court's exclusive jurisdiction as it relates to staying proceedings in a bankruptcy case or other disputed litigation over which it is presiding is further confirmed by 11 U.S.C. § 305(a), which provides in pertinent part that a bankruptcy court "may dismiss a case …, or suspend all proceedings in a case under this title, at any time if — (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." While a court also has the inherent power "to control the disposition of the causes on its docket," which is the source of its authority to stay a civil proceeding over which it is presiding "'when the interests of justice seem to require such action'," *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 96-97 (2d Cir. 2012) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 7 (1970)), the prerogative to do so is with the court presiding over the proceedings for which a stay is requested – which in this case is the Connecticut Bankruptcy Court. *See Matter of Nichols*, 615 B.R. 588, 593 (D. Ariz. 2020) (affirming bankruptcy court's denial of a stay of bankruptcy proceedings pending conclusion of parallel criminal proceedings against the debtors and observing that "[t]he bankruptcy court, being privy to the unique situation of its own proceedings, is the ultimate fact-finder as to which considerations are most appropriate" to support or deny such a stay request).

10. The Second Circuit Court of Appeals has previously acknowledged that while a District Court has jurisdiction to decide whether the automatic stay of 11 U.S.C. §362 applies, it should not exercise such jurisdiction where to do so would interfere with the Bankruptcy Court's ability to oversee reorganization proceedings.

11. *In re Baldwin-United, Corp. Litigation*, 765 F.2d 343 (2d Cir. 1985), is instructive on this issue, and provides guidance as to the appropriate exercise of jurisdiction by the District Court over matters involving the automatic stay under the Bankruptcy Code. At issue in that case was whether the Bankruptcy Court in the Southern District of Ohio or the District Court in the

Southern District of New York ought to be the first court to determine whether the automatic stay arising from the filing of the Chapter 11 proceedings applied to indemnity and contribution claims brought against the debtor after the bankruptcy filing. *Id.* at 345. The Second Circuit concluded that the Bankruptcy Court was the appropriate court to determine the applicability of the stay and reversed the order of the District Court enjoining the debtor from applying to the Bankruptcy Court for relief. *Id.*

12. That case involved an involuntary Chapter 11 brought against Baldwin-United Corporation and its subsidiary ("Baldwin") in Ohio arising from the debtor's sale of Single Premium Deferred Annuities ("SPDAs") and subsequent state court insurance rehabilitation proceedings. *Id.* at 345. Shortly after the bankruptcy filing, holders of the SPDAs sued the broker-dealers, including Paine Webber, who had marketed the policies alleging securities fraud and other claims. *Id.* Over three dozen of these lawsuits were ultimately consolidated into multidistrict litigation by the Judicial Panel on Multidistrict Litigation pending in the Southern District of New York. *Id.* The District Court ordered that one consolidated complaint be filed against each broker-dealer and a class action against Paine Webber was ultimately filed. *Id.*

13. Thereafter, Paine Webber filed a proof of claim in the Ohio bankruptcy proceedings against Baldwin asserting a claim for $700 million in damages for indemnity and contribution with respect to the class action. *Id.* It also filed a third-party complaint in the class action against Baldwin in the Southern District of New York. *Id.* Baldwin took the position that the filing of the third-party complaint violated the automatic stay and informed Paine Webber that it intended to put the issue before the Ohio Bankruptcy Court. However, before Baldwin took action in the Bankruptcy Court, Paine Webber obtained an *ex parte* temporary restraining order preventing Baldwin from applying to the Bankruptcy Court for relief. *Id.* The District Court subsequently

issued a preliminary injunction finding that the District Court, rather than the Bankruptcy Court, was the appropriate court to determine the scope of the automatic stay and that it would be an "unnecessary and improper intrusion on the jurisdiction" of the District Court if the Bankruptcy Court were to determine that the stay applied to Paine Webber's third-party complaint. *Id.* at 346.

14. On appeal, the Second Circuit preliminarily noted that the "District Court has jurisdiction to determine the applicability of the automatic stay." *Id.* Nevertheless, the Circuit Court held that the District Court's "issuance of the injunction challenged on this appeal was a misuse of its equitable power." *Id.* at 347.

