UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

YANPING WANG,

                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/19/2023_

23 Cr. 118-3 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    The Government moves to disqualify Emil Bove, Esq., former Co-Chief of the Terrorism and International Narcotics Unit ("TIN") of the United States Attorney's Office for the Southern District of New York ("SDNY"), from representing Defendant, Yanping Wang, in this action. Mot., ECF No. 120; *see* Reply, ECF No. 125. Bove requests that the Court hold a *Curcio* hearing. Opp., ECF No. 124; Sur-Reply, ECF No. 127; *see United States v. Curcio,* 680 F.2d 881 (2d Cir. 1982). For the reasons stated below, the motion is DENIED, and Bove's request for a *Curcio* hearing is GRANTED.

## BACKGROUND[1]

I.   Procedural History

    Pursuant to an indictment dated March 29, 2023, Wang is charged with: (1) conspiracy to commit wire fraud, securities fraud, bank fraud, and money laundering; (2) wire fraud; (3) securities fraud; and (4) unlawful monetary transactions. *See* S1 ¶¶ 1–3, 5, 8, 10, 13, 26–36, 51–52, ECF No. 19. Wang and two co-defendants, including Ho Wan Kwok, are charged with defrauding thousands of victims of more than $1 billion by using a series of fraudulent

---

[1] The Court presumes familiarity with the facts and procedural history of this matter as detailed in prior orders, *see* ECF No. 56 at 1–9; ECF No. 110 at 1–2, and, therefore, only summarizes those facts necessary for its decision here.

businesses and investment opportunities; misappropriating victims' funds by laundering those funds through hundreds of bank accounts associated with at least eighty entities or individuals in several countries; and unlawfully using those funds to enrich themselves. *Id.* ¶¶ 1–3.

On March 20, 2023, Alex Lipman and Priya Chaudhry entered their appearances as counsel for Wang. ECF Nos. 4–5. Four months later, on July 22, 2023, Bove filed a notice of appearance as lead counsel for Wang. ECF No. 112. By letter dated July 22, 2023, Bove stated that Wang "retained [his] firm, Chiesa Shahinian & Giantomasi PC, to represent her in this matter in lieu of ChaudhryLaw PLLC."[2] ECF No. 113. By letter dated July 28, 2023, the Government expressed its intention to move to disqualify Bove. ECF No. 117. The Government stated that, after Bove filed his notice of appearance, "the Government advised [him] that it believes his proposed representation of Wang in this matter implicates the conflict-of-interest provisions of applicable rules of professional conduct." *Id.*

The Government filed its motion on August 4, 2023. Mot. On August 7, 2023, Chaudhry moved to withdraw as Wang's attorney. ECF No. 121; *see* ECF No. 122.

II. Factual Background

The Government argues that Bove should be disqualified based on his tenure as Co-Chief of TIN from September 19, 2019, through December 20, 2021. Mot at 1; *see* Bove Decl. ¶¶ 2–3, ECF No. 124-1. While Bove served in that capacity, TIN investigated Kwok, one of Wang's co-defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] Bove is now employed by a different firm, Blanche Law, but has affirmed his intent to continue representing Wang.

███████████████████████████████████████████████████████

████████████████████████████████████████ (the "TIN Matter"). Mot. at 3.

  A. TIN Matter

  Kwok emigrated from China to the United States in 2015 and later filed an application for political asylum, claiming that he is subject to persecution by the Chinese Communist Party. Mot. at 2. The application remains pending. *Id.* From April 2018 to May 2019, Kwok periodically communicated with a Federal Bureau of Investigation ("FBI") agent in the hopes of receiving assistance with his asylum application. *Id.* Bove did not play any role in those interactions. Opp. at 3; Bove Decl. ¶ 5.

  The TIN Matter was opened in early September 2019, "[e]leven days . . . [before] Bove was appointed Co-Chief of TIN." Mot. at 3. In late September 2019, the Assistant United States Attorneys ("AUSAs") working on the TIN Matter "drafted, and obtained for the FBI, a warrant to search Kwok's residence at the Sherry-Netherland Hotel in Manhattan" and a warrant to search "Kwok's then-office[.]" *Id.*[3] The FBI executed the warrants on October 3, 2019, and seized, *inter alia*, "more than 100 electronic devices and documents that were stored inside safes." *Id.* at 4. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

---

[3] This is the same location where Kwok was arrested in the instant action. Mot. at 4 n.3.

