UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

HO WAN KWOK,
    a/k/a "Miles Guo,"
    a/k/a "Miles Kwok,"
    a/k/a "Guo Wengui,"
    a/k/a "Brother Seven,"
    a/k/a "The Principal,"

KIN MING JE,
    a/k/a "William Je," and

YANPING WANG,
    a/k/a "Yvette,"

             Defendants.

**S1 23 Cr. 118 (AT)**


**THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO COMPEL**


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Micah F. Fergenson
Ryan B. Finkel
Juliana N. Murray
Assistant United States Attorneys
    *Of Counsel*

## **<u>TABLE OF CONTENTS</u>**

BACKGROUND ......................................................................................................................... 1

   I. The Mahwah Mansion ....................................................................................................... 1

   II. Kwok's Bankruptcy Stay Motion ..................................................................................... 5

   III. The Instant Motion ......................................................................................................... 7

ARGUMENT ............................................................................................................................. 7

   I. Kwok Has Failed to Establish a Valid Basis For His Discovery Requests ............................ 7

     A. Applicable Law ........................................................................................................... 7

     B. Discussion ................................................................................................................. 13

       1. Kwok's Request for SEC Communications Should Be Denied .................................. 14

       2. Kwok's Request for Trustee Communications Should Be Denied .............................. 19

   CONCLUSION ......................................................................................................................... 25

## PRELIMINARY STATEMENT

Kwok's motion seeking beyond-Rule-16 discovery—the Government's communications with the Securities and Exchange Commission ("SEC") and with Kwok's bankruptcy trustee ("Trustee")—is wholly unfounded. At best, Kwok's extraordinary discovery request is based on facts that are decidedly ordinary. The Government and the SEC conducted parallel investigations, and Kwok identifies nothing unusual about the Government's interactions with the SEC whatsoever, much less the substantial showing of bad faith required to receive the sort of discovery that Kwok seeks. So too with the Trustee. It is common—indeed, it is a best practice—for criminal prosecutors to coordinate and reach agreements with trustees where, as here, there are forfeitable assets that may also fall within the trustee's estate. Kwok's claims of spoliation with respect to the property located at 675 Ramapo Valley Road, Mahwah, New Jersey 07430 (the "Mahwah Mansion") are borderline frivolous. That is particularly true in view of the undisputed fact that Kwok's co-conspirators and associates, following Kwok's arrest and the unsealing of the Indictment's allegations regarding the Mahwah Mansion, tampered with the condition of the Mahwah Mansion to bolster Kwok's defense in this case—that is, they have fabricated evidence to obstruct justice in this very case. Kwok's other claims, regarding invasion of privilege (which has not happened, and simply would not happen) and a purported joint prosecution with the Trustee (for which there is no basis at all), are equally unfounded. There is simply nothing in the record indicative of any bad faith on the part of the Government. Kwok's motion should be denied without a hearing.

## BACKGROUND

### I.  The Mahwah Mansion

The Mahwah Mansion was purchased, renovated, and furnished with proceeds of the fraud

charged in the Indictment—specifically, G|CLUBS membership funds that were funneled through bank accounts in other entities' names.  (Dkt. 19 ("Indictment") ¶¶ 4, 16(b)-(c)).  As alleged in the Indictment, Kwok and his conspirators used G|CLUBS to defraud victims by falsely promising them purportedly highly valuable stock in GTV (*i.e.*, using G|CLUBS as a vehicle to continue the unlawful private placement offering after the SEC intervened to stop the GTV offering) and falsely promising them "a full spectrum of services" once they became G|CLUBS "members."  (*Id.* ¶ 15).  The Mahwah Mansion and furnishings that were purchased with misappropriated G|CLUBS membership funds were identified as specific property subject to forfeiture in the Indictment.  (*Id.* ¶ 55(v)).

As previously described (*see* Dkt. 148, at 2-4), on March 15, 2023, agents of the Federal Bureau of Investigation ("FBI") executed a search warrant at the Mahwah Mansion. Multiple FBI photographers meticulously documented the premises and its contents, taking over 2,000 photographs during the search, which photographs have been produced to the defendants in discovery.  The FBI also conducted aerial surveillance of the Mahwah Mansion prior to the search, which photographs and videos have been produced to the defendants.  The Government also seized voluminous physical evidence from the Mahwah Mansion, including, for example, electronic devices, Kwok's personal items (*e.g.*, custom-designed Brioni suits embroidered with Kwok's name), and certain of the extravagant furnishings purchased with misappropriated G|CLUBS membership funds.

Subsequent to the Government's public filing of the Indictment, which associated Kwok with the Mahwah Mansion, the defendants' associates and co-conspirators began to occupy the Mahwah Mansion. For example, on April 9, 2023, dozens of the defendants' associates went to the Mahwah Mansion to protest the defendants' detention, and on May 5, 2023, the defendants'

associates hosted another large gathering at the Mahwah Mansion.  These activities threatened to diminish the value of the Mahwah Mansion.

On or about June 28, 2023, the Trustee advised the Government that he had concluded that the Mahwah Mansion is property of Kwok's chapter 11 estate; accordingly, the Trustee and the Government conferred regarding the possible disposition of the Mahwah Mansion.  Unlike chattel or funds in a bank account, the Government generally cannot seize real property with a forfeiture-based seizure warrant prior to a final order of forfeiture—which order would come only after a criminal conviction, at the conclusion of the subsequent ancillary forfeiture proceeding.  Given that the defendants' associates were actively using the Mahwah Mansion (itself purchased with fraud proceeds), and that their occupation of the Mahwah Mansion threatened to dissipate the property's substantial value to both the Bankruptcy creditors and the victims of Kwok's fraud in the Government's criminal case, on July 6, 2023, the Government provided the Trustee with 12 photographs taken during the Government's March 15, 2023 search, illustrating that Kwok used the Mahwah Mansion as a *personal* residence.

