UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                *Plaintiff,*

        v.

HO WAN KWOK,

                *Defendant.*

**FILED PARTIALLY UNDER SEAL**

Case No. 1:23-CR-118-1 (AT)

## HO WAN KWOK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS RENEWED MOTION FOR PRETRIAL RELEASE

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, New York 10007
(646) 763-1490

Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

*Attorneys for defendant Ho Wan Kwok*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT................................................................................................ 1

ARGUMENT ............................................................................................................................. 4

THE COURT SHOULD GRANT THE MOTION BECAUSE THE GOVERNMENT CANNOT
MEET ITS HEAVY BURDEN OF PROVING THAT MR. KWOK'S CONTINUED
DETENTION IS THE ONLY SOLUTION HERE ................................................................... 4

    I.  THE GOVERNMENT HAS FAILED TO PROVE THAT ONLY CONTINUED
        DETENTION WILL PREVENT OBSTRUCTION OF JUSTICE ............................. 5

    II.  THE GOVERNMENT HAS FAILED TO PROVE THAT ONLY CONTINUED
        DETENTION WILL PREVENT FUTURE RISK TO THE COMMUNITY ............. 7

    III. THE GOVERNMENT HAS FAILED TO PROVE THAT ONLY CONTINUED
        DETENTION WILL PREVENT A SERIOUS FLIGHT RISK .................................. 8

    IV. MR. KWOK'S WORSENING MEDICAL CONDITION PROVIDES AN
        ADDITIONAL REASON FOR THE COURT TO RELEASE HIM FROM
        DETENTION ......................................................................................................... 13

CONCLUSION ........................................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States v. Berrios-Berrios*,
   791 F.2d 246 (2d Cir. 1986)....................................................................... 7

*United States v. Bilbrough*,
   Case No. TDC-20-0033, 2020 U.S. Dist. LEXIS 58337
   (D. Md. March 20, 2020) ........................................................................... 13

*United States v. Coonan*,
   826 F.2d 1180 (2d Cir. 1987)..................................................................... 7

*United States v. Hanson*,
   613 F. Supp. 2d 85 (D.D.C. 2009) ............................................................ 5

*United States v. Karni*,
   298 F. Supp. 2d 129 (D.D.C. 2004) .......................................................... 12

*United States v. Khashoggi*,
   717 F. Supp. 1048 (S.D.N.Y. 1989) .......................................................... 13

*United States v. Madoff*,
   586 F.Supp.2d 250 (S.D.N.Y. 2009).......................................................... 5, 13

*United States v. Motamedi*,
   767 F.2d 1403 (9th Cir. 1985).................................................................... 1

*United States v. Sabhnani*,
   493 F.3d 63 (2d Cir. 2007).......................................................................... 5, 12

*United States v. Salerno*,
   481 U.S. 739 (1987) ................................................................................... 5

*United States v. Williams*,
   Case No. 3:19-cr-16, 2020 U.S. Dist. LEXIS 70921
   (S.D. Ohio April 16, 2020).......................................................................... 13

**Statutes**

18 U.S.C. § 3141 ............................................................................................ 1

18 U.S.C. § 3142(b) ....................................................................................... 13

18 U.S.C. § 3142(c)(1)(B) .............................................................................. 13

18 U.S.C. §§ 3142(f)(2)(A) ............................................................................ 5

18 U.S.C. §§ 3142(e) ...................................................................................... 9

Defendant Ho Wan Kwok respectfully submits this reply memorandum of law in further support of his renewed motion for pretrial release. As discussed below and in his moving papers, pretrial release under strict condition will reasonably ensure that Mr. Kwok will pose neither a danger to the community nor a serious flight risk as he works to prepare for his upcoming trial and receives necessary medical treatment. Accordingly, the Court should grant the renewed motion.

