**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      v.

YANPING WANG,

           Defendant.

23 Cr. 118-3 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT YANPING WANG'S PRE-TRIAL MOTIONS**

Brendan F. Quigley
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, N.Y. 10112
Tele: (212) 408-2520
brendan.quigley@bakerbotts.com

*Attorney for Yanping Wang*

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................2

I.    The Court Should Suppress the Evidence Seized in Ms. Wang's Apartment and Any Evidence Derived Therefrom ........................................................................... 2

    A.    Background ................................................................................................ 2

    B.    Applicable Law ......................................................................................... 4

    C.    Discussion ................................................................................................ 5

II.    The Court Should Suppress Ms. Wang's Post-Arrest Statement ......................... 11

    A.    Background .............................................................................................. 11

    B.    Applicable Law ....................................................................................... 11

    C.    Discussion .............................................................................................. 12

III.    The Court Should Direct the Government to Provide a Bill of Particulars .......... 13

    A.    Applicable Law ....................................................................................... 14

    B.    Discussion .............................................................................................. 15

IV.    The Court Should Sever Ms. Wang's Trial From Her Co-Defendant's .............. 21

    A.    Applicable Law ....................................................................................... 21

    B.    Discussion .............................................................................................. 22

V.    Ms. Wang Joins in Co-Defendant Kwok's Motion to Dismiss Directed to the Counts in the Indictment in Which She is Charged .............................................. 26

CONCLUSION ...............................................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
  677 F.3d 60 (2d Cir. 2012)................................................................................19, 20

*Bruton v. United States,*
  391 U.S. 123 (1968)..................................................................................................21

*Edwards v. Arizona,*
  451 U.S. 477 (1981)............................................................................................11, 12

*Illinois v. Gates,*
  462 U.S. 213 (1983)....................................................................................................4

*Miranda v. Arizona,*
  384 U.S. 436 (1966)..................................................................................................11

*Morrison v. Nat'l Australia Bank Ltd.,*
  561 U.S. 247 (2010)..................................................................................................19

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE,*
  763 F.3d 198 (2d Cir. 2014)......................................................................................20

*Rhode Island v. Innis,*
  446 U.S. 291 (1980)..................................................................................................12

*Sgro v. United States,*
  287 U.S. 206 (1932)....................................................................................................7

*Stanford v. Texas,*
  379 U.S. 476 (1965)....................................................................................................5

*U.S. v. Mahaffy,*
  446 F. Supp. 2d 115 (E.D.N.Y. 2006) ....................................................................17

*United States v. An,*
  No. 1:22-cr-00460-KAM, ECF No. 9 .......................................................................19

*United States v. Aquart,*
  No. 3:06-cr-160 (PCD), 2006 WL 2684304 (D. Conn. Sept. 19, 2006)............15, 17

*United States v Aronov,*
  No. 19-cr-408 (MKB) ...............................................................................................15

*United States v. Barnes*,
158 F.3d 662 (2d Cir. 1998), *abrogated on other grounds by*, *United States v. Thomas*, 274 F.3d 655 (2d Cir. 2001) ...................................................................................14

*United States v. Bertini*,
No. 23 CR. 61 (PGG), 2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023) ................................4, 5

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987) ...........................................................................................17

*United States v. Burke*,
789 F. Supp. 2d 395 (E.D.N.Y. 2011) .............................................................................21

*United States v. Cioffi*,
668 F. Supp. 2d 385 (E.D.N.Y. 2009) .............................................................................10

*United States v. Clark*,
638 F.3d 89 (2d Cir. 2011) ...............................................................................................5

*United States v. Coreas*,
419 F.3d 151 (2d Cir. 2005) ..............................................................................................4

*United States v. Crozzoli*,
698 F. Supp. 430 (E.D.N.Y. 1988) ..................................................................................21

*United States v. Davidoff*,
845 F. 2d 1151 (2d Cir. 1988) .........................................................................................17

*United States v. Falkowitz*,
214 F. Supp. 2d 365 (S.D.N.Y. 2002) .............................................................................18

*United States v. Falso*,
544 F.3d 110 (2d Cir. 2008) ..............................................................................................4

*United States v. Gallo*,
668 F. Supp. 736 (E.D.N.Y. 1987) ..................................................................................22

*United States v. Galpin*,
720 F.3d 436 (2d Cir. 2013) ..............................................................................................5

*United States v. Gilkeson*,
431 F. Supp.2d 270 (N.D.N.Y. 2006) .............................................................................13

*United States v. Gleason*,
259 F. Supp. 282 (S.D.N.Y. 1966) ............................................................................22, 23

*United States v. Gomez*,
652 F. Supp. 461 (E.D.N.Y. 1987) ....................................................................................5

iii

*United States v. Griffith*,
   867 F.3d 1265 (D.C. Cir. 2017) ...................................................................6, 8

*United States v. Heatley*,
   994 F. Supp. 475 (S.D.N.Y. 1998) ...................................................................12

*United States v. Hill*,
   459 F.3d 966 (9th Cir. 2006) ...........................................................................10

*United States v. Kahaner*,
   203 F. Supp. 78 (S.D.N.Y. 1962), *aff'd.*, 317 F.2d 459 (2d Cir.1963) ...................................22

*United States v. Kelly*,
   349 F.2d 720 (2d Cir. 1965)..............................................................................22

*United States v. Losada*,
   674 F.2d 167 (2d Cir. 1982)..............................................................................21

*United States v. Luna*,
   No. 3:05-cr-58 (SRU), 2006 WL 1668006 (D. Conn. May 17, 2006)..............................15, 17

*United States v. Mitchell*,
   76 M.J. 413 (C.A.A.F. 2017) ............................................................................13

*United States v. Moran*,
   349 F. Supp. 2d 425 (N.D.N.Y. 2005) ................................................................6

*United States v. Nachamie*,
   101 F. Supp. 2d 134, 152 (S.D.N.Y. 2000).........................................................21

