# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, | Case No: 22-50073 (JAM) |
| Debtor. | |
| | |
| HO WAN KWOK, | |
| Movant, | |
| v. | |
| WILLIAM K. HARRINGTON, UNTIED STATES TRUSTEE FOR REGION 2 | |
| and | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE | |
| Respondents. | |

**THE DEBTOR'S MOTION FOR RELIEF FROM**
**ORDER APPOINTING LUC A. DESPINS AS CHAPTER 11 TRUSTEE**

The debtor, Ho Wan Kwok (the "Debtor"), by and through his undersigned counsel pursuant to Fed R. Civ. P. 60(b), incorporated herein by Fed. R. Bankr. P. 9024, hereby moves for relief from the Order Granting Appointment of Chapter 11 Trustee (Doc. No. 523) (the "Despins Appointment Order") based upon evidence discovered after his appointment that the Chapter 11 trustee, Luc A. Despins (the "Trustee") is not disinterested and for other reasons that justify vacating the approval of his appointment. In support of his motion, the Debtor represents as follows:

# I.    <u>INTRODUCTION</u>

1.      As set forth more fully below and as the Debtor reasonably anticipates establishing further through discovery, the Trustee is not disinterested. The Trustee failed to disclose as part of his original declaration filed with the application a day before the hearing and then only disclosed verbally to the Debtor's prior counsel approximately an hour before the hearing that his law firm, Paul Hastings LLP ("<u>Paul Hastings</u>"), had represented multiple parties related to the Debtor's largest creditor and zealous adversary, Pacific Alliance Asia Opportunity Fund ("<u>PAX</u>"). No appropriate vetting of this relationship and its' purported termination in May of 2022, could have been conducted by anyone.

2.      More significantly, the Trustee failed to disclose at any time his firm's significant relationship to the People's Republic of China, the Chinese Communist Party ("<u>CCP</u>") and their state owned and controlled entities. The Trustee is a partner in Paul Hastings—with all the attendant fiduciary duties—and the co-chair of its Financial Restructuring group. As a matter of law, Paul Hastings' legal relationships are the Trustee's legal relationships. As set forth below, the People's Republic of China and CCP are directly and fiercely adverse to the Debtor. The Trustee failed to make full and timely disclosure of his and his firm's connections to persons related to this case, and based upon information obtained after his appointment, he is not disinterested. The Trustee's participation in this case will not be perceived as impartial, will be subject to the significant risk of undue influence by the Debtor's most hotly-contested adversaries, and will make an already unfortunate situation far worse.  The Debtor respectfully submits that the order appointing the Trustee should be vacated.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **The Appointment of the Chapter 11 Trustee**

   3.      On February 15, 2022, the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above captioned bankruptcy case (the "Bankruptcy Case").

   4.      On June 15, 2022, this Court issued a Memorandum of Decision, *inter alia*, granting the Motion to Dismiss or, in the alternative, Partial Joinder to the USTs Motion for the Appointment of a Chapter 11 Trustee (Doc. No. 183) to the extent that it sought the appointment of a Chapter 11 trustee. (Doc. No. 465.)

   5.      On June 30, 2022, William K. Harrington, the United States Trustee for Region 2 (the "UST"), filed a notice appointing Joe D. Whitley ("Whitley") as Chapter 11 trustee in this case (Doc. No. 498), and on the same day, an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 499) (the "Whitley Application"), seeking the Court's approval of the appointment of Whitley as the Chapter 11 trustee. The Whitley Application was withdrawn by the UST on July 5, 2022, the day the matter was scheduled to be heard. (Doc. No. 507.)

   6.      Then, on July 7, 2022, the UST filed a notice (the "Appointment Notice") appointing the Trustee as Chapter 11 trustee (Doc. No. 514), and an Application for Order Approving Appointment of Chapter 11 Trustee (Doc. No. 515) (the "Appointment Application"), seeking the Court's approval of the appointment of the Trustee.

   7.      In the Appointment Application, the UST represented that to the best of his knowledge the Trustee's "connections with the Debtor, creditors, any other parties-in-interest, their respective attorneys and accountants, the United States Trustee, and persons employed in the Office of the United States Trustee are set forth on the Declaration of Luc A. Despins which is

annexed hereto."

