

1(202) 551-1902
nicholasbassett@paulhastings.com


December 19, 2023


Hon. Analisa Torres
United States District Court
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    <u>United States v. Kwok, et al</u>, 1:23-cr-118 (AT)


Dear Judge Torres:

We represent Luc Despins, in his capacity as the chapter 11 trustee (the "<u>Trustee</u>") in the chapter 11 bankruptcy case of defendant Ho Wan Kwok pending in the United States Bankruptcy Court for the District of Connecticut (the "<u>Bankruptcy Court</u>").  Pursuant to the Court's order dated December 11, 2023 (Dkt. 190), the Trustee respectfully submits this letter in response to the Motion for Return of Property, dated December 6, 2023 (Dkt. 186 ("<u>Motion</u>")), filed by certain purported "customers" ("<u>Movants</u>") of the "Himalaya Exchange,"[1] and Movants' reply brief in support thereof (Dkt. 198 ("<u>Reply</u>")).

The Trustee takes no position on the propriety of the Government's seizure of the funds at issue or on whether Movants are entitled to relief under Federal Rule of Criminal Procedure 41(g).  The Trustee submits this response because he believes the seized funds allegedly belonging to customers of the Himalaya Exchange may, in fact, be property of the chapter 11 estate.  Accordingly, to the extent this Court were to consider granting the Motion, the Trustee respectfully requests that the Court not authorize the release of the funds to Movants until after the Trustee has had the opportunity to move the Bankruptcy Court for injunctive relief to prevent such release and/or to have the funds transferred to the chapter 11 estate.

To be clear, the Trustee is sympathetic to all victims and creditors of Mr. Kwok—including those who purportedly made investments in the Himalaya Exchange; however, there must be an organized process for repaying such parties only after their claims have been vetted by the appropriate court.  If the funds at issue are released prematurely to Movants, who allegedly consist of thousands of unnamed customers of the Himalaya Exchange spread across the world, it may become practically impossible for the Trustee to recover the funds thereafter, thus irreparably harming the chapter 11 estate.

### Motion Must Be Viewed In Larger Context of Chapter 11 Case

A brief summary of the history surrounding Mr. Kwok's bankruptcy is necessary to fully appreciate the relief sought by the Motion and the risks it poses to the chapter 11 estate.  In short, Movants are not operating on a blank slate. The Trustee has previously found that other parties advancing positions

---

[1]     The Trustee is aware of various entities owned and controlled by William Je with the name "Himalaya" in them, but is not aware of a legal entity called the "Himalaya Exchange."  For ease of reference, this letter will use the term "Himalaya Exchange" as well.



Honorable Analisa Torres
December 19, 2023
Page 2

similar to Movants are, in fact, acting at the direction of Mr. Kwok and his associates. Thus, although the Trustee's investigation remains ongoing, he cannot help but have serious concerns regarding the Motion.

Mr. Kwok filed his chapter 11 petition in February 2022 after his largest creditor, Pacific Alliance Asia Opportunities Fund ("PAX"), sought to enforce against him two judgments (one for breach of contract and one for civil contempt) totaling more than $250 million following years'-long litigation before Justice Ostrager in New York state court. Justice Ostrager found that Mr. Kwok had engaged in "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members" and that this "scheme" enabled Mr. Kwok, a "self-declared multi-billionaire," to "assert that he has no assets despite his lavish lifestyle."[2] Justice Ostrager was not the first judge to reach this conclusion. Previously, Judge Liman in this District found that another company purportedly held by Mr. Kwok's daughter was, "in essence, a shell corporation" for Mr. Kwok that allowed him to keep assets from his creditors.[3]

In light of these prior judicial findings, it was perhaps no surprise that, upon commencing his chapter 11 case, Mr. Kwok claimed to have a mere $3,850 in assets to his name. Thankfully, neither the Bankruptcy Court nor Mr. Kwok's creditors took this representation at face value, and, in July 2022, the Trustee was appointed to investigate Mr. Kwok's financial affairs to determine the true extent of his wealth, including by commencing litigation against his family members, business associates, and shell companies to demonstrate that assets nominally held by such parties are, in reality, property of the estate. So far, the Trustee's efforts have been quite successful: the Trustee has recovered more than $100 million in assets (including Mr. Kwok's palatial, full-floor residence at the Sherry Netherland hotel and the luxury yacht he now admits was his all along[4]) for the benefit of Mr. Kwok's creditors, including victims of his crimes.

