UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

                -against-

HO WAN KWOK,

                        Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/21/2023
```

23 Cr. 118-1 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Ho Wan Kwok, seeks an order (1) staying several Chapter 11 bankruptcy proceedings involving him, ECF No. 129, and (2) directing the Government to produce its communications with the bankruptcy trustee and the Securities and Exchange Commission ("SEC"), ECF No. 141. For the reasons stated below, Kwok's motions are DENIED.[1]

## BACKGROUND

I.      Bankruptcy Proceedings

On February 15, 2022, Kwok filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Connecticut. *In re Ho Wan Kwok*, Case No. 22-50073 (Bankr. D. Conn.), ECF No. 1.[2] On July 8, 2022, the Bankruptcy Court appointed Luc A. Despins as the bankruptcy trustee (the "Trustee"). Bankr. ECF No. 523. On October 14, 2022, the Bankruptcy Court consolidated the case with the Chapter 11 bankruptcy proceedings of two corporate affiliates controlled by Kwok, Genever Holdings Corporation and Genever Holdings LLC. Bankr. ECF No. 970.

---

[1] On September 1 and October 5, 2023, Kwok's co-defendant, Yanping Wang, filed letters "joining in" Kwok's motions. *See* ECF Nos. 135, 153. The Court grants Wang's application to join in the motions to the extent that Kwok has moved for relief "that would be applicable to [her] and to the extent that [she] would have standing to make such motions." *United States v. Nance*, 168 F. Supp. 3d 541, 554 (W.D.N.Y. 2016). Given that Wang adopts Kwok's arguments, her motions are also DENIED.

[2] Citations to this Bankruptcy Court docket are styled Bankr. ECF No. #.

On March 29, 2023, a grand jury sitting in the Southern District of New York indicted Kwok on charges of (1) conspiracy to commit wire fraud, securities fraud, bank fraud, and money laundering; (2) wire fraud; (3) securities fraud; (4) international promotional money laundering; (5) international concealment money laundering; and (6) unlawful monetary transactions.[3]  Superseding Indictment, ECF No. 19.  Kwok and two co-defendants are charged with defrauding thousands of victims out of over $1 billion through a series of fraudulent businesses and investment opportunities; misappropriating victims' funds by laundering those funds through approximately 500 bank accounts associated with at least eighty entities or individuals in several countries; and improperly using those funds to enrich themselves. Superseding Indictment ¶¶ 1–3.  Kwok allegedly used the fraud proceeds to purchase extravagant goods and assets for himself and his family, including homes and vehicles.  *Id*.

One purchase at issue is real property located at 675 Ramapo Valley Road, Mahwah, New Jersey (the "Mahwah Property").  On March 15, 2023, the day that Kwok's original indictment became public, Federal Bureau of Investigation ("FBI") agents executed a search warrant at the Mahwah Property, "meticulously document[ing] the premises and its contents" and "seiz[ing] voluminous physical evidence."  Gov't Compel Opp. at 2, ECF No. 160.  The Superseding Indictment identifies the Mahwah Property as property subject to forfeiture.  *See* Superseding Indictment ¶ 55(v).

Around June 28, 2023, the Trustee "advised the Government that he had concluded that the Mahwah [Property] is part of Kwok's [bankruptcy] estate."  Gov't Compel Opp. at 3.  Faced with potentially conflicting claims to the Mahwah Property—between bankruptcy creditors on

---

[3] Kwok was originally indicted on March 6, 2023, ECF No. 1 at 38, and the indictment was unsealed on March 15, 2023, ECF No. 3.  The Superseding Indictment added charges against Defendant Yanping Wang.

the one hand and fraud victims on the other—the Government and Trustee conferred and

executed a settlement agreement (the "Mahwah Settlement").  *See* Bankr. ECF No. 2083 at

¶¶ 12, 14.  Under the Mahwah Settlement, the Trustee is permitted to "obtain control of and/or

sell" the Mahwah Property while the criminal case is pending, and the Government agrees not to

oppose the Trustee's efforts to do so.[4]  *Id.* at ¶ 14(a).  The Government also provided the Trustee

with twelve photographs taken during the FBI's search to "illustrat[e] that Kwok used the

Mahwah [Property] as a *personal* residence."  Gov't Compel Opp. at 3 (emphasis in original).

