# MERCANTILE BANK INTERNATIONAL CORP.

## ONLINE CUSTODY & BANKING SERVICES AGREEMENT

**ALL CLIENTS OF MERCANTILE BANK INTERNATIONAL CORP. ("MBI") THAT OPEN ACCOUNTS SHALL BE SUBJECT TO, AND SHALL BE BOUND BY, THIS ONLINE CUSTODY & BANKING SERVICES AGREEMENT.**

**THIS ONLINE CUSTODY & BANKING SERVICES AGREEMENT IS SUBJECT TO MODIFICATION BY MBI AT ANY TIME. REVISED TERMS SHALL BE EFFECTIVE IMMEDIATELY UPON PUBLICATION IN ELECTRONIC FORM ON MBI'S WEBSITE OR RECEIPT BY CLIENT VIA EMAIL.**

**VERSION 2022-09**
**LAST REVISED: 2020-06**

**TABLE OF CONTENTS**

1. **DEFINITIONS**
2. **OVERVIEW OF ONLINE BANKING SERVICES**

    2.1.  ACCOUNT APPLICATION AND APPROVAL
    2.2. INFORMATION YOU GIVE US AT ACCOUNT OPENING
    2.3. ACCOUNT INFORMATION
    2.4. NOT FDIC INSURED
    2.5. CHANGES TO THIS AGREEMENT
    2.6. ACCOUNT CLOSURES

3. **E-SIGN DISCLOSURE AND CONSENT**

    3.1. INTRODUCTION
    3.2. ADDITIONAL DEFINITIONS THAT APPLY TO THIS SECTION
    3.3. RECORDS AND COMMUNICATIONS MAY BE PROVIDED IN ELECTRONIC FORM
    3.4. REQUESTING PAPER COPIES
    3.5. SYSTEM REQUIREMENTS
    3.6. WITHDRAWAL OF YOUR CONSENT
    3.7. UPDATING YOUR INFORMATION
    3.8 FEDERAL LAW
    3.9. TERMINATION OF THE E-SIGN DISCLOSURE PROVISION
    3.10. CONSENT TO RECEIVE ELECTRONIC RECORDS

4. **PRIVACY POLICY**

    4.1. IN GENERAL
    4.2. THIRD PARTY DISCLOSURES
    4.3. ANONYMIZED CLIENT DATA
    4.4. DATA PROTECTION

5. **GENERAL TERMS**

    5.1. ACCOUNT OPENING AND OWNERSHIP
    5.2. RELIANCE ON INFORMATION
    5.3. MANAGEMENT OF YOUR ACCOUNT
    5.4. ASSIGNMENT OF YOUR ACCOUNT

6. **CUSTODY ACCOUNT SERVICES**

    6.1. OUR RELATIONSHIP WITH YOU
    6.2. INSTRUCTIONS REGARDING MANAGEMENT OF CUSTODIAL FUNDS
    6.3. MANAGEMENT OF FUNDS HELD IN CUSTODY
    6.4. ADDITIONAL CUSTODY ACCOUNT FEATURES
    6.5. NOT FDIC INSURED

      6.6. LIMITATIONS ON WITHDRAWALS

7. **TRANSFER SERVICES**

      7.1. FUNDING YOUR ACCOUNT
      7.2. LINKING EXTERNAL ACCOUNTS; EXTERNAL ACCOUNT TRANSFERS

8. **FUNDS AVAILABILITY**

      8.1. WHEN ARE FUNDS AVAILABLE?
      8.2. PROCESSING TRANSACTIONS

9. **INSUFFICIENT FUNDS AND OVERDRAFT PROTECTION**
10. **FEES & SET-OFF**
11. **OTHER TERMS AND CONDITIONS**

      11.1. ADDITIONAL DEFINITIONS THAT APPLY TO THIS SECTION
      11.2 BANK SECRECY ACT COMPLIANCE
      11.3. SUSPENSION OF SERVICES
      11.4 INVESTIGATIONS, GOVERNMENTAL AUTHORITIES AND LEGAL PROCEEDINGS
      11.5 SETOFF AND SECURITY INTEREST
      11.6. LIMITS ON LIABILITY
      11.7. CLIENT RESPONSIBILITIES, REPRESENTATIONS AND WARRANTIES
      11.8. CHOICE OF LAW AND DISPUTE RESOLUTION
      11.9. UNRETURNED OR ABANDONED PROPERTY
      11.10. TAXES
      11.11. MISCELLANEOUS

**SCHEDULE OF FEES**

1. **DEFINITIONS**

The following terms and definitions apply when used in this Online Custody & Banking Services Agreement. Terms used but not defined below shall have the meaning assigned to them in the Uniform Commercial Code. References to the Uniform Commercial Code are to the Uniform Commercial Code in the State of New York.

"**ACH**" means the Automated Clearing House electronic funds transfer network.

"**Affiliates**" means, with respect to any specified Person any other Person that controls, is controlled by, or is under common control with such specified Person. As used herein, the term "control" means, with respect to any Person, the power, directly or indirectly, to direct or cause the direction of the management and policies of such Person, whether through the ability to exercise voting power, by contract or otherwise.

"**Agreement**" means this Online Custody & Banking Services Agreement, as amended, modified and supplemented from time to time.

"**Authorized Persons**" means any Person authorized in writing by a Client of MBI pursuant to this Agreement to act as an agent on the Client's behalf in dealing with MBI.

"**Available Account Balance**" means, the balance of funds in your Account available for transfer to an External Account subject to the limitations described in this Agreement. The Available Account Balance may be more or less than the amount of your posted balance. Please consult Section 8 of this Agreement for additional information on how we calculate the Available Account Balance.

"**Business Day**" means any day in which financial institutions of the United States are open for business, unless otherwise specified.

"**Cash Equivalents**" means (a) securities issued, or directly, unconditionally and fully guaranteed or insured, by the United States or any agency or instrumentality thereof (provided that the full faith and credit of the United States is pledged in support thereof) having maturities of not more than one year from the date of acquisition; (b) time deposits and certificates of deposit of any commercial bank having, or which is the principal banking subsidiary of a bank holding company organized under the laws of the United States, any state or province thereof or the District of Columbia having, capital and surplus aggregating in excess of $500,000,000 and a rating of "A" (or such other similar equivalent rating) or higher by at least one nationally recognized statistical rating organization with maturities of not more than one year from the date of acquisition; (c) repurchase obligations with a term of not more than 30 days for underlying securities of the types described in clause (a) above entered into with any bank meeting the qualifications specified in clause (b) above, which repurchase obligations are secured by a valid perfected security interest in the underlying securities; (d) commercial paper issued by any Person incorporated in the United States rated at least A-1 or the equivalent thereof by Standard & Poor's Rating Service or at least P-1 or the equivalent thereof by Moody's Investors Service Inc., and in each case maturing not more than one year after the date of acquisition; and, (e) investments in money market funds substantially all of whose assets are comprised of securities of the types described in clauses (a) through (d) above.

"**Client**" means, at any time, a Person who is recorded in the books and records of MBI as the owner of an active Custody Account.

"**Client Data**" means, with respect to any Client, (i) data from or about such Client, and (ii) data about such Client's use of the Services.

"**Custodian**" means MBI in the capacity of Client's appointed Custodian pursuant to this Agreement.

"**Custody Account**" or "**Account**" means the record maintained on the books and records of Custodian of the Fiat Currencies and Digital Assets that Client has placed into the custody and possession of Custodian pursuant to the terms and conditions of this Agreement subject to the direction of the Client and/or its Authorized Persons.

