**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                *Plaintiff,*

    v.

HO WAN KWOK,

                *Defendant.*

**FILED PARTIALLY UNDER SEAL**

Case No. 1:23-CR-118-1 (AT)

# DEFENDANT'S REPLY IN FURTHER
# SUPPORT OF HIS SECOND MOTION TO COMPEL

Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Defendant Ho Wan Kwok*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 4

    I.   THE COURT SHOULD COMPEL PRODUCTION OF THE REQUESTED
        DISCOVERY BECAUSE IT IS MATERIAL AND EXCULPATORY ........................... 4

        A.  Evidence of the CCP's Targeting of Mr. Kwok and His Associates is Material and
             Exculpatory ................................................................................................. 5

            (1) This Evidence is Material and Exculpatory ..................................................... 5

            (2) Mr. Kwok is Entitled to Evidence that Demonstrates that His Beliefs Were
                Reasonable ................................................................................................. 11

            (3) The Government's Conduct to Date Shows that this Information is Material
                and Exculpatory ......................................................................................... 13

        B.  Information about the Validity of the NFSC is Material and Exculpatory ........... 15

        C.  Purported Victim Statements that Discuss Witness Tampering or the Validity of
             the NFSC Are *Brady* Evidence That Should Be Disclosed Now ......................... 16

    II.  THE GOVERNMENT'S PROSECUTION TEAM ARGUMENT IS IRRELEVANT .... 17

CONCLUSION .................................................................................................................. 21

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                              **Page(s)**

*Brady v. Maryland,*
    373 U.S. 83 (1963).........................................................................................*passim*

*United States v. Alkins,*
    925 F.2d 541 (2d Cir. 1991)............................................................................7

*United States v. Aref,*
    533 F.2d 72 (2d Cir. 2008)..............................................................................19

*United States v. Avellino,*
    136 F.3d 249 (2d Cir. 1998)........................................................................14, 17

*United States v. Coonan,*
    938 F.2d 1553 (2d Cir. 1991)...........................................................................9

*United States v. Onumonu,*
    967 F.2d 782 (2d Cir. 1992)............................................................................11

*United States v. Percoco,*
    No. 16-CR-776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017)................................9

*United States v. Philips,*
    No. 22-CR-138 (LJL), 2023 WL 6620146 (S.D.N.Y. Oct. 10, 2023) ....................................12

*United States v. Rittweger,*
    524 F.3d 171 (2d Cir. 2008)........................................................................12, 17

*United States v. Rossomando,*
    144 F.3d 197 (2d Cir. 1998)............................................................................6

*United States v. Ruggiero,*
    472 F.2d 599 (2d Cir. 1973)...........................................................................20

*United States v. Stevens,*
    985 F.2d 1175 (2d Cir. 1993)...........................................................................5

*United States v. Walker,*
    4191 F.3d 326 (2d Cir. 1999)...........................................................................6

*United States v. Weber,*
    843 F. App'x 364 (2d Cir. 2021) .......................................................................11

*United States v. Zichettello,*
    208 F.3d 72 (2d Cir. 2000)..............................................................................13

**Statutes and Rules**                                                                 **Page(s)**

Fed. R. Evid. 401 ................................................................................................5, 13

**Other Authorities**

Justice Manual § 2052(2)(b) .............................................................................19

Defendant Ho Wan Kwok respectfully submits this reply memorandum in further support of his Motion to Compel Discovery (Dkt. Nos. 170-72) (the "Motion to Compel") and in response to the government's Memorandum of Law in Opposition to Motion to Compel (Dkt. No. 201) (the "Opposition").

## PRELIMINARY STATEMENT

In its Opposition, the government tries to flee from its charges, its litigation conduct, and its constitutional obligations. No matter how many times it recites that "this is a fraud case," or trots out the inaccurate specter of "limitless" and "unbounded" discovery, the government cannot successfully distract the Court from this one simple and straightforward conclusion: that the government's discovery obligations require it to search for and produce from, at a bare minimum, information that is so obviously exculpatory that that government itself has treated it as such.

*First,* the government's hyperbolic assertion that granting this motion would require it to cast about in an unbounded ocean of government agency information is both misleading and false. This is no fishing expedition. It is the rare case in which everyone knows certain information is in government files; it's simply a matter of actually looking for it. For example, the government has acknowledged, or it is otherwise public record, that the CCP has targeted Mr. Kwok in various ways, including (1) China sought to secure Mr. Kwok's extradition by the United States, as part of which China corruptly sought influence at the highest levels of the U.S. government, leading to multiple prosecutions and guilty pleas by, among others, DOJ and FBI officials; (2) China planned to kidnap and forcibly exfiltrate Mr. Kwok from the United States back to China; (3) ███████ ████████████████████████████████████████████████████████ ██████ and (4) China took steps to have Mr. Kwok and his fellow dissidents removed from various social media platforms to suppress their message. Obtaining evidence—which, again, indisputably exists in the government's possession—that these events in fact took place both corroborates Mr.

