UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

-against-

HO WAN KWOK,

                        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _01/04/2024_

23 Cr. 118-1 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      On March 29, 2023, Defendant, Ho Wan Kwok, was indicted by a grand jury on six charges.[1] Superseding Indictment, ECF No. 19. On March 31, 2023, Kwok moved for release on bail pending trial, ECF Nos. 23–24, and the Court held a hearing on April 4, 2023, *see* ECF No. 45. In an April 20, 2023 order (the "Bail Order"), the Court determined that Kwok posed serious risks of flight, obstruction of justice, and economic harm to the community, and that no condition or set of conditions could ensure Kwok's return to court or the safety of the community. Bail Order, ECF No. 51. The Court, therefore, denied Kwok's motion for bail, *id.*, and the Second Circuit affirmed, *see* ECF No. 87.

      Kwok now renews his motion for release on bail, arguing that "there have been significant developments that impact the question of [] Kwok's bail" since the Bail Order. Def. Mem. at 1, ECF No. 178. The Government argues that the renewed motion "simply recycles arguments from his first" and fails to "undermine what this Court has already determined." Gov.

---

[1] Kwok was charged with conspiracy to commit wire fraud, securities fraud, bank fraud, and money laundering, in violation of 18 U.S.C. § 371; wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2; international promotional money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2; international concealment money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2; and unlawful monetary transactions, in violation of 18 U.S.C. §§ 1957 and 2. The Court assumes familiarity with the Bail Order, ECF No. 51, which discusses the allegations underlying Kwok's indictment in greater detail. *See id.* at 2-4.

Opp. at 1, ECF No. 192. The Court agrees with the Government. Kwok's renewed motion for bail pending trial is, accordingly, DENIED.

## LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, requires the Court to release a defendant pending trial subject to the least restrictive conditions that will reasonably assure the defendant's appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(c)(1)(B). The Court shall order that a defendant be held without bail only if there are no conditions that will reasonably assure the defendant's appearance and the safety of any other person and the community, after considering the factors set forth in 18 U.S.C. § 3142(g). *Id.* § 3142(e)(1). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, financial resources, length of residence in the community, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.* § 3142(g).

To support pretrial detention, the Government must establish by a preponderance of the evidence that the defendant presents a serious risk of flight or obstruction of justice, *id.* § 3142(f)(2); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988), or by clear and convincing evidence that the defendant poses a danger to another person or the community, 18 U.S.C. § 3142(f)(2); *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (citation omitted). If the Government carries its initial burden, then the Court must determine whether there are reasonable conditions of release that can be set to ensure the defendant's appearance and the safety of any other person or the community. 18 U.S.C. § 3142(e)(1); *see United States v. Watkins*, 940 F.3d 152, 158–59 (2d Cir. 2019).

Once the Court has made a bail determination, the hearing can be reopened if "information exists that was not known to the movant at the time of the hearing and that has a material bearing" on the bail issues. 18 U.S.C. § 3142(f)(2). "But the Court is not required to reopen the hearing or to conduct another hearing if it determines that any new information would not have a material bearing on the issue." *United States v. Maxwell*, 510 F. Supp. 3d 165, 169 (S.D.N.Y. 2020); *see also United States v. Raniere*, No. 18 Cr. 204-1, 2018 WL 6344202, at *2 n.7 (E.D.N.Y. Dec. 5, 2018). The Court can also revisit its own bail decisions as an exercise of its inherent authority, even if the defendant's proffered new evidence does not meet the statutory standard for reopening the decision. *See United States v. Rowe*, No. 02 Cr. 756, 2003 WL 21196846, at *1 (S.D.N.Y. May 21, 2003).

## ANALYSIS

Kwok raises two new arguments that he claims justify reconsideration of the Court's initial bail decision. First, he contends that his "continued incarceration is endangering both his health and, in consequence, his ability to properly assist in his own defense." Def. Mem. at 1. Second, he contends that the Government's disclosure of his meetings with the Federal Bureau of Investigation (the "FBI") has increased the danger of retaliation from the Chinese Communist Party (the "CCP"), making it "far less likely that [] Kwok will ever choose to flee the United States." *Id*. at 2; *see* ECF No. 120. Kwok also urges the Court to revisit its findings that he poses the risks of flight, obstruction of justice, and danger to the community, as well as its conclusion that no set of conditions could adequately address these dangers.

