**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

    *Plaintiff,*

  v.

HO WAN KWOK,

    *Defendant.*

**FILED PARTIALLY UNDER SEAL**

Case No. 1:23-CR-118-1 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S RENEWED MOTION FOR A STAY**
**AND MOTION FOR RECONSIDERATION**

Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
sschirick@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Defendant Ho Wan Kwok*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

RELEVANT BACKGROUND ............................................................................................ 3

    I.   The Trustee's Attempts to Secure Victim Funds ............................................. 4

    II.  The Himalaya Exchange Funds Overlap and Dispute ................................... 5

    III. The Trustee's Active Efforts To Erode Mr. Kwok's Attorney-Client Privilege ........... 7

    IV. The Court's Decision and Order Denying the Stay Motion ......................... 8

    V.  The January 3, 2024 Superseding Indictment ............................................... 8

ARGUMENT .................................................................................................................... 10

    I.   Applicable Law .............................................................................................. 10

    II.  Discussion ..................................................................................................... 10

        A.  New Evidence Undermines The Court's Finding That There Was Only Limited Overlap Between the Cases ............................................................ 10

            (1) The Overlap Of Determinations Regarding Customer Assets ........................ 11

            (2) The Overlap as to Mr. Kwok's Attorney-Client Privilege .............................. 16

CONCLUSION ................................................................................................................ 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Corines v. Am. Physicians Ins. Tr.*,
    769 F. Supp. 2d 584 (S.D.N.Y. 2011).......................................................................10

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d. Cir. 2012).................................................................................8, 11

*Schoolcraft v. City of New York*,
    298 F.R.D. 134 (S.D.N.Y. 2014) .........................................................................10

*Trustees of Plumbers & Pipefitters Nat. Pension Fund. v. Transworld Mech., Inc.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995)....................................................................16

*United States v. Lisi*,
    No. 15-cr-457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ....................10

*United States v. Yalincak*,
    853 F.3d 629 (2d Cir. 2017)................................................................................14

**Statutes and Rules**

Fed. R. Crim. P. 16(b)...............................................................................................16

Fed. R. Crim. P. 41(g)..................................................................................................5

Local Criminal Rule 49.1.........................................................................................1, 10

Defendant Ho Wan Kwok respectfully submits this memorandum of law in support of (i) his renewed motion to stay the bankruptcy proceedings captioned *In re Ho Wan Kwok, et al.*, Case No. 22-50073 (JAM) (Bankr. D. Conn.) (Jointly Administered), and its related cases (collectively, the "Bankruptcy Cases"), and (ii) his motion, pursuant to Local Criminal Rule 49.1, for reconsideration of this Court's order (Dkt. No. 204, the "Order") denying his prior motion to stay the Bankruptcy Cases (Dkt No. 131, the "Stay Motion").

## PRELIMINARY STATEMENT

In its Order, the Court found that there was insufficient overlap between the Bankruptcy Cases and this case to support a stay.  Since Mr. Kwok filed his original Stay Motion, however, significant developments in this case and the Bankruptcy Cases warrant the Court's revisiting of its Order and granting Mr. Kwok's request to stay the Bankruptcy Cases.

*First*, just yesterday, over nine months after first charging Mr. Kwok and just three months before trial, the government filed a new superseding Indictment (the "Indictment") that transforms this purported "fraud case," to borrow the government's tired mantra, into a purported racketeering case.  Even setting aside the government's strained reading of the RICO statute, the fact is that the Indictment reveals that there is not a shred of daylight between the subject matter of this case and the Bankruptcy Cases.  Indeed, the Indictment now alleges that Mr. Kwok's filing for bankruptcy protection itself was an act in furtherance of the government's purported schemes.  Moreover, the alleged "enterprise" upon which the government relies is a constellation of corporate entities that include twelve entities against which the Trustee has commenced adversary proceedings to date, and numerous other entities which the Trustee has contended are Mr. Kwok's alter egos.  While the overlap was clear before, the government has now removed any possible doubt about it.

