

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2024

**VIA ECF AND EMAIL**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *United States v. Kwok, et al.*, S2 23 Cr. 118 (AT)

Dear Judge Torres:

    The Government writes in response to several recent unsolicited filings by Bradford Geyer, who does not represent any party to this criminal action, but rather claims to represent, individually, thousands of customers of the Himalaya Exchange (the "Petitioners"), whose identities he does not appear to know and with whom he may not have even communicated.[1]  For the reasons set forth in the Government's December 7, 2023 letter (Dkt. 188), Mr. Geyer's filings are improper, and his motion should be denied for lack of jurisdiction.

---

[1] Given that Mr. Geyer claims to represent over five thousand people (not as a class, but individually) whose identities he does not appear to know and with whom he does not appear to communicate, it is not clear who is directing Mr. Geyer.  It does seem clear, however, that Petitioners' counsel is working closely with the Himalaya Exchange, an instrumentality of the Kwok Enterprise that was founded and is owned by a currently-at-large international fugitive, defendant Kin Ming Je.  Indeed, the Government has learned that the Himalaya Exchange appears to have notified all its registered customers (*i.e.* victims of the Himalaya Exchange) to file a claim with Petitioners' counsel. (*See* Ex. A.)  Petitioners' counsel, in turn, manages a website in which individuals fill out a form and provide their Himalaya customer ID number (and apparently no other identifying information) to become a "client" of Petitioners' counsel.  *See* https://himalayarestoration.com/customers/.  That website underscores that counsel does not need "to know the personal identity" of the client.  Counsel then, apparently, "verifies" the client's ID number with the Himalaya Exchange, which makes it clear that counsel is in consultation with the Himalaya Exchange and that the Himalaya Exchange is promoting counsel's work.  These facts alone warrant caution as to Mr. Geyer's claims to represent the interests of thousands of individuals in making a claim to lawfully seized fraud proceeds in this criminal case, in which Je is a charged defendant—and, indeed, a defendant who is charged with attempting to obstruct the Government's seizures themselves.  (Dkt. 215 (Indictment) ¶¶ 21-23.)  In any event, for the reasons set out here and the Government's initial letter, Mr. Geyer's filings are without merit.

The law governing claims to forfeitable assets is clear: non-parties to a criminal action may petition a court for an ancillary hearing to adjudicate their claims to forfeitable property "[f]ollowing the entry of an order of forfeiture." 21 U.S.C. § 853(n)(1) (procedure for third party interests); *see also* Fed. R. Crim P. 32.2(b)(1) ("as soon as practical after a verdict or finding of guilty. . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute"). This process will take place following any conviction in the trial set to begin in approximately three months. Mr. Geyer seeks to upend this well-settled procedure, followed in every criminal case, by filing a motion under Rule 41(g) for return of property prior to trial. The law is clear, however, that the Court lacks jurisdiction to grant Petitioners' motion.

Mr. Geyer does not dispute that this Court has power to grant the motion only by exercising equitable jurisdiction. (Dkt. 186-1 at 15 ("Rule 41(g) motion is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction.")) As Mr. Geyer acknowledges, that extraordinary exercise of jurisdiction is appropriate only when (1) the movant has "no adequate remedy at law" and (2) "the equities favor the exercise of jurisdiction." *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006). When assessing jurisdiction, the Second Circuit has advised district courts that "[j]urisdiction under Rule 41 is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials." *Id.* at 382 (internal quotation marks omitted) (citing *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988) and *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974)). Mr. Geyer makes no argument and offers no authority (aside from cases setting out the standard itself), to demonstrate that he can meet these standards. That is because the Petitioners clearly have an adequate remedy at law: namely, criminal forfeiture proceedings. This Court thus lacks jurisdiction to grant Mr. Geyer's motion.[2]

Finally, it bears emphasis that the Government seized funds in this case—pursuant to court-authorized seizure warrants based on a judicial finding that the funds were the proceeds of fraud—in order to prevent the funds' dissipation and preserve the funds for eventual return to victims. Specifically, on September 18, 2022, September 20, 2022, and October 16, 2022, the Government filed applications with U.S. Magistrate Judge Stewart D. Aaron to seize the contents of several bank accounts, including accounts holding funds that are the subject of Mr. Geyer's motion. The Government sought the seizure warrants after learning—on September 16, 2022—that approximately $49 million was going to be transferred out of a bank account holding victim funds. The Government viewed that wire as a potential liquidation event that would have frustrated the

---



[2] Moreover, denial of the motion would be consistent ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ provided to the Court as Exhibit B.

recovery of victim funds at a later date. Each of the Government's seizure warrant applications was supported by a corresponding affidavit from a Special Agent of the FBI. Magistrate Judge Aaron authorized the seizure warrants, which were served on the relevant financial institutions, and the funds were transferred to the Government. Those funds are preserved in Government-controlled accounts until their disposition to victims can be adjudicated by this Court.

\* \* \*

The Government wishes to state unequivocally that its goal is to return the money that Kwok and his criminal enterprise stole to victims of the charged offenses. The Government intends to handle the disbursement of funds to victims in the same way it handled the seizure of those funds—in accordance with the laws regarding forfeiture and restitution.

Accordingly, this Court should deny Mr. Geyer's motion, order that Mr. Geyer cease lodging unsolicited filings on this docket, and handle forfeiture and restitution at the appropriate stage in the case— *i.e.*, following the trial set to begin later this year.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Ryan B. Finkel
Juliana N. Murray
Micah F. Fergenson
Justin Horton
Assistant United States Attorneys
(212) 637-6612 / 2314 / 2190 / 2276