**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

     v.

YANPING WANG,

         Defendant.

23 Cr. 118-3 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT YANPING WANG'S MOTIONS *IN LIMINE***

Brendan F. Quigley
Sarah Reeves
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, N.Y. 10112
Tel: (212) 408-2520
brendan.quigley@bakerbotts.com
sarah.reeves@bakerbotts.com

*Attorneys for Yanping Wang*

**<u>TABLE OF CONTENTS</u>**

**Page**

GENERALLY APPLICABLE LAW ........................................................................... 1

DISCUSSION ......................................................................................................... 1

I.      The Court Should Exclude Evidence that Fund-1 Allegedly "Ultimately . . . Lost Approximately $30 Million in Value".............................................................. 1

II.     The Court Should Prohibit the Government from Using the Terms "Shell Company," "Figurehead Executives," "Straw Owners," or Similar Terms.......................... 4

        A.      Applicable Law.................................................................................... 4

        B.      Discussion ........................................................................................... 5

III.    The Court Should Prohibit the Government from Arguing that the GTV Private Placement was an Improper Unregistered Offering......................................... 6

IV.     The Court Should Exclude Evidence of Ms. Wang's Compensation and the Purchase of Ms. Wang's Apartment......................................................................... 9

        A.      Applicable Law.................................................................................... 9

        B.      Discussion ......................................................................................... 10

V.      The Court Should Preclude the Government from Asking Improper Materiality Questions ............................................................................................................ 12

VI.     Judicial Findings in Other Proceedings Should Be Precluded.......................... 14

VII.    ████████████████████████████████████████ ................. 16

VIII.   Ms. Wang Reserves the Right to File Additional Motions in Limine .............. 17

CONCLUSION..................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Arlio v. Lively,*
    474 F.3d 46 (2d Cir. 2007).................................................................................1

*Carroll v. Trump,*
    No. 20-CV-7311 (LAK), 2024 WL 97359 (S.D.N.Y. Jan. 9, 2024) .....................17

*Chiarella v. United States,*
    445 U.S. 222 (1980)..........................................................................................14

*Davis v. Washington,*
    547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)......................................15

*Fountain v. United States,*
    357 F.3d 250 (2d Cir. 2004)................................................................................2

*Kleinman* v. *Elan Corp., Plc,*
    706 F.3d 145 (2d Cir. 2013)..............................................................................14

*Matrixx Initiatives, Inc.* v. *Siracusano,*
    131 S.Ct. 1309 (2011)......................................................................................14

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP,*
    232 F. Supp. 3d 558 (S.D.N.Y. 2017)..................................................................5

*of Platt Fam. Artwork Tr. v. Michaan,*
    No. 19-CV-4234 (ER), 2023 WL 6292770 (S.D.N.Y. Sept. 27, 2023)...................15

*Old Chief v. United States,*
    519 U.S. 172 Ct. 644 (1997) ...............................................................................5

*Sec. & Exch. Comm'n v. Jensen,*
    No. CV 11-5316-R, 2013 WL 12129377 (C.D. Cal. Mar. 13, 2013) .......................3

*United States v. Butler,*
    No. 08CR370 JBW RER, 2010 WL 1692882 (E.D.N.Y. Apr. 27, 2010) ................3

*United States v. Connolly,*
    24 F.4th 821 (2d Cir. 2022) ..............................................................................12

*United States v. Cruz,*
    894 F.2d 41 (2d Cir. 1990).................................................................................15

*United States v. Ferguson*,
No. 06-cr-137 (CFD), 2007 WL 4240782 (D. Conn. Nov. 30, 2007) ..............................10, 12

*United States. Gaudin* ...................................................................................................................12

*United States v. Helbrans*,
No. S2 19-CR-497 (NSR) (01) (02), 2021 WL 4778525 (S.D.N.Y. Oct. 12, 2021) ................5

*United States v. Massino*,
546 F.3d 123 (2d Cir. 2008) ....................................................................................................1

*United States v. Miller*,
471 U.S. 130 (1985) .................................................................................................................8

*United States v. Milstein*,
401 F.3d 53 (2d Cir. 2005) ..................................................................................................7, 8

*United States v. Perryman*,
No. 23CR117 (DLC), 2024 WL 639332 (S.D.N.Y. Feb. 15, 2024) .......................................1

*United States v. Rigas*,
490 F.3d 208 (2d Cir. 2007) ................................................................................................7, 8

