# EXHIBIT A

1

2

UNITED STATES BANKRUPTCY COURT
3   DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION
4   ----------------------------------------------------x

5   IN RE:                          Chapter 11

6   HO WAN KWOK,            Case No: 22-50073 (JAM)

7            Debtor.

8   ----------------------------------------------------x

9

10

           VIDEOTAPED DEPOSITION OF ██████████
11

12                  Seven Times Square

13                  New York, New York

14
                   November 11, 2022
15
                     9:23 a.m.
16

17

18            * HIGHLY CONFIDENTIAL *

19

20   This transcript portions contains information subject

21      to a Protective Order and shall be used only in

22                 accordance therewith.

23

24   Reported By:
     Cheryll Kerr, CSR
25   Job No. 219537

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002123
USAO-REL_001596991

Page 2

```
 1
 2   UNITED STATES BANKRUPTCY COURT
     DISTRICT OF CONNECTICUT
 3   BRIDGEPORT DIVISION
     -------------------------------------------------x
 4
     IN RE:                      Chapter 11
 5
     HO WAN KWOK,                Case No:  22-50073 (JAM)
 6
              Debtor.
 7
     -------------------------------------------------x
 8
 9
10
11        VIDEOTAPED DEPOSITION OF ▮▮▮▮▮▮▮ held at the
12   offices of Brown Rudnick, LLP, located at Seven Times
13   Square, New York, New York, before Cheryll Kerr, CSR, a
14   Certified Shorthand Reporter and a Notary Public, on
15   Friday, November 11, 2022, at 9:23 a.m.
16
17
18             * HIGHLY CONFIDENTIAL *
19
20
21
22
23
24
25
```

Page 3

```
 1
 2   APPEARANCES:
 3   COUNSEL FOR DEBTOR AND THE WITNESS:
 4   ZEISLER & ZEISLER, P.C.
       BY:  ERIC HENZY, ESQ.
 5   10 Middle Street
     Bridgeport, CT  06604
 6
 7
 8   COUNSEL FOR CHAPTER 11 TRUSTEE:
 9   PAUL HASTINGS, LLP
       BY:  AVRAM LUFT, ESQ.
10     BY:  NICHOLAS BASSETT, ESQ.
       BY:  LUC DESPINS, ESQ.
11     BY:  WENLONG ZHUGE, ESQ.
     200 Park Avenue
12   New York, NY  York  10166
13
14   COUNSEL FOR PACIFIC ALLIANCE:
15   O'MELVENY & MYERS, LLP
       BY:  STUART SARNOFF, ESQ.
16   Seven Times Square
     New York, NY  10036
17
18
19
     Also Present:
20
     Jingyi Wang, Chinese interpreter; ▮▮▮▮▮▮▮▮▮;
21   Edwin Arlequin, videographer
22                ***    ***    ***
23
24
25
```

Page 4

```
 1
 2                  INDEX
 3   EXAMINATION BY                          PAGE
 4   Direct examination by Mr. Luft            8
 5   Cross-examination by Mr. Henzy          138
 6   Redirect examination by Mr. Luft        140
 7
 8                 EXHIBITS
     ▮▮▮▮▮▮
 9   FOR ID     DESCRIPTION                  PAGE
10   Exhibit 1  Debtor's Objection to Motion   21
11              of Chapter 11 Trustee for Entry
12              of Order Holding Debtor in Civil
13              Contempt for Failure to Comply
14              with Corporate Governance Rights
15              Order
16   Exhibit 2  Transcript of Telephonic 341  104
17              Meeting of Creditors dated
18              March 21, 2022
19   Exhibit 3  Transcript of Continued       104
20              341 Meeting of Creditors
21              dated April 6, 2022
22
23
24
25   (Continued on the next page)
```

Page 5

```
 1
 2               INDEX (Cont.)
 3
 4          REQUESTS FOR INFORMATION
 5   DESCRIPTION                             PAGE
 6   Production of audio and email Ms. Francis sent   55
 7   witness with the electronic transcript
 8
     Production of email                     57
 9
10   Production of copies of ▮▮▮▮▮▮▮▮ work    94
11   with regard to her opinions as well
12
     Production of emails witness described between  137
13   herself and Ms. Francis and any other counsel
14   representative of Mr. Kwok
15
16
17
18
19
20
21
22
23
24
25
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002124
USAO-REL_001596992

Page 6

1    ▮▮▮▮ - Highly Confidential
2         THE VIDEOGRAPHER:  Good morning.  This is
3    the start of media labeled No. 1 of the video
4    recorded deposition of ▮▮▮▮ in the
5    matter In Re: Ho Wan Kwok.
6         This deposition is being held at Brown
7    Rudnick, LLP, Seven Times Square, Floor 47,
8    New York, New York, on November 11, 2022 at
9    approximately 9:23 a.m.
10        My name is Edwin Arlequin.  I am the
11   legal video specialist from TSG Reporting,
12   Inc., headquartered at 228 East 45th Street,
13   Suite 810, New York, New York 10017.
14        The court reporter is Cheryll Kerr, in
15   association with TSG Reporting.  Counsel,
16   please introduce yourselves.
17        MR. LUFT:  Avi Luft, of Paul Hastings, on
18   behalf of the Chapter 11 trustee in In Re: Ho
19   Wan Kwok.
20        MR. BASSETT:  Nick Bassett, from Paul
21   Hastings, also on behalf of the Chapter 11
22   trustee.
23        MR. ZHUGE:  Wenlong Zhuge, Paul Hastings,
24   also on behalf of the Chapter 11 trustee.
25        MR. DESPINS:  Luc Despins, Chapter 11

Page 7

1    ▮▮▮▮    Highly Confidential
2    trustee.
3         MR. HENZY:  Eric Henzy, Zeisler &
4    Zeisler.  I'm at this deposition on behalf of
5    ▮▮▮▮
6         THE VIDEOGRAPHER:  Will the court
7    reporter please swear in the witness?
8         MR. HENZY:  Can first may I make a
9    statement on the record?
10        Pursuant to paragraph 15 of the
11   protective order entered in this case, I am
12   designating this deposition transcript and all
13   exhibits as designated material and, given the
14   timeline, as highly confidential.
15        MR. LUFT:  Sorry.  We do not concede that
16   this material will be highly confidential or
17   properly designated.
18        After the deposition, an assessment can
19   be made based on what is actually testified
20   to.
21
22   ▮▮▮▮
23   called as a witness, having been duly
24   sworn, was examined and testified
25   as follows:

Page 8

1    ▮▮▮▮ - Highly Confidential
2              THE SHORTHAND REPORTER:  Thank you.
3         Please proceed, Counsel.
4
5              DIRECT EXAMINATION
6              BY MR. LUFT:
7
8         Q.   Good morning, ▮▮▮▮  How are you?
9         A.   Good morning.  Fine, thank you.
10        Q.   My name is Avi Luft.  I am an attorney for
11   the Chapter 11 trustee.  Have you ever been deposed
12   before?
13        A.   No.
14        Q.   Okay, so the first thing I'm going to
15   mention, just so you know, is you just shook your head,
16   and the court reporter needs all answers to be audible.
17        A.   Uh-huh.
18        Q.   So even if I can see you, she may ask you or
19   I may ask you to repeat and answer if there's not an
20   audible answer.
21        Is that okay?
22        A.   Okay.
23        Q.   So why don't we go over some limit flares
24   about how a deposition works?
25        A.   Okay.

Page 9

1    ▮▮▮▮ - Highly Confidential
2         Q.   I am going to ask you a question.
3         A.   Uh-huh.
4         Q.   If for any reason you don't understand the
5    question I've asked, please let me know if it's unclear.
6    Is that okay?
7         A.   Okay.
8         Q.   If you don't tell me something's unclear, I
9    will assume that you understand my question.  Is that
10   okay?
11        A.   Okay.
12        Q.   Periodically, Mr. Henzy may decide he has an
13   a objection to one of my questions.  He may interpose an
14   objection.
15        That's fine.  Okay?
16        A.   Okay.
17        Q.   Unless Mr. Henzy instructs you not to answer
18   my question, despite the fact he may have made an
19   objection, you may proceed to answer my question.
20        A.   Yes.
21        Q.   Is that okay?
22        A.   Okay.
23        Q.   Have you attended depositions before?
24        A.   Yes.
25        Q.   So you have some familiarity, and I apologize

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002125
USAO-REL_001596993

Page 10

```
1              ████ - Highly Confidential
2    if this is redundant.
3         A.   It's fine.
4         Q.   Okay.  If for some reason today you need to
5    take a break, I'd ask that you let me know, and if it's
6    a convenient time, we will do so.
7         A.   Okay.
8         Q.   If not, I'll try to get one to you as quickly
9    as I can.
10        Is that okay?
11        A.   Okay.
12        Q.   The one thing I ask is that if I have a
13   question pending to you, that you answer the question
14   before we take any break.
15        A.   Yes.
16        Q.   Okay?
17        A.   Okay.
18        Q.   Great.
19        I will also do my best not to talk over you or at
20   the same time you're talking, and I'll ask you to do the
21   same, because it's very hard for the court reporter.  Is
22   that okay?
23        A.   Okay.
24        Q.   Okay.
25             MR. HENZY:  The last thing is we do want
```

Page 11

```
1              ████ - Highly Confidential
2    to review.
3              THE SHORTHAND REPORTER:  Okay.
4              MR. HENZY:  Thank you.
5              MR. LUFT:  Great.
6    BY MR. LUFT:
7         Q.   Is there any reason you can't give truthful
8    testimony today?
9         A.   No.
10        Q.   Terrific.  And you understand that you're
11   under oath?
12        A.   Yes.
13        Q.   Could you just state your name for the
14   record?
15        A.   ████████
16        Q.   And your address?
17        A.   ██████████████████████████████
18        Q.   ██████████ are you represented by counsel
19   today?
20        A.   Yes.
21        Q.   Who is that?
22        A.   Mr. Eric Henzy.
23             (Pause.)
24   BY MR. LUFT:
25        Q.   Okay.  Do you know if Mr. Henzy represents
```

Page 12

```
1              ████ - Highly Confidential
2    anyone else in this matter?
3         A.   I am not entirely sure.
4         Q.   Are you paying for Mr. Henzy's service today?
5         A.   No.
6         Q.   Who is paying for Mr. Henzy's service?
7         A.   I have no idea.
8              (Thereupon, an informal discussion was
9              held off the record with the shorthand
10             reporter.)
11             THE WITNESS:  I said I really have no
12             idea.
13   BY MR. LUFT:
14        Q.   How did Mr. Henzy come to represent you?
15        A.   I was --
16             MR. HENZY:  I'm going to, actually,
17        object.  That --
18             Objection, based on privilege, so you
19        don't need to answer the question.
20             THE WITNESS:  Okay.
21             MR. LUFT:  I'm sorry.
22        So you're instructing -- are you
23   instructing ███ not to answer?
24             MR. HENZY:  I'm instructing ███ not to
25        answer.
```

Page 13

```
1              ████ - Highly Confidential
2              MR. LUFT:  What is the privilege?
3              MR. HENZY:  It -- how ██ became -- came
4         to be represented by me was based on
5         conversations I had with ██, so --
6              MR. LUFT:  But they are not legal advice,
7         right?
8    BY MR. LUFT:
9         Q.   I just want to know how you came to the
10   decision --
11             MR. HENZY:  A client's decision to be
12        represented or not represented involves legal
13        advice.
14             MR. LUFT:  Okay.
15             MR. HENZY:  Okay.
16   BY MR. LUFT:
17        Q.   When was the first time you spoke to
18   Mr. Henzy?
19             MR. LUFT:  I don't --
20             By the way, my "okay" was not agreement
21        with you.  I'm just moving on.
22             MR. HENZY:  Okay.
23   BY MR. LUFT:
24        Q.   When did you first speak to Mr. Henzy?
25             (Pause.)
```

CONFIDENTIAL
CONFIDENTIAL
Paul Hastings_GJS_002126
USAO-REL_001596994

Page 14

1     ███████ - Highly Confidential
2          THE WITNESS:  I'm not exactly sure about
3     the date.
4          (Pause.)
5          THE WITNESS:  You know, I actually cannot
6     be sure.
7     BY MR. LUFT:
8     Q.   What's your best recollection of when you
9     first spoke to Mr. Henzy?
10    A.   I cannot be sure whether it is within this
11    week or last week.
12    Q.   Did you reach out to Mr. Henzy for
13    representation initially?
14         MR. HENZY:  Objection.
15         Same objection.  Attorney-client
16    privilege.  How ███ came to be represented?
17         THE WITNESS:  No.
18         MR. HENZY:  You can -- you can -- you can
19    claim it with the judge.
20    BY MR. LUFT:
21    Q.   All I'm asking is:  Did you call Mr. Henzy or
22    did Mr. Henzy call you initially?
23    A.   No --
24         MR. HENZY:  You can answer.
25         THE WITNESS:  No telephone calls.

Page 15

1     ███████ - Highly Confidential
2     BY MR. LUFT:
3     Q.   How did you first contact Mr. Henzy?  By what
4     means?
5     A.   I did not contact Mr. Henzy.
6     Q.   Okay.  Did Mr. Henzy contact you?
7          MR. HENZY:  So objection on privilege.
8          MR. LUFT:  It's a "yes" or "no" question.
9          MR. HENZY:  You can argue, Avi.
10         I get it, but I'll instruct the witness
11    not to answer.
12         MR. LUFT:  But I don't want to have a
13    deposition where I have -- it's an improper
14    objection.
15         MR. HENZY:  Okay.  That's fine.
16    BY MR. LUFT:
17    Q.   Did Mr. Henzy contact you?
18         MR. HENZY:  Okay.
19         And objection.  I'm going to instruct you
20    not to answer.
21    BY MR. LUFT:
22    Q.   Do you --
23    Are you going to follow your counsel's instruction?
24    A.   I think I should.
25         MR. HENZY:  Are -- are you going to ask

Page 16

1     ███████ - Highly Confidential
2     ███ not to follow her counsel's instruction?
3     Are you going to give her advice?
4          MR. LUFT:  No, Eric.  The way it works is
5     if you give ███ an instruction, I have to ask
6     ███ if ███ going to follow it.
7          MR. HENZY:  And ███ said -- and ███
8     answered --
9          (Thereupon, an informal discussion was
10    held off the record with the shorthand
11    reporter.)
12         MR. HENZY:  Okay.
13         MR. LUFT:  I didn't give ███ any advice.
14    Please don't mischaracterize what I said.
15         MR. HENZY:  Okay.
16    BY MR. LUFT:
17    Q.   So I'll ask you again:
18    Are you going to follow your counsel's instruction
19    not to answer?
20    A.   Yes.
21    Q.   Okay.  Did Mr. Henzy contact you by phone?
22    A.   No.
23    Q.   Did he contact you by email?
24         (Pause.)
25         THE WITNESS:  I was contacted by Mr.

Page 17

1     ███████ - Highly Confidential
2     Henzy's firm.
3     BY MR. LUFT:
4     Q.   Who from Mr. Henzy's firm contacted you?
5          MR. HENZY:  Objection.  I -- same
6     objection.
7          MR. LUFT:  I'm just asking for a name.
8          MR. HENZY:  Understand.  Understand.
9          Objection, privilege.  I'm going to
10    instruct ███ not to answer.
11    BY MR. LUFT:
12    Q.   Are you going to follow your counsel's
13    instruction?
14    A.   Yes.
15    Q.   Was it someone from Mr. Henzy's firm who
16    initially contacted you or someone else?
17    A.   Mr. Henzy's firm.
18    Q.   Was it a lawyer at Mr. Henzy's firm?
19    A.   I think so.  I'm not sure.
20         (Pause.)
21    BY MR. LUFT:
22    Q.   Did they offer to represent you?
23         MR. HENZY:  Objection, attorney-client
24    privilege.  I'm instructing you not to answer.
25

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002127
USAO-REL_001596995

Page 18

```
1              ██████ - Highly Confidential
2              (Indistinguishable crosstalk.)
3              MR. LUFT:  I'm speaking before you have
4    any relationship with the witness.  I'm just
5    asking if you approached ██ and offered to
6    represent ██  That's not giving ██ advice.
7              MR. HENZY:  I've objected and instructed
8    ██ not to answer.
9    BY MR. LUFT:
10        Q.   Are you going to follow your counsel's
11   instruction?
12        A.   Yes.
13        Q.   Did Mr. Henzy's firm tell you who would pay
14   for his services?
15        A.   No.
16        Q.   Do you know if you are responsible for paying
17   for his services today?
18        A.   I don't know if I'm responsible.  I'm not
19   going to pay.
20        Q.   Did you tell Mr. Henzy?
21        A.   Yes.
22        Q.   Okay.
23        A.   I don't think I should pay.
24             (Pause.)
25
```

Page 19

```
1              ██████ - Highly Confidential
2    BY MR. LUFT:
3         Q.   Do you have any idea who is paying for
4    Mr. Henzy's services today?
5              MR. HENZY:  Objection, asked and
6    answered.
7              THE WITNESS:  No.
8    BY MR. LUFT:
9         Q.   Do you know if Mr. Henzy's client, Miles
10   Kwok, is paying for his services today?
11        A.   I don't know.
12        Q.   Do you know if a member of Mr. Kwok's family
13   is paying for Mr. Henzy's services today?
14        A.   I don't know.
15             (Pause.)
16   BY MR. LUFT:
17        Q.   How did you first come to be involved in this
18   issue?
19             MR. HENZY:  Objection.
20             THE WITNESS:  What issue?
21             MR. HENZY:  Vague, ambiguous.
22             MR. LUFT:  That's fine.
23   BY MR. LUFT:
24        Q.   Is it your intention to give testimony at the
25   contempt hearing next week?
```

Page 20

```
1              ██████ - Highly Confidential
2         A.   I don't know.
3              MR. HENZY:  Objection.  Objection.
4    Vague, ambiguous, but --
5              THE WITNESS:  I don't know.
6              MR. HENZY:  Is it ██ intention?
7              I'm not -- I'm not -- I don't -- I'm not
8    trying to make speaking objections, Avi.  I'm
9    not, but I think it's vague.
10   BY MR. LUFT:
11        Q.   Do you know what the word "intention" means?
12        A.   I know the word "intention."
13        Q.   Okay.
14        A.   But I can answer your question --
15        Q.   Please.
16        A.   -- for the question you just asked.  I didn't
17   know there was a hearing.
18        Q.   Okay.  Has anyone spoken to you about giving
19   testimony before the court?
20        A.   About?
21        Q.   In connection with the contempt motion that
22   we are here about today.
23        A.   No.
24        Q.   No?  Okay.
25             MR. LUFT:  I'm going to mark as Exhibit 1
```

Page 21

```
1              ██████ - Highly Confidential
2    a copy of Debtor's Objection to Motion of
3    Chapter 11 Trustee for Entry of Order Holding
4    Debtor in Civil Contempt for Failure to Comply
5    with Corporate Governance Rights Order.
6              (Thereupon, a document was marked by the
7    shorthand reporter as ██████ Exhibit 1 for
8    identification.)
9              (An informal discussion was held off the
10   record.)
11             MR. HENZY:  One second, Avi.  I don't
12   think there's any question.
13             MR. LUFT:  Do you want to go off the
14   record?
15             MR. HENZY:  I want to go off the record.
16             MR. LUFT:  I'm good.
17             Just let me lay this foundation, and we
18   can go.  We can take a break.  I just want to
19   ask ██ a quick question, just to finish my
20   thought.
21             MR. HENZY:  Okay.  There's no question
22   pending, and I want to talk to my client.
23   There's no question pending.
24             MR. LUFT:  Well, there is.  I put an
25   exhibit in front of ██  I'm about to ask the
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002128
USAO-REL_001596996

Page 22

```
1        ████████ - Highly Confidential
2        question.  I'm in the middle of a question.
3             MR. HENZY:  Go ahead.
4             (Pause.)
5   BY MR. LUFT:
6        Q.   Okay.  ████████  I'm going to ask you to
7   turn to page 11 of the Debtor's Objection to Motion of
8   Chapter 11 Trustee for Entry of Order Holding Debtor in
9   Civil Contempt for Failure to Comply with Corporate
10  Governance Rights Order, which is marked as Exhibit 1.
11       Do you see the first full sentence on the top of
12  page 11 says:
13       "At any hearing on the motion, debtor will put on
14  testimony from an interpreter as to the many material
15  deficiencies in the official translation of the 341
16  meeting"?
17       Do you see that?
18       A.   Yes.
19       Q.   Are you the interpreter referenced in this
20  paragraph?
21            (Pause.)
22            MR. HENZY:  Objection.
23            THE WITNESS:  I --
24            MR. HENZY:  Well, objection.
25            It's vague and ambiguous, but you can
```

Page 23

```
1        ████████ - Highly Confidential
2        answer, if you can.
3             THE WITNESS:  It might be.  I'm not 100
4        percent sure.
5   BY MR. LUFT:
6        Q.   Okay.  Are you planning to offer testimony at
7   the hearing on this contempt motion as to the "many
8   material deficiencies" in the official translation of
9   the 341 meeting?
10       A.   As far as I know, that I'm only here to be
11  deposed today.
12       Q.   No one has spoken to you about offering any
13  other testimony at the hearing?
14       A.   No, I don't think so.
15       Q.   Okay.  Do you know --
16       A.   Hang --
17       Q.   -- what --
18       A.   Hang on.  I don't think so, but maybe my
19  memory is at fault.
20       Q.   Well, the hearing's Tuesday.
21       A.   Yeah.
22       Q.   Has anyone asked you to give testimony -- be
23  in Connecticut to give testimony in court on Tuesday?
24       A.   I can't remember.  I don't think so, but --
25  you know.  Like I said, maybe my memory is at fault.
```

Page 24

```
1        ████████ - Highly Confidential
2        Q.   Do you have other plans on Tuesday?
3        A.   I'm going to be the interpreter.  I don't
4   know whether I'll be asked to give testimony.
5        Q.   You don't recall if anyone's asked you to do
6   that?
7        A.   I can't exactly remember.
8             MR. LUFT:  Okay.  Why don't we take --
9        give you your break right now?
10            MR. HENZY:  Okay.
11            MR. LUFT:  We can go off the record.
12            THE VIDEOGRAPHER:  The time is 9:39 a.m.
13       We're going off the record.
14            (Recess taken at 9:40 a.m.)
15            (Resumed at 9:45 a.m.)
16            THE VIDEOGRAPHER:  The time is 9:45 a.m.
17       We're back on the record.
18  BY MR. LUFT:
19       Q.   ████████  I understand you've had a
20  chance to speak with your counsel.
21       A.   Yes.
22       Q.   Is it your understanding that you will not be
23  testifying at the hearing on Tuesday on behalf of
24  Mr. Kwok?
25       A.   No, that is not my understanding.
```

Page 25

```
1        ████████ - Highly Confidential
2        Q.   Okay.
3        A.   That is -- that I was not testifying.
4        Q.   Sorry.  I don't -- I didn't mean it to be a
5   negative.  Sorry.
6        I'm just asking if you are going to testify on
7   behalf of Mr. Kwok on Tuesday.
8        A.   Yes.
9        Q.   Very good.  Good.  Now we're on the same
10  page.
11            MR. HENZY:  ██ got the -- ██ got it.  I
12       didn't, but it's good.  We're okay.
13  BY MR. LUFT:
14       Q.   ████████  I'm going to ask you to look
15  back at Exhibit 1, same page, page 11.
16       A.   Uh-huh.
17       Q.   When did you first tell counsel for Mr. Kwok
18  that there are many material deficiencies in the
19  translation of the 341 meeting?
20            (Pause.)
21            THE WITNESS:  Do you mind if I ask you to
22       clarify one thing for me?
23  BY MR. LUFT:
24       Q.   Of course.
25       A.   This is asking about -- you're asking me when
```

TSG Reporting - Worldwide    877-702-9580

CONFIDENTIAL
CONFIDENTIAL

Page 26

```
 1              ████████ - Highly Confidential
 2   I was -- when I first time told Mr. Kwok about the
 3   deficiencies on the material of the translation --
 4       Q.   Sorry, ████  Let me try it again.
 5       A.   Okay.
 6       Q.   Okay, so the first sentence of the debtor's
 7   pleading on page 11 is "At any hearing on the motion,
 8   the debtor will put on testimony from an interpreter as
 9   to the many material deficiencies in the official
10   translation of the 341 meeting."
11           My understand is that you are that interpreter.  Is
12   that your understanding?
13       A.   Yes.
14       Q.   Okay.  My question is:
15           When did you first tell counsel for the debtor that
16   there were many material deficiencies in the official
17   translation of the 341 meeting?
18       A.   At that 341 meeting.
19       Q.   Okay.  You told counsel for the debtor at the
20   time that there many material deficiencies?
21       A.   Yes.
22       Q.   Okay.  When did you first tell debtor's
23   current counsel that there were many material
24   deficiencies in the official translation of the 341
25   meeting?
```

