UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

         -against-

MILES GUO,

                          Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/21/2024

23 Cr. 118 (AT)

**ORDER**

ANALISA TORRES, District Judge:

The Government moved *in limine* to admit the testimony of "Witness-1" about conversations he had with Defendant, Miles Guo, "regarding the GTV Private Placement and, in particular, legal risks associated with pooling non-accredited investors' funds."  Gov. Mem. at 31, ECF No. 273.  Guo, in opposition, argued that he had a personal attorney-client relationship with Witness-1.  Guo Opp. at 25–27, ECF No. 287.  By order dated April 29, 2024, the Court found that Guo's opposition brief "raise[d] the possibility that Witness-1's proposed testimony involves communications protected by the attorney-client privilege," and ordered the Government—if Guo did not invoke an advice-of-counsel defense as to Witness-1—to file a supplemental brief addressing the issue.  ECF No. 310.

Having reviewed the Government's supplemental brief, *see* Gov. Supp. Mem., ECF No. 331, and Guo's reply, *see* Guo Reply, ECF No. 332, the Court finds that the attorney-client privilege does not bar Witness-1's anticipated testimony.  Because Witness-1's testimony about his previous statements and conversations may constitute hearsay, however, the Government shall submit an offer of proof (written or oral) at least 36 hours before calling Witness-1.

I.      Attorney-Client Privilege

    A.  Legal Standard

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). The privilege "encourages full and frank communications between a client and counsel, which in turn promotes an understanding of and compliance with the law and the administration of justice." *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18 Civ. 11386, 2021 WL 3524081, at *2 (S.D.N.Y. Aug, 10, 2021). The privilege is narrowly construed because it "renders relevant information undiscoverable." *Erie*, 473 F.3d at 418. The party invoking the privilege "must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id.* at 419. Critically, although "the cloak of the privilege simply protects the communication from discovery, the underlying information contained in the communication is not shielded from discovery." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992); *see also Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").

The third prong of the privilege test requires that a communication be "made for the purpose of obtaining or providing legal advice." *Erie*, 473 F.3d at 419. "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Id*. If the predominant purpose of the communication is legal advice, the communication is privileged in its entirety even if it contains supplementary nonlegal advice. *Id*. at 420. By contrast, if the legal advice is "incidental to the nonlegal advice that is the

predominant purpose of the communication," then disclosure should be ordered with any legal advice redacted.  *Id*. at 421 n.8.  Because a company's in-house counsel "mix[es] legal and business functions," *Bank Brussells Lambert v. Credit Lyonnais (Suisse)*, 220 F. Supp. 2d 283, 286 (S.D.N.Y. 2002), "communications between a corporation's employees and its in-house counsel . . . must be scrutinized carefully."  *Spectrum*, 2021 WL 3524081, at *2.

In general, "the presence of a third party" in a conversation between lawyer and client "counsels against finding that the communication was intended to be, and actually was, kept confidential."  *United States v. Mejia*, 655 F.3d 126, 134 (2d Cir. 2011).  There are, however, exceptions to this general rule.  For one, the presence of a third party "does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client," like an interpreter or an accountant.  *Id.* (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)).  The privilege is also "not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege"—the so-called "common interest rule."  *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015).  Although litigation need not be ongoing for a common interest to exist, "the purpose of the communications must be solely for the obtaining or providing of legal advice."  *Id.*  For the common interest rule to apply,

> (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought were designed to further that interest.  The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. With regard to the "interest" that must be shown, federal case law has repeatedly held that communications regarding business matters—even where litigation is pending or imminent—do not qualify for protection from discovery under the common interest rule. . . . [And,] courts have recognized that a business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule.

3

*Gulf Islands Leasing, Inc. v. Bombardier Cap., Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003) (quotation marks and citations omitted).  "The law is clear in this circuit that a person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof." *von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987).  That person must make a showing—"based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence[]"—that "the communications at issue [were made] for the purpose of giving and receiving shared legal counsel."  *Gulf Islands*, 215 F.R.D. at 472 (internal quotation marks and citation omitted); *accord Chevron Corp. v. Donziger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013).  "[M]ere conclusory or ipse dixit assertions in unsworn motion papers authored by attorneys" do not suffice.  *Gulf Islands,* 215 F.R.D. at 472 (cleaned up).

