**BAKER BOTTS** L.L.P.

30 ROCKEFELLER PLAZA
NEW YORK, NEW YORK
10112-4498

TEL +1 212.408.2500
FAX +1 212.408.2501
BakerBotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
HOUSTON
LONDON

**NEW YORK**
PALO ALTO
RIYADH
SAN FRANCISCO
SINGAPORE
WASHINGTON

November 7, 2024

Brendan F. Quigley
TEL: 2124082520
FAX: 2122592520
brendan.quigley@bakerbotts.com

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Yanping Wang*, 23 Cr. 118-3 (AT)

Dear Judge Torres:

We represent Yvette Wang in this matter. We write in brief response to the government's October 11, 2024 sentencing submission.[1] Ms. Wang accepts responsibility for her offense conduct, recognizes the seriousness of that offense, and stands by the plea agreement she signed and the stipulated Guidelines calculation therein. That said, a number of statements in the government's submission warrant correction and/or clarification.

**The Government's Claim that Ms. Dilkinska Acted "Entirely At the Direction of Others" Is Misleading.** In her sentencing submission, Ms. Wang cited the recent sentencing in *United States v. Dilkinska* as an example of a similarly situated defendant, convicted of similar conduct as Ms. Wang, who received a sentence of 48 months from Judge Ramos. In an effort to distinguish the *Dilkinska* case, the government now claims that "Dilkinska's role . . . was to work entirely at the direction of . . . others." Gov't Submission at 27.

That would be news to Ms. Dilkinska and Judge Ramos, given that the government (represented by one of the prosecutors in this case) required Ms. Dilkinska to accept a three-point enhancement "because [she] was a manager or supervisor," the same enhancement as Ms. Wang agreed to. Gov't Sentencing Submission, *United States v. Dilkinska*, 17 Cr. 630 (ER) (S.D.N.Y.), ECF No. 640 at 4. In short, as set forth more fully in Ms. Wang's initial sentencing submission, Ms. Dilkinska, a licensed attorney who played managerial role as an "'integral member'" of a larger fraud than Ms. Wang, was sentenced to 48 months, and a similar sentence here is appropriate to avoid unwarranted sentencing disparities among defendants convicted of similar conduct. 18 U.S.C. § 3553(a)(6).[2]

---

[1] The government's submission has not been filed on ECF.

[2] *See* Wang Sentencing Submission at 16-18 (quoting Gov't *Dilkinska* Sentencing Submission at 4). Parenthetically, Ms. Dilkinska's post-sentencing designation also reinforces Ms. Wang's arguments that

**BAKER BOTTS** LLP

The Honorable Analisa Torres — - 2 - — November 7, 2024

**The Government Misrepresents Dr. Akinsulure-Smith's Findings.**



**The Government's Assertions That Ms. Wang "Hired" Mr. Brown Are Contradicted By the His Sworn Testimony**. The government's submission also misleadingly claims that Ms. Wang "hired" Jesse Brown. *See* Gov't Submission at 5. To the contrary, Mr. Brown was clear at trial that William Je "appointed" him as "CEO of Himalaya Exchange" and his "boss" was "William Je." Guo Trial Tr. 3634-35. Ms. Wang participated only in an "initial interview" with Mr. Brown, and according to Mr. Brown, did not "kn[o]w a lot about blockchain or crypto." Go Trial Tr. 3721.

**Ms. Wang Did Not Significantly Benefit from the Offense Beyond Having a Job.** Ms. Wang's sentencing submission argued that Ms. Wang did not significantly benefit from the offense beyond the income from her job, a job which pre-dated the start of the conspiracy. *See* ECF No. 469 at 12-14.

The government's submission claims that Ms. Wang "did significantly benefit from her crimes," Gov't Submission at 1, and that Wang is "factually incorrect" to argue otherwise. In doing so, the government relies largely on the purported allocation to Ms. Wang of the purportedly worthless Himalaya Exchange cryptocurrency. Gov't Submission at 18-20. But try as the government might—speculating that Ms. Wang was "destined to collect" liquid funds from the Himalaya Exchange;[3] "could have cashed out in the form of fiat"[4]; was "set to receive" these funds in cash and would have "most likely cash[ed] out"[5]; and "would certainly have followed [the]

---

her period of incarceration will be more punitive and dangerous than a similarly situated U.S. citizen. *See* Wang Sentencing Submission at 27-28. Unlike many white-collar defendants who are assigned to "camps" with other inmates convicted of non-violent offenses, *see id.*, Ms. Dilkinska, a foreign national, was designated to FCI Hazelton, a medium-security facility, *see* BOP Inmate Locator, *available at https://www.bop.gov/inmateloc/?os=vb.&ref=app* (last visited Nov. 6, 2024), nicknamed "Misery Mountain" and perhaps best known as the facility where the notorious Boston mobster Whitey Bulger was murdered while serving his sentence. *See* Danielle Ivory, *After Whitey Bulger Killing, Warden of 'Misery Mountain' Faces Removal*, The N.Y. Times, Nov. 30, 2018.

[3] Gov't Submission at 2.

[4] Gov't Submission at 24.

