Case 1:23-cr-00118-AT    Document 495    Filed 02/26/25    Page 1 of 4





*U.S. Department ...*

*United States A...*
*Southern Distri...*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/26/2025__

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 25, 2025

**BY ECF**
Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

    Re:    *United States v. Yanping Wang*, S4 23 Cr. 118 (AT)

Dear Judge Torres:

    The Government writes with respect to restitution in the above-captioned matter, and to respectfully request that the Court order victim compensation through remission as an alternative to restitution.

    I.    **Procedural History**

    On March 15, 2023, Wang was arrested at her Manhattan apartment on Criminal Complaint 23 Mag. 2007 (GWG), charging her with conspiracy to commit wire and securities fraud, in violation of 18 U.S.C. § 371; wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2; and money laundering, in violation of 18 U.S.C. §§ 1957 and 2. On March 29, 2023, Superseding Indictment S1 23 Cr. 118 (AT) was filed, charging Miles Guo, Kin Ming Je, and Wang in various counts for their participation in the fraud and money laundering conduct described therein. (Dkt. 19.) On January 3, 2024, a second Superseding Indictment was filed, charging Wang, Guo and Je with, *inter alia*, engaging in a racketeering conspiracy named in that Indictment as the "Kwok Enterprise" (*i.e.*, the Guo Enterprise).

    On May 3, 2024, Wang pleaded guilty, pursuant to a plea agreement, to Superseding Information S4 23 Cr. 118 (AT) (the "Superseding Information"), which charged her in two counts with participating in a wire fraud conspiracy and a money laundering conspiracy, each in violation of 18 U.S.C. § 371. Count One of the Superseding Information, to which Wang pleaded, charged her with participating in a fraud scheme to raise money through entities including GTV Media Group, Inc., the Himalaya Farm Alliance, G CLUBS, and the Himalaya Exchange from 2018 through May 2023. Under the terms of the plea agreement, Wang agreed to forfeit $1.4 billion dollars, which represents proceeds traceable to the offenses and involved in the money laundering conspiracy offense. Pursuant to the plea agreement, Wang further agreed not to challenge any restitution amount less than or equal to $1.4 billion.

On January 6, 2025, this Court sentenced Wang principally to 120 months in prison, ordered forfeiture in the amount of $1.4 billion (including Wang's interests in bank accounts and certain specific property), and deferred determination of restitution until April 7, 2025. (Dkt. 489; *see also* Dkt. 488.)

## II.     Discussion

The Government seeks to return assets that are finally forfeited to victims of the defendant's crimes in the most efficient manner possible. Because of the complexity of the case and the number of victims involved, awarding restitution to victims in accordance with 18 U.S.C. § 3663A would be extremely costly and administratively impractical. The cost and time associated with calculating each victim's loss, determining whether the victim has already been compensated through the Securities and Exchange Commission or otherwise, and then paying out a percentage of the victim's losses, would delay payment and diminish the amount of money actually paid to victims. Therefore, consistent with the Government's frequent approach in complex cases with numerous victims, the Government moves for entry of an order authorizing the United States to compensate victims with finally forfeited assets through a remission process, as restitution would be impracticable in this case. 18 U.S.C. § 3663A(c)(3).

Restitution to persons "directly and proximately harmed" by fraud and money laundering is ordinarily mandatory. *See* 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). In such a case, the Court is authorized to determine a restitution amount and a schedule of victims and payments. However, an order of restitution is not required when "the number of identifiable victims is so large as to make restitution impracticable," or when imposing restitution would require "determining complex issues of fact related to the cause or amount of the victim's losses" which "would complicate or prolong the sentencing process." *Id.* § 3663A(c)(3). In situations where restitution is impracticable, the Government routinely seeks to return money to victims through the remission process, governed by 28 C.F.R. Part 9. When a court makes a finding that a restitution order is impracticable, the Department of Justice regularly uses a forfeiture remission process to compensate victims, and it would do so in this case. *See, e.g.*, *United States v. Madoff*, 09 Cr. 213 (DC), Dkt. 106 & *United States v. Bonventre*, 10 Cr. 228, Dkt. 318 (Madoff Ponzi scheme); *United States v. Sharma*, 18 Cr. 340, Dkt. 407 (multi-million dollar cryptocurrency scheme); *United States v. Dos Santos*, 20 Cr. 398, Dkt. 283 (multi-million dollar cryptocurrency scheme).

The forfeiture statutes authorize the Attorney General to "grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section." 21 U.S.C. § 853(i)(1). The applicable regulations are set forth in 28 C.F.R. Part 9. In order to qualify for remission, a crime victim must provide information to support specific elements, including that the victim suffered a specific pecuniary loss directly caused by the criminal offense, that the victim did not contribute to the offense, that the victim has not been compensated for the loss from another means, and that the victim has no other recourse available. *See generally* 28 C.F.R. § 9.8(b).

It is the policy of the Department of Justice, consistent with the Crime Victims' Rights Act, to ensure that crime victims receive "full and timely restitution as provided in law." *See* 18 U.S.C.

§ 3771(c)(1); *see also* Asset Forfeiture Policy Manual 2025, at 1-1 (noting a goal of the program is to "[r]ecover assets that may be used to compensate victims"), available at https://www.justice.gov/criminal/criminal-afmls/file/839521/dl?inline. Accordingly, when the Government seizes property in connection with a criminal case, the Government's goal is to forfeit the property and then, in a qualifying case, use remission proceedings administered by the Attorney General through his delegee, the Chief of the Money Laundering and Asset Recovery Section of the Department of Justice's Criminal Division ("MLARS"), to distribute funds to victims. Frequently MLARS will distribute those assets through a remission program by which victims may petition for portions of forfeited property. *E.g., United States v. Sharma*, 18 Cr. 340 (LGS), 2022 WL 1910026, at *2 (S.D.N.Y. June 3, 2022). In a multi-victim or complex case, the process of notifying potential victims, processing petitions, verifying losses, and recommending a distribution of available funds may be managed on behalf of the Department of Justice by an appointed contractor or trustee, as authorized by 28 C.F.R. § 9.9(c).

Victims' interests will be best served in this case through remission of finally forfeited funds and by using the remission process. An alternative arrangement whereby restitution is calculated and distributed to victims by the Government and the Court would be nearly impossible administratively, and would come at great expense to victims' recovery. In order to enter an order of restitution, the Court would need to determine and corroborate each victim's losses. That would require determining and corroborating, for each of the thousands of victims, both the amount of funds the victim provided the Guo Enterprise, any partial refunds from the Guo Enterprise, the amount a victim was compensated through the SEC's disgorgement process, and potentially any funds returned to the victim through collateral means. That task is all the more challenging given the global nature of the defendant's fraud.

Instead, a process whereby the Government distributes finally forfeited funds through a contracted claims administrator will more be efficient, and will not "complicate or prolong the sentencing process" at expense of the victims. 18 U.S.C. § 3663A(c)(3).

### III. Conclusion

Accordingly, the Government requests that the Court order victim compensation through remission as an alternative to restitution.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

by: ___/s/_____
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

cc:   Counsel of Record (by ECF)

GRANTED.

SO ORDERED.

Dated: February 26, 2025
       New York, New York

ANALISA TORRES
United States District Judge