UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                              :
UNITED STATES OF AMERICA                                      :
                                                              :   VERIFIED PETITION UNDER
                                                              :   FED. R. CRIM. P. 32.2 AND 21
                                                                  U.S.C. § 853(N) FOR
                                                                  ADJUDICATION OF
                                                                  PETITIONER'S RIGHT TO
                                                                  SPECIFIC PROPERTY OF
                                                                  $1,000,000.00

                        - v. -

HO WAN KWOK,
a/k/a "Miles Guo," a/k/a "Miles Kwok," a/k/a
"Guo Wengui," a/k/a "Brother Seven," a/k/a
"The Principal,"

KIN MING JE, a/k/a "William Je," and

YANPING WANG, a/k/a "Yvette,"
                                                              :   S4 23 Cr. 118 (AT)

                                                              :

                        Defendants.

------------------------------------------------------------- x

Sonar Advisers Inc. (the "Petitioner"), by and through its undersigned counsel, Patricia A. Pileggi, ArentFox Schiff LLP, pursuant to 21 U.S.C. § 853(n) and Rule 32.2(c) of the Federal Rules of Criminal Procedure, hereby respectfully petitions the Court for a determination of the Petitioner's interest in specific property subject to the Court's *Consent Preliminary Order of Forfeiture as to Specific Property/Money* Judgment, signed by Your Honor on January 6, 2025 and entered on January 7, 2025, (the "Forfeiture Order") which includes various bank accounts ("Forfeited Accounts"), Dkt. 488, to exclude all property in which the Petitioner has right, title, and interest, namely, $1,000,000.00 (the "Property"). In support hereof, Petitioner states as

follows:

1.      On July 20, 2021, Petitioner transferred $1,000,000.00 U.S. Currency to Himalaya Digital Assets Fund SP, a Segregated Portfolio of Hamilton Opportunity Fund SPC.

2.      Petitioner provided the funds via wire transfer to Defendants by sending $1,000,000.00 to Medici Bank International, 1250 Ponce de Leon Ave. Suite 301, San Juan, PR 00907, Account No: 4500 4500032415 02. The Reference/Memo for this wire transfer stated: "FFC MBI Z1855080005Z Hamilton Opportunity Fund SPC." The wire transfer was made through The Reserve Trust Company, ABA No. 102007558, 5600 S. Quebec St. Suite 205D, Greenwood Village, CO 80111. *See* **Ex. A**, Memorandum for Remittance; **Ex. B**, Mizuho Bank Statement; **Ex. C**, Wire Instructions Change Form; **Ex. D**, Email Confirming Transfer of Funds to Medici Bank International.

3.      In exchange for its investment in Hamilton Opportunity Fund SPC, Petitioner was advised that it would become a Shareholder and would subscribe for Class A Shares in the Himalaya Digital Assets Fund SP, a Segregated Portfolio of the Hamilton Opportunity Fund SPC, a Cayman Islands Segregated Portfolio Company operating as a Fund under Section 4(3) of the Mutual Funds Law (Revised) of the Cayman Islands. *See* **Ex. E**, Subscription Agreement; **Ex. F**, Offering Memorandum. As represented to Petitioner by Hamilton Opportunity Fund SPC, Himalaya Digital Assets Fund SP would invest in Himalaya Coin, a digital token. *See* **Ex. G**, PowerPoint Presentation from Hamilton Investment Management Ltd. The Himalaya Exchange included a purported stablecoin called the Himalaya Dollar ("HDO" or "H Dollar") and a trading coin called the Himalaya Coin ("HCN" or "H Coin").

4.      As set forth in the Superseding Indictment, and in more detail below, the Himalaya Exchange was part of a fraudulent scheme to defraud investors such as Petitioner. In

furtherance of this fraudulent scheme, funds obtained from investors such as Petitioner for the purpose of investing in Himalaya Coin were transferred to the Hamilton Opportunity Fund SPC.

