LAW OFFICES OF

# DRATEL & LEWIS

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: jdratel@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS
—
AMY E. GREER
JACOB C. EISENMANN

ACHARA AMY SCHRODER
*Paralegal*

September 4, 2025

**BY ECF**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

        Re:    *United States v. Ho Wan Kwok (Miles Guo)*,
                 23 Cr. 118 (AT)

Dear Judge Torres:

      This letter motion is submitted on behalf of defendant Ho Wan Kwok (Miles Guo), whom John F. Kaley, Esq., Melinda Sarafa, Esq., and I have been appointed to represent in the above-entitled matter, and seeks discrete and pressing relief regarding a matter directly related to the government's July 28, 2025, letter application for a preliminary order of forfeiture ("Forfeiture Letter"). *See* ECF # 716.

      A number of the government's arguments suffer from material legal and factual deficiencies. As a result, it is respectfully requested that the Court permit counsel to address them – notwithstanding the Court's August 11, 2025, entry of the preliminary Order (ECF # 720) – in a comprehensive submission sufficiently prior to sentencing. Thus, this letter will not address whether certain property is forfeitable as a result of the mixed jury verdict, or the issue of offsets, or the accuracy of the total amount the government seeks via the forfeiture judgment.

      Rather, this letter relates only to the *custody* of certain funds and assets the government has identified as subject to forfeiture, both in the Indictment (S3) and its Forfeiture Letter, but which currently are in the possession of the Chapter 11 Trustee of the Individual Estate ("the Trustee") in the bankruptcy proceedings pending in the District of Connecticut (*In Re Ho Wan Kwok, et al.*, Case No. 22-50073 (D. Conn. February 15, 2022). In that context. Mr. Guo

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Analisa Torres
United States District Judge
Southern District of New York
September 4, 2025
Page 2 of 8

respectfully moves for an Order directing the U.S. Attorney's Office for the Southern District of New York ("USAO SDNY") to collect from the Trustee and maintain in USAO SDNY's custody those assets enumerated below, and any other such assets and/or funds forfeitable in this criminal case. As detailed below, such an Order would be entirely consistent with the government's professed objective to maximize the amount available for remission and restitution, and would significantly facilitate achieving that goal.

Nothing in this letter should be construed as inconsistent with Mr. Guo's position, set forth in Ms. Sarafa's June 27, 2025 letter (ECF # 710), that due to the complex interplay of several issues and legal proceedings, Mr. Guo does not take a position with respect to whether any of the assets the government seeks to forfeit are, in fact, his. That position does not constrain Mr. Guo from contesting whether certain property is forfeitable *at all*, and/or what constitutes the

proper and accurate amount of forfeiture.[1]

**I.**   *The Assets and Funds Currently In the Custody of the
         Trustee But Which Potentially Are Subject to Forfeiture*

As of July 2025, the Trustee has reportedly recovered approximately $200 million in assets in connection with the banktruptcy proceedings that have also been identified by the government in this prosecution as subject to forfeiture. Those funds and assets include, but are not limited to, the following:

(1)   "All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 675 Ramapo Valley Road, Mahwah, New Jersey 07430, Parcel No.3300021-03-00001-02 and described as Lot Number: 1.02 Block: 21.03 District: 33 City, Municipality, Township: MAHWAH TWP[.]" *See* Indictment S3, at ¶ 58(c)(23); ECF # 720, at ¶ v;[2]

---

[1] In September 2021, the Securities and Exchange Commission ("SEC") and GTV settled an action instituted by the SEC. *See* ECF #716, at 4 n.2. That settlement established a fund and mechanism to return $455.4 million to affected investors. Upon information and belief, all but $80 million of that fund has been distributed to investors. As a result, Mr. Guo does not include that fund, or any money remaining in that fund, in this application.

