

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, NY 10278*

September 19, 2025

**BY ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl St. New York, NY 10007-1312
New York, New York 10007

   Re:    *United States v. Miles Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

   The Government writes respectfully to oppose defendant Miles Guo's motion to compel the United States to seize assets from the trustee of Guo's bankruptcy estate (the "Trustee"). (Dkt. 724 ("Def. Mot.")). The motion is meritless. Guo fails to identify any legal authority upon which a district court could order prosecutors to initiate forfeiture proceedings against specific assets. No such authority exists. Rather, it is beyond cavil that a district court cannot order the Government to seize and/or forfeit assets. For that fundamental reason, Guo's motion should be denied. Further, Guo's passing request to relitigate the already entered Preliminary Order of Forfeiture ("POF") (Dkt. 720)—on which he took no position and then elected not to oppose—should also be denied.

## I.    Background

   Guo is awaiting sentencing after being convicted of leading a racketeering conspiracy through which he and his co-conspirators defrauded thousands of victims of more than one billion dollars between 2018 and 2023. (*See* Dkt. 307 ("Indictment") ¶¶ 1–26).

   As alleged in the Indictment and proven at trial, Guo "filed for bankruptcy on or about February 15, 2022," as part of his "years-long efforts to obscure the funds [he] used and controlled." (Indictment ¶ 20). Indeed, this bankruptcy filing "was a means and method" of Guo's racketeering enterprise. (*See id.*).[1]

   As early as September 2022, the Government began seizing assets that were involved in, or were the proceeds of, Guo's years-long fraud and money laundering schemes, pursuant to various authorities that permit the seizure of tainted property prior to a criminal conviction. *See, e.g.*, 18 U.S.C. §§ 981, 984. The Government has also managed the issue of "potentially

---

[1] Prior to trial, Guo twice sought to stay the bankruptcy proceedings that he voluntarily initiated, motions that this Court denied while noting doubts about its jurisdiction over Guo's request for extraordinary relief. (*See* Dkt. 204 at 6 n.6; Dkt. 250).

conflicting claims . . . between [Guo's] bankruptcy creditors on the one hand and [his] fraud victims on the other" by, among other things, entering a voluntary agreement with the Trustee about the status of certain property subject to forfeiture and implicated in the bankruptcy proceedings. (*See, e.g.*, Dkt. 204 (order denying Guo's first motion to stay his bankruptcy proceedings) at 2–3).

Guo's July 2024 convictions gave rise to criminal forfeiture proceedings under Federal Rule of Criminal Procedure 32.2. In relevant part, that Rule permits "the government"—and no other party—to "seek[] forfeiture of specific property" and to "seek[] a personal money judgment" after a verdict, after which "the court must determine what property is subject to forfeiture under the applicable statute." Rule 32.2(b)(1)(A). "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture ["POF"] setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A).

On April 8, 2025, the Court appointed Guo's current counsel and directed them to file a joint letter with the Government by April 29, 2025, proposing a deadline by which Guo would decide whether he intended to contest any aspect of forfeiture. (*See* Dkt. 684 at 7–11). Letters filed on April 29, May 9, May 23, and June 13, 2025, conveyed Guo's requests for additional time to decide his position on forfeiture, with the final letter informing the Court that the defendant "hope[d] to be able to submit [his] position" on forfeiture by June 27, 2025. (*See* Dkts. 697, 701, 705, 707). On that day, Guo informed the Court that he was "unable to take a position with respect to issues regarding potential forfeiture and remission of money and property seized by the Government in connection with this case." (Dkt. 710). On July 14, 2025, the Government responded to Guo's no-position letter by stating that the Court "can enter a [POF] that imposes a money judgment and forfeits the defendant's personal interest in specific property," notwithstanding Guo's lack of consent, and noting that the Government would file a motion requesting such an order by July 28, 2025. (Dkt. 713).

