

43 West 43rd Street, Suite 370 | New York, NY 10036
212.785.7577 | 646.868.8266 (fax)
www.sarafazellan.com

January 16, 2026

**By ECF Filing**
Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Ho Wan Kwok, et al.*
                  **23-CR-118 (AT)**

Dear Judge Torres:

      Together with Joshua Dratel and John Kaley, I respectfully submit this letter on behalf of Miles Guo (a/k/a "Ho Wan Kwok") in response to the Government's letter dated January 9, 2026, concerning petitions for remission of forfeited assets and claims submitted under 21 U.S.C. § 853(n) ("Gov. Ltr."). ECF No. 785.

      While Mr. Guo has taken no position with respect to any personal interest he may have in the assets the Government seeks to forfeit, we write to clarify a number of legal points that the Government muddies in an apparent effort to subjugate the § 853(n) petition process in favor of remissions, and to address the ongoing confusion with respect to identification of victims and determination of losses in this case.

      To be clear, this letter responds only to the January 9, 2026, submission by the Government and is not intended to set forth Mr. Guo's position with respect to the Preliminary Order of Forfeiture ("POF") entered on August 11, 2025. Mr. Guo will submit his objections to the POF by January 29, 2026, as ordered by the Court on January 8, 2026. ECF No. 784.

      **A. Petitions Asserting Third Party Interests Pursuant to § 853(n) Versus Petitions for Remission Pursuant to § 853(i)**

      As a threshold matter, 21 U.S.C. § 853(n) provides a legal framework for adjudication *by the court* of third-party interests in property ordered forfeited pursuant to 21 U.S.C. § 853, whereas 21 U.S.C.

Honorable Analisa Torres
January 16, 2026
Page 2

SARAFA ZELLAN

§ 853(i) merely vests *the Attorney General* with discretion to grant petitions for mitigation or remission of forfeiture, to restore forfeited property to crime victims, or to "take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section." 21 U.S.C. § 853(i)(1). In other words, petitions submitted under § 853(n) are filed with the court and seek court adjudication of third-party interests in subject property, whereas petitions for remission are filed with the Department of Justice and seek discretionary return of forfeited property by the Attorney General to victims of the offense underlying the forfeiture.

Rather than dispassionately address the differences between Section 853(n) petitions and petitions for remission, however, the Government appears determined to classify virtually all would-be petitioners in this case as crime victims who, as "general creditors," lack standing to assert rights under Section 853(n). See Gov. Ltr. at 2. Alternatively, the Government asserts that even if standing can be established, petitions pursuant to Section 853(n)(6)(A) are unlikely ever to succeed with respect to "crime proceeds," *id.* at 3, implicitly presuming that all assets it seeks to forfeit are crime proceeds in which no third parties will be able to establish any valid legal right, title, or interest. See Gov. Ltr. at 3.

In fact, third party interests under Section 853(n) are not as narrowly construed as the Government suggests. In a footnote, the Government grudgingly acknowledges the well-established doctrine that beneficiaries of constructive trusts can, in certain circumstances, show a "legal interest" sufficient to support a third-party claim pursuant to Section 853(n). Gov. Ltr. at 2, n.1. As the Second Circuit has explained:

> The result of our decision in *Schwimmer* . . . was that beneficiaries of properly traced constructive trusts could claim third-party interests under the forfeiture statute, while other victims who were not entitled to constructive trusts, and did not otherwise have a legal interest in the property, should utilize the remission process instead.

*Willis Management (Vermont), Ltd. V. U.S.*, 652 F.3d 236, 243 (2d Cir. 2011) (citing *United States v. Schwimmer*, 968 F.2d 1570 (2d Cir. 1992)). Indeed, "[w]hen a party can directly trace its assets, without resorting to fictions or presumptions, a constructive trust is available even in cases involving multiple fraud victims." *United States v. Ovid*, No. 09-CR-216 (JG), 2012 WL 2087084, at *7 (E.D.N.Y. June 8, 2012).

In this case, the docket reflects approximately 150 petitions asserting interests pursuant to § 853(n), and the Government states that it has received approximately 238 additional such petitions. Gov. Ltr. at 4, n.3. Although we have not had the opportunity to review any of the petitions submitted directly to the Government, most, if not all, of the publicly filed petitions assert precisely the type of traceable constructive trusts that the Second Circuit has recognized may constitute valid third-party interests under § 853(n).[1] These petitioners deserve a full and fair adjudication in an ancillary proceeding

---

[1] With respect to the Government's note that creation of a construction trust requires the absence of an adequate legal remedy, Gov. Ltr. at 2, n.1, it is important to emphasize that the Second Circuit has expressly rejected the notion that the remission process is "an adequate legal remedy that would deprive

as provided for in Rule 32.2(c) of the Federal Rules of Criminal Procedure, and as contemplated by the Government in, among other filings, its letter to the Court dated April 7, 2025. ECF No. 671. Indeed, all *potential* claimants in this case are entitled to proper notice of the Government's intention to forfeit specific property, an opportunity to assert any rights they may have to the specified property, and an opportunity to have those rights fully and fairly adjudicated.

