# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

In re: Tony,
Victim in *United States v. Kwok, et al.*,
1:23-CR-118-1 (AT)

# PETITION FOR WRIT OF MANDAMUS

## I. Introduction

I, Tony (real name: ▨▨▨▨▨▨▨), a crime victim within the meaning of the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(e), respectfully petition this Court for a writ of mandamus pursuant to 18 U.S.C. § 3771(d)(3), which expressly authorizes crime victims to seek mandamus relief to enforce the rights guaranteed by the CVRA, and Federal Rule of Appellate Procedure 21.

I have submitted multiple filings to the pro se email of Southern District of New York (SDNY)—including several sealed documents (Exhibit A-C) and one public document (Exhibit D)—raising issues directly affecting my property rights under 21 U.S.C. § 853(n) and Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. Specifically, Exhibit A was submitted pursuant to 21 U.S.C. § 853(n), and Exhibits B, C, and D were submitted pursuant to the CVRA. Despite repeated attempts over the course of several months, none of these filings have been docketed, adjudicated, or otherwise acknowledged by the district court.

At the January 20, 2026 status conference (Exhibit H), the district court represented that pro se petitions submitted under 21 U.S.C. § 853(n), including those filed by individuals without counsel, are being processed and will be docketed in due course. In reliance on that representation, I understand that my § 853(n) petition (Exhibit A), submitted to the SDNY pro se filing address, will be docketed and adjudicated pursuant to the forfeiture statute.

However, the status conference transcript contains no reference whatsoever to the Crime Victims' Rights Act. The only characterization remotely addressing my filings was the Court's generalized statement that it had received numerous "complaints." By omitting any reference to the CVRA and by characterizing victim-rights submissions as "complaints," the Court effectively downgraded my CVRA filings to a category that does not carry any assurance of docketing or adjudication.

As a result, my CVRA submissions (Exhibits B–D), **especially Exhibit D**, remain undocketed and unaddressed to this day. This treatment deprives me of my statutory right under 18 U.S.C. § 3771(a)(4) to be reasonably heard, and reflects a procedural framework under which CVRA motions—unlike § 853(n) petitions— are neither guaranteed entry on the docket nor meaningful judicial consideration. **The district court's non-docketing and downgrading my petitions under CVRA to "complaints" operates as a constructive denial of CVRA rights and destroys appellate reviewability by preventing any appealable order from ever issuing.**

This petition does not seek any factual disputes arising from foreign proceedings, nor to adjudicate the merits of victim classification. It seeks only to prevent statutory rights under the CVRA from being extinguished by non-docketing.

## Issue presented:

Whether mandamus relief is warranted where the district court gave formal, docketed consideration to CIPA submissions materially affecting sentencing in *United States v. Miles Guo* (defense counsel filed ECF 783, Court ordered government response ECF 787, government opposed ECF 795), but refused to docket or substantively review my CVRA filings—which likewise bear directly on the statutory sentencing framework, including restitution and forfeiture determinations—recharacterizing them to "complaints" at the January 20, 2026 status conference, thereby leaving me with no adequate means to obtain meaningful judicial review.

I do not seek parity of substantive standing with the parties, only parity of docketing and reviewability for filings material to sentencing.

## II. Background

**The following background is provided solely to explain why my CVRA filings bear directly on sentencing-related procedures and why non-docketing causes irreparable procedural harm.**

**Timeline of Wrongful National Security Prosecution Leading to Escape from China:**

I am a Chinese national whose personal financial investments made during 2020–2021 were later reclassified by Chinese authorities as constituting "the crime of funding criminal activities that endanger national security," despite my complete lack of political activity, political intent, or association with any political organization. As documented in my attorney's defense brief (Exhibit F, pp. 77–88), the investments were entirely private and lawful, and the national-security characterization was inconsistent with the actual nature of the transactions.

The same funds were subsequently implicated in the United States as part of the fraud scheme charged in *United States v. Kwok, et al.*, creating a direct cross-sovereign conflict: China treated the funds as instruments of national-security offenses, while the United States treated them as proceeds of criminal fraud.

Between May 2020 and March 2021, I conducted cross-border investment transfers totaling ██████████. Chinese court records reflect USD ██████ of this amount, excluding USD ██████ used to purchase "H-Coins." All transfers were ordinary personal investments with no political character. (Exhibit A at 3; Exhibit F at 10.)

Of the USD ██████ reflected in Chinese records, USD ████ corresponds to funds that the SEC's GTV Fair Fund (No. 3-20537) publicly stated should be returned to eligible claimants. Despite repeated inquiries, no refund has been issued. I currently reside abroad after fleeing political prosecution, have sustained serious injury, have lost the ability to work, and have no source of income. The continued failure of the Fair Fund to process this refund has caused severe financial hardship. Without a docketed filing or judicial action, agencies have disclaimed responsibility by pointing to the absence of a court record.

On October 27, 2021, another investor in the same investment channel, , was detained by Chinese police. Her detention marked the initiation of a criminal case designated as "the crime of funding criminal activities that endanger national security."

On ▨▨▨▨▨▨▨▨, three officers ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ entered my residence to conduct a search. They seized my passport, mobile phone, and computer. (Exhibit F, pp. 2–10.) I was taken to a public security facility for interrogation. The search warrant stated that I was suspected of the same national-security offense, and the interrogation focused on my G-Series investments and matters related to Guo Wengui. (Exhibit F, pp. 2–4; 28–43.)

On ▨▨▨▨▨▨▨▨ I was placed under ▨▨▨▨▨▨▨▨ a pre-trial compulsory measure, based on the same accusation. Throughout the proceedings, I consistently stated that all transfers were ordinary financial investments unrelated to politics. (Exhibit F, pp. 12–15.)