15. The Court stated, "[b]y prohibiting Baldwin from applying to the Bankruptcy Court in Ohio for any relief against any defendant in MDL No. 581 the injunction improperly interferes with the reorganization proceedings in two respects." *Id.* at 347. First, the Court held that the injunction prevented "Baldwin from invoking the vital authority of the Bankruptcy Court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Bankruptcy Code." *Id.* at 348 *citing* 11 U.S.C. §105. The Court further stated that under its Section 105 powers, the Bankruptcy Court can "use its equitable powers to assure the orderly conduct of the reorganization proceedings." *Id.*

16. While acknowledging that the District Court has the power to issue all writs in aid of its jurisdiction and its proceedings by virtue of the All Writs Act, 28 U.S.C. § 1651, the Second Circuit nevertheless stated, "to whatever extent a conflict may arise between the authority of the Bankruptcy Court to administer this complex reorganization and the authority of the District Court to administer consolidated pretrial proceedings, the equities favor maintenance of the unfettered authority of the Bankruptcy Court." *Id.*

17. Second, the Circuit Court held that the injunction issued by the District Court prevented Baldwin from applying to the Bankruptcy Court for a determination of whether the automatic stay applied. The Court found that this impermissibly prevented the Bankruptcy Court from construing its own stay and reflected the District Court's implicit ruling that the stay was inapplicable to the third-party complaint. *Id.* at 348. The Court held, "[i]n the circumstances of Baldwin's Chapter 11 reorganization, the equities do not warrant either preventing the Bankruptcy Court from construing its stay or determining in the District Court whether the stay applies." *Id.*

18. As in *Baldwin*, the Bankruptcy Court is the appropriate forum to adjudicate any stay request made by the Debtor. Second Circuit precedent dictates this result as do the equities in this case. The Bankruptcy Court has been overseeing the Chapter 11 proceedings for the past 19 months and is intimately familiar with the web of sham corporations established by the Debtor and his close associates where he has hidden valuable assets from the creditors of his estate.

19. Should this Court choose to reach the merits of the Motion because it is not viewed as violative of the automatic stay, the Committee respectfully submits that it should be denied. The Chapter 11 Trustee has successfully recovered (and in some instances, liquidated for the benefit of creditors): (i) two luxury yachts; (ii) a $37 million dollar escrow fund; and (iii) the 100% equity interest in an entity known as Genever BVI, which in turn is the sole owner of Genever US which owns the Debtor's multi-million dollar apartment at the Sherry-Netherland hotel in New York pursuant to a settlement with Bravo Luck Limited (a company ostensibly owned by the Debtor's son, Mileson Guo a/k/a Qiang Guo and/or Guo Qiang) and Mileson Guo (both of whom were claiming an equity interest in Genever BVI). The Trustee is additionally pursuing recoveries for the estate of a valuable home in Greenwich, Connecticut and a mansion in Mahwah, New Jersey. The creditors will greatly benefit from the recoveries already obtained by the Chapter 11

Trustee and those assets that he continues to pursue, and will be prejudiced by delay and further opportunity for dissipation of assets if the Motion is granted.

20.    Finally, to the extent the Court is inclined to consider the Debtor's request for alternative relief, the Committee acknowledges the jurisdiction of the Court to adjudicate same. Moreover, the Committee consents to the Debtor's request for alternative relief to the same extent and on the same basis as the Chapter 11 Trustee.

WHEREFORE, the Committee respectfully requests that the Court deny the Debtor's Motion for the reasons set forth herein and those set forth in the Trustee's Objection, and grant such other and further relief as is necessary and just.

Dated: September 21, 2023

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HO WAN KWOK**

By:    */s/Kristin B. Mayhew*
Irve J. Goldman
Kristin B. Mayhew
PULLMAN & COMLEY, LLP
850 Main Street, 8th Floor, P.O. Box 7006
Bridgeport, CT 06601-7006
Telephone: (203) 330-2213
igoldman@pullcom.com
kmayhew@pullcom.com

Its Attorneys

ACTIVE/83201.1/KMAYHEW/11314049v1