When the search warrants were executed, Bove was participating in a trial in *United States v. Hernandez*, 15 Cr. 379 (S.D.N.Y). Opp. at 3; Bove Decl. ¶ 4. The trial ended on October 18, 2019. Opp. at 3. Bove did not review, edit, or authorize the applications for the Kwok search warrants. Bove Decl. ¶¶ 7–8. After the *Hernandez* trial ended, Bove was generally aware that the FBI was reviewing the contents of the seized materials in connection with the TIN Matter, but he does not recall discussing the specific contents of the seized items. *Id.* ¶ 9. Bove provided general supervision to the AUSAs working on the TIN Matter. *Id.* ¶ 11; Ravener Aff. ¶¶ 7–8, ECF No. 128-1; Hanft Aff. ¶ 10, ECF No. 128-2. Bove had access to non-public information. Ravener Aff. ¶¶ 8–11; Hanft Aff. ¶ 10.

B. CFU Matter

The instant matter arises from a separate investigation, conducted by the Complex Frauds and Cybercrime Unit ("CFU") of the United States Attorney's Office for the SDNY, which opened around May 2020 (the "CFU Matter"). Mot. at 7. The indictment alleges that Kwok was the leader and director of the fraudulent scheme, and Wang was his "chief of staff" and held leadership positions at the entities used to perpetrate the fraud. S1 ¶¶ 6, 8. The CFU Matter and the TIN Matter involve different FBI agents, different AUSAs, and different alleged conduct and targeted offenses, although both matters concern investigations into Kwok and his activities. *See* Mot. at 6–8, 23; Opp. at 16. Although the Government states that Bove was aware of the CFU Matter, it does not allege that he had any supervisory responsibility for the CFU Matter or the AUSAs at its helm. Mot. at 8.

**DISCUSSION**

I. <u>Legal Standard</u>

"The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" *Wheat v. United States*, 486 U.S. 153, 158 (1988) (citing U.S. Const. amend. VI). "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent [her]." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). But the right to counsel of choice "is circumscribed in several important respects." *Wheat*, 486 U.S. at 159. The Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness." *Gonzalez-Lopez*, 548 U.S. at 152 (citation omitted). The Court also has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. Therefore, although "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom [s]he prefers." *Id.* at 159 (citations omitted).

Courts have the authority to disqualify an attorney based on their "inherent power to 'preserve the integrity of the adversary process.'" *Streichert v. Town of Chester*, No. 19 Civ. 7133, 2021 WL 735475, at *4 (S.D.N.Y. Feb. 25, 2021) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). Disqualification is "reserved for situations of prior representation, conflicts of interest, prosecutorial misconduct, and other

5

unethical attorney behavior." *United States v. Stewart*, 294 F. Supp. 2d 490, 494 (S.D.N.Y. 2003). "Although courts look to state disciplinary rules which provide valuable guidance when considering motions for disqualification, a violation of those rules may not warrant disqualification." *United States v. Schulte*, No. 17 Cr. 548, 2020 WL 534508, at *4 (S.D.N.Y. Feb. 3, 2020).

"Motions to disqualify are generally not favored," and, because they are "often tactically motivated" and "tend to derail the efficient progress of litigation," parties moving for disqualification "carry a heavy burden and must satisfy a high standard of proof." *Felix v. Balkin*, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999) (quotation marks and citations omitted). Parties cannot meet this burden by putting forth "mere speculation" or arguing in favor of the "mere appearance of impropriety." *Streichert*, 2021 WL 735475, at *5 (cleaned up). Ultimately, a motion to disqualify an attorney "is a matter committed to the sound discretion of the district court." *Schulte*, 2020 WL 534508, at *4 (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)).

II. Application

A. Disqualification

When the moving party is a former client of the adverse party's counsel as here, the challenged attorney may be disqualified if: (1) there is a "substantial relationship between the subject matter of [his] prior representation of the moving party and the issues in the present lawsuit"; and (2) he "had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client." *United States v. Prevezon*

*Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

The Government fails to establish the first prong, that a "substantial relationship" exists between the TIN Matter and the CFU Matter. The parties point to different standards to be applied in determining whether the two matters are "substantially related." Bove cites *Government of India v. Cook Industries, Inc.* for the proposition that the Government must establish that the matters are "identical" or "essentially the same." Opp. at 15 (citing *Cook Industries*, 569 F.2d 737, 740 (2d Cir. 1978)). The Government cites *Prevezon*, for the proposition that a "'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." Mot. at 14 (citing 839 F.3d at 239). Courts are divided on how they apply the two "substantial relationship" standards. *See United States v. Huawei Techs. Co.*, No. 18 Cr. 457, 2020 WL 903007, at *4 (E.D.N.Y. Feb. 25, 2020) (collecting cases).