On July 13, 2023, the Government and the Trustee executed a stipulation that would permit the Trustee to secure the value of the Mahwah Mansion during the pendency of the criminal case. *In re Ho Wan Kwok, et al.*, Case No. 23-05017 (D. Conn. Bankr.) (JAM), Dkt. 24, Ex. 1; *see also id.* at Dkt. 53, 56.  The stipulation further provided that the net proceeds from any sale of the Mahwah Mansion (less certain fees and administrative costs and a deemed expense of $1 million to be used to satisfy claims of allowed Bankruptcy creditors who are also victims in the criminal case) would serve as substitute *res* for the Mahwah Mansion.

On July 11, 2023, the Trustee filed an *ex parte* motion for a temporary restraining order and preliminary injunction regarding Kwok's associates' access to the Mahwah Mansion.  *In re*

*Ho Wan Kwok, et al.*, Case No. 23-05017, Dkt. 4 (D. Conn. Bankr.) (JAM).  On August 1, 2023, Judge Manning granted the order in part.  *See id.*, Dkt. 17.  On August 31, 2023, following additional briefing and hearings, Judge Manning granted the Trustee's motion and issued a modified preliminary injunction to restrict access to the Mahwah Mansion to: (a) the Security Services (as defined in the Preliminary Injunction); (b) the Trustee and his representatives and/or professionals; (c) the United States Department of Justice and its employees and representatives; (d) the FBI and its employees and representatives; (e) other federal, New Jersey state, or Mahwah municipal law enforcement agencies and their employees and representatives; (f) any other persons expressly authorized by the Trustee in writing (which can include email); and (g) any other person expressly authorized by the United States District Court for the Southern District for New York or the bankruptcy court.  *In re Ho Wan Kwok, et al.*, Case. No. 23-05017, Dkt. 58 (D. Conn. Bankr.) (JAM).

On September 1, 2023, the Trustee conducted a walkthrough of the Mahwah Mansion, which was video-recorded and photographed.  Following an August 30, 2023 motion filed by Kwok that sought to "preserv[e] the status quo" of the Mahwah Mansion (Kwok Br. 3), on September 12, 2023, the Trustee provided the Government with six photographs from the Trustee's September 1, 2023 walkthrough.  Significantly, those photographs illustrate that the defendants' associates and co-conspirators have been tampering with the interior of the property in an apparent effort to obstruct this criminal case by modifying the Mahwah Mansion to suit a defense narrative.  Specifically, the defendants' co-conspirators posted placards at room entrances that appear to suggest that the rooms of Kwok's Mahwah Mansion are, in fact, NFSC and/or G|CLUBS offices or rooms, as shown in the photographs below:

4

 

These after-the-fact placards were not present as of March 15, 2023, when the Government searched the Mahwah Mansion pursuant to a search warrant issued in this case.

## II.  Kwok's Bankruptcy Stay Motion

Prior to the filing of the instant motion, on August 30, 2023, Kwok filed a motion in this Court to stay the bankruptcy proceedings that Kwok voluntarily initiated in February 2022 (the "Bankruptcy Stay Motion").  (Dkt. 131 ("Bankr. Stay Mot.)).  In the event the Court denied his request for a stay, the Bankruptcy Stay Motion also sought alternative relief.  (Bankr. Stay Mot. 1, 28-30).  The alternative relief sought by Kwok included requests related to the Mahwah Mansion. In particular, Kwok requested that his "defense team" have continued, unchaperoned access to the Mahwah Mansion and sought to prevent the sale of the property in bankruptcy proceedings.   The alternative relief also included a request for an order that the Government not solicit or receive Kwok's privileged information or records from the Trustee.

On September 21, 2023, the Government filed its response.  (Dkt. 148).  Whereas the Trustee filed a brief opposing a stay of the bankruptcy, the Government took no position.  (Dkt. 148, at 1). With respect to Kwok's alternative requests, the Government explained first that

5

"Kwok's request regarding potentially privileged materials should be denied as moot," because the Government "has neither solicited nor received Kwok's potentially privileged information or records from the Trustee." (Dkt. 148, at 2).  Further, the Government advised that it did not "presently intend to do so, and will not do so absent agreement from Kwok's counsel (or the appropriate holder) or an order of this Court finding that such materials are not privileged and/or subject to the crime-fraud exception." (Dkt. 148, at 2).  Regarding Kwok's request for unfettered access to the Mahwah Mansion, the Government set forth the background also described above relating to the condition of the Mahwah Mansion.  (Dkt. 148, at 2-4).  In light of that, the Government explained, it was "*Kwok* and his associates who appear to have been doing what Kwok claims to seek to prevent, by materially altering the Mahwah Mansion to serve a defense narrative." (Dkt. 148, at 4).  Moreover, Kwok already had "voluminous documentation—comprising *thousands* of photographs, as well as videos—of the Mahwah Mansion." (Dkt. 148 at 5).  In that regard, "Kwok's attempt to analogize the circumstances" of the Mahwah Mansion "to thwarting access to a material witness is baseless." (Dkt. 148 at 5).  Nevertheless, the Government stated it would not object to Kwok's or Wang's criminal defense attorneys conducting a site visit to the Mahwah Mansion.  (Dkt. 148 at 5).