## PRELIMINARY STATEMENT

Pretrial release remains the preferred result as a matter of law and policy, with pretrial detention very much a last resort. *See, e.g.,* Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*; *United States v. Motamedi*, 767 F.2d 1403, 1405, 1407 (9th Cir. 1985) (Kennedy, J.) (emphasizing that the federal courts should detain defendants "[o]nly in rare circumstances," "only for the strongest of reasons," and that any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant"). The reasons for holding Mr. Kwok in prison pending trial no longer reach this exacting standard. Accordingly, he should be released from prison pending his upcoming trial. At the least, the Court should schedule oral argument on this motion for December 19, 2023.

In his moving papers, Mr. Kwok identified two significant developments supporting Mr. Kwok's release on bail. *See* Memorandum in Support of Renewed Motion for Pretrial Release ("Kwok Memo") [ECF No. 178]. *First*, the Court should grant release so Mr. Kwok can receive necessary medical treatment. Despite surgery and some treatment behind bars, his medical condition – characterized by sharp pain in his face, head, jaw and neck, as well as dizziness, numbness and loss of motor control in his right hand – is worsening. Release will allow him to receive proper medical care. *Second,* the Court should grant release because the very real danger to Mr. Kwok posed by the Chinese Communist Party (CCP), and the disincentive for him to flee the safe haven of the United States, have been magnified by the government's cavalier decision, in August 2023, to publicly state that, between 2017 and 2020, ████████████████████████████

 This thoughtless act by the government unquestionably increases the physical danger to Mr. Kwok of ▮▮▮▮▮▮▮▮ and makes it far less likely that Mr. Kwok will ever flee the United States. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Unquestionably, the government having confirmed that Mr. Kwok ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Wherever else he went, as a fugitive from justice he would effectively be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Mr. Kwok also provided the Court with multiple cases where the types of restrictive measures he proposes be imposed upon him as a condition of his release were more than sufficient to ensure that a defendant neither harmed the community nor fled the jurisdiction while on release. *See* Kwok Memo at 11-27. This comprehensive set of restrictions include (i) the posting of property; (ii) the continued surrender of his passports to the government and continued presence on the "no-fly" list; (iii) home confinement under the supervision of a responsible third-party custodian;[1] (iv) 24/7 electronic GPS monitoring, along with additional, frequent telephonic and in-person visits by Pretrial Services; (v) a restriction on contacting any consulate, whether in-person or remotely, (vi) a restriction on contacting or meeting with persons other than his attorneys and

---

[1] The government deliberately miscomprehends the proposed condition of "a responsible third-party custodian" so it can contend that the conditions proposed in this motion are "less strict" than those proposed in the first bail motion. Opp. Br. at 30. As the Kwok memo makes clear, however, the "custodian" condition refers to "additional 24/7 physical monitoring of Mr. Kwok by a private security service" acceptable to the Court. Kwok Memo at 8. Among other things, this 24/7 physical monitoring would prevent Mr. Kwok from fleeing or harming the community, and make sure he complies with all conditions of his release. Further, the government ignores that the proposed conditions include a "catch all" condition under which Mr. Kwok will accept "any other conditions the Court deems appropriate." *Id.* at 10. Plainly, the proposed conditions are not less strict, and more than sufficient to support release under the Bail Reform Act.

his family outside the presence of counsel; (vii) a ban on accessing the Internet or going online or speaking to his followers about financial matters or the case; (viii) a ban on opening new financial accounts or making financial transactions; and (ix) any other conditions the Court deems appropriate. *Id.* Taken together, all these restrictions will sufficiently eliminate any purported risk requiring detention. Further, these restrictions also will ensure that Mr. Kwok abides by the conditions of his release, as any failure to do so will be immediately identified and lead to Mr. Kwok's return to detention.