*United States v. Nachamie*,
   91 F. Supp. 2d 565 (S.D.N.Y. 2000)..............................................................15, 17

*United States v. Perez*,
   948 F. Supp. 1191 (S.D.N.Y. 1996)....................................................................11

*United States v. Pinto-Thomaz*,
   352 F. Supp. 3d 287 (S.D.N.Y. 2018)..................................................................13

*United States v. Rios*,
   881 F. Supp. 772 (D. Conn. 1995)........................................................................6

*United States v. Savin*,
   No. 00-cr-45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ...........................15

*United States v. Shkreli*,
   260 F. Supp. 3d 247 (E.D.N.Y. 2017) .................................................................22

*United States v. Stewart*,
  770 F. Supp. 872 (S.D.N.Y. 1991)........................................................................11

*United States v. Upton*,
  856 F. Supp. 727 (E.D.N.Y. 1994) ..............................................................21, 23

*United States v. Urso*,
  369 F. Supp. 2d 254 (E.D.N.Y. 2005) ................................................................15

*United States v. Valenzuela*,
  596 F.2d 824 (9th Cir.), *cert. denied*, 441 U.S. 965 (1979)...............................5

*United States v. Vilar*,
  729 F.3d 62, 67 (2d Cir. 2013)............................................................................19

*United States v. Villanueva Madrid*,
  302 F. Supp. 2d 187 (S.D.N.Y. 2003).................................................................22

*United States v. Wey*,
  256 F. Supp. 3d 355 (S.D.N.Y. 2017)......................................................5, 8, 9, 10

*United States v. Yan*,
  704 F. Supp. 1207 (S.D.N.Y. 1989)....................................................................12

*United States v. Zemlyansky*,
  945 F. Supp. 2d 438 453 (S.D.N.Y. 2013)............................................................8

*Ybarra v. Illinois*,
  444 U.S. 85 (1979)................................................................................................4

*Zafiro v. United States*,
  506 U.S. 534 (1993)............................................................................................21

*Zurcher v. Stanford Daily*,
  436 U.S. 547 (1978)..............................................................................................6

## OTHER AUTHORITIES

2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(a) (5th ed. 2012) .....................................................................................................................8

Defendant Yanping Wang respectfully submits this memorandum in support of her pre-trial motions.

First, as set forth below, the Court should suppress (i) evidence seized from Ms. Wang's apartment on March 15, 2023 and the fruits thereof, and (ii) statements law enforcement officers elicited from Ms. Wang after she invoked her right to counsel.

The search of Ms. Wang's apartment—which has already required the government to make a corrective disclosure based on a "reinterview[]" of the "FBI agent who served as squad leader for the . . . search"[1]—was based on a warrant that manifestly lacked probable cause that evidence of a crime would be found in Ms. Wang's apartment. The warrant also failed to meet the Fourth Amendment's particularity requirement and, even setting aside the other probable cause issues, was overbroad. In addition, during the search, agents continued to ask Ms. Wang questions after she invoked her right to counsel, in clear violation of Supreme Court precedent. Accordingly, the Court should suppress the evidence seized from the apartment,  Ms. Wang's post-arrest statements, and any fruits thereof.

Second, the Court should order the government to provide a bill of particulars as set forth below. If anything, the massive amount of discovery provided to date and the broadly worded allegations of the government's "speaking" indictment show why a bill of particulars is appropriate.

Third, the Court should sever Ms. Wang's trial from her co-defendant's.

Fourth, Ms. Wang requests to join the portions of her co-defendant's motion to dismiss relating to the counts of the indictment in which Ms. Wang is charged.

---

[1] *See* Letter from the Government to Hon. Robert W. Lehrburger, dated Apr. 17, 2023, ECF No. 47.

# BACKGROUND

## I.   The Court Should Suppress the Evidence Seized in Ms. Wang's Apartment and Any Evidence Derived Therefrom

### A.   Background

On March 14, 2023, the government obtained a search warrant for 188 East 64th Street, Apartment 1601 (the "East 64th Street Apartment"), Ex.1, Warrant Affidavit, (filed under seal); Ex. 8, Warrant (filed under seal).[2] Wang lived at the East 64th Street Apartment at that time. *See* Ex. 4, Wang Affidavit at ¶ 1.

The FBI used the same affidavit to apply for warrants for both an apartment belonging to defendant Ho Wan Kwok, a/k/a "Miles Guo" ("Kwok") (identified as "Subject Premises-1" in the affidavit) and the East 64th Street Apartment (identified as "Subject Premises-2" and collectively with the Kwok apartment, the "Subject Premises").

The affidavit in support of the warrant asserted there was "█████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████" Ex. 1 at USAO_00110320.

---

[2] This document is being filed under seal because it was designated "Highly Confidential" by the government in discovery. The government initially obtained a search warrant for the East 64th Street Apartment on March 10, but its March 14 version corrected some formatting errors and redundant text.

In support of its position, the warrant affidavit first asserted ████████████████

███████████████████████████████████████████████████████████.”

*See* Ex. 1 at USAO_00110321-27. To support this claim, the affidavit primarily incorporated by

reference into the affidavit two documents. First, the affidavit incorporated the Indictment against

Kwok and Je—in which Ms. Wang is not named. Second, the affidavit incorporated the March 10,

2023 criminal complaint against Ms. Wang, which charged her only with offenses relating to the

"GTV Private Placement." Ex. 1 at USAO_00110384-92. According to the warrant affidavit itself,

the "████████████████████████████████████████████████████████

████" Ex 1 at USAO_001100322, i.e., almost three full years before the warrant application.

While the warrant application goes on to devote several paragraphs to the ████████

████████████████████████████," it contains no factual allegations linking Ms.

Wang (as opposed to Kwok and Je) to those ventures.

The warrant application also asserts there is "██████████████████████

██████████." USAO_00110327. As to the East 64th Street Apartment, the facts (much less

the probable cause) are remarkably thin. In two short paragraphs, the affidavit notes that city

records showed the East 64th Street Apartment "████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

Ex. 1 at USAO_00110329.