8.      In the Declaration of Disinterestedness of Luc A. Despins (the "<u>Despins Declaration</u>"), the Trustee stated that he is a partner at Paul Hastings LLP ("<u>Paul Hastings</u>"). (Despins Declaration, ¶ 1.)

9.      The Trustee also stated that he believed:

> a. Neither I, nor Paul Hastings, nor any partner in, counsel to, or associate of Paul Hastings represents any entity in or in connection with the Debtor's chapter 11 case;
> b. Paul Hastings and I do not hold or represent an interest adverse to the Debtor's estate; and
> c. neither Paul Hastings nor any of its attorneys, including me, (i) is a creditor, equity security holder or insider of any of the Debtor or his affiliates, (ii) has been, within two years before the date of the filing of the petition, a director, officer, or employee of any of the Debtor or his affiliates, or (iii) has any interest materially adverse to the interests of the estates of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

(Despins Declaration, ¶ 5.)

10.     On July 8, 2022, the day after the UST filed the Appointment Notice and the Appointment Application, this Court conducted the hearing on the Appointment Application (the "<u>July 8 Hearing</u>").

11.     At the July 8 Hearing, the Trustee disclosed for the first time orally Paul Hastings' relationship with Pacific Alliance Group ("<u>PAG</u>"),[1] the parent company of creditor Pacific Alliance Asia Opportunity Fund ("<u>PAX</u>"). Specifically, the Trustee stated:

> 15 But I wanted to make sure today that I mentioned
> 16 to the Court that we discovered last night that we have in
> 17 the past represented entities that have -- that are -- have
> 18 the acronym PAG in them, P-A-G. Unbeknownst to our conflict
> 19 system, PAG means Pacific Asia Group [sic].
> 20 And those entities -- and, again, as I said, these
> 21 are representations that were completed, but these entities

---

[1] PAG was also subsequently identified as PAG Holdings Limited.

22 are unrelated to the Kwok matter in any way.
23 However, PAX is probably managed by a similar or a
24 PAG entity of some kind. We're trying to figure out exactly
25 which one.

(Transcript of July 8 Hearing, 6:15-25, excerpt attached hereto as **Exhibit A**.)

12.     The Court then entered the Despins Appointment Order, approving the appointment

of the Trustee, on the same day. (Doc. No. 523.)

13.     On July 12, 2022, the Trustee filed his First Supplemental Declaration of

Disinterestedness of Luc A. Despins (Doc. No. 538) (the "Supplemental Despins Declaration"), in

which the Trustee represented that Paul Hastings represented "certain entities" that share a

common parent with PAX. (Supplemental Despins Declaration, ¶ 2.) He did not disclose any

details regarding those representations, other than to state that they were in unrelated matters. (*Id.*)

14.     The Trustee did not—and to date still has not—disclosed his or Paul Hastings'

connections to the People's Republic of China, the CCP or entities they own or control.

**B.   The Interest of the Chinese Government in This Case and the Trustee's Failure to
      Disclose Chinese Interests**

15.     Paul Hastings has two offices in China – Beijing and Shanghai – and one in Hong

Kong (a "Special Administrative Region" of China) and does significant business there, including

representing at least ten (10) entities owned by the Chinese government. *E.g.*, Paul Hastings

Represents Chinese Local Government Enterprises in Seven Bond Issuances, PaulHastings.com,

https://www.paulhastings.com/news/paul-hastings-represents-chinese-local-government-

enterprises-in-seven-bond. In fact, Paul Hastings has stated that it "was one of the first major

international law firms to establish an Asia practice, and today we continue to be a leader in the

region." Beijing, PaulHastings.com, https://www.paulhastings.com/offices/beijing; *see also id.*

("Our lawyers in Beijing represent Fortune Global 500 companies and financial institutions in

cross-border transactions in the Greater China region. We also advise Chinese companies and financial institutions on their strategic outbound investments into the U.S., Europe, Latin America, and other global markets."). Neither the Trustee nor the UST have explained, or even mentioned, the extent of Paul Hastings' connections to businesses in China.