Although Movants purport to complain about the fees the Trustee has incurred in conducting his investigation, it is Mr. Kwok's shell game—and the recalcitrance and obstruction by his family members and associates in the chapter 11 case—that has made the Trustee's work so difficult and expensive. The challenges the Trustee has faced have been well-documented in the Government's prior filings in this case. In addition to having to litigate against parties who are helping Mr. Kwok hide assets:

- the Trustee and his counsel, together with PAX and its counsel, were the targets of in-person protests and online harassment for their work in the case. Following an evidentiary hearing in December 2022, the Bankruptcy Court found that the persons behind this activity were acting at the direction of Mr. Kwok and issued an injunction;

- targets of the Trustee's investigation have repeatedly ignored subpoenas or otherwise failed to satisfy their discovery obligations, forcing the Trustee to file numerous motions to compel and motions for discovery sanctions, which were mostly granted by the Bankruptcy Court;

---

[2] Decision and Order, at 1, *PAX v. Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), NYSECF Doc No. 1181.

[3] *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, No. 18-CV-2185 (LJL), 2021 WL 2554631, at *1 (S.D.N.Y. June 22, 2021).

[4] *Ho Wan Kwok's Memorandum of Law in Support of His Renewed Motion for Pretrial Release*, at 8, Dkt. No. 178 ("He no longer has access to a yacht and a jet as both those assets have been sold").

Case 1:23-cr-00118-AT   Document 202   Filed 12/19/23   Page 3 of 5



Honorable Analisa Torres
December 19, 2023
Page 3

- Mr. Kwok and/or individuals acting at his direction instructed their followers across the world to flood the Bankruptcy Court docket with inflated proofs of claim (regardless of their merit) for the purpose of saddling enormous administrative burdens on the Trustee and materially increasing his legal fees; and

- lawyers with ties to Mr. Kwok have commenced frivolous litigation in this District against the Trustee and PAX, and their respective counsel, for which they have recently been sanctioned for their conduct.  In issuing one sanctions opinion in litigation against PAX's counsel, Judge Liman observed that the lawyer who commenced the litigation, despite claiming that his clients' claims had no connection to Mr. Kwok, (i) participated at the protests of the Trustee and PAX, (ii) was affiliated with Mr. Kwok and sympathetic to his interests, and (iii) commenced the litigation "with the aim of chilling advocacy against" Mr. Kwok.[5]  Judge Caproni issued a similar sanctions decision against the lawyers in litigation against the Trustee and his law firm.[6]

Whether in connection with the foregoing issues or otherwise, the common pattern the Trustee has seen before and during the chapter 11 case in the Bankruptcy Court and elsewhere is the following: purportedly independent persons or parties assert claims or seek relief, claiming that although they may be sympathetic to Mr. Kwok's political causes, they have no official relationship with him and seek relief solely on their own behalf.  But as the Trustee has discovered time and time again, and has demonstrated in the Bankruptcy Court, these parties are usually not who they seem.  Rather, after discovery and vetting by the Trustee and the court, it is invariably revealed that the party or parties seeking relief have deep-rooted connections to Mr. Kwok and are in fact doing his bidding.

**Motion Follows Same Pattern as Other Filings by Mr. Kwok's Associates, and Trustee Believes Funds In Question May Be Property of Chapter 11 Estate**

Although not an issue for this Court to decide, the Trustee believes that Movants—like many parties before them—may very well be receiving direction from Mr. Kwok or his proxies, and the funds they seek to recover may rightfully be property of the estate.  The Trustee bases this position on, among other things, the Bankruptcy Court's finding in its December 2022 preliminary injunction ruling in response to the protests and harassment against the Trustee and PAX that ***Himalaya Exchange is among a group of entities that "serve[s] the purposes of the Debtor, serve[s] as [a] business vehicle[] for the Debtor, and [its] members are personally loyal to the Debtor."***[7]   The purported nominal leader of the Himalaya Exchange is Mr. Kwok's alleged co-conspirator, William Je, who allegedly lent Mr. Kwok's daughter $37 million early in the bankruptcy case through an entity named Himalaya International Financial Group Ltd. in an effort to help her keep Mr. Kwok's luxury yacht (which the Trustee subsequently established was property of the estate) away from his creditors.  Mr. Kwok's daughter affectionately called Mr. Je "Uncle William" in her testimony.

Moreover, the Trustee has recently learned that a prominent supporter of the Debtor nicknamed "Little Sarah"—who, among other things, has referred to Mr. Kwok as "Uncle Guo," has dined with him at his

---

[5]  Opinion and Order, at 13-14, *Gong v. Sarnoff*, No. 23-cv-343 (S.D.N.Y. Aug. 22, 2023), Dkt. No. 72.
[6]  Opinion & Order, at 4 n.3, *An et al., v. Despins et al.*, No. 22-cv-10062 (S.D.N.Y. Aug. 2, 2023), Dkt. No. 29; *see also An, et al. v. Shan*, 22-cv-10060 (S.D.N.Y. Sept. 25, 2023) (Judge Carter issuing sanctions in litigation against PAX principals).
[7]  *Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction* ¶ 7, *In re Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn. Jan. 13, 2023), Adv. Proc. No. 22-05032, Dkt. No. 133.