On July 11, 2023, the Trustee initiated an adversary proceeding seeking to limit public

access to the Mahwah Property.  *Despins v. Taurus Fund LLC et al.*, Adv. Proc. No. 23-05017

(Bankr. D. Conn.), ECF No. 1.  Kwok objected, arguing that he "considers the Mahwah

[Property] and its contents to be important evidence" in his criminal case.  Kwok Stay Mem. at

12, ECF No. 131.  On August 31, 2023, the Bankruptcy Court entered a preliminary injunction

(the "Access Order") restricting access to the Mahwah Property to certain security personnel, the

Trustee, the Government, the FBI, other law enforcement, and others expressly authorized by the

Trustee, this Court, or the Bankruptcy Court.  *Despins*, Adv. Proc. No. 23-05017, ECF No. 58.

The Bankruptcy Court also authorized subpoenas permitting the Trustee to examine

Kwok pursuant to Federal Rule of Bankruptcy Procedure 2004 and requiring him to produce

documents in his possession.  *See* Bankr. ECF Nos. 636, 757, 1046.  On September 14, 2022, the

Bankruptcy Court entered a consent order (the "Privileges Order"), "confirming that the Trustee

owns and controls the attorney-client privilege, work product protection and other privileges on

issues related to the Debtor's assets and financial affairs and the administration of his estate."

---

[4] The Trustee has requested the Bankruptcy Court's approval of the Mahwah Settlement; that motion is pending.
*See* Bankr. ECF No. 2083.

Bankr. ECF No. 856 at 1.  The Privileges Order bars Kwok from withholding documents

requested in the subpoenas based on any privileges now held by the Trustee.  *Id.* at 3.  Then, on

January 20, 2023, the Bankruptcy Court issued an order (the "Subpoena Order") compelling

compliance with the subpoenas.  Bankr. ECF No. 1353.  Kwok invoked his right against self-

incrimination under the Fifth Amendment of the United States Constitution, Bankr. ECF Nos.

1444, 1650, and cross-moved to stay the Subpoena Order pending resolution of his criminal case,

Bankr. ECF No. 1649.  "Given the serious nature of the issues involved, the [Bankruptcy] Court

waited" before ruling on the cross-motions, allowing Kwok time to review discovery in the

criminal case.  Bankr. ECF No. 2035 at 6.  On July 26, 2023, the Bankruptcy Court issued an

order (the "Contempt Order") denying Kwok's stay request and holding him in contempt for

failing to comply with the Subpoena Order.  *Id.* at 41.

II.     SEC Proceeding

Separately, on March 29, 2023—the same day that Kwok's indictment was unsealed—

the SEC charged him with violating the antifraud provisions of Section 17(a) of the Securities

Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder.

*See SEC v. Kwok*, No. 23 Civ. 2200 (S.D.N.Y. filed Mar. 15, 2023), ECF No. 1 (the "SEC

Action").  The SEC alleges that "[s]ince in or about April 2020, [Kwok] has conducted

fraudulent securities offerings . . . that have collectively raised at least hundreds of millions of

dollars from investors in the United States and around the world."  *Id.* ¶ 1.  Specifically, it

charges that Kwok "pitched three unregistered securities offerings to investors as a means of

obtaining shares in GTV Media Group, Inc. ("GTV"), a media company that Kwok founded, and

a fourth offering as a means [of] obtain[ing] a crypto asset security called 'H-Coin' that he

falsely claimed was backed by gold reserves."  *Id.* ¶ 2.  On April 28, 2023, the Honorable Paul

G. Gardephe stayed the SEC Action pending the resolution of the criminal matter. *See* SEC

Action, ECF No. 44.

## ANALYSIS

Before the Court are two related motions. First, Kwok seeks an order staying the

bankruptcy proceedings during the pendency of his criminal case, arguing that "the Trustee is

interfering with [] Kwok's rights as a criminal defendant and the sanctity of these proceedings."