"**Custody Account Statements**" means, with respect to any Client, statements of account for such Client's Custody Account.

"**Custodial Funds**" has the meaning given to such term in Section 6.2.

"**Digital Assets**" means any virtual currency, token or other digital asset approved by MBI for deposit into Custody Accounts and as identified on MBI's website or as otherwise notified to Client as "approved" pursuant to this Agreement.

"**Domestic Person**" has the meaning given to such term in Section 2.1.

"**E-SIGN Disclosure and Consent Agreement**" has the meaning given to such term in Section 3.

"**External Client Account**" means, with respect to any Client, any account maintained by such Client at a third party that is approved by MBI as a source or destination for transfers of Fiat Currencies or Digital Assets.

"**Fedwire**" has the meaning given to such term in Section 7.1.

"**Fiat Currencies**" means U.S. dollars and any other government-backed fiat currencies approved by MBI for deposit into Custody Accounts and as identified on MBI's website or as otherwise notified to Client.

"**MBI**" means Mercantile Bank International Corp., a Puerto Rico corporation, and its successors and permitted assigns.

"**Omnibus Account**" has the meaning given to such term in Section 6.3.

"**Law**" means any applicable constitutional provision, statute, act, code (including the Code), law, regulation, rule, ordinance, order, decree, ruling, proclamation, resolution, judgment, decision, declaration, writ, injunction, arbitral award or interpretative or advisory opinion or letter of any Governmental Authority.

"**Patriot Act**" has the meaning given to such term in Section 11.2.

"**Person**" means any individual, company, corporation (including a non-profit corporation), sole proprietorship, general or limited partnership, limited liability company, joint venture, syndicate, estate, trust, association, organization, Governmental Authority, or other entity.

"**Posted Balance**" means the balance of funds in an Account based solely on items that have been posted as credits or debits. Unlike the available balance, the posted balance does not reflect any holds placed on the Account. The posted balance may be more or less than the amount of your Available Balance.

"**Services**" has the meaning given to such term in Section 2.

"**SWIFT Payment**" has the meaning given to such term in Section 8.1.

"**Subcustodians**" has the meaning given to it in Section 6.2.

The words "**we,**" "**our,**" and "**us**" mean Mercantile Bank International Corp., affiliates, successors, and assigns.

The words "The words "**you**" and "y**our**" mean each applicant, account owner and anyone else with access to the account. If there is more than one owner, then these words mean each account owner separately, and all account owners jointly.

**2. OVERVIEW OF ONLINE CUSTODY AND BANKING SERVICES**

Thank you for choosing to work with MBI to meet your online custodial, trust, and banking needs. MBI is an International Financial Entity headquartered in San Juan, Puerto Rico, a territory of the United States of America, and supervised by the Office of the Commissioner of Financial Institutions of Puerto Rico. **MBI IS NOT A MEMBER OF THE FDIC AT THIS TIME, AND AMOUNTS HELD AT MBI ARE NOT ELIGIBLE FOR U.S. FEDERAL DEPOSIT INSURANCE**

This Agreement between you and MBI applies to your use of MBI online custody and banking services described herein. By opening or maintaining an Account with us, you accept and agree to be bound by the terms and conditions of this Agreement and terms of services described herein. The term "**Services**" as used in this Agreement means any service provided by MBI pursuant to this Agreement, including, but not limited to, Custody Account and transfer services, or any other financial product or service made available to you by MBI through its website or by other means.

This Agreement includes the following disclosures applicable to the Services that MBI may agree to provide to you, including: (1) Account features and fees; (2) privacy policies; (3) E-SIGN consent; (4) electronic fund transfer services; (5) funds availability and transaction posting policies; and (6) additional disclosures regarding your Account(s). Fees mentioned throughout this Agreement can be found on www.mercantile-bank.com.

MBI, in its sole discretion, may from time to time choose to work with third-party financial institutions or other service providers. You acknowledge and agree that additional terms may apply to your use of MBI's Services if we offer them in connection with services provided by third-party service providers. You acknowledge and agree that additional terms will apply to your use of MBI's Services if you choose to access them in conjunction with an independent relationship of yours with a third-party with whom we work.

MBI, in its sole discretion, may provide you with a foreign-language translation of this Agreement, and any related agreements, in order to help you better understand the material terms and conditions pursuant to which we offer the Services as well as your obligations hereunder. Foreign-language translations provided by MBI are provided for your convenience, only. In the event of a discrepancy between this English-language Agreement and any foreign-language translation of it, whether provided to you by MBI or otherwise, this English-language Agreement shall control.

2.1   Account Application and Approval

In order to open an Account at MBI, eligible persons are required to (i) complete an application by providing such information as MBI may require, in its discretion, to comply with applicable BSA/AML Requirements (as defined in Section 11.2. below), and (ii) if such Account application is approved by MBI, enter into one or more agreements with MBI on terms acceptable to MBI, including this Agreement. MBI may reject any application and MBI may decline to enter into an Agreement with any person, for any reason.

Persons that meet the definition of "domestic person" under Section 2(j) of the International Financial Center Regulatory Act of Puerto Rico are not legally permitted to become a client of MBI. "**Domestic Person**" means any natural person who is a resident of Puerto Rico, or a person incorporated or organized under the laws of Puerto Rico, or a person whose principal place of business is located in Puerto Rico, or a foreign corporation with offices, in accordance with the provisions of the Puerto Rico Internal Revenue Code, considered to be doing business in Puerto Rico, and the Government of Puerto Rico and the agencies, instrumentalities, political subdivision, and public corporations thereof or other entities of the Government of Puerto Rico.

2.2.  Information You Give Us at Account Opening

*USA Patriot Act Notice.* To help the government fight the funding of terrorism and money laundering activities, the federal laws of the United States of America, including the USA PATRIOT Act, require all financial institutions to obtain, verify and record information that identifies each person or business that opens an account with a financial institution. What this means for you: When you use our services, we will ask for your name, address, date of birth, and other information that will allows us to identify you. For all applicants, we will ask to see a form of identification with your photograph, and we may also ask to see other identifying documents, such as a social security card, if applicable, passport, driver's license or other government-issued form of identification. Clients from non-US jurisdictions may be asked for different or additional identification information, in the discretion of MBI.

*Business Accounts.* When you apply for an Account as a business, we will ask for your business name, address, Tax Identification Number (TIN), and information about the business's beneficial owners. We will also ask for the name, address, date of birth and social security number or similar documents sufficient for us, in our sole discretion, to establish the identity of the natural Person(s) opening the Account as well as the beneficial owners and/or officers of the legal entity. We may seek to validate the information you provide to us using third-party services or other means to ensure we have a reasonable belief of your identity and your business. If we are not able to verify your identity or the identity of the business to our satisfaction, we may decline your application or we may close the Account if it was previously opened.

*Verification of Your Information.* You understand and agree that we may share any information you submit to us in connection with your Account with our affiliates, subsidiaries or other third parties for the purposes of verifying your identity, verifying other information in your application, or for on-going account monitoring. You understand and agree that we may also seek to obtain a credit report in connection with your application, or any other of our Services that your request to receive. Sharing this information is necessary to evaluating your application and providing transaction-related services in compliance with MBI's BSA/AML Requirements.