1

Kwok's reasonably held belief that he was being targeted by the CCP and is directly relevant to his state of mind during the transactions at issue in the Indictment. For instance, and as explained below and in the opening brief, this evidence ties directly to at least the following issues in the Indictment: (i) support for Mr. Kwok's belief in GTV's potential growth and value, which goes directly to the alleged misrepresentation at the heart of the purported Farm Loans and G|CLUBS-related charges; (ii) a reason for why Mr. Kwok and others would want to acquire the Mahwah Facility as a secure base for members of the movement (of which G|CLUBS members are a part); (iii) to explain why Mr. Kwok would use multiple cellphones and bank accounts, which the government mistakenly misrepresents as "consciousness of guilt" evidence; and (iv) to rebut the government's motive theory that Mr. Kwok is only a pseudo-dissident who established the movement so that he could have a pool of victims for his alleged frauds. For each of these reasons, evidence of the CCP's attacks on Mr. Kwok and those close to him are entirely relevant to this "fraud case."

*Second*, unable to actually grapple with Mr. Kwok's materiality arguments, the government's Opposition tries to sidestep them by materially distorting Mr. Kwok's words, the government's own Indictment, and applicable law. For example, the government now claims it does not challenge Mr. Kwok's status as a genuine political dissident. These newly minted contentions flounder on even a cursory review of the operative Indictment, which demonstrates the government's repeated attacks on Mr. Kwok's *bona fides*. Similarly, the government's claim that Mr. Kwok is not entitled to material in the government's possession because Mr. Kwok is aware of his own beliefs is squarely contradicted by binding precedent. As a matter of law, Mr. Kwok is entitled to introduce evidence that corroborates his beliefs to help show that they are honestly held. Likewise, the government's contention that disclosing victim statements that

support Mr. Kwok's defense at this point constitutes premature disclosure of 3500 material ignores that the government cannot use the Jencks Act as a shield against its *Brady* obligations.

*Third*, the government claims that Mr. Kwok has ignored the "prosecution team" requirement and seeks to have the government undertake a "limitless" search of the whole of the U.S. government, including agencies as far-flung as the Department of Veterans' Affairs. The government is wrong. Mr. Kwok's Motion to Compel merely seeks, consistent with the DOJ's own policy, that the government search within the files of government agencies that reasonably could be expected to possess responsive documents. That should include at least the U.S. Attorney's Office and FBI field office that investigated (and are currently prosecuting) the case. Moreover, Mr. Kwok has taken additional steps to minimize the burden on the government; he does not ask the government to produce records from agencies it already knows contains responsive material, but merely to specifically identify those agencies, so Mr. Kwok may subpoena those agencies directly. Given these actual facts, the government's claims of "unbounded" searches and unbearable burden ring hollow.

*Fourth*, the government's related contention that it is not required to identify other agencies the government already knows possess responsive documents, and the government's further mischaracterization of Mr. Kwok's request for the same as unprecedented, is equally hollow. What is unprecedented is the government's view that it does not violate the Constitution for the government to learn of *Brady* evidence that is unknown to the defense, but sit silently about it. The government, however, has long taken the contrary position—that where it learns about *Brady* evidence in someone else's possession, it can satisfy its constitutional obligations by providing notice to the defense. In fact, in this very case, the government has done that repeatedly, regularly referring the defense to potential witnesses who have *Brady* evidence so that the defense can

3

investigate and pursue those leads.  There is no principled reason—and the government offers none—why that same protocol should not apply simply because the source of the *Brady* evidence is another U.S. government agency.

For all these reasons, and those set forth in Mr. Kwok's moving papers, the Court should (i) grant the Motion to Compel; (ii) order the government to produce the requested discovery; and (iii) grant Mr. Kwok such other and further relief as the Court deems just.