I. Kwok's Health

Kwok contends, "[f]irst and foremost," that the Metropolitan Detention Center ("MDC") "is unable to properly diagnos[e] and treat [his] medical problems," necessitating his release.

Def. Mem. at 2.  He states that he is suffering from several "dangerous symptoms," including "sharp needle-like pains in the left side of his face," "constant throbbing pain in his right arm, and numbness and loss of motor control in his right hand." *Id*. at 1.  The Government states that it has "confirmed with the MDC that Kwok is receiving medical treatment for his complained-of symptoms," and has submitted medical records.  Gov. Opp. at 15.

Kwok does not explain why his health concerns bear on the questions posed by the Bail Reform Act—namely, whether he is seriously likely to flee, obstruct justice, or endanger the community.  *See* 18 U.S.C. § 3142(f); *United States v. Brown*, No. 15 Cr. 60-A, 2016 WL 3546026, at *2 (W.D.N.Y. Apr. 22, 2016).  Kwok does not argue that his symptoms incapacitate him to the point of obviating the Court's initial findings on these questions.  So, "[t]his is not the 'rare case' where health conditions present an 'exceptional reason' warranting release where detention would otherwise be warranted."  *United States v. Gutierrez Miranda*, No. 11 Cr. 456, 2020 WL 3547770, at *2 (S.D.N.Y. June 30, 2020) (quoting *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008)).  Further, the Court has reviewed Kwok's medical records and finds no evidence that MDC is incapable of providing adequate treatment.[2]  *See United States v. Hunter*, No. 13 Cr. 521, 2014 WL 6632965, at *2 (S.D.N.Y. Nov. 24, 2014) (denying bail application where defendant "has not demonstrated that the Bureau of Prisons' treatment resources for PTSD are inadequate").

Accordingly, the Court finds that Kwok's medical concerns do not have a "material bearing on the [bail] issue."  *Maxwell*, 510 F. Supp. 3d at 169.

---

[2] The Bureau of Prisons has been reminded that, as with all persons detained at MDC, it must provide Kwok prompt medical treatment.

4

II. <u>Kwok and the FBI</u>

Next, Kwok argues that his risk of flight has decreased because the Government divulged, in a public brief filed on August 4, 2023, that "from April 2018 through May 2019," Kwok "voluntarily provided information to the Federal Bureau of Investigation ("FBI") in the hope of receiving assistance with respect to his U.S. immigration status." ECF No. 120 at 2; *see* Def. Mem. at 2, 5. Kwok contends that the Government's disclosure has "substantially magnified" the "Chinese government's unrestrained animus toward him," making it less likely that he would attempt to leave the United States if released. Def. Mem. at 5.

As the Government argues, however, Kwok's communications with the FBI were hardly a secret before the August 2023 filing. See Gov. Opp. at 17–18. In his March 2023 bail motion, Kwok stated that he had told the FBI that several "Chinese security officials were planning to return to his home in two days, allowing the FBI the opportunity to detain and question [the officials] about their activities in the United States." ECF No. 24 at 8. In other words, nearly five months before the Government's purported disclosure, Kwok voluntarily revealed that he had cooperated with the FBI against the CCP.

The Government's August 2023 statement, by contrast, does not mention the CCP. Nor does it reveal—as Kwok argues—that ██████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████ *Id*. at 2. At most, the Government disclosed a time frame (April 2018 to March 2019) and a motive (immigration) for what was already known: that Kwok has spoken to the FBI. The Court cannot find that these disclosures "substantially magnified" the CCP's focus on

5

Kwok such that he no longer has an incentive to flee, *id.*, particularly in light of the Court's prior finding that Kwok poses an acute flight risk.[3]  Bail Order at 5–7.