*Second*, just two days before the Court issued its Order, the Trustee took the extraordinary position before this Court that the Trustee should administer the hundreds of millions of dollars seized by the government in connection with the Himalaya Exchange (the "Exchange"), rather than allow the funds to be returned to customers of the Exchange who seek their return.  The Trustee's request marks his latest attempt to siphon assets from this proceeding—which should go back to any alleged victims of the schemes charged in the Indictment in the event of a conviction—into a bankruptcy proceeding that, based on its history, may largely fund his millions of dollars in fees and promises to put the funds of those alleged victims into the pocket of purported creditors who have no entitlement to those funds.  With the government's imprimatur, the Trustee has sought control of millions of dollars that the government alleges to be the proceeds of fraud, including a $37 million loan from the Exchange to an entity controlled by one of Mr. Kwok's relatives (which is a basis of the count in the Indictment related to the Exchange); $38 million controlled by a company called HCHK (which is a basis of the counts in the Indictment related to the Farm Loans program); the Mahwah Facility (which is the basis of the counts in the Indictment related to G|CLUBS); and hundreds of millions of dollars in the Exchange's bank accounts (which is a basis of the count in the Indictment related to the Exchange).

While the Trustee asserts (incorrectly) that he is entitled to control these assets, even if he were correct that these entities were Mr. Kwok's alter egos (which they decidedly are not), the Trustee would still not be entitled to take these funds because, as the government has reiterated, these funds came from *the alleged victims of the charged offenses, not from Mr. Kwok*.  The Trustee's overreach demonstrates clearly the near total subject matter overlap between the Bankruptcy Cases and this proceeding—the Trustee claims as the very same money that Mr. Kwok is alleged to have stolen through the expansive scheme alleged in the Indictment, based on the

Trustee's unfounded allegations that Mr. Kwok controls these entities, which tracks the government's theory in the Indictment.

*Third*, the Court determined that Mr. Kwok's concerns about the Trustee's control over his privilege were theoretical and premature. Whether or not that was the case when Mr. Kwok originally filed his motion, the Trustee has now taken actions that make those concerns real and crystal clear. In particular, just recently, the Trustee took the position in the Bankruptcy Court that he can waive privilege over certain of Mr. Kwok's attorney-client communications in connection with an adversary proceeding he intends to pursue, thereby exposing those communications to public view, including by the government. Of course, the government has not explained its full case to Mr. Kwok or the Court, but given the substantial overlap between this proceeding and the Bankruptcy Cases, there is a significant risk that the government will thus gain access to privileged information that it would not otherwise be able to access. While the Court is correct that the Fifth Amendment does not prohibit parallel civil and criminal proceedings, the Trustee's control over Mr. Kwok's privilege creates a distinct Sixth Amendment issue that threatens the integrity of these proceedings.

For these reasons, Mr. Kwok respectfully moves for a stay of the Bankruptcy Cases and reconsideration of the Order.

## **RELEVANT BACKGROUND**

The Court is familiar with the relevant factual background described in Mr. Kwok's Stay Motion, which Mr. Kwok incorporates by reference. In addition, Mr. Kwok highlights the following material developments which occurred subsequent to his filing of the Motion.

## I.     **The Trustee's Attempts to Secure Victim Funds**

As a prelude to the facts discussed below, prior to the filing of the Motion, the Trustee took repeated actions in the Bankruptcy Cases to secure various assets he contended were rightly property of the bankruptcy estate.

Prior to the commencement of this criminal proceeding, one of Mr. Kwok's creditors, Pacific Alliance Asia Opportunities Fund ("PAX") and the Trustee jointly sought, and received, a preliminary injunction barring Mr. Kwok and numerous entities from specified activities.  In the Bankruptcy Court's Memorandum of Decision granting that injunction, the Bankruptcy Court made sweeping findings (now repeatedly parroted by the Trustee) that Mr. Kwok is "associated, affiliated, and/or connected to" the Himalaya Farms, and the "GSeries" entities, which it concluded include the Himalaya Exchange, G|CLUBS, GFashion, Gettr, and GNews, among others.  (Adv. Proc. No. 22-05032, Jan. 13, 2023, Dkt. No. 133 ¶ 3).  The Bankruptcy Court further found that Mr. Kwok controls Saraca Media Group and its related entity, GTV.  (*Id.*)

Following the entry of this preliminary injunction, the Trustee commenced numerous actions to recover assets he (falsely) contended were held by alter egos of Mr. Kwok, including: HK International Funds Investments (USA) Limited (Case No. 22-ap-05003 (summary judgment granted, Dkt No. 221)), the entity that owned the *Lady May* yacht, and which received a $37 million loan in connection with the *Lady May*, HCHK Technologies, Inc. and HCHK Property Management, Inc., which the Trustee asserted were "affiliates of . . .  GTV, GClubs, GFashion, and GMusic" (Bankr. Dkt 1897, ¶ 4), and which held $38 million in cash; Taurus Fund LLC (Case No. 23-ap-05017), the entity that owns the property located at 675 Ramapo Valley Road, Mahwah, New Jersey 07430 (Bankr. Dkt. 1994); and against Mr. Kwok's family members, including his

daughter (through which he seeks, among other items, ownership of the proceeds of the sale of the Bombardier Global XRS private jet (*see* Bankr. Dkt. 2421).