*United States v. Shapiro et al*,
No. 15-cr-155 (RNC) (D. Conn. Apr. 24, 2017), ECF No. 372 .............................................9

*United States v. Stahl*,
616 F.2d 30 (2d Cir. 1980) ....................................................................................................10

*United States v. Vilar*,
729 F.3d 62 (2d Cir. 2013) .................................................................................................2, 12

*United States v. White*,
692 F.3d 235 (2d Cir. 2012), *as amended* (Sept. 28, 2012) ...................................................1

## OTHER AUTHORITIES

U.S. Const. Amend. VI ...................................................................................................................15

Fed. R. Evid. 401 .........................................................................................................................1, 3

Fed. R. Evid. 402 ...........................................................................................................................1

Federal R. of Evid. 403 ......................................................................................................1, 3, 4, 16

Fed. R. Evid. 801 ..........................................................................................................................15

Defendant Yanping Wang respectfully submits this memorandum in support of her motions *in limine*.

## GENERALLY APPLICABLE LAW

Pursuant to the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if it has "'any tendency to make a [material] fact more or less probable than it would be without the evidence.'" *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012), *as amended* (Sept. 28, 2012) (quoting Fed. R. Evid. 401). "A material fact is one that would affect the outcome of the suit under the governing law." *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (internal punctuation and citation omitted).

Even where evidence is relevant, Federal Rule of Evidence 403 empowers courts to "exclude [the] evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The term unfair prejudice refers 'to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *United States v. Perryman*, No. 23CR117 (DLC), 2024 WL 639332, at *2 (S.D.N.Y. Feb. 15, 2024) (quoting *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008)).

## DISCUSSION

### I.    The Court Should Exclude Evidence that Fund-1 Allegedly "Ultimately . . . Lost Approximately $30 Million in Value"

The operative Indictment alleges that the defendants "misappropriated approximately $100 million raised from investors in the GTV Private Placement and directed that those funds be placed with a high-risk hedge fund . . ." and "[u]ltimately, the investment into Fund-1 lost approximately $30 million in value." S2 Indictment, ECF No. 215 ¶ 16(h) ("S2 Indictment"). The GTV Private

Placement forms the basis for the substantive securities and wire fraud charges in Counts Five and Six, *see id.* ¶¶ 41-44, and the transfer of the $100 million forms the basis for the unlawful monetary transaction charge in Count Twelve, *see id.* ¶¶ 57-58.

The Court should preclude argument or evidence concerning the "los[s]" allegedly "ultimately" suffered by Fund-1. *Id.* ¶ 16(h). "Loss" is not an element of either the substantive mail or wire fraud offenses charged in Counts Five and Six. *See Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (explaining that "the essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme" (internal punctuation, citation, and alteration omitted)); *United States v. Vilar*, 729 F.3d 62, 92 (2d Cir. 2013) ("to convict a defendant of securities fraud under Section 10(b) and Rule 10b–5, the government must prove that in connection with a domestic purchase or sale of a security the defendant willfully made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device"). Nor is "loss" an element of the unlawful monetary transaction charge[1]

Additionally, there is no allegation that Ms. Wang was somehow enriched by, or benefited from, the money that was transferred to Fund-1. Indeed, the S2 Indictment specifically alleges that the "vast majority of the proceeds derived from investors in the GTV Private Placement . . . were deposited directly into bank accounts held in the name of Saraca, GTV's parent company, which is beneficially owned by Relative-1." S2 Indictment ¶ 16(f). Accordingly, any evidence that Fund-

---

[1] *See* Modern Federal Jury Instructions, Instr. 50A-26 (elements are (i) "that the defendant engaged (or attempted to engage) in a monetary transaction in or affecting interstate commerce," (ii) "that the monetary transaction involved criminally derived property of a value greater than $10,000," (iii) "that the property was derived from specified unlawful activity," (iv) "that the defendant acted knowingly that is, with knowledge that the transaction involved proceeds of a criminal offense," and (v) "that the transaction took place in the United States (or the defendant is a United States person, as I will define that term for you).").