Page 27

```
 1              ████████ - Highly Confidential
 2              (Pause.)
 3              THE WITNESS:  I cannot be exact on the
 4         time or the date.
 5   BY MR. LUFT:
 6       Q.   What's your best recollection?
 7              (Pause.)
 8              THE WITNESS:  I really cannot remember.
 9         I'm sorry.
10   BY MR. LUFT:
11       Q.   Was it within the past week?
12       A.   The first time, probably not.
13       Q.   Was it before someone from Mr. Henzy's firm
14   contact you about representing you?
15       A.   Prior to that.
16              (Pause.)
17   BY MR. LUFT:
18       Q.   How did you let Mr. Kwok's counsel at the --
19   at the time of the 341 hearing know that there were many
20   material deficiencies in the translation?
21       A.   In the first place, I was raising dispute to
22   the interpreting at the time when the official
23   interpreter was interpreting.
24       Q.   Okay.  So when you heard a material
25   deficiency, you let the official translator know?
```

Page 28

```
 1              ████████ - Highly Confidential
 2       A.   Everyone -- you know, just everyone in the
 3   room would know, yes.
 4       Q.   Okay.  I'll make it broader.
 5       A.   Yes.
 6       Q.   When you heard a material deficiency in the
 7   translation of the 341, you let everyone at the 341
 8   meeting know, including --
 9       A.   Yeah.
10       Q.   -- the official translator?
11       A.   Yes.
12       Q.   Okay.  Is there any other way --
13              MR. LUFT:  Let me strike that.
14   BY MR. LUFT:
15       Q.   Were there material deficiencies in the
16   transcript that you heard that you said nothing about?
17              (Pause.)
18              THE WITNESS:  I don't think so.  However,
19         "material" is for me -- probably is different
20         from what you think material, but for me ...
21              There were a number of things happening
22         at that meeting, and at some point, I switched
23         to telling out loud about the -- my dispute to
24         handing a note to the counsel about my
25         dispute.
```

Page 29

```
 1              ████████ - Highly Confidential
 2   BY MR. LUFT:
 3       Q.   Okay.
 4       A.   Right.
 5       Q.   So you either made a statement --
 6       A.   Uh-huh.
 7       Q.   -- at the hearing --
 8       A.   Uh-huh.
 9       Q.   -- or you passed a note for Mr. Baldiga,
10   counsel for Mr. Kwok at the time, to make a comment?
11       A.   Yes --
12       Q.   Okay.
13       A.   -- hoping he would.
14       Q.   And at the times where I can see your
15   "private interpreter" reference in the transcript --
16       A.   Right.
17       Q.   -- those were the times when you were making
18   statements?
19       A.   Right.
20       Q.   Okay.  Then the periods where I don't see you
21   making statements, it's possible you were passing
22   notes --
23       A.   Right.
24       Q.   -- to Mr. Baldiga?
25       A.   Right.
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002130
USAO-REL_001596998

Page 30

1    ███████ - Highly Confidential
2          Q.    And when did that switch happen?
3                (Pause.)
4                THE WITNESS:  I think, at one point, a
5          comment was made that there were too many
6          interruptions --
7    BY MR. LUFT:
8          Q.    Uh-huh.
9          A.    -- as my purpose in court was to check, not
10   to disrupt or interrupt, then I thought perhaps that I
11   should be a bit more discrete about my disputes, so I
12   switched to handing notes.
13         But exactly at what -- what point or triggered by
14   what exact action, I don't remember.
15         Q.    Okay.  Just so I'm clear about it --
16         A.    Uh-huh.
17         Q.    -- there was a point where you made the
18   decision to switch --
19         A.    Uh-huh.
20         Q.    -- from making statements --
21         A.    Yes.
22         Q.    -- to passing notes?
23         A.    Yes.
24         Q.    But you just don't remember what that point
25   was?

Page 31

1    ███████ - Highly Confidential
2          A.    Yes.
3          Q.    Okay, so it wasn't --
4          It's not the case that you were going back and
5    forth?
6          You just made a decision at one point, and then
7    once that happened, you switched to the notes?
8          A.    I switched to notes for the majority -- for
9    the majority of times.
10         But when there was something that I really cannot
11   hold onto --
12         Q.    -- uh-huh.
13         A.    -- and I really feel like there was something
14   that I need to say, perhaps really critical, I would --
15   and like I -- like what is described here, perhaps is
16   material, then I probably would just raise it out loud.
17         Q.    Okay.  That's helpful.
18         Okay.  What did you do to prepare for this
19   deposition?
20         A.    I spoke with my counsel.
21         Q.    When did you meet with your counsel?
22         A.    We did not meet.
23         Q.    When did you speak to your counsel?
24         A.    Yesterday.
25         Q.    How long did you speak to him?

Page 32

1    ███████ - Highly Confidential
2          MR. HENZY:  Objection, privilege.
3          MR. LUFT:  How long you met is not
4    privileged.
5          MR. HENZY:  I'm going to instruct you not
6    to answer.
7          MR. LUFT:  On what grounds?
8          MR. HENZY:  Attorney-client privilege.
9          MR. LUFT:  How long you met is
10   privileged?
11         MR. HENZY:  Could be, yeah, absolutely.
12   Yep.  What -- I have no idea why you want to
13   know that.
14         But I'm claiming the privilege, Avi, and
15   I'm instructing the witness not to answer, and
16   you can --
17         MR. LUFT:  Okay.
18         MR. HENZY:  You can pursue whatever you
19   need to pursue.
20         MR. LUFT:  Okay.  I'll make a statement
21   that I think these privilege objections,
22   especially this one, are completely proper --
23         MR. HENZY:  Okay.
24         MR. LUFT:  -- and just obstructing the
25   deposition.

Page 33

1    ███████ - Highly Confidential
2    BY MR. LUFT:
3          Q.    ███████ are you going to follow your
4    counsel's advice not to answer?
5          A.    Yes.  Counsel, do you mind if I add one more
6    thing from my previous answer?
7          Q.    Sure.
8                MR. HENZY:  Do --
9                THE WITNESS:  I'm sorry.
10               MR. LUFT:  That's okay.
11               MR. HENZY:  Which answer?
12         I don't think on that answer.  I think on
13   the question you asked before.
14               MR. LUFT:  I'm fine with ███ answering
15   whatever ███ wants to.
16               MR. HENZY:  That's fine.
17               THE WITNESS:  When I said that -- you
18   asked me about switching from notes to verbal
19   dispute, and I said that when I really --
20   there was something that I cannot hold onto,
21   if it's something material, I would probably
22   say it out loud.
23         But that is not to say that I won't
24   sometimes maybe find a situation for
25   appropriate for me to hand a note to

TSG Reporting - Worldwide    877-702-9580

Page 34

```
1                  - Highly Confidential
2            Mr. Baldiga that could be material as well --
3    BY MR. LUFT:
4         Q.   Okay.
5         A.   -- maybe I did not raise it out loud.
6         Q.   Was there ever an instance where you thought
7    there was a material deficiency in the translation where
8    you didn't tell Mr. Baldiga or say something?
9         A.   I don't think so, but --
10        That day was a little bit confusing, chaotic at
11   times, so I cannot be sure, but I don't think so.
12        Q.   Do you recall times where you asked
13   Mr. Baldiga to make an objection and he refused?
14        A.   It was not my position to ask anyone to make
15   an objection.  I handed him the note.  He's the counsel.
16        He could decide when and where -- when and -- when
17   to make that objection or whether he's going to make an
18   objection.  I handed him the note -- you know.
19        Q.   Do you recall any times when you handed
20   Mr. Baldiga a note that something was mistranslated and
21   he didn't make an objection on the record about it?
22             (Pause.)
23             THE WITNESS:  I can't quite remember
24             exactly, and as I was saying, that day -- at
25             some point, it was a bit chaotic, so --
```

Page 35

```
1                  - Highly Confidential
2             A number of things happened at one time,
3    so it's hard to say.  You know, I can't
4    exactly remember.
5    BY MR. LUFT:
6         Q.   How clear is your recollection of the 341
7    meetings?
8         A.   Not -- I don't remember everything, but I
9    remember some significant moment.
10        Q.   What was that significant moment?
11        A.   Significant moments would be a certain point
12   that was -- like I said, there was -- there was a
13   chaotic moment.  I remember that, but I don't remember
14   everything said.
15        I remember there was such a moment, and I remember
16   certain disputes that I raised.  I don't remember every
17   dispute I raised, but I remember some -- some such
18   moments.
19        Q.   Can you tell me your best recollection of the
20   chaotic moment you described?
21        A.   The chaotic moment was that the official
22   interpreter made an error in his interpreting and it was
23   so apparent that even Ms. Claiborne noticed that, and --
24        But during that -- the interpretation and
25   Ms. Claiborne's raising the issue, there were a number
```

Page 36

```
1                  - Highly Confidential
2    of things said in between and -- and still there was
3    some interpretation made, so -- you know, that -- that
4    was the chaotic moment, I thought.
5         Q.   Was that at the March 21st hearing or the
6    April 6th 341 hearing?
7         A.   I don't remember the date.
8         Q.   Okay.  Was it at the first hearing or the
9    second hearing?
10        A.   I actually don't remember which time either,
11   but I just remember there was a meeting and there was
12   some such moment.
13        Q.   Do you remember anything else about what was
14   said about this chaotic moment that you remember?
15             (Pause.)
16             THE WITNESS:  Specifically the words ...
17             you're asking -- sorry.  Can you ask that
18             question again?
19   BY MR. LUFT:
20        Q.   Sure.  You mentioned that one --
21        I asked you what you can recall and you mentioned
22   one of the things that you -- that you don't have a
23   clear recollection of everything --
24        A.   Yes, yes.
25        Q.   -- but that one of the things you remember is
```

Page 37

```
1                  - Highly Confidential
2    a chaotic moment?
3         A.   Yes.
4         Q.   Okay.  You don't recall which date it was
5    on --
6         A.   Right.
7         Q.   -- so I'm asking other than there -- I
8    believe you told me that there was some error --
9         A.   Uh-huh.
10        Q.   -- that Ms. Claiborne was able to pick up on?
11        A.   Yes.
12        Q.   Do you recall anything else specifically
13   about that moment that you're describing?
14        A.   Yes.  I remember Ms. Claiborne was able to
15   pick up because it's -- the name the interpreter was
16   using in English so he interpreted the name wrong, so he
17   interpret --
18        The question was asked about a company name in
19   English and interpreted back to Mr. Kwok in Chinese, but
20   using a different English name.  So that is why
21   Ms. Claiborne was able to pick up the interpreting was
22   wrong and I remember that -- you know.
23        Q.   Anything else you recall?
24        A.   Say that again?
25        Q.   Anything else you recall about that chaotic
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002132
USAO-REL_001597000

Page 38

1    ███████████ - Highly Confidential
2    moment?
3        A.   Yes.  Like I said, there were a number of
4    back and forth in interpreting and Mr. Baldiga's asking
5    questions, and I'm not sure whether I said something.
6        I probably did not, because I saw that
7    Ms. Claiborne was picking up, but there were a number of
8    things going in between.  I just cannot remember
9    specific -- specifically the words.
10       Q.   Terrific.
11       ██████████ I should -- I should have mentioned
12   this at the beginning of the deposition.  If I ask you
13   what you recall --
14       A.   Uh-huh.
15       Q.   -- I just want you to tell me what you
16   actually recall.  I'm not asking you to speculate --
17       A.   Uh-huh.
18       Q.   -- as to what you think it would be unless I
19   ask you something or I specifically do that.
20       A.   Okay.
21       Q.   Do you remember the name of the English
22   company or the -- sorry -- the name of the company that
23   was said in English?
24            (Pause.)
25            THE WITNESS:  There were two names used.

Page 39

1    ███████████ - Highly Confidential
2            Like I said, the interpreter -- the
3            question was asked using one name and the
4            interpreter was interpreting in another name.
5            Now, I cannot remember which is which.
6    BY MR. LUFT:
7        Q.   Okay.  Can you just tell me the two names
8    that were used?
9        A.   Okay.  I think one was Ace Decade, and then
10   the other one ... I think it was Dawn State.  I cannot
11   be sure.
12            (Thereupon, an informal discussion was
13            held off the record with the shorthand
14            reporter.)
15            THE WITNESS:  And I cannot remember
16            whether the question was raised with which
17            name and whether the interpreter's
18            interpreting the other.  I cannot remember
19            the --
20   BY MR. LUFT:
21       Q.   Okay.
22       A.   -- which one is which.
23       Q.   But you recall for this dispute that sticks
24   out in your mind --
25       A.   Yes.

Page 40

1    ███████████ - Highly Confidential
2        Q.   -- the names that were at issue were Ace
3    Decade and Dawn State?
4        A.   I think so.
5        Q.   So if I looked in the transcript, I should
6    see a transcription of a dispute in which the names Ace
7    Decade and Dawn State are used?
8        A.   I think so.
9        Q.   Okay.  You said you -- the other things that
10   you recall --
11       A.   Uh-huh.
12       Q.   -- from the 341 hearings are some "disputes,"
13   I believe was your word?
14       A.   There were a number of disputes, yes.
15       Q.   Okay.  Could you tell me specifically what
16   disputes you have an actual recollection of in the 341
17   hearings?
18       A.   There were a number of them.  I cannot
19   remember all the disputes.
20       As I said, there were some disputes that I raised
21   out loud and there were some disputes I wrote down and
22   handed notes to Ms. -- to the counsel.
23       But one thing I remember, and it's because I
24   usually took issues with -- it may not be a material to
25   the case here, but as an interpreter that I took issue

Page 41

1    ███████████ - Highly Confidential
2    with other interpreter disregarding the interpreting
3    etiquette of witness testimonies.
4        So I -- at one point, I said something to the
5    interpreter in court.
6        Q.   Do you remember what you said to him?
7        A.   Yes.  I can't remember exactly what he
8    interpreted, but then he put a word in.  He assumed it
9    was there, but it wasn't there.
10       So I said to him that there was no such word in the
11   witness word -- statement -- the statement the witness
12   made.  You assume it was there.  So something I said
13   that --
14       I don't know whether it was reflected in the
15   transcript.  In fact, I can't remember whether I said it
16   in English or Chinese, but I said something like that at
17   one point.
18       Q.   Okay.  Any other specific disputes that you
19   have an actual recollection from the 341 hearings
20   sitting here today?
21       A.   Not specifically.
22       Q.   Okay.  Did you review any documents to
23   prepare for this deposition?
24       A.   No.
25       Q.   Have you reviewed any material that has

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002133
USAO-REL_001597001

Page 42

████████ - Highly Confidential

1  
2   refreshed your recollection with regard to the 341
3   hearings?
4       A.   No.  I don't have those.
5       Q.   I have Exhibit 1 in front of you, the
6   debtor's objection.  Did you ever read that document --
7       A.   No.
8       Q.   -- prior to today?
9       A.   No.
10      Q.   Were you consulted with regard to information
11  to include in that document?
12      A.   No.
13      Q.   Have you ever read a transcript of the 341
14  hearing?
15      A.   Yes.
16      Q.   When did you read a transcript of the 341
17  hearing?
18      A.   I did not read the entire transcript.
19  I read a section of the transcript, but I cannot
20  remember when.
21      Q.   What's your best recollection?
22           (Pause.)
23           THE WITNESS:  One month ago, at least, I
24  think.
25

Page 43

████████ - Highly Confidential

1  
2   BY MR. LUFT:
3       Q.   How did you get a copy of the transcript?
4       A.   I didn't have a copy of the transcript.
5       Q.   How did you read the transcript, if you
6   didn't have a copy of it?
7       A.   I was e-mailed a section of the transcript.
8       Q.   Who e-mailed you a section of the transcript?
9       A.   Counsel of -- Melissa Francis.
10      Q.   Is that the first time you ever received
11  communication from Ms. Francis?
12      A.   No.
13      Q.   How often do you hear from Ms. Francis?
14      A.   Not often.
15      Q.   So tell me about this email from Ms. Francis.
16  What did --
17      A.   Ms. Francis sent a section of the transcript
18  to me and sent an audio to me and asked me to listen and
19  then to check the transcript.
20      Q.   What was on the section of the transcript and
21  the audio that Ms. Francis sent you?
22      A.   It was ... it was --
23      The audio was capturing the moment -- the chaotic
24  moment that I just described to you, and there was some
25  prior lines and subsequent lines I don't quite remember,

Page 44

████████ - Highly Confidential

1  
2   and the transcript was also capturing that -- that time,
3   but not everything that reflected in the audio.
4       Q.   I'm sorry.  Can you clarify?  The transcript
5   was ...
6       A.   The transcript reflecting some of the verbals
7   in the audio, but not everything.  That's what I'm
8   saying.
9       Q.   Okay.  You say the transcript was -- was the
10  portion of the transcript addressing the chaotic moment?
11  Is that right?
12      A.   Yes, corresponding part of the audio and the
13  transcript.  I -- yes.
14      Q.   So this was a portion of the transcript and
15  audio in which the translator is mis- -- mistranslating
16  something, in your opinion, and you are telling him that
17  he is doing it wrong?
18           MR. HENZY:  I'll object.  I don't think
19           that was ████ testimony.
20           MR. LUFT:  Well, that was my
21           understanding of the what the chaotic moment
22           was.
23           THE WITNESS:  No.
24           MR. HENZY:  Sorry.  I think we're a
25           little confused here.

Page 45

████████ - Highly Confidential

1  
2   BY MR. LUFT:
3       Q.   Okay.  This is the same chaotic moment you
4   described for me?
5       A.   Yes, but it wasn't moment I was telling the
6   interpreter he was wrong.  It was -- actually,
7   Ms. Claiborne caught what was wrong, and like I said,
8   between the interpretation --
9       Between the interpreter's misinterpretation and Ms.
10  Claiborne catching up with that mistake, there were a
11  number of back and forth questioning and answering
12  conversation happening which was not recorded in the
13  transcript, and that's what I'm saying.
14      At that point, in fact, I was not able to raise my
15  dispute because there were so many back and forth going
16  on, and also, at that point, Ms. Claiborne was also
17  attaching up, so it wasn't the moment I raised dispute.
18      Q.   Can you describe for me what was included in
19  this transcript?
20      A.   The -- what was include in the transcript was
21  very ... abbrieved [sic], kind of --
22  Because the -- because what's happening in the
23  audio was that the interpreter has said -- has said
24  things in Chinese and to Mr. Kwok and Mr. Kwok was
25  answering in Chinese and -- but it not being interpreted

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002134
USAO-REL_001597002

Page 46

1 ███████ - Highly Confidential
2 in English so the court reporter could not have recorded
3 that, and between those conversations --
4      And Ms. Claiborne caught -- Ms. Claiborne was aware
5 that there was a mistake, because the names was
6 interpreted wrong and -- and she is already saying --
7      She's addressing that problem, and so there were a
8 lot of aside things going on which were not captured in
9 the transcript, and so that's all -- that's all I'm
10 saying.
11      Q.   So the portion of transcript you saw has Ms.
12 Claiborne catching and making a comment --
13      A.   Yes.
14      Q.   -- that the person is using the names of Ace
15 Decade and Dawn State incorrectly?
16      A.   Yes.
17      Q.   Okay, so --
18      A.   That made the question wrong all together.
19      Q.   Okay.  Can you tell me what else was said and
20 how long was this portion of the transcript?
21           (Pause.)
22           THE WITNESS:  It wasn't that long.  I
23           don't think that chaotic moment was that long,
24           but there were many prior lines and subsequent
25           lines of questioning derived from that at

Page 47

1 ███████ - Highly Confidential
2      that -- at that meeting.  It's hard for me to
3      gauge exactly how long that was.
4 BY MR. LUFT:
5      Q.   Okay.  Which date of the 341 hearing was
6 this?
7      A.   I can't remember.
8      Q.   Approximately -- I'm asking just about the
9 transcript.
10      A.   Yes.
11      Q.   Was it like five lines that she sent you?
12 Was it a page that she sent you?  What's your best
13 estimate?
14      A.   I think there were two pages, I think.
15      Q.   And what was -- what was on the --
16      To the best of your recollection, can you describe
17 what was on those two pages that you reviewed at
18 Ms. Francis' request?
19      A.   I wasn't only doing that part.  That part
20 stuck out to me, and that was the major thing.
21      Like I said, that was the main chaos, and there
22 were lines before and after deriving from that chaotic
23 moment, and the content of those, I -- I can't recall.
24      Q.   Other than having read what Ms. Francis sent
25 you --

Page 48

1 ███████ - Highly Confidential
2      A.   Uh-huh.
3      Q.   -- can you give me your best independent
4 recollection of that moment?
5      A.   Apart from what I just said?
6      Q.   Apart from what you saw from listening to the
7 audio and speaking to -- and reading the transcript,
8 what is your -- what was your --
9      First of all, let me ask you:  Sitting here
10 today --
11      A.   Yes.
12      Q.   -- other than what you read --
13      A.   Uh-huh.
14      Q.   -- that Ms. Francis sent you and the audio
15 you listened to, can you please tell me your best
16 recollection of what happened at that moment?
17           (Pause.)
18           THE WITNESS:  But -- you know, my memory
19      today was aided by that audio.
20 BY MR. LUFT:
21      Q.   Okay, so you have a --
22      You now have a clear memory of it because of the
23 audio or your -- you listened to the audio?
24      A.   Right.  I listened to the audio -- you know,
25 when it was sent to me.

Page 49

1 ███████ - Highly Confidential
2      So whatever memory I have today is aided by that --
3      aided by that audio and that correspond with what I
4      recall at that time.
5      Q.   Okay, so I just need to know what you recall
6 from that time other than from that audio.
7           MR. HENZY:  I -- just objection, vague,
8      ambiguous, but you can answer.
9           THE WITNESS:  Right.  You mean just that
10      moment or that day?
11 BY MR. LUFT:
12      Q.   Just with regard to the -- the section of the
13 transcript that Ms. Francis chose to send you.
14      A.   Okay.
15           MR. HENZY:  Can I just ask a question?  I
16      don't -- because I want to make sure -- I
17      don't want ███ not to answer your question.
18      You're asking ███ to separate ███ memory
19      of the meeting, kind of almost block out what
20      ███ heard on the audio --
21           MR. LUFT:  Well --
22           MR. HENZY:  -- which is kind of hard?
23           MR. LUFT:  Well, I think it's --
24           (Indistinguishable crosstalk.)
25           MR. HENZY:  I am going to make an

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002135
USAO-REL_001597003

Page 50

███████ - Highly Confidential

1    objection just to -- you know.
2         Vague, ambiguous.  I just want to be
3    clear what you're asking her to do.
4    BY MR. LUFT:
5         Q.    Why don't we do this in parts?  Prior to
6    Ms. Francis --
7         A.    Uh-huh.
8         Q.    -- sending you the transcript and the audio,
9    what was your -- can you give me your -- what was your
10   best recollection of that portion --
11        A.    Uh-huh.
12        Q.    -- of the hearing that she sent you before --
13        A.    Uh-huh.
14        Q.    -- listening to the transcript and reading
15   the portion of the transcript?
16        A.    Before I read and listened to the record, I
17   only remembered there was a chaotic moment and there
18   were disputes I raised, and -- you know, the issues with
19   the interpreting, but I don't remember specifics.
20        Q.    After you read the portion of the
21   transcript --
22        A.    Uh-huh.
23        Q.    -- and listened to the audio --
24        A.    Uh-huh.

Page 51

███████ - Highly Confidential

1         Q.    -- did you then have a clear memory in your
2    head apart from what you just read and heard of that
3    moment or is it just that you read it and heard it and
4    your recollection now is based on having listened to it
5    and read it again?
6         A.    After I read and listened, it reminded me of
7    what happened and more specifically what happened,
8    exchanged in words.
9         So it wasn't just based on that record.  It did
10   remind me what actually happened, yes.
11        Q.    I'm going to ask you now to please tell me
12   what is now your recollection of that moment, not as
13   refreshed --
14        A.    Uh-huh.
15        Q.    -- by the transcript --
16        A.    Uh-huh.
17        Q.    -- and the audio, but not repeating to me
18   what you've read on the transcript --
19        A.    Right.
20        Q.    -- of the audio, if that makes sense.
21        A.    Right.  I understand what you're saying.
22        I -- if I don't based on that audio and things,
23   today, I would -- I would remember that was this --
24   there was this kerfuffle happening at the time, chaotic

Page 52

███████ - Highly Confidential

1    moments.
2         And I remember the exchange that was happening and
3    the disputes, but probably not every specific word.
4         Q.    Other than what you've told me about the
5    dispute --
6         A.    Uh-huh.
7         Q.    -- that there was an issue with regard to the
8    name Ace Decade or Dawn State was used --
9         A.    Uh-huh.
10        Q.    -- do you recall anything specific about that
11   moment?
12        (Pause.)
13        THE WITNESS:  That moment wasn't just
14   about Dawn State and Ace Decade.  That was the
15   moment that Ms. Claiborne picked up the error,
16   but that was the moment continued from a
17   series of mistakes, minor or major, so it's --
18        That's what I recall, and -- and
19   particularly what -- what happened was that
20   the interpreter would use Chinese to ask the
21   witness questions and then the witness would
22   answer in Chinese and -- because of that
23   kind of exchange, it's --
24        It's like the interpreter is asking

Page 53

███████ - Highly Confidential

1    question to the witness to -- maybe asking a
2    clarifying question, and so therefore that he
3    did not think that it should -- it needed to
4    be translated or interpreted back into English
5    for everyone else in the room to know.
6         And that kind of sideline conversation
7    was not captured in the transcript, and that's
8    why that -- that happen -- that happened, and
9    I think at one point I was about to raise that
10   and, in fact, Mr. Baldiga, I think, he said
11   something like "Can you please interpret
12   that?"
13        But by that point, I think Ms. Claiborne
14   also caught on with the error of Ace Decade
15   and Dawn State, so that had put aside -- I
16   think that was put aside, so there were a
17   number of these things happening ... that --
18   that is --
19        That is not exactly the interpreting
20   problem that is really about the interpreter's
21   etiquette -- professional etiquette -- you
22   know, so at one point, I raised an issue out
23   loud.  That's what I remember.