B.  Discussion

The Government seeks to have Witness-1 testify on three topics: the "family office entities that were members of the G Enterprise," the GTV Private Placement, and Witness-1's work at the Rule of Law entities.  Gov. Supp. Mem. at 3–4.

1.  Family Offices

First, the Government moves to admit Witness-1's testimony about several entities that were allegedly part of the G Enterprise, including "Golden Spring, Lamp Capital, Leading Shine, and Hudson Diamond, among others."  Gov. Supp. Mem. at 3.  The Government expects Witness-1 to testify to the "ownership structure, bank accounts, financial transactions, decisionmakers, and personnel" of these entities, which it contends he learned about in his "business and administrative work," and not his legal work, for Guo.  *Id.*  The Government represents that this testimony does not rely on "information or communications that are privileged."  *Id.*  To the extent that Witness-1 intends to testify to his factual knowledge of the

4

entities—as opposed to any communications he had with Guo about them—such testimony is not covered by the attorney-client privilege. *See In re Six Grand Jury Witnesses*, 979 F.2d at 944 (distinguishing "underlying information," which is not privileged, from the "communication," which is).

The Government also expects Witness-1 to testify about "certain representations that [he] made to banks concerning [the family office] entities and the nature of certain financial transactions." Gov. Supp. Mem. at 3. "Communications between an attorney and someone who is not their client generally are not protected by the privilege." *Walsh v. CSG Partners, LLC*, 544 F. Supp. 3d 389, 391 (S.D.N.Y. 2021); *see also Ackert*, 169 F.3d at 139–140 (declining to extend privilege to communications between counsel and an independent investment banker). Although "[t]hings become less clear cut . . . when the third party is intimately involved in the transaction or event about which the attorney advises their client," *Walsh*, 544 F. Supp. 3d at 391, Guo does not argue that this is the case. *See generally* Guo Reply. Accordingly, the Court finds that the attorney-client privilege does not bar Witness-1 from testifying as to his conversations with banks about the G Enterprise entities.

### 2. GTV Private Placement

The Government next seeks to admit Witness-1's "limited testimony regarding the GTV Private Placement fraud." Gov. Supp. Mem. at 3. According to the Government, Witness-1 will "testify to the[] contents" of three conversations (the "GTV Conversations"): (1) a conversation between Je, Wang, and Witness-1, in which Je suggested "pooling" the funds of unaccredited investors for investment in GTV; (2) a conversation in which Witness-1 spoke with Je and Wang about "his understanding of what was permissible, and impermissible, in the course of the upcoming fundraising"; and (3) a conversation in which Witness-1 discussed the same topic with

Je, Wang, and Guo.  *Id.*  The Government states that it "does not know the content of what Witness-1 said" in the latter two conversations.  *Id.*

The Government argues that the GTV Conversations are admissible because any attorney-client privilege "was held by GTV as a business, not by Guo personally."  *Id.* at 5.  This conclusory statement does not respond to Guo's argument—supported by Witness-1's sworn declaration in another case—that Guo had a personal attorney-client relationship with Witness-1 that was "not cabined to particular cases or issues."[1]  Guo Opp. at 26–27.  The Court assumes, therefore, that Guo's attorney-client relationship with Witness-1 extended to their conversations about the GTV Private Placement.

Guo does not argue that Je or Wang had personal attorney-client relationships with Witness-1.  Ordinarily, their presence as third parties would vitiate any privilege that Guo held over the GTV Conversations.  *See Mejia*, 655 F.3d at 134.  Guo contends that the privilege was not waived because he, Wang, Je, and Witness-1 "were all working together toward the common purpose of the GTV Private Placement."  Guo Opp. at 33.  The Court is not persuaded. Guo submits no "competent evidence," beyond his attorneys' conclusory assertions, that he, Je, and Wang "held a common legal interest."  *Gulf Islands,* 215 F.R.D. at 472.  Although the three may have all been "involved in the GTV Private Placement" and "had an interest in seeing it accomplished," Guo. Opp. at 32, "sharing a desire to succeed in an action does not create a 'common interest.'"  *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties LLC*, No. 01 Civ. 9291, 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002).  Nor is "a business strategy which happens to include a concern about litigation" sufficient to invoke the common interest rule.  *In*

---

[1] Indeed, Guo affirmatively disclaims that he is "within GTV's privilege," and hinges his argument on his personal "attorney-client relationship with Witness-1."  Guo Reply at 1 ("[T]he privilege that the government must pierce is not GTV's now allegedly defunct privilege, but Mr. Guo's existing one.").  Because Guo has waived this argument, the Court does not address whether Guo could assert GTV's privilege over the GTV Conversations.