[5] Gov't Submission at 19

**BAKER BOTTS** LLP

The Honorable Analisa Torres         - 3 -                    November 7, 2024

path" allegedly taken by Miles Guo and her fugitive co-defendant William Je,[6]—the reality is that Ms. Wang received no monetary benefit from her purported cryptocurrency allocation.[7]

The government also asserts that "approximately $34 million in victim funds were maintained in bank accounts held in the name of entities under Wang's management or control" and that Wang had approximately $138,000 in cash in her apartment at the time of her arrest. Gov't Submission at 19. As to the $34 million amount, there is no evidence Ms. Wang personally received or misappropriated *any* of this money. As to the $138,000, there is no evidence that these were funds received from victims or investors.[8]

**Ms. Wang Did Not "Target[]" or "Stalk[]" Anyone**. The government also strangely seeks to minimize the stalking Ms. Wang experienced (which continued through her guilty plea in this case) by claiming "Wang . . . inflicted largely similar harm in G|Enterprise's targeting, stalking and protesting against the Bankruptcy trustee and his family . . . ." Gov't Submission at 26. But Ms. Wang engaged in no such "targeting, stalking, and protesting" of anyone, much less the years-long, highly personal attacks she has suffered from *both* the individual who stalked her (and continued to do so through her guilty plea) and the Chinese security services.[9]

**The Government's Statements Regarding the Rule of Law Charities.** The government also asserts that, according to Karin Mastriello's trial testimony, "Wang directed a scheme to

---

[6] *Id.*

[7] Relatedly the government's uncited assertion that Ms. Wang "helped set up the Himalaya Exchange," Gov't Submission at 16, appears largely based on the fact that she conducted a screening interview of the Exchange's eventual CEO, a fact Ms. Wang does not deny. *See supra*.

[8] The government also quotes Probation's description of the losses in this case as being "'astronomical'" and "extraordinary.'" Gov't Submission at 10. Without minimizing the seriousness of the offense though, it bears noting that significant funds, well into the high nine figures at least, have already been recovered by the government and the SEC and will presumably be, or have been, soon returned to investors. To be sure, this was due to the government's identification and seizure of relevant funds, but it puts the "loss" here into context and distinguishes this case from a more "typical" fraud case where the co-conspirators dissipated most or all the funds received.

[9] Further, certainly one can reasonably take issue with the protestors' judgment, wisdom, and taste in directing their protests against members of the Bankruptcy trustee's family. That said, "protests" against the actions of the Trustee are a core First Amendment activity, and the protestors apparently complied with directions of the police in carrying out their protest activities. Trial Tr. 4247. More broadly, any suggestion that one cannot take issue with the trustee's actions or theories would be news to the over 300 members of the New York Council of Defense Lawyers, which has sought to file an amicus brief opposing what it calls an "unprecedented clawback action" by the Trustee and the Trustee's "novel theory of recovery." Motion to File Amicus Brief of New York Council of Defense Lawyers, *In re Ho Wan Kwok*, 24-05188, (Bankr. D. Conn. June 13, 2024), ECF No.15; *see also* Reply in Support of Motion to File Amicus Brief, *In re Ho Wan Kwok*, 24-05188, (Bankr. D. Conn. August 2, 2024), ECF No. 27

**BAKER BOTTS** LLP

The Honorable Analisa Torres        - 4 -        November 7, 2024

transfer funds from various Guo business accounts to the Rule of Law organizations' accounts in order to create the false appearance of more and larger donations." Gov't Submission at 3. Mastriello's actual testimony on this point was far more benign than the government suggests. She testified that she was asked to transfer money from Guo family accounts—Golden Spring and Saraca—to Rule of Law, and she did not know where Golden Spring or Saraca had received that money from. Guo Trial Tr. 473-74.

**Chinese Security Services' Targeting**. Ms. Wang's sentencing submission ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In response, the government sets up a strawman by baselessly claiming Ms. Wang is asking the Court to "sanction a bizarre vigilante system of justice." Gov't Submission at 25. Ms. Wang is suggesting no such thing. To the contrary, Ms. Wang is asking the Court to take into account that undisputed targeting and the well-documented effects it had on her—including "constant fear"; "chronic trauma"; "distrust[] of security services and law enforcement"; "increasing[] dependen[ce] on, and loyal[ty] to, her employer"; and "cloud[ing] her judgment"[10]—circumstances that are certainly relevant and that the Court *must* take into account as it assesses the "history and characteristics of the defendant" under 18 U.S.C. § 3553(a)(1).

At a more granular level, the government seeks to have things both ways, giving the back of the hand to the CCP's (again undisputed) targeting of Ms. Wang but then citing Ms. Wang's possession of an expired Vanuatu passport and numerous electronic devices as evidence of her guilt,[11] when in reality she possessed those items as a result of the CCP's undisputed targeting and hacking of her.

*** 

We thank the Court for its consideration on these issues.

                                             Respectfully submitted,

                                             */s/ Brendan F. Quigley*
                                             Brendan F. Quigley

---

[10] Wang Sentencing Submission at 1.

[11] Gov't Submission at 7.