5. As alleged in the Superseding Indictment, Miles Guo, his co-defendants, and co-conspirators solicited investments in various entities in various entities and programs by promising outsized financial returns and other benefits. Miles Guo, his co-defendants and co-conspirators created and maintained several interrelated and overlapping entities – ie., the G Enterprise. Dkt. # 307, ¶ 2, 3.

6. The interrelated and overlapping entities that formed the G Enterprise included Hamilton Fund Opportunity Fund SPC. Dkt. No. 307, ¶ 3a.

7. Hundreds of millions of dollars of the fraudulent scheme's proceeds were transferred to bank accounts held in the names of entities owned or controlled by Hamilton Opportunity Fund SPC and other entities. Dkt. No. 307, ¶ 4.

8. According to the Superseding Indictment, Miles Guo, his co-defendant, co-defendants and co-conspirators, obtained more than approximately $262 million in victim funds through the Himalaya Exchange, a purported cryptocurrency "ecosystem" accessible on the internet. The Himalaya Exchange included a purported stablecoin called the Himalaya Dollar ("HDO" or "H Dollar") and a trading coin called Himalaya Coin ("HCN" or "H Coin").The Himalaya Exchange claimed that the "stablecoin" was a digital asset with a fixed 1-to-$1 value backed by reserves, and that the "trading coin" was a cryptocurrency with valuation based on supply and demand. Dkt. No. 307, ¶ 19.

9. Contrary to representations of MILES GUO, his co-defendants and coconspirators, HCN and HDO were not cryptocurrencies. transactions using HCN and HDO were—unlike real cryptocurrencies -not recorded on a "blockchain," which is an electronic,

publicly accessible, decentralized ledger that uses cryptography to record cryptocurrency transactions. Instead of using a publicly accessible blockchain, transactions in HCN and HDO were recorded in an internal database, which was not subject to public review. Dkt. No. 307, ¶ 19e.

10. Moreover, HCN and HDO could not be traded anywhere other than purportedly on the Himalaya Exchange. Nor could HCN be traded for, or converted into, other currencies. HCN purportedly could be traded for only HDO (and only on the Himalaya Exchange), and HDO purportedly could be converted only to or from fiat currency (and only on the Himalaya Exchange. Dkt. No. 307, ¶ 19f.

11. Upon information and belief, the funds provided by Petitioner were transferred into one of the Forfeited Accounts at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022, among potentially other Forfeited Accounts.

12. Petitioner never received any funds or investment back from Defendants, having now suffered a total loss of its $1,000,000.00 investment.

13. In March 2023, Defendants Kwok and Wang were arrested. Defendant Je remains at large.

14. Petitioner was not aware of the criminal nature of Hamilton Opportunity Fund SPC leading up to the arrest of the Defendants. After the arrest, Petitioner learned the Defendants were charged with Conspiracy to Commit Wire Fraud, Securities Fraud, Bank Fraud, and Money Laundering, in violation of 18 U.S.C. § 1349, as well as related substantive counts.

15. On May 3, 2024, Defendant Wang pled guilty to Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 pursuant to a plea agreement with the Government,

wherein Defendant Wang agreed to forfeit to the United States a sum of money equal to $1.4 Billion through various accounts and other property, including forfeiting all right, title, and interest of the Property. See Dkt. 325.

16. On May 3, 2024, Defendant Wang consented to the entry of Preliminary Order of Forfeiture as to Specific Property/Money Judgment, including all funds provided by Petitioner into the Forfeited Accounts as detailed above. See Dkt. 329.

17. On July 18, 2024, Defendant Kwok was convicted after a Jury Trial of Racketeering Conspiracy, Conspiracy to Commit Wire or Bank, Money Laundering and Securities Fraud, as well as related substantive counts. See Dkt. 395.