[2] Items (1) through (14) herein are identified specifically in the forfeiture count (¶ 58) of the Third Superseding Indictment, but unlike the description of funds described in ¶ 58(c)(24)-(36) thereof, their listing is not accompanied by the phrase "seized by the government." Thus,

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Analisa Torres
United States District Judge
Southern District of New York
September 4, 2025
Page 3 of 8

(2) "A Bugatti Chiron Super Sport, bearing Vehicle Identification Number VF9SW3V3XNM795047[.]" *See* Indictment S3, at ¶ 58(c)(24); ECF # 720, at ¶ w;

(3) "A Lamborghini Aventador SVJ Roads, bearing Vehicle Identification Number ZHWUN6ZD2MLA10393[.]" *See* Indictment S3, at ¶ 58(c)(25); ECF # 720, at ¶ x;

(4) "A Rolls Royce Phantom EWB, bearing Vehicle Identification Number SCA TT8C08MU206445[.]" *See* Indictment S3, at ¶ 58(c)(26); ECF # 720, at ¶ y;

(5) "A 46m 2014 Feadship superyacht 'Lady May' (ex Como), bearing IMO Number 112359, MMSI Number 319059500, and Callsign ZGDQ9[.]" *See* Indictment S3, at ¶ 58(c)(27);

(6) "A Besendorfer 185VC Porsche #49539 piano with custom bench, purchased for approximately $140,938.69[.]" *See* Indictment S3, at ¶ 58(c)(28); ECF # 720, at ¶ z;

(7) "A Railis Design Iceland Contemporary Poseidon Bed with Nightstands, Ebony Veneer, Brass, Velvet, purchased for approximately $31,413.71[.]" *See* Indictment S3, at ¶ 58(c)(29); ECF # 720, at ¶ aa(i);

(8) "A Hastens 2000T md mattress, purchased for approximately $36,590.00[.]" *See* Indictment S3, at ¶ 58(c)(30); ECF # 720, at ¶ aa(ii);

(9) "A Hastens 2000T sf mattress, purchased for approximately $36,210.00[.]" *See* Indictment S3, at ¶ 58(c)(31); ECF # 720, at ¶ aa(iii);

(10) "A Wembe watch storage box, purchased for approximately $59,392.91[.]" *See* Indictment S3, at ¶ 58(c)(32); ECF # 720, at ¶ aa(iv);

(11) "A Samsung Q900 Series QN98Q900RBF 98" QLED Smart TV - 8K, purchased for approximately $62,787.54[.]" *See* Indictment S3, at ¶ 58(c)(33); ECF # 720, at ¶ aa(v);

---

presumably they are not in the government's possession, but instead are in the custody of the Trustee.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Analisa Torres
United States District Judge
Southern District of New York
September 4, 2025
Page 4 of 8

(12) "A Louis XV Style French Ormolu-Mounted Mahogany Commode by Joseph Emmanuel Zweiner[.]" *See* Indictment S3, at ¶ 58(c)(34); ECF # 720, at ¶ aa(vi);

(13) "A 'K'ang Hsi' extension table in etched and patinated pewter and bronze with hand-painted enamel colors by Philip & Kelvin La Verne, purchased for approximately $180,000.00[.]" *See* Indictment S3, at ¶ 58(c)(35); ECF # 720, at ¶ aa(vii);

(14) "A 'Punto '83' table in stainless steel with mesh tabletop with adjustable height and adjustable petals by Gabriella Crespi, Italy 1982, purchased for approximately $180,000.00." *See* Indictment S3, at ¶ 58(c)(36); ECF # 720, at ¶ aa(viii);

(15) a $3.5 million Ferrari automobile.. *See* Indictment S3, at ¶ 54;

(16) the $6.9 million proceeds of the Trustee's 2024 sale of the real property located at 373 Taconic Road, Greenwich, Connecticut 06831;

(17) $37 million in funds provided to the Trustee in April 2022, pursuant to a stipulation in the bankruptcy proceedings, as security for the return of the Lady May yacht to U.S. jurisdiction (which money the Trustee has retained even after the Lady May was returned). *See* Indictment, at ¶ 19(g);

(18) the Lady May II, a vessel valued at $960,000. *See In Re Ho Wan Kwok, et al.*, Case No. 22-50073 (ECF # 2441); and

(19) funds recovered by the Trustee from bank accounts associated with entities alleged by the government to have been part of the so-called "G Enterprise," including HCHK Technologies ($38,792,899.51), and, prospectively through ongoing litigation, from G Fashion LLC, GETTR USA, and G Club. *See See* August 21, 2025, Monthly Operating Report for July 2025 ("*July 2025 Monthly Operating Report*"), Bankruptcy ECF # 4623.