Guo filed no further response regarding forfeiture. Instead, on July 25, 2025, Guo sought to adjourn his sentencing again. (Dkt. 715). Among the reasons offered for adjournment was that "counsel initially was required to spend significant time addressing the forfeiture issues the government presented to us for decision as promptly as practicable," and "only recently have we been able to move beyond the forfeiture issues, and begin to address the broader issues presented by sentencing." (*Id.* at 2). Guo's July 25, 2025 adjournment request made no other mention of forfeiture, and gave no indication that Guo planned to change his June 27 decision to take no position on forfeiture.

As previewed in its July 14 letter, on July 28, 2025, the Government moved for entry of the POF. (Dkt. 716 (the "POF Motion")). The Government sought both forfeiture of specific property and a personal money judgment of $1.3 billion. (*Id.*). The POF Motion—and the proposed POF itself—made clear which specific property named in the proposed POF had already been seized by the Government. (*See id.* (describing specific property previously seized through civil seizure warrants)). Guo did not file a response to the POF Motion. On August 11, 2025, the Court entered the Government's proposed POF. (Dkt. 720).

The Court's issuance of the POF "authorizes"—but does not require—"the Attorney General (or a designee) to seize the specific property subject to forfeiture," and to conduct discovery and initiate related proceedings if necessary. Fed. R. Crim. P. 32.2(b)(3).[2] The Court may later amend the POF or enter additional orders to forfeit additional property, but only "[o]n the government's motion." Fed. R. Crim. P. 32.2(e).

## II. Guo's Motion

Guo filed the instant motion on September 4, 2025—more than three weeks after the Court's entry of the POF on the Government's unopposed motion. According to his motion, Guo "seeks discrete and pressing relief"—an order compelling the United States to seize certain property from the Trustee "for purposes of any potential forfeiture in this case." (*Id*. at 1, 4). Guo asks that the Court compel the Government to seize 19 enumerated assets—12 of which the Government has already seized—"and any other such assets and/or funds forfeitable in this criminal case." (*Id.* at 2).

In addition, Guo's motion also requests permission to file a "comprehensive submission sufficiently prior to sentencing" to "contest[] whether certain property is forfeitable *at all*, and/or what constitutes the proper and accurate amount of forfeiture." (*See id*. at 1–2 (emphasis in original)). Strangely, at the same time that Guo asserts a right to "contest[] whether certain property is forfeitable" (*Id*. at 4), he also insists that he "does not take a position" on whether "any of the assets the government seeks to forfeit are, in fact, his." (*Id*. at 2).

## III. Guo's Motion Should be Denied

Guo's motion is meritless. Its principal request—to order the Government to forfeit assets—is one the Court lacks the power to grant. No statute or rule authorizes such a directive. To the contrary, the applicable law makes clear that the Government decides whether to initiate forfeiture proceedings against tainted property, and must satisfy various statutory requirements in order to obtain forfeiture. Moreover, a court ordering the Government to bring a forfeiture action would not only run contrary to binding law—it would upend the traditional roles of courts and prosecutors in our constitutional system.

Guo's secondary request—that he permitted to relitigate the POF—should also be denied. Because Guo claims no proprietary interest in the seized property, he lacks standing to vicariously challenge the forfeiture of specific property on behalf of third parties. And Guo has waived his

---

[2] Other authorities permit the Government to seize criminal proceeds and related property before entry of a criminal forfeiture order. For example, the civil forfeiture statutes permit the Government to seize property "involved in a transaction or attempted transaction" that constitutes money laundering or any of its predicate offenses. *See* 18 U.S.C. §§ 981, 984. These civil seizures can be accomplished with a warrant "obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure" or without a warrant under certain circumstances. 18 U.S.C. § 981(b)(2). Critically, however, the Government must initiate these proceedings and cannot be compelled to initiate a civil forfeiture proceeding by the Court.

challenge to the money judgment amount by taking no position on forfeiture issues and then failing to contest the POF.