### B. Role of the Court and Appointment of a Special Master

Determination of whether a petitioner has standing and has stated a valid legal interest in the seized property are matters for the Court. See Rule 32.2(c)(1)(A); § 853(n)(2). The Government certainly will want to review all petitions and make its own assessments with respect to these issues, but ultimately it is for the Court to decide whether a claimant has standing to assert an interest under § 853(n)(6)(A) or (B). Undersigned counsel concur with the Government that appointment of a special master to assist the Court in its evaluation of the numerous § 853(n) petitions in this case is warranted, though in our view the role of the special master should not be limited to recommending which petitions should be dismissed. See Gov. Ltr. at 4. The Government seems to have predetermined that the vast majority, if not all, of the § 853(n) petitions should be summarily disposed of and treated as petitions for remission, even though it simultaneously maintains that this case presents such complex issues of fact with respect to victim losses that restitution is impracticable. As discussed below, this tension reflects a fundamental failure on the part of the Government, in prosecuting this case, to grapple with questions that implicate the amount of any fraud itself.[2]

### C. Impracticability of Restitution and Determination of Victims and Losses in this Case

The Government notes that "[t]he MVRA . . . recognizes that, in certain cases, restitution cannot be mandatory because its imposition would be impossible, including when 'the number of identifiable victims is so large as to make restitution impracticable,' or when imposing restitution would require 'determining complex issues of fact related to the cause or amount of the victim's losses' which 'would complicate or prolong the sentencing process.'" Gov. Ltr. at 4 (quoting 18 U.S.C. § 3663A(c)(3)). With respect to this case specifically, the Government observes that "[t]he cost and time associated with calculating each victim's loss, determining whether the victim has already been compensated through the Securities and Exchange Commission ("SEC") or otherwise, and then paying out a percentage of each of the victims' losses would delay payment and diminish the amount of money actually paid to victims." *Id.* at 5. We concur with the Government's assessment of the impracticability of imposing restitution in this case.

---

a district court of its equitable power to recognize a constructive trust." *Willis*, 652 F.3d at 244. Rather, Section 853(i) "is a 'non-judicial remedy' that is left entirely to the Attorney General's discretion." *Id.* at 243 (quoting *DSI Assocs. LLC v. United States*, 496 F.3d 175, 186 (2d Cir. 2007)).

[2] Of course, Mr. Guo maintains that he did not commit any fraud and is not guilty of the offenses charged. However, in the context of forfeiture and restitution, he acknowledges the jury verdict for purposes of the specific issues presently before the Court.

Honorable Analisa Torres
January 16, 2026
Page 4

SARAFA ZELLAN

      Nevertheless, this begs the essential question of who the victims in this case truly are, and what is the nature and amount of any loss actually incurred. Without this information it is impossible to determine not just restitution and remission, but also the amount of any fraud itself and, by extension, forfeiture. For instance, the Government reiterates that "[i]n order to enter an order of restitution, the Court would need to determine and corroborate each victim's losses. That would require determining and corroborating, for each of the thousands of victims, both the amount of funds the victim provided the Guo Enterprise, any partial refunds from the Guo Enterprise, the amount a victim was compensated through the SEC's disgorgement process, and potentially any funds returned to the victim through collateral means." *Id.* This uncertainty casts doubt on the Government's oft-repeated assertion that victims were defrauded of more than $1 billion. And it is further complicated by the jury's acquittal of Mr. Guo on key counts, as well as by the pending bankruptcy proceeding, in which the Trustee has maintained possession of approximately $240 million in assets that rightfully belong to investors in and customers of entities involved in this case, as opposed to the estate of Mr. Guo. As discussed in our pending motion to preserve these assets, they should be made available for remission or, where applicable, § 853(n) claims, rather than dissipated by the exorbitant expenses being incurred by the Trustee or ultimately dispersed among general creditors.

      Not only is the determination of victim losses required now, but it is inexplicable that the Government, having instituted this case, has not already undertaken these efforts. The failure to do so is particularly notable in light of the genuine possibility that certain purported victims may not be authentic at all, but rather proxies operating at the behest of, or influenced by, the CCP. As the Government well knows, the 89-page complaint filed in *United States v. Bai et al.*, No. 23-MJ-334 (SJB) (E.D.N.Y. Apr. 6, 2023), details an aggressive campaign by China state security personnel in the United States to discredit opponents of the Chinese government, most notably Mr. Guo, through social media and other disinformation channels. With respect to Mr. Guo specifically, these efforts included posting allegations that he is a liar, swindler, trickster, con, and cheater.

      The Government consistently has ignored or downplayed the substantial claims on behalf of numerous petitioners, including thousands of Himalaya Exchange customers, that their property was never acquired or possessed by Mr. Guo at all (much less via fraud), but has been unlawfully seized and retained by the Government. Resolution of these § 853(n) petitions not only is integral to any determination of forfeiture in this case but also furthers the interests of justice with respect to the thousands of innocent parties whose assets have been in limbo throughout these proceedings.

Respectfully submitted,

*/s/ Melinda Sarafa*

Melinda Sarafa
Joshua Dratel
John Kaley

cc: All counsel via ECF