On ▨▨▨▨▨▨▨ the Procuratorate formally indicted the case. (Exhibit F, pp. 47–61.) On ▨▨▨▨▨▨▨ the court imposed a second pre-trial compulsory measure. (Exhibit F, pp. 65–67.) On ▨▨▨▨▨▨▨▨ the court held a first hearing without issuing a verdict. (Exhibit F, pp. 62–64.)

On ▨▨▨▨▨▨▨▨ the court imposed six months of "designated residential surveillance." (Exhibit F, pp. 71–73.) A second hearing was scheduled for ▨▨▨▨▨▨▨▨ (Exhibit F, pp. 74–76.) Because I was forced to flee China before that hearing, I have no knowledge of what occurred and have never received any related records or judgment.

Prior to the second hearing, prosecutors repeatedly pressured me to sign a "▨▨▨▨▨▨▨▨▨▨ guilt" agreement, stating that signing would result in a sentence of approximately five years, while refusal would result in a significantly longer sentence. I signed under coercive pressure. I replaced ▨▨ attorneys in an effort to understand the case and potential sentencing outcomes. Each independently advised that the case was political in nature, had been

escalated to central authorities, and that a custodial sentence exceeding five years was unavoidable.

During my escape from China, I suffered a severe and life-threatening accident, resulting in lasting physical and psychological injury. Photographs documenting these injuries were included in my first pro se submission to the SDNY. (Exhibit A.)

After reaching safety abroad, I learned that the United States was prosecuting United States v. Guo. In those proceedings, investors associated with the G-Series funds, including myself, have been treated as victims for administrative and procedural purposes. **The Government has expressly acknowledged, on the record, the existence of such a victim group and its ongoing interactions with those individuals. (ECF. 511).**

**Against this backdrop, my current legal position is defined by an unresolved dual-sovereign conflict arising from the same funds: (1) China classifies me as a national-security offender based on these investments; and (2) in U.S. criminal proceedings, I have been treated as a financial victim for procedural purposes, notwithstanding the Government's acknowledgment that investor classifications remain contested and unadjudicated.**

Beginning in September 2025, I submitted multiple pro se filings in the Southern District of New York seeking recognition of third-party rights under 21 U.S.C. § 853(n) and victim rights under 18 U.S.C. § 3771 (CVRA). None were docketed. Paper submissions sent via UPS and USPS were signed for by court personnel but never appeared on the docket. This resulted in a complete procedural cutoff: no access to § 853(n), no access to CVRA rights, no docket, no appealable order, and no judicial remedy.

**My Immigration Background:**

Due to the extreme duress and psychological pressure I experienced while fleeing persecution, my cognitive functioning was significantly impaired. As a result, I only recently realized and remembered that I am the beneficiary of a U.S. family-based I-130 petition (Exhibit G) filed by my sister who is an American citizen. This lapse reflects the severity of the trauma I endured, but it is not the

focus of this petition. This constitutes a federally recognized pending legal interest in the United States. The failure to docket my motions has undermined my position and continues to cause ongoing harm to this federally recognized legal interest.

## III. Structural and Procedural Inconsistencies Affecting Victim Determination and Due Process

### A. Divergent and Unexamined Identity Classifications Arising from the Same Financial Activity

The record reflects materially divergent legal characterizations of the same individual arising from the same underlying financial transactions, without any procedural mechanism to examine or reconcile those differences.

In the People's Republic of China, I was charged with offenses characterized as endangering national security based on my investment in the G-Series (Exhibit F, pp. 47–61). In contrast, in the United States criminal proceedings, the same funds—including those associated with the Rule of Law Foundation, GClub, and related entities—are treated as proceeds of fraud, and I have been identified as a victim of Guo Wengui for purposes of the prosecution.

These divergent classifications arise from the same financial activity yet assign incompatible legal identities across jurisdictions. They cannot be reconciled on the existing record without procedural examination.

The concern is compounded by acknowledged inconsistencies within the U.S. proceedings themselves. While I have been administratively identified as a victim, the district court and the prosecution has relied on an unverified victim list without affording affected individuals any opportunity for adversarial testing or procedural verification of that designation.

At the same time, both the prosecution and the defense acknowledge that the defendant, Guo Wengui, is a target of the People's Republic of China's "Operation Fox Hunt" (SDNY Dkt. 718, Ex. B). Independently, my own circumstances reflect multiple indicators identified by the Department of Justice in prior Fox Hunt and transnational repression matters, arising from the same investment activity (Exhibit F, pp. 44–46).

Notwithstanding these overlapping and contradictory indicators, the Southern District of New York declined to docket or adjudicate motions seeking to challenge the victim list and related forfeiture procedures. As a result, no procedural mechanism has been available to examine, verify, or reconcile the competing classifications reflected in the record.

Where a court relies on victim determinations that are inconsistent with both foreign sovereign actions and domestic enforcement materials —while foreclosing procedural review—the reliability of the victim-determination framework itself is called into question. The issue presented is therefore not a dispute over evidentiary weight, but a structural deficiency in the process by which identity and victim status have been assigned.

## B. Due Process Considerations

When identity classifications, victim determinations, and foreign-threat indicators converge without an available mechanism for procedural testing, the reliability of adjudicative outcomes cannot be presumed. Proceeding under such conditions risks arbitrary process, unreliable determinations, and a breakdown in adversarial testing—core safeguards of due process in federal criminal proceedings.

## C. Foreign Coercive Measures Affecting Access to Court

Additional facts demonstrate the impact of foreign coercive measures on my ability to access U.S. courts. During a national-security raid, Chinese security officers seized my passport. The passport was intentionally omitted from the official seizure inventory (Exhibit F, pp. 5–7), notwithstanding that officers later produced it during interrogation. Such unrecorded seizure is a documented technique used by state-security authorities to impose covert exit restrictions while avoiding formal documentation requirements.