But, under either test, the TIN Matter is not "substantially related" to the CFU Matter. Both tests turn on "whether the successive representations share common material factual issues." *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 272–73 (E.D.N.Y. 2015); *see Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 392 (S.D.N.Y. 2010) ("It is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes.") (collecting cases). Subsequent representations are substantially related "if the witnesses, testimony, and other evidence germane to one action are likely to be similar to the other." *New York v. Monfort Tr.*, No. 12 Civ. 3755, 2014 WL 5018607, at *5 (E.D.N.Y. Oct. 7, 2014) (citations omitted).

Having closely reviewed the parties' filings, including the *ex parte* and classified submissions, the Court concludes that the two matters do not share common material factual issues and that the "witnesses, testimony, and other evidence germane" to the TIN Matter are not "likely to be similar" to those in the CFU Matter. *Id.* As stated above, the two matters involve different investigative units, different FBI agents, different AUSAs, and different alleged conduct. *See* Mot. at 6–8, 23; Opp. at 16. The fact that Kwok was "the *focus* of the TIN Matter," Mot. at 20, does not establish that the matters are "substantially related" where those two investigations concerned different conduct. Further, the fact that Kwok was the focus of two separate investigations is not enough to establish that the two matters are substantially related as to Wang. Nor is the fact that the two investigations briefly overlapped in time sufficient for a finding of substantial relatedness. *See* Mot. at 21. In fact, many of the entities controlled by Wang and her co-defendants did not exist at the time Bove supervised the TIN Matter. *See* S1 ¶¶ 13–23.

The Court also rejects the Government's argument that the matters are substantially related because "the Government may offer evidence or call witnesses in its case-in-chief, or as part of a rebuttal case, related to the TIN Matter." Mot. 22. The Government contends that ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████  Likewise, the Government also argues that ███████████████████

███████████████████████████████████████████████████████

8

███████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████

███████

The Court agrees with the Government that there is a potential conflict between Bove's tenure as Co-Chief of TIN and his current representation of Wang. But the Court disagrees that this potential conflict is a ground for disqualification. The Government's arguments are based on "mere speculation," *Streichert*, 2021 WL 735475, at *5, and the mere possibility that evidence and witnesses from an unrelated investigation may be introduced in the instant matter is not enough to find that they are "substantially related."[4] This is particularly true given that the Government does not explain ████████████████████████████████████████ ████████████

Rather, for the reasons stated in more detail below, the potential conflict raised by the Government may be cured by a knowing and intelligent waiver at a *Curcio* hearing.[5] And similarly, for the reasons stated below, the Court also rejects the Government's argument that Bove should be disqualified because "Wang will not be able adequately to waive any conflict created by Bove's role[, and a]s a result, any conviction would likely be vulnerable to an appeal or collateral attack based on a claim of ineffective assistance of counsel." Mot. at 26–27.

---

[4] The cases cited by the Government which refer to the "potential" that confidential information could be shared, *see* Mot. at 13–14, are inapposite. The "potential" language in those cases does not apply to the "substantial relation" prong of the *Evans* test. *See, e.g.*, *Giambrone*, 117 F. Supp. 3d at 269; *Pergament v. Ladak*, No. Civ. 2011-2797, 2013 WL 3810188, at *3 (E.D.N.Y. July 23, 2013); *see also United States v. James*, 708 F.2d 40, 45 (2d Cir. 1983).
[5] For substantially the same reasons, the Court concludes that Bove should not be disqualified under New York Rule of Professional Conduct 1.11(a)(2) or 18 U.S.C. § 207 because the TIN Matter and the CFU Matter are not the same "matter."

The Court finds that the Government has failed to "carry [its] heavy burden and . . . satisfy a high standard of proof" to justify disqualification. *Felix*, 49 F. Supp. 2d at 267. Accordingly, the Government's motion is DENIED.

### B. *Curcio* Hearing

"The right to effective assistance of counsel also includes the right to be represented by an attorney who is free from conflicts of interest." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). "When a district court is sufficiently apprised of even the possibility of a conflict of interest, the court first has an 'inquiry' obligation." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). A court informed of a possible conflict of interest must "investigate the facts and details of the attorney's interest to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *Id.* If the court determines that there exists a "severe conflict—such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," the court is required to disqualify the attorney. *Id.*; *see also United States v. Fulton*, 5 F.3d 605, 612 (2d Cir. 1993). If the court determines that the attorney suffers from a "lesser or only a potential conflict," the court should conduct a *Curcio* hearing and may accept a defendant's knowing and intelligent waiver of her right to conflict-free counsel and permit the defendant to be represented by the attorney of her choice. *Levy*, 25 F.3d at 153.