On October 5, 2023, Kwok filed a reply to the Government's response.  (Dkt. 152).  Kwok made several arguments in reply, none of which have merit.  Most significant, however, was what Kwok did *not* argue about or dispute.  Specifically, Kwok did *not* dispute that, since his arrest and the unsealing of the Indictment's allegations regarding the misappropriation of G|CLUBS funds to purchase, renovate, and furnish the Mahwah Mansion, Kwok's followers had materially altered the Mahwah Mansion by creating and posting placards suggesting that the Mahwah Mansion was a G|CLUBS facility.  That is, nowhere did Kwok deny that the evidence he was purportedly

seeking to maintain had, in reality, already been tampered with by his co-conspirators to suit a defense narrative.

## III.  The Instant Motion

Before the Government filed its opposition to Kwok's Bankruptcy Stay Motion, Kwok filed the instant motion seeking discovery—beyond the discovery provided for in criminal law or procedure—of communications between the Government and the Trustee, and between the Government and the SEC.  (Dkt. 143 ("Br.")).

<u>ARGUMENT</u>

## I.  Kwok Has Failed to Establish a Valid Basis For His Discovery Requests

### A.  Applicable Law

#### 1. *Brady* and Joint Prosecutions

"Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it."  *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995). This duty extends to the prosecution team.  In other words, a prosecutor "is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.'"  *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)); *accord United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022).

The Government's duty to obtain and produce Rule 16 and *Brady* material is limited to material in the possession of the prosecution team.  *Hunter*, 32 F.4th at 36 ("We have long rejected the notion that 'knowledge of any part of the government is equivalent to knowledge on the part of th[e] prosecutor.'" (quoting *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971))); *Avellino*,

136 F.3d. at 255 ("[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis."); *United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2014 WL 3673550, at *22 (S.D.N.Y. July 24, 2014), *aff'd in part*, 646 F. App'x 73 (2d Cir. 2016) (*Brady* is "not a discovery doctrine that c[an] be used to compel the Government to gather information for the defense.").

Although "[t]he Second Circuit has not yet articulated a test to decide when knowledge of *Brady* material may be imputed from one agency to another," *United States v. Velissaris*, No. 22 Cr. 105 (DLC), 2022 WL 2392360, at *2 (S.D.N.Y. July 3, 2022), the Circuit has provided guidance, and courts within this District have articulated a number of factors for determining the scope of the prosecution team and whether a joint investigation occurred.  The Circuit counsels that "the relevant inquiry [for determining whether a person is a member of the prosecution team] is what the person did, not who the person is."  *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006).  "Individuals who perform investigative duties or make strategic decisions about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (summary order).  "At bottom," the determination of who constitutes the prosecution team, "involves a question of agency law: should a prosecutor be held responsible for someone else's actions?"  *United States v. Meregildo*, 920 F. Supp. 2d 434, 443-44 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015).  "Generally, a principal is responsible for the knowledge of an agent when that agent has a duty to give the principal information or when the agent acts on his knowledge regarding a matter that is within his power to bind the principal.  An agent's duty to disclose is thus linked to

8

his power to bind the principal." *Id.*  In the context of a criminal investigation and prosecution, the individuals empowered to bind the prosecutor consist generally of those who "actively investigate[] the case, act[] under the direction of the prosecutor, or aid[] the prosecution in crafting trial strategy." *Meregildo*, 920 F. Supp. 2d at 442; *see also United States v. Barcelo*, No. 13 Cr. 38 (RJS), 2014 WL 4058066, at *9 (S.D.N.Y. Aug. 15, 2014) ("To determine whether someone is a member of the prosecution team—in other words, whether the prosecution can be deemed to have constructive knowledge of information held by that individual—the Court considers the totality of the circumstances, including whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy."), *aff'd*, 628 F. App'x 36 (2d Cir. 2015).

Applying these principles, the Second Circuit and courts in this District have consistently rejected efforts to impose discovery obligations on the Government related to information held by entities that do not act as agents of the prosecution, including cooperating witnesses, expert witnesses for the Government, other government agencies, and even separate components of the Justice Department.  *See, e.g.*, *Barcelo*, 628 F. App'x at 38 (holding that a cooperating witness was not a part of the prosecution team where he "played no role in the investigation or in determining investigation or trial strategy," and "did no more than provide information to the government and testify at trial"); *Stewart*, 433 F.3d at 299 (holding that a civilian employee of the Secret Service who testified as an expert witness for the Government was not a member of the "prosecution team" for Giglio purposes); *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) (holding that for Giglio and Jencks Act purposes, the Government had no discovery obligation related to information filed in an unrelated bankruptcy proceeding); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (holding that the reports made by FBI agents in the course

9

of investigations unrelated to the defendants' prosecutions were not possessed by the prosecution team); *Pina v. Henderson*, 752 F.2d 47, 49 (2d Cir. 1985) (holding that a prosecutor's constructive knowledge did not extend to a parole officer who "did not work in conjunction with either the police or the prosecutor"); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (rejecting "completely untenable position that 'knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor'"); *United States v. Morgan*, 302 F.R.D. 300, 304 (S.D.N.Y. 2014) ("[T]he prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation."); *Meregildo*, 920 F. Supp. 2d at 444 ("[I]n most cases, cooperating witnesses should not be considered part of the prosecution team."); *United States v. Merlino*, 349 F.3d 144, 154-55 (3d Cir. 2003) (holding that Government not required to obtain prison calls of cooperating witness to satisfy disclosure obligations).

Courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession, custody or control of another agency for *Brady* evidence only where the Government conducts a "joint investigation" with another state or federal agency.  *United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009) (affirming district court opinion holding that there was "no joint investigation with the SEC" and therefore the Government did not need to produce documents in the custody of the SEC); *SEC v. Stanard,* No. 06 Civ. 7736 (GEL), 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007) (finding it was "clear that the investigations, while they may have overlapped, were not conducted jointly" in denying the defendant's request for the Court to require the SEC to access and review FBI interview notes that were not in the SEC's possession, custody, or control); *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (holding that the Government and the NYSE, even if it were a state actor, did not conduct a joint investigation related to the policies of the NYSE); *Ferreira v. United States*, 350 F. Supp. 2d 550,

556-57 (S.D.N.Y. 2004) (holding that cooperation between the Government and NYPD was "not sufficient to make the Government and the state prosecutor members of the same prosecutorial team"); *United States v. Upton*, 856 F. Supp. 727, 749-50 (E.D.N.Y. 1994) (holding that the Government and FAA did not conduct a "joint investigation" even though the FAA provided two inspectors to assist the criminal investigation); *United States v. Guerrerio*, 670 F. Supp. 1215, 1219 (S.D.N.Y. 1987) (denying Rule 16 discovery request for grand jury minutes at the Bronx District Attorney's Office where there was no joint investigation with the Government and the Government had no control over the material).

To determine whether the criminal prosecution conducted a "joint investigation" with another agency, such that the other agency should be considered part of the prosecution team, courts consider a number of factors, including whether the other agency "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *United States v. Middendorf*, 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (citing *United States v. Blaszczak*, 308 F.Supp.3d 736, 741-42 (S.D.N.Y. 2018)); *see also United States v. Collins*, 409 F. Supp. 3d 228, 241 (S.D.N.Y. 2019) (finding no joint investigation where SEC and Government participated in some joint interviews); *United States v. Chow*, No. 17 Cr. 667 (GHW), ECF No. 69, at 87 (S.D.N.Y. Feb. 9, 2018) (finding no joint investigation where agencies shared information but made their own determinations regarding what documents to obtain and what facts to ask a witness); *Stanard*, 2007 WL 1834709, at *3 (FBI and SEC did not conduct a joint investigation despite participating in joint interviews during which only FBI took notes); *United States v. Rigas*, No. 02 Cr. 1236 (LBS), 2008 WL 144824, at *2

(S.D.N.Y. Jan. 15, 2008) (finding that parallel civil and criminal investigations were not "joint").

### 2. Discovery Beyond *Brady* or Rule 16

It has never been the case that any and all records or information in the Government's possession fall within the scope of its discovery obligations.  Rather, "[t]he prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  Similarly, Federal Rule of Criminal Procedure Rule 16(a)(1)(E)(i) requires the Government to produce, upon defense request, items "within the government's possession, custody, or control" that are "material to preparing the defense."  An item is "material to preparing the defense" under Rule 16 "if it could be used to counter the Government's case or bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180–81 (2d Cir. 1993).  In other words, as the Supreme Court has said, Rule 16(a)(1)(E)(i), authorizes production only of items that tend to "refute the Government's arguments that the defendant committed the crime charged." *United States v. Armstrong*, 517 U.S. 456, 462 (1996); *see also United States v. Rigas*, 258 F. Supp. 2d 299, 306 (S.D.N.Y. 2003) ("Rule 16(a)(1)(E)(i) entitles a defendant to documents or other items that are material to preparing arguments in response to the prosecution's case-in-chief."); *United States v. Allen*, No. 14 Cr. 272 (JSR), 2016 WL 315928, at *3 (S.D.N.Y. Jan. 8, 2016) (relying in part on *Armstrong* to deny a request for discovery to support a *Kastigar* claim).

Moreover, the mere fact that an item may be "useful" to the defense does not render it "material" under Rule 16. *Rigas*, 258 F. Supp. 2d at 307; *see also United States v. Parnas*, No. 19-CR-725 (JPO), 2021 WL 2981567, at *8 (S.D.N.Y. July 14, 2021) (denying motion under Rule 16(a)(1)(E)(i) for documents that "may contain evidence relevant to [defendant's] selective

prosecution claim" because defendant had "failed to make the requisite showing for such a claim").

"There must be some indication that the pretrial disclosure of the disputed evidence would . . .

enable[ ] the defendant significantly to alter the quantum of proof in his favor." *United States v.*

*Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (citation omitted). The defendant must make a prima

facie showing of materiality, *United States v. Finnerty*, 411 F.Supp.2d 428, 431 (S.D.N.Y. 2006),

and must "offer more than the conclusory allegation that the requested evidence is material," *Rigas*,

258 F. Supp. 2d at 307.

While Rule 16 does not authorize the production of materials that the defense seeks to

"challenge the prosecution's conduct of the case," *Armstrong*, 517 U.S. at 462, courts sometimes

authorize discovery on those issues.  Before doing so, however, they require that the defendant

make a substantial threshold showing that improper Government conduct in fact occurred.  *See*

*Wade v. United States*, 504 U.S. 181, 186 (1992) (defendant claiming that Government's refusal

to file a 5K motion was based on an unconstitutional motive must make a "substantial threshold

showing" before he can obtain discovery); *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.

1974) (defendant seeking discovery on a claim of selective prosecution must provide "some

evidence tending to show the existence of the essential elements of the defense" before discovery

authorized); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (same in the context of a

claim of vindictive prosecution).

**B.  Discussion**

Kwok's requests are baseless.  To obtain discovery beyond what the criminal law provides,

Kwok must make a substantial showing of bad faith.  Kwok has merely identified commonplace,

routine interactions between the Government and a regulatory agency with a parallel investigation

or a trustee administering assets that are also criminally forfeitable, and has come nowhere close

13

to satisfying his burden.  Kwok's motion should be denied without a hearing.

## 1. Kwok's Request for SEC Communications Should Be Denied

Kwok's request for the Government's communications with the SEC is unfounded, and his motion to compel such discovery should be denied.