Among the cases discussed in the Kwok Memo was the recent decision where billionaire Changpeng Zhao, the CEO of Binance, was released on bail in the United States pending sentencing (Mr. Zhao had been allowed to remain free and in the United Arab Emirates (UAE) until his guilty plea). *See United States v. Zhao*, 2:23-cr-00179-RJ (W.D. Wash.), ECF No. 46. Indeed, the Court initially ruled Mr. Zhao could return to the UAE, where no extradition treaty with the U.S. exists, pending sentencing. *Id.*, ECF No. 33. Like the government here, the government in Mr. Zhao's case argued that "(1) Mr. Zhao is extremely wealthy; (2) much of his wealth is likely beyond the reach of U.S. authorities; (3) he resides in, and has favored status in, the United Arab Emirates, a country which has no extradition treaty with the United States; and (4) despite his voluntary appearance to enter his plea, there is a significant possibility that he will choose not to return for sentencing as the prospect of a potential prison sentence [of up to 10 years]." *Id.*, ECF No. 34-1. Crucially, and *unlike* the government here, the government argued that these factors justified keeping Mr. Zhao in the continental United States, not in prison. *Id.*

If anything, the risk of releasing Mr. Zhao is far greater than the putative risk involved in releasing Mr. Kwok, yet still did not require that Mr. Zhao be placed in prison prior to sentencing (or at any other time in his case). Among other things, (i) Mr. Zhao's criminal offense is more serious, as he has pled guilty to helping terrorists, criminals, and human trafficking organizations

launder billions of dollars through Binance; (ii) Mr. Zhao has admitted his guilt, while Mr. Kwok continues to strongly insist he is innocent; (iii) Mr. Zhao has no familial or other ties in the United States, while Mr. Kwok's wife and daughter live here, his freedom movement is based here, and he has sought asylum here; (iv) Mr. Zhao is a favored citizen of the UAE and would be safe from extradition there, while Mr. Kwok would be effectively stateless if he fled the U.S., having renounced his UAE citizenship in applying for U.S. asylum; (v) Mr. Zhao is not being chased, prosecuted, or threatened by the Chinese government, while the Chinese government continues in its goal to kill, kidnap, or otherwise destroy Mr. Kwok, leaving the United States as Mr. Kwok's only realistic safe haven; and (vi) the conditions of Mr. Zhao's release are neither as restrictive or as comprehensive as those proposed by Mr. Kwok here. If Mr. Zhao can safely be released into the United States under these circumstances, then *a fortiori*, so can Mr. Kwok.

As discussed below, the few contentions the government raises in opposition is unconvincing. Certainly, it does not come close to meeting the government's heavy burden of proving that detention through trial is the only proper outcome available to the Court. Thus, the Court should immediately revoke the detention order imposed on Mr. Kwok and order him released with appropriate bail conditions. At the least, the Court should schedule oral argument on the instant motion for December 19, 2023.

## ARGUMENT

### THE COURT SHOULD GRANT THE MOTION BECAUSE THE GOVERNMENT CANNOT MEET ITS HEAVY BURDEN OF PROVING THAT MR. KWOK'S CONTINUED DETENTION IS THE ONLY SOLUTION HERE

While Mr. Kwok brings this motion, it is the government that bears the heavy burden of proving that Mr. Kwok's detention must continue because no combination of conditions can (i) reasonably protect the community, and (ii) reasonably assure Mr. Kwok will appear in court as required. *See* 18 U.S.C. §§ 3142(f)(2)(A), 3142(e); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d

Cir. 2007); Kwok Memo at 11-13. The government cannot meet that burden. *See id.* at 1-27.

In its opposition, the government essentially rehashes most of the same facts and numerous uncorroborated allegations it relied on in successfully opposing Mr. Kwok's first motion for release. *See* Government Opposition to Second Motion for Pretrial Release Memorandum ("Opp. Br.") at 1-12. But the strong presumption against detention is evergreen, and, whatever its prior decision,[2] the Court must examine Mr. Kwok's motion considering the changed circumstances and proposed conditions that exist today. *See, e.g., United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.D.C. 2009). Mr. Kwok's renewed motion for pretrial release should be granted because the government has failed to prove that continued detention is the only solution available to the Court.