Despite this, the magistrate judge approved an extremely broad warrant for the East 64th

Street Apartment, allowing agents to seize, for example, evidence of ████████████████

████████████████████████████████—without providing any guidance to the

searching agents as to what or who those ███████████████ were and ██████████

██████████████████████████████████████████████████████████████████

████████████████" again without providing any guidance to the searching agents as to how to

determine, while rifling thought Ms. Wang's apartment, how an item had been ██████████████

███████████████████████████████████ Ex. 1 at USAO_00110339-40. The approved items

to be seized included also █████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████████, Ex. 1 at USAO_00110339-41, and ████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████. Ex. 1 at USAO_00110342.

### B. Applicable Law

The Fourth Amendment prohibits "unreasonable searches and seizures," and requires that

"no Warrants shall issue, but upon probable cause, supported by Oath." U.S. CONST. amend. IV.A.

As Judge Gardephe reiterated just weeks ago, "a showing of probable cause must be premised on

'particularized facts' rather than irrelevant generalizations." *United States v. Bertini*, No. 23 CR.

61 (PGG), 2023 WL 8258334, at *5 (S.D.N.Y. Nov. 29, 2023) (quoting *Ybarra v. Illinois*, 444

U.S. 85, 91 (1979)); *United States v. Falso*, 544 F.3d 110, 124 (2d Cir. 2008) (noting that

government must "gather 'evidence *particularized to* the target of the search' before the warrant

application is made") (emphasis in original) (quoting *United States v. Coreas*, 419 F.3d 151, 158

(2d Cir. 2005)).

In assessing a search warrant to search a premises such as an apartment, there must be

probable cause—i.e., including "particularized facts"—"that contraband or evidence of a crime

will be found in [that] *particular place*." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "This required

nexus between the items sought and the 'particular place' to be searched protects against the

issuance of general warrants," one of the primary evils the Fourth Amendment is intended to protect against. *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)). To further protect against "general warrants" and "general, exploratory rummaging through a person's belongings,'" the Fourth Amendment also requires that "'the scope of the authorized search [be] set out with particularity.'" *United States v. Wey*, 256 F. Supp. 3d 355, 379 (S.D.N.Y. 2017) (quoting *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013)).

### C. Discussion

Here, the warrant affidavit failed—on multiple levels—to establish probable cause that evidence of the Subject Offenses would be found at the East 64th Street Apartment on March 15, 2023, almost three years after both the GTV Private Placement and the only "particularized facts" arguably connecting Ms. Wang to any alleged criminal activity.

Compounding these shortfalls, the warrant also lacked particularity, because it gave the searching agents essentially unfettered discretion, and (even setting aside the baseline probable cause issues identified above) was overbroad for Fourth Amendment purposes.

### 1. The Warrant Application Failed to Provide Probable Cause to Search the East 64th Street Apartment

*First,* while the warrant application attaches the criminal complaint against Ms. Wang, charging her with four crimes relating to the GTV Private Placement, "'the existence of probable cause to arrest will not necessarily establish probable cause to search.'" *Bertini*, 2023 WL 8258334, at *5 (quoting *United States v. Gomez*, 652 F. Supp. 461, 462 (E.D.N.Y. 1987)). Put another way, "it cannot follow . . . simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." *United States v. Valenzuela*, 596 F.2d 824, 828 (9th Cir.), *cert. denied*, 441 U.S. 965 (1979) (internal quotation and citation omitted); *accord United States v. Rios*, 881 F. Supp. 772, 774 (D. Conn. 1995) (stating probable

cause to arrest, standing alone, does not establish probable cause to search home). Instead, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *United States v. Moran*, 349 F. Supp. 2d 425, 476 (N.D.N.Y. 2005) ("merely connecting [the defendant] to the . . . conspiracy is an insufficient basis for finding probable cause to search [her] residence").

Here, the warrant affidavit contains no particularized facts that evidence of a crime would be "located on the property to which entry is sought." *Zurcher*, 436 U.S. at 556. Despite being (with attachments) 77-pages long, the application contains *no* information that criminal activity was afoot at the East 64th Street Apartment. There, is no claim in the warrant affidavit, much less the "particularized facts" required by the Fourth Amendment, for example, that the East 64th Street Apartment was used as an office for GTV, that it was used to store proceeds of the (by then, three-year-old) alleged fraud, or that it was a location from which the GTV offering had been conducted.

*Second*, relatedly, the warrant contained no basis to believe that evidence concerning the GTV Private Placement would still be at the East 64th Street Apartment, if it ever was there in the first place. "[T]he freshness of the supporting evidence is critical" to the probable cause assessment. *United States v. Griffith*, 867 F.3d 1265, 1274 (D.C. Cir. 2017) (internal quotation and citation omitted). Here, the affidavit itself states that the GTV Private Placement ███████████ ███████████████████████████████████████ "[3] in other words almost three years before FBI knocked on the door of the East 64th Street Apartment at 6 AM on March 15, 2023. *See generally Sgro v. United States*, 287 U.S. 206, 210 (1932) ("[I]t is manifest that the proof must

---

[3] Ex. 1 at USAO_00110322.

be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."). Moreover, the warrant application contained no particularized facts relating to Ms. Wang *at all* since ███████████████████████████████████████████, Ex. 1 at USAO_00110391—again, almost three years before—a period in which our country went through and emerged from a global pandemic, changed Presidents, ended a war in Afghanistan and saw another one start in Ukraine, among many other things. In short, the facts concerning Ms. Wang's alleged criminal activity, to say nothing of alleged criminal activity at the East 64th Street Apartment, were anything but "fresh[]."