16.     Because the Chinese government and the CCP have exclusive and unchecked control over which businesses operate in China, including Paul Hastings and its clients, the Chinese government and the CCP have significant influence over Paul Hastings and its Chinese clients.

17.     As the United States Department of Justice (the "DOJ"), of which the UST's office is a part, is well aware, the Chinese government and the CCP have tried in the past to unduly influence proceedings involving the Debtor and have committed criminal acts toward the Debtor within the United States.

18.     In 2017, the Debtor filed an application with the United States government for political asylum from the Chinese government. The Debtor's application for political asylum remains pending. Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 Case and Certain Motions (Doc. No. 107) (the "Kwok Declaration"), ¶ 14; Billionaire Who Accused Top Chinese Officials of Corruption Asks U.S. for Asylum, *New York Times*, https://www.nytimes.com/2017/09/07/world/asia/china-guo-wengui-corruption-asylum.html.[2] The Debtor's family, in multiple separate instances, was detained and tortured by the CCP. *Pacific Alliance Asia Opportunity Fund v. Kwok Ho Wan*, No. 652077/2017 (N.Y. Sup. Ct.), Aff. of Mei Guo, Doc. No. 1162, ¶¶ 4-6.

19.     In 2017, at the request of the Ministry of Foreign Affairs, People's Republic of

---

[2] The Debtor is also known as Guo Wengui.

China, Interpol issued a "red notice" for the Debtor—providing an international alert that he was wanted for arrest in China. China has been accused of abusing Interpol's Red Notice System. "China has selectively used this service to repatriate Chinese nationals wanted by the authorities for engaging in political/religious activism or expressing views contrary to that professed by the Chinese Communist Party." View: How China Misuses Interpol to Settle Domestic Scores and Stifle Dissidence, The Economic Times, https://economictimes.indiatimes.com/news/ defence/view-how-china-misuses-interpol-to-settle-domestic-scores-and-stifle-dissidence/ articleshow/86160172.cms?utm_source=contentofinterest&utm_medium=text&utm_campaign= cppst.

20.     Also in 2017, United States federal agents engaged in two altercations with Chinese operatives within a seventy-two (72) hour period—one at Penn Station and one at JFK airport— because federal agents had determined that the Chinese government was conducting a covert and unauthorized operation in New York to coerce the Debtor to return to China. China's Pursuit of Fugitive Businessman Guo Wengui Kicks Off Manhattan Caper Worthy of Spy Thriller, *The Wall Street Journal,* https://www.wsj.com/articles/chinas-hunt-for-guo-wengui-a-fugitive- businessman-kicks-off-manhattan-caper-worthy-of-spy-thriller-1508717977.

21.     In addition, in 2018, George Higginbotham, a former DOJ Headquarters Official, pleaded guilty to facilitating the transfer of millions of dollars from foreign bank accounts to the United States to fund a lobbying campaign to persuade high-ranking United States officials to unlawfully remove the Debtor from the United States to China. *See* Former Justice Department Employee Pleads Guilty to Conspiracy to Deceive U.S. Banks about Millions of Dollars in Foreign Lobbying Funds, https://www.justice.gov/opa/pr/former-justice-department-employee-pleads- guilty-conspiracy-deceive-us-banks-about-millions; Kwok Declaration, ¶ 16. Former Chairman

of the Republican National Committee, Elliot Broidy, and lobbyist Nicki Lum Davis also pleaded guilty for their roles in that scheme. Kwok Declaration, ¶ 16 (citing DOJ press releases).

22.     Last month, the DOJ indicted Low Taek Jho and Prakazrel "Pras" Michel of conspiring "to engage in undisclosed lobbying campaigns at the direction of Low and the Vice Minister of Public Security for the People's Republic of China, respectively . . . to have a Chinese dissident sent back to China." U.S. Entertainer/Businessman and Malaysian National Charged with Back-Channel Lobbying Campaign to Drop 1MDB Investigation and Remove Chinese Dissident from U.S., https://www.justice.gov/opa/pr/us-entertainerbusinessman-and-malaysian-national-charged-back-channel-lobbying-campaign-drop. That "dissident" is the Debtor.