Honorable Analisa Torres
December 19, 2023
Page 4

luxury New York City apartment, has sailed on one of his yachts, and participated in the protests—used her social media account to introduce investors in the Himalaya Exchange to Mr. Geyer so he could seek purported relief on their behalf in exchange for a one percent commission on fees recovered.[8]  As noted above, this tactic and practice of Mr. Kwok's followers mobilizing as purported claimants is one Defendant Kwok has employed, and the Trustee has seen, before.

Movants' suggestion that they have no relationship to Mr. Kwok and that the exchange funds cannot possibly be property of the estate is untethered from both the facts and the law.  Among Movants' flawed legal positions is their attempt to analogize the Himalaya Exchange to a bank holding customer deposits, contending that such deposits are not the bank's property.[9]  But this statement is wrong, because a bank ***does*** own the deposits, with its depositors holding unsecured claims against the bank.  The same may very well be true with any alleged customer funds in the Himalaya Exchange.  Indeed, among the $1.2 billion in claims that have been asserted against Mr. Kwok in the Bankruptcy Court to date are many claims allegedly held by the exact types of Himalaya Exchange customers Movants purport to represent.  This tends to undermine the notion that the funds Movants seek to recover are not estate property.

### Bankruptcy Court Must Be Given Opportunity to Rule on Whether Alleged Customer Funds Are Property of Chapter 11 Estate to Be Administered in Bankruptcy Case

To reiterate, the Trustee is not asking this Court to consider whether funds deposited with the Himalaya Exchange are property of the estate.  The Trustee provides the foregoing background and discussion solely to emphasize the critical importance of this Court not releasing the funds to Movants before the Bankruptcy Court has the opportunity to fully vet Movants' arguments and consider any claim the Trustee may bring that the funds Movants seek to recover are property of the chapter 11 estate.[10]

The Trustee is sympathetic to Movants' position to the extent they hold legitimate claims for moneys they may have invested in the Himalaya Exchange.  But the Trustee owes duties to *all* of Mr. Kwok's legitimate creditors, not to any one creditor or group of creditors, and therefore the Trustee must do everything in his power to ensure that Mr. Kwok's assets and liabilities are administered through an orderly process that treats all creditors fairly in accordance with the law.  Movants offer no valid reason for this Court or the Bankruptcy Court to abandon such a process.

Movants raise the strawman argument that neither court has jurisdiction "over the Himalaya Exchange," but this statement is plainly incorrect.  Pursuant to section 541 of the Bankruptcy Code, property of a

---

[8]  *See* @littlesarah, Gettr (Aug. 9, 2023), https://gettr.com/post/p2nuywq7381 (last visited December 18, 2023).

[9]  *See* Reply, at 25, Dkt. No. 198 ("The funds seized by the DOJ do not belong to the estate any more than a bank would have proprietary rights over money deposited by its customers").

[10]  Similarly, the Court also need not consider at this time the consequences of this Court eventually entering an order of forfeiture with respect to the funds.  As the Government has noted, in situations where forfeited funds or other property are claimed to be property of a bankruptcy estate, a receiver (who is also the chapter 11 trustee) is typically appointed to administer the distribution of such property.  *See* Government Memorandum in Opposition to Motion to Compel, at 21-23, Dkt. No. 160 (discussing examples of bankruptcy trustees appointed as forfeiture receivers to oversee administration of forfeited funds). The appointment of a receiver in this case is an issue that need not be decided at this time.



Honorable Analisa Torres
December 19, 2023
Page 5


chapter 11 estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" "**wherever located and by whomever held**." 11 U.S.C. § 541(a)(1) (emphasis added); *In re DeFlora Lake Dev. Assocs*., Inc., 571 B.R. 587, 593 (Bankr. S.D.N.Y. 2017) (bankruptcy court has "exclusive jurisdiction" to determine what constitutes property of bankruptcy estate); *see also* 28 U.S.C. § 1334(e)(1) (addressing exclusive jurisdiction over assets of bankruptcy estate). The Bankruptcy Court thus clearly has jurisdiction over the Himalaya Exchange funds at issue to the extent Mr. Kwok has an interest in such funds, which the Trustee believes may very well be the case based on both recent history and his ongoing investigation.

Accordingly, for all of these reasons, to the extent the Court were to consider granting the Motion, the Trustee respectfully requests that it not authorize the release of the funds until after the Trustee has had the opportunity to seek appropriate relief in the Bankruptcy Court.

Respectfully submitted,

/s/ Nicholas A. Bassett


Nicholas A. Bassett
of PAUL HASTINGS LLP


NAB