Kwok Stay Mem. at 2. Second, he seeks an order directing the Government to produce its

communications with the Trustee and the SEC.

I.        Motion to Stay Bankruptcy Cases

Kwok argues that, "pursuant to the All Writs Act, 28 U.S.C. § 1651, and . . . the Court's

inherent supervisory authority," the bankruptcy cases should be stayed. Kwok Stay Mem. at 1.

    A.  Bankruptcy Stay

        1.  Legal Standard

To invoke the "extraordinary remedy" of staying a civil case pending the conclusion of a

related criminal proceeding, a defendant bears the burden of demonstrating "undue prejudice" or

"interference with his constitutional rights." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676

F.3d 83, 97–98 (2d Cir. 2012) (internal quotation marks and citation omitted). Courts in this

Circuit consider the following six factors in making that determination:

> 1) the extent to which the issues in the criminal case overlap with those presented
> in the civil case; 2) the status of the case, including whether the defendants have
> been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously
> weighed against the prejudice to plaintiffs caused by the delay; 4) the private
> interests of and burden on the defendants; 5) the interests of the courts; and 6) the
> public interest.

*Citibank, N.A. v. Super Sayin' Publ'g, LLC*, 86 F. Supp. 3d 244, 246–47 (S.D.N.Y. 2015)

(citation omitted).  These factors "are not mechanical devices for churning out correct results."

*Louis Vuitton*, 676 F.3d at 99.  Rather, they are a "rough guide" for the "district court's studied

judgment as to whether the civil action should be stayed based on the particular facts before it

and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the

public or the court." *Id.*

"[T]he Constitution rarely, if ever, *requires* such a stay." *Id.* at 98 (emphasis in

original).[5]  That said, "the power to stay proceedings is incidental to the power inherent in every

court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants." *Id.* at 96 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254

(1936)).

2.  Analysis

As an initial matter, the parties dispute whether the Court has jurisdiction to stay

bankruptcy proceedings pending in another district court.[6]  *See* Trustee Stay Opp. at 11–13; Def.

Stay Reply at 3–9.  The Court shall not reach the jurisdictional question because Kwok has failed

to make the necessary showing of prejudice to justify this extraordinary remedy.

---

[5] For a defendant facing parallel civil and criminal proceedings, the Constitution does not afford him an "absolute right not to be forced" to choose between "being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation." *Louis Vuitton*, 676 F.3d at 97–98 (citation omitted).

[6] Even if the Court has jurisdiction, it is doubtful that the Court should exercise it absent an extraordinary showing by Kwok. *See United States v. LaRouche Campaign*, 682 F. Supp. 627, 628–29 (D. Mass. 1987).  Because the power to stay proceedings arises from a court's authority to control its own docket, an application to stay a proceeding is more appropriately presented to the court presiding over the proceeding—here, the Bankruptcy Court. Indeed, in each of Kwok's cited cases, the initial application was made in the court where the stay was sought. *See* Kwok Stay Mem. at 14–16 (citing cases); *see also* SEC Action, ECF No. 42.  Kwok admits that "any one of these issues may be redressable in the Bankruptcy Court." Kwok Stay Mem. at 4.  The Bankruptcy Court has carefully weighed complicated issues in this case so far, and the Court has no reason to doubt that it would not do the same here.

Although a stay is "most appropriate when a party to the civil case has already been indicted," *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995), "[t]he most important factor at the threshold is the first factor: the degree to which the civil issues overlap with the criminal issues." *In re 650 Fifth Ave.*, No. 08 Civ. 10934, 2011 WL 3586169, at *3 (S.D.N.Y. Aug. 12, 2011) (quotation marks and citation omitted). Cases substantially overlap when they "arise from the same facts and involve nearly identical issues." *Capak v. Epps*, No. 18 Civ. 4325, 2018 WL 6726553, at *3 (S.D.N.Y. Dec. 21, 2018) (citation omitted); *see SEC v. McGinnis*, 161 F. Supp. 3d 318, 323 (D. Vt. 2016) (examining the "facts and circumstances . . . , the laws allegedly violated, and the evidence to be presented to a finder of fact"). The Court finds that there is insufficient overlap between the bankruptcy and criminal cases.