*False Information.* You understand and acknowledge that the submission of false information at account opening, or failure to timely update us with respect to material changes, may expose MBI to liability because of its BSA/AML Requirements, among other potential sources of legal and regulatory liability. You understand further that your willful or negligent submission of false information at account opening, or any time after becoming a Client, may result in costs to MBI in any form, including, but not

limited to, the costs of defending MBI against legal or regulatory actions brought by competent authorities, or civil and/or criminal monetary penalties. To the fullest extent of the law, you agree to indemnify against such costs as are demonstrably and directly incurred by MBI as a result of your willful or negligent submission of information at account opening or at any time after becoming a Client of MBI. You may also be billed in advance for legal and compliance costs that we reasonably believe may be incurred in connection with government inquiries relating to any Account you control with us. Advance billing for legal and compliance costs shall not exceed 50% of your Account value at the time we receive notice of legal or regulatory actions. Monthly summary invoices shall be provided to you of costs actually incurred by MBI. If you believe that the amounts billed to your Account are in error, you agree that your exclusive remedy is to seek arbitration of your dispute pursuant to the dispute resolution provisions contained in Section 11.8 of this Agreement.

2.3. Account Information

*In General*. MBI shall make available information about a Client's Account to the Client through MBI's website, including the current balance and a summary of recent transactions.

*Account Statements*. MBI shall provide or make available to Clients statements summarizing the balances and transaction activity in their Accounts on a monthly basis exclusively by Electronic Means (as defined in Section 3). Account Statements for a Client account shall reflect all activities involving the Account during the preceding calendar month, including posted and pending transfers. Clients are responsible for promptly examining each Account Statement and notifying MBI of any potential errors discrepancies. **MBI WILL NOT BE RESPONSIBLE FOR ERRORS OF WHICH YOU DO NOT NOTIFY US WITHIN THIRTY (30) DAYS AFTER THE DATE OF THE ACCOUNT STATEMENT.**

2.4. Not FDIC Insured.

Your Custody Account with MBI is **NOT INSURED** by the U.S. Federal Deposit Insurance Corporation nor by any government-sponsored or non-government sponsored insurance scheme or product in the United States of America, Puerto Rico or any other jurisdiction.

2.5. Changes to This Agreement

We may change this Agreement at any time. We may add new terms, delete or amend existing terms, or add new types of accounts and services and discontinue existing types of accounts or services. We may convert existing accounts and services into new accounts and services. We will give you reasonable notice in writing or by any method permitted by law of an adverse change to you in this Agreement. However, we may make changes without prior notice unless otherwise required by law. We may, but do not have to, notify you of changes that we make for security reasons or that we believe are either beneficial or not adverse to you.

When we change this Agreement, the then-current version of this Agreement supersedes all prior versions and governs your Account. If you continue to use your Account or keep it open, you are deemed to accept and agree to the change and are bound by the change. If you do not agree with a change, you may close your account as provided in Section 2.6. below.

2.6. Account Closures

You or we may close your Account at any time without prior advance notice. Any amounts held at MBI at the time your Account is closed will be returned to you, subject to the terms, conditions, limitations and fees outlined in this Agreement.

MBI may, in its sole discretion and without notice to you, to the extent permissible under applicable law and other governing documents applicable to your Account, decline, delay, cancel and/or reverse your orders, transactions or instructions, and/or place disbursement and other restrictions on any of your accounts. MBI may close your Account or convert your Account to another account type at its discretion. MBI need not give any advance notice of Account closure initiated by MBI for any reason.

If an account was closed and then we reopen it, the account is subject to our standard terms and fees for that type of account. Any waiver that applied before the account was closed does not apply when we reopen the account.

If your Account reaches a zero balance, or you apply for an account but never deposit funds into it, we may either keep the Account open or close the Account without notice. MBI may also charge you an inactive account fee in the amounts set forth in MBI's fee schedule if there is no activity in your account for a period of three months.

**3.   E-SIGN DISCLOSURE AND CONSENT**

3.1   Introduction

This E-SIGN Disclosure and Consent Agreement (the "**E-Sign Agreement**") allows us to provide you with electronic versions of important documents and notices associated with opening an Account at MBI as well as all other information that we may be required to provide to you in writing by law. **YOU MUST AGREE TO THIS E-SIGN AGREEMENT TO OPEN AN ACCOUNT WITH MBI AND USE ITS SERVICES.**

3.2   Additional Definitions That Apply to This Section

"**Electronic Means**" means a form of electronic communication reasonably accessible to the Client, including, but not limited to, records and communications transmitted (i) by email, (ii) by posting to a website designated in email from MBI to you, or (iii) to the extent permissible by law, by access to a website generally designed in advance for such a purpose.

"**Records and Communications**" includes, but is not limited to, all legal and regulatory disclosures, notices or disclosures related to opening an Account at MBI or changes to its terms governing your use of its services, all notices regarding our policies, and any other information we may be required to provide you in writing by law or regulation.

3.3.   Records and Communications May be Provided in Electronic Form

You agree that we may provide you with Records and Communications by Electronic Means. Your agreement does not mean that we must provide Records and Communications electronically, but instead that we may deliver some or all of those documents electronically in our sole discretion.

3.4.   Requesting Paper Copies

Your consent to receive Records and Communications electronically means that we will not send your paper copies of any Records and Communications transmitted electronically unless you request it or we otherwise deem it appropriate to do so. To request that a paper copy of any particular electronic Records and Communications be mailed to you, please contact us at bankops@mercantile-bank.com. Please specify in your email that you are requesting a paper copy of electronically transmitted Records and Communications and state the title(s) and date(s) of the particular Records and Communications that you are requested. We may charge a fee for mailing you a paper copy of Records and Communications.

3.5.   System Requirements

In order to access, view and retain electronic Records and Communications, your access device must meet the following minimum hardware and software requirements:

   i.    An internet browser that we support, which include Internet Explorer 10.x or higher, Safari 3.2.x or higher, Firefox 32.x or higher and Chrome 38.x or higher, Mac OSX Safari 5 and higher, Safari for iOS 6 and higher, Chrome for iOS, and Chrome for Android;
   ii.   Local, electronic storage capacity to retain Records and Communications or a printer to print them;
   iii.  A valid email account and software to access that email account;
   iv.   An up-to-date device or devices (e.g., computer, tablet, mobile phone, etc.) suitable for connecting to the Internet and supported by MBI;
   v.    An operating system capable of receiving, accessing and displaying Records and Communications from us in electronic form via text-formatted email or access to our website using a supported browser;
   vi.   A printer that can interface with your devices, if you want to print paper copies of Records and Communications sent to you in Electronic Form.

By viewing this information in electronic form on any access device that meets the minimum system requirements, you are reasonably demonstrating your ability to access Records and Communications using Electronic Means.

**Please contact us at bankops@mercantile-bank.com if you have difficulties accessing or viewing documents by Electronic Means on an access device.**

3.6 <u>Withdrawal of Your Consent</u>

You may withdraw your consent to receive Records and Communications by Electronic Means at any time. To withdraw your consent prior to completing the application, simply exit this session prior to acknowledging your acceptance of this agreement. To withdraw your consent after you have submitted your application or opened an Account, please contact us at onboarding@mercantile-bank.com. Please note that withdrawal of your consent to received Records and Communications by Electronic Means will result in the revocation of your access to MBI's services and the termination of our business relationship with you. Such termination will only take effect after a reasonable period to process your withdrawal.

3.7. <u>Updating Your Information</u>

It is important that you provide us with true, accurate and complete email address, contact and other information related to this E-Sign Agreement so that we may contact you with Records and Communications regarding your Account. You agree to maintain a valid email address and to promptly notify us of any changes to your email address, contact or other information. You may update your email address, contact and other information through our website.