## <u>ARGUMENT</u>

## I.   **THE COURT SHOULD COMPEL PRODUCTION OF THE REQUESTED DISCOVERY BECAUSE IT IS MATERIAL AND EXCULPATORY**

Mr. Kwok seeks discovery about the CCP's targeting of him, his co-defendants, his family, his fellow movement members, his movement, and the relevant corporate entities (collectively, the "Requested Discovery").[1]  While the government tries to mischaracterize the Requested Discovery as outlandish and far-afield discovery about a "foreign government's conduct" (Opp. at 17), the government's gloss is unavailing.  The information sought is entirely standard because it relates to the fraud allegations in this case in ways that are familiar to any fraud case.  For example, as in any fraud case, Mr. Kwok's intent is a central issue, and, in this case, his intent is molded by the CCP's targeting of him and those close to him.  Similarly, the government has advanced as a motive that Mr. Kwok desired money and thus created a sham movement to defraud his fellow movement members.  It is axiomatic that Mr. Kwok is allowed to rebut the government's theory,

---

[1] Mr. Kwok also sought originally to compel the government to produce a recording ███████ ████████████████████████████  When Mr. Kwok originally sought production of the recording—which is plainly Rule 16 discovery ████████████████████████████████ ████████████████████████████████████████████████—the government simply responded that it had not produced the recording, without any explanation of why not or whether it intended to produce it.  It was not until after Mr. Kwok was forced to file the instant motion that the government finally produced the recording, although it still has not explained why it did not so before.

including by arguing that the movement is not a sham and that he holds his movement dearer than he does money, and to offer evidence in support of that position.  Such evidence includes the attacks that Mr. Kwok suffered at the hands of the CCP as a result of his refusal to abandon that movement, including but not limited to the CCP's attempts to kill or kidnap him.  Frankly, the government knows that this evidence is relevant and material, which is why it continues to make *Brady* disclosures ███████████████ even as it disclaims incorrectly its obligation to do so.  The Court should put a stop to the government's selective and self-serving disclosures and direct the government to produce all of the Requested Discovery.

### A.  Evidence of the CCP's Targeting of Mr. Kwok and His Associates is Material and Exculpatory

The government offers no valid justification for its failure to search for and produce information concerning the CCP's targeting of Mr. Kwok, his family, his fellow movement members, or the relevant corporate entities.[2]

### (1) This Evidence is Material and Exculpatory

The government claims that Mr. Kwok has failed to offer a "cogent" explanation of the materiality of this information.  Respectfully, the government should re-read Mr. Kwok's opening brief, in which he goes into great detail about the connection between this evidence and the charges here.  Evidence is material if it can be "used to counter the government's case or to bolster a defense."  *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993); *see also* Fed. R. Evid. 401 (evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is material to the action).  The Requested

---

[2] Together with this brief, Mr. Kwok is also submitting a classified *ex parte* submission that further addresses the role the Requested Discovery will play in his trial strategy.

Discovery readily meets this expansive standard because it rebuts several of the government's core contentions, including:

**<u>Alleged Misrepresentations</u>**: Information about CCP targeting bears directly on the alleged falsity of certain statements that the government alleges, as well as Mr. Kwok's intent in making the alleged statements.  To sustain a fraud charge on the basis of these statements, the government has to prove not only that the statements were false, but also that Mr. Kwok knew that they were false when made and that he made them to harm the alleged victims.  *See United States v. Rossomando*, 144 F.3d 197, 203 (2d Cir. 1998) ("[I]n order to convict Rossomando the jury had to find that he intended to harm the [victim]"); *United States v. Walker*, 191 F.3d 326, 334 (2d Cir.1999) ("Proof of fraudulent intent, or the specific intent to harm or defraud the victims of the scheme, is an essential component of the 'scheme to defraud' element" of the mail fraud statute.").

For example, both the Farm Loans and G|CLUBS counts rest on Mr. Kwok's alleged statement in August 2020 that GTV's valuation was $2 billion.  (*See* Ind. ¶ 17(d).)  The key driver of the value a social media company like GTV is the size and enthusiasm of its prospective user base.  The CCP campaign of deplatforming Mr. Kwok and his fellow movement members ███████████████████████████████ bears directly on this key driver.  As the Indictment itself indicates, at the time of the GTV Private Placement, Mr. Kwok and his movement had attracted hundreds of thousands of supporters around the world who were sympathetic to the movement's Chinese pro-democracy messaging.  (*Id.* ¶¶ 2, 9(b).)  But as the *Bai* complaint makes clear, the CCP went to tremendous lengths to silence that messaging, ████████████████████████ ████████████████████████████████████ (*See Bai* Compl. ¶¶ 89, 90, 92, 98).  In other words, due to the CCP's actions, there was increasing demand for the

movement's pro-democracy content, but fewer and fewer channels for would-be consumers of that content to access it.  It is entirely reasonable for Mr. Kwok to believe that a company like GTV that could capitalize on both that demand and scarcity would be worth billions of dollars. *See United States v. Alkins*, 925 F.2d 541, 550 (2d Cir.1991) ("If an individual believes that the information set forth in a mailing is true, it follows that he cannot have the requisite intent to defraud.").