Kwok also contends that the August 2023 disclosure bolsters his asylum claim, further reducing the likelihood that he will flee. *Id*. at 6. But even if that were true, "the charges in this case seriously undermine [his] eligibility for asylum." Bail Order at 7 & n.2. The Court previously found that "the evidence against [Kwok] is strong," *id*. at 7, and Kwok does not challenge this conclusion. Kwok's prospects for asylum continue to be outweighed by his incentive to flee.

III.  Reconsideration of the Bail Order

Beyond presenting these two "changed facts," Def. Mem. at 2, Kwok relitigates several issues addressed in the Bail Order.

A.  Flight

Kwok first contends that the Court's previous findings on flight failed to appreciate Kwok's status as a "dissident . . . being actively pursued by China." Def. Mem. at 4. He argues that "the CCP's continued malevolent focus upon him" decrease the likeliness that he will flee, because "the risks to him of flight are exponentially greater than those faced by others." *Id.* at 8.

In the Bail Order, the Court found that Kwok had limited connections to the United States and "substantial connections and resources abroad, including his son and a co-defendant who resides in the United Kingdom, but is currently believed to be a fugitive in the United Arab Emirates." Bail Order at 5. The Court further found that Kwok "has the means and know-how to flee," as well as substantial incentives to do so. *Id*. at 6–7.

---

[3] The Court notes Kwok has not requested that the Government's August 2023 brief be sealed, or the statement in question be redacted, despite its presence on the public docket for over three months.

Kwok's renewed motion highlights several factual developments bearing on these findings: His yacht and jet have been sold, for example, and he has surrendered two (of a previously claimed eleven) passports. Def. Mem. at 8, 17; Gov. Opp. at 24; Bail Order at 6. But even if these developments have made flight marginally more difficult, the Court's analysis remains fundamentally unchanged. Kwok continues to lack substantial connections to the United States, his general appeals to this country's "history of freedom and support for democracy" and "bipartisan political opposition to the Chinese government" notwithstanding. Def. Mem. at 5. He has submitted no further evidence of "the ties that [he] and his family have established over the last near decade in the United States." *Id.* at 16; *cf. Maxwell*, 510 F. Supp. 3d at 174–75 (finding concerns regarding the absence of U.S. ties "somewhat" abated where Defendant "submitted a litany of letters of support written by friends and family members" in the country). At the same time, he maintains significant ties abroad—particularly with the United Arab Emirates, "even after he purportedly renounced his Emirati citizenship in 2018." Gov. Opp. at 26 (emphasis omitted); *see id.* (noting that ███████████████████████████ ███████████████████████████████████████).

On his financial means, Kwok notes that he "has filed for bankruptcy, and the trustee is now monitoring and controlling his financial affairs." Def. Mem. at 17. But, the same was true at the time of the Court's initial bail decision. *See* Bail Order at 8. Further, Kwok admits that he is "dependent on donations provided by members of his pro-democracy [] movement," a cash flow not within the bankruptcy estate. Def. Mem. at 8; *cf. Raniere*, 2018 WL 6344202, at *6 (finding that defendant who had "access to substantial financial resources from anonymous third parties" abroad posed a flight risk). He also offers no response to the Government's assertion that he has "access to troves of capital that he secreted across the globe," which are currently outside the reach of the bankruptcy trustee. Gov. Opp. at 25. And, for the reasons discussed above, the

7

Court is not convinced that Kwok's incentives to flee have substantially abated during the pendency of this case.

The Court declines to reconsider its prior conclusion that "the Government has met its burden of showing that Defendant poses a serious risk of flight." Bail Order at 7.

B. Obstruction

In the Bail Order, the Court detailed Kwok's history of obstructive behavior, including "hiding his assets and failing to obey court orders." Bail Order at 7–11. The Court explained that Kwok had been sanctioned in two separate court proceedings after, among other things, "encouraging his followers to 'persevere' with protests at the homes and offices of the trustee and his counsel" and to file baseless claims in the bankruptcy proceeding; inciting his followers to harass alleged victims of his fraud scheme; and concealing significant assets from Pretrial Services, including over $500,000 in cash, seventeen computers, forty-three external media storage devices, thirty cellphones, and thirty custom-made suits. *Id.* at 8–10. The Court further found that Kwok "is technologically sophisticated and likely to delete, encrypt, or transfer electronic evidence and fraud proceeds if released." *Id.* at 10.