As a result of these proceedings, the Trustee seized $37 million from HK International Funds Investments (USA) Limited (*See* Case No. 22-ap-05003 (Bankr. D. Conn., Dkt. No. 35, ¶¶ 79-81 (discussing $37 loan made in connection with the yacht), and also discussed in Indictment ¶ 19(g)), and $38 million from HCHK Property Management, Inc. and HCHK Technologies, Inc. (*See* Case No. 23-ap-05013, Dkt No. 1, ¶ 2; Dkt. No. 25 ¶ 5 (describing transfer of $38 million of funds to the Trustee).)

## II.   <u>The Himalaya Exchange Funds Overlap and Dispute</u>

On December 6, 2023, more than 3,000 customers of the Himalaya Exchange—a cryptocurrency exchange that features heavily in the Indictment—filed a motion pursuant to Federal Rule of Criminal Procedure 41(g) (the "Customer Motion," Dkt No. 186) seeking the return of hundreds of millions of dollars in funds held in the Exchange's bank accounts (the "Exchange Funds") that were seized by the government in connection with this Indictment.

The next day, the government filed an opposition to the Customer Motion, in which it stated that "the Government seized more than $600 million in proceeds of the charged crimes—including the Exchange Funds in question—to preserve those funds for later disbursement and restitution to victims."  (Dkt. No. 188 at 3.)  The Trustee subsequently sought leave to file a response to the Customer Motion on December 8, 2023, alleging that by seeking assets held by the Exchange, that somehow implicated "property of the Chapter 11 estate" in Mr. Kwok's bankruptcy

proceedings.  (Dkt. No. 189 at 1.)   The Court granted the Trustee leave to respond, and on December 19, 2023, the Trustee filed a response (the "Trustee's Response").  (Dkt. No. 202.)[1]

In his response to the Customer Motion, the Trustee contended that because he obtained a determination in the bankruptcy proceedings that the Exchange was purportedly under the sway of Mr. Kwok (a determination that is wrong) the Court should not grant the Customer Motion, and should instead allow the Trustee to obtain an order from the Bankruptcy Court permitting the Trustee to seize the Exchange Funds for the Chapter 11 estate.  (*Id.* at 4-5.)

In support of his position that these assets be administered through the Bankruptcy Court, rather than this Court, the Trustee stresses that he "owes duties to ***all*** of Mr. Kwok's legitimate creditors, not to any one creditor or group of creditors."  (*Id.* at 4.)  Further, the Trustee argues that "property of a Chapter 11 estate consists of all legal or equitable interests of the debtor in property as of the commencement of the case ***wherever located and by whomever held***," including, implicitly, property held by this Court.  (*Id.* at 5 (cleaned up).)[2]

---

[1] Upon reviewing the Trustee's response, Mr. Kwok's counsel began to draft a letter to the Court to bring the relevant issues with the Trustee's filing to the Court's attention.  Just two days after the Trustee filed his response however, as Mr. Kwok's counsel was finalizing their letter, the Court issued its decision denying Mr. Kwok's Stay Motion.

[2] Although not the subject of this Motion, the Trustee additionally spills considerable ink in his Response smearing Mr. Kwok with the spurious, irrelevant, and derogatory allegation that the Customer Motion is some machination of Mr. Kwok.  The claim is categorically false—Mr. Kwok had nothing to do with the Customer Action, and is not directing anything with respect to it.  As with the government's previous attempt to impugn members of the New Federal State of China (the "NFSC") who were using the Mahwah Facility for movement business (which was its intended purpose) (*see* Dkt. No. 148, at 2-4), the Trustee asserts this spurious claim without a shred of evidence.  *First*, the Trustee claims summarily that Mr. Kwok has directed others to impede the bankruptcy proceedings.  *Second*, the Trustee contends that one of Mr. Kwok's fellow movement members who was involved in recruiting customers to participate in the Customer Action once dined with Mr. Kwok, sailed on a yacht with him, and participated in a protest.  Notwithstanding the Trustee's vociferous bluster, the Trustee utterly fails to provide any evidence in support of his claim showing that Mr. Kwok—who is detained in Brooklyn—somehow orchestrated the Customer Action.  Instead, the Trustee merely shows that individuals who share Mr. Kwok's fervent belief in the NFSC and its pro-democracy mission have taken steps that they believe further

**III.**   **The Trustee's Active Efforts To Erode Mr. Kwok's Attorney-Client Privilege**

As outlined in the Stay Motion, one form of serious harm posed by the ongoing bankruptcy cases is the invasion of Mr. Kwok's attorney-client privilege, and the risk that the government will have access to information that it would not otherwise be able to view.  (*See* Dkt No. 131 at 23-24.)  In opposing the Stay Motion, the Trustee previously portrayed Mr. Kwok's concerns as "nonexistent issues" (Dkt. No. 145 ¶ 3), claimed that Mr. Kwok's "assertion that the Trustee has somehow infringed upon [Mr. Kwok]'s attorney-client privilege is completely unsupported" (*id.* ¶ 50), and stated that "'disputes' over the Trustee's ability to waive the privilege [are] meaningless" (*id.* ¶ 55).

Unfortunately, the risk Mr. Kwok highlighted in the Stay Motion is now at hand.  On December 5, 2023, the Trustee filed of a motion seeking either (a) authority to use certain privileged materials, or (b) in the alternative, for the Bankruptcy Court to issue an order waiving such privilege (the "Waiver Motion," Bankr. Dkt. No. 2421).  The purpose of this filing was so that the Trustee could use these communications in connection with an adversary proceeding he had filed, including in support of a summary judgment motion the Trustee wished to file.[3]  Thus, the communications would have been available to the public, including to the government.[4]

---

their goals, namely, in this case, challenging the government's improper seizure of the Exchange Funds.  Despite both the government's and the Trustee's attempts to malign these innocent bystanders, there is nothing improper about these customers seeking to recover funds that they believe were wrongfully taken from them.

[3] As of the date of this Motion, the Waiver Motion remains under consideration, and the Trustee has moved for summary judgment without using any privileged documents.  But, even if the Waiver Motion were denied, it demonstrates the Trustee's active attempts to invade Mr. Kwok's attorney-client privilege.

[4] The Trustee filed the Waiver Motion under seal, and thus Mr. Kwok's criminal counsel cannot access the filing, and cannot submit it to the Court with this Motion.  Mr. Kwok, however, objected to the Waiver Motion publicly before the Bankruptcy Court and is submitting a copy of his Motion as Exhibit A to the Declaration of Matthew S. Barkan, dated January 4, 2024.

IV.     <u>**The Court's Decision and Order Denying the Stay Motion**</u>

On August 30, 2023, Mr. Kwok filed the Stay Motion.  Various parties responded to the Stay Motion on September 21, 2023, and the Stay Motion was fully submitted on October 5, 2023.

On December 21, 2023, this Court entered its order denying Mr. Kwok's Stay Motion.  In its analysis of Mr. Kwok's Motion, the Court articulated the six-factor test set forth in *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97-98 (2d Cir. 2012), applied in determining whether to stay a parallel civil litigation, which factors include "the extent to which the issues in the criminal case overlap with those presented in the civil case."  (Order at 5.)  The Court additionally noted that Cases substantially overlap when they "arise from the same facts and involve nearly identical issues."  (*Id.* at 7.)

The Court also found, however, that the "Superseding Indictment . . . concerns alleged conduct by Kwok that is not at issue in the bankruptcy proceedings" and that "Kwok's intent and the materiality of his conduct, in addition to other key legal issues, are unique to the criminal proceeding."  (*Id.* at 8.)  As set forth below, the Court erred when it found that there was "limited overlap" between the bankruptcy and criminal proceedings (*id.* at 9), and when it held that "determinations in the Bankruptcy Court" would not be dispositive as to key issues pending in this criminal proceeding.  (*Id.* at 8.)

V.      <u>**The January 3, 2024 Superseding Indictment**</u>

On January 3, 2024, the government filed the Indictment, charging Mr. Kwok with, among other offenses, a violation of the RICO Act.  Significantly, the Indictment alleges that Mr. Kwok's bankruptcy filing "was based on years-long efforts to obscure the funds used and controlled by [Mr. Kwok], which was a means and method" of the alleged fraudulent enterprise.  (*Id.* ¶ 20.)

Thus, in other words, far from being distinct from the charged offenses, the Indictment now claims (falsely of course) that the Bankruptcy Cases themselves are part of the criminal conduct.

Moreover, the Indictment newly alleges that a number of corporate entities comprised the purported RICO "enterprise" because they were, among other things, supposedly controlled by Mr. Kwok and used to perpetuate the alleged frauds, including through "regularly mov[ing]" funds between these entities and "disguising the money movements as 'loans' or investments.'" (Indictment ¶ 20.)  Those entities include the entities for which the government alleges specific conduct, such as GTV Media Group, Inc., G Club Operations LLC, G Club International Limited, the Himalaya Exchange, and the Himalaya Alliance, and  also includes twelve entities that are parties to adversary proceedings filed in the Bankruptcy Cases, including Taurus Fund LLC and Taurus Management, LLC (*Despins v. Taurus Fund, LLC, Taurus Management, LLC, et al.* Adv. Pro. No. 23-05017 (Bankr. D. Conn.)), HCHK Technologies, Inc., HCHK Property Management Inc., Lexington Property and Staffing, Inc., and Holy City Hong Kong Ventures Ltd., (*Despins v. HCHK Technologies, Inc. et al.* Adv. Pro. No. 23-05013 (Bankr. D. Conn.), Lamp Capital LLC, Infinity Treasury Management, Inc., Hudson Diamond NY LLC, Leading Shine NY Ltd. (*Despins v. Lamp Capital LLC, et al.* (Adv. Pro. No. 23-05023 (Bankr. D. Conn.)), Golden Spring (New York) LTD (*Despins v. Golden Spring (New York) Linted, et al.*, Adv. Pro. No. 23-05018 (Bankr. D. Conn.)), and Greenwich Land (*Despins v. Greenwich Land*, Adv. Pro. No. 23-05005 (Bankr. D. Conn.))  (Indictment ¶ 3(a).) and includes many others which the Trustee alleges are alter egos of Mr. Kwok, and whose assets thus properly belong to the Chapter 11 estate.

## ARGUMENT

### I.     Applicable Law

With respect to Mr. Kwok's renewed motion for a stay, Mr. Kwok incorporates by reference the relevant legal standards set forth in the Stay Motion, (*see* Dkt. No. 131 at 14-17) and renews his motion based upon the material changes in circumstances discussed herein.

As for Mr. Kwok's motion for reconsideration, although not present in the Federal Rules of Criminal Procedure, Local Criminal Rule 49.1(d) permits a moving part to file a motion for reconsideration within fourteen days after the Court's determination of the original motion.  A court should reconsider its conclusion where doing so is necessary due to an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Schoolcraft v. City of New York,* 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (cleaned up).[5]  "[T]he decision to grant . . . a motion for reconsideration is within the sound discretion of the district court."  *Corines v. Am. Physicians Ins. Tr.*, 769 F. Supp. 2d 584, 594 (S.D.N.Y. 2011).

### II.    Discussion

#### A.  New Evidence Undermines The Court's Finding That There Was Only Limited Overlap Between the Cases

In the analysis supporting its Order denying Mr. Kwok's Stay Motion, this Court recognized, under controlling case law, that the "most important" inquiry is whether there is an overlap of issues, (Order at 7), but found that there is only "limited" overlap between this criminal proceeding and the Bankruptcy Cases, (*id.* at 9).  Contrary to this Court's finding, there is a near

---

[5] The standards for reconsideration among the civil and criminal rules are largely the same, and courts in this District frequently cite to cases decided under both civil and criminal rules when considering motions for reconsideration.  *See, e.g.*, *United States v. Lisi*, No. 15-cr-457 (KPF), 2020 WL 1331955, at *2 n.1 (S.D.N.Y. Mar. 23, 2020).

perfect identity of factual issues between the Bankruptcy Cases and this proceeding. Further, and more pressing, as illustrated through the new Indictment and recent filings, decisions in the Bankruptcy Cases run the risk of irrevocable prejudice to Mr. Kwok. The Bankruptcy Cases should be stayed as a result.

### (1) The Overlap Of Determinations Regarding Customer Assets

As an initial matter, the Court's decision suggests that the Court believed that it was relevant to its analysis that the Bankruptcy Cases had different burdens of proof and available remedies than this proceeding. (Order at 7-8 (noting that "[b]ankruptcy is an equitable remedy" and stating that determinations in the Bankruptcy Court "are not dispositive in Kwok's criminal case, which requires a higher burden of proof.").) Respectfully, if that interpretation of the Order is accurate, then that is an incorrect application of the law that would upset the foundation of the Court's decision—the law only requires an overlap in subject matter. *See Louis Vuitton*., 676 F.3d at 101. In fact, if it were the case that differing remedies and burdens negated a finding of overlap, then there could never be sufficient overlap between an SEC proceeding (which involves a preponderance standard and civil remedies) and a related criminal proceeding (which involves a beyond a reasonable doubt standard and criminal penalties). But as the Court is aware, stays of SEC proceedings in favor parallel criminal proceedings are routine in this Circuit—indeed, in this very case, the government successfully sought a stay of a parallel SEC case even though the SEC case involved a different burden of proof, fewer parties, and different remedies. (Motion at 25-28.) Thus, to the extent the Court's decision was based on that legal conclusion, Mr. Kwok respectfully submits that that would be clear error warranting reconsideration.

But even when considering the overlap in factual issues only, the expanded scope of the new Indictment, coupled with the Trustee's attempts to claw the seized Exchange funds into the

Bankruptcy Cases demonstrate the nearly perfect overlap (and conflict) between the Bankruptcy Cases and this proceeding.

*First*, the new Indictment confirms that the very same factual issues that are at play in this case are also a critical part of the Bankruptcy Cases.  In various filings, the Trustee has repeatedly litigated the issue of Mr. Kwok's purported control over entities at the heart of this case, including GTV, Saraca, G|CLUBS, and the Himalaya Exchange.  *See supra* at 5-6, 9-10.  That same issue forms the basis of the government's theory in this case—the Indictment repeatedly alleges that Mr. Kwok exercised control over these entities to cause them to inappropriately expend funds for his benefit.  (Indictment ¶¶ 3, 5.)  But in the new Indictment, the government has gone one step further, and has (ludicrously) alleged that Mr. Kwok's bankruptcy filing itself was a part of the racketeering activity giving rise to the RICO count.  (*Id.* ¶ 20.)  And the entities that comprised the RICO "enterprise," according to the government, are some of the very same entities that the Trustee claims should be part of Mr. Kwok's estate because they are his alter egos.  *See supra* at 9-10. Neither the Trustee or the government can run from the overlap when it is so transparent from the Indictment.

*Second*, the Trustee's extraordinary attempt to lay claim to the customer funds in the Himalaya Exchange bank accounts further demonstrates the unresolvable conflict between this case and the Bankruptcy Cases.  In particular, as the government has repeatedly asserted, the Exchange funds that are at issue in the Customer Action are funds that come from the customers (or users) of the Exchange— ███████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████  (*See* USAO_107396 ¶¶ 48-52, attached as Exhibit B to the Declaration of Matthew S. Barkan, submitted herewith).  Moreover, the government noted that it

"seized more than $600 million in proceeds of the charged crimes—including the Exchange Funds in question—to preserve those funds for later disbursement and restitution to victims" (Dkt. No. 188 at 3). Thus, a fact that the government, Mr. Kwok, and even the customers who filed the Customer Action can all agree on is that the funds seized by the government over which the Trustee now seeks control originated with the customers of the Exchange and not Mr. Kwok.[6]

The Trustee's response to the Customer Action, however, shows that these distinctions—such as to whom the money actually belongs—matter little to a Trustee who is determined to rapaciously gobble up assets into the Chapter 11 estate, where they can be used to fund the legal fees caused by his repeated overreach.[7] While extraordinary, the Trustee's position is fairly straightforward (and utterly baseless)—specifically, because he convinced the Bankruptcy Court to conclude (wrongly) that the Exchange was an alter ego of Mr. Kwok, the Trustee argues that the Exchange's assets belong to the Chapter 11 estate. (Trustee Response at 3.) The Trustee's position shows the overlap between these two cases. As discussed above, the issue of Mr. Kwok's control over the Exchange and its assets is central both to the Trustee's efforts and the government's allegations in this prosecution. (*Compare* Dkt. 202 at 3 (wherein the Trustee contends that the Himalaya Exchange was a "business vehicle" for Mr. Kwok) with Indictment ¶¶ 5(c) (listing six bank accounts associated with the Exchange as subject to forfeiture).) But moreover, the assets that the Trustee seeks to claim for distribution to, among others, parties that

---

[6] Mr. Kwok, of course, vehemently denies that he engaged in any fraud connected with the Exchange.

[7] The Trustee's claim that he is marshalling assets for the "legitimate creditors," of Mr. Kwok, coupled with his repeated use of scare quotes around the word "customers" when referring to the end-users of the Himalaya Exchange raises the serious specter that the Trustee may seek to disallow the Himalaya Exchanges customers' claims in bankruptcy. If that occurs, the purported victims (the users of the Himalaya Exchange) would receive nothing, and the Exchange Funds would flow exclusively to PAX and other creditors whom the Trustee deems "legitimate," in addition to the Trustee himself in the form of his fees.

were not customers of the Exchange and payment of his legal fees are the very same assets that the government claims should be distributed to the alleged victims of the Himalaya Exchange criminal counts as restitution.

This is not a distinction without a difference for Mr. Kwok. Under the government's theory, as shown through the new Indictment, all of Mr. Kwok's commercial activities were part of a greater criminal enterprise, the purpose of which was to obtain money and property of victims and to conceal and launder the proceeds of the alleged fraud. (Indictment ¶ 7.) Under that theory, *all* proceeds from *all* of the alleged entities should be subject to forfeiture in this Court. But, under the Trustee's theory, these same assets should be funneled to the Bankruptcy Cases. The U.S. Attorney's Office has previously noted that such a scenario "would risk detracting recovery to victims because funds otherwise available to return to victims by way of forfeiture would unnecessarily be used to pay the fees of a bankruptcy trustee." (Dkt. No. 50 at 1, *SEC v. Madoff, et al.*, No. 08 Civ. 10791 (S.D.N.Y. Apr. 10, 2009).) And permitting the Trustee to divert these funds in this manner would affirmatively prejudice Mr. Kwok in the event of a conviction because it would increase his restitution obligations—any amounts paid to the Trustee's fees or to non-victim creditors (like PAX) would not be credited as restitution in this proceeding. *See United States v. Yalincak*, 853 F.3d 629, 635 (2d Cir. 2017) ("Amounts recovered by a bankruptcy trustee for the benefit of the bankruptcy estate, and consumed in the administration of the estate or distributed to non-victim creditors, plainly are not recovered by the victims of a crime; only amounts actually distributed to the victim creditors fit that description.") (cleaned up).

*Third*, while the Court pointed to the SEC action as an example of a case with sufficient overlap to warrant a stay (Order at 9), the fact is that the Trustee's actions show that the Bankruptcy Cases have significantly more overlap with this case than the SEC action. In particular, the SEC

action focuses on the GTV Private Placement, *see SEC v. Kwok,* No. 23 Civ. 2200 (PGG) (S.D.N.Y.), Dkt. No. 1, ¶¶ 40-56, which is just one of the purported schemes alleged in the Indictment.   But the Trustee's pursuits range into essentially every scheme alleged in the Indictment—while the Trustee trumpets that he has recovered "more than $100 million in assets" on behalf of the Chapter 11 estate, the overwhelming majority of what he has recovered and seeks to recover are funds belonging to alleged victims in this case.   (Trustee Response at 2.)   In particular, of that of that $100 million, (i) $38 million comes from the seizure of funds in the name of a company called HCHK, which, according to the government's theory, constitutes proceeds from the purported Farm Loans scheme, and (ii) $37 million comes from the seizure of a loan from the Himalaya Exchange that was used as a bond in connection with the Yacht, *see supra* at 4-5,[8] which the government alleges comes from the purported Himalaya Exchange scheme.   (*See* Dkt. No. 19, at 9-11 (discussing the Farm Loan Program), at 18 (discussing transfer of $37 million).[9] Moreover, as the Court is aware, the Trustee is also seeking control over the Mahwah Facility, which is at heart of the alleged fraud involving G|CLUBS.   Thus, in other words, the Trustee is

---

[8] The Trustee falsely claims in his Response that Mr. Kwok admitted that the Yacht belonged to him in his recent renewed bail motion.   Mr. Kwok, of course, did no such thing, as the very language that the Trustee cites demonstrates.   Mr. Kwok merely stated is that he no longer has access to the Yacht that the government relied on in opposing Mr. Kwok's previous bail request. Plainly, having access to something and owning it are not the same thing.

[9] In other words, approximately 75% of the funds that the Trustee claims he has recovered for the Chapter 11 estate constitute monies that the government alleges properly belong to victims of the alleged schemes at issue, and should be distributed to alleged victims as criminal restitution in this proceeding.   The Trustee has expended nearly $25 million in fees in marshalling the assets of the Chapter 11 estate, meaning that (less purported victim monies) his efforts have yielded no tangible benefit for creditors.   Thus, even the Court's conclusion that the creditors will be harmed if the stay is granted is largely only true if the Trustee is permitted to continue to peel off victim assets from this case to fund his potential recovery.   And, to the extent the Court is concerned that Mr. Kwok's associates may have an opportunity to move assets, the fact is that the overwhelming bulk of the assets that the Trustee is targeting have already been seized by either him or the government, and thus cannot be dissipated.

seeking and has sought to litigate the issue of Mr. Kwok's control and the ownership of victim funds associated with the alleged fraud schemes related to GTV, the Farm Loans, G|CLUBS, and the Himalaya Exchange, *i.e.*, all of the fraud schemes alleged in the Indictment.  That is precisely the type of harm that a stay was intended to avoid.  *See Trustees of Plumbers & Pipefitters Nat. Pension Fund. v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138-39 (S.D.N.Y. 1995) (stay can avoid parallel litigation that may "impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case").  The new Indictment, coupled with Trustee's response to the Customer Action, and his absurd position therein, demonstrate the degree of overlap between the Bankruptcy Cases and this proceeding, and warrant staying the Bankruptcy Cases.

### (2)  The Overlap as to Mr. Kwok's Attorney-Client Privilege

In his Stay Motion, Mr. Kwok argued that the Trustee's control over his privilege in the Bankruptcy Cases posed a significant threat to Mr. Kwok's ability to defend himself not only because the Trustee may directly give privileged information to the government, but also because the Trustee could waive privilege over protected communications and then use them in a public lawsuit to which the government would have access.  In denying the motion, the Court concluded that Mr. Kwok's concerns were premature, that there was no evidence that the Trustee was engaged in such activity, and that the Privileges Order's carve-out for "unrelated criminal conduct" protected Mr. Kwok.  (Order at 11.).

Unfortunately, the Trustee's most recent Waiver Motion—which occurred after Mr. Kwok's stay motion was fully briefed, *see supra* at 7-8—belies the Court's conclusion.  Through his filing of the Waiver Motion, the Trustee has taken affirmative steps to vitiate Mr. Kwok's

attorney-client privilege in the Bankruptcy Cases.  Specifically, the Trustee seeks authority to use, materials that are subject to Mr. Kwok's privilege in a public adversary proceeding.  Thus, in other words, if the Trustee is successful, then those communications would become public and accessible to the government.  And, given that the adversary proceeding that the Trustee is pursuing concerns the same private jet mentioned in the Indictment (¶ 17(f)(i)) that underscores that the Trustee's interpretation of the Privileges Order affords Mr. Kwok no protection under the "unrelated criminal conduct" carve-out. [10]

The fact is that this cycle will continue for as long as the Bankruptcy Cases continue.  The Trustee has served subpoenas on more than twenty-five lawyers and law firms, meaning the Trustee will have access to a massive volume of privileged communications.  And given the Trustee's position that every entity relevant to the Indictment is under Mr. Kwok's control, it is likely that the Trustee will wish to use—as the Waiver Motion evidences—at least some of those privileged communications as the basis of public actions, thus giving the government access to otherwise protected information that pertains to the very subject matter of the government's charges (*i.e.*, Mr. Kwok's purported ability to control, for example, G|CLUBS or the Himalaya Exchange).  The Trustee's Waiver Motion thus undercuts the conclusion that Mr. Kwok's concerns about the Trustee's control over his privilege are theoretical or not ripe. [11]

---

[10] Further, contrary to the Court's reasoning, in practice the "unrelated criminal conduct" carve-out has proved ineffective law-firms and lawyers have produced materials to the Trustee without any opportunity for Mr. Kwok to assert privilege, and as a result, the Trustee (i) has had direct access to such materials and (ii) can seek relief from the Bankruptcy Court to use those materials in adversary proceedings.  Moreover, in light of the January 3, 2024 Superseding Indictment and the RICO Act charge, it is unclear what conduct, if any, could be considered "unrelated."

[11] While this Court shared its belief that the Bankruptcy Court would be able to protect Mr. Kwok from an invasion of the privilege, the Bankruptcy Court has left the Waiver Motion pending and avoided addressing the Trustee's use of such materials, meaning that this is still a live issue that the Trustee can exploit in the future.

## **CONCLUSION**

For the foregoing reasons, the Court should reconsider its prior Order and grant Mr. Kwok's request to stay the Bankruptcy Cases.


Dated: New York, New York
       January 4, 2024

PRYOR CASHMAN LLP

By: _____
     Sidhardha Kamaraju
     E. Scott Schirick
     Matthew S. Barkan
     Daniel J. Pohlman
     John M. Kilgard
     Clare P. Tilton

     7 Times Square
     New York, NY 10036
     (212) 421-4100
     skamaraju@pryorcashman.com
     sschirick@pryorcashman.com
     mbarkan@pryorcashman.com
     dpohlman@pryorcashman.com
     jkilgard@pryorcashman.com
     ctilton@pryorcashman.com

     Sabrina P. Shroff
     80 Broad Street, 19th Floor
     New York, NY 10004
     (646) 763-1490

     *Attorneys for Defendant Ho Wan Kwok*