1 lost $30 million does not impact *any* material fact and is therefore irrelevant to the instant proceedings and should be excluded. *See Sec. & Exch. Comm'n v. Jensen*, No. CV 11-5316-R, 2013 WL 12129377, at *6 (C.D. Cal. Mar. 13, 2013) ("Defendant argues the SEC should be prohibited from referencing his alleged nine million dollar profits because, as evidenced by the opinions of both experts, the nine million dollar figure does not reflect the effect of Defendant's alleged misrepresentations. The Court agrees. Thus, any reference to nine million dollars in profits is prohibited under Federal Rule of Evidence 401 as it is irrelevant, and under Federal Rule of Evidence 403 as its probative value is outweighed by a danger of unfair prejudice and confusing the issue of violations of SEC requirements."); *United States v. Butler*, No. 08CR370 JBW RER, 2010 WL 1692882, at *3 (E.D.N.Y. Apr. 27, 2010) (observing, in context of securities fraud and wire fraud prosecution, that the "victim's loss. . . does not constitute an element of any of these crimes and is, therefore, irrelevant to the determination of the case.").

Even if the Court were to find relevant the evidence that Fund-1 "ultimately" lost $30 million, it should still exclude that evidence as the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues, such as the investment strategy employed by Fund-1 and the market or other conditions that ultimately caused the alleged loss. As discussed above, the loss of some of the proceeds invested into Fund-1 is not an element of any of the relevant charges. Evidence of this alleged, "ultimate[]" loss would serve only to distract the jury assessing whether the government has proved each element of the charged offenses beyond a reasonable doubt and should be precluded.

3

II.    **The Court Should Prohibit the Government from Using the Terms "Shell Company," "Figurehead Executives," "Straw Owners," or Similar Terms**

The government has repeatedly used the terms "shell company," "figurehead executives," "straw owners," and other similar terms when describing the businesses allegedly associated with Defendants. *See* Gov't Opp'n to Motion for Bail, ECF No. 26 at 8 ("as a review of the bankruptcy docket indicates, Kwok has acted through others and a network of shell companies . . ."); Gov't Opp'n to Motion for Bond Determination, ECF No. 42 at 7 n.5 ("HCHK Technologies—a Kwok-controlled company that the defendant effectively owns through her BVI-registered shell company—sent employees . . . ."); Gov't Opp'n to Motion for Order Revoking Order of Detention, ECF No. 89 at 7 n.4 ("Wang held 99.9999% of the shares of the HCHK entities through her BVI-registered shell company . . . ."); *id.* at 29 ("By design, most of these shell companies were owned or operated by others on paper . . ."); Gov't Reply Memo in Opp'n to Pretrial Release, ECF No. 192 at 3 ("Gettr (a social media company that Kwok controls through a series of shell companies) . . ."); S2 Indictment ¶ 20 ("As another example, the defendants installed figurehead executives and/or straw owners at the entities within the Kwok Enterprise . . .").

The use of such phrases is unnecessary as it merely communicates a conclusion about these companies and individuals to the jury and will prove unfairly prejudicial to Defendants.

A.  **Applicable Law**

As explained above, Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "[U]nfair prejudice" in the context of criminal defendants "speaks to the capacity of some concededly relevant evidence to lure the factfinder into

declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117 Ct. 644, 650 (1997).

Courts frequently preclude the use of potentially charged or pejorative terms due to the danger of unfair prejudice. *See, e.g.*, *United States v. Helbrans*, No. S2 19-CR-497 (NSR) (01) (02), 2021 WL 4778525, at *17 (S.D.N.Y. Oct. 12, 2021) (prohibiting the government from "refer[ring] to the Lev Tahor community or its leaders as members of a 'cult'" or "insinuat[ing] that leaders brainwash or force members of the community to behave in or observe their religion in a certain way" where such suggestions and characterizations did not "provide context more necessary than it [was] prejudicial"); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 570 (S.D.N.Y. 2017) ("courts often prohibit the use of certain pejorative terms when such categorizations [are] inflammatory and unnecessary to prove a claim and such statements do not bear on the issues being tried" (internal punctuation and citation omitted)).

## B. Discussion

Here, the use of the terms "shell company," "figurehead executives," and "straw owners," or other similar terms is clearly prejudicial as the terms communicate a conclusion to the jury, *i.e.*, that these were illegitimate companies or that they were used for nefarious purposes. Indeed, in *United States v. Watts*, Eastern District Judge Matsumoto found that "the terms 'shell company' or 'shell corporation' could be perceived to have a pejorative meaning" and prohibited the government from using them. 934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013). The court found that there was "[n]o evidentiary value . . . added by allowing . . . witness[es] to use those terms" and instructed the government "to expressly instruct its witnesses to avoid use of the terms 'shell corporation' or 'shell company' at trial." *Id.*

The Court should do the same here. In all the examples listed above, there was no probative value in the use of any of these terms. For example, where the government claimed that "Wang

held 99.9999% of the shares of the HCHK entities through her BVI-registered shell company," Gov't Opp'n to Motion for Order Revoking Order of Detention, ECF No. 89 at 7 n.4, it could have merely alleged that Wang held 99.9999% of the shares of HCHK entities through her BVI-registered company. The use of the word "shell" adds no probative value to this sentence and is simply designed to create unfair prejudice and suggest a conclusion to the jury. Accordingly, the Court should prohibit the government from using the term "shell company," "figurehead executives," "straw owners," and other similarly pejorative terms.

### III.     The Court Should Prohibit the Government from Arguing that the GTV Private Placement was an Improper Unregistered Offering

As alleged, the GTV Private Placement took place in or about the spring of 2020. In the "speaking" portion of the S2 Indictment, the government notes "[t]he GTV Private Placement was not made pursuant to a registration statement filed with the U.S. Securities and Exchange Commission ('SEC'). Rather, the offering was purportedly made pursuant to SEC regulations that permit the sale of unregistered securities subject to limitations on the type of investors to whom the securities are offered and the manner in which their investments may be solicited." S2 Indictment ¶ 16(g).[2] The government asserts that these limitations were not followed and that Mr. Kwok "and others under his control used at least one intermediary entity to purchase GTV stock on behalf of pools of investors who did not individually qualify to participate in the GTV Private Placement." *Id.*

---

[2] Indeed, the GTV Private Placement memoranda disclosed that "████████████████████ ███████████████████████████████████████████████████████████████ ███████████████ Ex. A (USAO-REL_000105165).

However, the substantive securities fraud count relating to GTV in the S2 Indictment alleges that the defendants "conducted the GTV Private Placement to sell GTV stock and obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money," *see* S2 Indictment ¶ 44, not that the defendants violated the securities laws by engaging in an unregistered, non-exempt offering. Accordingly, the Court should prohibit the government from arguing that the GTV Private Placement was an improper unregistered offering because doing so risks a constructive amendment to the S2 Indictment, a prejudicial variance, and confusion of the issues.

"An indictment has been constructively amended when the trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment." *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (internal punctuation, alteration and citation omitted). For example, in *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005), the Court of Appeals found a constructive amendment when an indictment alleged that the defendant had distributed misbranded drugs based on an alleged forgery or falsification of the packaging material, but the government then later argued at trial that the defendant misbranded the drugs because they were allegedly not sterile. *Id.* at 65 ("[W]e are persuaded that the indictment, charging Milstein with misbranding due to his repackaging of the drugs, was constructively amended when the Government alleged that the drugs were misbranded because they were not sterile.").

"Alternatively, a variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Rigas*, 490 F.3d at 226 (internal punctuation, alteration and citation omitted). In order for a variance to warrant reversal, a defendant "must show substantial prejudice." *Id.* (internal punctuation omitted).

Here, the S2 Indictment's charging language related to the GTV Private Placement refers to the alleged misappropriation of proceeds from the offering, not the unregistered nature of the offering. *See* S2 Indictment ¶¶ 42, 44. As in *Milstein*, allowing the government to argue or suggest that the defendants committed securities fraud because the offering was allegedly unregistered and not subject to any exemption would impermissibly "'broaden [ ] the possible bases for conviction from that which appeared in the indictment,'" *Milstein*, 401 F.3d at 65 (quoting *United States v. Miller*, 471 U.S. 130, 138 (1985)) (explaining that when this happens, "the indictment has been constructively amended"). And even if not necessarily a constructive amendment, proof or argument to the jury regarding the unregistered nature of the offering and evidence concerning the exemptions to registration would risk a potential prejudicial variance, because that evidence would be "materially different from [the basis of the charges related to GTV] alleged in the indictment." *Rigas*, 490 F.3d at 226. Further, given the complex nature of exemptions from the registration requirement under the securities laws, focusing the jury on issues surrounding whether the offering was exempt or not (and who bears the blame for it losing any potentially applicable exemption) would risk confusing the issues at trial.

As such, the Court should preclude the government from arguing or from introducing evidence that the GTV Private Placement was an improper unregistered offering because doing so risks a constructive amendment to the S2 Indictment, prejudicial variance, and confusion of the issues.

**IV.**   **The Court Should Exclude Evidence of Ms. Wang's Compensation and the Purchase of Ms. Wang's Apartment**

The original indictment filed by the government against Ms. Wang contained no allegation that investor money went to Ms. Wang, or that she personally benefitted from the alleged scheme in any way. We noted this in our pre-trial motion for severance filed on December 15, 2023. Memorandum, ECF No. 197 at 23, 25. Two and a half weeks later, the government responded in the S2 Indictment on January 3, 2024, by alleging that Ms. Wang "was paid at least approximately $500,000 per year, was gifted an approximately $1.1 million-dollar Manhattan condominium, and was promised millions of dollars' worth of a purported cryptocurrency." S2 Indictment ¶ 5.

After Ms. Wang moved for, and the Court granted in part, her motion for a bill of particulars, *see* Order, ECF No. 251, the government disclosed that the "$1.1 million condo" was allegedly gifted to Ms. Wang on February 21, 2020, *see* Ex. B (Dates of Transfers), *i.e.*, months *before* the GTV Private Placement offering, implementation of the G Clubs membership, and the Farm Loan program. *See* S2 Indictment ¶ 16 (describing the GTV Private Placement offering as occurring between about April 2020 and June 2020), ¶ 17.a.-e. (describing the purported Farm Loan scheme as beginning in or about June 2020 and going through, at least, August 2020), ¶ 18 (describing the G|Clubs scheme as running from at least June 2020 through at least March 2023).[3]

**A. Applicable Law**

Evidence of a defendant's compensation *may* be relevant only if the government can link that compensation to the proceeds of fraudulent activities. *See* Tel. Conf. Tr. 20:5-13, *United States v. Shapiro et al*, No. 15-cr-155 (RNC) (D. Conn. Apr. 24, 2017), ECF No. 372 (attached as Ex. C) (granting defendants' motion in limine to exclude evidence of defendants' compensation because

---

[3] Ms. Wang is not charged in the Himalaya Exchange counts.

"[t]he total compensation numbers themselves don't tell us to what extent the defendants' compensation was based on profits derived from fraudulent activities . . . [and] [t]here is no indication that the government will offer evidence of what the defendants' total compensation would have been without the fraudulent trades"); *see also United States v. Ferguson*, No. 06-cr-137 (CFD), 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) (precluding evidence of defendant's salary and bonuses because they "were not affected by AIG's stock price," but allowing evidence of deferred compensation plan to support motive because the company's performance effected the defendant's benefits).

Courts have rejected attempts by the government to introduce evidence of a defendant's compensation where there is no such link, because such evidence is irrelevant to the charges at hand and risks biasing the jurors. *See, e.g.*, *United States v. Stahl*, 616 F.2d 30, 31-33 (2d Cir. 1980) (finding prosecutor had "impermissibly equate[d] success, affluence and a single minded occupation with one's business affairs with greed and corruption," and made "a persistent appeal to class prejudice" warranting reversal of defendant's conviction of conspiring and aiding and abetting the bribery of a government official "[b]ecause such appeals are improper and have no place in the court room"); *Ferguson*, 2007 WL 4240782, at *1 (excluding compensation evidence that was "irrelevant to the charges" and "not probative of any financial incentive" the defendant may have had to participate in the alleged scheme).

## B. Discussion

Here, there is no basis to conclude that Ms. Wang's apartment purchase or her salary were derived from proceeds of the frauds alleged in the S2 Indictment.

As for the apartment, the government's recent bill of particulars confirms it was purchased on February 21, 2020, *see* Ex. B (Dates of Transfers), meaning it pre-dates by months each of the three alleged fraud schemes in which Ms. Wang is charged (the GTV Private Placement, the

10

G|Clubs matter, and the Farms Loans matter). *See* S2 Indictment ¶¶ 16-18. Thus, it is impossible for the condo to have been purchased with "profits derived from fraudulent activities" that had not even begun. In addition, notably, the indictment uses the passive voice ("was gifted") and does not actually allege the "gift" came from Mr. Kwok, Mr. Je, or anyone else connected to the alleged fraudulent scheme. *See* S2 Indictment ¶ 5.

As for Ms. Wang's salary, the government is similarly unable to connect it to the charged fraud schemes to show that it was derived from fraud proceeds or that it served as motive to engage in the purported fraudulent schemes at issue. Each of the frauds Ms. Wang is alleged to have engaged in occurred in 2020. *See* S2 Indictment ¶¶ 16-18. That year, her salary was ████████,[4] a modest increased from the ██████████ the year before.[5]

Further, as may be obvious from the government's inability to link Ms. Wang's salary to the fraudulent proceeds, the government has also failed to raise any allegations as to what Ms. Wang's salary would be without the alleged fraudulent proceeds. Moreover, by 2020, Ms. Wang had worked for the Kwok family for approximately ten years, long before the alleged fraudulent scheme began in 2018. Accordingly, the government has not, and cannot, show that the salary Ms. Wang received during over a decade of work for the Kwok family is directly tied to, or was derived from, fraudulent proceeds of the purported fraudulent enterprise, when no alleged misappropriation from investors occurred before 2020. Further, unlike the deferred compensation plan in *Ferguson*, Ms. Wang's salary was not tied to the performance of the business, and therefore, cannot be used to show motive.

---

[4] *See* Ex. D (USAO-REL_000005370 at 5428).

[5] *See* Ex. E (USAO-REL_000005664 at 5699).

Because the government has not tied either Ms. Wang's salary or her Manhattan condo to the proceeds of the alleged scheme, evidence of her salary is irrelevant to the charges at hand and risks biasing the jurors. Accordingly, this evidence should be excluded.

## V.    The Court Should Preclude the Government from Asking Improper Materiality Questions

The Court should preclude the government from asking improper materiality questions, divorced from the misrepresentations the government contends were fraudulent. Materiality is an element of both the securities fraud and wire fraud charges in the S2 Indictment. *See United States v. Connolly*, 24 F.4th 821, 833 (2d Cir. 2022) ("[T]o come within the federal fraud statutes, a 'scheme to defraud' must have employed a falsehood that was 'material.'" (emphasis and internal punctuation omitted)); *Vilar*, 729 F.3d at 92 ("[T]o convict a defendant of securities fraud under Section 10(b) and Rule 10b–5, the government must prove that in connection with a domestic purchase or sale of a security the defendant willfully made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device.").

The Supreme Court has explained that the question of materiality consists of three questions: (1) "what statement was made;" (2) "what decision was the [recipient of the statement] trying to make;" and (3) "whether the statement was material to the decision." *United States. Gaudin*, 515 U.S. 506, 512 (1995) (internal punctuation omitted). In order for the statement to have been material to the decision, it "must have a natural tendency to influence, or be capable of influencing, the decision of the [decisionmaker] to which it was addressed." *Id.* at 509 (internal punctuation, alteration and citation omitted).

Here, the question for the jury will be whether the statements made in connection with the GTV Private Placement, the Farm Loan Program, G|Clubs, and the Himalaya Exchange were material to potential investors considering whether to invest. Accordingly, the government must

(1) identify the statements it alleges were misleading, and (2) establish that these statements were in fact material to potential investors.

Here, it is worth noting that the government has largely failed to indicate the actual statements it alleges were fraudulent (and thus potentially material) in connection with GTV Private Placement, the Farm Loan Program, G|Clubs, and the Himalaya Exchange. *See* S2 Indictment ¶ 42 (alleging defendants "conducted the GTV Private Placement to sell GTV stock and fraudulently obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money . . ."), ¶ 44 (alleging defendants made "conducted the GTV Private Placement to sell GTV stock and obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money . . ."), ¶ 46 (alleging defendants "conducted the Farm Loan Program to fraudulently obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money . . ."), ¶ 48 (alleging defendants "conducted the Farm Loan Program to obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money . . ."), ¶ 50 (alleging defendants "promoted and marketed G|CLUBS to fraudulently obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money . . ."), ¶ 52 (alleging defendants "promoted and marketed G|CLUBS to obtain money from victims through false statements and misrepresentations, including regarding, among other things, the purpose and use of victims' money . . .").[6]

---

[6] Again, while the speaking portion of the indictment contains some apparent specific examples of alleged misrepresentations, none of this detail appears in the actual statutory allegations. *See, e.g.*, S2 Indictment ¶ 8(a); ¶ 16(.a-d); *id.* ¶ 17; *id.* ¶ 18(e); *id.* ¶ 19(i).

As such, the government should be precluded from asking investors or other witnesses general hypothetical questions, such as "would you have liked to know [x]" or "would [x] have been important to you," without reference to alleged promises or statements that were actually made to investors or others in connection with alleged investments at issue. To allow otherwise would run afoul of *Gaudin*'s caution that "materiality" requires "the determination of at least two subsidiary questions of purely historical fact: (a) 'what statement was made?' and (b) 'what decision was the [individual] trying to make,' 515 U.S. 512, and impermissibly risks a conviction based on a supposed, non-existent, open-ended duty to disclose. *See Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak."); *Kleinman* v. *Elan Corp., Plc*, 706 F.3d 145, 153 (2d Cir. 2013) ("Disclosure is required . . . only when necessary 'to make statements made, in the light of the circumstances under which they were made, not misleading.'") (quoting *Matrixx Initiatives, Inc.* v. *Siracusano*, 131 S.Ct. 1309, 1321 (2011)).

**VI.**     <u>**Judicial Findings in Other Proceedings Should Be Precluded**</u>

In support of its arguments in this case, the government has repeatedly cited findings by the bankruptcy judge in the District of Connecticut presiding over Mr. Kwok's bankruptcy as well as other courts' findings. *See, e.g.*, Gov't Letter to Court, Mar. 31, 2024, ECF No. 255 at 8 (citing "finding[s] . . . 'of other courts'" concerning Mr. Kwok); Gov't Opp'n to Wang Pre-Trial Release, June 20, 2023, ECF No. 89 at 34-36 (discussing Mr. Kwok's conduct in the bankruptcy proceeding).

The Court should prohibit the government from introducing findings in other judicial proceedings in this trial. Rule 801 of the Federal Rules of Evidence precludes the introduction of hearsay, *i.e.*, a statement that "the declarant does not make while testifying at the current trial or hearing; and [that] a party offers in evidence to prove the truth of the matter asserted in the

14

statement." Fed. R. Evid. 801(c)(1)-(2). Absent the application of a relevant hearsay exception, such statements are inadmissible at trial. *See, e.g.*, *Platt as co-trustees of Platt Fam. Artwork Tr. v. Michaan*, No. 19-CV-4234 (ER), 2023 WL 6292770, at \*13 (S.D.N.Y. Sept. 27, 2023).

*First*, findings by other courts are hearsay, as they are out of court statements that the government may seek to offer for the truth of the matter asserted (*i.e.*, that one or more defendants was found to have violated court orders or was lacking in credibility). Notably, the government routinely argues that prior credibility findings against law enforcement officers and other witnesses are not admissible. *See*, *e.g.*, *United States v. Cruz*, 894 F.2d 41, 43-44 (2d Cir. 1990) (finding no abuse of discretion in district court's refusal to admit prior adverse credibility finding made against government information).

*Second*, in addition to violating the hearsay provisions of the Federal Rules of Evidence, prior judicial findings would also run afoul of the Sixth Amendment's Confrontation clause if offered against a criminal defendant. U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). Judicial findings are similar to the type of formal, solemn declarations that have been found to be "testimonial" and thus fall within the Confrontation clause. *See, e.g.*, *Davis v. Washington*, 547 U.S. 813, 826, 126 S. Ct. 2266, 2276, 165 L. Ed. 2d 224 (2006); *see also id.* 547 U.S. at 836 (Thomas, J. concurring in the judgment in part and dissenting in part) (citing as examples "affidavits, depositions, prior testimony, or confession" (internal punctuation and citation omitted)).

Accordingly, the Court should preclude the government from introducing prior judicial findings against the Defendants.



**VIII.**   **Ms. Wang Reserves the Right to File Additional Motions *in Limine***

Finally, particularly since the government has neither completed Rule 16 discovery nor furnished its exhibit list, witness list, or 3500 material, nor provided any notice of "other acts"

17

evidence under Rule of Evidence 404(b), Ms. Wang reserves the right to make further motions *in limine* following the government's production of these materials.

## CONCLUSION

For the reasons outlined above, the Court should grant Ms. Wang's motions *in limine*.

Dated: April 9, 2024                    Respectfully submitted,

                                        BAKER BOTTS L.L.P.

                                        */s/ Brendan F. Quigley*
                                        Brendan F. Quigley
                                        Sarah Reeves
                                        30 Rockefeller Plaza
                                        New York, N.Y. 10112
                                        Tel: (212) 408-2500
                                        brendan.quigley@bakerbotts.com
                                        sarah.reeves@bakerbotts.com

                                        *Attorneys for Yanping Wang*