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002136
USAO-REL_001597004

Page 54

███████ - Highly Confidential

1
2  BY MR. LUFT:
3      Q.  Do you recall anything else specifically with
4  regard to what was said for the portion of the
5  transcript that you reviewed at Ms. Francis' request?
6      A.  I don't have any other independent
7  recollection.
8      Q.  Okay.
9          (Thereupon, an informal discussion was
10         held off the record.)
11 BY MR. LUFT:
12     Q.  Had Ms. Francis talked to you about this
13 issue prior to sending you this portion of the
14 transcript?
15     A.  No.
16     Q.  Was there a cover note in connection with the
17 transcript?
18     A.  The email was just asking me to -- in fact,
19 I'm not sure what's said on the email, now, but no,
20 there was no cover note.
21     Q.  Okay.
22         (Pause.)
23 BY MR. LUFT:
24     Q.  Did you -- have you reviewed any other
25 portion of the 341 transcript?

Page 55

███████ - Highly Confidential

1
2      A.  No.
3      Q.  Other than what Ms. Francis sent you for
4  either March 21st or April 6th?
5      A.  I have not reviewed any other part of
6  transcript for any day except that part that's sent to
7  me by Ms. Francis.
8      Q.  Ms. Francis tell you why she was sending you
9  that portion, other than she wanted you to check it?
10     A.  No.  She said to me, "Listen to the audio and
11 check the transcript."
12     Q.  Okay.
13     A.  And to see whether it's accurate.
14     Q.  Do you have a copy of that audio and email
15 Ms. Francis sent you?
16     A.  It was sent to us with the attachment and the
17 email, so it would be with the email.
18 *       MR. LUFT:  Okay.
19         Eric, I'm going to ask that those be
20 produced immediately, yeah.
21         MR. HENZY:  There's no production
22 request.
23         MR. LUFT:  I'm asking you right now.
24         MR. HENZY:  I -- then you need to give me
25 a formal production request.  There's no --

Page 56

███████ - Highly Confidential

1
2          In the federal rules, there's no such
3  thing as verbal production requests, okay?  If
4  there's something in the rules I don't know
5  about, you guys should tell me.
6          MR. BASSETT:  Eric, there's such a thing
7  as cooperating and providing documents that
8  you're obligated to produce under a request in
9  light of the hearing that is --
10         MR. HENZY:  Do you want to argue about it
11 now?
12         (Pause.)
13         MR. HENZY:  The schedule's your schedule.
14 You certainly have enough people.  You
15 certainly know how to ask for things when you
16 want them.
17         (Pause.)
18         MR. LUFT:  Okay.  Let the record reflect
19 I'm handing Mr. Henzy a note in writing that
20 says "Please produce the email and electronic
21 transcript ███████ just testified
22 about."
23         It's dated today, and it has my name on
24 it.
25         MR. HENZY:  Thank you.

Page 57

███████ - Highly Confidential

1
2          MR. LUFT:  Now you have a written
3  request.
4          Please produce it.  I would ask for it to
5  be produced during this deposition, please.
6  BY MR. LUFT:
7      Q.  Did you ever share this email from
8  Ms. Francis and audio file with the Zeisler firm?
9      A.  No.
10     Q.  How did you respond to Ms. Francis?
11     A.  I said -- I suppose I wrote an email back
12 saying "Yes, I'll listen and I'll check."
13     Q.  And did you do that?
14     A.  Yes.
15     Q.  Do you have a copy of that email?
16     A.  It should be with my email, I think.
17         MR. LUFT:  Do you want me to put an S on
18 "email" or --
19         MR. HENZY:  You can do whatever you want.
20 BY MR. LUFT:
21 *   Q.  Okay.  I'm requesting that email.
22 And how did you tell Ms. Francis the results of
23 checking that portion of the transcript?
24     A.  I just sent the file back.
25     Q.  Did you ever speak to Ms. Francis about this?

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002137
USAO-REL_001597005

Page 58

1     ███████ - Highly Confidential
2        A.    I sent -- I sent my work product back.
3        Q.    What was your work product?
4        A.    It's record of the audio.
5        It's a transcription of the audio file from my own
6     listening.
7        Q.    So you made a transcript of the audio file
8     where you --
9        A.    Uh-huh.
10       Q.    Explain to me.
11       I don't understand.  Is it you translated -- you --
12    most of it's in English, so what's going on?
13       A.    And also translated the parts spoken in
14    Chinese, yes.
15       Q.    Do you have a copy of that?
16       A.    I have a copy of that, yes.
17       Q.    Can I have a copy of it?
18              MR. HENZY:  No.  I mean -- no.
19              You're going to see it filed as an
20              exhibit before noon today.
21              MR. LUFT:  Okay.
22    BY MR. LUFT:
23       Q.    ███████ this isn't on you.
24              MR. LUFT:  I think it's completely
25              improper that you have a witness and you've

Page 59

1     ███████ - Highly Confidential
2     sandbagged us by not producing the exhibits
3     you intend to put at trial.
4              MR. HENZY:  It's your schedule, Avi.
5     It's your --
6              MR. LUFT:  What do you mean, it's my
7     schedule?
8              MR. HENZY:  You didn't ask us for any
9     production.  It's -- it's -- I'm sorry.  It's
10    the judge's schedule.
11             MR. BASSETT:  Eric, that's also not true.
12             MR. LUFT:  Yes.
13             MR. BASSETT:  We asked you and your
14    colleagues in advance for this exact purpose
15    for copies of the exhibits that you intended
16    to use --
17             MR. HENZY:  Yep.
18             MR. BASSETT:  -- and for the identities
19    of witnesses --
20             MR. HENZY:  Yep.
21             MR. BASSETT:  -- and you refused to
22    provide them.
23             MR. HENZY:  What we did is we're
24    complying with the court's order, and if you
25    didn't like the court's order, Nick, you guys

Page 60

1     ███████ - Highly Confidential
2     definitely know how to go back and ask for
3     relief.
4              MR. BASSETT:  Okay.
5              MR. HENZY:  This is your schedule.
6     You're bringing this on for hearing on an
7     expert basis.
8              MR. BASSETT:  Eric.
9              MR. HENZY:  We could have done this a
10    very different way.  You guys chose the
11    schedule.  If you didn't like --
12             What Jim said back to you was if you --
13    we're going to comply with the Court's order.
14    That's what we're doing.
15             MR. BASSETT:  What I said back to Jim,
16    which is correct, is that regardless of the
17    court's order which set a final deadline for
18    the exchange of witness exhibit list, we had
19    the right to request discovery from you, which
20    we were doing in the form of requesting all
21    exhibits and witnesses that you then knew you
22    anticipated using at the hearing.
23             And the response was "We're not going to
24    give that to you.  We're going to wait until
25    Friday."

Page 61

1     ███████ - Highly Confidential
2              MR. LUFT:  When on Friday are we getting
3     this?
4              MR. BASSETT:  Noon.
5              MR. LUFT:  Why don't we go off the
6     record?  Because we may need to wait until you
7     hand it over.
8              MR. HENZY:  I guess that's up to you.  I
9     mean, you can't -- you can't -- actually, it's
10    not up to you.
11             You can't say now this witness has to
12    wait around for an hour and a half because you
13    guys didn't --
14             (Indistinguishable crosstalk.)
15             MR. LUFT:  If you tell Judge Manning that
16    this is how you're -- you want to practice,
17    you can talk about it.  We're going to go off
18    the record right now --
19             MR. HENZY:  That's fine.
20             MR. LUFT:  -- and we'll see where we are.
21             THE VIDEOGRAPHER:  The time is 10:30 a.m.
22    We're going off the record.
23             (Recess taken at 10:30 a.m.)
24             (Resumed at 10:57 a.m.)
25             THE VIDEOGRAPHER:  The time is 10:57 a.m.

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002138
USAO-REL_001597006

Page 62

1          ████████ - Highly Confidential
2                We're back on the record.
3    BY MR. LUFT:
4        Q.      ████████ you mentioned that you sent
5    Ms. Francis work product where you translated from the
6    audio.
7        A.    Uh-huh, yes.
8        Q.    Do you have -- were there any drafts you made
9    of that document?
10       A.    No.
11       Q.    Did -- do you have any internal drafts of the
12   document?
13       A.    No.
14       Q.    Did you make any notes when you were creating
15   that document?
16       A.    No.
17       Q.    Did you ask Ms. Francis for what purpose you
18   were making this document?
19       A.    No.
20       Q.    Did you ask Ms. Francis why she wanted
21   specifically this portion of the two days of testimony
22   translated?
23       A.    I don't think so.
24       Q.    Did you have any communication with
25   Ms. Francis after you sent her the document?

Page 63

1          ████████ - Highly Confidential
2        A.    No.
3        Q.    After you sent Ms. Francis -- by the way, who
4    is Ms. Francis representing?
5        A.    I don't know.
6              (Pause.)
7    BY MR. LUFT:
8        Q.    Did you ask her who she's representing?
9        A.    No.
10       Q.    Why did you do it, if you had no idea who
11   Ms. Francis was asking you to do it for?
12       A.    She's API client.
13       Q.    So your client -- Ms. Francis is -- is your
14   client?
15       A.    No.  I mean, if she asks me to do a job, then
16   I will do a job and I will give it back to her.
17       Q.    Did Ms. Francis pay you for this work?
18             (Pause.)
19             THE WITNESS:  No.
20   BY MR. LUFT:
21       Q.    All right.  Who paid you for the work?
22       A.    Counsel's firm.
23       Q.    Which counsel?
24       A.    Mr. Zeisler's firm.
25       Q.    So Mr. Zeisler's firm paid you to do the

Page 64

1          ████████ - Highly Confidential
2    translation?
3        A.    I assume so, yeah.
4        Q.    But Ms. Francis was the one who asked you?
5        A.    Uh-huh, yes.
6        Q.    How much did they pay you to do the
7    translation?
8        A.    I charge by the day --
9        Q.    Okay.
10       A.    -- and do I have to say that?
11       Q.    You do.  I'm sorry.
12             MR. HENZY:  It's not very relevant.
13             But yeah, you have to, if he really wants
14   to know.
15             THE WITNESS:  As an interpreter, my day
16   rate is a thousand dollars a day.
17   BY MR. LUFT:
18       Q.    Is that how much you were paid to do this
19   translation?
20       A.    Yes.
21       Q.    How long did it take you to do the
22   translation?
23       A.    About a day.
24             (Pause.)
25

Page 65

1          ████████ - Highly Confidential
2    BY MR. LUFT:
3        Q.    After you sent --
4    How long did it take you to get back to Ms. Francis
5    with your work product?
6              (Pause.)
7              THE WITNESS:  Can you ask the question
8        again?
9    BY MR. LUFT:
10       Q.    Sure.  You said Ms. Francis sent you this
11   portion of the transcript about a month ago --
12       A.    Yes.
13       Q.    After receiving the email --
14       A.    Yes.
15       Q.    -- with the request that you translate it,
16   how long did it take you to get back to her with your
17   work product?
18             (Pause.)
19             THE WITNESS:  I think a couple of days or
20        several days.  Within several days.
21   BY MR. LUFT:
22       Q.    Okay, so -- but within a week?
23       A.    Yes.  I think so, yeah.
24       Q.    After you sent Ms. Francis back the work
25   product --

TSG Reporting - Worldwide    877-702-9580

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002139
USAO-REL_001597007

Page 66

█████████ - Highly Confidential

1
2    A.    Uh-huh.
3    Q.    -- did you have any other conversations with
4    Ms. Francis about this translation?
5          MR. HENZY:  I'm going to actually object
6          now, based on attorney-client privilege.  I'm
7          going to instruct you not to answer.
8          MR. LUFT:  Based on whose attorney-client
9          privilege?
10         I'm sorry.  Just -- Eric, just so I
11         understand, who -- who's the relationship
12         between?
13         MR. HENZY:  It's between Melissa Francis
14         and Ho Wan Kwok.
15   BY MR. LUFT:
16   Q.    Okay.  Is Ms. Francis your attorney?
17   A.    No.
18         MR. LUFT:  So I don't understand what the
19         privilege assertion is.
20         THE WITNESS:  But anyway, no.
21         MR. HENZY:  It's a privilege on Mr. Kwok.
22         You can't violate attorney-client privilege.
23         I mean, █████████████ -- hold on.
24         ███████ was acting as an interpreter at the
25         direction of counsel for Mr. Kwok, so ████ --

Page 67

█████████ - Highly Confidential

1
2    ████████ covered by the privilege.  That's --
3          That's a classic case of a third party
4          being covered by privilege, Avi.  I can't -- I
5          can't do my job because I don't understand
6          Chinese.  There's an audio that's in Chinese.
7          I need an interpreter to tell me what's in the
8          audio, okay?
9    BY MR. LUFT:
10   Q.    Who retained you to do this job?
11   A.    I don't know.
12   Q.    Who were you translating on behalf of?
13         (Pause.)
14         THE WITNESS:  I don't really know.
15         Mechanically -- you know.
16         I'm only given the job and then I listen
17         to the file and then I produce the work
18         product.  I send it back and I get paid.  To
19         me, that's the end of it.
20   BY MR. LUFT:
21   Q.    Okay.  So Mr. Henzy's firm was not
22   representing you at the time, correct?
23   A.    No, that's correct.
24   Q.    Okay.  Can you please tell me about any
25   communications you had with Ms. Francis with regard to

Page 68

█████████ - Highly Confidential

1
2    this communication other than the document she sent?
3          MR. HENZY:  Objection, privilege.  I
4          instruct you not to answer.
5          MR. LUFT:  Eric, you can't introduce an
6          exhibit and put ████ up as a witness on behalf
7          of it and then say, "But I won't tell you
8          anything ████ said about it."  You made the
9          choice.
10         MR. HENZY:  But you're not asking ████ a
11         question --
12         MR. LUFT:  Okay.
13         MR. HENZY:  -- about what ████ said about
14         it or what ████ did.
15         You're asking ████ a question about what a
16         lawyer said to ████  That is privileged
17         communication.
18   BY MR. LUFT:
19   Q.    Let me ask you this, ███████████
20   Are you here to -- are you testifying as a fact
21   witness or an expert witness in this matter?
22         MR. HENZY:  Objection, asks for a legal
23         conclusion.  I don't know how ████ would know
24         that.
25

Page 69

█████████ - Highly Confidential

1
2    BY MR. LUFT:
3    Q.    Do you know if you're testifying as a fact
4    witness or an expert?
5    A.    I don't.
6          MR. LUFT:  Mr. Henzy, is ████ being put
7          forward as an expert or as a fact witness in
8          this matter?
9          MR. HENZY:  ████ being put forward as a
10         witness, I think, primarily a fact witness.
11         I'm not going to say exclusively as a fact
12         witness.
13         MR. LUFT:  Well, we are entitled under
14         the federal rules to know if ████ is being put
15         forward as an expert.
16         So I need you to tell me, because it's
17         going to impact the questioning I have.
18         MR. HENZY:  They are going to be aspects
19         of ████ testimony that maybe deemed to be
20         expert testimony.
21         MR. LUFT:  In that case, there is no
22         privilege and I'm entitled to ask ████ about
23         this.
24         ████ a testifying witness.  I'm entitled
25         to know about ████ opinions, what ████ relied

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002140
USAO-REL_001597008

Page 70

```
 1              ███████ - Highly Confidential
 2         upon, and the communications ███ had in
 3         connection with those opinions.
 4              MR. HENZY:  That's not the question you
 5         asked, though.
 6              MR. LUFT:  It 100 percent is.
 7              MR. HENZY:  You didn't ask ███ what did
 8         you rely upon.
 9              MR. LUFT:  Okay.
10              MR. HENZY:  I mean, ask ███ that, Avi,
11         and then we can go from there.
12    BY MR. LUFT:
13         Q.   ███████████
14         A.   Uh-huh.
15         Q.   -- are you going to be offering expert
16    testimony in this case?
17              MR. HENZY:  Objection, asks for a legal
18         conclusion.
19    BY MR. LUFT:
20         Q.   You can answer.
21         A.   If the court wants me to say something,
22    answer a question, I will answer a question.
23    I don't know whether I'm asked to -- to be an
24    expert witness or whatever witness.  I'm just here to
25    answer questions.
```

Page 71

```
 1              ███████ - Highly Confidential
 2         Q.   What expert opinions are you prepared to
 3    offer in this case?
 4              MR. HENZY:  Objection, asks for a legal
 5         conclusion.
 6              MR. LUFT:  I'm entitled to know what --
 7         if ███ going to be put forth as an expert,
 8         I'm entitled to know --
 9              MR. HENZY:  ███ can answer the question.
10    BY MR. LUFT:
11         Q.   What expert opinions are you going to put
12    forward in this case?
13              MR. HENZY:  Objection, asks for a legal
14         conclusion.  You can ask ███ what opinion
15         she's going to be offering.
16              MR. LUFT:  No, Eric.
17              MR. HENZY:  I'm not going to --
18              I'm not -- you're right.  I shouldn't
19         tell you what question to ask.  You're right.
20              MR. LUFT:  More importantly, if you're
21         putting forward an expert witness, you have to
22         disclose what expert opinions they have
23         before -- at their deposition.
24              MR. HENZY:  So -- so you can ask ███
25         Ask ███ -- well, go ahead.  Ask the question
```

Page 72

```
 1              ███████ - Highly Confidential
 2         I -- I made an objection, and now ███ can
 3         answer the question.
 4    BY MR. LUFT:
 5         Q.   Do you know what expert opinions you're going
 6    to be prepared to offer to the court in this case?
 7         A.   I don't, but I'm a court certified
 8    interpreter/translator, and I've been in -- working as
 9    an interpreter in court cases for over 20 years.
10         So for that, if the court asks me questions about
11    interpretation, I would tell them what I think as an
12    experienced court certified interpreter.
13         Q.   And if the court chooses not to ask you any
14    questions --
15         A.   Uh-huh.
16         Q.   -- you're not prepared to offer any expert
17    testimony in this case?
18              MR. HENZY:  Objection.
19              Asks for a legal conclusion.  It's also
20         vague and ambiguous.
21              THE WITNESS:  If the Court is not asking
22         me questions, why would I say anything?
23    BY MR. LUFT:
24         Q.   Because I believe Mr. Henzy wants you to
25    answer questions.
```

Page 73

```
 1              ███████ - Highly Confidential
 2         A.   Well, that is to prepare for the case, right?
 3         Q.   Well --
 4         A.   The court?
 5         Q.   ███████████
 6         A.   Uh-huh.
 7         Q.   -- please tell me all expert opinions you
 8    intend to offer at the hearing on Tuesday.
 9              MR. HENZY:  Objection, asks for a legal
10         conclusion.
11              THE WITNESS:  I don't know.  I am --
12         whatever Court is asking me -- whatever --
13              Whatever question is asked of me at the
14         Court hearing on Tuesday, I would answer them.
15    BY MR. LUFT:
16         Q.   So sitting here today you're not aware of any
17    expert opinions that you're planning to offer at the
18    hearing --
19         A.   That's correct.
20         Q.   -- with respect to this contempt motion?
21         A.   That's correct.
22              MR. HENZY:  Objection, asks for a legal
23         conclusion.
24              (Pause.)
25
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002141
USAO-REL_001597009

Page 74

1        ▮▮▮▮▮ - Highly Confidential
2    BY MR. LUFT:
3        Q.   Has Mr. Henzy asked you to offer any expert
4    opinions at the hearing on Tuesday?
5              MR. HENZY:  Objection, asks for a legal
6         conclusion.
7              THE WITNESS:  Not specifically.
8    BY MR. LUFT:
9        Q.   Has anyone from are Mr. Henzy's firm asked
10   you to offer any expert opinions at the hearing on
11   Tuesday?
12             MR. HENZY:  Same objection.
13             THE WITNESS:  No.
14             (Pause.)
15   BY MR. LUFT:
16       Q.   Has Ms. Francis asked you to offer any expert
17   opinions --
18       A.   No.
19       Q.   -- at the hearing on Tuesday?
20             MR. HENZY:  Same objection.
21             THE WITNESS:  No.
22   BY MR. LUFT:
23       Q.   Has any counsel for Mr. Kwok asked you to
24   offer any expert opinions?
25       A.   No.

Page 75

1        ▮▮▮▮▮ - Highly Confidential
2              (Pause.)
3    BY MR. LUFT:
4        Q.   And sitting here today, you cannot identify
5    any expert opinions that you plan to offer to this Court
6    as testimony as the context hearing on Tuesday, correct?
7              MR. HENZY:  Same objection.
8              THE WITNESS:  That's correct.
9    BY MR. LUFT:
10       Q.   Okay.  Other than the portion of the
11   transcript that Ms. Francis sent you, have you reviewed
12   any other portions of the two days of 341 testimony?
13       A.   No.
14       Q.   Did you ever ask to review any other portions
15   of it?
16       A.   No.
17       Q.   Have you ever listened to the audio of the
18   rest of the 341 hearing?
19       A.   No.
20             (Pause.)
21   BY MR. LUFT:
22       Q.   Did anyone ever ask you to listen to any
23   other portions of the audio of the 341 hearing?
24       A.   No.
25       Q.   Anyone ever ask you to look at any other

Page 76

1        ▮▮▮▮▮ - Highly Confidential
2    portions of the transcript of the 341 hearing other than
3    the portion that Ms. Francis had selected for you?
4        A.   No.
5              (Pause.)
6    BY MR. LUFT:
7        Q.   Have you ever acted as a Court interpreter?
8        A.   Yes.
9        Q.   When?
10             (Pause.)
11   BY MR. LUFT:
12       Q.   And by that, I mean acting as the interpreter
13   for a court.
14       A.   Yes.
15       Q.   Yes?  So I meant --
16       A.   Yes.
17       Q.   Just clarifying.  Sorry.
18       A.   Yes, throughout the past 20 to 30 years.
19       Q.   Okay.  How often?
20       A.   More often 20 years ago, and less often the
21   recent 10 years, and less often the last year.
22       Q.   How often have you acted as interpreter for
23   the Court in the past 10 years?
24       A.   How often?  It's really hard to say.
25       Q.   Give me your best recollection.

Page 77

1        ▮▮▮▮▮ - Highly Confidential
2        A.   See, I work for cases, and -- and there are a
3    number of courts ...
4              (Pause.)
5              THE WITNESS:  Once a month.  A case a
6         month.
7    BY MR. LUFT:
8        Q.   When was the first time you worked with
9    Mr. Kwok?
10             (Pause.)
11             THE WITNESS:  I can't remember when was
12        the last hearing that I appeared as check
13        interpreter for Mr. Kwok.
14   BY MR. LUFT:
15       Q.   Do you recall the first time you acted as an
16   interpreter for Mr. Kwok?
17       A.   That I remember, yes.
18       Q.   When was that?
19       A.   I don't recall the specific time.  It would
20   be ranging between 2016 to 2017.  That was the first
21   time.
22       Q.   Okay, and other than serving as a check
23   interpreter for Mr. Kwok in court proceedings, have you
24   ever worked as -- on behalf of Mr. Kwok in any other
25   capacity?

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002142
USAO-REL_001597010

Page 78

1              ▮▮▮▮ - Highly Confidential
2      A.    At the early days, yeah.
3           The first time I was -- I was referred to be an
4    interpreter for his conference.
5      Q.    What conference is that?
6      A.    It was a conference supposed to happen --
7    supposed to happen in Washington, D.C. However, it did
8    not happen, but that was the first time I met him.
9      Q.    Are there any other times you've worked for
10   Mr. Kwok other than -- other than as a check interpreter
11   in connection with court proceedings?
12     A.    Yes.
13     Q.    Please tell me about them.
14     A.    I worked as an interpreter for Mr. Kwok in a
15   court case -- in a case regarding defamation.
16     Q.    Other than in connection with a court case --
17     A.    Uh-huh.
18     Q.    -- have you ever acted as a -- worked for
19   Mr. Kwok in any capacity --
20     A.    As an --
21     Q.    -- with the exception of the conference you
22   mentioned?
23            MR. HENZY:  I'm just going to object.
24            Vague and ambiguous.  I'm not trying --
25            just --

Page 79

1              ▮▮▮▮ - Highly Confidential
2            MR. LUFT:  Okay.
3            MR. HENZY:  Work for him in any other
4       capacity?  You mean as an employee or ...
5            MR. LUFT:  Worked for him.  I don't care
6       how ▮▮▮ characterizes it.
7            MR. HENZY:  Okay.
8            THE WITNESS:  Just conferences.
9    BY MR. LUFT:
10     Q.    What conferences have you worked for
11   Mr. Kwok?
12     A.    Mr. Kwok had, I think --
13           Once a year, in the past, he had those
14   anti-Communist Party conferences, and there would be
15   kind of like several interpreters interpreting for those
16   conferences simultaneously.
17           We would -- we would -- we would do those
18   conference interpreting -- simultaneous interpreting in
19   a conference setting.
20     Q.    Anything else?
21     A.    And the court defamation case and check
22   interpreting.
23     Q.    Anything else?
24     A.    That's about it.
25            (Thereupon, an informal discussion was

Page 80

1              ▮▮▮▮ - Highly Confidential
2       held off the record.)
3    BY MR. LUFT:
4      Q.    What's your best estimate of how many times
5    you've been hired by Mr. Kwok?
6      A.    I was never hired by Mr. Kwok.
7      Q.    Who hired you, then?
8      A.    His office.
9      Q.    What's Mr. Kwok's office?
10     A.    Say that again?
11     Q.    What do you mean when you say, "Mr. Kwok's
12   office"?
13     A.    His staff.
14     Q.    Who is on Mr. Kwok's staff?
15     A.    For court cases, then it would be
16   Ms. Francis, and at the beginning of the conference, it
17   was Ms. Wang.
18     Q.    Anyone else on Mr. Kwok's staff besides
19   Ms. Francis and Ms. Wang?
20     A.    That I have no idea.
21     Q.    Are you aware of any other people who work
22   for Mr. Kwok other than Ms. Francis and Ms. Wang?
23     A.    I don't know them.
24     Q.    When you say, "Ms. Wang," are you referring
25   to Yvette Wang?

Page 81

1              ▮▮▮▮ - Highly Confidential
2      A.    Yes.
3      Q.    When you say they hired you, they hired you
4    to work on behalf of their boss, Mr. Kwok?
5      A.    They hired me to work in an event, and those
6    event -- whatever it is, then that's the event.
7      Q.    So let's take the defamation case.
8      A.    Uh-huh.
9      Q.    Mr. Kwok is a party to that case?
10     A.    That's right.
11     Q.    And you were being hired by Mr. Kwok's staff
12   to work on their boss' behalf?
13     A.    As an interpreter.
14     Q.    Right.  On behalf their boss, Mr. Kwok?
15     A.    For Mr. Kwok.
16     Q.    Okay, and who paid you for your work on
17   behalf of Mr. Kwok?
18     A.    In those time, Golden Spring.
19     Q.    Did you have a contract with Golden Spring?
20     A.    No.  No.
21     Q.    So how did you know that Golden Spring was
22   going to pay you for the work that you did on behalf of
23   Mr. Kwok?
24     A.    I think it was the first time I was referred
25   to by a fellow interpreter to work for Mr. Kwok's

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002143
USAO-REL_001597011

Page 82

▮▮▮▮ - Highly Confidential

1  conference and -- because I was referred to and from a
2  fellow interpreter, so if my colleague worked for him
3  and got paid, then I think I will get paid.
4      Q.    So when Mr. Kwok would have Golden Spring pay
5  you --
6      A.    Uh-huh.
7      Q.    -- for your work, how did they send you that
8  money?
9      A.    They mailed it to me.
10     Q.    By check?
11     A.    Uh-huh, yes.
12     Q.    And whose account was that check from?
13     A.    Golden Spring.
14     Q.    Was there any ever -- any entity Mr. Kwok had
15  you paid by other than Golden Spring for any of the work
16  that you did for him?
17               (Pause.)
18          THE WITNESS:  If I was contracted by or
19          if I was requested by Golden Spring to do the
20          work for an event, then I was paid by Golden
21          Spring.
22  BY MR. LUFT:
23     Q.    And for other work you did for Mr. Kwok, did
24  anyone ever pay you for that work other than Golden

Page 83

▮▮▮▮ - Highly Confidential

1  Spring.
2      A.    "Other work" meaning ...
3      Q.    Meaning like the defamation case for -- that
4  Mr. Kwok is involved in, right?
5      A.    That was requested by Golden Spring, so
6  Golden Spring paid me.
7      Q.    Have you ever been paid for work you have
8  done on behalf of Mr. Kwok by any entity other than
9  Golden Spring?
10     A.    For this bankruptcy --
11     Q.    Uh-huh.
12     A.    -- the court hearing, serve as check
13  interpreter, I was paid by counsel's firm.
14     Q.    Are you being paid for your time today?
15     A.    Not -- not -- not here now.
16     Q.    How about for Tuesday?  Are you being
17  compensated?
18     A.    Yes.
19     Q.    Who is paying that?
20     A.    I expect to be, as you ...
21     Q.    And who is paying you for that?
22     A.    Because it was requested by Zeisler, so I
23  will be sending my invoice to Zeisler, and I will expect
24  Mr. Zeisler to pay me.

Page 84

▮▮▮▮ - Highly Confidential

1      Q.    How about in connection for the work
2  Ms. Francis sent you the translation work, who will pay
3  you for that?
4      A.    I send the invoice to Zeisler, too.
5      Q.    Can you give --
6          Can you tell me how much money you've earned work
7  for Mr. Kwok since the first time you started working
8  for him up through today?
9      A.    I have not tallied up.
10     Q.    What's your best estimate?
11               (Pause.)
12          THE WITNESS:  It was hard to say, really.
13          I -- I --
14          I can't, because at the early days, I did
15          a number of conferences for him, and that was
16          good.  Nowadays, not that many, so ...
17  BY MR. LUFT:
18     Q.    Do you think you've earned more than $10,000
19  work for Mr. Kwok?
20     A.    From -- since 2016 or 2017?
21     Q.    Yes.
22     A.    Yes.
23     Q.    More than $20,000?
24     A.    Yes.

Page 85

▮▮▮▮ - Highly Confidential

1      Q.    More than $50,000?
2      A.    That I cannot be sure.
3      Q.    More than $50,000, potentially?
4      A.    See, the thing is I have to ask you make a
5  division.  Fifty thousand divide by one thousand, how
6  many events?
7      A.    Because I remember events.  I don't really remember
8  the number -- you know.
9      Q.    From 2016 until today --
10     A.    Uh-huh.
11     Q.    -- anyone you've worked with more often than
12  Mr. Kwok?
13     A.    Yes.  Much more.
14     Q.    How many other clients do you have?
15     A.    I have a lot of clients.
16     Q.    Do you ever serve as interpreter for Mr. Kwok
17  in connection with his business meetings?
18     A.    No.
19     Q.    How about when Mr. Kwok is talking to
20  Ms. Francis?  Who is interpreting for them?
21     A.    I have no idea.
22     Q.    Have you ever seen Mr. Kwok talk to
23  Ms. Francis?  Have you ever seen him talking to
24  Ms. Francis?

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002144
USAO-REL_001597012

**Page 86**

█████ - Highly Confidential

2  A.  I may have.  I can't remember specifically.
3  Q.  Did you have to interpret for them?
4  A.  No.
5  Q.  Were they just talking in English, so it
6  wasn't necessary?
7       (Pause.)
8       THE WITNESS:  I'm trying to remember
9       whether I was there any time.  I don't know.
10 BY MR. LUFT:
11 Q.  How about when Mr. Kwok talks to other people
12 in English?  Does he ask you to help him out with words?
13 A.  When he met with counsel, then I interpret
14 for him.
15 Q.  Okay, but when he's talking to other people
16 in English, does he ever ask you to help him with words
17 that he doesn't know in English?
18      MR. HENZY:  Object.  I'm not sure ████
19      testified --
20 BY MR. LUFT:
21 Q.  You can go ahead.  Please answer.
22 A.  I don't interpret for him in English outside
23 from court cases.
24 Q.  Have you ever heard Mr. Kwok speak English?
25 A.  Yes.

**Page 87**

█████ - Highly Confidential

2  Q.  How often?
3  A.  He spoke with his counsel sometimes with
4  broken English.
5  Q.  For how -- and they would be talking about
6  legal matters?
7  A.  No, I don't think so.  When talking in legal
8  matters, I would be interpreting.
9  Q.  But otherwise, he speaks to counsel in broken
10 English?
11 A.  Like "How are you?"  That kind of thing.
12 Q.  How conversant is he in English?
13 A.  I have no idea.
14 Q.  From -- based on your observations?
15      MR. HENZY:  Objection.  Asked and
16      answered.
17      (Pause.)
18      THE WITNESS:  He's okay,
19      conversationally, with casual matters.
20 BY MR. LUFT:
21 Q.  Have you ever received a check from any
22 entity other than Golden Spring or the Zeisler firm in
23 connection with your work on behalf of Mr. Kwok?
24      (Pause.)
25      THE WITNESS:  Golden Spring and Zeisler.

**Page 88**

█████ - Highly Confidential

2       Brown Rudnick, most recently.  That's it.
3  BY MR. LUFT:
4  Q.  That's it?  Okay.  Do you travel with
5  Mr. Kwok?
6  A.  No.
7  Q.  Okay.  When Mr. Kwok has a job for you --
8  A.  Uh-huh.
9  Q.  -- how does he communicate that to you?
10 A.  Mr. Kwok never communicated with me and it
11 is -- it's not his job.  Ms. Wang would tell me to
12 interpret for Mr. Kwok's conference.
13 Q.  When you say it's not Mr. Kwok's "job," what
14 do you mean by that?
15 A.  I mean I don't -- at conferences, I don't
16 really interpret for -- by his side.  It's a conference.
17 You know, it's an event, so I would interpret in that
18 conference.
19 Q.  Okay.  How about when you're acting as a
20 check interpreter for Mr. Kwok?
21 A.  Right, and Ms. Francis would tell me the time
22 and the date and the venue --
23 Q.  Uh-huh.
24 A.  -- and I would be there.
25 Q.  Did you ever have any communications with Max

**Page 89**

█████ - Highly Confidential

2  Krasner?
3  A.  Max Krasner?  No.
4  Q.  How about Aaron Mitchell?
5  A.  I saw him in court, and he would tell me if
6  Mr. Kwok is going to be there late or he's there or
7  something like that.
8  Q.  Daniel Podolski?
9  A.  He was around when there was -- when I was
10 working in those conference.
11 Q.  What's the relationship like ...
12      MR. LUFT:  Let me strike that.
13 BY MR. LUFT:
14 Q.  What's Ms. Wang's job for her boss, Mr. Kwok?
15 A.  I ...
16      MR. HENZY:  Objection, lack of
17      foundation.
18      THE WITNESS:  I don't really know.  I
19      only get the request to interpret.
20 BY MR. LUFT:
21 Q.  But you understand that Ms. Wang works for
22 Mr. Kwok --
23 A.  Yes.
24 Q.  -- correct?
25 A.  Yes.

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002145
USAO-REL_001597013

Page 90

1     ████████ - Highly Confidential
2     Q.   Do you ever see Mr. Kwok give her directions?
3     A.   I did not see personally.
4     Q.   Have you ever worked for any other members of
5   Mr. Kwok's family as an interpreter?
6     A.   No.
7          (Pause.)
8   BY MR. LUFT:
9     Q.   Have you been --
10         What compensation have you been told you will
11  receive for any testimony you give in this case?
12    A.   You mean here, now?  For this --
13    Q.   For --
14    A.   -- or anything?
15    Q.   For anything --
16    A.   No.
17    Q.   -- related to this contempt motion.
18    A.   No.  I give testimony in court or I --
19  When I'm deposed, when it is a court case, I don't
20  know that should be compensated.
21    Q.   So if you appear on Tuesday --
22    A.   Yeah.
23    Q.   -- you are not expecting to be compensated?
24    A.   Not as a witness.
25    Q.   What are you expecting to be compensated as?

Page 91

1     ████████ - Highly Confidential
2     A.   If I were the check interpreter, yes, I will
3   expect to be paid.
4     Q.   Are you going to be Mr. Kwok's check
5   interpreter at the hearing on Tuesday?
6     A.   That's what I thought I was going to be.
7     Q.   When you say that's what you thought you were
8   going to be, what do you mean?
9     A.   Because before you ask me the question
10  whether I'm going to be testifying on Tuesday, and I did
11  not know that I was.
12         So I -- my whole -- my whole understanding was that
13  I would be the check interpreter for that hearing.
14    Q.   So this is pretty surprising to you today,
15  huh?
16    A.   Like I said, it may not have registered with
17  me.  Maybe it was mentioned.  It's -- it's just I did
18  not catch it.  I thought that's only today, so yeah.
19    Q.   Will you be paid a thousand dollars for your
20  work on Tuesday?
21    A.   Well, it depends on the time.  If it is a
22  whole day, yes.
23    Q.   If not, do you have an hourly rate?
24    A.   If it is falling into -- within four hours,
25  that will be a half day rate.

Page 92

1     ████████ - Highly Confidential
2     Q.   Which is $500?
3     A.   No.
4     Q.   What is your half day rate?
5     A.   Do you have to ask me my rate?  Really?
6     Q.   I'm sorry.
7     A.   Do I have to say that?
8          MR. HENZY:  You have to say it, yeah.
9          THE WITNESS:  Money should not be talked
10         about in public.  Anyway, 600.
11  BY MR. LUFT:
12    Q.   Okay.  Are you owed any money by Mr. Kwok on
13  behalf of the work you've done for him to date?
14    A.   I haven't sent any invoice for today, so no.
15    Q.   How about for the work you've been doing up
16  until today?
17    A.   I was not owed any money.
18    Q.   Okay.
19         (Pause.)
20  BY MR. LUFT:
21    Q.   Do you have any -- can you tell me what your
22  highest --
23         MR. LUFT:  Let me strike that.
24  BY MR. LUFT:
25    Q.   Can you tell me -- did you go to college?

Page 93

1     ████████ - Highly Confidential
2     A.   Uh-huh, yes.
3     Q.   Where?
4     A.   England.
5     Q.   And what did you study?
6     A.   I got a bachelor degree in translation in
7   Westminster University, England.
8     Q.   In connection with the work you've done in
9   this matter --
10    A.   Uh-huh.
11    Q.   -- what -- what scholarly texts did you
12  consult in forming -- in performing your work?
13    A.   I haven't consulted any scholarly work.
14    Q.   Have you reached out to any other experts in
15  the field to consult with regard to any opinions you may
16  have in this matter?
17    A.   No.
18    Q.   Can you describe for me the methodology you
19  used in connection with your work in this matter?
20    A.   I listened to the audio, and then I
21  transcribed the English part of the statements word by
22  word, and then I translate the Chinese words into
23  English and recorded them in my work product.
24    Q.   Do you have copies of that work product that
25  you created?

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002146
USAO-REL_001597014

Page 94

1  ▮▮▮▮▮ - Highly Confidential
2   A.   No.  I don't have it with me.
3   Q.   Do you have it at home?
4   A.   I have it at home.
5  *        MR. LUFT:  Okay.
6            I would like to request copies of that
7        work -- ▮▮▮▮▮ work with regard to
8        her opinions as well.
9            THE WITNESS:  Sorry.  But -- didn't --
10           Wasn't that the one that you were talking
11           about before?  Are you talking about something
12           else?  I haven't done any --
13  BY MR. LUFT:
14   Q.   So you're --
15       You're referring to just the documents you provided
16  to Ms. Francis?
17   A.   Right.
18   Q.   Okay.  There's no other drafts?
19   A.   No.
20   Q.   There's no other work product?
21   A.   No.
22   Q.   Okay.  Prior to the 341 hearing, were you
23  involved in the preparation for it?
24   A.   No.
25   Q.   Did you meet with counsel and Mr. Kwok in

Page 95

1  ▮▮▮▮▮ - Highly Confidential
2  preparation for that hearing?
3   A.   The 341?
4       I attended some meetings between Mr. Kwok and the
5  counsels, but I cannot recall specifically what -- what
6  meetings -- you know, what subject matters were
7  discussed.
8   Q.   Do you recall if there was any discussion of
9  Ace Decade --
10           MR. HENZY:  Objection.
11           THE WITNESS:  No.
12  BY MR. LUFT:
13   Q.   -- at that meeting?
14   A.   No.
15           MR. HENZY:  Objection.  Move to strike.
16       Objection, attorney-client privilege.  I
17       instruct her not to answer.
18           MR. LUFT:  Mr. Kwok's privilege now
19       belongs to Mr. Despins on that issue.
20           (Thereupon, an informal discussion was
21       held off the record with the shorthand
22       reporter.)
23           MR. LUFT:  Mr. Kwok's privilege with
24       regard to any work in connection with his
25       bankruptcy proceeding with Brown Rudnick now

Page 96

1  ▮▮▮▮▮ - Highly Confidential
2       belongs to Mr. Despins.
3           MR. HENZY:  ▮▮▮ answered the question.
4           THE WITNESS:  No, I said.
5  BY MR. LUFT:
6   Q.   Do you recall any discussion at the UBS
7  litigation?
8   A.   No.
9   Q.   Any discussion about lawsuit in the United
10  Kingdom?
11   A.   What?
12   Q.   A lawsuit in the United Kingdom?
13           (Pause.)
14           THE WITNESS:  Counsel, my memory at the
15       moment is quite muddied.
16           I remember a lawsuit in the United
17       Kingdom mentioned, but probably in court, so I
18       cannot recall exactly -- you know.
19  BY MR. LUFT:
20   Q.   Okay.  Prior to hearing the name Ace Decade
21  at the 341 hearing --
22   A.   Uh-huh.
23   Q.   -- had you ever heard that name before?
24   A.   I might have.
25   Q.   Do you recall in what context?

Page 97

1  ▮▮▮▮▮ - Highly Confidential
2   A.   Probably between counsel's meeting.
3   Q.   What's your best recollection of what you
4  heard discussed about Ace Decade prior to the 341
5  hearing?
6   A.   I don't recall.
7   Q.   After the -- immediately after the 341
8  hearing --
9   A.   Uh-huh.
10   Q.   -- did you have any discussion with anyone
11  with regard to the topic of Ace Decade?
12   A.   No.
13   Q.   Did you have any conversation with anyone
14  with regard to the question of mistranslation with
15  regard to any questions about Ace Decade?
16   A.   Not after departing from the courtroom.
17   Q.   Upon leaving the 341 hearing, did you tell
18  anyone that there were material misstatements made in
19  the translation with regard to Ace Decade?
20           (Pause.)
21           MR. HENZY:  Objection.  Ambiguous, vague.
22           THE WITNESS:  I probably --
23       I probably would have said something
24       like -- like -- like a tirade -- you know.
25

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002147
USAO-REL_001597015

Page 98

███████ - Highly Confidential

1
2   BY MR. LUFT:
3       Q.   I'm asking you if you have a specific
4   recollection now of what you think you might have said.
5   Do you recall anything --
6       A.   No.
7       Q.   -- about any mistakes with regard to any
8   testimony as to Ace Decade?
9       A.   No.  I might have said something, but I don't
10  recall what I said.
11          (Pause.)
12  BY MR. LUFT:
13      Q.   Okay.  When you're translating, do you wait
14  until the speaker is done with their question to start
15  translating, or if it's a long question, do you make
16  them pause a translate a portion of the question and
17  then do another portion?
18      A.   I usually wait until the question's asked
19  completely.  Then I start to -- to interpret it.
20      Q.   Do you take notes while the questioner is
21  speaking?
22      A.   Yes.
23      Q.   When you're acting as a check interpreter, do
24  you take notes?
25      A.   Yes.

Page 99

███████ - Highly Confidential

1
2       Q.   Do you have any of the notes that you took
3   during Mr. Kwok's 341 hearing?
4       A.   No.
5       Q.   What happened to those notes?
6       A.   Just discarded it.
7       Q.   When did you get rid of them?
8       A.   When the book is finished.  Then I'll just --
9   I use steno pad, so when the pad is full, then I'll just
10  discard them.
11      Q.   Do you know when you discarded your notes
12  with regard to the 341 hearing?
13          (Pause.)
14          THE WITNESS:  It could be that day or it
15      could be out of the next meeting, because --
16      because --
17          I don't use one notepad for one case, so
18      it's continuous, so I actually can't recall
19      when I discarded that.
20  BY MR. LUFT:
21      Q.   Did anyone from Mr. Kwok's counsel ask you
22  for copies of your notes with regard to any
23  translations?
24      A.   No.
25      Q.   Did anyone from Mr. Kwok's counsel tell you

Page 100

███████ - Highly Confidential

1
2   that after the 341 hearing, that they wanted to see your
3   notes because they were concerned about the issue of
4   mistranslations?
5       A.   No.
6       Q.   Did Mr. Kwok tell you that he wanted you to
7   speak with his counsel with regard to the issue of
8   mistranslations?
9       A.   No.
10      Q.   Did anyone acting on behalf of Mr. Kwok talk
11  to you about the fact there were mistranslations at the
12  hearing that action should be taken about after the
13  hearing concluded?
14      A.   No.
15      Q.   Okay.  When you're translating --
16      A.   Uh-huh.
17      Q.   -- do you consider the context of the
18  question?
19      A.   Yes.
20      Q.   How so?
21      A.   Well, I think it has to be considered, right?
22  But you're asking me -- I don't know how to answer this
23  question, actually.
24          (Pause.)
25          THE WITNESS:  When you say, "How so," you

Page 101

███████ - Highly Confidential

1
2       want me to give you examples?
3          You want me to tell you what kind of
4      context -- give -- like lay out a scenario or
5      what?
6   BY MR. LUFT:
7       Q.   Let me ask it a different way.
8       A.   Uh-huh.
9       Q.   You said you have to consider context.
10      A.   Yes.
11      Q.   Why do you have to consider context?
12      A.   Well, if it's just a line of questions, then
13  you have already interpreted previous questions and
14  then -- so the context is naturally following, right?
15  I mean, but if they are stand-alone questions,
16  then -- then there is no context involved.
17      Q.   At the 341 hearing --
18      A.   Uh-huh.
19      Q.   -- the translator was sworn in to tell the
20  truth, correct?
21      A.   Yes.
22      Q.   As the check interpreter, you are not sworn
23  in, correct?
24      A.   I think we were.  I think all interpreters
25  are sworn.

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002148
USAO-REL_001597016

Page 102

1          ██████ - Highly Confidential
2       Q.    Okay.  I guess we can look at the transcript
3    later, but your recollection is you were sworn in as a
4    translator at the 341 hearings?
5       A.    I don't recall, but because there are times
6    that -- as check interpreters, we would be sworn in,
7    too, at court and at depositions.
8          So I may not have a clear recollection whether I
9    was sworn in at that specific court hearing, but as an
10   interpreter, we -- we -- we know we're always acting
11   under oath of our professional oath.
12      Q.    Okay, and at the 341 hearing, a question
13   would be asked in English --
14      A.    Uh-huh.
15      Q.    -- correct?
16      A.    Yes.
17      Q.    -- and then you would hear the Chinese
18   translation?
19      A.    Yes.
20      Q.    And as the check interpreter, if there was a
21   problem with that question, you would either let
22   Mr. Baldiga know through a note or you would make a
23   statement, correct?
24      A.    Yes.
25      Q.    And if there was no problem with the

Page 103

1          ██████ - Highly Confidential
2    question, you would neither pass a note nor make a
3    statement, correct?
4          (Pause.)
5          THE WITNESS:  Most probably, that's
6    correct.
7    BY MR. LUFT:
8       Q.    Okay, and then here, Mr. Kwok would give an
9    answer in Chinese --
10      A.    Yes.
11      Q.    -- and then the translator would translate
12   Mr. Kwok's answer to English --
13      A.    Yes.
14      Q.    -- correct?
15      A.    Yes.
16      Q.    And if you believed the translator made an
17   error in connection with translating Mr. Kwok's answer
18   into English --
19      A.    Uh-huh.
20      Q.    -- you would again either make a statement on
21   the record or pass Mr. Baldiga a note telling him that
22   there was an error, correct?
23      A.    Most probably, yes.
24      Q.    I'm going to hand you copies of what I am
25   going to mark as ██████ Exhibit 2 and ██████

Page 104

1          ██████ - Highly Confidential
2    Exhibit 3.
3          (Thereupon, two documents were marked by
4    the shorthand reporter as ██████ Exhibit 2
5    and ██████ Exhibit 3 for identification.)
6          MR. LUFT:  Exhibit 2 will be a transcript
7    of telephonic 341 meeting of creditors, March
8    21, 2022 In Re: Ho Wan Kwok.
9          At the same time, I will also ask to mark
10   a copy of Exhibit 3, which is a transcript of
11   continued 341 Meeting of Creditors, April 6,
12   2022 In Re: Ho Wan Kwok.
13         MR. HENZY:  Thank you.
14   BY MR. LUFT:
15      Q.    ██████ do you have what has been
16   marked as ██████ Exhibit 2 and ██████ Exhibit 3 in
17   front of you?
18      A.    Yes.
19      Q.    Have you ever seen either of these documents
20   before?
21      A.    No.
22      Q.    Have you ever seen portions of these
23   documents before?
24      A.    I have seen a portion of a transcript before.
25      Q.    Do you know if it's one of these two

Page 105

1          ██████ - Highly Confidential
2    transcripts?
3       A.    I don't know.
4       Q.    Okay.  Do you want to take a second to look
5    through the documents and see if you've seen any portion
6    of these documents before?
7          MR. HENZY:  Do you want to point ██ to
8    the portion that you're probably --
9          MR. LUFT:  What I'm interested in is if
10   ██████ seen -- look, if you want to --
11   I'm trying to give your witness the
12   opportunity to look at it.  If you don't want
13   ██ to, she doesn't have to.
14         MR. HENZY:  ██████...
15         (Pause.)
16         THE WITNESS:  Right.  I think it's the --
17   I have seen a portion of the transcript
18   of the April 6th meeting.
19   BY MR. LUFT:
20      Q.    Okay, and what portion of that have you seen?
21         (Pause.)
22         THE WITNESS:  Sixty-one.  Page 61.  Let
23   me see.
24         (Pause.)
25         THE WITNESS:  Page 60, 61.

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002149
USAO-REL_001597017

Page 106

```
 1              ███████ - Highly Confidential
 2              (Pause.)
 3              THE WITNESS:  Sixty-two.  I think it's
 4       about that.
 5  BY MR. LUFT:
 6       Q.   Okay, so page 60 through 62 are the only
 7  pages of the transcript that you've seen before?  Pages
 8  60 to 62 --
 9       A.   I think so.
10       Q.   And those are the portions Ms. Francis shared
11  with you?
12       A.   Yes.
13       Q.   Other than the -- those portions of the
14  transcript --
15       A.   Uh-huh.
16       Q.   -- can you tell me what else where your
17  memory's been refreshed, what else you recall about the
18  questioning from the 341 hearings?
19              MR. HENZY:  Objection, vague and
20       ambiguous.
21              THE WITNESS:  So you're asking me apart
22       from the --
23  BY MR. LUFT:
24       Q.   Apart --
25       A.   -- from the transcript?
```

Page 107

```
 1              ███████ - Highly Confidential
 2       Q.   From the few pages that Ms. Francis shared
 3  with you --
 4       A.   Right.
 5       Q.   -- what else do you have a clear recollection
 6  of from the 341 hearing?
 7       A.   I don't have any specific recollection of the
 8  341 meeting except there were a lot of chaotic moments
 9  and my dis- -- dissatisfaction of the situation caused
10  by the interpreting, but --
11              There is a general recollection of what -- what --
12       what that day -- of that day, but I don't have any other
13       specific recollection.
14       Q.   Okay.  Let's look at Exhibit 2.  I will ask
15  you to first turn to page 31 and 32.
16       A.   31 and 32?
17       Q.   And I'll direct you specifically to the
18  bottom of page 31 that carries over to 32.
19              Do you see, on the bottom, it says "Mr. Baldiga:
20  Our interpreter believes that the response was that if
21  he had a role at Golden Spring" -- do you see that?
22       A.   Uh-huh, yes.
23       Q.   Are you the interpreter Mr. Baldiga is
24  referring to there?
25       A.   I believe so.
```

Page 108

```
 1              ███████ - Highly Confidential
 2       Q.   Would this have been an instance where you
 3  passed Mr. Baldiga a note and that's how he knew you had
 4  an issue?
 5              (Pause.)
 6              THE WITNESS:  Probably.
 7  BY MR. LUFT:
 8       Q.   Okay.  If I turn to page 33, turn to line 12,
 9  Mr. Baldiga says, "Hold on.  There's a mistranslation
10  there."
11              Do you think that's another instance of you passing
12  Mr. Baldiga a note?
13              (Several people enter the conference
14       room.)
15              MR. BASSETT:  Let's go off the record.
16              MR. HENZY:  Sorry about that.
17              THE VIDEOGRAPHER:  The time is 11:15 a.m.
18       We're going off the record.
19              (Recess taken at 11:15 a.m.)
20              (Resumed at 12:03 p.m.)
21              THE VIDEOGRAPHER:  The time is 12:03 p.m.
22       We're back on the record.
23  BY MR. LUFT:
24       Q.   ███████ I believe the last one I
25  showed you was on page 33.  I will ask you to turn to
```

Page 109

```
 1              ███████ - Highly Confidential
 2  page 45.
 3              Do you see in the middle of the page, line 16,
 4  Mr. Baldiga says, "There's a translation issue"?
 5       A.   Page 35?
 6       Q.   Page 45.
 7       A.   Oh.
 8       Q.   Line 16.
 9              (Pause.)
10              THE WITNESS:  Yes.
11  BY MR. LUFT:
12       Q.   And again, do you believe that's one of the
13  instances where you passed Mr. Baldiga a note to express
14  your concern about the translation?
15       A.   Yes.
16       Q.   Okay.  Page 54.  If you look at line 7,
17  Mr. Baldiga -- this is Bill Baldiga.
18              "I'm sorry.  I think there was a translation
19  issue."  He goes on.
20              Is this another instance where you would have
21  passed Mr. Baldiga a note where you had a concern that
22  there was a translation issue?
23       A.   Yes.
24       Q.   And to be clear, I don't mean to imply that
25  I'm being comprehensive here with regard to all of
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002150
USAO-REL_001597018

Page 110

```
1              - Highly Confidential
2    these.  I'm just citing examples to understand.
3       A.   Uh-huh.
4       Q.   Turn to page 59.
5            (Pause.)
6    BY MR. LUFT:
7       Q.   Do you see, line 7, "Mr. Baldiga:  We have a
8    translation issue.  Hold on one second.  I think our
9    interpreter is hearing this translation."
10           Do you see that?
11      A.   Yes.
12      Q.   You are the interpreter he's referring to?
13      A.   Yes.
14      Q.   And you would have passed Mr. Baldiga a note?
15      A.   Yes.
16      Q.   And this deposition was -- this -- sorry.
17   This hearing was conducted remotely?
18      A.   Oh, it was?
19      Q.   I'm asking.
20      A.   I don't.
21      Q.   Do you recall?
22      A.   I don't remember.
23      Q.   Okay.  When I look through this day's
24   transcript --
25      A.   Uh-huh.
```

Page 111

```
1              - Highly Confidential
2       Q.    -- I did not -- I didn't find any -- that's
3    not to say there is not -- there may not be one, but
4    I -- I welcome you to look.  I did not see any
5    references to private interpreter speaking or someone
6    with your name speaking.
7            Does that comport with your recollection that at
8    the first 341 hearing, Mr. Baldiga was making the
9    objections and you were not speaking?
10           (Pause.)
11           THE WITNESS:  I have no recollection of
12           what happened --
13   BY MR. LUFT:
14      Q.    Okay.
15      A.    -- and I assume when he said the
16   interpreter's -- you know, raising issue, and since I
17   did not speak, I assume that I was handing him the note,
18   but --
19           That is my assumption --
20      Q.    Okay.
21      A.    -- but I have no recollection one way or the
22   other what happened.
23      Q.    Can I take you -- ask you to take a moment --
24      A.    Right.
25      Q.    -- and look at Exhibit 2 and see if you can
```

Page 112

```
1              - Highly Confidential
2    find any reference to you actually speaking on the
3    record as opposed to Mr. Baldiga just making objections
4    at your suggestion?
5            (Pause.)
6            THE WITNESS:  Counsel, you're asking me
7            to look through the document to see whether
8            there was any part of it that where it
9            mentions "private interpreter"?  Is that what
10           your question is?
11   BY MR. LUFT:
12      Q.    Correct.  When I looked through this
13   document, I didn't see any reference to you.  I could
14   have missed one.
15           I'm asking for you -- not that you have to look
16   line listened by line --
17      A.    Uh-huh.
18      Q.    -- but if you could just give a quick
19   once-over and see if it -- if you see any reference to
20   statements by yourself in the transcript from March
21   21st.
22      A.    Right.  I flipped through it briefly, and I
23   don't see myself mentioned.
24      Q.    Okay, so based on that and your -- do you
25   think -- does this comport with your recollection that
```

Page 113

```
1              - Highly Confidential
2    there was a portion of the transcript of the 341
3    hearing, excuse me, where you were passing Mr. Baldiga
4    notes --
5       A.    Probably.
6       Q.    -- in connection as opposed to when you made
7    a decision to start making -- speaking verbally
8    yourself?
9       A.    Probably, but ... the thing is that it --
10   it --
11           It's quite puzzling to me because it's quite unlike
12   me that I would not raise any oral issue, just handing
13   him notes without -- you know, ever at one minute raise
14   a dispute.
15           It could be that I was just not recorded.  I don't
16   know.  Sometimes it was a decision made by court
17   reporting.
18      Q.    So you believe you may have spoken but the
19   court reporter just didn't take down what you said on
20   the record?
21      A.    Sometimes decisions were made that since the
22   private interpreter is not an official interpreter, so
23   the dispute raised was not recorded.
24           Sometimes like that.  It could be like that.  I
25   don't know.  I don't see myself there (indicating).  It
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002151
USAO-REL_001597019

Page 114

1     ███████ - Highly Confidential
2  could be that I just hand him notes.
3       But I just find that sometimes that if I handed him
4  so many notes, it would be quite unlike me that I did
5  not raise any verbal dispute -- oral dispute, yeah.
6       Q.   Do you see on the front cover of this
7  document, it says "Transcript prepared by Christine
8  Fiori"?
9       A.   Uh-huh.
10           THE SHORTHAND REPORTER:  "Yes" or "no"?
11           THE WITNESS:  Yes.
12 BY MR. LUFT:
13      Q.   Let's take a look at Exhibit 3, which is the
14 April 6th hearing.
15      Do you see on the front cover of this transcript it
16 was also prepared by Christine Fiori?
17      A.   Right.
18      Q.   You see that?
19      A.   Yes.
20      Q.   Same person, correct?
21      A.   Yes.
22      Q.   Okay.  Now, if we turn to page 10 of this
23 transcript -- or let's first go to page 6.
24           (Pause.)
25

Page 115

1     ███████ - Highly Confidential
2  BY MR. LUFT:
3       Q.   Do you see, in the middle of the page and on
4  next page, there are multiple references to "the private
5  interpreter"?
6       A.   Yes.
7       Q.   Is that you?
8            MR. HENZY:  Sorry.  You're --
9            MR. LUFT:  Six and seven, Eric, middle of
10           the page and then the next page.
11           MR. BASSETT:  Exhibit 3.  It might be 2.
12           MR. HENZY:  Oh, I'm on Exhibit 2.  Sorry.
13           THE WITNESS:  Yes.
14 BY MR. LUFT:
15      Q.   Okay.  Are you the private interpreter that
16 is being referenced?
17      A.   Yes.
18      Q.   So these --
19      Where it says "the private interpreter," those are
20 your statements, correct?
21      A.   Yes.
22      Q.   Okay, and if I turn to page 10, do you see
23 there is a back and forth with regard to a translation
24 between you and the official interpreter?
25      A.   Yes.

Page 116

1     ███████ - Highly Confidential
2       Q.   And Ms. Claiborne asks you to stop
3  interrupting?
4       A.   Yes.
5       Q.   And you agree, correct?
6       A.   Yes.
7       Q.   Then if you go to page 16 -- to page 13,
8  again, at the top of the page, you raise an objection
9  with regard to the interpreter?
10      A.   Yes.
11      Q.   And then, if we go to page 16, you have
12 another lengthy objection?
13      A.   Yes.
14      Q.   So clearly, on this day the court reporter
15 was taking down your statements, correct?
16      A.   Yes.
17      Q.   And to the extent you had objections, you
18 were saying them on the record, correct?
19      A.   Yes.
20      Q.   Okay, and if we go to pages 21 through 22,
21 same thing?  You're making objections on the record?
22      A.   Yes.
23      Q.   And the reason you're making these objections
24 is because you think there's been a mistake made in the
25 translation, correct?

Page 117

1     ███████ - Highly Confidential
2       A.   Yes.
3       Q.   And you want to correct it?
4       A.   Yes.
5       Q.   Another example, page 39.  Do you see page
6  39, line 15?
7       A.   Are.
8       Q.   Line 11, the question was "Do you have
9  authority to enter into financial transactions on behalf
10 of Golden Spring New York?"
11      And you raise an issue, saying, "No, no.  That's
12 not the question," correct?
13      A.   It appears so.
14      Q.   So where you thought that there was a problem
15 with the question, you let the court reporter know that
16 it had -- and the translator that it had been
17 mistranslated, correct?
18      A.   I believe so.
19      Q.   And if you turn to page 62 --
20      A.   Did you say 52 or 62?
21      Q.   Sixty-two, ███████.
22      We see, again, when you had an issue with a
23 question, you raised it on the record and it's recorded
24 as "the private interpreter," correct?
25      A.   Based on what it appear [sic] here, yes.

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002152
USAO-REL_001597020

Page 118

1             - Highly Confidential
2     Q.   If I turn to page 60, there is no reference
3 to any statements by you taking the issue -- with taking
4 issue with any translations, correct?
5     A.   Uh-huh. That's correct, here. This is the
6 part that is the chaos.
7     Q.   But there is no reference to you saying
8 anything, correct?
9          (Pause.)
10          THE WITNESS: Not on this transcript
11       record.
12 BY MR. LUFT:
13     Q.   And if I turn to page 61, again, no reference
14 to you raising any objection to any translation issues,
15 correct?
16     A.   Not on the record here on this transcript.
17     Q.   And as we talked about on page 62, when you
18 had an objection, it was recorded on the record,
19 correct?
20     A.   On this record of this page, yes.
21          (Pause.)
22          THE WITNESS: I think that is why
23     sometimes --
24          MR. HENZY: There's no question.
25          THE WITNESS: Okay.

Page 119

1             - Highly Confidential
2          (Pause.)
3 BY MR. LUFT:
4     Q.   When you were doing your translation for
5 Ms. Francis --
6     A.   Uh-huh.
7     Q.   -- if you heard on the audio recording things
8 that were said that were not included in the record,
9 would you have included them?
10     A.   Yes.
11     Q.   So to the extent on your translation there is
12 no reference to any objection coming from you, that's
13 based on your listening to the audio and finding in fact
14 you made no objection, correct?
15     A.   Can you repeat that question?
16     Q.   Sure. If I was to look at the document you
17 produced for Ms. Francis --
18     A.   Yes.
19     Q.   Let me be clear.
20     A.   Yes.
21     Q.   To the extent you heard something on the
22 audio that was not accurately recorded on the
23 transcript, you would have included it in the document
24 you created for Ms. Francis, correct?
25     A.   Yes.

Page 120

1             - Highly Confidential
2     Q.   So to the extent I look at the document you
3 created for Ms. Francis and there is no reference to you
4 making an objection with regard to the translation, it's
5 safe to say that when you listened to the audio, you did
6 not hear yourself make any such objection, correct?
7     A.   Correct.
8     Q.   Okay. If I look at page 60 of --
9     A.   I may have handed a note, though.
10     Q.   So on this page, you may have reversed course
11 and all of a sudden started handing Mr. Baldiga a note
12 in the middle of this?
13          MR. HENZY: Objection to the form of the
14     question. It's argumentative.
15          THE WITNESS: Probably.
16 BY MR. LUFT:
17     Q.   You recall handing Mr. Baldiga a note?
18     A.   I actually recall that I handed in notes to
19 Mr. Baldiga around that time. I don't know exactly
20 which line. Yes, I do.
21     Q.   Okay. Can you look at page 60?
22     A.   Yes.
23     Q.   Mr. Baldiga make any objection here with
24 regard to the translation?
25     A.   No.

Page 121

1             - Highly Confidential
2     Q.   Would you look at page 61? Mr. Baldiga make
3 any objection with regard to the translation at your
4 behest?
5     A.   Not in here.
6     Q.   Did he make any objection to the translation
7 at all?
8     A.   Not that appears here.
9     Q.   Okay. In your translation that you did for
10 Ms. Francis, if there is no reference to Mr. Baldiga
11 making an objection --
12     A.   Uh-huh.
13     Q.   -- is it safe to say that when you listened
14 to the audio, you did not hear Mr. Baldiga make any
15 objection?
16     A.   If I did not recall that, that's correct,
17 then he did not make any.
18          (Pause.)
19 BY MR. LUFT:
20     Q.   If I could ask you to pull back Exhibit 1 --
21       Exhibit 1 -- which is the debtor's objection,
22 turn again to page 11 and go back to that first
23 sentence.
24       "At any hearing on the motion, the debtor will put
25 on testimony from an interpreter as to the many material

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002153
USAO-REL_001597021

Page 122

```
1              ██████ - Highly Confidential
2    deficiencies in the official translation of the 341
3    meeting."
4         Do you see that?
5         A.   Uh-huh, yes.
6         Q.   Okay.  I believe you've testified that other
7    than the portion of the transcript that Ms. Francis sent
8    you, you have not looked at the reference the 341
9    hearing; is that correct?
10        A.   That's correct.
11        Q.   I believe you testified with the exception of
12   the transcript that Ms. Francis sent you where she
13   refreshed your recollection, you have no specific
14   recollection of any specific mistakes made in the
15   translation from the 341 hearing, correct?
16        A.   Not specific --
17             Not specifically, but I remember there were
18   mistakes made.
19        Q.   But you don't recall what they were?
20        A.   That's correct.
21        Q.   So other than those pages that Ms. Francis
22   sent you, which is 60 to 62, you have no recollection,
23   sitting here today, of any specific material deficiency
24   in the official translation of the 341 meeting?
25        A.   Not specifically.
```

Page 123

```
1              ██████ - Highly Confidential
2         Q.   And if we look at pages 60 and 61 of the 341
3    hearing, you made no objection to any material
4    deficiency in the translation, correct?
5         A.   Can you say that again?
6         Q.   Sure.
7              If you turn to Exhibit 3 and look at pages 60 and
8    61 --
9         A.   Page 60 to 61?
10             (Pause.)
11             THE WITNESS:  Yes.
12   BY MR. LUFT:
13        Q.   There is no record of you making any
14   statement or objection to any purported material
15   deficiency in the translation on page 60 or 61, correct?
16        A.   Not purportedly.
17        Q.   All right.
18             There's no reference to you making any such
19   objection at all, correct?
20        A.   Not on this record.
21        Q.   And if I looked at your transcript and there
22   is no reference to you making such an objection, that
23   means -- when I say, "your transcript," I mean the one
24   you prepared for Ms. Francis.
25             If there is no reference to you making any such
```

Page 124

```
1              ██████ - Highly Confidential
2    objections on pages 60 and 61, then based on your
3    re-listening to the hearing, you did not hear yourself
4    make any objection to any alleged material deficiency --
5         A.   Not --
6         Q.   -- in the transcript?
7         A.   -- verbally.
8         Q.   When you say, "not verbally" --"
9         A.   Right.
10        Q.   -- what do you mean?
11        A.   I am listening to the audio of that
12   transcript.
13             I don't hear myself, so I could not transcribe
14   what -- motions or actions -- you know, so no, I did not
15   record any oral objection that I raised, because I did
16   not make any oral objection or disputes.
17        Q.   Okay, and if there is no reference to
18   Mr. Baldiga making any objection to any translation for
19   any reason, including because you've told him to do so
20   as we saw him do multiple times previously --
21        A.   Uh-huh.
22        Q.   -- then you did not hear any objection by Mr.
23   Baldiga with regard to any of the testimony on pages 60
24   or 61?
25        A.   That's correct.
```

Page 125

```
1              ██████ - Highly Confidential
2         Q.   Okay.
3              (Pause.)
4    BY MR. LUFT:
5         Q.   Now, if we look back at Exhibit 1, on the
6    line that follows on page 11 --
7              MR. LUFT:  Actually, strike that.
8              (Pause.)
9    BY MR. LUFT:
10        Q.   Can you look at Exhibit 3?
11             Other than pages 60 and 61 and 62, sitting here
12   today, can you tell me of any other material deficiency
13   in the translation that you're aware of other than in an
14   instance where you made an objection on the record or
15   asked Mr. Baldiga to do so?
16        A.   As I'm sitting here today, I have not looked
17   through any pages except page 60 to 62.
18             I cannot say specifically what material mistake
19   that was -- that were recorded or that were made.
20        Q.   Okay.
21             (Pause.)
22   BY MR. LUFT:
23        Q.   Can I ask you to turn to Exhibit 2?
24             (Pause.)
25
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002154
USAO-REL_001597022

Page 126

1        ██████████ - Highly Confidential
2   BY MR. LUFT:
3        Q.    First, turn to page 12.
4        Do you see on line 8, it says "Other names I
5   believe I heard earlier are ██████ who is an
6   interpreter.
7        Do you believe that is a reference to you?
8        A.    Yes.  Can -- am I looking at the same page?
9              MR. HENZY:  Go ahead, Avi.  Go ahead.
10             Page 12?
11  BY MR. LUFT:
12       Q.    It's Exhibit 2.
13             MR. HENZY:  Exhibit 2.
14  BY MR. LUFT:
15       Q.    Page 12, line 8 through 10.
16       A.    Right.  Yes.
17       Q.    Great.  Okay.  Can you turn to page 49?  Do
18  you see, starting at line 5, it says:
19  "Mr. Kwok, who are the owners of Golden Spring?
20  "Answer:  My son.
21  "Are there any owners of Golden Spring other than
22  your son?
23  "No.
24  "Mr. Kwok, have you ever owned an interest in
25  Golden Spring?

Page 127

1        ██████████ - Highly Confidential
2   "Answer:  No."
3   Did I read that correctly?
4        A.    Yes.
5        Q.    And there's no objection to the translation
6   by you there?
7        A.    No.
8        Q.    No objection by Mr. Baldiga?
9        A.    No.
10       Q.    Do you have any reason to believe that any
11  portion of that transcript was mistranslated by the
12  translator?
13       A.    No.
14       Q.    Okay.
15             (Pause.)
16             THE WITNESS:  But --
17             MR. HENZY:  There's -- there's no
18        question.  It's okay.
19             (Pause.)
20  BY MR. LUFT:
21       Q.    Something else you wanted to add?
22       A.    I was just looking at the --
23             MR. HENZY:  Well, now he's asked a
24        question, so you can.
25             THE WITNESS:  No.  I mean, he --

Page 128

1        ██████████ - Highly Confidential
2             Mr. Baldiga was -- some -- saying
3             something on line 16, right?
4   BY MR. LUFT:
5        Q.    Right.  He's talking about some type of
6   physical security concerns --
7        A.    Oh.
8        Q.    -- right?
9        A.    Right.
10       Q.    It's not any objection to the translation --
11       A.    Okay.
12       Q.    -- correct?
13       A.    Okay.
14       Q.    Do you agree with me?
15       A.    Agreed.
16       Q.    Okay, so you have no reason to believe that
17  the translator did not translate the portion I read to
18  you perfectly, correct?
19       A.    Correct.
20       Q.    Okay.
21             (Pause.)
22  BY MR. LUFT:
23       Q.    Now, if I go back to Exhibit 1 --
24  I'm going to ask you to keep out Exhibit 3 and
25  Exhibit 1.  You can put Exhibit 2 to the side for now,

Page 129

1        ██████████ - Highly Confidential
2   but not too far.  I'm going to ask you to turn back to
3   page 11 --
4        A.    Of?
5        Q.    -- of Exhibit 1.  Sorry, ma'am.
6             (Pause.)
7   BY MR. LUFT:
8        Q.    Do you see it says, second line of the --
9   complete line of the page:
10  "As an example, while the 'official' translation of
11  the April 6, 2022 341 meeting has the debtor answer "no"
12  in response to the U.S. trustee's question, are there
13  any other owners of Ace Decade?"
14       Just prior to that question, according to the
15  official translation, the debtor reportedly answered the
16  U.S. trustee's question "Are you the only legal owner of
17  Ace Decade?" by stating that he was a legal representing
18  owner.
19       Do you see that?
20       A.    Yes.
21       Q.    I'm just asking you about the translation,
22  when you went over that part.  This is part of the
23  portion you looked over for Ms. Francis, correct?
24       A.    Yes.
25       Q.    The question was correctly translated to the

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002155
USAO-REL_001597023

Page 130

███████ - Highly Confidential

1  debtor. "Are there any other owners of Ace Decade,"
2  correct? That was correctly translated?
3
4           (Pause.)
5  BY MR. LUFT:
6       Q.   If you want, I can turn you to Exhibit 3, if
7  it's helpful. This is coming from page 61, I believe.
8       A.   Say that again. What page, again?
9       Q.   I believe this is page 61.
10      A.   Sixty-one.
11      Q.   I believe we're looking at -- lines 6 and 7,
12 I believe, is what the debtor's counsel was quoting.
13          (Pause.)
14 BY MR. LUFT:
15      Q.   Sorry. Not six and seven.
16      No, that's correct. Six and seven, I believe is
17 what's being referenced in that paragraph.
18      A.   Sixty-one?
19      Q.   Do you see line 6, "Are there any other
20 owners of Ace Decade?
21      "Answer: No."
22      Do you see that?
23      A.   I see that.
24      Q.   And that was correctly translated, right?
25      A.   Purportedly, yes.

Page 131

███████ - Highly Confidential

1
2       Q.   When you say, "purportedly," what do you
3  mean?
4       A.   Because it's written in here (indicating).
5       Q.   Okay, but when you did your analysis --
6       A.   Right.
7       Q.   -- you also thought that that's what --
8       A.   Okay. If that appears on -- on mine, yes.
9       Q.   Well, do you recall? Do you have a --
10          (Thereupon, an informal discussion was
11      held off the record with the shorthand
12      reporter.)
13 BY MR. LUFT:
14      Q.   Sitting here today, do you recall if that
15 line was correctly translated?
16      A.   I don't recall when I'm sitting here that
17 that line was correctly translated.
18      Q.   Sitting here today, do you have a
19 recollection of the translation you did with regard to
20 page 60 and 61?
21      A.   No.
22      Q.   So if I was to look over pages 60 and 61,
23 sitting here today, looking at the transcript, you could
24 not tell me which lines were correctly translated in
25 your opinion and which lines were not?

Page 132

███████ - Highly Confidential

1
2       A.   No.
3       Q.   Okay.
4           (Pause.)
5  BY MR. LUFT:
6       Q.   The next line on Exhibit 1 says "The debtor's
7  interpreter will testify, however, that the proper
8  interpretation of the debtor's response to U.S.
9  trustee's question 'Are you the only legal owner of Ace
10 Decade?' was 'I am legally representing the owner.'"
11 ███████ did you tell counsel for the debtor
12 that that is what you were going to testify to the
13 court?
14      A.   I did not tell that to anyone. No one asked
15 me that question.
16      Q.   Okay.
17          (Pause.)
18 BY MR. LUFT:
19      Q.   Now, I believe that is a reference to lines 3
20 through 5 of page 61. Do you see that?
21      A.   Yes.
22      Q.   It says "Are you the only legal owner of Ace
23 Decade?"
24      Sitting here today, do you recall if that question
25 was properly translated into Chinese?

Page 133

███████ - Highly Confidential

1
2       A.   Sitting here today, I -- I am unable to say
3  whether it was properly translated.
4       Q.   So you cannot tell me if you are offering any
5  expert opinion with regard to whether that line was
6  properly translated?
7           MR. HENZY: Objection. That's -- that
8       was not ███ testimony.
9  BY MR. LUFT:
10      Q.   That's my question to you.
11      A.   Without any material help me, I cannot just
12 rely on my recollection to tell you that that was
13 properly translated or not.
14      Q.   Okay. I have provide you the transcript,
15 correct?
16      A.   This is a transcript, yes (indicating). You
17 have provided me with this transcript, yes, appeared
18 before me.
19      Q.   I'm asking:
20      Sitting here today, can you tell me if you're
21 planning to offer any opinion with regard to whether the
22 question "Are you the only legal owner of Ace Decade?"
23 was properly translated into Chinese at the time by the
24 official interpreter?
25          MR. HENZY: Objection, argumentative.

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002156
USAO-REL_001597024

Page 134

████████ - Highly Confidential

1
2      THE WITNESS: I cannot offer an expert
3      opinion or professional opinion whether this
4      was properly translated (indicating) just
5      based on this transcript before me, without
6      any other audio file or to -- to -- to help.
7 BY MR. LUFT:
8      Q.   Okay, and if I look at next line, the answer
9 "I am a legal representing owner," sitting here today,
10 can you tell -- tell me if you're offering any expert
11 opinion with regard to whether that sentence was
12 properly translated into -- by the official interpreter?
13      MR. HENZY: Objection. Vague, ambiguous.
14      THE WITNESS: No, I cannot, without any
15      audio file to assist.
16 BY MR. LUFT:
17      Q.   So sitting here today, you cannot tell me if
18 you plan to offer any expert opinion with regard to
19 lines 3 through 5 of page 61 of the April 6th 341
20 transcript?
21      A.   Not without the audio file to cross-reference
22 with this transcript.
23      (Pause.)
24 BY MR. LUFT:
25      Q.   Okay.

Page 135

████████ - Highly Confidential

1      A.   Did I say not with or not without? Not
2 without, I should say.
3      MR. HENZY: I think you said not without.
4      MR. LUFT: That's what I heard.
5      MR. HENZY: That's what I heard, too.
6      MR. LUFT: I'm not following along with
7      the realtime. Okay.
8      (Pause.)
9 BY MR. LUFT:
10     Q.   Sitting here today, can you tell me, if I was
11 to look at lines 3 through 10, what you believe in your
12 opinion the proper translation of those lines should
13 have been?
14     A.   No, I can't.
15     Q.   Okay.
16     (Pause.)
17 BY MR. LUFT:
18     Q.   If I ask you to look at page 60, line 16, do
19 you see it says:
20 "Question: Mr. Kwok, do you own any interest in a
21 company called Ace Decade Holdings Limited?
22 "Answer: Yes."
23 Do you see that?
24     A.   I see that.
25

Page 136

████████ - Highly Confidential

1
2      Q.   And there's no objection from you to that
3 question?
4      A.   Not appear to be.
5      Q.   No objection from Mr. Baldiga, correct?
6      A.   Not appeared to be, yes.
7      Q.   Sitting here today, can you tell me if you
8 plan to offer any expert opinion as to whether that
9 question and answer on page 60 of the transcript that is
10 Exhibit 3 was correctly translated?
11     (Pause.)
12     THE WITNESS: I can't without the audio
13     file.
14     (Pause.)
15 BY MR. LUFT:
16     Q.   Okay. When was the last time you listened to
17 the audio file?
18     A.   That portion of the audio file that was given
19 to me by Ms. Francis --
20 The last time I listened to it was the date I
21 worked on it and ... it would be the day or several days
22 before I sent it back to her.
23     Q.   Did anyone play that audio file for you in
24 preparation for this deposition?
25     A.   No.

Page 137

████████ - Highly Confidential

1
2      Q.   And sitting here today, to your knowledge,
3 you cannot tell me if you know that there is anything
4 wrong with the question and answer at line 16 through 18
5 on page 60?
6      A.   I'm unable -- I am unable to tell you whether
7 there is anything wrong with it.
8      Q.   And same thing with regard to lines 3 through
9 10 on page 61?
10     A.   Same thing happen with those lines.
11     MR. LUFT: Okay. Let's take a break real
12     quick and see where we are.
13     THE VIDEOGRAPHER: The time is 12:39 p.m.
14 We're going off the record.
15     (Recess taken at 12:39 p.m.)
16     (Resumed at 12:48 p.m.)
17     THE VIDEOGRAPHER: The time is 12:48 p.m.
18 We're back on the record.
19 *   MR. LUFT: Okay.
20     ████████     I am going to renew my
21 request for the emails you described between
22 yourself and Ms. Francis and any other counsel
23 representative of Mr. Kwok.
24     And I'm going to reserve right to ask you
25 additional questions if I'm provided those

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002157
USAO-REL_001597025

Page 138

```
 1   ████████ - Highly Confidential
 2        documents, which I should be, but other than
 3        that, I have no further questions for you at
 4        this time.
 5             THE WITNESS:  You are asking me --
 6             MR. HENZY:  You don't need to answer.
 7             THE WITNESS:  Okay.  I just have a couple
 8        questions.
 9             MR. LUFT:  Okay.
10
11             CROSS-EXAMINATION
12             BY MR. HENZY:
13
14        Q.   Mr. Luft asked you some questions about
15   whether Yvette Wang was an employee of Mr. Kwok.  When
16   was the last time Yvette Wang called you about a job?
17        A.   It's a long, long time ago.  I --
18        Q.   More than two years ago?
19        A.   Probably.
20        Q.   Okay.  More than three years ago?
21        A.   I cannot be certain.
22        Q.   Okay, but -- but -- okay.
23        Do you have any knowledge of whether or not
24   Ms. Wang is an employee of Mr. Kwok today?
25        A.   I don't know.
```

Page 139

```
 1   ████████ - Highly Confidential
 2             MR. LUFT:  Objection, foundation.
 3   BY MR. HENZY:
 4        Q.   Okay, but -- you can answer, but --
 5        A.   I don't know.
 6        Q.   Okay.  Okay.  Did --
 7        Do you know whether she ever was, in fact, an
 8   employee of Mr. Kwok?
 9             MR. LUFT:  Objection, leading.
10             THE WITNESS:  I don't.  I only assume.
11             MR. HENZY:  Okay.  I -- okay.  That's ...
12        (Pause.)
13   BY MR. HENZY:
14        Q.   Just -- can you look at Exhibit 2 and Exhibit
15   3?
16        (Pause.)
17   BY MR. HENZY:
18        Q.   On Exhibit 2, on the very first page, if you
19   go to the -- where it says -- do you see where it says
20   "Transcript of Telephonic 341 Meeting of Creditors"?
21        A.   Yes, I see it.
22        Q.   Okay.  Do you see where it says "Telephonic"?
23        A.   Yes.
24        Q.   Okay.  Then, go to Exhibit 3.
25        A.   Uh-huh.
```

Page 140

```
 1   ████████ - Highly Confidential
 2        Q.   It says "Transcript of Continued 341 Meeting
 3   of Creditors"?
 4        A.   Yes.
 5        Q.   That's for April 6th, right?
 6        A.   Yes.
 7        Q.   It doesn't say "telephonic" there, correct?
 8        A.   Correct.
 9             MR. LUFT:  Leading.
10             MR. HENZY:  Okay.  I don't have anything
11        further.
12             MR. LUFT:  Okay.
13
14             REDIRECT EXAMINATION
15             BY MR. LUFT:
16
17        Q.   Ms. Wang, why did you assume -- sorry.
18   ████████ why did you assume Ms. Wang is an
19   employee of Mr. Kwok?
20        A.   She called me for -- to be -- to do the
21   interpreting for the event, so --
22        Q.   Why -- why did that lead you to believe that
23   she worked for Mr. Kwok?
24        A.   Well, she's in that office, I assume.  So
25   she's calling for -- well, when someone calls you for a
```

Page 141

```
 1   ████████ - Highly Confidential
 2   job, then you assume she's the staff of that office,
 3   right?
 4        Q.   That office is Golden Spring?
 5        A.   At the time, I believe so.
 6        Q.   And Mr. Kwok's the head of Golden Spring, so
 7   it makes sense, right?
 8        A.   I don't know.
 9        Q.   But you said she works for Mr. Kwok.  Is the
10   job for him?
11        A.   Because that conference was a conference
12   of -- of a subject that is Mr. Kwok's.  It -- it --
13   that -- the conference is about anti-Chinese Communist
14   Party, so that is Mr. Kwok's subject.
15   And then I was engaged to be his interpreter, so I
16   assumed she was from his office, and I don't know
17   anything other than that.
18        Q.   At the conference, who else did you meet from
19   Mr. Kwok's office?
20        A.   But that conference did not take place.
21        Q.   At any of the other conferences you worked,
22   who else from Mr. Kwok's office did you meet?
23        A.   I don't meet with anyone.
24        Q.   You've never met anyone else --
25        A.   Not --
```

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002158
USAO-REL_001597026

Page 142

```
1              ████ - Highly Confidential
2       Q.    -- from Mr. Kwok's office?
3       A.    -- not -- I --
4       I met with some other people, but I don't know
5   whether they are from his office.  I went to conference.
6   I went to my booth.  I sat down.  I did my job.
7       Q.    Who sent you the checks from Golden Spring
8   when you worked for these conferences?
9       A.    You know, I actually did not look at the
10  signature.
11      Q.    And when you had a job -- needed a job, it
12  was always Ms. Wang who would contact you?
13      A.    At the beginning, for the conferences.
14      Q.    So if it was a legal matter, Ms. Francis --
15      A.    Uh-huh.
16      Q.    -- the general counsel of Golden Spring,
17  would contact you --
18      A.    Yes.
19      Q.    -- to act on -- to act on behalf of Mr. Kwok?
20      A.    To be the interpreter for the -- for the
21  deposition or for the court hearing.
22      Q.    For -- for Mr. Kwok?
23      A.    For Mr. Kwok, yes.
24      Q.    And if it was nonlegal work, then Ms. Wang
25  was the one who would make the request on behalf
```

Page 143

```
1              ████ - Highly Confidential
2   Mr. Kwok, correct?
3       A.    At the time, yes.
4             MR. LUFT:  Okay.  I have no further
5   questions.
6             THE VIDEOGRAPHER:  This concludes today's
7   deposition of ████
8             The time is 12:53 p.m.  We're off the
9   record.
10            (Thereupon, the deposition concluded at
11  12:53 p.m.)
12            (The exhibits were retained by the
13  shorthand reporter to be attached to the
14  transcript.)
15        ***     ***     ***
16
17
18
19
20
21
22
23
24
25
```

Page 144

```
1              ████ - Highly Confidential
2             ACKNOWLEDGMENT OF DEPONENT
3       I, ████              do hereby certify that
4   the foregoing testimony given by me on
5   November 11, 2022 is true and accurate,
6   including any corrections noted on the
7   corrections page, to the best of my knowledge
8   and belief.
9
10
11        _____
12                ████
13
14
15      At _____ in said County
16  of _____, this _____ day
17  of _____, 2022, personally
18  appeared ████         and made an oath to the
19  truth of the foregoing corrections by her subscribed.
20
21        Before me, _____, Notary
22  Public.  My commission expires _____.
23
24
25
```

Page 145

```
1              ████ - Highly Confidential
2             C E R T I F I C A T E
3       I, CHERYLL KERR, CSR, a Certified Shorthand
4   Reporter and Notary Public, do hereby certify
5   that the witness whose deposition is hereinbefore
6   set forth was duly sworn by me, and that such
7   deposition is a true record of the testimony given
8   by such witness.
9       I further certify that I am not related to
10  any of the parties to this action by blood or
11  marriage; and that I am in no way interested in
12  the outcome of this matter.
13      IN WITNESS WHEREOF, I have hereunto set my
14  hand this 12th day of November, 2022.
15
16
17            _____
18                   CHERYLL KERR, CSR
19
20
21
22
23
24
25
```

TSG Reporting - Worldwide    877-702-9580

```
                                                      Page 146
1          ███████████ - Highly Confidential
2             ERRATA SHEET FOR THE TRANSCRIPT OF:
3    Case Name:  In Re:  Ho Wan Kwok
4    Dep. Date:  November 11, 2022
5    Deponent:   ███████████
6    Reason codes:
7        1.  To clarify the record.
8        2.  To conform to the facts.
9        3.  To correct transcription errors.
10   Pg.   Ln.    Now Reads     Should Read    Reason
11   ____  ____  _____   _____   _____
12   ____  ____  _____   _____   _____
13   ____  ____  _____   _____   _____
14   ____  ____  _____   _____   _____
15   ____  ____  _____   _____   _____
16   ____  ____  _____   _____   _____
17   ____  ____  _____   _____   _____
18   ____  ____  _____   _____   _____
19   ____  ____  _____   _____   _____
20   _____
        Signature of Deponent
21
22   SUBSCRIBED AND SWORN BEFORE ME
23   THIS _____ DAY OF _____, _____.
24   _____
25   (Notary Public)  My Commission Expires: _____
```

TSG Reporting - Worldwide    877-702-9580

CONFIDENTIAL
CONFIDENTIAL

**$**

**$10,000** 84:19

**$20,000** 84:24

**$50,000** 85:2,4

**$500** 92:2

**1**

**1** 6:3 20:25 21:7 22:10 25:15 42:5 121:20,21 125:5 128:23,25 129:5 132:6

**10** 76:21,23 114:22 115:22 126:15 135:12 137:9

**100** 23:3 70:6

**10017** 6:13

**10:30** 61:21,23

**10:57** 61:24,25

**11** 6:8,18,21,24,25 8:11 21:3 22:7,8,12 25:15 26:7 117:8 121:22 125:6 129:3

**11375** 11:17

**11:15** 108:17,19

**12** 108:8 126:3,10,15

**12:03** 108:20,21

**12:39** 137:13,15

**12:48** 137:16,17

**12:53** 143:8,11

**13** 116:7

**15** 7:10 117:6

**16** 109:3,8 116:7,11 128:3 135:19 137:4

**18** 137:4

**2**

**2** 103:25 104:4,6,16 107:14 111:25 115:11,12 125:23 126:12,13 128:25

139:14,18

**20** 72:9 76:18,20

**2016** 77:20 84:21 85:10

**2017** 77:20 84:21

**2022** 6:8 104:8,12 129:11

**21** 104:8 116:20

**21st** 36:5 55:4 112:21

**22** 116:20

**228** 6:12

**3**

**3** 104:2,5,10,16 114:13 115:11 123:7 125:10 128:24 130:6 132:19 134:19 135:12 136:10 137:8 139:15,24

**30** 76:18

**31** 107:15,16,18

**32** 107:15,16,18

**33** 108:8,25

**341** 22:15 23:9 25:19 26:10,17,18,24 27:19 28:7 35:6 36:6 40:12, 16 41:19 42:2,13,16 47:5 54:25 75:12,18, 23 76:2 94:22 95:3 96:21 97:4,7,17 99:3, 12 100:2 101:17 102:4,12 104:7,11 106:18 107:6,8 111:8 113:2 122:2,8,15,24 123:2 129:11 134:19 139:20 140:2

**35** 109:5

**39** 117:5,6

**4**

**45** 109:2,6

**45th** 6:12

**47** 6:7

**49** 126:17

**5**

**5** 126:18 132:20 134:19

**52** 117:20

**54** 109:16

**59** 110:4

**6**

**6** 104:11 114:23 129:11 130:11,19

**60** 105:25 106:6,8 118:2 120:8,21 122:22 123:2,7,9,15 124:2,23 125:11,17 131:20,22 135:19 136:9 137:5

**600** 92:10

**61** 105:22,25 118:13 121:2 123:2,8,9,15 124:2,24 125:11 130:7,9 131:20,22 132:20 134:19 137:9

**62** 106:6,8 117:19,20 118:17 122:22 125:11,17

**6818** 11:17

**6th** 36:6 55:4 105:18 114:14 134:19 140:5

**7**

**7** 109:16 110:7 130:11

**8**

**8** 126:4,15

**810** 6:13

**9**

**9:23** 6:9

**9:39** 24:12

**9:40** 24:14

**9:45** 24:15,16

**A**

**a.m.** 6:9 24:12,14,15, 16 61:21,23,24,25 108:17,19

**Aaron** 89:4

**abbrieved** 45:21

**absolutely** 32:11

**account** 82:13

**accurate** 55:13

**accurately** 119:22

**Ace** 39:9 40:2,6 46:14 52:9,15 53:15 95:9 96:20 97:4,11, 15,19 98:8 129:13,17 130:2,20 132:9,22 133:22 135:22

**act** 142:19

**acted** 76:7,22 77:15 78:18

**acting** 66:24 76:12 88:19 98:23 100:10 102:10

**action** 30:14 100:12

**actions** 124:14

**actual** 40:16 41:19

**add** 33:5 127:21

**additional** 137:25

**address** 11:16

**addressing** 44:10 46:7

**advance** 59:14

**advice** 13:6,13 16:3, 13 18:6 33:4

**agree** 116:5 128:14

**Agreed** 128:15

**agreement** 13:20

**ahead** 22:3 71:25 86:21 126:9

**aided** 48:19 49:2,3

**alleged** 124:4

**ambiguous** 19:21 20:4 22:25 49:8 50:3 72:20 78:24 97:21 106:20 134:13

**analysis** 131:5

**answering** 33:14 45:11,25

**answers** 8:16

**anti-chinese** 141:13

**anti-communist** 79:14

**anticipated** 60:22

**anyone's** 24:5

**API** 63:12

**apologize** 9:25

**apparent** 35:23

**appeared** 77:12 133:17 136:6

**appears** 117:13 121:8 131:8

**approached** 18:5

**approximately** 6:9 47:8

**April** 36:6 55:4 104:11 105:18 114:14 129:11 134:19 140:5

**argue** 15:9 56:10

**argumentative** 120:14 133:25

**Arlequin** 6:10

**asks** 63:15 68:22 70:17 71:4,13 72:10, 19 73:9,22 74:5 116:2

**aspects** 69:18

**assertion** 66:19

**assessment** 7:18

**assist** 134:15

**association** 6:15

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002161
USAO-REL_001597029

**assume** 9:9 41:12 64:3 111:15,17 139:10 140:17,18,24 141:2

**assumed** 41:8 141:16

**assumption** 111:19

**attached** 143:13

**attaching** 45:17

**attachment** 55:16

**attended** 9:23 95:4

**attorney** 8:10 66:16

**attorney-client** 14:15 17:23 32:8 66:6,8,22 95:16

**audible** 8:16,20

**audio** 43:18,21,23 44:3,7,12,15 45:23 48:7,14,19,23,24 49:3,6,20 50:9,24 51:18,21,23 55:10,14 57:8 58:4,5,7 62:6 67:6,8 75:17,23 93:20 119:7,13,22 120:5 121:14 124:11 134:6,15,21 136:12, 17,18,23

**authority** 117:9

**Avi** 6:17 8:10 15:9 20:8 21:11 32:14 59:4 67:4 70:10 126:9

**aware** 46:4 73:16 80:21 125:13

---

**B**

**bachelor** 93:6

**back** 24:17 25:15 31:4 37:19 38:4 45:11,15 53:5 57:11, 24 58:2 60:2,12,15 62:2 63:16 65:4,16, 24 67:18 108:22 115:23 121:20,22 125:5 128:23 129:2 136:22 137:18

**Baldiga** 29:9,24 34:2,8,13,20 53:11 102:22 103:21 107:19,23 108:3,9,12 109:4,13,17,21 110:7,14 111:8 112:3 113:3 120:11,17,19, 23 121:2,10,14 124:18,23 125:15 127:8 128:2 136:5

**Baldiga's** 38:4

**bankruptcy** 83:11 95:25

**based** 7:19 12:18 13:4 51:5,10,23 66:6, 8 87:14 112:24 117:25 119:13 124:2 134:5

**basis** 60:7

**Bassett** 6:20 56:6 59:11,13,18,21 60:4, 8,15 61:4 108:15 115:11

**beginning** 38:12 80:16 142:13

**behalf** 6:18,21,24 7:4 24:23 25:7 67:12 68:6 77:24 81:4,12, 14,17,22 83:9 87:23 92:13 100:10 117:9 142:19,25

**behest** 121:4

**believed** 103:16

**believes** 107:20

**belongs** 95:19 96:2

**Bill** 109:17

**bit** 30:11 34:10,25

**block** 49:19

**book** 99:8

**booth** 142:6

**boss** 81:4,14 89:14

**boss'** 81:12

**bottom** 107:18,19

**break** 10:5,14 21:18 24:9 137:11

---

**briefly** 112:22

**bringing** 60:6

**broader** 28:4

**broken** 87:4,9

**Brown** 6:6 88:2 95:25

**business** 85:18

---

**C**

**call** 14:21,22

**called** 7:23 135:22 138:16 140:20

**calling** 140:25

**calls** 14:25 140:25

**capacity** 77:25 78:19 79:4

**captured** 46:8 53:8

**capturing** 43:23 44:2

**care** 79:5

**carries** 107:18

**case** 7:11 31:4 40:25 67:3 69:21 70:16 71:3,12 72:6,17 73:2 77:5 78:15,16 79:21 81:7,9 83:4 90:11,19 99:17

**cases** 72:9 77:2 80:15 86:23

**casual** 87:19

**catch** 91:18

**catching** 45:10 46:12

**caught** 45:7 46:4 53:15

**caused** 107:9

**certified** 72:7,12

**chance** 24:20

**chaos** 47:21 118:6

**chaotic** 34:10,25 35:13,20,21 36:4,14 37:2,25 43:23 44:10, 21 45:3 46:23 47:22

---

50:18 51:25 107:8

**Chapter** 6:18,21,24, 25 8:11 21:3 22:8

**characterizes** 79:6

**charge** 64:8

**check** 30:9 43:19 55:9,11 57:12 77:12, 22 78:10 79:21 82:11,13 83:13 87:21 88:20 91:2,4,13 98:23 101:22 102:6, 20

**checking** 57:23

**checks** 142:7

**Cheryll** 6:14

**Chinese** 37:19 41:16 45:24,25 52:21,23 58:14 67:6 93:22 102:17 103:9 132:25 133:23

**choice** 68:9

**chooses** 72:13

**chose** 49:13 60:10

**Christine** 114:7,16

**citing** 110:2

**Civil** 21:4 22:9

**Claiborne** 35:23 37:10,14,21 38:7 45:7,10,16 46:4,12 52:16 53:14 116:2

**Claiborne's** 35:25

**claim** 14:19

**claiming** 32:14

**clarify** 25:22 44:4

**clarifying** 53:3 76:17

**classic** 67:3

**clear** 30:15 35:6 36:23 48:22 50:4 51:2 102:8 107:5 109:24 119:19

**client** 19:9 21:22 63:12,13,14

**client's** 13:11

---

**clients** 85:15,16

**colleague** 82:3

**colleagues** 59:14

**college** 92:25

**comment** 29:10 30:5 46:12

**communicate** 88:9

**communicated** 88:10

**communication** 43:11 62:24 68:2,17

**communications** 67:25 70:2 88:25

**Communist** 141:13

**company** 37:18 38:22 135:22

**compensated** 83:18 90:20,23,25

**compensation** 90:10

**complete** 129:9

**completely** 32:22 58:24 98:19

**comply** 21:4 22:9 60:13

**complying** 59:24

**comport** 111:7 112:25

**comprehensive** 109:25

**concede** 7:15

**concern** 109:14,21

**concerned** 100:3

**concerns** 128:6

**concluded** 100:13 143:10

**concludes** 143:6

**conclusion** 68:23 70:18 71:5,14 72:19 73:10,23 74:6

**conducted** 110:17

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002162
USAO-REL_001597030

**conference** 78:4,5, 6,21 79:18,19 80:16 82:2 88:12,16,18 89:10 108:13 141:11, 13,18,20 142:5

**conferences** 79:8, 10,14,16 84:16 88:15 141:21 142:8,13

**confidential** 6:1 7:1, 14,16 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1

**confused** 44:25

**confusing** 34:10

**Connecticut** 23:23

**connection** 20:21 54:16 70:3 78:11,16 84:2 85:18 87:23

93:8,19 95:24 103:17 113:6

**considered** 100:21

**consult** 93:12,15

**consulted** 42:10 93:13

**contact** 15:3,5,6,17 16:21,23 27:14 142:12,17

**contacted** 16:25 17:4,16

**contempt** 19:25 20:21 21:4 22:9 23:7 73:20 90:17

**content** 47:23

**context** 75:6 96:25 100:17 101:4,9,11, 14,16

**continued** 52:17 104:11 140:2

**continuous** 99:18

**contract** 81:19

**contracted** 82:19

**convenient** 10:6

**conversant** 87:12

**conversation** 45:12 53:7 97:13

**conversationally** 87:19

**conversations** 13:5 46:3 66:3

**cooperating** 56:7

**copies** 59:15 93:24 94:6 99:22 103:24

**copy** 21:2 43:3,4,6 55:14 57:15 58:15, 16,17 104:10

**Corporate** 21:5 22:9

**correct** 60:16 67:22, 23 73:19,21 75:6,8 89:24 101:20,23 102:15,23 103:3,6, 14,22 112:12 114:20 115:20 116:5,15,18,

25 117:3,12,17,24 118:4,5,8,15,19 119:14,24 120:6,7 121:16 122:9,10,15, 20 123:4,15,19 124:25 128:12,18,19 129:23 130:3,16 133:15 136:5 140:7,8 143:2

**correctly** 127:3 129:25 130:3,24 131:15,17,24 136:10

**correspond** 49:3

**counsel** 6:15 8:3 11:18 24:20 25:17 26:15,19,23 27:18 28:24 29:10 31:20, 21,23 33:5 34:15 40:22 43:9 63:23 66:25 74:23 86:13 87:3,9 94:25 96:14 99:21,25 100:7 112:6 130:12 132:11 137:22 142:16

**counsel's** 15:23 16:2,18 17:12 18:10 33:4 63:22 83:14 97:2

**counsels** 95:5

**couple** 65:19 138:7

**court** 6:14 7:6 8:16 10:21 20:19 23:23 30:9 41:5 46:2 70:21 72:6,7,9,10,12,13,21 73:4,12,14 75:5 76:7, 13,23 77:23 78:11, 15,16 79:21 80:15 83:13 86:23 89:5 90:18,19 96:17 102:7,9 113:16,19 116:14 117:15 132:13 142:21

**court's** 59:24,25 60:13,17

**courtroom** 97:16

**courts** 77:3

**cover** 54:16,20 114:6,15

**covered** 67:2,4

**created** 93:25 119:24 120:3

**creating** 62:14

**creditors** 104:7,11 139:20 140:3

**critical** 31:14

**CROSS-EXAMINATION** 138:11

**cross-reference** 134:21

**crosstalk** 18:2 49:24 61:14

**current** 26:23

**D**

**D.C.** 78:7

**Daniel** 89:8

**date** 14:3 27:4 36:7 37:4 47:5 88:22 92:13 136:20

**dated** 56:23

**Dawn** 39:10 40:3,7 46:15 52:9,15 53:16

**day** 34:10,24 49:10 55:6 64:8,15,16,23 91:22,25 92:4 99:14 107:12 116:14 136:21

**day's** 110:23

**days** 62:21 65:19,20 75:12 78:2 84:15 136:21

**deadline** 60:17

**debtor** 21:4 22:8,13 26:8,15,19 121:24 129:11,15 130:2 132:11

**debtor's** 21:2 22:7 26:6,22 42:6 121:21 130:12 132:6,8

**Decade** 39:9 40:3,7 46:15 52:9,15 53:15 95:9 96:20 97:4,11, 15,19 98:8 129:13,17

130:2,20 132:23 133:22 135:22

**Decade?'** 132:10

**decide** 9:12 34:16

**decision** 13:10,11 30:18 31:6 113:7,16

**decisions** 113:21

**deemed** 69:19

**defamation** 78:15 79:21 81:7 83:4

**deficiencies** 22:15 23:8 25:18 26:3,9,16, 20,24 27:20 28:15 122:2

**deficiency** 27:25 28:6 34:7 122:21 123:4,15 124:4 125:12

**degree** 93:6

**departing** 97:16

**depends** 91:21

**deposed** 8:11 23:11 90:19

**deposition** 6:4,6 7:4, 12,18 8:24 15:13 31:19 32:25 38:12 41:23 57:5 71:23 110:16 136:24 142:21 143:7,10

**depositions** 9:23 102:7

**derived** 46:25

**deriving** 47:22

**describe** 45:18 47:16 93:18

**describing** 37:13

**designated** 7:13,17

**designating** 7:12

**Despins** 6:25 95:19 96:2

**direct** 8:5 107:17

**direction** 66:25

**directions** 90:2

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002163
USAO-REL_001597031

**dis-** 107:9

**discard** 99:10

**discarded** 99:6,11, 19

**disclose** 71:22

**discovery** 60:19

**discrete** 30:11

**discussed** 95:7 97:4

**discussion** 12:8 16:9 21:9 39:12 54:9 79:25 95:8,20 96:6,9 97:10 131:10

**dispute** 27:21 28:23, 25 33:19 35:17 39:23 40:6 45:15,17 52:6 113:14,23 114:5

**disputes** 30:11 35:16 40:12,14,16, 19,20,21 41:18 50:19 52:4 124:16

**disregarding** 41:2

**disrupt** 30:10

**dissatisfaction** 107:9

**divide** 85:6

**division** 85:6

**document** 21:6 42:6, 11 62:9,12,15,18,25 68:2 112:7,13 114:7 119:16,23 120:2

**documents** 41:22 56:7 94:15 104:3,19, 23 105:5,6 138:2

**dollars** 64:16 91:19

**drafts** 62:8,11 94:18

**duly** 7:23

---

**E**

**e-mailed** 43:7,8

**earlier** 126:5

**early** 78:2 84:15

**earned** 84:7,19

**East** 6:12

**Edwin** 6:10

**electronic** 56:20

**email** 16:23 43:15 54:18,19 55:14,17 56:20 57:7,11,15,16, 18,21 65:13

**emails** 137:21

**employee** 79:4 138:15,24 139:8 140:19

**end** 67:19

**engaged** 141:15

**England** 93:4,7

**English** 37:16,19,20 38:21,23 41:16 46:2 53:5 58:12 86:5,12, 16,17,22,24 87:4,10, 12 93:21,23 102:13 103:12,18

**enter** 108:13 117:9

**entered** 7:11

**entire** 42:18

**entitled** 69:13,22,24 71:6,8

**entity** 82:15 83:9 87:22

**Entry** 21:3 22:8

**Eric** 7:3 11:22 16:4 55:19 56:6 59:11 60:8 66:10 68:5 71:16 115:9

**error** 35:22 37:8 52:16 53:15 103:17, 22

**estimate** 47:13 80:4 84:11

**etiquette** 41:3 53:22

**event** 81:5,6 82:21 88:17 140:21

**events** 85:7,8

**exact** 27:3 30:14 59:14

**EXAMINATION** 8:5 140:14

**examined** 7:24

**examples** 101:2 110:2

**exception** 78:21 122:11

**exchange** 52:3,24 60:18

**exchanged** 51:9

**exclusively** 69:11

**excuse** 113:3

**exhibit** 20:25 21:7,23 22:10 25:15 42:5 58:20 60:18 68:6 103:25 104:2,4,5,6, 10,16 107:14 111:25 114:13 115:11,12 121:20,21 123:7 125:5,10,23 126:12, 13 128:23,24,25 129:5 130:6 132:6 136:10 139:14,18,24

**exhibits** 7:13 59:2,15 60:21 143:12

**expect** 83:21,24 91:3

**expecting** 90:23,25

**experienced** 72:12

**expert** 60:7 68:21 69:4,7,15,20 70:15, 24 71:2,7,11,21,22 72:5,16 73:7,17 74:3, 10,16,24 75:5 133:5 134:2,10,18 136:8

**experts** 93:14

**Explain** 58:10

**express** 109:13

**extent** 116:17 119:11,21 120:2

---

**F**

**fact** 9:18 41:15 45:14 53:11 54:18 68:20 69:3,7,10,11 100:11 119:13 139:7

**Failure** 21:4 22:9

**falling** 91:24

**familiarity** 9:25

**family** 19:12 90:5

**fault** 23:19,25

**federal** 56:2 69:14

**feel** 31:13

**fellow** 81:25 82:3

**field** 93:15

**Fifty** 85:6

**file** 57:8,24 58:5,7 67:17 134:6,15,21 136:13,17,18,23

**filed** 58:19

**final** 60:17

**financial** 117:9

**find** 33:24 111:2 112:2 114:3

**finding** 119:13

**fine** 8:9 9:15 10:3 15:15 19:22 33:14,16 61:19

**finish** 21:19

**finished** 99:8

**Fiori** 114:8,16

**firm** 17:2,4,15,17,18 18:13 27:13 57:8 63:22,24,25 67:21 74:9 83:14 87:22

**flares** 8:23

**flipped** 112:22

**Floor** 6:7

**follow** 15:23 16:2,6, 18 17:12 18:10 33:3

**Forest** 11:17

**form** 60:20 120:13

**formal** 55:25

**forming** 93:12

**forward** 69:7,9,15 71:12,21

**foundation** 21:17 89:17 139:2

**Francis** 43:9,11,13, 15,17,21 47:24 48:14 49:13 50:7 54:12 55:3,7,8,15 57:8,10, 22,25 62:5,17,20,25 63:3,4,11,13,17 64:4 65:4,10,24 66:4,13, 16 67:25 74:16 75:11 76:3 80:16,19,22 84:3 85:21,24,25 88:21 94:16 106:10 107:2 119:5,17,24 120:3 121:10 122:7, 12,21 123:24 129:23 136:19 137:22 142:14

**Francis'** 47:18 54:5

**Friday** 60:25 61:2

**front** 21:25 42:5 104:17 114:6,15

**full** 22:11 99:9

---

**G**

**gauge** 47:3

**general** 107:11 142:16

**give** 11:7 16:3,5,13 19:24 23:22,23 24:4, 9 48:3 50:10 55:24 60:24 63:16 76:25 84:6 90:2,11,18 101:2,4 103:8 105:11 112:18

**giving** 18:6 20:18

**Golden** 81:18,19,21 82:5,14,16,20,21,25 83:6,7,10 87:22,25 107:21 117:10 126:19,21,25 141:4,6 142:7,16

**good** 6:2 8:8,9 21:16 25:9,12 84:17

**Governance** 21:5 22:10

**Great** 10:18 11:5 126:17

---

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002164
USAO-REL_001597032

**grounds** 32:7

**guess** 61:8 102:2

**guys** 56:5 59:25 60:10 61:13

## H

**half** 61:12 91:25 92:4

**hand** 33:25 61:7 103:24 114:2

**handed** 34:15,18,19 40:22 114:3 120:9,18

**handing** 28:24 30:12 56:19 111:17 113:12 120:11,17

**Hang** 23:16,18

**happen** 30:2 53:9 78:6,7,8 137:10

**happened** 31:7 35:2 48:16 51:8,11 52:20 53:9 99:5 111:12,22

**happening** 28:21 45:12,22 51:25 52:3 53:18

**hard** 10:21 35:3 47:2 49:22 76:24 84:13

**Hastings** 6:17,21,23

**head** 8:15 51:3 141:6

**headquartered** 6:12

**hear** 43:13 102:17 120:6 121:14 124:3, 13,22

**heard** 27:24 28:6,16 49:20 51:3,4 86:24 96:23 97:4 119:7,21 126:5 135:5,6

**hearing** 19:25 20:17 22:13 23:7,13 24:23 26:7 27:19 29:7 36:5, 6,8,9 42:14,17 47:5 50:13 56:9 60:6,22 73:8,14,18 74:4,10, 19 75:6,18,23 76:2 77:12 83:13 91:5,13 94:22 95:2 96:20,21 97:5,8,17 99:3,12 100:2,12,13 101:17

**hearing's** 23:20

**hearings** 40:12,17 41:19 42:3 102:4 106:18

**held** 6:6 12:9 16:10 21:9 39:13 54:10 80:2 95:21 131:11

**helpful** 31:17 130:7

**Henzy** 7:3,8 9:12,17 10:25 11:4,22,25 12:14,16,24 13:3,11, 15,18,22,24 14:9,12, 14,18,21,22,24 15:3, 5,6,7,9,15,17,18,25 16:7,12,15,17 17:5,8, 23 18:7,20 19:5,19, 21 20:3,6 21:11,15, 21 22:3,22,24 24:10 25:11 32:2,5,8,11,18, 23 33:8,11,16 44:18, 24 49:7,15,22,25 55:21,24 56:10,13, 19,25 57:19 58:18 59:4,8,17,20,23 60:5, 9 61:8,19 64:12 66:5, 13,21 68:3,10,13,22 69:6,9,18 70:4,7,10, 17 71:4,9,13,17,24 72:18,24 73:9,22 74:3,5,12,20 75:7 78:23 79:3,7 86:18 87:15 89:16 92:8 95:10,15 96:3 97:21 104:13 105:7,14 106:19 108:16 115:8, 12 118:24 120:13 126:9,13 127:17,23 133:7,25 134:13 135:4,6 138:6,12 139:3,11,13,17 140:10

**Henzy's** 12:4,6 17:2, 4,15,17,18 18:13 19:4,9,13 27:13 67:21 74:9

**highest** 92:22

**highly** 6:1 7:1,14,16 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1

**Hills** 11:17

**hired** 80:5,6,7 81:3,5, 11

**Ho** 6:5,18 66:14 104:8,12

**hold** 31:11 33:20 66:23 108:9 110:8

**Holding** 21:3 22:8

**Holdings** 135:22

**home** 94:3,4

**hoping** 29:13

**hour** 61:12

**hourly** 91:23

**hours** 91:24

## I

**idea** 12:7,12 19:3 32:12 63:10 80:20 85:22 87:13

**identification** 21:8 104:5

**identify** 75:4

**identities** 59:18

**immediately** 55:20 97:7

**impact** 69:17

**imply** 109:24

**importantly** 71:20

**improper** 15:13 58:25

**include** 42:11 45:20

**included** 45:18 119:8,9,23

**including** 28:8 124:19

**incorrectly** 46:15

**independent** 48:3 54:6

**indicating** 113:25 131:4 133:16 134:4

**indistinguishable** 18:2 49:24 61:14

**informal** 12:8 16:9 21:9 39:12 54:9 79:25 95:20 131:10

**information** 42:10

**initially** 14:13,22 17:16

**instance** 34:6 108:2, 11 109:20 125:14

**instances** 109:13

**instruct** 15:10,19 17:10 32:5 66:7 68:4 95:17

**instructed** 18:7

**instructing** 12:22, 23,24 17:24 32:15

**instruction** 15:23 16:2,5,18 17:13 18:11

**instructs** 9:17

**intend** 59:3 73:8

**intended** 59:15

**intention** 19:24 20:6, 11,12

**interest** 126:24 135:21

**interested** 105:9

**internal** 62:11

**interpose** 9:13

**interpret** 37:17 53:12 86:3,13,22 88:12,16, 17 89:19 98:19

**interpretation** 35:24 36:3 45:8 72:11 132:8

**interpreted** 37:16,19 41:8 45:25 46:6 53:5 101:13

**interpreter** 22:14,19 24:3 26:8,11 27:23 29:15 35:22 37:15 39:2,4 40:25 41:2,5 45:6,23 52:21,25 64:15 66:24 67:7 72:9,12 76:7,12,22 77:13,16,23 78:4,10, 14 81:13,25 82:3 83:14 85:17 88:20 90:5 91:2,5,13 98:23 101:22 102:10,20 107:20,23 110:9,12 111:5 112:9 113:22 115:5,15,19,24 116:9 117:24 121:25 126:6 132:7 133:24 134:12 141:15 142:20

**interpreter's** 39:17 45:9 53:21 111:16

**interpreter/ translator** 72:8

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002165
USAO-REL_001597033

Index: interpreters..meeting

**interpreters** 79:15 101:24 102:6

**interpreting** 27:22, 23 35:22 37:21 38:4 39:4,18 41:2 50:20 53:20 79:15,18,22 85:21 87:8 107:10 140:21

**interrupt** 30:10

**interrupting** 116:3

**interruptions** 30:6

**introduce** 6:16 68:5

**invoice** 83:24 84:5 92:14

**involved** 19:17 83:5 94:23 101:16

**involves** 13:12

**issue** 19:18,20 35:25 40:2,25 52:8 53:23 54:13 95:19 100:3,7 108:4 109:4,19,22 110:8 111:16 113:12 117:11,22 118:3,4

**issues** 40:24 50:19 118:14

**J**

**Jim** 60:12,15

**job** 63:15,16 67:5,10, 16 88:7,11,13 89:14 138:16 141:2,10 142:6,11

**judge** 14:19 61:15

**judge's** 59:10

**Juno** 11:17

**K**

**kerfuffle** 51:25

**Kerr** 6:14

**kind** 45:21 49:19,22 52:24 53:7 79:15 87:11 101:3

**Kingdom** 96:10,12, 17

**knew** 60:21 108:3

**knowledge** 137:2 138:23

**Krasner** 89:2,3

**Kwok** 6:5,19 19:10 24:24 25:7,17 26:2 29:10 37:19 45:24 66:14,21,25 74:23 77:9,13,16,23,24 78:10,14,19 79:11,12 80:5,6,22 81:4,9,14, 15,17,23 82:5,15,24 83:5,9 84:8,20 85:13, 17,20,23 86:11,24 87:23 88:5,7,10,20 89:6,14,22 90:2 92:12 94:25 95:4 100:6,10 103:8 104:8,12 126:19,24 135:21 137:23 138:15,24 139:8 140:19,23 141:9 142:19,22,23 143:2

**Kwok's** 19:12 27:18 80:9,11,14,18 81:11, 25 88:12,13 90:5 91:4 95:18,23 99:3, 21,25 103:12,17 141:6,12,14,19,22 142:2

**L**

**labeled** 6:3

**lack** 89:16

**late** 89:6

**lawsuit** 96:9,12,16

**lawyer** 17:18 68:16

**lay** 21:17 101:4

**lead** 140:22

**leading** 139:9 140:9

**leaving** 97:17

**legal** 6:11 13:6,12 68:22 70:17 71:4,13 72:19 73:9,22 74:5 87:6,7 129:16,17 132:9,22 133:22 134:9 142:14

**legally** 132:10

**lengthy** 116:12

**light** 56:9

**limit** 8:23

**Limited** 135:22

**lines** 43:25 46:24,25 47:11,22 130:11 131:24,25 132:19 134:19 135:12,13 137:8,10

**list** 60:18

**listen** 43:18 55:10 57:12 67:16 75:22

**listened** 48:15,23,24 50:17,24 51:5,7 75:17 93:20 112:16 120:5 121:13 136:16, 20

**listening** 48:6 50:15 58:6 119:13 124:11

**litigation** 96:7

**LLP** 6:7

**long** 31:25 32:3,9 46:20,22,23 47:3 64:21 65:4,16 98:15 138:17

**looked** 40:5 112:12 122:8 123:21 125:16 129:23

**lot** 46:8 85:16 107:8

**loud** 28:23 31:16 33:22 34:5 40:21 53:24

**Luc** 6:25

**Luft** 6:17 7:15 8:6,10 11:5,6,24 12:13,21 13:2,6,8,14,16,19,23 14:7,20 15:2,8,12,16, 21 16:4,13,16 17:3,7, 11,21 18:3,9 19:2,8, 16,22,23 20:10,25 21:13,16,24 22:5 23:5 24:8,11,18 25:13,23 27:5,10,17 28:13,14 29:2 30:7 32:3,7,9,17,20,24 33:2,10,14 34:3 35:5

36:19 39:6,20 43:2 44:20 45:2 47:4 48:20 49:11,21,23 50:5 54:2,11,23 55:18,23 56:18 57:2, 6,17,20 58:21,22,24 59:6,12 61:2,5,15,20 62:3 63:7,20 64:17 65:2,9,21 66:8,15,18 67:9,20 68:5,12,18 69:2,6,13,21 70:6,9, 12,19 71:6,10,16,20 72:4,23 73:15 74:2,8, 15,22 75:3,9,21 76:6, 11 77:7,14 79:2,5,9 80:3 82:23 84:18 86:10,20 87:20 88:3 89:12,13,20 90:8 92:11,20,23,24 94:5, 13 95:12,18,23 96:5, 19 98:2,12,19 99:20 101:6 103:7 104:6,14 105:9,19 106:5,23 108:7,23 109:11 110:6 111:13 112:11 114:12 115:2,9,14 118:12 119:3 120:16 121:19 123:12 125:4, 7,9,22 126:2,11,14 127:20 128:4,22 129:7 130:5,14 131:13 132:5,18 133:9 134:7,16,24 135:5,7,10,18 136:15 137:11,19 138:9,14 139:2,9 140:9,12,15 143:4

**M**

**made** 7:19 9:18 29:5 30:5,17 31:6 35:22 36:3 41:12 46:18 58:7 62:8 68:8 72:2 97:18 103:16 113:6, 16,21 116:24 119:14 122:14,18 123:3 125:14,19

**mailed** 82:10

**main** 47:21

**major** 47:20 52:18

**majority** 31:8,9

**make** 7:8 20:8 28:4 29:10 32:20 34:13, 14,17,21 49:16,25 62:14 85:5 98:15 102:22 103:2,20 120:6,23 121:2,6,14, 17 124:4,16 142:25

**makes** 51:21 141:7

**making** 29:17,21 30:20 46:12 62:18 111:8 112:3 113:7 116:21,23 120:4 121:11 123:13,18,22, 25 124:18

**Manning** 61:15

**March** 36:5 55:4 104:7 112:20

**mark** 20:25 103:25 104:9

**marked** 21:6 22:10 104:3,16

**material** 7:13,16 22:14 23:8 25:18 26:3,9,16,20,23 27:20,24 28:6,15,19, 20 31:16 33:21 34:2, 7 40:24 41:25 97:18 121:25 122:23 123:3, 14 124:4 125:12,18 133:11

**matter** 6:5 12:2 68:21 69:8 93:9,16,19 142:14

**matters** 87:6,8,19 95:6

**Max** 88:25 89:3

**meaning** 83:3,4

**means** 15:4 20:11 123:23

**meant** 76:15

**Mechanically** 67:15

**media** 6:3

**meet** 31:21,22 94:25 141:18,22,23

**meeting** 22:16 23:9 25:19 26:10,17,18,25 28:8,22 36:11 47:2

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002166
USAO-REL_001597034

49:19 95:13 97:2
99:15 104:7,11
105:18 107:8 122:3,
24 129:11 139:20
140:2

**meetings** 35:7 85:18
95:4,6

**Melissa** 43:9 66:13

**member** 19:12

**members** 90:4

**memory** 23:19,25
48:18,22 49:2,18
51:2 96:14

**memory's** 106:17

**mention** 8:15

**mentioned** 36:20,21
38:11 62:4 78:22
91:17 96:17 112:23

**mentions** 112:9

**Menye** 126:5

**met** 32:3,9 78:8 86:13
141:24 142:4

**methodology** 93:18

**middle** 22:2 109:3
115:3,9 120:12

**Miles** 19:9

**mind** 25:21 33:5
39:24

**mine** 131:8

**minor** 52:18

**minute** 113:13

**mis-** 44:15

**mischaracterize**
16:14

**misinterpretation**
45:9

**missed** 112:14

**misstatements**
97:18

**mistake** 45:10 46:5
116:24 125:18

**mistakes** 52:18 98:7
122:14,18

**mistranslated** 34:20
117:17 127:11

**mistranslating**
44:15

**mistranslation**
97:14 108:9

**mistranslations**
100:4,8,11

**Mitchell** 89:4

**moment** 35:9,10,13,
15,20,21 36:4,12,14
37:2,13 38:2 43:23,
24 44:10,21 45:3,5,
17 46:23 47:23 48:4,
16 49:10 50:18 51:4,
13 52:12,14,16,17
96:15 111:23

**moments** 35:11,18
52:2 107:8

**money** 82:9 84:7
92:9,12,17

**month** 42:23 65:11
77:5,6

**morning** 6:2 8:8,9

**motion** 20:21 21:2
22:7,13 23:7 26:7
73:20 90:17 121:24

**motions** 124:14

**Move** 95:15

**moving** 13:21

**muddled** 96:15

**multiple** 115:4
124:20

**N**

**names** 38:25 39:7
40:2,6 46:5,14 126:4

**naturally** 101:14

**needed** 53:4 142:11

**negative** 25:5

**Nick** 6:20 59:25

**nonlegal** 142:24

**noon** 58:20 61:4

**note** 28:24 29:9
33:25 34:15,18,20
54:16,20 56:19
102:22 103:2,21
108:3,12 109:13,21
110:14 111:17 120:9,
11,17

**notepad** 99:17

**notes** 29:22 30:12,22
31:7,8 33:18 40:22
62:14 98:20,24 99:2,
5,11,22 100:3 113:4,
13 114:2,4 120:18

**noticed** 35:23

**November** 6:8

**Nowadays** 84:17

**number** 28:21 35:2,
25 38:3,7 40:14,18
45:11 53:18 77:3
84:16 85:9

**NY** 11:17

**O**

**oath** 11:11 102:11

**object** 12:17 44:18
66:5 78:23 86:18

**objected** 18:7

**objection** 9:13,14,19
12:18 14:14,15 15:7,
14,19 17:5,6,9,23
19:5,19 20:3 21:2
22:7,22,24 32:2
34:13,15,17,18,21
42:6 49:7 50:2 68:3,
22 70:17 71:4,13
72:2,18 73:9,22 74:5,
12,20 75:7 87:15
89:16 95:10,15,16
97:21 106:19 116:8,
12 118:14,18 119:12,
14 120:4,6,13,23
121:3,6,11,15,21
123:3,14,19,22
124:4,15,16,18,22
125:14 127:5,8
128:10 133:7,25
134:13 136:2,5
139:2,9

**objections** 20:8
32:21 111:9 112:3
116:17,21,23 124:2

**obligated** 56:8

**observations** 87:14

**obstructing** 32:24

**offer** 17:22 23:6 71:3
72:6,16 73:8,17 74:3,
10,16,24 75:5 133:21
134:2,18 136:8

**offered** 18:5

**offering** 23:12 70:15
71:15 133:4 134:10

**office** 80:8,9,12
140:24 141:2,4,16,
19,22 142:2,5

**official** 22:15 23:8
26:9,16,24 27:22,25
28:10 35:21 113:22
115:24 122:2,24
129:10,15 133:24
134:12

**once-over** 112:19

**opinion** 44:16 71:14
131:25 133:5,21
134:3,11,18 135:13
136:8

**opinions** 69:25 70:3
71:2,11,22 72:5 73:7,
17 74:4,10,17,24
75:5 93:15 94:8

**opportunity** 105:12

**opposed** 112:3
113:6

**oral** 113:12 114:5
124:15,16

**order** 7:11 21:3,5
22:8,10 59:24,25
60:13,17

**owed** 92:12,17

**owned** 126:24

**owner** 129:16,18
132:9,22 133:22
134:9

**owner.'** 132:10

**owners** 126:19,21
129:13 130:2,20

**P**

**p.m.** 108:20,21
137:13,15,16,17
143:8,11

**pad** 99:9

**pages** 47:14,17
106:7 107:2 116:20
122:21 123:2,7
124:2,23 125:11,17
131:22

**paid** 63:21,25 64:18
67:18 81:16 82:4,16,
21 83:7,8,14,15 91:3,
19

**paragraph** 7:10
22:20 130:17

**part** 44:12 47:19
55:5,6 93:21 112:8
118:6 129:22

**parts** 50:6 58:13

**party** 67:3 79:14 81:9
141:14

**pass** 103:2,21

**passed** 29:9 108:3
109:13,21 110:14

**passing** 29:21 30:22
108:11 113:3

**past** 27:11 76:18,23
79:13

**Paul** 6:17,20,23

**pause** 11:23 13:25
14:4 16:24 17:20
18:24 19:15 22:4,21
25:20 27:2,7,16
28:17 30:3 34:22
36:15 38:24 42:22
46:21 48:17 52:13
54:22 56:12,17 63:6,
18 64:24 65:6,18
67:13 73:24 74:14
75:2,20 76:5,10 77:4,
10 82:18 84:12 86:7
87:17,24 90:7 92:19
96:13 97:20 98:11,16

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002167
USAO-REL_001597035

99:13 100:24 103:4 105:15,21,24 106:2 108:5 109:9 110:5 111:10 112:5 114:24 118:9,21 119:2 121:18 123:10 125:3, 8,21,24 127:15,19 128:21 129:6 130:4, 13 132:4,17 134:23 135:9,17 136:11,14 139:12,16

**pay** 18:13,19,23 63:17 64:6 81:22 82:5,25 83:25 84:3

**paying** 12:4,6 18:16 19:3,10,13 83:20,22

**pending** 10:13 21:22,23

**people** 56:14 80:21 86:11,15 108:13 142:4

**percent** 23:4 70:6

**perfectly** 128:18

**performing** 93:12

**Periodically** 9:12

**periods** 29:20

**person** 46:14 114:20

**personally** 90:3

**phone** 16:21

**physical** 128:6

**pick** 37:10,15,21

**picked** 52:16

**picking** 38:7

**place** 27:21 141:20

**plan** 75:5 134:18 136:8

**planning** 23:6 73:17 133:21

**plans** 24:2

**play** 136:23

**pleading** 26:7

**Podolski** 89:8

**point** 28:22 30:4,13,

17,24 31:6 34:25 35:11 41:4,17 45:14, 16 53:10,14,23 105:7

**portion** 44:10,14 46:11,20 50:11,16,21 54:4,13,25 55:9 57:23 62:21 65:11 75:10 76:3 98:16,17 104:24 105:5,8,17,20 113:2 122:7 127:11 128:17 129:23 136:18

**portions** 75:12,14,23 76:2 104:22 106:10, 13

**position** 34:14

**potentially** 85:4

**practice** 61:16

**preparation** 94:23 95:2 136:24

**prepare** 31:18 41:23 73:2

**prepared** 71:2 72:6, 16 114:7,16 123:24

**pretty** 91:14

**previous** 33:6 101:13

**previously** 124:20

**primarily** 69:10

**prior** 27:15 42:8 43:25 46:24 50:6 54:13 94:22 96:20 97:4 129:14

**private** 29:15 111:5 112:9 113:22 115:4, 15,19 117:24

**privilege** 12:18 13:2 14:16 15:7 17:9,24 32:2,8,14,21 66:6,9, 19,21,22 67:2,4 68:3 69:22 95:16,18,23

**privileged** 32:4,10 68:16

**problem** 46:7 53:21 102:21,25 117:14

**proceed** 8:3 9:19

**proceeding** 95:25

**proceedings** 77:23 78:11

**produce** 56:8,20 57:4 67:17

**produced** 55:20 57:5 119:17

**producing** 59:2

**product** 58:2,3 62:5 65:5,17,25 67:18 93:23,24 94:20

**production** 55:21,25 56:3 59:9

**professional** 53:22 102:11 134:3

**proper** 32:22 132:7 135:13

**properly** 7:17 132:25 133:3,6,13,23 134:4, 12

**protective** 7:11

**provide** 59:22 133:14

**provided** 94:15 133:17 137:25

**providing** 56:7

**public** 92:10

**pull** 121:20

**purported** 123:14

**purportedly** 123:16 130:25 131:2

**purpose** 30:9 59:14 62:17

**Pursuant** 7:10

**pursue** 32:18,19

**put** 21:24 22:13 26:8 41:8 53:16,17 57:17 59:3 68:6 69:6,9,14 71:7,11 121:24 128:25

**putting** 71:21

**puzzling** 113:11

## Q

**question** 9:2,5,9,18, 19 10:13 12:19 15:8 20:14,16 21:12,19, 21,23 22:2 26:14 33:13 36:18 37:18 39:3,16 46:18 49:15, 17 53:2,3 65:7 68:11, 15 70:4,22 71:9,19, 25 72:3 73:13 91:9 96:3 97:14 98:14,15, 16 100:18,23 102:12, 21 103:2 112:10 117:8,12,15,23 118:24 119:15 120:14 127:18,24 129:12,14,16,25 132:9,15,24 133:10, 22 135:21 136:3,9 137:4

**question's** 98:18

**questioner** 98:20

**questioning** 45:11 46:25 69:17 106:18

**questions** 9:13 38:5 52:22 70:25 72:10, 14,22,25 97:15 101:12,13,15 137:25 138:3,8,14 143:5

**quick** 21:19 112:18 137:12

**quickly** 10:8

**quoting** 130:12

## R

**raise** 31:16 34:5 45:14 53:10 113:12, 13 114:5 116:8 117:11

**raised** 35:16,17 39:16 40:20 45:17 50:19 53:23 113:23 117:23 124:15

**raising** 27:21 35:25 111:16 118:14

**ranging** 77:20

**rate** 64:16 91:23,25 92:4,5

**re-listening** 124:3

**reach** 14:12

**reached** 93:14

**read** 42:6,13,16,18, 19 43:5 47:24 48:12 50:17,21 51:3,4,6,7, 19 127:3 128:17

**reading** 48:7 50:15

**real** 137:11

**realtime** 135:8

**reason** 9:4 10:4 11:7 116:23 124:19 127:10 128:16

**recall** 24:5 34:12,19 36:21 37:4,12,23,25 38:13,16 39:23 40:10 47:23 49:4,5 52:11, 19 54:3 77:15,19 95:5,8 96:6,18,25 97:6 98:5,10 99:18 102:5 106:17 110:21 120:17,18 121:16 122:19 131:9,14,16 132:24

**receive** 90:11

**received** 43:10 87:21

**receiving** 65:13

**recent** 76:21

**recently** 88:2

**recess** 24:14 61:23 108:19 137:15

**recollection** 14:8 27:6 35:6,19 36:23 40:16 41:19 42:2,21 47:16 48:4,16 50:11 51:5,13 54:7 76:25 97:3 98:4 102:3,8 107:5,7,11,13 111:7, 11,21 112:25 122:13, 14,22 131:19 133:12

**record** 7:9 11:14 12:9 16:10 21:10,14, 15 24:11,13,17 34:21 39:13 50:17 51:10 54:10 56:18 58:4

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002168
USAO-REL_001597036

61:6,18,22 62:2 80:2
95:21 103:21 108:15,
18,22 112:3 113:20
116:18,21 117:23
118:11,16,18,20
119:8 123:13,20
124:15 125:14
131:11 137:14,18
143:9

**recorded** 6:4 45:12
46:2 93:23 113:15,23
117:23 118:18
119:22 125:19

**recording** 119:7

**REDIRECT** 140:14

**redundant** 10:2

**reference** 29:15
112:2,13,19 118:2,7,
13 119:12 120:3
121:10 122:8 123:18,
22,25 124:17 126:7
132:19

**referenced** 22:19
115:16 130:17

**references** 111:5
115:4

**referred** 78:3 81:24
82:2

**referring** 80:24
94:15 107:24 110:12

**reflect** 56:18

**reflected** 41:14 44:3

**reflecting** 44:6

**refreshed** 42:2 51:14
106:17 122:13

**refused** 34:13 59:21

**regard** 42:2,10 49:12
52:8 54:4 67:25
93:15 94:7 95:24
97:11,14,15,19 98:7
99:12,22 100:7
109:25 115:23 116:9
120:4,24 121:3
124:23 131:19 133:5,
21 134:11,18 137:8

**registered** 91:16

**related** 90:17

**relationship** 18:4
66:11 89:11

**relevant** 64:12

**relied** 69:25

**relief** 60:3

**rely** 70:8 133:12

**remember** 23:24
24:7 27:8 30:14,24
34:23 35:4,8,9,13,15,
16,17 36:7,10,11,13,
14,25 37:14,22 38:8,
21 39:5,15,18 40:19,
23 41:6,7,15 42:20
43:25 47:7 50:20
51:24 52:3 53:24
77:11,17 85:8 86:2,8
96:16 110:22 122:17

**remembered** 50:18

**remind** 51:11

**reminded** 51:7

**remotely** 110:17

**renew** 137:20

**repeat** 8:19 119:15

**repeating** 51:18

**reportedly** 129:15

**reporter** 6:14 7:7
8:2,16 10:21 11:3
12:10 16:11 21:7
39:14 46:2 95:22
104:4 113:19 114:10
116:14 117:15
131:12 143:13

**reporting** 6:11,15
113:17

**represent** 12:14
17:22 18:6

**representation**
14:13

**representative**
137:23

**represented** 11:18
13:4,12 14:16

**representing** 27:14
63:4,8 67:22 129:17
132:10 134:9

**represents** 11:25

**request** 47:18 54:5
55:22,25 56:8 57:3
60:19 65:15 89:19
94:6 137:21 142:25

**requested** 82:20
83:6,23

**requesting** 57:21
60:20

**requests** 56:3

**reserve** 137:24

**respect** 73:20

**respond** 57:10

**response** 60:23
107:20 129:12 132:8

**responsible** 18:16,
18

**rest** 75:18

**results** 57:22

**resumed** 24:15
61:24 108:20 137:16

**retained** 67:10
143:12

**reversed** 120:10

**review** 11:2 41:22
75:14

**reviewed** 41:25
47:17 54:5,24 55:5
75:11

**rid** 99:7

**Rights** 21:5 22:10

**role** 107:21

**room** 28:3 53:6
108:14

**Rudnick** 6:7 88:2
95:25

**rules** 56:2,4 69:14

**S**

**safe** 120:5 121:13

**sandbagged** 59:2

**sat** 142:6

**scenario** 101:4

**schedule** 56:13
59:4,7,10 60:5,11

**schedule's** 56:13

**scholarly** 93:11,13

**section** 42:19 43:7,8,
17,20 49:12

**security** 128:6

**selected** 76:3

**send** 49:13 67:18
82:8 84:5

**sending** 50:9 54:13
55:8 83:24

**sense** 51:21 141:7

**sentence** 22:11 26:6
121:23 134:11

**separate** 49:18

**series** 52:18

**serve** 83:13 85:17

**service** 12:4,6

**services** 18:14,17
19:4,10,13

**serving** 77:22

**set** 60:17

**setting** 79:19

**share** 57:7

**shared** 106:10 107:2

**shook** 8:15

**shorthand** 8:2 11:3
12:9 16:10 21:7
39:13 95:21 104:4
114:10 131:11
143:13

**showed** 108:25

**sic** 45:21 117:25

**side** 88:16 128:25

**sideline** 53:7

**signature** 142:10

**significant** 35:9,10,
11

**simultaneous** 79:18

**simultaneously**
79:16

**sitting** 41:20 48:9
73:16 75:4 122:23
125:11,16 131:14,16,
18,23 132:24 133:2,
20 134:9,17 135:11
136:7 137:2

**situation** 33:24
107:9

**Sixty-one** 105:22
130:10,18

**Sixty-two** 106:3
117:21

**something's** 9:8

**son** 126:20,22

**speak** 13:24 24:20
31:23,25 57:25 86:24
100:7 111:17

**speaker** 98:14

**speaking** 18:3 20:8
48:7 98:21 111:5,6,9
112:2 113:7

**speaks** 87:9

**specialist** 6:11

**specific** 38:9 41:18
52:4,11 77:19 98:3
102:9 107:7,13
122:13,14,16,23

**specifically** 36:16
37:12 38:9,19 40:15
41:21 51:8 54:3
62:21 74:7 86:2 95:5
107:17 122:17,25
125:18

**specifics** 50:20

**speculate** 38:16

**spoke** 13:17 14:9
31:20 87:3

**spoken** 20:18 23:12
58:13 113:18

**Spring** 81:18,19,21
82:5,14,16,20,22
83:2,6,7,10 87:22,25
107:21 117:10

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002169
USAO-REL_001597037

126:19,21,25 141:4,6
142:7,16

**Square** 6:7

**staff** 80:13,14,18
81:11 141:2

**stand-alone** 101:15

**start** 6:3 98:14,19
113:7

**started** 84:8 120:11

**starting** 126:18

**state** 11:13 39:10
40:3,7 46:15 52:9,15
53:16

**statement** 7:9 29:5
32:20 41:11 102:23
103:3,20 123:14

**statements** 29:18,21
30:20 93:21 112:20
115:20 116:15 118:3

**stating** 129:17

**steno** 99:9

**sticks** 39:23

**stop** 116:2

**Street** 6:12 11:17

**strike** 28:13 89:12
92:23 95:15 125:7

**stuck** 47:20

**study** 93:5

**subject** 95:6 141:12,
14

**subsequent** 43:25
46:24

**sudden** 120:11

**suggestion** 112:4

**Suite** 6:13

**suppose** 57:11

**supposed** 78:6,7

**surprising** 91:14

**swear** 7:7

**switch** 30:2,18

**switched** 28:22

30:12 31:7,8

**switching** 33:18

**sworn** 7:24 101:19,
22,25 102:3,6,9

---

**T**

**taking** 116:15 118:3

**talk** 10:19 21:22
61:17 85:23 100:10

**talked** 54:12 92:9
118:17

**talking** 10:20 85:20,
24 86:5,15 87:5,7
94:10,11 128:5

**talks** 86:11

**tallied** 84:10

**telephone** 14:25

**telephonic** 104:7
139:20,22 140:7

**telling** 28:23 44:16
45:5 103:21

**Terrific** 11:10 38:10

**testified** 7:19,24
56:21 86:19 122:6,11

**testify** 25:6 132:7,12

**testifying** 24:23 25:3
68:20 69:3,24 91:10

**testimonies** 41:3

**testimony** 11:8
19:24 20:19 22:14
23:6,13,22,23 24:4
26:8 44:19 62:21
69:19,20 70:16 72:17
75:6,12 90:11,18
98:8 121:25 124:23
133:8

**texts** 93:11

**thing** 8:14 10:12,25
25:22 33:6 40:23
47:20 56:3,6 85:5
87:11 113:9 116:21
137:8,10

**things** 28:21 35:2
36:2,22,25 38:8 40:9

45:24 46:8 51:23
53:18 56:15 119:7

**thought** 21:20 30:10
34:6 36:4 91:6,7,18
117:14 131:7

**thousand** 64:16 85:6
91:19

**time** 10:6,20 13:17
24:12,16 26:2,20
27:4,12,19,22 29:10
35:2 36:10 43:10
44:2 49:4,6 51:25
61:21,25 67:22 77:8,
15,19,21 78:3,8
81:18,24 83:15 84:8
86:9 88:21 91:21
104:9 108:17,21
120:19 133:23
136:16,20 137:13,17
138:4,16,17 141:5
143:3,8

**timeline** 7:14

**times** 6:7 29:14,17
31:9 34:11,12,19
78:9 80:4 102:5
124:20

**tirade** 97:24

**today** 10:4 11:8,19
12:4 18:17 19:4,10,
13 20:22 23:11 41:20
42:8 48:10,19 49:2
51:24 56:23 58:20
73:16 75:4 83:15
84:9 85:10 91:14,18
92:14,16 122:23
125:12,16 131:14,18,
23 132:24 133:2,20
134:9,17 135:11
136:7 137:2 138:24

**today's** 143:6

**told** 26:2,19 37:8
52:5 90:10 124:19

**top** 22:11 116:8

**topic** 97:11

**transactions** 117:9

**transcribe** 124:13

**transcribed** 93:21

**transcript** 7:12

28:16 29:15 40:5
41:15 42:13,16,18,19
43:3,4,5,7,8,17,19,20
44:2,4,6,9,10,13,14
45:13,19,20 46:9,11,
20 47:9 48:7 49:13
50:9,15,16,22 51:16,
19 53:8 54:5,14,17,
25 55:6,11 56:21
57:23 58:7 65:11
75:11 76:2 102:2
104:6,10,24 105:17
106:7,14,25 110:24
112:20 113:2 114:7,
15,23 118:10,16
119:23 122:7,12
123:21,23 124:6,12
127:11 131:23
133:14,16,17 134:5,
20,22 136:9 139:20
140:2 143:14

**transcription** 40:6
58:5

**transcripts** 105:2

**translate** 65:15
93:22 98:16 103:11
128:17

**translated** 53:5
58:11,13 62:5,22
129:25 130:3,24
131:15,17,24 132:25
133:3,6,13,23 134:4,
12 136:10

**translating** 67:12
98:13,15 100:15
103:17

**translation** 22:15
23:8 25:19 26:3,10,
17,24 27:20 28:7
34:7 64:2,7,19,22
66:4 84:3 93:6 97:19
102:18 109:4,14,18,
22 110:8,9 115:23
116:25 118:14 119:4,
11 120:4,24 121:3,6,
9 122:2,15,24 123:4,
15 124:18 125:13
127:5 128:10 129:10,
15,21 131:19 135:13

**translations** 99:23
118:4

**translator** 27:25
28:10 44:15 101:19
102:4 103:11,16
117:16 127:12
128:17

**travel** 88:4

**trial** 59:3

**triggered** 30:13

**true** 59:11

**trustee** 6:18,22,24
7:2 8:11 21:3 22:8

**trustee's** 129:12,16
132:9

**truth** 101:20

**truthful** 11:7

**TSG** 6:11,15

**Tuesday** 23:20,23
24:2,23 25:7 73:8,14
74:4,11,19 75:6
83:17 90:21 91:5,10,
20

**turn** 22:7 107:15
108:8,25 110:4
114:22 115:22
117:19 118:2,13
121:22 123:7 125:23
126:3,17 129:2 130:6

**type** 128:5

---

**U**

**U.S.** 129:12,16 132:8

**UBS** 96:6

**uh-huh** 8:17 9:3
25:16 29:6,8 30:8,16,
19 31:12 37:9 38:14,
17 40:11 48:2,13
50:8,12,14,23,25
51:15,17 52:7,10
58:9 62:7 64:5 66:2
70:14 72:15 73:6
78:17 81:8 82:7,12
83:12 85:11 88:8,23
93:2,10 96:22 97:9
100:16 101:8,18
102:14 103:19
106:15 107:22 110:3,
25 112:17 114:9

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002170
USAO-REL_001597038

118:5 119:6 121:12
122:5 124:21 139:25
142:15

**unable** 133:2 137:6

**unclear** 9:5,8

**understand** 9:4,9
11:10 17:8 24:19
26:11 51:22 58:11
66:11,18 67:5 89:21
110:2

**understanding**
24:22,25 26:12 44:21
91:12

**United** 96:9,12,16

**University** 93:7

**unlike** 113:11 114:4

---

**V**

**vague** 19:21 20:4,9
22:25 49:7 50:3
72:20 78:24 97:21
106:19 134:13

**venue** 88:22

**verbal** 33:18 56:3
114:5

**verbally** 113:7 124:7,
8

**verbals** 44:6

**video** 6:3,11

**violate** 66:22

---

**W**

**wait** 60:24 61:6,12
98:13,18

**Wan** 6:5,19 66:14
104:8,12

**Wang** 80:17,19,22,
24,25 88:11 89:21
138:15,16,24 140:17,
18 142:12,24

**Wang's** 89:14

**wanted** 55:9 62:20
100:2,6 127:21

**Washington** 78:7

**week** 14:11 19:25
27:11 65:22

**Wenlong** 6:23

**Westminster** 93:7

**witnesses** 59:19
60:21

**word** 20:11,12 40:13
41:8,10,11 52:4
93:21,22

**words** 36:16 38:9
51:9 86:12,16 93:22

**work** 58:2,3 62:5
63:17,21 65:5,17,24
67:17 77:2 79:3
80:21 81:4,5,12,16,
22,25 82:8,16,21,24,
25 83:3,8 84:2,3,7,20
87:23 91:20 92:13,15
93:8,12,13,19,23,24
94:7,20 95:24 142:24

**worked** 77:8,24 78:9,
14,18 79:5,10 82:3
85:12 90:4 136:21
140:23 141:21 142:8

**working** 72:8 84:8
89:10

**works** 8:24 16:4
89:21 141:9

**writing** 56:19

**written** 57:2 131:4

**wrong** 37:16,22
44:17 45:6,7 46:6,18
137:4,7

**wrote** 40:21 57:11

---

**Y**

**year** 76:21 79:13

**years** 72:9 76:18,20,
21,23 138:18,20

**Yesterday** 31:24

**York** 6:8,13 117:10

**Yvette** 80:25 138:15,
16

---

**Z**

**Zeisler** 7:3,4 57:8
83:23,24,25 84:5
87:22,25

**Zeisler's** 63:24,25

**Zhuge** 6:23

CONFIDENTIAL
CONFIDENTIAL

Paul Hastings_GJS_002171
USAO-REL_001597039