*re F.T.C.*, No. M18-304, 2001 WL 396522, at *5 (S.D.N.Y. Apr. 19, 2001); *see also id.* (finding

no common legal interest in a "commercial" joint enterprise where "an element of making that

enterprise succeed was ensuring that advertisements were [legally] compliant").  Accordingly,

the Court finds that the common interest rule is inapplicable, and Guo has not made a sufficient

showing that the GTV Conversations are protected by the attorney-client privilege.[2]

> ### 3.   Rule of Law Entities

Finally, the Government seeks to admit Witness-1's testimony "regarding his work at the

Rule of Law ('ROL') entities," where he served as the director of operations.  Gov. Supp. Mem.

at 4.  Specifically, the Government seeks to elicit testimony that Witness-1 "helped facilitate a

ROL entity's purchase of a house in Connecticut as a new headquarters" and "denied a proposal

to pay for protestors [using ROL funds] to protest outside of the SEC."  *Id.*

It is unclear to the Court whether Witness-1 was, in fact, acting in a "purely non-legal

role" at the ROL entities.  Gov. Supp. Mem. at 4; *see id.* at 4 n.1; Guo Opp. at 29.  However,

Guo does not purport to invoke the attorney-client privilege on the ROL entities' behalf, nor has

a representative for the ROL entities appeared to assert the privilege.  *See generally* Guo Reply;

*cf. United States v. Medows*, 540 F. Supp. 490, 498 n.35 (S.D.N.Y. 1982) (declining to suppress

potentially privileged evidence where "no client has asserted the attorney-client privilege or

authorized [the] defendant to assert it on his or her behalf"); *United States v. Milton*, 626 F.

Supp. 3d 694, 699–700 (S.D.N.Y. 2022) (permitting a third party to intervene in a pending

---

[2] In reply, Guo contends that Witness-1's testimony is expert opinion disguised as lay testimony.  Guo Reply at 1–2.
Guo may object at trial if Witness-1 offers his legal interpretations of "complex SEC regulations," instead of his
factual recollections of events he experienced.  *Id.*  The Court declines to exclude Witness-1's testimony on this
basis at this time.

criminal matter and assert privilege over documents).[3]  Accordingly, the attorney-client privilege does not bar Witness-1's ROL-related testimony.

II.      Hearsay

It is black-letter law that an out-of-court statement offered for the truth of the matter asserted is inadmissible hearsay.  Fed. R. Evid. 801(c).  Certain statements are not hearsay: a statement made by an opposing party's "agent or employee on a matter within the scope of that relationship and while it existed," for example, or a declarant-witness's prior consistent statement if offered "to rebut an express or implied charge that the declarant recently fabricated it."  *Id.* R. 801(d)(1)(B), (d)(2)(D).  Statements offered "to show that a listener was put on notice"—not for their truth—are not hearsay.  *United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013); *see* Fed. R. Evid. 801(c).  And, there exist exceptions to the rule against hearsay for "public records," "recorded recollection[s]," and "present sense impression[s]," among others.  Fed. R. Evid. 803(1), (5), (8).

The Court notes that certain of Witness-1's proposed subjects of testimony—particularly his statements to banks, his consultation with a securities lawyer, and the GTV Conversations—may involve hearsay.  Accordingly, the Government shall make an offer of proof prior to calling Witness-1, explaining why his testimony does not violate the rule against hearsay.

SO ORDERED.

Dated:  May 21, 2024
        New York, New York

_____
ANALISA TORRES
United States District Judge

---

[3] The Court notes that even if Witness-1's ROL-related testimony is privileged, any potential prejudice to the ROL entities is mitigated by Federal Rule of Evidence 502(a), which limits the circumstances in which disclosures made in a federal proceeding waive the attorney-client privilege.