18. On January 7, 2025, Defendant Wang was sentenced by Your Honor to 120 months imprisonment. See Dkt. 489.

19. On January 7, 2025, Your Honor signed the Order of Forfeiture as to Specific Property/Money Judgment. See Dkt. 488.

20. Petitioner was not consulted prior to the entry of the Forfeiture Order. Petitioner had no knowledge that Defendant Wang consented to forfeit the Property.

21. As a victim of Defendant Wang, Petitioner has an interest in the Property which Defendant Wang had no authority to agree to forfeit. Rather, Petitioner has a superior interest in the Property which cannot be the subject of the Forfeiture Order relating to Defendant Wang.

22. Petitioner was not involved in the aforementioned crimes, except as a victim, nor was it knowledgeable of the Defendants' illicit and illegal activities. Accordingly, Petitioner is also an innocent third party pursuant to 21 U.S.C. § 853(n). Any third party "asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the

property." 21 U.S.C. § 853(n)(2). The petition, which is sworn and signed by the petitioner, "shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, and additional facts supporting the petitioner's claim, and the relief sought." *Id.* § 853(n)(3).

23. Here, Petitioner is the lawful owner of the Property – having been defrauded of the Property by the Defendants.

24. In the alternative, Petitioner is a bona fide purchaser for value of its interest in the Property under 21 U.S.C. § 853(n)(6)(B), as it provided the Property to Defendants under false and fraudulent pretenses.

25. Petitioner was made aware of the Order of Forfeiture by viewing it as www.forfeiture.gov (which was published from February 6, 2025 through March 7, 2025) noting that: "[p]ursuant to Title 21, United States Code, Section 835(n), persons other than the defendant who wish to assert a legal interest in property that has been ordered forfeited to the United States must file a petition for a hearing to adjudicate the validity of their alleged interest in the property with the Court within thirty (30) days of the final publication of notice, or receipt of actual notice, whichever is earlier."

26. The Petitioner has been required to retain legal counsel and has incurred costs to file this petition asserting Petitioner's right to Petitioner's Property and to challenge the forfeiture of Petitioner's Property. Upon prevailing in this proceeding, Petitioner reserves all rights to recover attorneys' fees and costs incurred in connection with this Petition and may recover Petitioner's costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Federal courts have held that § 853(n) proceedings are civil for

the purposes of allowing a successful claimant to collect attorney's fees under the EAJA. See *United States v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009); *United States v. Douglas*, 55 F.3d 584, 588 (11th Cir. 1995); *U.S. v. Bailey*, 2015 WL 1893610 at *20 (W.D.N.C. Apr. 27, 2015).

27. Petitioner has filed this petition within 30 days of the final publication of notice.

WHEREFORE, Petitioner respectfully requests and petition this Court:

a. to amend the Forfeiture Order to exclude the Property in which Petitioner has a right, title, and interest as an innocent third party, superior interest, and/or a bona fide purchaser for value;

b. for a hearing pursuant to 21 U.S.C. § 853(n) on any disputed matters;

c. in the alternative, and in the event that this Petition is denied, Petitioner hereby respectfully asserts a claim for compensation for its interest in the Property;

d. in the alternative, and in the event that this Petition is denied, Petitioner hereby respectfully moves this Court to be granted restitution and/or payment of the Property through the remission process;

e. for such other and further relief as the Court deems just and proper.

Dated: April 7, 2025

Respectfully Submitted,

*Patricia A. Pileggi*
Patricia A. Pileggi
ArentFox Schiff LLP
1301 Avenue of the Americas
New York, New York 10019
212.745.0839
patricia.pileggi@afslaw.com
Attorney for Petitioner

## **VERIFICATION**

I, Kentaro Azuma, attest and declare under penalty of perjury that my petition is not frivolous and the information provided in support of my petition is true and correct to the best of my knowledge and belief.

Executed on April 2, 2025.

_____
Kentaro Azuma
Chief Executive Officer & President
Sonar Advisers Inc.