II.   *Those Assets and Funds Should Be Transferred Immediately to the U.S. Government*

For the three reasons set forth below, it is respectfully requested that the Court order the USAO SDNY to obtain from the Trustee those funds and assets (and/or proceeds from the sales thereof) that are in the custody of the Trustee, and transfer them immediately to the appropriate U.S. Government authorities in the Southern District of New York for purposes of any potential forfeiture in this case.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Analisa Torres
United States District Judge
Southern District of New York
September 4, 2025
Page 5 of 8

A.   *The Funds and/or Assets in the Trustee's Possession Should Be Used to Satisfy Mr. Guo's Forfeiture Obligations, as the U.S. Government Has Primary Title to Any Forfeitable Funds or Assets*

First, the funds and assets in the Trustee's possession should be used to reduce any forfeiture obligation imposed upon Mr. Guo rather than be distributed to debtors in inferior position to the U.S. government. Among the statutes the government cites as basis for forfeiture is 18 U.S.C. §1963, which states that "All right, title, and interest in property described in subsection (a) *vests in the United States upon the commission of the act giving rise to forfeiture under this section*." (Emphasis added). The same is true for 18 U.S.C. §981 (also cited by the government), which includes the same language at §981(f).

Those provisions codify the "relation back" theory that has been in effect for centuries. *See United States v. 1,960 Bags of Coffee*, 12 U.S. 398, 399 (1814) ("[t]he forfeiture occurs at the moment of committing the offence. The statute says whenever the act is done, the thing shall be forfeited"). *See also United States v. Stowell*, 133 U.S. 1 (1890) (denominating it the "taint theory").

As the Second Circuit explained more recently in *United States v. Daugerdas*, 892 F.3d 545 (2d Cir. 2018), "[u]nder the 'relation-back' doctrine of §853(c), the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value)." *Id*. at 548. *See also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 627 (1989).[3]

Thus, under the applicable forfeiture authorities, the government in this criminal case possesses an interest in any forfeitable assets currently in the Trustee's custody (or which the Trustee might obtain) that is superior to that of any creditor in the bankruptcy proceeding. *See Luis v. United States*, 578 U.S. 5, 16 (2016) ("[i]f we analogize to bankruptcy law, the Government, by application of §853(c)'s relation-back provision, became something like a secured creditor with a lien on the defendant's tainted assets superior to that of most any other party"). *See also* 21 U.S.C. §853(n)(6)(A) (requiring that any third party's interest in any forfeited property must have been superior to the defendant's "at the time of the commission of

---

[3] Courts have recognized that "[t]he RICO forfeiture statute, 18 U.S.C. §1963, and [21 U.S.C.] §853 are 'are so similar in legislative history and in plain language as to warrant similar interpretation.'" *United States v. Egan*, No. 10 Cr. 191 (JFK), 2015 WL 4772688, at *5 (S.D.N.Y. Aug. 13, 2015), *aff'd*, 654 F. App'x 520 (2d Cir. 2016) *quoting DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 n. 11 (2d Cir.2007) (internal quotation marks omitted).

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Analisa Torres
United States District Judge
Southern District of New York
September 4, 2025
Page 6 of 8

the acts which gave rise to the forfeiture").

  **B.**  *Transfer of the Funds and Assets In the Trustee's
     Possession Will Facilitate Restitution to the Investors*

  Second, requiring the USAO SDNY to obtain custody of the assets in the Trustee's possession will make them available to investors in the various entities involved in this case, and for whom restitution will be ordered. In its application for the Preliminary Order of Forfeiture, the government professed, as it has throughout this case, that recompensing investors is its principal objective. Transfer of those funds and assets for disposition and distribution in this case certainly promotes that goal. *See, e.g.*, Transcript, April 8, 2025, at 7-8 (ECF # 684).

  Indeed, as set forth below, the Trustee's continued custody and control of those funds and assets would frustrate it.

  **C.**  *Transfer of the Funds and Assets as Requested Herein Would
     Halt the Continued Material Dissipation of the Bankruptcy Estate*

  Third – closely related to the first two reasons set forth above – ordering the USAO SDNY to secure possession of the enumerated assets, funds, and/or proceeds from the Trustee to the U.S. Government will effectively halt the accumulation of considerable fees and expenses incurred by the Trustee that have significantly dissipated not only the bankruptcy estate (for any legitimate creditors in that proceeding), but also in turn the money available to return money to investors via restitution and/or pay any forfeiture judgment ultimately imposed by this Court.

  In May 2025, William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), moved in the bankruptcy proceedings "for an order authorizing the appointment of an Independent Fee Examiner and for related modifications to the Court's Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals entered at ECF 2094 ('Interim Compensation Order')." *See* May 30, 2025 Motion of United States Trustee for Order Authorizing Appointment of Independent Fee Examiner (Bankruptcy ECF # 4454).

  The United States Trustee explained in his motion that the purpose of the Independent Fee Examiner would be "to provide substantive analysis of the fee requests filed by the almost two dozen professionals whose retention has been authorized by the Court, as well as future retained professionals." *Id*., at 1. The motion added that "[g]iven the worldwide scope and complexity of these chapter 11 cases and the number of retained professionals who are applying to the Court for compensation, scrutiny of professional fees is especially challenging." *Id*. In

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Analisa Torres
United States District Judge
Southern District of New York
September 4, 2025
Page 7 of 8

addition, "because of the public awareness of these chapter 11 cases, such an appointment will also help ensure public confidence in the Bankruptcy System." *Id*.; *see also id*., at 7.

    The 23 different professional retainers in the bankruptcy case have already cost the estate – and, of course, the eventual fund available for remission and restitution – approximately $57.8 million through December 2024 (not including the Trustee's December 2024 bill). *Id*., at 7 & n. 3. Since December 2024, approximately nearly another $10 million has been spent by the Trustee (on his fees or for other professionals and/or expenses, *i.e.*, attorneys and other professionals the Trustee has engaged to pursue litigation and/or recovery of supposed Estate assets). *See July 2025 Monthly Operating Report*.[4]

    Thus, as of July 31, 2025, the total in professional fees paid by the Estate was $60,437,028.00, with $44,183,66.00 paid to the Trustee's firm. *Id*. An additional $5,529,678.83 in "ordinary disbursements" raised the total spent by the Estate to $66,484,002.63. *Id.*

    However, the Court in the bankruptcy proceeding *denied* the United States Trustee's motion to appoint an Independent Fee Examiner. *See* July 11, 2025 Order (Bankruptcy ECF # 4529). Consequently, there will *not* be independent monitoring of the Trustee's expenditure of the Estate's assets, and diminution of the Estate will essentially continue unabated.

    Also, as of the time the United States Trustee's motion was filed, "well over 300 adversary proceedings have been filed, the majority of which remain pending." *Id*. That portends additional expenses by both the Trustee and ancillary services performed in the course of the bankruptcy proceedings. In addition, according to information provided by the Trustee in its April 22, 2025 case status update, as of March 28, 2025 more than 1,600 claims had been filed in the case, asserting an astronomical *$32 billion* in claims. *See* April 22, 2025 Notice of Filing Chapter 11 Trustee's Presentation for Status Conference on April 22, 2025 (Bankruptcy ECF # 4339).

    The viability or accuracy of those claims is unknown – many if not most may well be frivolous and/or grossly inflated – but contesting (or even settling) them will certainly deplete the estate substantially. Nor is the universe of claimants co-extensive with those who should be compensated via remission and restitution in the criminal case; indeed, the claims in the

---

[4] The prospect of the Trustee (and therefore the Estate) continuing to incur substantial fees is evident from the scope of current or anticipated litigation: the Trustee has retained attorneys in at least a half dozen separate countries – in addition to multiple jurisdictions within the U.S. – to pursue assets alleged to belong to the Estate. *See July 2025 Monthly Operating Report*.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Analisa Torres
United States District Judge
Southern District of New York
September 4, 2025
Page 8 of 8

bankruptcy proceeding are largely *not* from those who would be entitled to restitution.

Consequently, leaving in the Trustee's custody any funds and/or assets that are potentially subject to forfeiture would continue to diminish substantially the amount ultimately available for remission and restitution, to the tangible detriment of those to whom the government (and Mr. Guo) seeks to return money. Already the total has been reduced by more than 25%, and it is respectfully requested that the Court act to prevent further dilution.

## Conclusion

Mr. Guo makes this application at this time in order to ensure that the transfer of assets and/or funds from the Trustee occurs promptly, and before anything occurs in the bankruptcy proceedings that could compromise the availability of those funds and assets for remission and restitution in this case.

Accordingly, it is respectfully requested that the Court order the USAO SDNY to effect the immediate transfer of the forfeitable funds and assets from the Trustee in bankruptcy to the custody of the appropriate U.S. Government authorities in the Southern District of New York for purposes of any potential forfeiture in this case.

Respectfully submitted,

Joshua L. Dratel
John F. Kaley
Melinda Sarafa

*Attorneys for Defendant*
*Ho Wan Kwok*

JLD/