### A. The Court Lacks Authority to Order the Government to Initiate Forfeiture Actions

Guo asks this Court for an order it lacks authority to issue. The Federal Rules of Criminal Procedure and the applicable forfeiture statutes set out exacting procedures governing criminal forfeiture. *See generally* Fed. R. Crim. P. 32.2; 28 U.S.C. § 2461(c) (applying to all stages of criminal forfeiture the procedures in 21 U.S.C. § 853); 21 U.S.C. § 853. Rule 32.2 requires notice to the defendant that the Government will seek forfeiture in the criminal case. Fed. R. Crim. P. 32.2(a). Then, if after a conviction "the government seeks forfeiture of specific property" or "the government seeks a personal money judgment," "the court must determine what property is subject to forfeiture." Fed. R. Crim. P. 32.2(b)(1)(A). Parties other than the Government have certain circumscribed and exclusive opportunities to assert their interests in property the Government intends to forfeit, but not to initiate forfeiture on the Government's behalf. A defendant may request a hearing before entry of the POF, *see* Fed. R. Crim. P. 32.2(b)(1)(B), and may "suggest revisions or modifications before the [POF] becomes final as to Guo under Rule 32.2(b)(4)." *See* Fed. R. Crim. P. 32.2(b)(2)(B). Similarly, third parties may file claims to preliminarily forfeited property in a post-sentencing ancillary proceeding. *See* 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c). However, no provision gives a defendant, any third party, or the Court, the power to request or order seizures of property in connection with forfeiture absent an application from the Government. Under the plain text of Rule 32.2, only the Government—through "the Attorney General (or a designee)"—may "seize the specific property subject to forfeiture." Fed. R. Crim. P. 32.2(b)(3); *see United States v. Factor*, 321 F. Supp. 3d 274, 277 (D.P.R. 2018) (there is "no statute or precedent granting the Court the authority to compel the United States to move for an amended forfeiture order"). Likewise, under the procedures of Section 853, "[t]he Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section," and only "[u]pon application of the United States" may a Court "take any other action to preserve the availability of property . . . for forfeiture[.]" 21 U.S.C. § 853(e), (f).

Neither the Court's inherent supervisory authority nor the All Writs Act provides a basis for the Court to order the Government to seize and forfeit property. "[S]upervisory rules . . . cannot conflict with or circumvent a Federal Rule" like Rule 32.2 or Section 853. *United States v. Tsarnaev*, 595 U.S. 302, 315 (2022). And "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34, 43 (1985); *see also Carlisle v. United States*, 517 U.S. 416, 428–29 (1996) (applying same principle to Federal Rules of Criminal Procedure); *United States v. Kone*, 591 F. Supp. 2d 593 (S.D.N.Y. 2008) (denying purported All Writs Act petition for federal probation officer to seek a search warrant because application was foreclosed by Rule 41); *cf., e.g.*, *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006) (no restitution orders beyond scope of restitution rules and statutes).[3]

---

[3] The interplay of the forfeiture and restitution statutes further demonstrates that a court's authority with respect to forfeiture issues is circumscribed by the applicable statutes. *See United States v. Bodouva*, 853 F.3d 76, 78–79 (2d Cir. 2017) ("Because the statutory schemes authorizing

Further, granting Guo's request would upend the roles of federal courts and prosecutors in our constitutional system. It is well settled, for example, that courts may not order the Government to prosecute an individual. *See, e.g.*, *Reed v. Doe*, No. 24 Civ. 10079 (KMW), 2025 WL 1797292 (S.D.N.Y. June 25, 2025) ("Neither Plaintiff, nor this or any other court, can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions and they are 'immune from control or interference by citizen or court.'" (quoting *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972))); *United States v. Adams*, 777 F. Supp. 3d 185, 235 (S.D.N.Y. 2025) ("[A] court is not situated—either in terms of institutional competence, or as a matter of its proper role in our constitutional system—to make an assessment as to whether a prosecution 'should' continue. A court's role is to preside over cases, not to determine if a case should be prosecuted."). Just as courts may not order the Government to initiate criminal charges against particular persons, courts likewise lack the power to order the Government to initiate forfeiture actions against specific property.[4]

In his motion, Guo does not cite a single case, rule, or principle indicating otherwise. That is for good reason. *See Factor*, 321 F. Supp. 3d at 277 (there is "no statute or precedent granting the Court the authority to compel the United States to move for an amended forfeiture order"). Accordingly, the Court should deny Guo's motion on the ground that it lacks authority to order the relief requested.

### B. Guo's Request to Relitigate the POF Should Be Denied

The Court should also deny Guo's request to relitigate the POF. Specifically, Guo requests that the Court "permit counsel to address" in a "comprehensive submission sufficiently prior to sentencing" issues related to the POF, despite his failure to oppose the POF. (Def. Mot. 1). These issues include "whether certain property is forfeitable as a result of the mixed jury verdict, or the issue of offsets, or the accuracy of the [forfeiture money judgment]." (*Id*. at 1; *see also id*. at 2 (Guo purports he will later contest "whether certain property is forfeitable *at all*, and/or what constitutes the proper and accurate amount of forfeiture")). At the same time, however, Guo insists

---

restitution and forfeiture are separate," courts may not order less forfeiture to offset restitution "in the absence of specific statutory authorization to do so"); *United States v. Kenner*, 443 F. Supp. 3d 354, 383 (E.D.N.Y. 2020) (under the Second Circuit's decision in *Bodouva*, "courts cannot order that the forfeitable assets be deducted from the restitution obligation without specific statutory authorization"). Importantly, courts recognize that the Government has certain discretionary prerogatives respecting forfeiture and restitution, but that courts have no power to force the Government to act in this sphere. *See, e.g.*, *United States v. Pratt*, No. 17 Cr. 262 (MKB), 2018 WL 2871840, at *3 (E.D.N.Y. June 11, 2018) ("While the government has discretion and can decide to apply forfeited funds to restitution, the Court is not aware of any authority to order the Government to exercise its discretion in a particular case."); *Xiong v. U.S. Dep't of Treasury*, No. 1:20 Civ. 1346 (ABJ), 2022 WL 1538701, *5 (D.D.C. May 16, 2022) (decision to restore proceeds of forfeited assets "is left entirely to the discretion of the Attorney General").

[4] The Government maintains its right to seek seizure and forfeiture of additional specific property in connection with this case, including—without limitation—the property referenced in Guo's motion that has not already been seized by the Government.

that he still "does not take a position" on whether "any of the assets the government seeks to forfeit are, in fact, his." (*Id.* at 2).

Guo's request is confused and meritless. First, with respect to the specific property in the POF, Guo lacks standing to contest the forfeiture of specific property in which he claims no interest. *See United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (in context of property that was civilly seized and forfeited, "[o]nly those with legitimate possessory interests have standing to challenge forfeitures[.]"); *United States v. Grayson Enter., Inc.*, 950 F.3d 386, 410 (7th Cir. 2020) ("[T]he district court rightly recognized that the possibility [defendant] might not own the warehouse was not a reason to withhold a forfeiture order."); *see also Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1158 (2d Cir. 1994) (in context of civil forfeiture complaint, "an allegation of ownership and some evidence of ownership are together sufficient to establish standing"); *In re 650 Fifth Ave. & Related Props.*, No. 08 Civ. 10934 (RBF), 2013 WL 4572527, at *3 (S.D.N.Y. Aug. 27, 2013), *aff'd*, 581 F. App'x 61 (2d Cir. 2014) (constitutional standing requirements apply to civil forfeiture claims). Guo does not claim any ownership interest in the specific property—indeed, he has sworn under oath on multiple occasions that he does not own any of it—and thus cannot challenge the forfeiture of his interest in the property. *See* Trial Tr. 4029 (testimony regarding Guo's bankruptcy filings where he claimed almost no assets); Dkt. 800, Ex. A (Dec. 24, 2024 Tr.) at 13–14 (Guo representing to the Court that he does not "have the financial resources to afford" an attorney in this case), 11 (Guo's counsel representing to the Court that "Mr. Guo has informed us that he has no assets" and his affidavit "would list him as having no property and no cash or bank accounts").[5] To put it another way, if Guo disclaims any interest in the specific property being forfeited, he has suffered no deprivation through entry of the POF.[6]

Second, with respect to the money judgment in the POF, Guo had the opportunity to challenge that judgment—but chose not to. *See, e.g.*, *United States v. Dantzler*, 771 F.3d 137, 146

---

[5] Curiously, Guo's two requests appear facially inconsistent. It is unusual, to say the least, for a criminal defendant to request that the Court order the Government to seize and forfeit additional assets—so that Guo may then contest the propriety of that forfeiture.

[6] Nor can Guo oppose the entry of a forfeiture order based upon a potential ownership of another party. Rule 32.2(b)(2)(A) requires the district court to enter a preliminary order of forfeiture "without regard to any third-party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A). *See also United States v. Schlesinger*, 396 F. Supp. 2d 267, 273 (E.D.N.Y. 2005) ("[T]he extent of the Defendant's ownership or interest in the property is not at issue in determining whether the court should enter a preliminary order of forfeiture. The extent of the defendants' interest in the property and any other party's interest will be decided, if necessary, in an ancillary hearing."); *United States v. Collado*, 2020 WL 248685 (S.D.N.Y. Jan. 16, 2020) (convicted defendant lacked standing to assert alleged third-party interest in seeking return of currency (seized from their residence) that was applied to satisfy defendant's forfeiture money judgment); *United States v. Rivers*, 60 F. Supp. 3d 1262 (M.D. Fla. 2014) ("any objection [defendant] may have on the basis that a third party holds an interest in forfeitable property is not his objection to make"); *United States v. Wittig*, 2006 WL 13158, *3 (D. Kan. Jan. 3, 2006) (defendant's argument that the forfeited property does not belong to him "is premature and not his to make"; "a defendant does not have standing to object to forfeiture on the grounds that a third party owns the property").

n.5 (2d Cir. 2014) (courts apply waiver doctrine to "strategic, deliberate decisions that litigants consciously make" to relinquish or abandon potential arguments). Instead, after months of considering the issue, Guo represented to the Court that he was "unable to take a position with respect to issues regarding potential forfeiture and remission of money and property seized by the Government in connection with this case," (Dkt. 710), and then did not oppose—or even request the opportunity to oppose—the Government's motion for a POF. Unsurprisingly, the Court entered the unopposed POF. Guo elected not to respond to that order. At most, he waited more than three weeks after the Court's entry of the POF, and filed the instant motion requesting permission to address an issue that his counsel, weeks ago, had moved "beyond." (Dkt. 715 at 2 ("[W]e [have] been able to move beyond the forfeiture issues, and begin to address the broader issues presented by sentencing.").    Guo has no right to relitigate issues he waived. *See, e.g.*, *Freudenvoll v. Target Corp.*, No. 13 Cv. 6197L (MWP), 2013 WL 6243706, at *1 (W.D.N.Y. Dec. 3, 2013) ("Failure to oppose a pending motion may be fairly construed as a lack of opposition to the requested relief or as a waiver of the party's right to be heard in connection with the motion."); *accord, e.g.*, *TCPIP Holding Co. v. Haar Comms. Inc.*, No. 99 Cv. 1825 (RCC), 2004 WL 1620950, at *4 (S.D.N.Y. July 19, 2004) (granting motion on the "basis alone" that non-moving party failed to oppose it). Accordingly, the Court should deny Guo's request relitigate the POF that has already been entered.[7]

## IV. Conclusion

For the reasons set forth above, Guo's motion should be denied.

Respectfully submitted,

SEAN S. BUCKLEY
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515
Southern District of New York

By: /s/ _____
    Micah F. Fergenson
    Ryan B. Finkel
    Justin Horton
    Juliana N. Murray
    Assistant United States Attorneys
    (212) 637-2190 / 6612 / 2276 / 2314

---

[7] At a minimum, the Court should ensure that any submission from Guo does not delay Guo's already delayed sentencing.