This conduct indicates that I was subjected not to routine financial-crime procedures, but to political-security control measures that impaired my ability to seek protection and relief from U.S. courts. Foreign coercive action directed at a federal litigant presents a structural risk to the integrity of judicial proceedings. See *In re Grand Jury Proceedings*, 817 F.2d 1108 (4th Cir. 1987). The undisclosed passport seizure constitutes concrete evidence of

foreign interference affecting my access to statutory remedies in the Southern District of New York, supporting the need for supervisory review.

### D. Summary

In sum, the same investment activity has produced materially divergent legal classifications across jurisdictions, assigning incompatible identities to the same individual. Where both the defendant and a designated victim are independently associated with indicators of foreign political targeting, and where procedural avenues to test or reconcile those classifications have been foreclosed, the reliability of the victim-determination framework cannot be presumed. Under such circumstances, continued reliance on that framework raises serious questions regarding procedural integrity and warrants supervisory consideration.

## IV. Evidence Regarding Victim Determinations and Forfeiture Assets

As detailed in my counsel's submission (Exhibit F, pp. 77–88), the Chinese prosecution interviewed ▓ individuals connected to the financial flows at issue. Records indicate that ▓ of these individuals transferred Chinese Yuan (RMB) into the personal bank account o ▓▓▓▓▓▓, who then used her foreign-trade company account to convert the RMB into U.S. dollars and wire the amounts to accounts designated by the Himalaya Seven-Star Association Farm.
Based on my knowledge, once the funds reached the Seven-Star Association Farm accounts, the administrator (known online ▓▓▓▓▓) transferred amounts received from China into accounts designated by the Alliance Secretary-General Qidong Xia (aka Changdao Brother). Farm personnel confirmed in 2025 that borrowing and investment funds from Chinese investors are currently frozen by the U.S. Government.

This transactional structure, consistent with other G-Series investments across China, demonstrates several points:

1. The financial flows of Chinese investors exhibit nationwide uniformity and a systemic pattern.
2. The victim group possesses a cohesive and traceable transactional record.

3. Any inaccuracies in victim status or fund characterization could materially affect the assessment of forfeiture assets.

Accordingly, because the identity of the victim group, the nature of the funds, and the cross-border transaction structure are uniform, traceable, and verifiable, the forfeiture framework currently relied upon by the SDNY warrants careful review. The record shows that the same funds are treated in the United States as "fraud-victim assets," while originating investors were simultaneously subject to foreign national-security proceedings.
Without further procedural or factual clarification, these discrepancies limit the ability to reliably assess victim status, the scope of forfeiture, and restitution eligibility. The available record indicates the need for individualized review and verification before any determinations can be considered fully supported.

Exhibit F, pp. 44–46, notes that Chinese authorities classified the Guo Wengui–related cases as national-security matters subject to "centralized handling" (集中处置), reflecting coordinated multi-agency actions and streamlined processes under the Ministry of Public Security. This context indicates that the individuals whose funds ultimately reached U.S.-frozen accounts were part of a larger, structured network, highlighting the importance of careful assessment in the U.S. proceedings to ensure that victim determinations and forfeiture assessments are accurate and properly documented.

## V. Cross-Border Context Relevant to Procedural Review

I do not raise a diplomatic or foreign-policy dispute. The record shows that some funds implicated in the forfeiture proceedings were subject to legal treatment in China while being characterized in the United States as proceeds of fraud.

This divergence underscores the need for careful judicial review to ensure that victim determinations, asset characterization, and forfeiture administration rest on a complete, reviewable record and comply with statutory safeguards.

## VI. Argument for Issuance of the Writ of Mandamus

This petition does not ask this Court to decide the merits of sentencing, forfeiture, restitution, or any underlying factual disputes. It seeks only the minimum procedural relief necessary to ensure that my CVRA submission is docketed and receives a reviewable procedural disposition so that statutory rights are not extinguished by non-docketing.

Although mandamus traditionally implicates the considerations articulated in Cheney v. United States District Court, 542 U.S. 367 (2001), Congress has specifically authorized mandamus relief under the CVRA where procedural inaction would otherwise nullify a victim's statutory rights. The circumstances here satisfy those considerations, particularly where non-docketing forecloses any meaningful avenue for judicial review.

- **No Other Adequate Means to Obtain Relief**

  At the January 20, 2026 status conference, there was no reference to CVRA and my filings under CVRA are treated as "complaints" rather than docketed motions, there is no ruling, order, or mechanism through which the resulting procedural disparity can be corrected. The court's approach forecloses appellate review and eliminates any means to secure equal procedural treatment across cases.

  The harm is concrete. Because my filings were not docketed or adjudicated, the court did not consider evidence directly bearing on restitution, the allocation of forfeited assets, or other collateral federal interests, including my pending I-130 family-based immigration petition. Likewise, absent a docketed filing or judicial action, I have no procedural mechanism through which the SEC's GTV Fair Fund can act, as the absence of a docketed filing or judicial disposition has led the agency to disclaim authority.

- **A Clear and Indisputable Right to Relief**

  My right to relief is clear and indisputable. The CVRA guarantees victims the right to be reasonably heard and to receive fair and respectful treatment. 18 U.S.C. § 3771(a). Filings invoking those rights cannot be procedurally nullified by recharacterizing them as informal "complaints."

The procedural disparity is evident. In United States v. Miles Guo, the district court explicitly reviewed filings raising sentencing-related issues. On January 5, 2026, Mr. Guo's counsel submitted a letter seeking disclosure of classified information "material or helpful ... in the sentencing context" pursuant to the Classified Information Procedures Act ("CIPA") (ECF 783). The court ordered the government to respond by January 21, 2026 (ECF 787), notwithstanding subsequent opposition (ECF 795). **This confirms that filings materially affecting sentencing are ordinarily afforded formal docketing and judicial consideration.**

My filings—supported by official documentation and personal experience, and directly relevant to restitution and the distribution of forfeited assets— are similarly material to sentencing and related federal interests. Treating them as non-docketed "complaints" denies me equal procedural consideration and violates clear statutory guarantees.

- **Mandamus Is Appropriate Under the Circumstances**

Absent mandamus, sentencing, restitution, and forfeiture proceedings may continue on an incomplete record, while my statutory rights remain procedurally extinguished.

Because the district court's inaction both undermines procedural parity and threatens irreparable harm by rendering any errors in sentencing, restitution, asset recovery, and related federal interests effectively irreversible, judicial intervention is warranted. Mandamus is necessary to ensure that my filings receive the same procedural attention and review afforded to filings in analogous cases, solely to preserve statutory and constitutional rights.

This request is made solely to preserve meaningful review by this Court and any higher reviewing authority, should jurisdiction ultimately be deemed unavailable at this stage.

# VII. Family Safety Statement (Submitted Solely for Contextual Clarification)

I respectfully note that the foreign national-security proceedings described above

imposed substantial constraints on my ability to communicate freely and to pursue legal remedies during the relevant period.

As a result of prior investigative actions by foreign authorities, my immediate family members residing abroad became aware of these proceedings. I do not allege that any harm has occurred, nor do I assert any intent of future harm.

This information is submitted only to explain why access to the U.S. judicial process—including docketed consideration of my submissions under 21 U.S.C. § 853(n) and the CVRA—is of heightened importance. Where foreign coercive circumstances impair a litigant's access to court, the failure to docket and adjudicate filings presents a structural risk to the integrity and independence of the judicial process.

# VIII. Relief Sought

I respectfully request that this Court issue a writ of mandamus directing the following relief:

1. Order the district court to docket my redacted CVRA motion, Exhibit D on the SDNY docket.

2. Enter a prompt, docketed procedural disposition on my request to preserve the appellate record in Exhibit D, Relief 4, without directing any substantive outcome, for the limited purpose of clarifying the status of my submission in the district court record.

Respectfully submitted:
Tony



# Certificate of Service

**In re: Tony, Petitioner**
**United States Court of Appeals for the Second Circuit**
**SDNY case: United States v. Kwok, et al. 1:23-CR-118-1 (AT)**

I hereby certify that on **January 27, 2026**, true and correct **redacted copies of** the following documents were served:

1. **Redacted Motion to Request Redaction of Personal Information;**

2. **Redacted Petition for Writ of Mandamus;**

3. Redacted Exhibit D: *Victim's Motion to Remedy Structural Procedural Breakdown and Request Sua Sponte Corrective Action Under the Court's Inherent Authority.*

4. **A stenographic transcript of Jan 20, 2026 status conference**

A separate notice identifying the existence of sealed exhibits A, B, C, E, F, G were served on the Court and the Government. The sealed materials themselves were not publicly filed.

Service was effected via **c/o mailing** on the following recipients:

1. **The Honorable Analisa Torres**
   United States District Judge
   United States District Court for the Southern District of New York
   500 Pearl Street
   New York, NY 10007-1312

2. **Ryan B. Finkel**
   Assistant United States Attorney
   United States Attorney's Office
   Southern District of New York
   One St. Andrew's Plaza
   New York, NY 10007

## Identification and Service Clarification

For **identification purposes only**, the petitioner proceeds **pro se** under the name "**Tony.**"

The petitioner's legal name is his statement is provided solely to clarify the identity of the filer and **does not confer any representative, agency, or legal capacity on any other individual.**

Service was executed via c/o mailing using the following sender information:

 assisted **solely** with translation, mailing, and payment of the filing fee, and **did not provide legal representation for the petitioner**.

Respectfully submitted,

Tony (real name

Petitioner, *pro se*

Executed on January 27, 2026.

# Redacted Exhibit D: Victim's Motion to Remedy Structural Procedural Breakdown and Request Sua Sponte Corrective Action Under Court's Inherent Authority

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**HO WAN KWOK, a/k/a MILES GUO, et al.,**

**Defendants.**

**Case No. 1:23-cr-00118-AT**

# Victim's Motion to Remedy Structural Procedural Breakdown and Request Sua Sponte Corrective Action Under Court's Inherent Authority

The Honorable Analisa Torres

United States District Judge

Southern District of New York

Daniel Patrick Moynihan U.S. Courthouse

500 Pearl Street

New York, NY 10007-1312

Dear Judge Torres:

I, ▮▮▮▮▮▮ a victim under 18 U.S.C. § 3771, respectfully submit this motion pro se to request that the Court to **Remedy Structural Procedural Breakdown**

**and Request Sua Sponte Corrective Action Under Court's Inherent Authority**

# I. Background

I, ▨▨▨▨▨ have submitted multiple pro se motions to the SDNY in an effort to exclude my lawful G-related investments from the forfeiture proceedings. My filing history is as follows:

On September 19, 2025, I submitted my first 853(n) Third-Party Petition by email to the SDNY pro se intake.

On September 20, 2025, I submitted my first CVRA Crime Victim Motion.

A few days later, I discovered that those versions lacked handwritten signatures. I immediately corrected them. On September 25, 2025, I resubmitted both the signed 853(n) petition and the signed CVRA motion by email, and also mailed the hardcopy packages to both the Court and the U.S. Attorney's Office. USPS records confirm that both institutions received and signed for the mailed filings.

Despite these steps, none of the filings were docketed.

On October 22, 2025, I submitted my second CVRA motion, and in that submission I included USPS Proof of Delivery showing that my earlier hardcopy filings had indeed been delivered but never docketed. In total, I submitted three motions (one 853(n) petition and two CVRA motions), each sent both electronically and in physical hardcopy. These Proof-of-Delivery records are contained in Appendix_A_Proof_of_Delivery_to_SDNY_and_USA_Nov3_2025.pdf.

Notwithstanding these repeated attempts, none of my filings were uploaded to the docket, and this multi-week failure constitutes a clear violation of my CVRA rights:

1. The right to be reasonably heard (§3771(a)(4));

2. The right to be treated with fairness and respect (§3771(a)(8));

3. The right to proceedings free from unreasonable delay (§3771(a)(7));

4. The right to be protected from further harm (§3771(a)(1));

5. The right to full and truthful consideration of victim status under the statutory definition of "crime victim."

## II. Procedural irregularity

As in my previous suppressed motion that was filed by 09-20-2025 : I am a lawful investor in G-related projects, and have never engaged in fraud, wrongdoing, or political activism. Nevertheless, I was targeted by the Chinese Communist Party (CCP) authorities, labeled as "a threat to national security," and subjected to retaliatory prosecution solely because of the investment and the identity of the individuals and platforms associated with it. I was forced to flee, suffered loss of home, livelihood, community, and safety, and has remained in exile ever since. These facts are verified, documented, and corroborated by court records, including parallel cases such as the prosecution and imprisonment of investor Wu ██████ who

remains incarcerated after being accused of "subverting the State" for publishing minor online posts with negligible readership. The persecution of investors like Wu and Petitioner demonstrates that the danger is real, ongoing, and directly tied to this matter.

If a victim is classified as a "threat to national security" and subjected to political persecution in their home country, and Judge Torres still suppressed victims' filing, this constitutes a serious procedural violation:

## 1. Violation of the Crime Victims' Rights Act (CVRA, 18 U.S.C. § 3771)

- Failure to recognize Petitioner's status as a crime victim.

- Denial of the right to be reasonably heard (§3771(a)(4)).

- Denial of fair treatment (§3771(a)(8)).

- Failure to protect the Petitioner from further harm (§3771(a)(1)).

- Ignoring statutory deadlines and causing procedural delays (§3771(a)(7)).

- Allowing personally identifiable information (PII) to remain exposed, despite life-threatening risks from foreign persecution.

## 2. Violation of Fifth Amendment Due Process

- Court knowingly increased risk to Petitioner (State-Created Danger Doctrine).



- Denied meaningful participation in proceedings affecting property, rights, and victim recognition.

## 3. Violation of Equal Protection Clause

- Differential treatment of victims persecuted by foreign actors (CCP) versus baseless creditor registrants which detailed in Dkt. 733.

- Silencing legitimate victims while elevating unverified or illegitimate claimants.

- Failure to provide heightened procedural protection to a uniquely vulnerable class.

## 4. Violation of the Court's Inherent Authority to Protect Litigants Facing Foreign Persecution

- Ignored documented, ongoing life-threatening risk from foreign government persecution.

## 5. Continuation of Proceedings Despite Known Contamination of Victim Identity and Evidence

- Bankruptcy (22-50073) Doc. 2083 admitted that creditor and victim pools are overlapping and subjective.

- Criminal proceedings proceeded without resolving identity conflicts, allowing baseless claimants to dominate the narrative.

## 6. Ignoring External Influence and Foreign Interference Risks

- Failed to consider CCP's targeted persecution of G-investors as a material factor in procedural decisions.

- Allowed narrative and evidentiary record to reflect interests aligned with foreign persecution actors.

- Neglect of this factor constitutes a structural and constitutional violation requiring corrective action.

## 7. Structural Procedural Breakdown

**Victim-Perpetrator Identity Conflict and Structural Procedural Breakdown, Foreign Influence on Victim Classification**

### 7.1 Conflict of Legal Status

A triple-layer identity conflict:

In China:

The same investment is classified as a threat to national security; I am treated as a perpetrator under a political-security framework. Subsequently, I suffered political persecution at the hands of Chinese authorities, effectively making me a victim of state retaliation.

In the United States:

The identical investment is characterized as part of a fraudulent scheme perpetrated by Guo Wengui; I am treated as a victim under the CVRA and federal criminal fraud statutes.

Direct contradiction:

I am simultaneously considered:

- A perpetrator by Chinese authorities;

- A victim of political persecution by the same Chinese authorities;

- A victim of fraud under U.S. law.

**Additional conflict – the case of Wu ▮▮▮▮:**

Another investor, Wu ▮▮▮▮, was criminally convicted in China for the very same investment scheme that the U.S. government labels as investor fraud. Despite clearly qualifying as a fraud victim under U.S. law, Wu was entirely excluded from the SDNY's victim-identification process.

**Systemic implication:**

**These conflicts demonstrate that the identity contradictions are not isolated, but systemic, affecting the entire victim framework in the U.S. proceedings.**

**7.2 Impact on Legal Proceedings**

U.S. court determinations regarding victim status, asset forfeiture, restitution, and CVRA participation rely on the assumption that investors are genuine victims of fraud.

However:

- If the same individual is legally treated as a perpetrator by another sovereign authority;

- If other investors such as Wu ▒▒▒▒ are criminally punished abroad for the same investment;

- If these individuals are excluded from the U.S. victim list,

- **…then the evidentiary foundation of the U.S. proceedings collapses.**

This constitutes systemic misclassification of victims, because:

- Similarly situated individuals are classified inconsistently;

- Core facts about who qualifies as a "victim" remain unresolved;

- The evidentiary record becomes internally contradictory.

As a result, a structural procedural breakdown occurs: U.S. court decisions rely on factual premises that cannot simultaneously be true.

## 7.3 Consequences for Court Actions

**Misidentification and systemic misclassification of victim/perpetrator status produce:**

- Improper inclusion or exclusion of individuals in criminal and forfeiture proceedings;

- Reliance on contaminated, incomplete, or contradictory evidence;

- Potential violations of Due Process, Equal Protection, and statutory CVRA protections;

- A breakdown of procedural legitimacy, because the court cannot lawfully proceed while the fundamental identity and factual framework of the case remain contradictory.

In short:

**When the same investment produces "perpetrators" in China, "victims" in the U.S., and key individuals like Wu ▨▨▨▨ are excluded, the entire victim framework becomes internally inconsistent, requiring a structural corrective response to restore fairness and lawful participation.**

**When two sovereigns classify the same individual as both a *national-security perpetrator* and a *fraud victim*, the U.S. court cannot rely on unverified victim lists without first resolving the conflict. Proceeding without resolving this contradiction renders the forfeiture framework legally unreliable and constitutionally infirm.**

**In addition, the victim's misclassification in this case is exacerbated by foreign influence**. Evidence—including the persecution of investors like Wu ▨▨▨▨ and myself by the Chinese Communist Party—demonstrates that external actors have directly or indirectly shaped the narrative of who qualifies as a "victim." When the U.S. court relies on these classifications without independent verification, the proceedings risk being contaminated by foreign political interests, further undermining due process, fairness, and the integrity of the forfeiture framework.

## 8. U.S. Court Cannot Adopt a Narrative That Aligns With a Persecuting Regime

A U.S. criminal proceeding cannot constitutionally adopt a victim-identification narrative that aligns, even inadvertently, with the interests of the very foreign regime persecuting the victim. Doing so undermines the neutrality of the judicial process and violates fundamental due process principles.

## 9. Ignoring Judicial Misconduct and Proceeding Despite Known Contamination

In **Dkt. 733,** Ryan Bai identified potential misconduct by the **Prosecution** and **Trustee Luc**, amounting to **fraud upon the Court**. However, the court:

- failed to act on the allegations for several months, **ignoring the potential harm to legitimate victims** and allowing the continuation of **forfeiture-related proceedings** based on a record known to be compromised.

- After the submission of Dkt. 733, the Court **proceeded to advance the forfeiture process,** even though the issues raised directly undermine the reliability and legality of the underlying victim-identification and asset-forfeiture determinations.

**Legal Implications:**

- **Due Process Violation:** Continuing proceedings on a record known to be contaminated violates the Petitioner's Fifth Amendment rights. The situated victims are being **denied a fair**

opportunity to be heard.

- **CVRA Violation:** The Crime Victims' Rights Act (18 U.S.C. § 3771) guarantees that victims have the right to participate in matters affecting assets and proceedings. Ignoring the alert in Dkt. 733 **prevents legitimate victims from exercising this right**.

- **Structural Procedural Breakdown:** By proceeding despite notice of record contamination, the Court **propagates the misclassification of victims and creditors**, creating an **internally inconsistent evidentiary framework** that undermines the integrity of the entire forfeiture process.

- **Abuse of Discretion / Failure to Correct:** The Court's inaction in response to clear warnings of procedural contamination constitutes **judicial inaction in the face of structural error**, warranting corrective intervention.

## 10. Potential Procedural and Legal Violations Related to Dkt. 765

**Suppression of a victim's lawful motions requesting judicial recusal**

- The district court failed to consider or act upon Petitioner's motions seeking judicial recusal, directly suppressing the exercise of rights guaranteed under the **Crime Victims' Rights Act (18 U.S.C. § 3771)** and depriving Petitioner of a fair opportunity to be heard.

- This suppression undermines **Due Process** and may violate **Equal Protection**, as other similarly situated parties may have been permitted to pursue procedural relief.

## Contamination of the appellate record

- By filing Dkt. 765 while Petitioner's recusal-related motions were still pending, the district court potentially **prejudiced the Second Circuit appellate review** by introducing content that could influence appellate consideration before the Court had issued a ruling on the underlying motions.

- This act creates a **structural procedural conflict** because the appellate record now includes materials reflecting the district court's suppression of legitimate victim motions, thereby **tainting the evidentiary and procedural record** upon which appellate review will rely.

## Structural Procedural Breakdown

- The combination of suppressing the motions and then publicly exposing them demonstrates a **structural procedural failure**:

- Victim's right to participate and be heard was denied (CVRA §3771(a)(4), (a)(8));

- Core procedural mechanisms meant to protect victims were undermined;

- The integrity of the record was compromised because the court ignored a pending motion regarding its own impartiality (recusal).

**This is not merely a "technical error"; it strikes at the foundation of due process, because the procedural system failed to allow the victim to assert their rights while simultaneously exposing them to potential retaliation.**

## III — RELIEF REQUESTED

Based on the foregoing facts, including my persecution by the Chinese Communist Party (CCP), the misclassification and silencing of legitimate victims, and the resulting structural procedural breakdowns in this case, I respectfully request that this Court exercise its **inherent authority, sua sponte**, to grant the following relief:

1. **Exclusion of My Investments from Forfeiture Proceedings as a Gateway to Correcting the Record**

   I was forced to flee China due to targeted political persecution, losing all financial resources and means of livelihood. My G-related investments, totaling approximately **[XXX] USD**, were previously documented but never properly entered into the record. I respectfully request that the Court **exclude these investments from any ongoing or future forfeiture proceedings**, not merely to protect my property, but as the necessary first step to **correct the contaminated evidentiary and victim-identification record** that underpins the criminal

forfeiture and related proceedings.

2. **Structural Corrective Action and Sua Sponte Authority**

The structural procedural errors identified—including misidentification of victims, contradictory classification of victim/perpetrator status, suppression of motions, and reliance on contaminated evidence—have **corrupted the foundation of all related orders and determinations**.

I therefore request that the Court exercise its **inherent authority** to:

- o rectify the misclassification and exclusion of legitimate victims, including myself;

- o correct the evidentiary record and any tainted determinations; and

- o restore procedural and constitutional integrity in this case.

3. **Vacatur or Reconsideration of All Orders Contaminated by Procedural Breakdown**

As a consequence of the structural collapse in this case, I request that the Court **sua sponte review, vacate, or reconsider all orders and judgments** that relied on the contaminated record, including, but not limited to:

- o criminal conviction(s) related to G-related investments;

- o forfeiture or asset seizure orders; and

- o any bail or pretrial release determinations and conviction affected by misidentified victims, prosecutorial misconduct or suppressed motions.

4. **Protection of the Appellate Record**

The release of **Dkt. 765** revealed that Ryan Bai previously suppressed victim motions were excluded, raising a risk of **contaminating the appellate record**. I request that the Court **take sua sponte action** to correct and clarify the record before any appellate consideration.

5. **Any Further Relief the Court Deems Just and Proper**

I respectfully request that the Court grant any additional relief necessary to **restore fairness, protect my rights as a victim, and ensure the lawfulness and integrity of all proceedings in this matter**.

6. Upload a redacted version of this motion as Victim's motion redacted.pdf on the public docket, with personal identifying information (such as addresses, phone numbers, and account numbers) removed, while maintaining the unredacted version under seal on the Clerk's docket for the Court's full consideration.

Respectfully submitted



November 23, 2025

# Exhibit H

### A stenographic transcript of Jan 20, 2026 status conference

                    v.                          23 Cr. 118 (AT)

MILES GUO,

              Defendant.              Conference

--------------------------------x

                                      New York, N.Y.
                                      January 20, 2026
                                      10:05 a.m.


Before:

                      HON. ANALISA TORRES,

                                      District Judge


                          APPEARANCES


JAY CLAYTON
     United States Attorney for the
     Southern District of New York
RYAN B. FINKEL
JULIANA N. MURRAY
MICAH F. FERGENSON
JUSTIN HORTON
     Assistant United States Attorneys

MELINDA M. SARAFA
JOHN F. KALEY
JOSHUA L. DRATEL
     Attorneys for Defendant


Also Present:  Tuo Huang, Interpreter (Mandarin)

THE COURT:  Good morning.

we're here in the matter of *United States v. Miles Guo.*

Would you make your appearances, please.

MR. FINKEL:  Good morning, your Honor.

Ryan Finkel, Juliana Murray, Micah Fergenson, and Justin Horton, for the government.

THE COURT:  Would the interpreter please make their appearance.

THE INTERPRETER:  Good morning, your Honor.

Federal court professionally qualified interpreter Tuo Huang.

THE COURT:  And now the defense.

MS. SARAFA:  Good morning, your Honor.

Melinda Sarafa, John Kaley, and Joshua Dratel, for Miles Guo.

THE COURT:  Please be seated.

Many individuals who believe they are victims of Mr. Guo's fraudulent scheme have asked for the return of their money.  Some have contacted the prosecution and some have contacted the Court.  Apparently, there is confusion about how the process of reimbursement works.

I'm going to address two types of claims concerning the forfeited assets linked to Mr. Guo's illegal conduct in this case.

First, under 21, United States Code, Section 853(i)(1), and 28 Code of Federal Regulations 9, a victim may submit to the prosecution what is known as a petition for remission.  A petition for remission asks the government to return assets to the victims of a defendant's crimes.  The government will evaluate these petitions following the procedures described in Title 28 of the Code of Federal Regulations, Part 9.

In a letter to the Court dated January 9th of this year, the government states that, in evaluating such petitions, it will consider whether a victim alleges a monetary loss that was directly caused by the criminal conduct, whether the allegations are supported by documentary evidence and whether the victim did not knowingly contribute to, participate in, benefit from, or act in a willfully blind manner to the events.

There is a second type of claim.  Under Title 21, United States Code 853(n), an individual can seek return of their assets if they show a stronger legal claim to the forfeited asset than the government does.  One way a claimant can do that is by showing that they have superior title to an asset as of the date the asset was forfeited to the government.  In other words, the claimant must show that he or she had a stronger legal right to the asset than the defendant at the time of the criminal offense.

For example, if a defendant were to borrow someone's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

car, and then use it to commit a crime, the car owner may be able to successfully assert that they have a superior legal interest in the car under Section 853(n)(6)(A).

Another way a claimant can meet this standard is by showing that they were a *bona fide* purchaser for value of an interest in the forfeited asset. In other words, that he or she bought the forfeited asset from the defendant in good faith after his criminal acts, but with no knowledge of his criminal activity.

A person who believes that they have such a claim can seek to recover their money by filing a Section 853(n) claim with the Court. However, I want to emphasize that victims of Mr. Guo's fraudulent scheme may be viewed under the law as general creditors and may not, therefore, be able to recover their money under Section 853(n). In other words, Section 853(n) claims are not interchangeable with petitions for remission.

Submissions received by the Court that do not reference Section 853(n), but which the Court has instead determined to be petitions for remission, have been referred to the government for its consideration. Those submissions have not been placed on the docket and will not be placed on the docket.

The Court is in the process of considering and docketing a large volume of submissions which name Section

853(n). Individuals who are represented by attorneys have been added to the docket as interested parties so that they may file their submissions directly on the docket. Individuals who are not represented by attorneys have not been added as interested parties on the docket. But the Court has received and is processing their petitions and will docket them as needed in due course. The Court may direct that the petitions be redacted or filed under seal to protect the claimants' personally identifiable or other sensitive information.

In addition, the Court has received miscellaneous petitions making various complaints. Those submissions are being evaluated on an individual basis.

The Court has called this status conference to discuss these matters with the parties in order to expedite the Court's consideration of the large volume of Section 853(n) petitions which number over 100. The Court has also asked for the parties' views on the appointment of a special master under Federal Rule of Civil Procedure 53, which permits a master to perform duties consented to by the parties or to address post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge in the district.

I've reviewed the government's letter dated January 9th and the defendant's letter dated January 16th, both of this year. The parties recommend that the Court appoint a special

master to assist in evaluating Section 853(n) petitions, and in administering ancillary proceedings in this case as needed.

Compensation for a special master is limited by Federal Rule of Civil Procedure 53(g)(2), which states that: Compensation must be paid either by a party or parties or from a fund or subject matter of the action within the Court's control.

How does the government propose that the special master be compensated?

MR. FINKEL: Your Honor, the government doesn't have a specific proposal with respect to that issue, but can certainly consider it and file a letter with the Court.

Obviously the government is mindful of the assets that it has acquired through forfeiture and wants to retain as much as possible for victims.

THE COURT: Is the government aware of other courts nationally where a special master has been appointed to handle Section 853(n) petitions?

MR. FINKEL: Standing here today, your Honor, I am not. That's not to say that it hasn't happened. I don't know if it has.

THE COURT: I'd like you to look into that and report back to me.

MR. FINKEL: We will do that.

THE COURT: Is there anything from the defense?

MS. SARAFA:  Your Honor, I think our view is very similar to that articulated by the government.  We would like to see as much of the seized assets preserved and returned to the investors and customers of the entities involved in this case.  And I'm not aware of any authority, standing here today, regarding sources of funds for compensation of a special master.

THE COURT:  Federal Rule of Civil Procedure 53(b)(1) requires that prior to appointing a special master, the Court must give the parties notice and an opportunity to be heard; and that any party may suggest candidates for appointment.

Therefore, by February 10th of this year, the parties shall confer and jointly file a letter recommending candidates to serve as special master under Rule 53(b)(1), and a recommendation as to the terms of compensation.  Of course, the letter should also discuss the specific scope of the special master's appointment.

Mr. Guo, you've been understanding what the interpreter has said; correct?

THE DEFENDANT:  (In English) Yes, your Honor.

THE COURT:  All righty.  Is there anything further?

MR. FINKEL:  Not from the government.

THE COURT:  All righty.  The matter is adjourned.

MS. SARAFA:  Thank you, your Honor.

*   *   *

# Public Documents

**In re: Tony, Petitioner**

███████████████████████████

Clerk of Court

United States Court of Appeals for the Second Circuit

40 Foley Square

New York, NY 10007

Related District Court Case:

*United States v. Kwok, et al.,*

S.D.N.Y. Case No. 1:23-CR-118-1 (AT)

Dear Clerk of Court,

Enclosed please find the following documents, submitted in both **one redacted version for public docketing** and **one unredacted version for filing under seal**, as **revised pursuant to the Court's December 16, 2025, and January 9, 2025 return notice and the requested modifications set forth therein**:

1: Cover Letter (Corrected)
2: Petition for Writ of Mandamus (Updated)
3: Motion to Request Redaction of Personal Information (Updated)
4: Certificate of Service (Corrected)
5: Exhibit D: *Victim's Motion to Remedy Structural Procedural Breakdown and Request Sua Sponte Corrective Action Under Court's Inherent Authority*

Also enclosed are the following documents submitted in **ONLY one unredacted version only, for filing under seal**:

**Exhibit A:** Petition for Ancillary Hearing Pursuant to 21 U.S.C. § 853(n);
**Exhibit B:** Motion to Enforce the Crime Victims' Rights Act (18 U.S.C. § 3771);
**Exhibit C:** Crime Victim Motion and Request for Hearing (Submitted Under Seal Pursuant to the CVRA and the Court's Authority);
**Exhibit E:** Evidence of Submissions for Motions A–D, including both paper and electronic/email records;
**Exhibit F:** Key Court Documents Regarding the Crime of Funding Activities Endangering National Security in China;
**Exhibit G:** Tony's immigration and identity-related documents.

**Lastly, Exhibit H:** A stenographic transcript of Jan 20, 2026 status conference, **only in Public version.**

**Identification and Filing Clarification**

For **identification purposes only**, the petitioner proceeds **pro se** under the name **"Tony."**

The petitioner's legal name is ██████████. This statement is provided solely to clarify the identity of the filer and **does not confer any representative, agency, or legal capacity on any other individual.**

In addition, enclosed is a **$600 filing fee check** provided by ██████████, who is **not counsel of record.** ██████████ assisted **solely** with translation, mailing, and payment of the filing fee, and **provided no legal representation** in connection with this filing.

Respectfully submitted,

Tony (real name: ██████████)

Petitioner, *pro se*

Signature: _____

January 28, 2026

# UNITED STATES POSTAL SERVICE®

# PRIORITY® MAIL

PRIOR POSTAGE

**UNITED STATES POSTAL SERVICE.**    Retail

expected delivery da

mestic shipments

PS Tracking® serv

nited international

en used internatio

nce does not cover ce

ons see the Domestic

nternational Mail Man

ns of coverage.

AILING E

DOMESTIC

hedule free Package P
scan the QR code.

USPS.COM/PICKUP

P

## US POSTAGE PAID

**$19.95**

Origin: 95112
01/28/26
0570210003-17

nal destinations.

### PRIORITY MAIL®

1 Lb 10.60 Oz

**RDC 03**

EXPECTED DELIVERY DAY:    01/31/26

C099

SHIP TO:

40 FOLEY SQ
NEW YORK NY 10007-1502

**USPS TRACKING® #**

9505 5104 0042 6028 4090 91

FROM:

Tony Clo

TO:

Clerk of court
United States Court of
for the second circu

40 Foley Square

New York, NY 10007