A potential conflict of interest exists when "the interests of the defendant may place the attorney under inconsistent duties at some time in the future" that "result[] in prejudice to the defendant." *Perez*, 325 F.3d at 125 (citation omitted); *see Levy*, 25 F.3d at 152. "Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice

10

as to which right is to take precedence must generally be left to the defendant and not be dictated by the government." *Perez*, 325 F.3d at 125.

Here, the Court concludes that a potential conflict of interest exists because "the interests of [Wang] may place [Bove] under inconsistent duties at some time in the future." *Id.* (cleaned up). Therefore, a *Curcio* hearing is appropriate. As the Government contends, ████████ ████████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ These circumstances would then implicate an actual conflict of interest.[6] But such a conflict can be knowingly and intelligently waived so that Wang can be represented by her attorney of choice. *Levy*, 25 F.3d at 153. "Although such a conflict might require a defendant to abandon a particular defense or line of questioning, [s]he can be advised as to what [s]he must forgo." *Perez*, 325 F.3d at 127. In other words, so long as the attorney's conflict does not "jeopardize[] the integrity of judicial proceedings," courts "will not

---

[6] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

'assume too paternalistic an attitude in protecting the defendant from [her]self.'" *Id.* at 125–26 (quoting *Curcio*, 694 F.2d at 25)).

At the *Curcio* hearing, the Court shall advise Wang that Bove's prior government service will bar him from advancing certain defense strategies, and that if Wang nonetheless elects to retain Bove, she must fully abandon certain defenses. *See id.*; *United States v. Sterritt*, No. 21 Cr. 193, 2021 WL 4237112, at *2 (E.D.N.Y. Sept. 17, 2021) (conducting a *Curcio* hearing to advise the defendant that he must waive certain defenses if he chooses to keep his retained counsel, even if that "limitation may impair [the attorney's] ability to give [the defendant] the full, vigorous defense that [he is] entitled to"); *see also United States v. Arrington*, 941 F.3d 24, 43 (2d Cir. 2019) ("[D]istrict courts must at least advise the defendant of the dangers arising from the particular conflict . . . [w]here, as here, those dangers include giving up . . . strategic advantages." (citation omitted)).[7] Specifically, the Court shall advise Wang that if she decides to retain Bove and make a knowing and intelligent waiver of his potential conflict, she will be precluded from (1) arguing as a defense that her alleged misconduct was in opposition to the Chinese Communist Party; and (2) arguing that she was acting at the behest of the Federal Bureau of Investigation.

Further, the Court does not opine on whether Bove would be disqualified from representing Kwok, and that question is not before the Court. *Cf.* Reply at 6. However, counsel for Kwok has represented that Kwok intends to raise the defense that GTV, the social media

---

[7] The Court makes the determination of potential conflicts "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context" where "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." *Wheat*, 486 U.S. at 162. The Court is not required to wait until an actual conflict of interest before taking action; indeed, the *Curcio* hearing is designed to waive potential conflicts of interest. The Court's task is to "alert the defendant[] to the substance of the dangers" of the conflict "in as much detail as the court's experience and its knowledge of the case will permit." *Curcio*, 680 F.2d at 888.

platform at issue in the indictment, ECF No. 19 ¶ 10, "was founded to be a platform for anti-[Chinese Communist Party] activity." ECF No. 131 at 20. The Court shall not request that Kwok, who is not a party to this hearing, waive potential defenses to support Wang's retaining Bove as counsel. Therefore, the Court shall advise Wang that if she decides to retain Bove and make a knowing and intelligent waiver of his potential conflict, she must forfeit the option of entering a joint defense agreement with Kwok. *See Perez*, 325 F.3d at 127; *Arrington*, 941 F.3d at 43; *see* Reply at 7 (discussing a potential joint defense agreement between Wang and Kwok).

## CONCLUSION

For the reasons stated above, the Government's motion is DENIED, and Bove's request for a *Curcio* hearing is GRANTED. The Clerk of Court is directed to terminate the motions at ECF Nos. 120 and 121. The Court shall address Chaudhry's motion to withdraw as Wang's attorney after the *Curcio* hearing.

The *Curcio* hearing is scheduled for **October 30, 2023**, at **10:00 a.m.** At the hearing, the Court shall proceed with questioning as outlined in this order. The Court also directs that the CJA attorney on duty on October 30, 2023, Louis Fasulo, shall be appointed to represent Wang at the *Curcio* hearing and shall be available to consult with Wang before and during the *Curcio* hearing. By **October 23, 2023**, the parties may submit, for the Court's consideration, proposed questions to be posed to Wang at the *Curcio* hearing.

SO ORDERED.

Dated: October 19, 2023
New York, New York

_____
ANALISA TORRES
United States District Judge