### a. The Government and the SEC Conducted Parallel Investigations

As an initial matter, while Kwok has not formally moved for a finding that the Government and the SEC conducted a joint investigation, that contention undergirds his discovery request and is equally meritless.  The SEC is not part of the Government's prosecution team.  Although the Government and the SEC at times conducted joint interviews for the convenience of witnesses, most aspects of the Government's investigation were conducted without any involvement of the SEC:

- the SEC played no role in the Government's charging decisions or the development of the Government's prosecutorial strategy;

- likewise, the Government played no role in the SEC's charging decisions or the development of the SEC's litigation strategy;

- no one from the SEC was designated a special Assistant U.S. Attorney to work on the criminal investigation;

- at jointly conducted interviews, the SEC did not take notes during the interviews and does not have any notes from joint interviews;

- at jointly conducted interviews, witnesses were told that the agencies' investigations were separate, that the interviews were conducted together only as a matter of convenience, and that, if there were to be a proffer agreement, the witness would enter into a separate agreement with each agency;

- the SEC was not involved in presenting this case to the grand jury and did not receive grand jury transcripts;

- the SEC did not participate in the execution of search warrants or the responsiveness reviews of materials obtained pursuant to search warrants;

- the SEC did not obtain materials produced to the Government pursuant to grand jury subpoenas; and

- the SEC has not accompanied the Government to Court.

(*See* Ex. A ("Murray Decl.") ¶ 2).  *See Collins*, 409 F. Supp. 3d at 242 (citing many of these factors in support of a finding that the SEC and the Government did not conduct a joint investigation); *United States v. Alexandre*, No. 22 CR. 326 (JPC), 2023 WL 416405, at *6-8 (S.D.N.Y. Jan. 26, 2023) (same).  These factors, considered together, weigh heavily in support of a finding that the Government and the SEC engaged in separate investigations, notwithstanding their focus on overlapping subject material.

Even though the SEC is not part of the prosecution team, the Government has voluntarily requested from the SEC all documents that the SEC obtained from third parties, and has already turned over these documents to the defense.  In the event the SEC produces additional documents to the Government that it received from third parties, the Government will promptly produce those documents to defense counsel.

None of the facts cited by Kwok establish the existence of a joint investigation in this case.  Rather, Kwok seeks to paint as unusual or suspect facts that are routine in the parallel investigation context, such as the Government and the SEC bringing charges on the same date (Br. 21).  *See, e.g.*, *SEC v. Shkreli*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029, at *7 n.6 (E.D.N.Y. Mar. 22, 2016) ("The court finds no fault in the SEC's commencement of the civil action at or around the time the criminal indictment was unsealed, given the SEC's independent mandate to enforce the securities laws and the need to commence an action before expiration of the statute of limitations.").  Kwok also points to the fact that the Government obtained documents and information from the SEC that was cited in the Government's affidavits supporting search warrants (Br. 20), but that is entirely normal and appropriate.  The Government routinely obtains documents

15

and information from any number of individuals and entities in its investigations, and the Government is aware of no authority for the proposition that that bare fact transforms those sources of information into members of the prosecution team. To the contrary, courts have specifically rejected that proposition. *See, e.g.*, *Meregildo*, 920 F. Supp. 2d at 445-46 (holding that cooperating witness was not a member of the prosecution team); *United States v. Barcelo*, 628 F. App'x 36, 38-39 (2d Cir. 2015) (same); *Stewart*, 433 F.3d at 298-99 (holding that an expert witness who analyzed evidence, assisted the prosecution in preparing cross-examination questions, participated in a mock examination, and testified at trial was not a member of the prosecution team). Indeed, it would be highly unusual if the SEC refused to provide information to the Government in connection with an ongoing criminal inquiry into a massive fraud, such as the one perpetrated by Kwok. "Moreover, 'there is no general rule' prohibiting a civil enforcement agency such as the SEC from 'sharing . . . evidence acquired through civil discovery with criminal prosecutors.'" *United States v. Rhodes*, No. 18 Cr. 887 (JMF), 2019 WL 3162221, at *3 (S.D.N.Y. July 16, 2019) (quoting *United States v. Fiore*, 381 F.3d 89, 94 (2d Cir. 2004)). "Indeed, because '[s]ecurities fraud is a proper subject of both administrative and criminal investigations . . . SEC enforcement officials and prosecutors all expect coordination at some investigative level and perceive the various proceedings as integral to each other." *Rhodes*, 2019 WL 3162221, at *3 (quoting *Fiore*, 381 F.3d at 94). Kwok fails to cite any authority for the proposition that an independent agency becomes part of the prosecution team simply by complying with a voluntary information request.

Likewise, the fact that the Government and the SEC—both tasked with enforcing anti-fraud laws and protecting victims, and both investigating the same conduct perpetrated by the same individuals against the same victims—may have shared certain evidence and informed each other of anticipated investigative or enforcement steps is wholly unremarkable and routine. Such

16

"coordination and sharing between the lawyers and agents on the criminal prosecution team, on the one hand, and [a civil enforcement authority], on the other, is, in itself, unexceptional and unproblematic." *Rhodes*, 2019 WL 3162221, at *3.

In short, applying these facts and circumstances to well-settled legal standards makes plain that the SEC conducted a parallel investigation and was not part of the Government's prosecution team.

### b. Kwok's Discovery Request Is Meritless

In light of the foregoing, Kwok's request for internal communications between the Government and the SEC is baseless.  No rule of criminal discovery mandates the production of materials simply because the defense speculates that the materials may be useful in making a defense motion. To the contrary, courts in this District have specifically rejected such requests. *See, e.g.*, *Parnas*, 2021 WL 2981567, at *8 (denying motion under Rule 16(a)(1)(E)(i) for documents that "may contain evidence relevant to [defendant's] selective prosecution claim" because defendant had "failed to make the requisite showing for such a claim").

Kwok's reliance on *Rhodes* is particularly misplaced.  *Rhodes* directly rejected the defense suggestion made here that it is unusual or problematic for criminal and civil authorities to share information, instead holding that such "coordination and sharing between the lawyers and agents on the criminal prosecution team, on the one hand, and [a civil enforcement authority], on the other, is, in itself, unexceptional and unproblematic." 2019 WL 3162221, at *3.  Judge Furman explained that such coordination is only problematic if it is done in "bad faith," such as where a government authority "made affirmative misrepresentations or conducted a civil investigation solely for purposes of advancing a criminal case." *Id.* (quoting *United States v. Stringer*, 535 F.3d 929, 937 (9th Cir. 2008), and also citing *United States v. Kordel*, 397 U.S. 1, 11-12 (1970) and

17

*United States v. LaSalle National Bank*, 437 U.S. 298 (1978)).

In light of the "unexceptional and unproblematic" nature of coordination in parallel proceedings, *Rhodes* held that a criminal defendant is not entitled as a matter of course to internal communications between criminal and civil authorities. Rather, in order to obtain "even limited discovery" regarding a claim of improper coordination between civil and criminal authorities, a defendant must "make a substantial preliminary showing of bad faith." *Rhodes*, 2019 WL 3162221, at *4 (quoting *United States v. Gel Spice Co.*, 773 F.2d 427, 434 (2d Cir. 1985)). Judge Furman determined that the defendant in *Rhodes* had failed to make that showing, and therefore denied his discovery request, a fact that Kwok omits from his brief. See *Rhodes*, 2019 WL 3162221, at *5.

Kwok falls far short of satisfying his burden of making "a substantial preliminary showing of bad faith." Indeed, Kwok has failed to point to *any* facts tending to show that the coordination between criminal and civil authorities was exceptional or problematic. As discussed above, the coordination in this case was wholly routine. Kwok notes that Judge Furman required the Government in *Rhodes* to submit an affidavit concerning coordination with civil authorities, but that stemmed from an unusual fact uniquely present in the *Rhodes* case: the SEC did not bring parallel charges against the defendant in *Rhodes* despite issuing him a subpoena for documents (to which the defendant responded), and the fruits of that subpoena were used in the parallel criminal case. In other words, it was the *absence* of a simultaneous and parallel civil enforcement action that Judge Furman found unusual, and which led him to require an affidavit from the Government. By contrast, this case involves the standard fact pattern of parallel criminal and civil actions being filed at the same time, which undermines any assertion that the SEC action was brought solely for purposes of advancing a criminal case.  In any event, this opposition is an accompanied by an

18

affidavit from a member of the prosecution team.  (*See* Murral Decl.).

In sum, Kwok has failed to articulate even a facially plausible theory of bad faith under the relevant legal standards. That is unsurprising given that any coordination between the SEC and the Government in this case was, at all times, "unexceptional and unproblematic." *Rhodes*, 2019 WL 3162221, at *3. Accordingly, and for the reasons set forth above, Kwok's motion for discovery concerning the Government's communications with the SEC should be denied.

### 2.  Kwok's Request for Trustee Communications Should Be Denied

Kwok's arguments with respect to the Trustee are equally meritless.  Kwok's strained attempts to discern Government misconduct through unexceptional interactions with a bankruptcy trustee are contrary to the record and the law.  Kwok comes nowhere close to meeting his burden to establish a "substantial preliminary showing of bad faith."  *Rhodes*, 2019 WL 3162221, at *4.

*First*, Kwok has failed to show any basis for a claim of spoliation.  Simply put, there is absolutely no risk of spoliation of evidence due to the Settlement Agreement between the Government and the Trustee concerning the Mahwah Mansion.  Far from spoliating evidence of the Mahwah Mansion's condition, the Government has produced thousands of photographs of the Mahwah Mansion, from March 2023 and September 2023, as well as voluminous video surveillance recorded at various times between August 2022 and September 2023, as well as voluminous video of the Mahwah Mansion's interior from September 2023.  Kwok does not explain how that voluminous documentary record of the Mahwah Mansion's condition on multiple dates—which is in Kwok's possession—has been, or would be, somehow spoliated; nor does Kwok explain why a site visit by his criminal defense attorneys of record would be somehow

insufficient to satisfy any further defense needs.[1]  Instead, Kwok simply asserts here, as in the Bankruptcy Stay Motion, that "the existing state of the Mahwah [Mansion] must be maintained." (Br. 16).  But two problems with that assertion remain.  The first is that, in reality, Kwok's co-conspirators are altering the state of Mahwah Mansion.  They are attempting to obstruct justice in this case by tampering with the property's condition—following Kwok's arrest and the unsealing of the Indictment's allegations regarding the Mahwah Mansion—to make Mahwah Mansion look like a G|CLUBS facility.  Indeed, Kwok could not and did not even dispute, in connection with the Bankruptcy Stay Motion, that his followers had tampered with the state of the Mahwah after the Government's allegations about the Mahwah Mansion became known.  (*See* Dkt. 152).  The second problem is that, as noted, Kwok does not explain why the voluminous evidence in his possession (including photographs and videos) documenting the Mahwah Mansion on particular dates has not "maintained" the state of the Mahwah Mansion.  Kwok fails to address these points because this motion, like the Bankruptcy Stay Motion, is in fact an attempt for Kwok to obtain control over the Mahwah Mansion for the conspiracy's *continued* use.  (*See* Br. 17-18 ("evidence showing how the property was configured and used prior to Mr. Kwok's arrest *and how it continues to be used—barring the Trustee's interference*—in service to the Chinese pro-democracy dissident movement constitutes exculpatory evidence that Mr. Kwok is entitled to present to the jury." (emphasis added))).  This Court should reject Kwok's attempts, reflected in

---

[1] In his reply to Bankruptcy Stay Motion, Kwok asserts that having supervision for such a site visit is "tantamount to condoning a government spy in the defense camp."  (Dkt. 152 at 8).  Rhetoric aside, the Government is willing to meet and confer with Kwok regarding the appropriate safeguards to ensure that there is no further tampering with the Mahwah Mansion by Kwok's associates and co-conspirators.  As already noted in the Government's response to the Bankruptcy Stay Motion, Kwok's attorneys did not contact the Government regarding a site visit to the Mahwah Mansion prior to filing either of his motions.  They still have not done so.

this motion and in the Bankruptcy Stay Motion, to have this Court greenlight the tampering of evidence—tampering that is being done to obstruct justice in this criminal case and to further a global conspiracy that already stole over a billion dollars from Kwok's followers.

Relatedly, there is nothing exceptional or improper about the Government's settlement agreement with the Trustee regarding the Mahwah Mansion.  The Government has worked with the Trustee to try to efficiently allocate resources to secure and recover some of the more than a billion dollars that Kwok and his co-conspirators stole or misappropriated. The Government intends to return the hundreds of millions of dollars of cash and property that it has seized to victims of the defendants' crimes—an action that necessarily implicates the Trustee's responsibilities regarding claims to those assets by Kwok's bankruptcy creditors.  With respect to the Mahwah Mansion in particular, the Government and the Trustee maintain potentially competing claims to that property, and the agreement will allow the value of that property to be preserved—ceasing, among other things, the modifications made to the property by the defendant's co-conspirators and associates in an effort to impede justice—pending resolution of issues related to forfeiture, restitution, and the bankruptcy estate.[2]  There is absolutely nothing unusual about the Government working with a trustee regarding forfeitable assets in which the trustee also has an interest.  The many precedents for such coordination—which the Trustee referenced during the bankruptcy court hearing that Kwok quotes repeatedly in his motion, albeit in a portion of the transcript that Kwok omits from his exhibit[3]—go back years in multiple

---

[2] In his reply to the Bankruptcy Stay Motion, Kwok states the Government sought improperly to "circumvent this Court" by entering the agreement with the Trustee.  (*See* Dkt. 152 at 7-8).  That is not just hyperbolic.  It is false.  The agreement merely preserves the value of this forfeitable asset, and this Court will address forfeiture issues, including with respect to the Mahwah Mansion, following trial and conviction, as in every case.

[3] See pages 28-29 of the complete transcript, attached as Exhibit B.

jurisdictions.[4]  For example, in the criminal case against Marc Dreier, Judge Rakoff approved of various settlement agreements involving the Government and bankruptcy trustees, including a "Coordination Agreement" between the Government and the Chapter 11 Trustee in that case. *United States v. Dreir*, 09 Cr. 86 (JSR), Dkt. 141 (S.D.N.Y. Feb. 5, 2010).  As another example, in the massive Bernie Madoff fraud, the Government worked *extensively* with the court-appointed trustee who oversaw the liquidation of Madoff's company under the Securities Investor Protection Act ("SIPA").[5]  In fact, that same trustee—who has also overseen Madoff's personal bankruptcy

---

[4] *See, e.g.*, *In re Maresca*, No. 20-11483 (KHK), Dkt. 244 (E.D. Va. Bankr. Sept. 9, 2021) (bankruptcy trustee's motion for approval of a Coordination and Settlement Agreement with the Government, which had forfeiture and restitution claims, regarding a property that was "the only significant asset of th[e] estate"); *United States v. Merrill*, No. 14-40028 (TSH), Dkt. 367 (D. Mass. July 11, 2017) (restitution order "provid[ing] for administration and payment of restitution to victims by the Trustee in the related Chapter 11 cases"); *In re Rothstein*, No. 09-34791 (RBR), Dkt. 5704 (S.D. Fla. Bankr. July 14, 2014) (motion to approve settlement between Government and bankruptcy trustee regarding forfeiture and restitution); *In re Goldberg*, No. 09-23370 (ASD), Dkt. 424 (D. Conn. Bankr. May 31, 2011) (motion for bankruptcy trustee to administer restitution in criminal case); *id.* at Dkt. 462 (order granting motion); *United States v. Brandau*, No. 99-8215 (DMM), Dkt. 734 (S.D. Fla. Apr. 25, 2000) (agreement between Government and bankruptcy trustee regarding the sale and maintenance of assets identified for forfeiture); *id.* at Dkt. 759 (order approving agreement).

[5] In Wang's letter supporting the Bankruptcy Stay Motion, she cites a letter filed by the Government in an SEC action against Madoff.  (*See* Dkt. 135 at 4).  While it is true that the DOJ opposed the initiation of bankruptcy proceedings for Madoff's estate in that case, Wang's letter omits a critical point.  Specifically, Wang omits the fact that the Government's letter concluded by noting that "[t]his Office also continues to work with the SIP[A] Trustee to maximize recovery for victims," and that "[g]iven this ongoing effort," the initiation of bankruptcy proceedings "is particularly inapt."  *SEC v. Madoff*, No. 08 Civ. 10791, Dkt. 50 at 5 (S.D.N.Y. Apr. 10, 2009). Indeed, two months after the Government's letter, the personal bankruptcy estate of Madoff was consolidated into the SIPA proceeding being administered by the SIPA trustee who has coordinated so closely and effectively with the Government regarding forfeiture and restitution. *See Sec. Investor Protection Corp. v. Bernard L. Madoff Investment Sec. LLC*, No. 09-11893 (BRL)   (S.D.N.Y.   Bankr.   June   9,   2009),   available   at https://www.madofftrustee.com/document/other/252_order.pdf.

estate since June 9, 2009[6]—was even simultaneously appointed as a Special Master in the criminal

case "to oversee the process of remission or mitigation under the forfeiture laws."  DOJ, *Manhattan*

*U.S. Attorney Announces Agreement to Recover $7.2 Billion for Victims of Bernard L. Madoff's*

*Ponzi Scheme from Estate of Jeffry M. Picower* (Dec. 17, 2010).[7]  In connection with "the largest

single forfeiture in U.S. history," of approximately $7.2 billion, to take one example, relevant

settlement agreements stipulated that the trustee would administer approximately $5 billion of the

funds "through the SIPA liquidation proceedings," while administering approximately $2.2 billion

through DOJ's remission or mitigation process.  *Id.*  Precedent also refutes Kwok's suggestion

here, and in the Bankruptcy Stay Motion, that there is something untoward about the Trustee's

receipt of fees for his work recovering assets on behalf of Kwok's creditors.  Like a bankruptcy

trustee, a SIPA trustee's fees are compensated and, to date, the SIPA trustee in *Madoff* has received

over $2.2 billion in fees (while recovering over $14.6 billion in assets).  *See* The Madoff Recovery

Initiative, *Recoveries to Report Fees Ratio: December 11, 2008 to September 20, 2023*.[8]  Far from

being improper or unusual, the Government coordinating with trustees, like the Trustee in Kwok's

bankruptcy, is a best practice that prevents needless fighting over assets and results in maximal

recovery in the aftermath of rampant frauds.[9]

---

[6] *See Sec. Investor Protection Corp. v. Bernard L. Madoff Investment Sec. LLC*, No. 09-11893 (BRL) (S.D.N.Y. Bankr. June 9, 2009), available at https://www.madofftrustee.com/document/other/252_order.pdf.

[7] Available at https://archives.fbi.gov/archives/newyork/press-releases/2010/nyfo121710.htm.

[8] Available at https://www.madofftrustee.com/recovery-chart-fees-00.html.

[9] Nor is there anything improper about the Government providing a set of photographs to the court-appointed Trustee here.  In his Bankruptcy Stay Motion, Kwok attempted to suggest that the Government violated the protective order in doing so (Kwok Br. 3, 21), but, as already explained in the Government's response (Dkt. 148, at 3 n.2), Kwok is wrong.  Moreover, the photographs were responsive to the Government's search warrant executed at the Mahwah Mansion.  As an

*Second*, Kwok's argument regarding a supposed need to protect his privileged information residing with the Trustee is meritless.  The Government has already explained that it has neither sought or received such information, and would do so only under appropriate circumstances.  (Dkt. 148, at 2).[10]

*Third*, the interactions between the Government and the Trustee are unexceptional. Kwok's suggestion that the Trustee could be a member of the prosecution team is baseless based on the circumstances:

- the Government initiated its investigation independent of the Trustee, years before Kwok voluntarily filed for bankruptcy and the Trustee was even appointed;

- the Trustee played no role in the Government's charging decisions or the development of the Government's prosecutorial strategy;

- the Trustee has not participated in any of the Government's interviews;

- the Trustee was not involved in presenting this case to the grand jury and did not receive grand jury transcripts;

- the Trustee did not participate in the execution of search warrants or the responsiveness reviews of materials obtained pursuant to search warrants;

- the Trustee did not obtain materials produced to the Government pursuant to grand jury subpoenas; and

- the Trustee has not accompanied the Government to Court.

(Murray Decl. ¶ 3).

---

analogy, materials responsive to search warrants are regularly shared with regulatory agencies engaged in parallel investigations, and such sharing is entirely proper and, indeed, commonplace.

[10] Kwok's reply in connection with the Bankruptcy Stay Motion argues that the Government's inclusion, in its description of appropriate circumstances where it could obtain the privileged information of Kwok, of agreement from Kwok "or the appropriate holder [of the privilege]" had created some kind of "loophole." (Dkt. 152 at 8).  Kwok is wrong.  The Government included that parenthetical addition merely to encompass circumstances in which Kwok is not, in fact, the appropriate holder of the privilege, such as when a corporate entity, rather than an individual, actually holds the privilege.

To be clear, Kwok does not actually claim that the Trustee is part of the prosecution team. He seeks communications to "fully investigate whether the Trustee" is part of the prosecution team. (Br. 19). But, as set forth above, that is not a basis for obtaining discovery beyond what criminal law and procedure provides. Kwok identifies "coordination" and "information sharing" between the Government and the Trustee, but such coordination between the Government and another party is wholly "unexceptional and unproblematic" and provides no basis for the extraordinary discovery that Kwok seeks. *Rhodes*, 2019 WL 3162221, at \*3; *see also Meregildo*, 920 F. Supp. 2d at 441-42 ("Interacting with the prosecution team, without more, does not make someone a team member.").

## <u>CONCLUSION</u>

It is plain that neither the SEC nor the Trustee are members of the prosecution team in this case. And in order to obtain discovery beyond what the criminal rules provide, a defendant must make a substantial showing of bad faith on the part of the Government. Kwok has not made that showing, because he cannot make that showing. The Government's interactions with the SEC and the Trustee have not only been in good faith, but such interactions are routine and unexceptional. To the extent there is anything exceptional about the circumstances presented here, it is that Kwok has filed two motions at least partly in pursuit of allowing his co-conspirators and associates to further obstruct justice and perpetuate his massive fraud by retaking possession of the Mahwah Mansion. Kwok's motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s/_____
     Micah F. Fergenson
     Ryan B. Finkel
     Juliana N. Murray
     Assistant United States Attorneys
     212-637-2190/-6612 /-2314