## I.   THE GOVERNMENT HAS FAILED TO PROVE THAT ONLY CONTINUED DETENTION WILL PREVENT OBSTRUCTION OF JUSTICE

In contending that Mr. Kwok must remain jailed to prevent obstructive conduct by him, the government primarily points to the same actions as before, which involve Mr. Kwok's previously using social media to verbally attack the bankruptcy trustee and others. *See* Opp. Br. at 4-8, 28-29. However, in determining whether detention is required, the Court is perforce charged with looking to the future, not the past. The government must prove that there is a serious and genuine threat that obstruction will take place *in the future* if Mr. Kwok is released, and this future obstruction can only be prevented by pretrial detention. *See, e.g., United States v. Madoff*, 586 F.Supp.2d 250, 249-250 (S.D.N.Y. 2009).  This is where the government's opposition fails. Pretrial detention is not required to prevent obstruction.

---

[2] The government tries to imply that, in affirming the decision of this Court, the Second Circuit made factual findings that accorded with the Order below. Opp. Br. at 12. This is not accurate. All the Second Circuit did was affirm the Court's Order for lack of clear error. *See United States v. Kwok*, No. 23-6421 [ECF Docket No. 37]. The Second Circuit conducted no *de novo* review of the facts and made no factual findings of its own. *Id.*

To try to prove this obstructive behavior continues, and thus poses a future risk, the government improperly seeks to blame Mr. Kwok for the media accounts and "Mahwah Mansion" related actions of New Federal State of China members. Opp. Br. at 7-8, 29. The government provides no evidence, however, showing that Mr. Kwok directed any of these events, and Mr. Kwok should not be jailed because of the independent actions of others. Further, the intended use of the Mahwah Mansion is a hotly contested issue of fact. Mr. Kwok will demonstrate at trial that what the government terms obstruction and a cover up, is anything but that, because the mansion was intended for, and has properly been used for, the benefit of the movement.

In any event, given the Court's concerns about his past actions, Mr. Kwok has done two important things. First, he has apologized for his past behavior and promised not to undertake such actions again. *See* Kwok Memo at 10. Second, he has proposed conditions of release that specifically target the Court's concerns about potential obstruction and ensure that his apology is not empty. *Id.* at 26. The proposed conditions ban Mr. Kwok from accessing the internet; restrict him from meeting with persons other than immediate family outside the presence of counsel; and ban him from speaking to his followers about financial matters or this case. *Id.* These conditions are sufficient to prevent any future obstructive conduct by Mr. Kwok through social media or NFSC proxies, and directly address the Court's concern "that he [Mr. Kwok] is likely to continue this pattern if released." Order at 11. Simply put, if Mr. Kwok cannot meet or speak with his followers about the case or financial matters (or outside the presence of counsel), either virtually or in person, he cannot inveigle upon them to do anything or threaten anyone. In fact, the proposed conditions restrict Mr. Kwok's contacts with others *more than* his current detention situation and would afford greater protection to the public. While in detention, Mr. Kwok can freely call fellow members of the movement. On release he would not be permitted to do so outside of the presence of others and his counsel.

Pretrial detention is only permitted if a court first considers whether alternative conditions can adequately serve to obviate matters. *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). And the court must then explain in detail the reasons why lesser restrictions are inadequate, such that detention is the only sound option available. *See United States v. Coonan*, 826 F.2d 1180, 1186 (2d Cir. 1987) (stating that, because pretrial detention is a last resort, a court must "make explicit their findings with regard to the adequacy [or inadequacy] of possible conditions for release"); *Berrios-Berrios*, 791 F.2d at 253 (same). Although invited to do so (Kwok Memo at 14), the government never explains how Mr. Kwok could plausibly engage in future obstructive behavior given the strict conditions that will control his behavior upon release. *See* Opp. Br. at 1-32. This omission is no oversight; the conditions of release proposed by Mr. Kwok are enough to ensure there is no real, material danger of obstruction. Someone who is under home confinement and 24-hour physical and electronic oversight, and subject to other broad restrictions banning outside contact, internet use, and financial activity, will not pose a risk of danger or flight if released from detention. Accordingly, the Court should release Mr. Kwok.

## II.   THE GOVERNMENT HAS FAILED TO PROVE THAT ONLY CONTINUED DETENTION WILL PREVENT FUTURE RISK TO THE COMMUNITY

The government also cannot meet its burden of proving that future economic harm to the community will result if Mr. Kwok is released. In this regard, all the government does is point to the frauds alleged in this case and contend that those alleged frauds "demonstrates Kwok's ability, and desire, to continue his fraud." Opp. Br. at 27. This bald assertion is not enough to justify additional pretrial detention.

To begin, the government's argument is founded on mere allegations, not facts. Mr. Kwok entirely rejects the contention that he defrauded anyone and intends to prove his lack of guilt at trial. Indeed, just yesterday, the government produced a second *Brady* disclosure that further undercuts

the government's allegations.  Moreover, the proposed conditions of release are sufficient to protect that community from harm. Upon release, Mr. Kwok will be under 24-hour watch and entirely barred from the Internet, or from unsupervised discussions other than with family and legal counsel, and from discussing financial matters or this case with anyone other than his attorneys. Unsurprisingly, the government never explains how, under these strict conditions, Mr. Kwok could be reasonably expected to defraud anyone in the few months before his trial. Merely calling Mr. Kwok "sophisticated" (Opp. Br. at 27) is not enough for the government to meet its burden of proving, by clear and convincing evidence, that Mr. Kwok will defraud the community if he is granted pretrial release.

## III.   THE GOVERNMENT HAS FAILED TO PROVE THAT ONLY CONTINUED DETENTION WILL PREVENT A SERIOUS FLIGHT RISK

In his moving papers, Mr. Kwok discussed at length the multiple cases involving wealthy, foreign defendants, facing serious charges, who were nonetheless released on bail and other conditions. *See* Kwok Memo at 17-25 (and cases cited). He also discussed what makes him unique – that he is actively being pursued by the Chinese government, and that the only realistic chance for him and his entire NFSC movement to survive requires staying in the United States. *See id.* at 3-9, 15-17. After all Mr. Kwok has risked much to support the movement in its fight against the CCP – who at one point held his wife and daughter hostage. It defies logic for the government to suggest that Mr. Kwok would now betray and fatally damage his movement by fleeing.  Finally, Mr. Kwok discussed the set of strict release conditions – home confinement, 24/7 electronic and physical monitoring, a ban on internet and most other communications or visits – expressly designed to make any attempt at flight unrealistic. *See id.* at 25-27. Given all this, releasing Mr. Kwok from prison would not create a serious flight risk. Certainly, the government has failed to meet its burden of proving, by a preponderance of the evidence, that serious flight risk justifies Mr.

Kwok's continued detention.

The government spills much ink contending that it's August 4, 2023 filing – where it ███████████████████████████████████████████████████████████████████ ██████████████████████████ had no material effect because Mr. Kwok ███████████ ████████████████████████ before the government did. ███████████████████ Mr. Kwok did no such thing – all prior counsel stated in its prior correspondence was that Mr. Kwok reported to the FBI that he and his family were being victimized by the CCP. It is a far cry for the government to equate a crime victim, whose wife and daughter were being held as hostage by senior Chinese security officials, reporting this crime ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████

In any event, irrespective of what Kwok's prior counsel stated, ██████████████ ███████████████████ China has gone to great lengths to paint Mr. Kwok as a liar and fabulist. ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████

The government does not, and cannot, sincerely deny that the Chinese government is actively pursuing Mr. Kwok. As the Court well knows, the CCP has tried to kill, kidnap, extort, deport, threaten, falsely accuse, and/or hack Mr. Kwok, all in an effort to silence and stop Mr. Kwok and his dissident NFSC movement. Indeed, the Chinese dictatorship has created, and maintains, a dedicated group of CCP operatives specifically tasked with removing Mr. Kwok by any means necessary. Just yesterday, the government provided defense counsel with ██████████ ███████████████████████████████████████████████████████████████████



This has happened before. When Mr. Kwok left China in 2015, he was still able to travel internationally, provided he took extensive precautions to avoid being identified and kidnapped. By 2017, however, as his public profile rose with the increased frequency and popularity of his social media attacks upon the CCP, it simply became too dangerous to travel. As the government admits, "[Mr.] Kwok has not left the United States for the past six years." Opp. Br. at 3-4. Now, the danger to Mr. Kwok will increase again, and with it, the danger to Mr. Kwok were he to flee while on pretrial release. The CCP operatives specifically tasked with returning him to China and destroying his movement would take full advantage of the golden opportunity Mr. Kwok's flight would provide.

The only place where Mr. Kwok is truly safe is right here, in the United States. Mr. Kwok has been here for close to a decade, establishing ties in this country and gaining supporters for his NFSC political movement. The United States, with its history of freedom and support for democracy, large expatriate Chinese community, and bipartisan political opposition to the Chinese government, is the best place in which to shelter from, and simultaneously oppose, the CCP. Indeed, the CCP already has tried to influence the U.S. government to deport Mr. Kwok, without success. By contrast, wherever Mr. Kwok hypothetically fled, he would still have to spend the rest of his life avoiding recapture, whether by being directly kidnapped by the CCP or extradited.

Whatever assets and supporters the government believes Mr. Kwok could marshal, they would be far outweighed by the assets the Chinese government could bring to bear in support of its goal to see Mr. Kwok dead or captive and tortured in a Chinese prison. Given this overwhelming disincentive, Mr. Kwok is not a serious flight risk.

Having no place to go further reduces Mr. Kwok's flight risk. Mr. Kwok is already a fugitive from China and is no longer a UAE citizen, having voluntarily renounced that association. *See* Kwok Memo at 7 and n.5.[3] The government's fact free speculation that the UAE would harbor a fugitive fleeing the U.S. with no passport is just that – speculation. And even this speculation is extremely dubious given that ████████████████████████████████████████ ████████

Thus, unlike Mr. Zhao and other defendants who were released pretrial, Mr. Kwok has no readily available destination. *Cf. United States v. Naik*, 1:19-cr-00373-TSC (D.C. Cir.) (Afghani citizen granted bail); *United States v. An*, 1:22-cr-00460-KAM (E.D.N.Y.) (Chinese citizen and CCP agent granted bail); *United States v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007) (natives of India and Indonesia granted bail); *United States v. Karni*, 298 F. Supp. 2d 129 (D.D.C. 2004) (Israeli

---

[3] In the original bail proceedings, the government misrepresented Mr. Kwok's UAE citizenship status and ability to flee there, leading the Court to mistakenly conclude that, as a UAE citizen, Mr. Kwok readily could flee there if released from detention. *See* Order at 5-6. In its Opposition Brief, the government now trades misrepresentation for speculation, asserting – without any evidentiary basis of any kind – that the UAE will happily grant Mr. Kwok asylum or citizenship in the UAE. Opp. Br. at 25-26. The government is wrong. The UAE does not even have an asylum system. *See* https://migrants-refugees.va/country-profile/united-arab-emirates ("The UAE does not have an asylum system"). As to citizenship, the government's conjecture does not take into account that, this time, Mr. Kwok will be asking to be granted citizenship while an acknowledged fugitive from China and the United States and subject to an INTERPOL Red Notice. Such bald and implausible speculation should be rejected by the Court.

█ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████

citizen who was permanent resident of South Africa granted bail). This lack of a safe destination is particularly crucial here because. wherever Mr. Kwok went, that country's government would be pressured, bribed, or threatened to deport Mr. Kwok back to China, a deportation rendered far more likely given that Mr. Kwok would be a fugitive from justice in China and the United States.

In the end, the mere possibility of jail time is far outweighed by the likelihood of torture and death facing Mr. Kwok were he to flee. Hence, Mr. Kwok has no motive or incentive to flee, and the government's contention otherwise is unconvincing.

Not only do the record facts amply demonstrate that Mr. Kwok has no real motive to flee, but they demonstrate that Mr. Kwok will have no real opportunity to flee if released. Since the Court issued its first detention Order, Mr. Kwok no longer has access to a plane or yacht, and his assets are now controlled and being sold off by the bankruptcy trustee. Mr. Kwok also continues to be on a "no fly" list, has no passports in his possession, and is effectively stateless – he is *persona non grata* in China, and abandoned his UAE citizenship in favor of applying for asylum in the United States.  Moreover, the proposed release conditions reasonably assure Mr. Kwok's return to court. Someone under 24-hour physical and electronic oversight, who cannot leave home confinement without a designated minder, who is forbidden from accessing the internet, making financial transactions, or contacting non-approved persons, is not a credible risk of community danger or flight. Nor could Mr. Kwok, while being closely monitored and controlled by private security, feasibly violate his conditions.

In seeking detention, the government seems to contend that prison is required unless there is an absolute zero risk of flight, and the conditions or release are completely foolproof. This, however, is not the test.  All the Bail Reform Act requires are conditions that ameliorate those risks and "reasonably assure" a defendant's return to court. *See* 18 U.S.C. § 3142(b) and (c)(1)(B); *Madoff*, 586 F.Supp.2d at 249 (Bail Reform Act "does not require that the risk be zero, but that conditions

imposed 'reasonably assure' appearance"); *United States v. Khashoggi*, 717 F. Supp. 1048, 1049 (S.D.N.Y. 1989) (same). Because the proposed conditions here "reasonably assure" that Mr. Kwok will return to the Court, his motion for pretrial release should be granted, and should not be denied based on flight.

## IV.   MR. KWOK'S WORSENING MEDICAL CONDITION PROVIDES AN ADDITIONAL REASON FOR THE COURT TO RELEASE HIM FROM DETENTION

The government contends that Mr. Kwok's worsening medical condition is immaterial because it does not "change this Court's conclusions regarding Kwok's danger, risk of obstruction, or risk of flight." Opp. Br. at 14. The government is wrong. A defendant's "medical condition is an appropriate factor for the Court to consider under the Bail Reform Act." *United States v. Bilbrough*, 2020 U.S. Dist. LEXIS 58337, *7 (D. Md. March 20, 2020); *United States v. Williams*, 2020 U.S. Dist. LEXIS 70921, *4 (S.D. Ohio April 16, 2020) ("The Bail Reform Act explicitly directs courts to consider, among other things, a defendant's medical condition.").

████████████████████████████████████████████████████ which the government attaches as Exhibit A to its opposition brief, demonstrate why Mr. Kwok's medical condition is an additional factor supporting release. ███████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████

The government attempts to belittle MK's original medical condition as a "tooth ache." This "tooth ache" worsened due to MDC delayed and cack-handed response to his requests for medical attention, to the point he had to have three teeth extracted, ███████████████████████

█████████████████████████████████████████ Most recently, on October 25, 2023, for example, ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Ex. A at 8

(emphasis added). Then, on November 7, 2023, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ These tests are just two examples of the many tests and treatments that are outside the

abilities of the MDC. Ex. A at 1.

While the government blithely contends that the MDC "has the resources to treat Kwok"

(Opp. Br. at 16) this is not true. To try to leave the impression that the MDC has those resources,

the government points to ████████████████████████████ on November 7,

2023. Opp. Br. at 16 (citing Ex. A at 112-122). ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ *See* Ex. A at 1. It is precisely this type

of sporadic, insufficient, and unthoughtful medical care that demonstrates why Mr. Kwok needs

medical care outside of the prison system.

Let us grasp the nettle. MDC's treatment of Mr. Kwok has not worked and his symptoms

14

are getting worse. ██████████████████████ what began as a "toothache" became a pain in his head, face, neck, and jaw, and has now led to throbbing pain down his right arm and numbness and loss of motor control in his hand. ████████████████████████████████████ ████████████████████████████████████████████████ Mr. Kwok should be released so he can receive the immediate, appropriate, *and efficacious* medical care that he needs. Otherwise, his medical condition will continue to worsen.

## CONCLUSION

For each of the reasons set forth herein and in Mr. Kwok's moving papers, the Court should (i) revoke the detention order imposed on Mr. Kwok; (ii) order him released with appropriate bail conditions; and (iii) grant him such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 12, 2023

Respectfully submitted,

*/s/Sabrina P. Shroff*

80 Broad Street, 19th Floor
New York, New York 10007
(646) 763-1490

Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

*Attorneys for defendant Ho Wan Kwok*