*Third*, even the facts in the warrant application tying Ms. Wang herself to the East 64th Street Apartment are thin. The 77-page application contains exactly two substantive paragraphs dealing with the East 64th Street Apartment/"Subject Premises-2," asserting that city records showed it ████████████████████████████████████████ and, again three years later, ██████████████████████████████████████ ████████████████████."[4] Put another way, the search warrant affidavit simply indicated that ████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████

In short, the warrant application contained no particularized facts tying the East 64th Street Apartment to criminal activity, the facts it relied on to tie Ms. Wang to an alleged criminal scheme were three years old and unconnected in any way to the East 64th Street Apartment, and even the facts tying Ms. Wang to the East 64th Street Apartment in any way were remarkably thin. As such, the warrant application failed to establish probable cause for the search.

---

[4] Ex. 1 ¶¶ 19(a)-(b), at USAO_00110329.

### 2. These Errors Were Compounded by the Warrant's Particularity and Overbreadth Issues

These shortcomings were compounded by other issues with the warrant, which highlight the extent of the Fourth Amendment violation here, show why it was unreasonable for the agents to rely on the warrant, and further demonstrate why suppression is both appropriate and necessary. Specifically, the warrant failed to comply with the Fourth Amendment's particularity requirement and also suffered from improper overbreadth deficiencies. *Cf. Griffith*, 867 F.3d at 1275 ("The lack of probable cause to search [an] apartment . . . itself renders the warrant invalid under the Fourth Amendment" but overbreadth and particularity deficiencies provided an "additional reason" for the warrant's invalidity.).

"'Courts implement the particularity requirement by insisting that warrants not leave to the unguided discretion of the officers executing the warrant as to what items may be seized.'" *United States v. Wey*, 256 F. Supp. 3d at 380 (quoting *United States v. Zemlyansky*, 945 F. Supp. 2d 438 453 (S.D.N.Y. 2013)).

Particularity concerns are heightened where, as here, the property to be seized is "hardly, by 'its particular character, contraband.'" *Wey*, 256 F. Supp.3d at 385 (quoting 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(a) (5th ed. 2012)).

Here, the warrant gave the officers "unguided discretion" on several fronts.

*First*, for example, while it allowed the agents to seize evidence concerning ████████ ███████████████████████████████████████████████" it also gave the agents authorization to seize evidence concerning ███████████████████████████████████████ ██████████████████████████████████████████[5] Neither the

---

[5] Ex. 8 at USAO_00110312.

warrant nor the affidavit for that matter contained any indication of who these ███████ ████████ might be, instead improperly leaving it to "unguided discretion," *Wey*, 256 F. Supp. 3d at 380, of the FBI search team to figure it out.

     *Second*, the warrant authorized the seizure of ██████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████."[6] But—again—the warrant gives the agents no guidance on how to determine ██████████████████████████ ███████████"—hardly materials that are "by [their] particular character, contraband"[7]—████████ ██████████████████████████████████████████—which, again, allegedly started to occur almost three years earlier. Repeatedly, the warrant improperly left it to the agents to figure it out while allowing them to conduct a "general rummaging" through Ms. Wang's apartment.[8]

     *Third*, these concerns are "exacerbated by the fact that the Warrant[] target[s], in significant measure, the contents of electronic devices, such as computers, internal and external hard drives, and smartphones." *Wey*, 256 F. Supp. 3d at 386-87. Indeed, the warrant authorized seizure of ████ █████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ . . .

---

[6] Ex. 8 at USAO_00110312-13.

[7] *Wey*, 256 F. Supp. 3d at 386.

[8] *Cf. Application of Lafayette Acad., Inc.*, 610 F.2d 1, 3 (1st Cir. 1979) (Fourth Amendment violated because "the warrant purports to authorize not just a search and seizure of FISLP-related records as the government contends but a general rummaging for evidence of any type of federal conspiracy or fraud.").

██."[9] Given the broad, un-particularized categories in the warrant, discussed above, the warrants thus improperly authorized an essentially "limitless search of [Ms. Wang's] electronic media." *Wey*, 256 F. Supp. 3d at 387 (internal quotation omitted).

*Finally*, the warrant is overbroad. "'[Over]breadth deals with the requirement that the scope of the warrant be limited to the probable cause on which the warrant is based.'" *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009) (quoting *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006)). Here, even setting aside the probable cause deficiencies discussed above, the warrant application contains ***no*** particularized facts tying Wang *or* the East 64th Street Apartment to G Club International Ltd.; G-CLUBS; G-Fashion, G News; G Music; Himalaya Exchange; or GETTR USA, Inc. Yet the warrant authorized the agents ████████████████████

████████████████████████████████████████

████████████████████████████."[10]

*** 

In short, the warrant affidavit failed to establish probable cause that evidence of the "Subject Offenses" would be found in the East 64th Street Apartment at the time of the search, rendering the search illegal. The warrant also facially lacked particularity, because it gave the search team unfettered discretion to determine whether certain categories of items were, in fact, allowed to be seized under the warrant. It was facially overbroad as well, providing a further basis to show the search was illegal and that the agents' reliance on the warrant was unreasonable. Accordingly, the Court should suppress the evidence seized from the East 64th Street Apartment and any fruits thereof.

---

[9] Ex. 8 at USAO_00110313 (emphasis added).

[10] Ex. 8 at USAO_00110312.

## II.  **The Court Should Suppress Ms. Wang's Post-Arrest Statement**

The Court should also suppress statements the FBI elicited from Ms. Wang after her arrest.

### A.  Background

On March 15, 2023, Ms. Wang awoke to FBI agents pounding on her door. Ex. 4 at ¶ 2. When she opened the apartment door, she was taken out into the hallway, handcuffed, and asked if she wanted to make a statement. Ex. 4 at ¶¶ 4-5. She immediately stated she wanted to speak to a lawyer. Ex. 4 at ¶ 5. Soon thereafter, agent brought Ms. Wang into her bedroom, so that she could get dressed. Ex. 4 at ¶ 6. Throughout this time, agents continued to question Ms. Wang, including asking her about the locations of, and passwords for, electronic devices in the apartment. Ex. 4 at ¶ 6. During this process, agents again asked Ms. Wang if she wanted to make a statement. Ex. 4 at ¶ 7. Ms. Wang repeated that SHE wanted to speak to her lawyer. Ex. 4 at ¶ 7.

### B.  Applicable Law

The Fifth Amendment's prohibition against compelled self-incrimination "require[s] that custodial interrogation be preceded by advice to the putative defendant that [s]he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966))).

Further, the right to counsel is particularly fiercely protected, such that when an individual in custody invokes it, interrogation by law enforcement must immediately cease and may not resume "until counsel has been made available to [the suspect]." *Edwards*, 451 U.S. at 484-85; *United States v. Stewart*, 770 F. Supp. 872, 878 (S.D.N.Y. 1991); *United States v. Perez*, 948 F. Supp. 1191, 1197 (S.D.N.Y. 1996) ("Upon [the suspect's] indication that he wished to stand on his rights, the agents were bound to scrupulously honor that assertion.") (internal quotation and citation omitted).

11

"Interrogation" in this context has been broadly defined. Post-invocation, law enforcement is barred "not only . . . [from] express questioning, but . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980); *see also United States v. Heatley*, 994 F. Supp. 475, 476 (S.D.N.Y. 1998).

Evidence that is obtained in violation of an individual's right to counsel must be suppressed. *See generally Edwards*, 451 U.S. at 479-80; *United States v. Yan*, 704 F. Supp. 1207, 1211 (S.D.N.Y. 1989) (granting a motion to suppress on grounds of a Fifth Amendment *Edwards* violation).

### C. Discussion

Here, Ms. Wang's affidavit is clear that soon after being handcuffed and told she was under arrest, she invoked her right to counsel, but agents then continued asking her questions. Ex. 4 ¶¶ 4-6. If anything, the FBI reports of the search corroborate this sequence of events. The reports claim that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Ex. 3 at USAO_00111199. Therefore, there is no dispute that, within minutes of the FBI arriving at her door, Ms. Wang was in custody and unambiguously invoked her right to counsel.



" Ex. 2 at USAO_00110620 (emphasis added). This is an explicit *Edwards*

violation of Ms. Wang's rights, with agents asking a direct question, i.e., a custodial interrogation, of Ms. Wang after she unambiguously invoked her rights.

If, as here, a person in custody "invoked his right to counsel prior to being questioned concerning his iPhone passcode," it "is an *Edwards* violation requiring suppression of the contents of the phone." *See United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 310-11 (S.D.N.Y. 2018) (ordering a suppression hearing to determine whether the suspect had, in fact, invoked his right to counsel) (citing *United States v. Gilkeson*, 431 F. Supp.2d 270 (N.D.N.Y. 2006); *United States v. Mitchell*, 76 M.J. 413 (C.A.A.F. 2017)).

Given that Ms. Wang was questioned after she invoked her right to counsel, the evidence obtained as a result of the violation—namely, the contents of the phones—must be suppressed.

## III.   The Court Should Direct the Government to Provide a Bill of Particulars

The Court should order the government to provide Ms. Wang with a bill of particulars.[11] Specifically, Ms. Wang seeks an order requiring the government to particularize:

- The businesses it alleges were "fraudulent [or] fictitious";[12]

- the entities it alleges were "interrelated";[13]

- the manner in which Ms. Wang allegedly "enrich[ed]" herself as a result of the alleged fraud;[14]

---

[11] Ms. Wang has satisfied her meet and confer obligation under S.D.N.Y. Local Rule 16.1. On July 31, 2023, Ms. Wang's prior counsel wrote to the Government requesting particulars. *See* Ex. 5. On December 7, 2023, current counsel wrote to the Government confirming there had been no response to prior counsel's letter. The Government responded by declining to discuss the request. *See* Ex. 6.

[12] *See* S1 Indictment ¶ 1.

[13]*See* S1 Indictment ¶ 1.

[14] *See* S1 Indictment ¶ 2.

- the transfers it contends were illegal;[15]

- the entities it contends were "instrumentalities of the fraud," which Ms. Wang allegedly held titles in;[16]

- how Ms. Wang "conducted the GTV Private Placement"[17] and the securities "purchase[s] and sale[s]" it contends she was involved in or solicited;[18]

- which proceeds of the GTV Private Placement were "not used to develop and grow the GTV business";[19]

- how the wire transfer in paragraph 13(h) of the Superseding Indictment "was contrary to the PPM representations to prospective GTV investors about how investments in GTV would be used";[20]

- the identity and any location of any purported victims of the scheme, and whether the government intends to call those individuals as trial witnesses.[21]

## A. Applicable Law

A defendant is entitled to a bill of particulars when the indictment fails "to provide the defendant with sufficient detail to defend adequately the charges against him." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998), *abrogated on other grounds by*, *United States v. Thomas*, 274 F.3d 655 (2d Cir. 2001). Indeed, the bill of particulars "must be granted . . . where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which

---

[15] *See* S1 Indictment ¶ 3.

[16] *See* S1 Indictment ¶ 8.

[17] S1 Indictment ¶ 36

[18] *Id.*

[19] SI Indictment ¶ 13.

[20] S1 Indictment ¶ 13(h).

[21] Ms. Wang reserves the right to seek further particulars if the Government obtains an additional superseding indictment.

he is accused." *United States v. Urso*, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005) (internal citations and quotations omitted).

Courts in this District and in the Second Circuit more broadly have considered the following factors in whether to grant a bill of particulars. (i) the volume of the pre-trial disclosure; (ii) the number of co-conspirators; (iv) the duration and breadth of the alleged conspiracy; (iv) whether the government has otherwise provided adequate notice of particulars; (v) the potential danger to co-conspirators given the nature of the alleged criminal conduct; (vi) and the potential harm to the government's investigation. *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000); *see also United States v Aronov*, No. 19-cr-408 (MKB), Mem. & Order (Dkt. No. 181) (E.D.N.Y. May 6, 2021); *United States v. Aquart*, No. 3:06-cr-160 (PCD), 2006 WL 2684304 (D. Conn. Sept. 19, 2006); *United States v. Luna*, No. 3:05-cr-58 (SRU), 2006 WL 1668006 (D. Conn. May 17, 2006); *United States v. Savin*, No. 00-cr-45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001).

### B. Discussion

Here, each of these six factors favors ordering particulars.

As to the first two factors, the number of potential co-conspirators and the duration and breadth of the alleged conspiracy are vast: Count One alleges a five-year long conspiracy, "from at least in or about 2018 through at least in or about March 2023,[22] which allegedly involved "dozens of interrelated entities."[23]

Similarly, the third and fourth factors—whether the government had otherwise provided adequate notice of the particulars and the volume of pretrial disclosure—also weigh in favor of

---

[22] S1 Indictment ¶ 1

[23] *See id.*

particulars. While the government will no doubt point to its "speaking" indictment and the voluminous discovery produced to date, those facts actually weigh against the government here. The speaking indictment is long on adjectives and qualifiers—"*a series* of complex fraudulent and fictitious businesses";[24] "*dozens* of" entities[25]; the "vast *majority* of the proceeds"[26] a "*variety* of entities that were [allegedly] instrumentalities of the fraud[27]—but short on specifics. Ms. Wang is left to guess about what entities and business the government thinks are "fraudulent and fictitious" businesses and investment opportunities, which are not, and how so.

Ms. Wang is also left to guess about what proceeds the government claims were misappropriated from the GTV Private Placement. Indeed, Paragraphs 13(d)-(f) of the Indictment are full of qualifying language—both in the PPM itself and in the government's allegations. For example, as alleged, the PPM refers only to a "'*contemplated* use of proceeds'" which gives "approximate" values (which include "other" and "working capital").[28] The government contends the "vast majority of proceeds derived from investors in the GTV Private Placement were not used to develop and grow the GTV business" but were—in a non-sequitur—"instead "deposited . . . into accounts held in the name of . . . GTV's parent company."[29] As such, the indictment fails to give Ms. Wang "sufficient particularity the nature of the charge pending against [her], [to] enabl[e] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should

---

[24] See *id.*

[25] *Id.*

[26] S1 Indictment ¶ 13(f)

[27] S1 Indictment ¶ 8.

[28] Indictment ¶ 13(d).

[29] Indictment ¶ 13(e).

[s]he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

Moreover, the hundreds of thousands of pages of discovery, coupled with government provided data from extractions from (by counsel's count) close to 100 electronic devices seized from various people, do not help Ms. Wang prevent unfair surprise at trial. To the contrary, the government cannot merely rely on discovery as an "adequate substitute for a straightforward identification in a bill of particulars." *United States v. Davidoff*, 845 F. 2d 1151, 1155 (2d Cir. 1988), and the government does not "fulfill its obligation merely by providing mountains of documents to defense counsel." *Luna*, 2006 WL 1668006, at *1; *see also Aquart*, 2006 WL 2684304, at *2 ("[A] large volume of discovery may warrant a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial."); *U.S. v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) ("Perhaps the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive[.]"); *Nachamie*, 91 F. Supp. 2d at 571 (granting bill of particulars identifying unindicted co-conspirators where government had produced "over 200,000 pieces of paper"). This is particularly true in a case like this one, where the alleged crimes related to otherwise innocuous conduct—like people transferring money between bank accounts—and not inherently illegal activities like selling narcotics or engaging in crimes of violence.

The fifth and sixth factors—the nature of the charged conduct and the potential harm to the government's investigation—also weigh in favor of particularization. Neither Ms. Wang nor her co-conspirators are charged with any acts of violence. Additionally, this investigation began no later than early 2020, almost four years ago; the case was charged nine months ago; and trial is less than four months away. *United States v. Falkowitz*, 214 F. Supp. 2d 365, 391 (S.D.N.Y. 2002)

("[W]hen the trial date is imminent, as now, the Government's investigation presumably is close to completion. Thus, there is no indication that a bill of particulars will harm the progress of the investigation.").

Further, apart from the six factors above, this case presents unique circumstances that make particularization of the government's theories and witnesses appropriate.

For one, as alleged in the Indictment itself, Kwok has "hundreds of thousands of online followers,"[30] who may have had a variety of motivations, expectations, and beliefs about why they were investing in the GTV Private Placement. Indeed, the Indictment itself seems to acknowledge as much, hedging (again) by alleging that "Investors participated in the GTV Private Placement based, *in part*, on the belief that their money would be invested into GTV to develop and grow that business . . . ." but that the "*vast majority*"—whether 60 percent or 75 percent or 98 percent—Ms. Wang is left to guess—was allegedly not so invested.[31]

On the flip side, Ms. Wang—in addition to Kwok—has known, powerful enemies given her association with anti-Chinese Communist Party activities. Indeed, just this week the government disclosed to counsel for the first time that ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.[32] Further, as the government itself has alleged in other proceedings, the CCP has attempted to corrupt the U.S. judicial system by filing false lawsuits against dissidents. *See, e.g.*, *United States v. An*, No. 1:22-cr-00460-KAM, ECF No.

---

[30] S1 Indictment ¶ 2.

[31] S1 Indictment ¶¶ 13(e)-(f).

[32] Ex. 7 (filed under seal).

9 ¶ 40 (E.D.N.Y. Oct. 7, 2022) (describing how Chinese operative filed a false civil lawsuit in New York state court to attempt to coerce target of Chinese intelligence to return to China). The high potential for witnesses to have ulterior motivations in testifying against Ms. Wang provides another reason why early particularization of the government's witnesses and theories is critical to a fair trial and to ensure adequate trial preparation.

Finally, particulars are also warranted for another reason specific to Count Three, the securities fraud count against Ms. Wang, which charges her with violating 15 U.S.C. §§ 78j(b) and 78ff ("Section 10(b)") and Title 17, Code of Federal Regulations § 240.10b-5 ("Rule 10b-5"), and Title 18, United States Code, Section 2. S1 Indictment, ECF No. 19, ¶ 35-36.

Section 10(b) of the Exchange Act, the offense charged in Count Three, does not apply extraterritorially. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 273 (2010) ("Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States."); *United States v. Vilar*, 729 F.3d 62, 67 (2d Cir. 2013) (applying *Morrison* to hold Section 10(b) does not "apply extraterritorially in criminal cases").

Thus, for a defendant to be convicted of securities fraud, she must have "engaged in fraud in connection with (1) a security listed on an American exchange, or (2) a security purchased or sold in the United States." *Vilar*, 729 F.3d at 67. As to the second prong, a security is "purchased or sold in the United States" "if irrevocable liability is incurred or title passes within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012). Further, even if a securities transaction has some U.S. elements, that will not provide jurisdiction if the transaction is "predominantly foreign." *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014)

Here, the government has not alleged that the GTV shares were "listed on a U.S. exchange." As such, the government must show Ms. Wang "engaged in fraud" in connection with a security for which "if irrevocable liability is incurred or title passe[d] within the United States."

But Count Three itself contains no allegation of a domestic securities transaction, beyond boilerplate, plainly inapplicable references to a "national securities exchange."[33] The "to wit" clause refers only to the "scheme being furthered through electronic communications and monetary transfers to and from the Southern District of New York." S1 Indictment ¶ 36. This provides no notice of the transactions for which the government alleges that "irrevocable liability [was] incurred or title passe[d] within the United States." *Absolute Activist Value Master Fund Ltd*, 677 F.3d at 67.

As such, the government should be required to particularize how Ms. Wang "conducted the GTV Private Placement"[34] and the securities "purchase[s] and sale[s]" it contends she was involved in or solicited[35].

*** 

Accordingly, the Court should order the government to provide the particulars requested above.

---

[33] SI Indictment ¶ 36.

[34] S1 Indictment ¶ 36

[35] *Id.*

## IV. **The Court Should Sever Ms. Wang's Trial From Her Co-Defendant's**

### A. **Applicable Law**

Rule 14(a) of the Federal Rules of Criminal Procedure provides that if joinder "appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

The movant must demonstrate that she will be "substantially prejudiced" if severance is not granted. *United States v. Crozzoli*, 698 F. Supp. 430, 437 (E.D.N.Y. 1988) (citing *United States v. Losada*, 674 F.2d 167, 171 (2d Cir. 1982)). In making its determination, the courts may consider factors like: "(1) the number of defendants; (2) the number of counts; (3) the complexity of the indictment; (4) the estimated length of trial; (5) disparities in the amount or type of proof offered against each defendant; (6) disparities in the degrees of involvement by each defendant in the overall scheme; (7) possible conflict between various defense theories or trial strategies; and (8) prejudice from evidence admitted against co-defendants which is inadmissible or excluded as to a particular defendant." *United States v. Upton*, 856 F. Supp. 727, 736 (E.D.N.Y. 1994). Especially where more than one factor exists, the courts have been swayed to grant severance. *United States v. Nachamie*, 101 F. Supp. 2d 134, 152 (S.D.N.Y. 2000) (applying *Upton* in granting severance, given both the "evidentiary issue" and the "mutually antagonistic defenses" issue); *accord United States v. Burke*, 789 F. Supp. 2d 395, 399-400 (E.D.N.Y. 2011) (granting severance where co-defendant faced a "significant" risk of prejudicial spillover and severance served the interests of judicial economy, as the co-defendant's relatively minor charges would involve a quick trial with limited evidence); *United States v. Villanueva Madrid*, 302 F. Supp. 2d 187, 190 (S.D.N.Y. 2003) (granting severance to avoid a "particularly acute" danger of undue prejudice).

In a complex, lengthy case involving multiple defendants, the courts are particularly concerned with the "disproportionality of evidence." *United States v. Gallo*, 668 F. Supp. 736, 750

(E.D.N.Y. 1987); *accord United States v. Kelly*, 349 F.2d 720, 759 (2d Cir. 1965). The court worries that jurors will not be able, "as a practical matter," to properly isolate the evidence as applied to each defendant. *United States v. Kahaner*, 203 F. Supp. 78, 81-82 (S.D.N.Y. 1962), *aff'd.*, 317 F.2d 459 (2d Cir.1963).

Additionally, severance is appropriate where individuals would not be able to mount effective defenses if tried as co-defendants. *See United States v. Shkreli*, 260 F. Supp. 3d 247, 256 (E.D.N.Y. 2017) (granting severance where the co-defendant's defense strategy was to position himself as "another victim of [the movant's] [alleged] lies and deceitfulness"); *cf. United States v. Gleason*, 259 F. Supp. 282, 283-85 (S.D.N.Y. 1966) (granting severance where movant calling her co-defendant as a witness was "essential" to her defense).

In *United States v. Gatien*, for example, No. 96-CR-430, 1997 WL 661138, at *2-4 (E.D.N.Y. Oct. 20, 1997), the court granted severance to two co-defendants, finding the "disparity in the nature and quantity of the evidence against [the movants] on one hand and [the co-conspirators] on the other requires that [the] motions to sever be granted." This included the (1) "disparity in the nature" of the parties' "involvement in the alleged conspiracy"—with the co-conspirators being the so-called "mastermind" and "director" of the conspiracy, compared with the "incidental . . . involvement" of the movants; (2) the "extreme nature of the evidence" that was anticipated to be introduced against the co-conspirators, which would make it "exceedingly difficult" for the jury to soberly "appraise" and distinguish; and (3) the lengthy trial anticipated for the co-conspirators, compared with the more efficient trial for the movants if severed. *Id.*

## B.  Discussion

This case involves extraordinarily voluminous discovery—over one million documents produced to date, by counsel's count—the overwhelming majority of which has nothing at all to do with the allegations against Ms. Wang. This is consistent with the Superseding Indictment itself,

in which Ms. Wang's name appears only 37 times, while Kwok and Je are named 175 and 156 times, respectively. *See generally* S1 Indictment.

Applying the *Upton* factors, the court should clearly grant severance of Ms. Wang's trial from that of Kwok.

*First*, Ms. Wang is charged with only four out of twelve counts, namely, counts one, two, three, and eleven, all of which are related to GTV.

*Second*, the complexity of the indictment. There is no serious question the indictment is complex. Indeed the government uses that word repeatedly in its charging language: alleging a there was "a series of complex fraudulent and fictitious businesses and investment opportunities that connected dozens of interrelated entities," SI Indictment at ¶ 1, and that Kwok and Je allegedly misappropriated funds "using, among other things, a complex web of entities and bank accounts." *Id.* at ¶ 16.

*Third and fourth*, the Indictment suggests there will be vast disparities in the amount and type of direct evidence offered against Ms. Wang as opposed to Kwok and Je. For example:

- Kwok and Je are accused of using over $300 million dollars from the alleged fraud for their own and their family's benefit. *Id.* at ¶ 4. Kwok allegedly used investor money to buy himself and his relatives a New Jersey mansion, luxury cars, a yacht, a piano, and an expensive mattress, among other decadent purchases. *Id.* at ¶¶ 4, 14. Je is accused of having transferred some $10 million to his and his spouse's personal bank account. *Id.* at ¶¶ 4, 14(4)(iv). No such allegations of personal enrichment have been made against Wang, who throughout the period during which the alleged conspiracy is said to have occurred lived in a one-bedroom apartment.

23

- Kwok is alleged to have appeared in numerous videos promoting multiple projects allegedly involved in the alleged conspiracies, including the GTV private placement video and subsequent promotional videos for GTV, *id.* at ¶¶ 13(a), 32(a), (d); a promotional video for the "Himalaya Farm Alliance," *id.* at ¶¶ 14(c)-(d), 32(c); multiple promotional videos for G-CLUBS, *id.* at ¶¶ 15(a), (d), (f)(ii), 32(f); multiple promotional videos for the Himalaya Exchange, *id.* at ¶¶ 18, 20, 32(h). Conversely, no allegations have been made that Wang was ever involved in any promotional videos or public-facing content of any kind for any of the aforementioned programs.

- In the section of the indictment enumerating the alleged "overt acts" taken in furtherance of the conspiracy, or conspiracies, Ms. Wang is named only once in relation to any of the numerous alleged overt acts, an allegation related only to GTV. *Id.* at ¶ 32(b).

- Je is alleged to have been the "author" of the GTV private placement memorandum. *Id.* at ¶ 13(c).

- Kwok is alleged to "organized and promoted" the "Himalaya Farm Alliance." *Id.* at ¶ 14(a). Kwok and Je are alleged to have misappropriated some $150 million in funds from this "Alliance." *Id.* at ¶ 14.

- Kwok and Je are alleged to have committed fraud with respect to an online membership club, G-CLUBS, allegedly using this club "as a mechanism to continue fraudulent private placement offerings." *Id.* at ¶ 15. Kwok and Je are alleged to have misappropriated a "substantial portion" of G-CLUBS membership fees for personal use, including allegedly paying the personal expenses for Kwok

and his family, paying for extravagant purchases by Kwok, and being funneled to Je's personal bank account. *Id.* at ¶ 16.

- Kwok and Je are alleged to have marketed and promoted the Himalaya Exchange cryptocurrency ecosystem, including Kwok allegedly encouraging his followers on social media to participate in the Exchange; Je allegedly creating a false impression that the Exchange's currency was used to buy a Ferrari; and both men allegedly misrepresenting the strength of the Exchange's currency. *Id.* at ¶¶ 18-22. Kwok and Je are further alleged to have "fraudulently obtained" more than $262 million through the Himalaya Exchange. *Id.* at ¶ 17. This includes an alleged transfer of some $37 million to "cover the cost of [Kwok's] luxury yacht." *Id.* at ¶ 23.

The Indictment contains no allegations against Ms. Wang with respect to any of the above matters and no allegations at all that she used investor proceeds for personal gain or lived a luxurious lifestyle.

*Fifth*, Ms. Wang may have conflicting defenses with Kwok that could impede her ability to vigorously defend herself in a joint trial. While the undersigned counsel's investigation is on-going, the government has seemingly acknowledged as much, arguing in its attempt to disqualify Emil Bove as counsel for Ms. Wang that Mr. Bove's involvement in a separate investigation of Kwok "might restrict Bove's ability to defend his client beyond what is waivable" because he could not use information he learned during his time as an AUSA to help Ms. Wang.  ECF No. 128 at 3 (asserting that the Court would have to "wrestle with thorny issues during trial," including around "cross-examining witnesses").

Finally, given, among other things, Kwok's "prolific online presence,"[36] and the government's apparent intent to introduce evidence of that presence, there is substantial potential for spillover over prejudice against Ms. Wang from Mr. Kwok's statements. To the extent the government argues in response to this argument that Mr. Kwok's statements are admissible against Ms. Wang as statements in furtherance of a conspiracy or agent admissions, it should be required to specify well before trial which statements it intends to introduce and why those statements are admissible on that basis.

Accordingly, for the reasons stated above, the Court should sever Ms. Wang's trial from Kwok's.

**V.** **Ms. Wang Joins in Co-Defendant Kwok's Motion to Dismiss Directed to the Counts in the Indictment in Which She is Charged**

Finally, Ms. Wang joins in those portions of defendant Kwok's motion to dismiss, ECF Nos. 193-195, directed at the counts in the indictment in which Ms. Wang is charged.

**CONCLUSION**

The Court should grant Ms. Wang's motions.

Dated: December 15, 2023         Respectfully submitted,

BAKER BOTTS LLP

By:*/s/ Brendan F. Quigley*
Brendan F. Quigley
30 Rockefeller Plaza
New York, N.Y. 10112
Tele: (212) 408-2500
Fax:  (212) 408-2501
brendan.quigley@bakerbotts.com

*Attorney for Yanping Wang*

---

[36] S1 Indictment ¶ 1.