23.     Further, in May 2022, the DOJ filed a civil enforcement action against Stephen A. Wynn (the hotelier) ("Wynn") to compel him "to register under the Foreign Agents Registration Act (FARA) as the agent of the People's Republic of China (PRC) and a senior official of the PRC's Ministry of Public Security (MPS)." Justice Department Sues to Compel a U.S. Businessperson to Register Under the Foreign Agents Registration Act, https://www.justice.gov/opa/pr/justice-department-sues-compel-us-businessperson-register-under-foreign-agents-registration. According to the DOJ's own complaint:

> [F]rom at least June 2017 through at least August 2017, Wynn contacted the then-President and members of his administration to convey the PRC's request to cancel the visa or otherwise remove from the United States a Chinese businessperson who left China in 2014, was later charged with corruption by the PRC and sought political asylum in the United States. Wynn engaged in these efforts at the request of Sun Lijun, then-Vice Minister of the MPS. Wynn conveyed the request directly to the then-President over dinner and by phone, and he had multiple discussions with the then-President and senior officials at the White House and National Security Council about organizing a meeting with Sun and other PRC government officials.

*Id.* Again, the Chinese business person is the Debtor. Steve Wynn May Face Justice Department Action for Role in China's Push to Expel Businessman, *The Wall Street Journal*,

https://www.wsj.com/articles/justice-department-wants-casino-mogul-steve-wynn-to-register-as-foreign-lobbyist-11622054103; Kwok Declaration, ¶ 16.

24.    The DOJ has recognized that Wynn's "conduct was motivated by his desire to protect his business interests in the PRC." *Attorney General of the United States of America v. Wynn*, No. 1:22-cv-1372 (D.D.C.), Complaint for Declaratory and Injunctive Relief, ¶ 28. The DOJ also alleged specific pressure put upon Wynn by China:

> According to public reporting, in 2016, shortly before the conduct described above occurred, the Macau government restricted the number of gaming tables and machines that the Defendant's casino could operate. Also according to public reporting, Defendant was scheduled to renegotiate his licenses to operate casinos in Macau in 2019, subsequent to the conduct described above.

*Id.*, ¶ 29 (footnotes omitted).

25.    In addition, the Chinese government has seized or frozen billions of dollars of assets on account of claims against the Debtor.  Chinese Tycoon's Daughter Challenges Hong Kong Over Asset Freeze, *Bloomberg*, https://www.bloomberg.com/news/articles/2018-08-16/chinese-tycoon-s-daughter-challenges-hong-kong-over-asset-freeze#xj4y7vzkg.

26.    This includes the land and development in Beijing known as the Pangu Plaza, which was given as security for a loan made by PAX to an entity called Spirit Carter. Kwok Declaration, ¶ 21.  Seized Beijing skyscraper sells online for a 'bargain' $734M, CNN, https://www.cnn.com/style/article/pangu-plaza-guo-wengui/index.html.

27.    In 2017, at the request of the Ministry of Foreign Affairs, People's Republic of China, Interpol issued a "red notice" for the Debtor—providing an international alert that he was wanted for arrest in China. China has been accused of abusing Interpol's Red Notice System. "China has selectively used this service to repatriate Chinese nationals wanted by the authorities for engaging in political/religious activism or expressing views contrary to that professed by the

Chinese Communist Party." View: How China Misuses Interpol to Settle Domestic Scores and Stifle Dissidence, *The Economic Times*, https://economictimes.indiatimes.com/news/defence/view-how-china-misuses-interpol-to-settle-domestic-scores-and-stifle-dissidence/articleshow/86160172.cms?utm_source=contentofinterest &utm_medium=text&utm_campaign=cppst.

28. It has been well documented that the Chinese government exercises unchecked control and influence over businesses in China. *E.g.*, How the State Runs Business in China, *The Guardian*, https://www.theguardian.com/world/2019/jul/25/china-business-xi-jinping-communist-party-state-private-enterprise-huawei. ("From the Mao era onwards, Chinese state firms have always had a predominant role in the economy, and the Communist party has always maintained direct control over state firms. For more than a decade, the party has also tried to ensure it played a role inside private businesses. But in his first term in office, [Chinese president] Xi [Jinping] has overseen a sea change in how the party approaches the economy, dramatically strengthening the party's role in both government and private businesses."). This includes foreign multinational companies with a Chinese presence. *Id.*; Christopher Wray, Director, Federal Bureau of Investigation, Remarks at Hudson Institute, Video Event: China's Attempt to Influence U.S. Institutions (July 7, 2020) (transcript available at: https://www.fbi.gov/news/speeches/the-threat-posed-by-the-chinese-government-and-the-chinese-communist-party-to-the-economic-and-national-security-of-the-united-states) ("So what does China do? Well, China has leverage over the American official's constituents—American companies, academics, and members of the media all have legitimate and understandable reasons to want access to Chinese partners and markets. And because of the authoritarian nature of the Chinese Communist Party, China has immense power over those same partners and markets. So, China will sometimes start by trying to influence the American official overtly and directly. China might openly warn that if the American official

10

goes ahead and takes that trip to Taiwan, China will take it out on a company from that official's home state by withholding the company's license to manufacture in China. That could be economically ruinous for the company, would directly pressure the American official to alter his travel plans, and the official would know that China was trying to influence him."). This influence necessarily extends to Paul Hastings and its clients in China.

## II.   JURISDICTION AND VENUE

29.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court for this case and this Motion pursuant to 28 U.S.C. §§ 1408 and 1409, respectively.

## III.   LEGAL BASIS FOR RELIEF

### A.  Standard for Relief from Order under Fed. R. Civ. P. 60(b)

30.     The Debtor respectfully requests that the Court grant it relief from the Despins Appointment Order and vacate the same.

31.     Fed. R. Civ. P. 60(b)[3] provides in relevant part

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) . . . (6) any other reason that justifies relief.

With certain exceptions not relevant here, Fed. R. Bankr. P. 9024 provides that Fed. R. Civ. P. 60 applies in cases under the Bankruptcy Code.

---

[3] "'[M]otions pursuant to Rule 59(e), Rule 60(b), and Local Rule 7(c) for reconsideration are treated under the same standard.'" *Ashby v. Quiros*, 2021 U.S. Dist. LEXIS 91970, at *2 (D. Conn. May 14, 2021) (quoting *Levy v. World Wrestling Ent., Inc.*, 2009 U.S. Dist. LEXIS 66200 (D. Conn. July 31, 2009)).

32.     Under Fed. R. Civ. P. 60(b)(2), "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (citations omitted).

33.     "Rule 60(b) is a procedural device used to challenge final judgments or final orders. . . . Courts have held that a final judgment is needed to support a Rule 60(b) motion." *Byrne v. Liquid Asphalt Sys.*, 250 F. Supp. 2d 84, 87 (E.D.N.Y. 2003) (citations omitted). "[A]n order is final if nothing in the order . . . indicates any anticipation that the decision will be reconsidered. A bankruptcy court's order is final if it completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Adelphia Communs. Corp.*, 333 B.R. 649, 656 (S.D.N.Y. 2005) (citations and quotation marks omitted). Preconfirmation orders appointing a trustee are considered final. *Silverman v. Tracar, S.A. (In re Am. Preferred Prescription, Inc.)*, 255 F.3d 87, 92 (2d Cir. 2001) (dicta); *Adelphia Communs. Corp.*, 333 B.R. at 657 n.41 (collecting cases); *see also Altman v. Rafael Galleries, Inc. (In re Altman)*, 2000 U.S. Dist. LEXIS 16235, at *6-9 (D. Conn. July 27, 2000).

B.   **The Trustee Must Be a "Disinterested Person"**

34.     Here, the Trustee has not disclosed his or his firm's connection with the Chinese government, the CCP, or state-controlled businesses. However, it is clear that the Chinese government, the CCP, and any of the entities they control (directly or indirectly) are parties in interest here because they have demonstrated an interest in persecuting the Debtor, decimating his finances and ability to reorganize, and extorting him to return to China, in many instances in

violation of the laws of the United States. Thus, the Trustee must disclose his and Paul Hastings connections with the Chinese government.

35.     "The trustee must be a 'disinterested person,' as defined in section 101(14)." 7 Collier on Bankruptcy P 1104.02 (citing 11 U.S.C. § 1104(b), (d)). Relevant here, "[t]he term 'disinterested person' means a person that—. . . (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14). Moreover, a statement disclosing potential adverse interests must be in writing and filed with the application to approve a Chapter 11 trustee. Fed. R. Bankr. P. 2007.1(c) ("The application shall be accompanied by a verified statement of the person appointed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.").

36.     The Bankruptcy Code does not define what it means to have "an interest materially adverse to the interest of the estate". *See* 11 U.S.C. § 101(14); *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999). However, Courts, including the Second Circuit, have defined "the phrase 'hold or represent an interest adverse to the estate[]'" as

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Id.* (citations omitted). In order to determine whether a Chapter 11 trustee is disinterested, the Court needs to examine the connections between a trustee's firm and the estate. *In re Bennett Funding Grp., Inc.*, 226 B.R. 331, 334 (Bankr. N.D.N.Y. 1998) ("Rule 2014(a) of the Federal Rules of

Bankruptcy Procedure . . . requires the Trustee to disclose any connections [his employer] Deloitte might have with the Debtors, creditors and any other party in interest.").

37.     Here, the Trustee has failed to disclose the connections between Paul Hastings and the Chinese government and CCP. However, it is clear even from the facts known now by the Debtor as of the filing hereof that the Trustee is not a disinterested person, and therefore, should not be permitted to serve as the Chapter 11 trustee in this case. The Trustee, and the UST, which should both be aware of the obvious adverse position of the Chinese government and CCP, improperly have decided to pick and choose what information about conflicts they want to disclose. However, as the Court in *In re Bennett Funding Grp., Inc.*, 226 B.R. 331, 335 (Bankr. N.D.N.Y. 1998), has stated:

> The Trustee appears to believe that the Court and the parties should simply rely on him as a fiduciary to make an independent determination that he remains disinterested. Yet, this is not an appropriate determination for the Trustee to make. Such an exercise in *ipse dixit* is not permissible. That the Trustee internalized this decision, rather than presenting the relevant information to the court and other parties for an objective determination of disinterestedness suggests that the Trustee is selective about the information he provides to the court and fails to acknowledge the high fiduciary standard to which he must abide to the point of punctilio.

(Citations and quotation marks omitted.) *See also In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) ("The professional must disclose all facts that bear on its disinterestedness . . . and cannot usurp the court's function by choosing, *ipse dixit*, which connections impact disinterestedness and which do not."). "Further, mere 'boilerplate' disclosure may cover an inadvertent failure to disclose an insignificant connection, but does not suffice for known connections with parties presenting a significant risk of adversity." *Id.*

38.     In addition, the Trustee only disclosed his firm's connections with PAG at the July 8 Hearing, and even then, did not seem to have any idea about the scope of the involvement. (Transcript of July 8 Hearing, 6:15-25.) In fact, even in his after-the-fact disclosure of Paul

Hastings' relationships with PAG entities, the Trustee was similarly vague. (Supplemental Despins Declaration, ¶ 2.)

**C. The Court Should Grant the Debtor Relief from the Despins Appointment Order Based upon Newly Discovered Evidence**

39.     The Court should grant the Debtor relief from the Despins Appointment Order based upon evidence disclosed at or after the July 8 Hearing, which was not disclosed in the Appointment Application or the Despins Declaration. Evidence of Paul Hastings' lack of disinterestedness, because of its relationships with PAX and the Chinese government and CCP, who both clearly have interests adverse to the Debtor, is newly discovered and warrants relief from the Despins Appointment Order.

40.     With respect to each of elements necessary to establish a basis for relief pursuant to Fed. R. Civ. P. 60(b)(2), first, it is clear that Paul Hastings' representation of PAG entities, its significant business in China, and its representation of government-controlled or influenced entities existed at the time of the July 8 Hearing. The Trustee orally disclosed his firm's relationships with PAG entities only briefly before the hearing, verbally and only in vague terms. Also, Paul Hastings' presence in China and ties to the Chinese government and the CCP are clearly preexisting.

41.     Second, the Debtor was justifiably ignorant of these relationships and the influence of the Chinese government on Paul Hastings. The July 8 Hearing was held only one day after the Appointment Notice and Appointment Application were filed. There was no opportunity for the Debtor to properly investigate the disinterestedness of the Trustee, including through discovery, in that short period of time. Moreover, the Trustee failed to disclose these connections even though the adverse relationship between the Debtor and the People's Republic of China and CCP has been disclosed throughout this case and has been widely publicized for approximately eight (8) years.

42.     Third, the evidence of the Trustee's lack of disinterestedness is clearly relevant and admissible, and it is of such importance that it would have changed the outcome of the July 8 Hearing. In order to be approved as the Chapter 11 trustee, the Trustee must be disinterested. 11 U.S.C. § 1104(b), (d). Indeed, as counsel for the UST accurately stated to the Court on the record on July 5, 2022: "It is unfortunate and the timing of this does cause a delay for which the U.S. Trustee is also unhappy about but, nevertheless, it's appropriate to select and install a person who is conflict free and has the appearance that he can be impartial to all parties involved in this case." (Transcript of July 5, 2022 Hearing, 10:20-25, cited excerpts attached as **Exhibit B**.)

43.     These words—made in the context of ensuring that Whitley, the candidate initially selected by the U.S. Trustee to serve as trustee in this case, did not appear partial to the Debtor—apply equally to Mr. Despins' and Paul Hastings' interests that are adverse to the Debtor. Simply stated, evidence of the influence of the Chinese government and the CCP on Paul Hastings as well as its relationships with PAG entities demonstrates that the Trustee is not a disinterested person and should not serve as the Chapter 11 trustee.

44.     Last, this evidence is not merely cumulative or impeaching. Rather, it is new evidence that was not presented to the Court at the time of the July 8 Hearing and is directly relevant to the issue of whether the Appointment Application should have been granted.

**D.      Alternatively, the Court Should Grant the Debtor Relief from the Despins Appointment Order to Accomplish Justice**

45.     Alternatively, if the Court determines that newly discovered evidence does not justify relief from the Despins Appointment Order, Fed. R. Civ. P. 60(b)(6) permits the Court to grant relief for "any other reason that justifies relief."

46.     Fed. R. Civ. P. 60(b)(6)

grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just," provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," . . . while also cautioning that it should only be applied in "extraordinary circumstances[.]"

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (footnote and citations omitted). Thus, Fed. R. Civ. P. 60(b)(6) provides an avenue for relief from a judgment where it is not easily classified under another subsection of Fed. R. Civ. P. 60(b). *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009); *see also Sternstein v. Italia-Societa Per Azioni De Navigazione-Genoa*, 275 F.2d 502 (2d Cir. 1960) ("Rule 60(b) was not intended to deprive a trial judge of his discretionary power to direct a new trial whenever he considered such a course necessary to defeat injustice.").

47.    In this case, this Court should, in alternative, grant relief based upon the relief afforded by Fed. R. Civ. P. 60(b)(6). Because the Court relied upon incomplete evidence in entering the Despins Appointment Order as a result of the failure of the Trustee and the UST to make full disclosures to the Court, justice is best served by vacating the Despins Appointment Order. This will allow the Debtor, other parties-in-interest, and this Court to have a full and fair opportunity to vet the Appointment Applications and the Trustee's lack of disinterestedness.

**WHEREFORE,** the Debtor respectfully requests that the Court grant it relief from the

Despins Appointment Order by vacating the same, and grant him such other and further relief as

justice requires.

Dated at Bridgeport, Connecticut on this 15th day of July, 2022.

> **THE DEBTOR,**
> **HO WAN KWOK**
>
> */s/ Eric Henzy*
> Eric Henzy (ct12849)
> Stephen M. Kindseth (ct14640)
> Aaron A. Romney (ct28144)
> John L. Cesaroni (ct29309)
> 10 Middle Street, 15th Floor
> Bridgeport, Connecticut 06604
> Telephone: (203) 368-4234
> Facsimile: (203) 368-5487
> Email: ehenzy@zeislaw.com
> skindseth@zeislaw.com
> aromney@zeislaw.com
> jcesaroni@zeislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2022, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice ofElectronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Eric Henzy*
Eric Henzy (ct12849)