Kwok initiated the bankruptcy proceedings more than a year before his criminal indictment, and their focus is to identify properties to compensate Kwok's creditors—not questions of criminal liability. "Bankruptcy is an equitable remedy" intended to "facilitate rehabilitation or reorganization of [the debtor's] finances and to promote a 'fresh start' through the orderly disposition of assets to satisfy his creditors." *In re 9281 Shore Rd. Owners Corp.*, 187 B.R. 837, 848 (E.D.N.Y. 1995) (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp.*, 779 F.2d 1068, 1071 (5th Cir. 1986)). Historically, a "prime purpose[]" of bankruptcy has been to ensure "a ratable distribution among creditors of a bankrupt's assets; [and] to protect the creditors from one another." *Young v. Higbee Co.,* 324 U.S. 204, 210 (1945). In service of this objective, the Trustee is focused is on "demonstrating that certain companies nominally owned by [Kwok]'s family members or business associates are, in reality, alter egos of [Kwok]." Trustee Stay Opp. at 19.

The Superseding Indictment, by contrast, concerns alleged conduct by Kwok that is not at issue in the bankruptcy proceedings.  Superseding Indictment ¶¶ 1, 13–23, 47–54 (alleging multiple fraudulent schemes and money laundering over the course of approximately five years from "about 2018 through at least in or about March 2023").  The Government must prove each element of the alleged offenses.  For example, for the wire fraud counts under 18 U.S.C. § 1343, the Government must prove the existence of "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate wires." *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000).  To establish the first element, a scheme to defraud, "the Government must prove (i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations."  *Id.* (citations omitted) (cleaned up).  Kwok's intent and the materiality of his conduct, in addition to other key legal issues, are unique to the criminal proceeding.  *See, e.g.*, Superseding Indictment ¶¶ 26–52 (counts requiring knowing intent or an intent to defraud); *see also United States v. Simon*, 373 F.2d 649, 653–54 (2d Cir. 1967) (holding that distinct legal issues weigh against a finding of overlap).[7]

Kwok argues that the overlap is "obvious and plain" because the "Trustee and the [G]overnment both assert . . . that certain property owned by others is, in reality, controlled by" Kwok.  Kwok Stay Reply at 10–11, ECF No. 152.  But, even if there may be limited overlap between the bankruptcy and criminal proceedings, determinations in the Bankruptcy Court—such as the ultimate owner of the Mahwah Property—are not dispositive in Kwok's criminal case, which requires a higher burden of proof.  *See, e.g., In re Ngan Gung Rest., Inc.*, 195 B.R.

---

[7] Although the Supreme Court later granted the parties' joint motion to vacate and remanded the case to be dismissed as moot, *Simon v. Wharton,* 389 U.S. 425 (1967) (per curiam), the Circuit's reasoning in *Simon* is relevant and persuasive.

593, 597 (S.D.N.Y. 1996) (noting bankruptcy court's finding of debtor in contempt by "clear and

convincing evidence" and not "'beyond a reasonable doubt,' which would be required for a

finding of criminal liability"); *In re Dreier LLP*, 452 B.R. 391, 436 (Bankr. S.D.N.Y. 2011)

(holding that the "[t]rustee bears the burden of proof by a preponderance of the evidence on all

elements of a claim for constructive fraudulent transfer" (quotation marks and citation omitted)).

Moreover, Kwok identifies overlap in only a portion of the subject matter, which is insufficient.

*See In re Bolin & Co., LLC*, No. 08 Civ. 1793, 2012 WL 3730410, at *2 (D. Conn. June 27,

2012) (denying a stay because "the overlap is not complete").

　　　Kwok also points to the stay in the SEC Action as a justification for staying the

bankruptcy proceedings. Kwok Stay Reply at 11–12. This argument is unavailing. Unlike the

bankruptcy proceedings, the conduct alleged in the SEC's case against Kwok closely parallels

the acts alleged in his criminal case. *See* ECF No. 130-7 (motion to stay SEC proceedings).

Both involve the "unregistered offering of common stock" in GTV, "false and misleading

statements to investors" regarding GTV's value, and Kwok's alleged efforts "to solicit, launder,

and misappropriate victim funds" from April 2020 through March 2023. *Id.* at 2–3. The

bankruptcy proceedings will not decide these issues. Therefore, the limited overlap between the

bankruptcy and criminal proceedings weighs against a stay.

　　　The Court must also consider the parties' interests and the potential prejudice of allowing

the cases to proceed in tandem. At play are the Trustee's interest in proceeding expeditiously,

the potential prejudice caused by a delay in the bankruptcy proceedings, the private interests of

and burden on Kwok, and the interests of the judiciary and the public. *See Citibank, N.A.*, 86 F.

Supp. 3d at 246–47.

Regarding the Trustee's interest and the potential prejudice which may be caused by a stay, halting the bankruptcy proceedings would delay "the resolution of thousands of claims and any distribution from [Kwok and the related entities'] assets." Trustee Stay Opp. at 19, ECF No. 145. Creditors might lose their only forum to resolve their claims, and the Trustee would be forced to pause his investigation into possible estate assets. *Id.* at 19–21. The Court has determined that Kwok's associates have already "undertaken efforts to move or take control of potential estate assets." *Id.* at 20 (citing ECF No. 110). A stay could open the door to further asset transfers, dissipating the estate and reducing the possibility that creditors will be made whole.

As for Kwok's interests, he argues that three aspects of the bankruptcy proceedings intrude on his rights and compel a stay. First, Kwok contends that the Contempt Order threatens his Fifth Amendment rights. Kwok Stay Mem. at 18–19. Specifically, he argues that producing to the Trustee documents which Kwok received from the Government would "implicitly authenticate the documents produced, and [that] such production could be 'a link in the chain of evidence' used to prosecute him." *Id.* at 18. This concern is now moot as the Trustee no longer seeks these documents. Trustee Stay Opp. at 23.

Kwok next argues that the bankruptcy proceedings threaten the status of the Mahwah Property and, in doing so, infringe on his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). He maintains that "[a]bsent this Court's intervention to preserve the Mahwah [Property] and defense counsel's access to it, the 'fundamental fairness essential to the very concept of justice' is put at risk.'" Kwok Stay Mem. at 21 (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872 (1982)). This concern is premature. The sale of the Mahwah Property is not imminent. And, pursuant to the Access Order, Kwok's counsel may access the Mahwah Property.

10

Finally, Kwok argues that the Privileges Order gives the Government "access to information that it would not otherwise be able to view," and allows his attorney-client privilege to "be used as a sword against him." Kwok Stay Mem. at 23. The Court disagrees. A trustee, as is the case here, is vested with control over a debtor's attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 354 (1985). Kwok speculates that the Trustee will indiscriminately seek to waive his privilege. *See* Kwok Stay Mem. at 24 ("[T]he Trustee has no qualms about reporting [privileged] information directly to law enforcement, including the prosecutor's office handling this matter, and there would be nothing to stop him from sharing Mr. Kwok's privileged communications with the [G]overnment here once he is authorized to waive Mr. Kwok's privilege."). But, Kwok cites no evidence to support this claim. Indeed, pursuant to the Privileges Order, Kwok and the Trustee agreed that the Trustee would not waive the attorney-client privilege without Kwok's consent or an order of the Bankruptcy Court. *See* Privileges Order ¶ 8. The Privileges Order also preserves Kwok's ability to assert privileges regarding "unrelated criminal allegations." *Id.* ¶ 4. Moreover, the Government represents that it "has neither solicited nor received Kwok's potentially privileged information or records from the Trustee[,] does not presently intend to do so, and will not do so absent agreement from Kwok's counsel (or the appropriate holder) or an order of this Court finding that such materials are not privileged and/or subject to the crime-fraud exception." Gov't Stay Ltr. at 2. As such, Kwok's concern is without merit and premature.

Weighing these factors, as well as the judiciary's interest in maintaining a well-functioning and efficient court system, the Court concludes that Kwok has not satisfied his burden of showing "undue prejudice" or "interference with his constitutional rights." *Louis*

*Vuitton*, 676 F.3d at 97–98.  Accordingly, his motion to stay the bankruptcy proceedings is

DENIED.

### B.  Alternative Relief

In the alternative, Kwok seeks an order (1) modifying the Protective Order, ECF No. 63,

to allow for production to the Trustee of discovery provided by the Government in his criminal

case; (2) directing that his defense team be permitted access to the Mahwah Property, and

forbidding the sale of the property; and (3) prohibiting the Government from soliciting or

receiving privileged materials from the Trustee.  Kwok Stay Mem. at 1.

#### 1.  Modification of the Protective Order

Kwok's request to modify the Protective Order to allow for production to the Trustee of

discovery provided by the Government in his criminal case, *see* Kwok Stay Mem. at 28, is now

moot because the Trustee no longer seeks the documents provided by the Government to Kwok,

and will seek to modify the Contempt Order accordingly, Trustee Stay Opp. at 23.

#### 2.  Order Preserving Status Quo of the Mahwah Facility

The Court denies Kwok's request for an order "preserving the status quo of the Mahwah

[Property,] . . . guaranteeing access to the property by Mr. Kwok's legal team[,] . . . [and]

expressly disallowing the Trustee from moving, altering, or modifying the Mahwah [Property] or

its contents."  Kwok Stay Mem. at 29.  Kwok's spoliation concern rests on mere suspicion.  The

sale of the property is not imminent, Kwok's legal team has access to the Mahwah Property

pursuant to the Access Order, and the Government has produced "thousands of photographs, as

well as videos" of the property.  Gov't Stay Ltr. at 5.  Further, Kwok does not sufficiently

explain how changes to the Mahwah Property today would bear on evidence of its nature and use

between 2018 and 2023, the time period at issue in the Superseding Indictment.  As such, the

Court is not persuaded that the requested relief is warranted.

> 3.   Order Preventing Communication Between the Government and Trustee

Kwok's claim that the Trustee has shared privileged information with the Government,

thereby necessitating an order preventing communication between the Government and the

Trustee, is unsubstantiated.  Kwok Stay Mem. at 29.  Both the Government and the Trustee deny

any improper disclosure of Kwok's privileged information.  Gov't Stay Ltr. at 2; Trustee Stay

Opp. at 25.  The request is, therefore, denied.  The Court further notes that the Bankruptcy Court

is capable of ensuring compliance with the Privileges Order and adjudicating Kwok's privilege

concerns.

Accordingly, Kwok's requests for alternative relief are also DENIED.

## II.   Motion to Compel Discovery

### A.  Legal Standard

Kwok also moves to compel the production of material pursuant to Federal Rule of

Criminal Procedure 16.[8]  Under Rule 16, the Government must produce, upon defense request,

items "within the [its] possession, custody, or control" that are "material to preparing the

defense."  Fed. R. Crim. P. 16(a)(1)(E).  An item is "material to preparing the defense" under

Rule 16 "if it could be used to counter the [G]overnment's case or to bolster a defense."  *United*

---

[8] Kwok also suggests, in passing, that he may be entitled to additional materials under *Brady v. Maryland*, 373 U.S. 83 (1963).  *See, e.g.*, Kwok Compel Mem. at 14, 18 n.8.  Under *Brady*, the Government must disclose to a criminal defendant any material exculpatory information "in time for its effective use at trial."  *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001).  "*Brady*, however, establishes no general right of pretrial discovery and gives rise to no pretrial remedies."  *United States v. Kelly*, 91 F. Supp. 2d 580, 585 (S.D.N.Y. 2000) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)); *see also United States v. Louis*, No. 04 Cr. 203, 2005 WL 180885, at *2 & n.4 (S.D.N.Y. Jan. 27, 2005) (explaining that Rule 16 is "the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases").  At this stage, therefore, the Court analyzes only whether Kwok's discovery requests meet the Rule 16 standard.

*States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993).  "A defendant bears the burden to make a

prima facie showing that information sought is material."  *United States v. Alexandre*, No. 22 Cr.

326, 2023 WL 416405, at *9 (S.D.N.Y. Jan. 26, 2023) (quotation marks and citation omitted).

Pursuant to Rule 16, the Government may be obligated to disclose "materials relevant to

the coordination" between the prosecution and another investigating agency.  *Alexandre*, 2023

WL 416405, at *10.  This is so because, although "[i]t is well established that the Government

may conduct simultaneous criminal and civil investigations of the same targets and subject

matters," "it is equally well established that there are some due process limitations on the

coordination" of such investigations.  *United States v. Rhodes*, No. 18 Cr. 887, 2019 WL

3162221, at *3 (S.D.N.Y. July 16, 2019).  Courts in this Circuit have held that a defendant

seeking coordination-related discovery must make a "substantial preliminary showing of bad

faith."  *Id.* at *4 (citing *United States v. Gel Spice Co.*, 773 F.2d 427, 432 (2d Cir. 1985)); *accord*

*Alexandre*, 2023 WL 416405, at *10.

Kwok—citing *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014)—

argues that "no substantial preliminary showing of bad faith is needed."  Kwok Compel Reply at

11, ECF No. 163.  But, *Martoma* contemplates a factual scenario where the prosecution and

another agency engaged in a "joint investigation," which would obligate the Government to

search for and produce *Brady* materials contained in another agency's files.  990 F. Supp. 2d at

460.  In the case of a joint investigation, a preliminary showing of bad faith is not required.

Kwok, however, expressly denies that he is asking for this Court to label the Government's

coordination with the Trustee or SEC a joint investigation.  *See* Kwok Compel Reply at 1

(labeling the joint-investigation inquiry a "red herring"); *see also id.* at 15.  Instead, he seeks

"additional discovery in service of making such a showing"—a request which, under *Gel Spice*,

14

is subject to a bad-faith requirement. *Rhodes*, 2019 WL 3162221, at \*3; *see id.* (citing *Gel Spice*, 773 F.2d at 434).

### B.  Communications Between the Government and Bankruptcy Trustee

Kwok seeks to compel disclosure of "all communications and documents exchanged between the [G]overnment and [] the Trustee and his agents." Kwok Compel Mem. at 13, ECF No. 143.

First, Kwok contends that the Mahwah Settlement "threatens [his] right to present a defense and to obtain exculpatory evidence." *Id.* at 16. He argues that by entering into the Mahwah Settlement, which permits the Trustee to "dispose of the Mahwah [Property] before trial," the Government is greenlighting the spoliation of evidence contained in the property. *Id.* at 17. But, as discussed above, Kwok's spoliation concerns are premature and unfounded. The Government represents that there is no imminent sale of the Mahwah Property, Gov't Stay Ltr. at 5, and that it has exhaustively documented the Property's contents and produced that information to Kwok, Gov't Compel Mem. at 19–20. Further, the Bankruptcy Court will not determine whether the Mahwah Property is property of the estate until the completion of the Trustee's adversary proceeding—and even then, any proposed sale will be subject to the Bankruptcy Court's review. *See* Bankr. ECF No. 2083 at 20. Any alleged spoliation of evidence is hypothetical and, therefore, insufficient to demonstrate bad faith.

Second, Kwok complains that the Trustee "has possession of and is seeking additional material that is subject to Mr. Kwok's privileges," and has shared privileged information with the Government. Kwok Compel Mem. at 18. But, Kwok offers no evidence to substantiate his allegations, and the Government states that it "has neither solicited nor received Kwok's potentially privileged information or records from the Trustee." Gov't Stay Ltr. At 2. Without

any reason to doubt "the accuracy of the Government's representations, the Court accepts those

representations as sufficient" and declines to infer bad faith. *United States v. Middendorf*, No.

18 Cr. 36, 2018 WL 3956494, at \*5 (S.D.N.Y. Aug. 17, 2018).

Third, Kwok argues that he needs access to the Government's communications with the

Trustee to (1) "fully investigate whether the Trustee is acting as a *de facto* member of the

prosecution team," and (2) potentially, bring a joint-investigation motion.  Kwok Compel Mem.

at 19.  Kwok does not (and cannot) argue, however, that the potential usefulness of the

information fulfills the bad-faith requirement.  Nor will the Court infer bad faith based on

Kwok's unfounded allegations that the Trustee is sharing privileged information with the

Government.  *See* Kwok Compel Mem. at 2–3; *supra* at 10–11.

The Court finds that Kwok has failed to make "a substantial preliminary showing of bad

faith" or improper coordination between the Government and the Trustee.  His request for the

Government's communications with the Trustee is, therefore, DENIED.

C.   Communications Between the Government and SEC

Kwok also moves to compel the Government to produce "its communications with the

SEC concerning the subject matter of the Indictment."[9]  Kwok Compel Mem. at 22.  He contends

that the communications will "reveal other examples of cooperation" and "further demonstrat[e]

that the SEC and the [G]overnment have engaged in a joint investigation here and what

information was shared between them as part of their joint investigation."  *Id.*  Again, Kwok fails

to establish bad faith entitling him to this discovery.

---

[9] In his opening brief, Kwok at times appears to suggest that the Government and SEC engaged in a joint
investigation, entitling him to *Brady* and Rule 16 discovery from the SEC's records.  *See, e.g.*, Kwok Compel Mem.
at 20–21.  Because Kwok expressly disclaims that argument in his reply, the Court does not consider whether the
coordination between the agencies amounts to a joint investigation.  *See* Kwok Compel Reply at 2–3.

"[T]here is no general rule preventing the SEC's sharing of evidence acquired through civil discovery with criminal prosecutors." *United States v. Fiore*, 381 F.3d 89, 94 (2d Cir. 2004). Although Kwok notes that the SEC has shared information and analysis with the Government, *see* Kwok Compel Mem. at 20–21, "the fact that . . . there was coordination and sharing . . . is, in itself, unexceptional and unproblematic." *Rhodes*, 2019 WL 3162221, at *3. Whether Kwok is entitled to further information about the agencies' coordination, therefore, turns on whether he has made a substantial preliminary showing of bad faith—for example, that the SEC "hid[] the possibility of a criminal investigation from him" or "conducted the civil investigation 'solely' to assist the criminal one." *Id.* at *4 (citing *United States v. Kordel*, 397 U.S. 1, 11–12 (1970)).

Beyond pointing out instances of cooperation between the SEC and the Government, however, Kwok adduces no evidence that the agencies acted in bad faith. He does not contend that the SEC hid from him the possibility of a parallel criminal investigation. Nor does he argue that the SEC conducted its investigation solely to assist the criminal prosecution.

As in *Rhodes* and *Alexandre*, the record reveals no improper coordination between the Government and the SEC. AUSA Juliana N. Murray affirms under penalty of perjury that "the Government played no role in the SEC's charging decisions or the developments of the SEC's litigation strategy." Murray Aff. ¶ 2, ECF No. 160-1; *see Rhodes*, 2019 WL 3162221, at *5; *Alexandre*, 2023 WL 416405, at *11. "By itself, that unambiguous statement refutes any suggestion that the SEC issued the subpoena, or gathered documents pursuant to it, solely (or even partly) to further the criminal investigation." *Rhodes*, WL 3162221, at *5. In *Rhodes*, moreover, the court was troubled by the SEC's decision not to charge the defendant despite a lengthy investigation. *Id.* ("[T]here is one mystery that remains unsolved—namely, why the

17

SEC, despite its extensive investigation of, and settlement discussions with, Rhodes, has not brought civil fraud charges against him.").  Here, by contrast, the SEC initiated a civil action against Kwok—and although that case is stayed, "there is no indication that the [SEC] does not intend to resume prosecuting its case immediately following the completion of these criminal proceedings." *Alexandre*, 2023 WL 416405, at \*11.

Accordingly, because Kwok has failed to make a substantial preliminary showing of bad faith, his request for production of communications between the Government and the SEC is DENIED.

## CONCLUSION

For the reasons stated above, Kwok's motions are DENIED.  The Clerk of Court is directed to terminate the motions at ECF Nos. 129 and 141.

SO ORDERED.

Dated:  December 21, 2023
        New York, New York

                         ANALISA TORRES
                 United States District Judge