3.8. <u>Federal Law</u>

You acknowledge and agree that this E-Sign Agreement is being provided to you in connection with a transaction that is subject to the federal Electronic Signatures in Global and National Commerce Act, and that you and MBI both intend that the Act apply to the fullest extent possible to validate our ability to conduct business affecting interstate commerce with you by electronic means.

3.9. <u>Termination of the E-SIGN Disclosure Provision</u>

MBI reserves the right, in its sole discretion, to discontinue the provision of electric Records and Communications, or to change the terms and condition under which we provide Records and Communications in electronic form. We will provide you with notice of any such termination or changes as required by law.

3.10. <u>Consent to Receive Electronic Records</u>

You hereby give your affirmative assent to receiving electronic Records and Communications as described in this E-Sign Agreement. You further agree your computer, mobile phone, tablet or other access device meets the system requirements specified above and that you are able to receive, retain and view electronic Records and Communications, and that you have an active and valid email address at which we may send you electronic Records and Communications.

**4.    PRIVACY POLICY**

4.1. <u>In General</u>

In connection with providing the Services to Clients, you understand and agree that MBI may collect and use Client Data to (i) provide, operate and improve the Services; (ii) comply with any requirement of applicable Laws; (iii) respond or cooperate with requests from regulators or law enforcement about your Account; (iv) personalize the Services; and, (iv) engage in other legitimate business activities, such as sending marketing communications about products, services and offers of MBI and/or its affiliates.

9

4.2. Third Party Disclosures

*Consumer Accounts.* Our privacy policy for consumers is described in MBI's Privacy Disclosure, which is available on MBI's http://www.mercantile-bank.com. We provide this Privacy Disclosure to consumers who open an Account with us for personal use. The Privacy Disclosure describes how we handle personal consumer financial information we collect in the course of our dealings with you and the circumstances under which we may disclose that information to affiliated companies. Except as noted in Section 4.1, MBI does not expect to share information collected from you during the application process with third parties, except as required to verify your identifying information or credit history. Please consult the Privacy Disclosure for more detail on the circumstances in which we may share information collected in the course of our dealings with you after opening an Account and becoming a Client.

*Business Accounts.* We may share information about our experiences with you with affiliated companies and selected third parties. We may also share information that you have provided to us on applications or that we receive from outside sources among MBI Affiliates.

4.3. Anonymized Client Data

MBI will own and have the right to use the Client Data of any Client for any purpose without its consent if such Client Data is (i) combined or aggregated with information relating to other Clients or information derived from other sources, or (ii) is anonymized in a way that reasonably prevents the identification or attribution of such Client Data to such Client.

4.4. Data Protection

MBI shall take commercially reasonable precautions to protect the confidentiality of all Client Data, including by implementing and maintain a written information security program that provides appropriate security measures to safeguard Client Data that is received by MBI in connection with providing Services to Clients.

**5.   GENERAL TERMS**

5.1. Account Opening and Ownership

We will rely on information you give us in order to open an Account and determine its legal and beneficial ownership. You agree and acknowledge that we may rely on the information in our books and records to determine the owner(s) of your Account.

If the Account owner is a corporation, unincorporated association, limited liability company, limited liability partnership, fiduciary, partnership, sole proprietorship or other legal entity applying in any capacity other than an individual capacity, each person signing the signature card or completing other application requirements represents and agrees that they:

- are fully authorized to execute all documents or otherwise complete our requirements in their stated capacity;
- have furnished all documents or other information necessary to demonstrate that authority; and
- will furnish other documents and complete other requirements as we may request from time to time.

We may refuse to recognize any resolution affecting the Account that is not on any form with which we provide you or that appears to us to be incomplete or improperly executed.

*Changes to Account Information.* When you ask us to make a change to this information or your Account, and we agree to the change, the change is not effective until we have had a reasonable time to act on the new information.

5.2. Reliance on Information

When we process transfers to and from an Account, we may rely upon our records regarding the ownership of the Account and the terms of this Agreement at the time we process the transaction. We do not have to inquire about the source or ownership of any funds we receive or about the destination of any withdrawal from an Account. When we permit a withdrawal from an Account at the request of any signer, or the agent of any signer, in accordance with the terms of this Agreement, the withdrawal is a complete release and discharge of MBI from all claims regarding the withdrawal.

5.3. Management of Your Account

You agree that you are solely responsible for the security of your account password and login credentials. To the extent you share this information with an authorized agent(s), or if the integrity of your account password and login credentials is compromised due to actions outside the control of MBI, you specifically agree to assume the risk of any unauthorized acts by your authorized agent(s) or others, You specifically assume the risk of any loss, costs, or expenses caused or incurred thereby if you do not maintain adequate control of and properly manage your Account, including any failure to change or update passwords and login credentials on a reasonable and timely basis.

We may rely conclusively on the validity and binding effect of any item signed, drawn, endorsed, executed, delivered, presented, issued, or otherwise transferred by you or any authorized agent, and you are expressly estopped from denying the validity of any such item and binding effect and authorization of any such action. We shall be under no duty to investigate the authority for the execution and/or delivery of any item or document or the application of any proceeds thereof.

5.4. Assignment of Your Account.

No pledge, assignment, or other transfer of any Account by you, whether by purchase and assumption, assignment, sale, merger, acquisition, gift or otherwise, shall be binding on us unless acknowledged by us in writing. Unless we agree otherwise in writing, the Account will remain subject to our rights of set off even after we receive notice of the transfer.

We reserve the right not to acknowledge or accept any attempted transfer of an Account. We are not required to accept or recognize an attempted assignment of your Account or any interest in it, including a notice of security interest, or deposit account control agreement, except as required by law. If you have granted to us a security interest in your Account to secure debt you owe to us, we will be deemed to have control of your Account under the Uniform Commercial Code.

**6. CUSTODY ACCOUNT SERVICES**

6.1 Our Relationship with You

*Appointment of Custodian.* Client hereby appoints MBI as custodian (the "**Custodian**") of all Fiat Currency and Digital Asset amounts Client transfers to the possession of Custodian for safekeeping in the Client's Custody Account, and MBI hereby agrees to serve as custodian of all assets held in the Client's Custody Account. In its capacity as Custodian, MBI shall hold, possess and administer the Client's Account in accordance with (i) the Client's instructions; and (ii) the instructions of Client's Authorized Persons; and, (iii) the terms of this Agreement. MBI shall identify on its books and records the Fiat Currencies and Digital Assets belonging to its Clients, whether held directly or indirectly through Subcustodians, which MBI may employ to hold Client assets in its sole discretion. Fiat Currency and Digital Asset amounts held at MBI through its Subcustodians may be subject to the terms and conditions of MBI's agreements with such Subcustodians. MBI may, at any time, cease utilizing any Subcustodian and/or may replace a Subcustodian with a different Subcustodian.

*Standard of Care.* In performing its duties under this Agreement (other than its duties as a custodian), MBI shall exercise the degree of care of a reasonable person. In performing its duties as custodian, Custodian will exercise the degree of care that a reasonable person having responsibility for safekeeping such assets as it has been appointed to hold and possess would exercise under the circumstances.

6.2. Instructions Regarding Management of Custodial Funds

In furtherance of its responsibilities as Custodian, and subject to the limitations and qualifications of this Agreement, Client instructs Custodian to:

- (i) Safekeep Fiat Currency and Digital Asset amounts transferred into the Custody Account (the "**Custodial Funds**")
- (ii) Monitor and maintain the Custodial Funds;
- (iii) Manage the Custodial Funds in accordance with Section 6.3 of this Agreement;
- (iv) Keep timely and accurate records regarding the deposit, disbursement and investment of the Custodial Funds; and,
- (v) Prepare such periodic statements regarding and access to information pertaining to the Custodial Funds in the frequency and manner contemplated in this Agreement.

11

6.3. Management of Funds Held in Custody

Unless otherwise required by applicable Laws, Fiat Currencies and Digital Assets transferred to the Custody Account shall be held (i) in a legally segregated, operationally commingled account (an "**Omnibus Account**") at one more commercial banks or other financial institutions selected by MBI, in its sole discretion, to act as a subcustodian (each a "**Subcustodian**"). Omnibus Accounts will be in the name of MBI acting as Custodian for the benefit of Clients. Fiat Currencies transferred to a Custody Account may be held in cash or invested in Cash Equivalents. MBI is capable of identifying on its books and records the cash and Cash Equivalents held for the benefit of Clients, whether held directly or indirectly through Subcustodians, in a manner consistent with 12 C.F.R. § 330.5(a)(2).

*Management Fee.* Cash and Cash Equivalents held in Omnibus Accounts with our Subcustodians may (or may not) generate interest earnings in MBI's Subcustodial accounts. Except as otherwise provided in this Agreement, all interest earned on any Fiat Currencies held by Custodian on behalf of Client shall be payable to Custodian as consideration for the custody services provided to such Client.

6.4. Additional Custody Account Features

| | |
|---|---|
| Initial Balance | The minimum balance required to open an account is $500.00 USD, or its equivalent in other Fiat Currencies or Digital Assets. |
| Interest Rate | 0.00% |
| Annual Percentage Yield | 0.00% |
| Fees to MBI | MBI charges a management fee, as described in Section 6.3. Additional fees are detailed in MBI's Schedule of Fees. |
| Transaction Limitations | The transaction limitations for your Accounts are set forth in Section 6.2. |
| Additional Fee Disclosure | As noted above, you are not responsible for paying any fees to MBI for opening and maintaining this Account, although we may deduct certain interest earnings in consideration for our custodial services. |

6.5. Not FDIC Insured

Fiat Currencies placed with MBI are **NOT INSURED** by the Federal Deposit Insurance Corporation nor by any government-sponsored or non-government sponsored insurance scheme or product in the United States or in Puerto Rico.

**7.  TRANSFER SERVICES**

You may direct certain transfers of funds to and from your Custody Account, as described in this Section 7, subject to the limitations in Section 7. From time to time, without prior notice, MBI may add or eliminate its transfer Services, or otherwise modify the terms or features of any of its Services.

In addition to its Custody Account services, MBI currently offers the following transfer Services:

   a.   Wire Transfer Services

For transfer transactions, your request will be completed only if you have sufficient funds in the account from which you wish to transfer funds and, in the case of like-titled accounts, the accounts are linked for transfer capabilities. Dollar limitations may be set according to the account type and/or the type of online transfer service you are utilizing to transfer funds. These limitations are set for security reasons and may not be disclosed for that reason. Transfers may be delayed based on the time of transaction

and the type of transfer service you are utilizing to process the transfer. Certain types of transfers are subject to additional terms and conditions set forth below.

7.1. Funding Your Account

You can fund your Account with MBI by linking an External Account and initiating a transfer. MBI accepts Society for Worldwide Interbank Telecommunications Payments ("**SWIFT Payments**") and the Federal Reserve Wire Network ("**Fedwire**") transfers for Fiat Currencies. Transfers of Fiat Currencies will not be credited to a Custody Account until the transfer of such Fiat Currency to such Custody Account has been settled, as determined by MBI.

7.2. Linking External Accounts; External Account Transfers

A Client may connect or link an External Client Account to its Account for the purposes of making transfers to, and withdrawals from, such Custody Account; provided, however, that no External Client Account will be connected or linked to a Client's MBI Account unless MBI, in its sole discretion, approves the External Client Account for use in connection with transfers to and from the Custody Account. MBI may rescind its approval of any External Client Account at any time. With respect to each transfer to and from the Custody Account, Client must designate an approved External Client Account as the source of the transfer into the Custody Account or the destination for the transfer out of it.

By utilizing this transfer service, you authorize MBI to initiate ACH debits and credits on your behalf, for your convenience, in any amount you authorize. MBI may impose limits on the amounts for risk management purposes which restrict these amounts on a daily, weekly, monthly or other periodic basis. MBI may terminate this service at any time for any reason.

To revoke this authorization, delete the linked account from your MBI Account and notify us of the revocation in writing. You agree that the revocation of authorization is not effective until MBI has opportunity to receive and act on the notification. In all cases, we will consider the revocation of authorization effective upon our receipt and confirmation in writing to you of said instructions.

Limitations on Transfers to External Accounts

*Right to require advance notice of withdrawals.* For all amounts held in Custody Accounts, MBI reserves the right to require at least seven (7) days' prior written notice of your intent to make a withdrawal. Although we usually process withdrawals without prior notice on our Custody Accounts, doing so does not mean that we give up that right to require prior written notice of seven (7) days' or more.

*Right to limit certain types of transfers.* MBI reserves the right to impose limits on the number of certain types of transfers you can make each month from your Custody Account. Although we typically do not limit the number of certain types of transfers you can make each month, we may decline to process more than six (6) electronic transfer requests from your Custody Account to an External Account in any one 30-day period. If you exceed the transfer limits on more than an occasional basis, we may close your Account, with or without prior notice to you.

*Unfunded Transfers.* MBI does not offer or provide overdraft services and, therefore, cannot process unfunded transfers. All transfer requests to an External Account exceeding your current Available Balance will be declined without liability to MBI.

*Limitation on Liability.* We may refuse to allow any transfers without creating liability to you if we have a concern that one or more transactions in your Account may have been unauthorized or fraudulent, if there is a dispute concerning the Account that makes us uncertain regarding the instructions that have been given, the account is garnished or attached, the Account has been pledged to MBI as collateral for a debt, the availability of the funds held at MBI cannot be verified, any required documentation has not been presented, or you have failed to repay an obligation to us on time.

**8.   FUNDS AVAILABILITY**

Although MBI does not offer transaction accounts, it is generally our policy to follow U.S. federal guidelines for funds availability where applicable to our Service. As described above, the only method of funds transfer accepted by MBI for its Custody Accounts at this time is wire transfer via SWIFT or Fedwire.

8.1. When Are Funds Available?

For determining the availability of your funds, every day is a "**business day**," except Saturdays, Sundays, and federal holidays. If you make a deposit before 3:45 PM EST on a business day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after 3:45 PM EST or on a day we are not open, we will consider that the deposit was made on the next business day we are open.

*Wire Transfers*

Funds from the following transfers to established Custody Accounts are available on the first business day after the day of your transfer:

- Wire Transfers

8.2. Processing Transactions

Posting transactions to your Account impacts your Account balance. Posting a credit increases your balance. Posting a debit or hold reduces your balance. Transfers into your Custody Accounts will credit your Account. Transfers out of your Custody Account will debit it. Your Account may also be debited for the payment of fees, including fees owed to MBI for its Services.

It is generally not the policy of MBI to process more than one transaction in your Account in a single day. To the extent MBI deviates from this policy, you agree that we may in our discretion determine our posting orders for the transactions, as well as the order in which we post debits and credits to your Account.

**9.   INSUFFICIENT FUNDS AND OVERDRAFT PROTECTION**

We do not authorize overdrafts on your Account under any circumstances or extend credit on your behalf to cover them. All transfer requests must be fully funded by your Available Balance.

**10. FEES & SET-OFF**

Your Account is subject to the fees described in this Agreement and detailed in the Schedule of Fees, which is available at http://www.mercantile-bank.com. The Schedule of Fees that applies to your Account is a binding part of this Agreement. By entering this Agreement and becoming a Client, you agree to pay any fees listed in MBI's Fee Schedule, as updated from time to time by MBI in its sole discretion and published to its website or communicated to you by Electronic Means. Client agrees to pay Account fees in a timely manner, and hereby authorizes and directs Custodian to direct a deduction from the Custodial Account in an amount equal to the value of the then-outstanding amount owed to MBI. If there are not enough funds in your account to cover the amounts you owe us, we may deduct up to the full remaining amount and close your Account, without being liable to you. If you or any of your Affiliates owe money to MBI, or to any Affiliate of MBI (including Affiliates that provide services to MBI), we reserve the right to deduct all amounts owed by you or your Affiliate from any Account you control with us. If you believe the amounts withheld from any of your Accounts are in error, you agree that your exclusive remedy is to seek arbitration of your dispute pursuant to the dispute resolution provisions contained in Section 11.8 of this Agreement.

**11. OTHER TERMS AND CONDITIONS**

11.1. Additional Definitions That Apply to This Section

**"Arbitration"** has the meaning given to such term in Section 11.8.

**"Arbitrator"** has the meaning given to such term in Section 11.8.

**"BSA/AML Requirements"** has the meaning given to such term in Section 11.2.

"**Consequential Damages**" means (i) consequential, incidental, punitive, exemplary damages, (ii) any loss of revenue and of loss of profit, including any loss arising from use of the Services, and (iii) any similar type of damages or losses.

"**Dispute**" means any disagreement between the Parties regarding, related to, or arising from this Agreement (including any disagreement regarding (i) any act or omission by a Party, or (ii) the interpretation or enforceability of any provision of this Agreement.

"**FinCEN**" means the Financial Crimes Enforcement Network.

"**Force Majeure Event**" means any event, condition or circumstance beyond the reasonable control of MBI, including circumstances caused, directly or indirectly, by: acts of God; wars; hurricanes, earthquakes; fires; floods; any disruption or failure of any utility; civil disturbances; pandemics; any disruption or failure of any technology; any failure or disruption of any service or service provider; or any changes in applicable Laws.

"**Governmental Authority**" means any federal, state, local or foreign governmental authority; a state, province, commonwealth, territory or district thereof; a county or parish; a city, town, township, village or other municipality; a district, ward or other subdivision of any of the foregoing; any executive, legislative or other governing body of any of the foregoing; any agency, authority, board, department, system, service, office, commission, committee, council or other administrative body of any of the foregoing; any court or other judicial body; and any officer, official or other representative of any of the foregoing.

"**Losses**" means any and all damages, fines, fees, penalties, deficiencies, liabilities, claims, losses, damages demands, judgments, settlements, obligations, costs and expenses (whether actual, special, consequential, or punitive), including interest, court costs and fees, costs of attorneys, accountants and other experts, and other expenses of litigation or other proceedings or of any claim, default or assessment.

"**OCIF**" means the Office of the Commissioner of Financial Institutions for Puerto Rico.

"**OFAC**" means the Office of Foreign Assets Control of the United States Department of the Treasury.

"**MBI Intellectual Property**" means all of the MBI Software Assets, MBI Proprietary Interests and MBI General Know-How.

"**MBI Proprietary Interests**" means all patents, copyrights, trade secrets and trademarks, whether issued or pending, and other intellectual property rights of MBI.

"**MBI Software**" means all software owned by or licensed to MBI.

"**MBI Software Assets**" means (a) the MBI Software, (b) all documents used in the design, development, operation, maintenance or installation of the MBI Software, or principally describing any MBI Software or its use, and (c) all copies of MBI Software.

11.2. BSA/AML/OFAC Requirements

MBI is subject to the U.S. Bank Secrecy Act, as amended by the USA Patriot Act of 2001, and its implementing regulations, as administered by FinCEN, as well as the anti-money laundering laws and regulations administered by OCIF (collectively, MBI's "**BSA/AML Requirements**"). In addition, MBI must comply with the regulations issued by OFAC ("**OFAC Requirements**"). In order to ensure that MBI provides safe and reputable Services in full compliance with its BSA/AML Requirements and OFAC Requirements, it is MBI's policy to monitor for suspicious transactions and comply with mandatory reporting of suspicious transactions to appropriate regulators in addition to collecting information at about its prospective clients during the application process.

During the application process and at all times thereafter, Clients are required to provide MBI with all information that MBI determines, in its sole discretion, is necessary to meet its obligations under its BSA/AML Requirements and OFAC Requirements. MBI reserves the right to refuse opening an Account to, or to bar transactions from or to, or terminate any relationship with, any Client for any reason (or for no reason) at any time. MBI shall have the right to suspend Client's Account and the Services where it concludes that doing so is needed to comply with its responsibilities under the BSA/AML Requirements and OFAC Requirements. Client agrees to excuse MBI from performance of its obligations relating to Client or the Custody

Account under the Client Agreement and this Agreement if MBI reasonably determines that performance might cause it to violate its obligations under the BSA/AML Requirements and OFAC Requirements.

Client acknowledges that it may be required to forfeit any and all Client Assets in its Accounts to the appropriate authorities. As part of the BSA/AML Requirements and OFAC Requirements, MBI is required to obtain, verify, and record information that identifies each Client (and the related User(s)) who opens an Account. Each new Client (and related Authorized Persons) shall be required to provide their name, physical address, mailing address, date of birth, and other information to MBI. Furthermore, MBI may require each Client (and related Authorized Persons) to provide additional information to MBI or undergo a background check prior to being authorized to open a Client Account and access the Services or at any point thereafter in accordance with applicable Laws. MBI hereby expressly reserves the right to keep and share such information and documentation with its regulators and law enforcement, even when the Account relationship is terminated or the application to open an Account has not been completed.

11.3. Suspension of Services

In the event of any Force Majeure Event or any other event that would make providing any Service to Clients commercially unreasonable for MBI, MBI may, in its sole discretion and without any liability to any Client, with or without notice, suspend or limit any or all of the Services provided to Clients.

In the event that any Client breaches any terms of this Agreement, MBI may, in its sole discretion and without any liability to such Client, with or without notice, suspend or limit any or all of the Services provided to such Client.

11.4. Investigations, Governmental Authorities and Legal Proceedings

MBI may initiate and carry out an investigation into any matter related to this Agreement or the use of any Service.

MBI may disclose any information and documents received by MBI regarding any Client, its Custody Account and its use of Services to any Governmental Authority (i) to the extent required by applicable Laws, and (ii) in connection with any investigation, request, inquiry or proceedings by such Governmental Authority.

MBI will strictly comply with any order or writ of attachment issued by any Governmental Authority (including the Treasury Department and the Internal Revenue Service). As a result, MBI could among other things be obligated to (i) freeze access to Client Assets, or (ii) deliver Client Assets to a Governmental Authority or other Person. Regardless of the terms of such attachment, garnishment, levy or other state or federal process, we have first claim to all funds in your Account. To the extent not prohibited by applicable Laws, MBI will provide a Client with prompt written notice of any order or writ of attachment or other legal process affecting any Client Assets of such Client.

MBI will be under no obligation to contest, challenge, or question the terms of such order or writ, or to raise any defense that a Client may have against the Person seeking any order or writ against any Client Assets of such Client. We may take action to comply with such legal process as we determine to be appropriate in the circumstances without liability to you, even if the legal process purports to affect the interest of only one owner of a joint account and even if any funds we may be required to pay out leaves insufficient funds to pay a transaction you have authorized. If we incur any expenses, including without limitation, reasonable attorney fees, in connection with any such legal process, we may charge any expenses and fees to your Account or any other Account you may have with us without prior notice to you, or we may bill you directly for such expenses and fees. Any garnishment or other levy against your account is subject to our right of setoff and security interest. MBI will only be obligated to release affected Client Assets when it has been served with an order that such Client Assets may be released. Presentment to MBI of any other evidence will not be sufficient for MBI to release any affected Client Assets.

If any Client Assets of any Client become subject to any actual or potential legal proceeding, MBI may refuse to honor any instructions from such Client with respect to such Client Assets until such proceeding has been resolved. MBI will not be liable to Client for amounts paid pursuant to any order, attachment, or notice of levy in any circumstances.

11.5 Setoff and Security Interest Rights

You hereby grant to MBI as agent and representative of its Affiliates, a security interest in all of your Accounts and all of the Custodial Funds, investment property, financial assets, securities, instruments, general intangibles, or cash and other funds that may be deposited and held in such Accounts whether now existing or hereafter arising or deposited therein in the future together

with all proceeds thereof as security for obligations now or in the future owing to MBI or its Affiliates by you or your Affiliates. These obligations include both secured and unsecured debts. We may take or set off funds in any or all of your Accounts with us for direct, indirect and acquired obligations that you or your Affiliates owe us or our Affiliates. These rights are in addition to other rights we have to take or charge funds in your Account for obligations you or your Affiliates owe us or our Affiliates. You and your Affiliates and MBI hereby agree that each item of property (whether investment property, financial asset, security, instrument, general intangible, Custodial Funds or cash) credited to an Account shall be treated as a "financial asset" within the meaning of Section 8-102(a)(9) of the Uniform Commercial Code as in effect in the State of New York from time to time (the "UCC").  MBI hereby represents and warrants and agrees that it is and will at all times be acting as a "securities intermediary" within the meaning of Section 8-102(a)(14) of the UCC and that each Account is a "securities account" within the meaning of Section 8-501 of the UCC As used herein, the terms "Financial Asset," "Investment Property," "Proceeds," and "Security Entitlement" shall have the meanings set forth in Article 8 and 9 of the UCC. You for yourself and on behalf of your Affiliates agree that MBI as secured party for itself and its Affiliates may issue entitlement orders to MBI as securities intermediary with respect to an Account and the financial assets credited thereto and that MBI is authorized to act on such entitlement orders without your consent or the consent of your Affiliates upon the failure of you or your Affiliates to make timely payment of any obligations owed by you or your Affiliates to MBI or its Affiliates.  MBI as agent and representative of it Affiliates and as secured party is entitled to exercise all remedies available under the UCC.

If the law restricts our ability to take or setoff funds in your Account or the Account of your Affiliates, or if some government payments are protected from attachment, levy or legal process, to the extent that you may do so by contract, you waive those conditions and limits and authorize us to apply funds in any or all of your Accounts with us or our Affiliates to obligations you or your Affiliates owe us or our Affiliates.

Exercising these rights may result in early withdrawal penalties or may cause us to dishonor items should our action result in non-sufficient funds in your Account.

In the case of a joint account, Business Account with joint owners/authorized users we may exercise these rights against the Account and all owners. These rights exist no matter who contributed funds to the joint account. Similarly, each joint owner agrees that we may use the money in their individual accounts to satisfy obligations in their joint accounts.

11.6. <u>Limits on Liability</u>

(a) MBI DISCLAIMS ANY AND ALL WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, REGARDING ANY SERVICE, OR TECHNOLOGY, OR THE RESULTS OBTAINED BY USE OF ANY SERVICE OR TECHNOLOGY, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CLIENT EXPRESSLY ACKNOWLEDGES AND AGREES THAT (I) ALL OF THE SERVICES AND TECHNOLOGIES ARE PROVIDED ON AN "AS IS" BASIS AND (II) MBI DOES NOT GUARANTEE THE ADEQUACY, ACCURACY, TIMELINESS OR COMPLETENESS OF ANY RESULTS OBTAINED BY OR THROUGH THE USE OF ANY SERVICE OR TECHNOLOGY.

(b) MBI DOES NOT MAKE ANY REPRESENTATION OR WARRANTY (A) THAT THE AVAILABILITY OR USE OF ANY SERVICE OR TECHNOLOGY WILL BE UNINTERRUPTED, ERROR FREE OR SECURE; (B) REGARDING ANY TECHNOLOGY OR SERVICE PROVIDED BY ANY THIRD PARTY, INCLUDING SJMX; OR (C) REGARDING THE QUALITY, ACCURACY OR COMPLETENESS OF ANY DATA OR TECHNOLOGY.

(c) INFORMATION STORED OR TRANSFERRED BY CLIENT IN CONNECTION WITH USE OF ANY SERVICE MAY BECOME IRRETRIEVABLY LOST OR CORRUPTED OR TEMPORARILY UNAVAILABLE DUE TO A VARIETY OF CAUSES, INCLUDING VIRUSES OR OTHER DESTRUCTIVE CODE, SOFTWARE FAILURES, PROTOCOL CHANGES BY THIRD PARTY PROVIDERS, INTERNET OUTAGES, A FORCE MAJEURE EVENT OR OTHER DISASTERS, SCHEDULED OR UNSCHEDULED MAINTENANCE, OR OTHER CAUSES, EITHER WITHIN OR OUTSIDE OF MBI'S CONTROL. CLIENT IS SOLELY RESPONSIBLE FOR BACKING UP AND MAINTAINING DUPLICATE COPIES OF ANY INFORMATION CLIENT STORES OR TRANSFERS THROUGH THE SERVICE.

(d) Under no circumstances shall MBI be liable for any Consequential Damages incurred or suffered by Client in connection with, or arising from, this Agreement or any use of the Services.

(e) MBI shall have no liability for any Losses arising from (i) any Force Majeure Event, (ii) any error or failure related to, or arising from, any technology, (iii) any service provided by any Third Party, or (iv) any action or omission by any Third Party. With respect to any Losses incurred by a Client as a result of the acts or the failure to act by any Third Party, MBI shall take such action as it deems appropriate after consulting with Client to recover such Losses from such Third Party; provided, however, that (x) MBI shall not be obligated to incur any costs to recover such Losses unless Client has agreed to reimburse MBI for such

costs on terms acceptable to MBI, and (y) MBI's sole responsibility and liability to Client shall be limited to amounts received from such Third Party for Client (excluding costs and expenses incurred by MBI).

(f) MBI shall have no liability for any act or omission other than liabilities arising from its fraud, gross negligence or willful misconduct.

(g) No Person (other than the Parties) shall have any liability or obligation under this Agreement, and neither Party shall allege or assert any claim regarding this Agreement or the Services against any Person (other than the other Party).

(h). Notwithstanding anything to the contrary in this Agreement, MBI's liability to Client for any and all claims made by Client against MBI regarding this Agreement, the Terms of Service and use of the Services shall be limited to the total amount of Fees (exclusive of interest generated or earned from Cash and Cash Equivalents held in Omnibus Accounts with our Subcustodians in MBI's Subcustodial accounts) paid by Client to MBI during the six (6) months preceding the first date on which any claim is asserted against the other party. These limitations apply to all causes of action in the aggregate, including, but not by way of limitation, breach of contract, breach of warranty, negligence, strict liability and other torts. You and your Affiliates waive, to the fullest extent of the law, all speculative, consequential and punitive damages whether incurred directly or indirectly.

11.7 Client Responsibilities, Representations and Warranties

(a) Client will comply in all material respects with (i) the terms of this Agreement, (ii) the instructions given by MBI to Client regarding its Account and the Services, and (iii) the Laws applicable to Client regarding its Account and its use of Services.

(b) Client shall promptly provide MBI with such information and documents as may be requested by MBI regarding Client and its use of the Services to the extent deemed necessary or appropriate by MBI to determine whether or not Client is in compliance with this Agreement and all Laws applicable to Client regarding its Account and its use of Services, all of which shall be provided in such manner or format as may be reasonably requested by MBI.

(c) Client shall promptly provide MBI with written notice of any breach of this Agreement by Client or any event, circumstance or development that could reasonably be expected to result in any breach of this Agreement.

(e) Client will not use, or permit the use of, any of the Services in any manner that would (i) violate any applicable Laws, (ii) breach any contract, intellectual property right or other Third Party right to which it is a party or subject, (iii) adversely affect or interfere with the ability of MBI to provide any Service to any of its clients, (iv) create Accounts or access data (including Client or other client information) through unauthorized means, or (v) breach any of the terms of this Agreement.

(f) Client represents and warrants that: (i) it has full power and authority to execute, deliver, and perform this Agreement, (ii) if an entity, Client is duly organized and validly existing under the laws of the jurisdiction of its organization, (iii) Client has obtained all consents, authorizations, and approvals, and has made all filings and registrations and given all notices that it is required to obtain, make, or give in order to execute, deliver, and perform this Agreement, and (iv) the execution, delivery, and performance of this Agreement by Client does not breach any contract to which Client is a party nor violate any applicable Laws.

11.8. Choice of Law and Dispute Resolution

(a) This Agreement and the Terms of Service shall be governed by, and construed in accordance with, the Laws of the State of New York, without regard to any conflict of law provisions. This Agreement shall be deemed to have been executed in San Juan, Puerto Rico.

(b) (i) Any Dispute among the Parties shall be determined by arbitration in San Juan, Puerto Rico (an "**Arbitration**"), which shall be administered by JAMS (or any like successor organization thereto) pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules or pursuant to JAMS' Streamlined Arbitration Rules and Procedures. The language used in any Arbitration shall be English.

(c) An Arbitration shall be presided over by one arbitrator (the "**Arbitrator**") who shall be mutually agreed to by the Parties. If the Parties are unable to agree upon an Arbitrator within thirty (30) days of the commencement of the Arbitration, then the Arbitrator shall be determined in accordance with the applicable rules and procedures of JAMS.

(d). The Arbitrator shall apply the Federal laws of the United States of America and the State laws of New York. Judgment on the award may be entered in any court having jurisdiction.

(e). This Section 11.8 shall not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The Parties further understand and agree that the decision of the Arbitrator shall be final and binding to the fullest extent permitted by law and enforceable by any court having jurisdiction thereof.

(f). The Parties shall maintain the confidential nature of any Arbitration proceeding and the award, if any, including the privacy of the hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision.

(g) The prevailing party in any Dispute shall be entitled to be reimbursed for all reasonably costs incurred by such party in such Dispute by the non-prevailing party.

**THE REMEDIES AVAILABLE TO THE PARTIES PURSUANT TO SECTIONS 11.5 & 11.7 SHALL BE THE SOLE AND EXCLUSIVE REMEDIES AVAILABLE TO THE PARTIES WITH RESPECT TO ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT.**

11.9. <u>Unreturned or Abandoned Property</u>

If for any reason MBI is unable to return any Client Assets to a Client's designated External Client Account, then MBI will report and remit such Client Assets in accordance with applicable unclaimed property laws, including the laws of Puerto Rico, if applicable.

11.10. <u>Taxes</u>

Each Client is solely responsible for determining what, if any, taxes apply to transactions processed by such Client through the Services, and it is each Client's responsibility to report and remit the correct tax to the appropriate tax authority. MBI will not be responsible for determining whether taxes apply to any Client's transactions or for collecting, reporting, withholding or remitting any taxes arising from any transactions.

Any failure by Client to satisfy its tax obligations that result in Losses to MBI, including legal expense relating to potential subpoenas by taxing authorities, shall be promptly reimbursed by Client upon request by MBI.

11.11. <u>Miscellaneous</u>

(a) *Entire Agreement*. This Agreement and the Terms of Service (i) contains the entire agreement among the Parties with respect to the subject matter hereof, and (ii) supersedes all prior agreements and arrangements (oral and written) among the Parties with respect to the subject matter hereof.

(b) *Amendment*. This Agreement may only be amended, modified, or supplemented pursuant to an agreement in writing that has been executed and delivered by both Parties. MBI may amend, supplement or modify the Terms of Service at any time without any consent upon giving Client written notice of such amendment, supplement or modification.

(c) *Waiver*. No Party shall be deemed to have waived any of its rights under this Agreement unless such waiver is pursuant to an agreement that has been executed and delivered by such Party, and such waiver shall be limited to the terms of such agreement. No waiver of any provision of this Agreement by any Party shall be deemed a waiver of (i) such provision in the future, or (ii) any other matter by such Party.

(d) *Severability*. The invalidity and unenforceability of any provision of this Agreement in any jurisdiction shall not affect the interpretation of (i) the other provisions of this Agreement in such jurisdiction, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted, and (ii) this Agreement in any other jurisdiction. Notwithstanding the foregoing, if any provision of this Agreement is determined to be unenforceable, this Agreement shall be interpreted in a manner consistent with such provision to the fullest extent permitted by applicable Laws.

(e) *Assignment*. Client may not assign or transfer any of its rights or obligations under this Agreement without prior written consent from MBI, including by operation of law or in connection with any change of control. MBI may assign or transfer any or all of its rights under this Agreement, in whole or in part, upon providing Client prior written notice.

(f) *Intellectual Property*. MBI or its third-party licensors are and shall be the owners of the MBI Intellectual Property and Clients shall not have any ownership rights, express or implied, in the MBI Intellectual Property.

(g) *Interpretation*. Except as otherwise provided in this Agreement or the Terms of Service, this Agreement will be subject to the following clauses of interpretation: (i) the gender (or lack of gender) of all words used includes the masculine, feminine, and neuter; (ii) the meanings of all words used shall be applicable equally to the singular or plural, as applicable; (iii) the words "include" and "including" shall be without limitation; (iv) the words "based on" shall mean based on, related to, or derived from, (v) references to Sections, Annexes and Schedules refer to the Sections, Annexes and Schedules of this Agreement or the Term of Service, as applicable; (vi) references to laws refer to such laws as they may be amended from time to time, and references to particular provisions of a laws include any corresponding provisions of any succeeding laws; (vii) references to any agreement refers to such agreement as it may be amended, modified, supplemented, or replaced (including by any consent or waiver) from time to time, (viii) all headings and captions contained in this Agreement are inserted for convenience of reference only and shall not be deemed to interpret or modify the provisions of this Agreement; (ix) references to money refer to legal currency of the United States of America unless otherwise stated; and, (x) any acts or omissions of MBI pursuant to, or in connection with, this Agreement or the Terms of Service, shall be in the sole and absolute discretion of MBI.

(h) *Counterparts*. This Agreement may be executed in counterparts (including by electronic signature), each of which shall constitute an original and all of which, when taken together, shall constitute one agreement.

[********]