Similarly, the purchase of the Mahwah Facility features prominently in the G|CLUBS counts.  In particular, the government alleges that Mr. Kwok misappropriated funds used to purchase G|CLUBS membership to buy the property for himself.  (Ind. ¶ 18(h)(ii)-(iii).)  It would obviously be a defense to this allegation if the Mahwah Facility was in fact purchased for the benefit of G|CLUBS members, and it would obviously be probative of this fact if there was a reason why G|CLUBS members needed their own secure location to meet.  That reason is that— as even the government must concede—one of the world's most powerful nation states has tried to intimidate and silence dissidents (like G|CLUBS members) including through kidnapping and physical intimidation in the United States.  Those CCP actions thus help explain why G|CLUBS would want the Mahwah Facility, and support Mr. Kwok's belief that using the G|CLUBS' funds to purchase the Mahwah Facility was appropriate.  *See Alkins*, 925 F.2d at 550.

**Consciousness of Guilt**: As in many fraud cases, the government intends to use so-called "consciousness of guilt" evidence to attempt to prove Mr. Kwok's purported fraudulent intent.  In particular, the government claims that Mr. Kwok and others allegedly using multiple cellphones and numerous bank accounts in different names shows that they were knowingly committing a fraud and were concerned about being detected by U.S. law enforcement.  In response to this government claim, Mr. Kwok is entitled to offer an innocent explanation for his conduct.  That

innocent explanation is grounded in the CCP's long-running campaign against him. In this regard, it is indisputable that, for years, the CCP has made multiple attempts █████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████ (*See* Barkan Reply Decl. Ex. A at 2, 3 (the "December 11, 2023 *Brady* Letter").)[3] It makes complete sense that Mr. Kwok—███████████████████████████████— would cycle through cellphones to avoid detection not by U.S. authorities, but by the CCP. Similarly, with respect to the bank accounts, it is also documented that the CCP seeks to interfere with dissidents' ability to bank through, among other things, false fraud claims. In fact, ████████ ██████████████████████████████████████████████████████████████████████████ ████████████████ *Id.* at 3. Mr. Kwok is certainly entitled to argue to the jury that to the extent Mr. Kwok and his fellow pro-democracy dissidents used multiple banks accounts with different names, that was out of fear that the CCP might disrupt or cause the seizure of funds in the accounts, rather than to further a fraud or to obscure the manner in which those funds were generated.

**Motive**: The government also argues that Mr. Kwok's motive for these alleged frauds was greed, which overcame whatever belief he had in the movement. Mr. Kwok is permitted to take the contrary position and argue that his commitment to the movement and its goals was so sincere and strong that he would not jeopardize it for money, especially given that he was already living a wealthy lifestyle. Some of the strongest proof of Mr. Kwok's commitment to the movement are the sacrifices and trials Mr. Kwok has had to go through while fostering the movement, the most severe of which were doled out at the hands of the CCP. For example, even when the CCP essentially held Mr. Kwok's wife and daughter hostage, Mr. Kwok still would not cease his

---

[3] "Barkan Reply Decl." refers to the declaration of Matthew S. Barkan, dated January 3, 2024, submitted in support of this reply.

political activities.  Put simply, the jury would certainly be entitled to conclude that someone who has endured, for example, the constant threat of death or fear for them and their family as a result of their political beliefs would not abandon those beliefs for a piano or luxury suits, particularly when he was able to purchase those things for himself without risking the movement.

As demonstrated, information about the CCP's targeting of Mr. Kwok and those close to him supports his defense in specific and independent ways and is thus discoverable.  Notably, the government barely engages with any of these arguments.[4]  For example, the government does not substantively contest Mr. Kwok's arguments with respect to the value of GTV or rebutting the government's "consciousness of guilt" evidence.  Those concessions alone are sufficient basis for granting Mr. Kwok's motion.  But even where the government does challenge Mr. Kwok's arguments, it does so only by ignoring its own allegations.  For example, the government contends that Mr. Kwok's argument about the Mahwah Facility has no merit because, according to the government, buying the property for the benefit of the NFSC does not excuse using G|CLUBS funds to do it.  The government's word games are beneath it—the government is well aware that the potential clientele for G|CLUBS was principally NFSC members.  Indeed, the Indictment itself alleges that Mr. Kwok was exhorting his "followers" and "comrades-in-arms" to purchase

---

[4] Indeed, the government actually claims that information about the CCP's targeting of Mr. Kwok and the pro-democracy dissident movement would only be relevant if the government had alleged in the Indictment that Mr. Kwok had falsely claimed he was *not* targeted by the CCP.  (Opp. at 20.)  The government's view of its disclosure obligations is utterly narrow (and incorrect), and should be rejected.  *See United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) ("The trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment.  Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."); *see also United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *23 (S.D.N.Y. Dec. 11, 2017) (ordering pre-trial production of *Brady* material pertaining to information that supported defendant's belief of appropriateness of particular conduct).

9

G|CLUBS memberships.  (Ind. ¶ 18).  Who were these "followers" and "comrades" if not members of the movement, *i.e.*, the NFSC?  Thus, whether styled as NFSC or G|CLUBS members, the bottom line is that the Mahwah Facility was purchased for the benefit of the movement members, not Mr. Kwok, and the purchase was consistent with G|CLUBS' business.

The government also contends the Requested Discovery is unnecessary here because the government is not truly challenging Mr. Kwok's *bona fides* as a dissident.  The government, however, cannot run from its own Indictment.  For example, paragraph 9(a) of the Indictment, which the government claims alleges only that Mr. Kwok is a "purported . . . billionaire" (Opp. at 18), actually states, in full, that beginning in 2017, Mr. Kwok "garnered a substantial online following," "granted numerous media interviews," and "posted on social media," all because he was "*claiming* to advance the movement against the Chinese Communist Party."  (Ind. ¶ 9(a) (emphasis added).)  Similarly, the charged conduct begins, according to the government, in 2018 (two years before the GTV Private Placement), when Mr. Kwok is alleged to have "founded two *purported* nonprofit organizations," which he supposedly used to "amass followers who were aligned with his *purported* campaign against the Chinese Communist Party."  (*Id*. ¶ 9(b) (emphasis added).)[5]  It is clear that the government intends to argue that Mr. Kwok's activism was a front—indeed, the government must claim as much given that its false theory of motive requires that Mr. Kwok's alleged greed caused him to target and victimize his fellow movement members.  Throughout this case, the government has consciously chosen in the Indictment to

---

[5] In fact, the government cannot even help itself in its Opposition—while simultaneously claiming in one breath that the "legitimacy or illegitimacy of the NFSC is not a defense to the fraud charges," the government also argues that the NFSC is a "vehicle[] used during the course of the schemes charged in this fraud case to collect money from Kwok's followers on the basis of Kwok's lies." (Opp. at 5, 16 n.3.)  Thus, the government contends that it can argue that the NFSC is a vehicle of fraud, but that Mr. Kwok should have no opportunity to rebut that utterly mistaken allegation.

attack Mr. Kwok's fidelity to his political movement.  It cannot run from the consequences of that choice now.

### (2)   Mr. Kwok is Entitled to Evidence that Demonstrates that His Beliefs Were Reasonable

Unable to successfully challenge the clear relevance of the Requested Discovery to Mr. Kwok's defense, the government also adopts a second tack, arguing that it does not need to respond to Mr. Kwok's discovery demands because Mr. Kwok is already aware of the relevant information, *i.e.*, his own beliefs.  The government's position, however, defies black letter law and common sense.

Contrary to the government's assertion, it is not the end of the story to say that Mr. Kwok can testify to his own beliefs.[6]  Mr. Kwok is entitled to independent, objective *evidence* in support of that belief, including evidence showing that his beliefs are objectively reasonable because that bolsters the fact that he truly holds them.  *See United States v. Weber*, 843 F. App'x 364, 367 (2d Cir. 2021) ("While a defendant's good-faith reason need not be objectively reasonable, the objective reasonableness of a claimed belief may be probative of whether the defendant held the belief in good faith.").  In *United States v. Onumonu*, for example, the Second Circuit expressly found that the defendant was entitled to introduce expert testimony about methods of smuggling diamonds from Africa to support the defendant's asserted belief that he was smuggling diamonds rather than narcotics.  *See* 967 F.2d 782, 787 (2d Cir. 1992).  In other words, independent evidence that supports the reasonableness of a defendant's belief is relevant.  The same is true here— evidence of the CCP's targeting of Mr. Kwok and other NFSC members bolsters his belief that

---

[6] The government's argument is also misplaced because its refusal to produce the Requested Discovery would essentially force Mr. Kwok to testify at trial, in violation of his constitutional right not to do so.

GTV would be enormously valuable, that his cell phones would be hacked, and that the movement needed a secure space like the Mahwah Facility from which to conduct their political activities.

Moreover, the fact that Mr. Kwok was not aware of this additional evidence does not undermine its relevance. For example, in *United States v. Rittweger*, the Second Circuit examined whether a witness's statements constituted *Brady* material where the statements supported the defendant's belief that he was the sole signatory on certain accounts, including the witness's opinion that the defendant's belief was genuine and that the witness had been instructed by another to withhold contrary information from the defendant. *See* 524 F.3d 171, 181 (2d Cir. 2008). Of course, the defendant could not have known, for example, that his other purported co-conspirators had discussed deceiving him—if he had, that would have defeated the entire purpose of the deception. Nevertheless, the Second Circuit found that the witness statement was exculpatory and should have been disclosed. *Id.*; *see also United States v. Philips*, No. 22-CR-138 (LJL), 2023 WL 6620146, at *4 (S.D.N.Y. Oct. 10, 2023) ("And while the Government is correct that Defendant could not have known with absolute certainty what the USD/ZAR exchange rate would be in advance, evidence that corroborates the reasonableness of the legitimate investment thesis Defendant has proffered for his trades makes it more probable that he traded on that basis.") (cleaned up).[7] Put simply, the government cannot avoid its discovery obligations simply by claiming that the defendant knows what in his own mind. Where, as here, the government has

---

[7] Taking the government's position to its natural conclusion would lead to absurd results. For example, if a defendant believed he was not at a crime scene, would the government no longer be obligated to produce surveillance footage confirming the same, simply because the defendant was unaware that footage existed?

information that confirms the reasonableness of Mr. Kwok's beliefs, the government should produce it.[8]

### (3) The Government's Conduct to Date Shows that this Information is Material and Exculpatory

Perhaps the best evidence of the exculpatory nature of the CCP's efforts against Mr. Kwok and his affiliates is the way that the government has treated such information in the past. The government has now sent two *Brady* disclosures—one after Mr. Kwok's motion was filed—in which it purports to notify the defense about █████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ (*See* Barkan Moving Decl.[9] Ex. G (the "June 26, 2023 *Brady* Letter"); Barkan Reply Decl. Ex. A (the "December 11, 2023 *Brady* Letter").)

---

[8] Whether intentional or not, the government's position would serve to unfairly hamstring Mr. Kwok's defense. To be clear, what the government is proposing is that if the Court found the CCP's targeting to be relevant to this case, then (i) Mr. Kwok could offer testimony about a global campaign to silence him conducted by one of the world's most powerful governments that may be difficult for a typical juror to understand absent corroboration, and (ii) despite the fact that the government knows that campaign to exist, the government could sit silent without confirming it, in essence robbing the jury of the information necessary to truly assess the veracity of Mr. Kwok's claims. Whatever tactical benefit the government perceives in that approach, it is not consistent with the jury's role as the arbiter of the truth or the rules of evidence. *See generally United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000) (the jury is the "appropriate arbiter of the truth" and has to "sift [ ] falsehoods from facts"); Fed. R. Evid. 401 (evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is material to the action).

[9] "Barkan Moving Decl." or "Barkan Moving Declaration" refers to the declaration of Matthew S. Barkan, dated November 17, 2023, submitted in support of the Motion to Compel (Dkt. No. 171).

On top of that, while the government claims it is under no obligation to produce such material, the government has continued to produce dribs and drabs of low hanging fruit about the CCP's targeting of Mr. Kwok, ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

The government's objective is transparent—to disclose just enough information about the CCP's campaign to try to avoid an issue on appeal in the event of a conviction, but to disclaim any obligation to do so, so that it does not have to engage in any appropriate search and disclosure, or otherwise comply with its discovery obligations.  The government cannot have it both ways, however—the *Brady* Disclosures show that the government is aware that this information is exculpatory and that it exists, at a minimum, in the files of members of the prosecution team and the FBI, and, as a result, it must search for and produce it.[10]  *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("An individual prosecutor is presumed, however, to have knowledge of all information gathered in connection with his office's investigation of the case and indeed has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.") (cleaned up).

The government's attempted rationalization of its conduct only underscores Mr. Kwok's entitlement to these materials.  As an initial matter, in its Opposition, the government completely ignores the portion of its ████████████████████ and Mr. Kwok's discovery request that focuses

---

[10] In fact, in its most recent *Brady* Disclosure, ████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████

on material from the *Bai* case.  In fact, nowhere in its Opposition does the government even mention *Bai*, let alone address ███████████████████████████████████████ ███████████████████████████████████████.  As much as the government would like to ignore *Bai*, however, it cannot.  As described above and in Mr. Kwok's opening brief, the DOJ's allegations in that case squarely support Mr. Kwok's defense.  *See supra* p. 6; Motion to Compel at 4, 6, 21, 25.

Moreover, even with respect to ████████████████████████████████████ ███████████████████████  the government's Opposition harms, rather than helps, the government's position.  Mr. Kwok's prior counsel ███████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ In other words, when the government came into possession of information concerning ████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████  The same is true now—if the government is aware of other instances of targeting by the CCP about which Mr. Kwok is not aware, then the government should disclose it, along with the rest of the Requested Discovery.

### B.    Information about the Validity of the NFSC is Material and Exculpatory

The government contends it should not have to turn over information about the validity of the NFSC, including intelligence assessments, because the *bona fides* of the movement are not at issue in this case and Mr. Kwok has sufficient information to make that argument if he wishes. But again, the government has repeatedly put the credibility of the NFSC at issue in this case.  It did so in its Indictment, of course, where it repeatedly portrayed Mr. Kwok's movement as a cover for fraud.  (Ind. ¶¶ 9, 17, 19.)  It did so again in its opposition to Mr. Kwok's stay motion, where it argued, without evidence, that the NFSC's political activities at the Mahwah Facility after Mr.

Kwok's arrest were part of a cover-up to help Mr. Kwok's defense.  (Dkt. No. 148 at 2-3.)  And it has even done so now, in its Opposition, where it describes the NFSC as a "vehicle" of fraud. (Opp. at 4-5.)  Mr. Kwok is entitled to rebut those claims by showing that the NFSC is a genuine organization into which he has invested a tremendous amount of time and energy and that he would not destroy by victimizing its members.  *See supra* p. 10.  And while Mr. Kwok certainly can introduce evidence of the NFSC's *bona fides* through some sources, there is no better evidence of the movement's *bona fides* than the reaction to it by the national governments with which it interacts.  In the case of the U.S. government, that evidence would include any endorsements or positive assessments of the movement, and in the case of the CCP, that evidence would include the CCP's efforts to destroy the movement that is critical of it.  Mr. Kwok is entitled to show and argue to the jury that a political movement that is strong enough to engender these types of responses from such powerful governments is a genuine one that he would not sacrifice simply to enrich himself further.

### C.   Purported Victim Statements that Discuss Witness Tampering or the Validity of the NFSC Are *Brady* Evidence That Should Be Disclosed Now

The government argues that it should not have to turn over purported victim statements in which the purported victims discuss either their own targeting or coercion by the CCP or the validity of the NFSC because that would constitute early disclosure of 3500 and *Giglio* material. But these statements would also constitute *Brady* evidence and should be produced by the government now.

To the extent a purported victim acknowledges that the CCP pressured them into making false allegations about Mr. Kwok, then that would be further proof the CCP's targeting of Mr. Kwok—indeed, that is why the government already disclosed similar information in its *Brady* disclosure.  And if a purported victim made a statement about the validity of the NFSC, then that

would also be *Brady* for the reasons set forth above.  Moreover, because these purported victim statements would constitute *Brady*, the government's premature disclosure argument is squarely foreclosed by *Rittweger*, which states that "[c]omplying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*—a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500." 524 F.3d 171, 181 n. 4 (2d Cir. 2008).  Thus, the government cannot use the Jencks Act as a shield to prevent disclosure of these victim statements.[11]

## II.    The Government's Prosecution Team Argument Is Irrelevant

The government's Opposition, in significant part, is a groundless complaint that Mr. Kwok seeks to impose "limitless" discovery requests on the prosecution team that would "bury" them before trial.  The government then recites case law about joint investigations and argues that Mr. Kwok has not made the requisite showing to require the prosecutors to search other agencies' files for relevant material.  The government's authority, however, completely misses the point, because Mr. Kwok is not arguing that the government engaged in a joint investigation with, for example, the Department of Veterans Affairs.   Rather, Mr. Kwok's discovery requests seek only (i) production of information in the possession, custody, or control of the prosecution team; and (ii) identification of additional sources of *Brady* evidence already known to the government.

Whatever limitations the prosecution team concept imposes on the government's discovery obligations, it does not insulate the prosecuting office investigating the case to search its own files. *See Avellino*, 136 F.3d at 255.  Here, the government's Opposition and prior correspondence make

---

[11] To the extent the government raises the specter of witness tampering by Mr. Kwok—for which it has no evidentiary basis—the government has tools under the protective order to address that concern, including by designating, if appropriate, these victim statements as "attorneys' eyes only" discovery.

clear that the government is refusing to even search its own files or the files of the FBI, the law enforcement agency that conducted the investigation of Mr. Kwok.  (*See* Barkan Moving Decl. Ex. K.)

Further, in searching the FBI's files, the "prosecution team limitation" does not protect the government from having to search for information from the *Bai* case, because that case was investigated by the very same field office of the FBI—the New York office—as this case.  Indeed, the government cannot now rely on an artificial distinction between the fraud investigation here and the CCP influence investigation in *Bai*, because the government itself has previously eschewed that distinction.  Specifically, it was the government that claimed, in its efforts to disqualify Ms. Wang's prior counsel, that the 2019 investigation purportedly into Mr. Kwok was connected to this case, and in particular that counsel's alleged supervision of that investigation justified his removal.  (*See* Dkt. No. 125 at 5).  That warrant, and that investigation, were conducted by the Counterintelligence division of the FBI's New York field office, the same division that is responsible for investigating Operation Fox Hunt cases like the *Bai* case.  *See United States v. Bai*, 23 Mag. 334 (EDNY) ¶ 3 n.2 (stating that FBI affiant's experience included "investigating numerous cases involving the PRC") (attached as Exhibit B to the Barkan Moving Declaration); *see also United States v. Ying*, 22 Mag. 1711 (SDNY), ¶ 5 (noting that affiant in Operation Fox Hunt complaint had "participated in numerous counterintelligence investigations," including "investigations involving agents working at the direction of foreign governments without notification to the United States") (attached as Exhibit A to the Barkan Moving Declaration).  In fact, ███████████████████████████████████████████████████████████ ████████████████████ (Barkan Moving Decl. Ex. E ¶¶ 7-9).  The government cannot slice its discovery obligations so thinly as to exclude the division of the FBI field office that the government

18

itself claimed conducted investigation relevant to this case.

Moreover, the Justice Manual requires that the government search the files of the intelligence community (the "IC") when the prosecutors have "actual or implied" knowledge that the IC's files contain Rule 16, *Brady*, or Jencks Act material.  *See* Justice Manual § 2052(2)(b). In this case, given that the government has moved for deletion of classified information pursuant to Section 4 of the Classified Information Procedures Act, then it necessarily must have located information at one or more intelligence agencies that is discoverable.  *See United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) (first step of analysis under Section 4 is whether information is discoverable).  To the extent that information includes, for example, records related to the CCP's targeting of Mr. Kwok, then it constitutes *Brady* evidence that Mr. Kwok is entitled to obtain in preparation for trial.

But Mr. Kwok is not even demanding that the government produce information in the custody of these intelligence agencies to him directly, but rather, that the government simply disclose which agencies possess this information, so that Mr. Kwok can subpoena them. This, of course, would avoid any purported "prosecution team" issue.  The government, however, refuses to do even that, claiming that there is no authority requiring it to so.  (Opp. at 23.)  Not only is the government claim that such disclosure is unprecedented incorrect, it is particularly rich given the government's long-standing practice of purportedly discharging its *Brady* obligations simply by notifying the defendant about a helpful witness.  In fact, in this very case, the government has adopted that approach repeatedly, ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ (*See* Barkan Decl. Ex. A at 2, 3).  Thus, if the government is in search of precedent, it need only look at its own correspondence—████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

On the other hand, what is unprecedented here is the government's apparent position that it can—consistent with its constitutional obligations—learn of exculpatory evidence about which Mr. Kwok is unaware and cannot learn, but then sit quietly about it.  That is not the law.  *See, e.g., United States v. Ruggiero*, 472 F.2d 599, 604 (2d Cir. 1973) (fundamental purpose of Brady rule is "to assure that [the defendant] will not be denied access to exculpatory evidence known to the government but unknown to him").

## **CONCLUSION**

For the foregoing reasons, and those set forth in its moving papers, Mr. Kwok respectfully requests that the Court (i) grant the Motion to Compel; (ii) order the government to produce the Requested Discovery; and (iii) grant Mr. Kwok such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 3, 2024

PRYOR CASHMAN LLP

By: _____
Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton

7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Defendant Ho Wan Kwok*