In his renewed motion, Kwok "apologizes for his past behavior and the upset he caused others." Def. Mem. at 10. But his promises to "not undertake such actions again," standing alone, do not assuage the Court's concerns that Kwok is likely to continue his pattern of obstruction if released. *Id.*; *see* Bail Order at 11. And although Kwok argues that "only the most serious obstructive conduct—[] witness tampering—justifies detention to prevent continued obstruction," Def. Mem. at 15, he provides no support for this proposition. The out-of-circuit case Kwok cites, *United States v. DeGrave*, 539 F. Supp. 3d 184 (D.D.C. 2021), states only that a court may find "a threat of future dangerousness" based on "the risk that the defendants will

8

obstruct the judicial proceeding or its integrity." *Id.* at 199.  Witness tampering is but one flavor of obstruction, and the Government presents unrebutted evidence that Kwok has engaged in many others.  Kwok's arguments to the contrary do not call in question the Bail Order's findings.

      C.  Economic Danger to the Community

The Court also previously found that Kwok "poses a risk of economic harm to the community."  Bail Order at 11.  It explained that Kwok "has continued to promote fraudulent investment opportunities to his followers" and "encouraged them to re-invest . . . in the fraud scheme alleged in this case." *Id.* at 12.  In his renewed motion, Kwok again "disputes that he engaged in any fraud," but offers no new information to justify revisiting the Court's original conclusions.  Def. Mem. at 9.

      D.  Conditions of Release

Finally, Kwok proposes another set of conditions that, he argues, "will be more than sufficient to reasonably assure community safety and [his] return to court."  Def. Mem. at 26.  Specifically, he suggests that the Court impose:

> (i) the posting of property before he is released from custody; (ii) the continued surrender of his passports to the government and continued presence on the "no-fly" list; (iii) home confinement under the supervision of a responsible third-party custodian; (iv) 24/7 electronic GPS monitoring of Mr. Kwok, along with additional, frequent telephonic and in-person visits by Pretrial Services; (v) a restriction on contacting any consulate, whether in-person or remotely, (vi) a restriction on contacting or meeting with persons other than his attorneys and his family outside the presence of counsel; (vii) a ban on accessing the Internet or going online or speaking to his followers about financial matters or the case; and (viii) a ban on opening new financial accounts or making financial transactions.

*Id.*

None of Kwok's proposed conditions, alone or together, sufficiently address the concerns the Court expressed in the Bail Order.  First, the Court rejected Kwok's proposed $25 million bail package, noting that he "has filed for bankruptcy and claims to have assets worth only

9

"$10,000," and did not identify any acceptable co-signers. Bail Order at 12–13. Kwok's renewed motion does not propose a concrete, feasible bail package; it only vaguely promises the posting of property, and the Government would again be "one in a long line of creditors." *Id.* at 12. Second, the Court rejected Kwok's suggestion to impose GPS position monitoring and/or private security, finding that the former could be evaded and the latter "is not as reliable as a federal jail." *Id*. at 13. The renewed motion proposes the same conditions, and the Court's views have not changed. Finally, the Court found that Kwok's "past obstructive conduct . . . demonstrate[s] that the Court does not have reasonable assurance that Defendant will abide by any conditions of pretrial release." *Id.* Although Kwok now suggests several specific restrictions on his movements, activities, and communications, the Government notes that these restrictions are difficult to enforce, Gov. Opp. at 30, and the Court remains skeptical that Kwok would voluntarily comply. The Court concludes, therefore, that Kwok's proposed conditions of release do not adequately mitigate his risks of flight, obstruction, and economic harm.

## CONCLUSION

For the reasons stated above, the Court concludes that the Government has again shown that Kwok's proposed conditions are insufficient to reasonably assure his appearance or prevent obstruction or economic harm to others. Accordingly, Kwok's renewed motion for bail pending trial is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 178.

SO ORDERED.

Dated: January 4, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge