redacted

Date: June 9th, 2026

From: Anna [redacted]
Address: [redacted] and or [redacted]
Telephone: [redacted] or [redacted]
Email: [redacted] and or [redacted]

To: Clerk of Court
United States Court of Appeals
2ND Circuit
40 Foley Square New York, NY 10007

Court of Appeals
For The Second Circuit
RECEIVED
JUN 1 2 2026
BY: --------

**Re: Petition for Writ of Mandamus**
Petitioner: Anna [redacted]
Case: United States v. Kwok, et al.1:23-CR-00118(AT)

Dear Clerk of the 2nd Circuit Court,
Enclosed please find a Petition for Writ of Mandamus, filed by Anna [redacted] a Pro Se Petitioner in United States v. Kwok, et al 1:23-CR-00118(AT), under 21 U.S.C. § 853(n), Fed. R. Crim. P. 32.2(c), Fed. R. Crim. P. 49.1, and 28 U.S.C. § 1651(a).

Enclosed are:
AFFIDAVIT FOR PERMISSION IN FORMA PAUPERIS
Petition for Writ of Mandamus
Exhibit A – "Motion to Subpoena Luc Despins and Key Himalaya Alliance & Farm Personnel; Evidentiary Hearing, & Asserting 853(n) Rights, Privacy and Declaration", filed with SDNY District Court on 5/22/2026
Exhibit B – Proofs that the 5/22/26 Motion was sent to the SDNY District Court
Exhibit C – Proof of email request to the District Court for Docketing, dated 5/29/2026
Exhibit D - Proof of email request to the District Court for Docketing, dated 6/2/2026
Exhibit E - Proof of email request "Motion to Compel Docketing" to the District Court, dated 6/5/2026

Respectfully submitted,

Anna ([redacted]

[redacted]

Court of Appeals
For The Second Circuit
RECEIVED
JUN 12 2026
BY: ________

United States Court of Appeals
for the Second Circuit

In Re: Anna [redacted], 3rd Party in United States v. Kwok, et al. 1:23-cr-00118-1(AT), Petitioner.

**PETITION FOR A WRIT OF MANDAMUS RELATING TO THE SDNY DISTRICT COURT**

**STATEMENT OF JURISDICTION**

This Court has authority to issue a writ of mandamus pursuant to the All-Writs Act, 28 U.S.C. § 1651(a), because the underlying action is "within its appellate jurisdiction".

**STANDARD FOR MANDAMUS**

To qualify for mandamus relief, a petitioner must demonstrate:

1. A "clear and indisputable" right to the issuance of the writ;
2. That the administrative or judicial officer has a non-discretionary, ministerial duty to act; and
3. That the petitioner has no other adequate alternative means to attain the desired relief.

*See In re Von Bulow*, 828 F.2d 94, 98 (2d Cir. 1987); *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380–81 (2004).

**STATEMENT OF RELIEF SOUGHT**

Petitioner is a third party who had filed a "Motion to Subpoena Luc Despins and Key Himalaya Alliance & Farm Personnel; Evidentiary Hearing, & Asserting 853(n) Rights, Privacy and Declaration" with the District Court, but the District Court suppresses Petitioner's legitimate claims and refuses to docket it after Petitioner's multiple requests. Petitioner has nowhere to go but respectfully ask this Court issues a writ directing the District Court to enter Petitioner's Petition onto the docket and address the underlying statutory issues on the merits.

**STATEMENT OF THE FACTS AND ISSUES**

Facts:

1) Petitioner is a bona fide, innocent investor who has lawfully invested [redacted] life savings in the G-series. These funds are currently seized by, or subject to the constructive custody of, the DOJ, the SEC, Chapter 11 Trustee Luc Despins of Paul Hastings LLP, or key leaders within the Himalaya Alliance and farms; critically, none of these assets were retained by, or remain in the custody of, Defendant Kwok. Accordingly, Petitioner is legally entitled to initiate ancillary proceedings over the subject property under 21 U.S.C. § 853(n) to vindicate her cognizable legal interest.

2) On May 22nd, 2026, Petitioner filed a Motion with the District Court by US mail and email. Afterward, despite Petitioner's repeated requests to the District Court for docketing, the Motion was suppressed and excluded from the public record without any stated legal justification, as demonstrated by the correspondence attached hereto in Exhibit.

Issues:

1) The prosecution's designated victims explicitly testified on the record that they suffered no cognizable harm or financial injury attributable to the Defendant - The prosecution's **victim classification framework** (SDNY Doc. 511) reflects a **systemic collapse of basic forfeiture principles**. The prosecution improperly constructs a closed legal universe where an investor is designated as either a victim or a co-conspirator, leaving no procedural mechanism for an 853(n) claimant. Petitioner categorically rejects this flawed taxonomy; the Government cannot bypass the mandatory ancillary proceeding required by 21 U.S.C. § 853(n) by imposing an extra-statutory label on innocent third parties.

   The Government's victim narrative is fundamentally undermined by the affected parties themselves. Pursuant to Doc. 834, the ostensible 'victims', 1254 of them, have formally declared that their financial injuries do not stem from the actions of the Defendant, but are instead the direct result of the Government's disruptive civil takings and illegal possessory seizures.

2) The prosecution's alleged "fraud proceeds" are actually the legitimate funds of the G-series investors - The prosecution's unilateral characterization of the G-Series investments as 'fraud proceeds' (Doc 716-4) represents an **impermissible expansion of federal forfeiture authority.** Under established Second Circuit precedent, the Government cannot simply declare an entire pool of legitimate third-party capital to be the fruit of a criminal enterprise. Petitioner maintains that this classification is legally untenable and structurally invalid under 21 U.S.C. § 853(n).

3) The Government's asset seizure rests entirely upon a legally **unproven and uncontested 'alter ego' theory that bypassed the mandatory requirements of a formal evidentiary adjudication** - The Chapter 11 Bankruptcy Trustee, Luc Despins, summarily applied an 'alter ego' designation to the entire complex of G-Series investment vehicles without ever satisfying the strict evidentiary burdens or securing the formal adjudication required by law. Compounding this error, the prosecution adopted the Trustee Luc's unadjudicated alter ego theory within the context of this criminal proceeding. This unauthorized coordination effectively allowed the Trustee and the Government to rob Petitioner's $[redacted] legitimate life savings, achieving a permanent **deprivation** of third-party property rights completely unmoored from standard **procedural due process**. Because this asset seizure rests entirely upon an un-litigated alter ego assumption rather than concrete, individualized tracing, the retention of these funds violates fundamental tenets of federal forfeiture and bankruptcy law.

4) The prosecution systematically insulated the Defendant's alleged co-conspirators from liability, offering immunity in exchange for testimony targeting the Defendant - The anomalous procedural history of this case underscores a manifest injustice that undermines the **integrity of the judicial process**. The prosecutors obtained a conviction by immunizing the very individuals who currently possess in excess of $100 million of un-seized investor capital (Doc 834), while simultaneously seeking to block innocent third-party investors from asserting ancillary claims under 21 U.S.C. § 853(n). This unusual enforcement posture, shielding possessory, non-indicted actors while systematically denying a forum to innocent claimants calls into question the structural legitimacy of the prosecution's framework and highlights a systemic failure to safeguard the true victims of the underlying enterprise.

5) **An unadjudicated conflict of law** wherein the subject asset pool is burdened by two mutually exclusive designations (Case No. 26-361) – The District Court has left a critical threshold issue entirely unaddressed, permitting a 'dual-definition' paradox to persist over the same asset pool. While the Communist PRC government categorizes the G-Series capital as an illegal political fund targeting state security, the prosecution had summarily branded it as 'fraud proceeds.' By failing to hold an ancillary proceeding to adjudicate this geopolitical and legal conflict, the District Court has abdicated its duty to determine the true legal status of Petitioner's $[redacted]n life savings.

6) Witness duress & evidence tainting - An ancillary proceeding should be conducted to address a major structural defect in the prosecution's case: the systemic tainting of witness evidence via foreign state interference. The unauthorized transmission of investor records to the CCP by Phoenix Farm CEO Wei Lihong initiated a wave of political persecution against domestic investors. Under established due process principles, a conviction or forfeiture cannot rest upon the testimony of individuals inside mainland China who may have been coerced under threat of state violence to falsely characterize their G-Series investments as fraud. Petitioner is entitled to an evidentiary hearing to probe this pervasive witness duress and to ascertain the true regulatory allegiance of the immunized farm leaderships.

**REASON WHY THE WRIT SHOULD ISSUE**

The All-Writs Act empowers this Court to issue a writ of mandamus directing the District Court to docket all relevant documents to all parties, including 3rd party Pro Se petitioners under 21 U.S.C. § 853(n). This Court should issue a writ of mandamus because Petitioner has a clear and indisputable right to the writ. No other alternative remedies are available to Petitioner. Mandamus is the only avenue by which Petitioners can obtain relief.

**CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that this Court issue a Writ of Mandamus directing the District Court to:

1. Immediately file and enter Petitioner's Motion onto the official docket;
2. Authorize and issue subpoenas for the appearance and testimony of relevant, vital personnel; and
3. Convene a formal ancillary evidentiary hearing as explicitly mandated by 21 U.S.C. § 853(n) to adjudicate Petitioner's cognizable legal interest in the $[redacted] of seized G-Series investment capital.

Petitioner further requests that this Court review the extraordinary procedural irregularities, exercise its supervisory authority to correct a clear abuse of discretion by the District Court, and safeguard the systemic integrity of the federal judicial process by restoring Petitioner's fundamental right to procedural due process.

**PRIVACY**

Petitioner respectfully requests to file this petition in redacted public form with personal & financial data redacted. A redacted set of the documents is provided.

Date: June 9th, 2026

Exhibit A

Case 1:23-cr-00118-AT

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

HO WAN KWOK (A/K/A MILES GUO, MILES KWOK, WENGUI GUO AND BROTHER SEVEN), Yvette Wang,

Defendants.

Motion to Subpoena Luc Despins and Key Himalaya Alliance & Farm Personnel; Evidentiary Hearing, & Asserting 853(n) Rights, Privacy and Declaration, By [redacted] (Anna).

**Facts**

My name is Anna, a G-series investor, appearing pro se to tell the Court my personal experience and facts surrounding my investments relevant to this case.

1) My background - I am a retired [redacted] a mother, and a Christian who lives in communist China all my life. I have watched the CCP falsify the Bible, ban its sale, and demand that the Chinese people worship the Communist Party. They tell us that while our parents are dear, the CCP must be 'dearest of all.' Having lived through this spiritual and intellectual suppression, I am committed to speaking the truth about the regime's attempt to replace God with the Communist Party.

2) The taking down the CCP movement - My involvement in the taking down the CCP movement is rooted in my lifelong experience as a victim of state-sponsored religious and political persecution. Since 2017, I have been a supporter of Mr. Guo, viewing his movement as a necessary vehicle for exposing the CCP's human rights abuses. On June 4, 2020, I participated in the establishment of the New Federal State of China, an

organization dedicated to the peaceful transition of China toward a democratic, CCP-free future.

I categorically reject the DOJ prosecutors' characterization of this organization as a 'cult.' Such labels are not only inflammatory but are factually untethered from the reality of the CCP's documented atrocities, such as forced live organ harvesting on the Chinese children. I assert my First Amendment rights to freedom of association and religious expression, maintaining that my support for Mr. Guo is a matter of profound personal and spiritual conviction. To dismiss thousands of global investors and activists as 'cult members', the Government is to ignore the legitimate grievances of a population seeking liberation from a totalitarian regime.

3) My investment in G-series – The investments I made were part of a structured, global effort to support a free China. Mr. Guo designed and promoted an ecosystem of independent entities: GTV(VOG), Himalya Alliance, Himalaya Farms, G-Club, G-Fashion, Himalaya Exchange, and Himalaya Reserve. Each entity was legally established under its own jurisdiction and managed by its own operational team. My commitment to support free China this cause was tangible: over a nearly three-year period from May 2020 to February 2023, I executed 15 separate wire transfers totaling $[redacted] from my hard-earned savings. Using legitimate banking channels and necessary intermediaries, I directed these funds to entities such as VOG, Korean En-Dian Farm, New Zealand Farm, G-Club, and Himalaya Exchange. I also donated to the Rule of Law Foundation. Those capitals were investments in a movement and in corporate structures that I believed in; it was never an 'unlawful proceed' for the Defendant to exploit or comingled personal funds of the Defendant.

**Challenge to the Government's Unlawful Actions Against My G-series Investment**

1) Communist China's transnational Financial Censorship on the G-series investors - The pain, anxiety, and suffering I have endured because of my choice to invest in the G-Series is a direct result of the CCP's totalitarian grip on global finance. The Chinese Government criminalized any investment into the G-Series. I knew with absolute certainty that if I disclosed the true purpose of my wire transfers to the banks, the transactions would be terminated immediately and I would

face severe state repercussions. This hostile environment forced me to rely on alternative pathways to secure my investments.

In one heartbreaking instance, in 2021, I asked a [redacted] friend surnamed [redacted] to use his business account to route approximately [redacted] USD for me through his [redacted] to [redacted]. Because of this single act of assistance, the bank froze his entire corporate account for the reasons of "money laundering" and "threatening national security". He fought this injustice fiercely, pursuing both a lawsuit and an appeal, but he lost both. The Chinese Government fined him and threatened to jail him too. Witnessing the financial ruin of a friend who simply tried to help me escape financial censorship has caused me immense psychological trauma. My use of intermediaries was never an attempt to mislead any financial institutions; it was the only viable survival mechanism available to an oppressed citizen trying to move my capital to freedom.

In the context of Second Circuit Case No. 26-361, Tony's grievance reveals a profound flaw in the DOJ prosecutors' narrative. The District Court has yet to answer a vital question: How can the identical pool of money be treated by the PRC authorities as an illegal, 'anti-Chinese government' fund that threatens national security, while the U.S. Government insists it is nothing more than 'fraud proceeds'?
This dual classification is a logical impossibility. If the money was deployed by independent citizens as a financial shield against an oppressive regime resulting in domestic freeze orders and police interrogations in China, it represents legitimate, hard-earned capital risked for freedom. The Government cannot adopt the asset-pool dimensions manufactured by the CCP's financial blockade without implicitly validating that regime's suppression of its own citizens.

By failing to address this contradiction, the record remains silent on a critical distinction. The funds injected into the G-Series by independent investors were sent with clear, anti-totalitarian political intent. To treat these politically motivated capital contributions as a standard, unified fraud scheme is to ignore the documented reality that

these assets are viewed by a foreign adversary as weaponized dissent, not criminal booty.

2) The DOJ's reliance on the affidavit of FBI Special Agent Anthony Alecci (SDNY Doc. 716-4) is legally insufficient to justify the sweeping forfeiture of G-Series assets. Agent Alecci cites 18 U.S.C. § 981 and § 1956 to characterize these funds as 'proceeds' of wire and bank fraud. However, this characterization fails as a matter of law.
My capital contributions were made with bona fide intent and originated from legitimate, post-tax earnings. Under the Second Circuit's 'merger doctrine,' the Government cannot classify the mere movement of funds between accounts as 'money laundering' unless it first proves those funds were already the proceeds of a completed crime. Here, the Government has failed to establish a nexus between the alleged fraud and my specific assets. Furthermore, the Government's theory of fraud is contradicted by the 'victims' themselves; as noted in Document 834, the vast majority of investors expressly reject the Government's claim that they were defrauded, asserting instead their status as lawful property owners under § 853(n).

Agent Alecci's investigation (SDNY Doc. 716-4) relies on a logical fallacy: that the frequency of transactions automatically equates to the concealment of proceeds under 18 U.S.C. § 1956(a)(1)(B)(i). In reality, my investments were never 'fraud proceeds' to begin with. They were legitimate investments intended for the G-Series ecosystem. Forfeiture requires the Government to prove a criminal 'taint' by a preponderance of the evidence. Forfeit assets before adjudication before thousands of investors who overwhelmingly disclaim 'victim' status (SDNY Doc 843), the Government has committed a civil taking without the required proof of a crime. Moving money between legally formed entities is a standard business practice, not a specified unlawful activity under 18 U.S.C. §§ 1343 or 1344.

**The Government's Victim Identification and Classification Crisis**

From the standpoint of a G-series investor who rejects victim status, who refuses to proceed under the CVRA, and instead seeks recognition of independent third-party property interests under 21 U.S.C. § 853(n), the

Government's current victim framework is not merely inconsistent; it is structurally unsound and procedurally dangerous.

**1) Selective Gatekeeping of Victim Status**

In SDNY Doc 511, the Government adopted an extraordinarily broad definition of the purported victim population. It stated that "one group recognizes the fraud for what it is and believes the defendants deliberately deceived them," while "the other group does not believe they were defrauded (either because they are complicit in the conspiracy, or they have been misled by it). Many now believe the government wrongfully seized their money." Under that formulation, the Government's victim theory is broad enough to sweep in not only self-identified victims, but also investors who reject the label of victim and believe the Government has wrongfully taken their funds. Yet when those same or similarly situated investors appear in court in a procedurally adverse posture, the Government's framework shifts. After the district court adjourned sentencing from April 27, 2026 to June 29, 2026, the Government filed oppositions to 4 of the Emergency Stay Applications at the Second Circuit: Ryan Bai (No. 25-2726), Tony (No. 26-361), Chunk Chyi (No. 26-77), and Carolyn Sun (No. 26-441). As reflected in Chunk Chyi's response filing in Second Circuit No. 26-77 (Dkt. 18), even after he affirmatively invoked the CVRA and identified concrete financial loss, the Government nevertheless sought to characterize him as a mere "supporter," rather than as a victim entitled to meaningful consideration. Chunk correctly identified the resulting distortion: victim recognition appears to function less as an equally available statutory protection and more as an advantage effectively reserved to those with representation, procedural leverage, or institutional acceptance. This disparity is particularly stark, as noted on Pages 3-4 of the filing, where Chunk observed that certain represented HEX claimants reportedly deny being "victims," but the Government treats them as "victims" in sentencing the Defendant. By contrast, Pro Se petitioners who affirmatively assert loss and invoke the CVRA are met with arguments by the Government that their victim status is insufficient or that their losses should not be counted. The inconsistency becomes even more pronounced in light of the record cited on Page 8. There, Chunk references the defense counsel's submission in SDNY Document 843, reporting that counsel had received 1,254 "supporter statements." Under the Government's own formulation in Document 511, such individuals

would appear to fall within the category of persons who do not believe they were defrauded yet whose funds are nevertheless counted within the broader victim framework. Yet, rather than being treated as victims by the Government, these individuals were effectively represented through defense counsel.

Taken together, the records support a troubling inference: in practice, the Government's recognition of "victim" status appears to operate in a manner that privileges sophisticated representation. Those with counsel, institutional alignment, or procedural leverage may have their positions incorporated into the Government's sentencing narrative, but for the Pro Se individuals, the Government labels them whatever the Government sees fit, sometimes totally against those Pro Se individuals' will. This is not a neutral application of a statutory framework. It is a structurally selective system that conditions access to victim status, and the rights flowing from it, on litigation posture rather than legal entitlement.

**2) Selective Gatekeeping of Exit from Victim Status**

The contradiction becomes even more revealing in the Government's opposition to the Emergency Stay Applications filed by the 4 Pro Se petitioners in the Second Circuit. There, despite the breadth of its own Document 511 definition, the Government effectively treated those 4 petitioners as supporters of Mr. Guo rather than as persons falling within the broader victim framework it had previously asserted. I myself reject victim status, refuse to proceed under the CVRA, and identify instead as a G-series investor and supporter of Mr. Guo. From that standpoint, the Government's treatment of those 4 Pro Se petitioners as "supporters" is a deeply troubling. It suggests that the only practical way to escape the Government's default victim classification and to assert an independent position is to confront the Government directly in court, and to do so with unusual procedural sophistication and persistence.

That is a profound defect in the Government's framework. If only a tiny number of exceptionally capable litigants, such as Ryan, Chunk, Tony, Carolyn and similarly situated petitioners can force the Government to stop treating them as passive "victims" and instead acknowledge them as procedurally independent actors, then the Government's classification

system is not functioning as a neutral legal framework at all. It is functioning as a selective gatekeeping device. In practice, it leaves ordinary G-series investors trapped inside a broad victim label when that label benefits the Government's loss and sentencing narrative, yet denies them any realistic path to independent recognition unless they possess extraordinary litigation ability. That is not a stable victim framework. It is a procedurally distorted structure that risks depriving ordinary investors of due process, meaningful access to § 853(n), and equal treatment under the law.

What the record reflects is not merely inconsistency of the Government's conduct, but the absence of a stable and administrable rule governing victim classification. A framework that expands to include certain individuals as "victims" to support the Government's loss attribution, yet contracts to exclude those same individuals when they attempt to assert independent procedural rights. It proves that the Government operates without a discernible limiting principle. In practice and in reality, it forecloses any predictable or accessible pathway for similarly situated investors to assert their rights under 21 U.S.C. § 853(n), and thereby raises serious concerns not only of fairness, but of the framework's legal viability.

**Constructive Fraud on the Courts: The Manufacture of an Utterly Fictitious "Alter Ego" Pool and the Poisoning of the Trial Record**

The DOJ prosecutors and Chapter 11 Trustee Luc Despins have engaged in a pattern of material omissions that amounts to a constructive fraud on the courts. By systematically withholding the fact that a substantial portion of the seized funds comprised untainted, legitimate capital from independent investors and asserting instead the absolute falsehood that 100% of the corporate assets were "criminal proceeds", the Government and Trustee Luc engineered a procedurally deficient record to serve a predetermined narrative.

This orchestrated omission produced three devastating legal consequences:

**1) The Artificial Manufacturing of the "Alter Ego" Pool**

The Trustee and the Government bypassed mandatory tracing requirements to fabricate a sweeping, all-inclusive "alter ego" theory. By failing to disclose the presence of $[redacted] in bona fide capital from me and

hundreds of millions from similarly situated investors, the Government and Trustee Luc induced the bankruptcy court and the District Court to enter an overly broad forfeiture pool. They effectively transformed distinct corporate entities with separate fiduciary duties into a monolith, seizing innocent third-party property under the guise of recovering criminal proceeds.

**2) Structural Deprivation of Procedural Due Process**

By presenting an artificially clean narrative of total corporate fraud, the Government and Trustee Luc effectively suppressed the statutory rights of third parties under 21 U.S.C. § 853(n) **before the trial even began. They presented the District Court with a curated, unchallenged record, ensuring that any subsequent ancillary proceeding would be treated as an administrative afterthought** rather than a mandatory, adversarial adjudication of superior legal title.

**3) The Contamination and Pollution of the Jury's Fact-Finding Mandate**

This mischaracterization extended directly into the criminal trial, fundamentally infecting the trial record. By introducing high-volume bank accounts as unified "fraud accounts" while deliberately concealing the massive infusions of untainted investor capital, the Government presented a distorted financial landscape. This material distortion polluted the minds of the jury, creating an illusion of total criminality that stripped the Defendant of a fair trial and starved the jury of the context required to accurately evaluate criminal intent.

A court-appointed Trustee and federal prosecutors owe an absolute duty of candor to the judiciary. When they actively ignore the distinct, clean origin of investor funds to artificially inflate a forfeiture pool, they do not merely commit an error; they perpetrate a constructive fraud that undermines the integrity of the entire judicial system. This Court must intervene to halt the finalization of this manufactured record.

**Motion to Subpoena and to Conduct Evidentiary Hearing on Luc Despins of Paul Hastings LLP and Key Himalaya Alliance and Farms Leadership Personnel**

I respectfully move this Court for an Order issuing subpoenas to Luc Despins (Chapter 11 Trustee, Paul Hastings LLP), and key leadership personnel of the Himalaya Alliance and Farms, including Wei Lihong, Zhang Yongbing, Ha-En, Cosmos, Guo Shuai, Xia Qidong, William Je and Wang Xuebing. I further request

an evidentiary hearing to investigate the potential compromise of investor data and the resulting transnational repression faced by the G-series investors.

1) **Wei Lihong** (aka **Sarah Wei, 魏麗紅**), formerly Arizona Phoenix Farm CEO, in charge of the VOG investment.
   Basis for her Subpoena: I assert that Wei Lihong acted as a fiduciary for my investment of $[redacted] USD wired to VOG/GTV in [redacted]. This investment required the disclosure of my highly sensitive personal identifiable information (PII).
   a) Evidence of compromise and transnational repression:
      State interrogation - Following the transfer of funds and PII to Wei Lihong, I was subjected to three separate interrogations by the Ministry of State Security (MSS) of the People's Republic of China (PRC) and local police.
   b) Unauthorized disclosure of my data: During these sessions, PRC officials explicitly stated that my denial of investment was futile because Wei Lihong had provided a list of "anti-government" GTV/VOG investors and my name was on it.
   c) Ongoing Harassment: As a direct result of this betrayal, I remain under state surveillance, facing restricted movement and reporting to local police during travel.

A subpoena is required to determine:

- Whether investors who were betrayed by Wei were systematically coerced by the CCP into falsely reporting to the FBI that they were "defrauded" by the Defendant.
- Whether the written victim statements currently relied upon by the Department of Justice (Doc. 833) to calculate sentencing and forfeiture guidelines were procured under extreme duress by a foreign totalitarian regime seeking to sabotage the G-Series ecosystem

A subpoena compelling the testimony of Wei is critical to safeguarding the integrity of these judicial proceedings. Wei's testimony is strictly necessary to uncover a severe breach of investor data that directly impacts the credibility of the Government's criminal case and the forfeiture pool. Another question is whether Wei is a CCP agent at the beginning but disguised as an anti-CCP fighter? How many of the Himalaya Alliance and Farm key leaders are CCP agents under cover?

A critical issue impacting the integrity of these proceedings is the potential role of covert foreign actors operating under the direction of the People's Republic of China (PRC). An evidentiary hearing is necessary to investigate whether key figures within the G-Series leadership specifically Wei and other prominent leaders within the Himalaya Alliance and Farm acted as unregistered agents of a foreign power, in violation of 18 U.S.C. § 951 and the Foreign Agents Registration Act (FARA), 22 U.S.C. § 611 et seq.

It is a matter of record before U.S. federal courts and intelligence agencies that the Chinese Communist Party routinely utilizes "controlled opposition" and deep-cover operators to infiltrate overseas dissident groups, capture proprietary data, and manipulate domestic legal processes. The sudden, unauthorized data breach of the corporate "investor list" to PRC security organs raises a profound question of law and fact: Did Sarah Wei operate from the inception of these programs as a disguised asset of the PRC state apparatus designed to sabotage the movement from within?

The potential exposure of multiple undercover CCP operatives within the leadership structure of the Himalaya Alliance directly threatens the validity of the underlying criminal and forfeiture record. If key organizational figures were hidden foreign state assets, their cooperation agreements with the Department of Justice, their management of corporate assets, and their interactions with the FBI cannot be deemed reliable.
Their operational objective would be perfectly aligned with the geopolitical goals of the PRC: to engineer a collapse of the G-Series ecosystem, secure the freezing and forfeiture of dissident capital, and manipulate U.S. judicial resources to finalize an international financial blockade against political opponents.

The Court cannot permit a forfeiture pool to be finalized when there remains a substantial, unexamined risk that the corporate leadership who controlled the underlying funds were covertly executing the directives of a hostile foreign government. Discovery and cross-examination are strictly required to unmask the true affiliations of those key actors and protect the integrity of the United States judiciary from foreign state subversion.

2) **Luc Despins of Paul Hastings LLP**, Chapter 11 Trustee for the Estate of Ho Wan Kwok (Mr. Guo)

Basis for Subpoena: As the court-appointed Trustee, Luc Despins has gained control over vast amounts of G-series investors' investment including my $[redacted]dollars wired to G-Club. Trustee Luc has a fiduciary duty to the Court to accurately report the nature of the estate's assets. However, the designation of my G-Club fund as the Defendant's personal property is a material misrepresentation of the corporate reality:

a) Absence of Factual Nexus: I made bona fide capital contribution of [redacted] to G-Club, a legally incorporated entity with its own distinct operational parameters.

b) The "Alter Ego" Misdirection: Trustee Luc maintained that G-Club was merely an "alter ego" of the Defendant to justify his swallowing third-party capital into the bankruptcy pool. This sweeping conclusion was presented to the bankruptcy court and to the criminal court without an individualized tracing analysis of my legitimate funds.

c) Constructive Fraud on the Court: By failing to disclose to the Court that a substantial portion of the seized funds consisted of untainted, legitimate capital from independent investors and by claiming instead that 100% of the assets were "criminal proceeds", Trustee Luc and the DOJ prosecutors have engineered a procedurally deficient record, and manufactured Mr. Guo's alter ego asset pool for forfeiture, and polluted the mind of juries in the criminal case.

Trustee Luc has cost the estate millions of dollars in administrative fees, yet he has failed to provide a transparent, line-item accounting that distinguishes between the Defendant's personal assets and my investment. Proceeding to a final order without allowing me to cross-examine Trustee Luc regarding the tracking of my $[redacted]investment violates basic tenets of procedural due process.

3) **Zhang Yongbing (張勇兵)**, an immigration attorney of Illinoi, who was retained to represent my interest regarding the return of my $[redacted] VOG investment. He was designated by the Government as the Defendant's "co-conspirator" (Document 388). After the Defendant's arrest, Zhang appeared on many of the Himalaya Alliance live broadcasts. Allegedly,

attorney Zhang represents numerous Chinese political asylum seekers who also invested in the G-series. Allegedly, Zhang played a key role in screening witnesses for Mr. Guo's legal defense and allegedly, Zhang prevented some key witnesses who could exonerated Mr. Guo to testify on Mr. Guo's behalf, claimant like Tony in Second Circuit Case #26-361, allegedly.

Reason for subpoena: A material discrepancy exists regarding the return and custody of my VOG asset. It is a matter of record that numerous similarly situated investors who filed independent claims have already successfully recovered their capital. However, my fund remains unreturned and unaccounted for. A subpoena is necessary to compel a formal accounting from counsel to determine the current legal status, location, and custody of my [redacted] asset.

I respectfully direct this Court's attention to an egregious procedural and constitutional defect that invalidates the integrity of the underlying trial record. As set forth in Document 388, Attorney Zhang Yongbing was explicitly designated by prosecutors as an unindicted co-conspirator of the Defendant. Despite this formal designation, the Department of Justice failed to prevent this exact "co-conspirator" from participating in and screening the Defendant's potential legal defense witnesses.

This alarming contradiction introduces two fatal legal errors into the record:

a) Structural Infiltration of the Defense Camp and Incurable Conflict of Interest

   Under the Sixth Amendment, a criminal defendant is entitled to conflict-free counsel and a private, uncompromised defense strategy. By allowing an individual whom the Government officially considers a criminal co-conspirator (Attorney Zhang) to act as a gatekeeper for the Defendant's trial witnesses, the defense camp was structurally infiltrated.

   Zhang possessed an absolute, irreconcilable conflict of interest: as a named co-conspirator seeking to avoid his own indictment, his primary incentive was to protect himself and cooperate with the prosecution's narrative—not to assist in developing a robust defense or locating untainted investor capital.

b) Prosecutorial Exploitation of Witness Screening

The Government cannot have it both ways. Prosecutors cannot brand an attorney as a criminal co-conspirator in official court filings to destroy their credibility, while simultaneously allowing that attorney to control, vet, and filter the witnesses available to the defense. This arrangement effectively gave the prosecution a proxy inside the defense infrastructure, allowing an insulated co-conspirator to suppress or discourage critical testimony from independent investors who could have proven that the G-Series funds were legitimate and untainted.

The deployment of an unindicted co-conspirator to oversee or influence the screening of defense witnesses represents a profound subversion of the adversarial process. It suggests an orchestrated effort to control the narrative, sanitize the trial record, and deny the Defendant a fair trial. A full evidentiary inquiry into the scope of Attorney Zhang's interference with the defense witness pool is necessary.

4) **Ha-En (张东华)** and **Cosmos(俞淑恩)**, both were former Korean En-Dian Farm CEOs; **William Je** of ACA Capital; Xia Qidong (aka LongIsland brother, Changdao, 夏其東), former Himalaya Alliance Chairman, Mountain Spice Farm CEO; **Guo Shuai (郭帅· 草根小哥**, Chaogen Xiaoge), Himalaya Alliance leader

On [redacted]2020, I wired $[redacted] dollars to the Korean En-Dian Farm Loan Program. Ha-En said that CEO Cosmos who was sent by the Himalaya Alliance took the money. But on [redacted]/2022, Guo Suai (Chaogen Xiaoge), an Alliance leader made a public announcement alleging that team Cosmos had committed fraud and he was suing team Cosmos.

Reason for subpoena:

a) In Government Document 273, the DOJ prosecutors asserted that ACA Capital received $130 million in Farm Loan capital. ACA Capital is a distinct corporate entity with no legal, financial, or familial ties to the Defendant, the Defendant's family, or his family trust.

b) In Document 804, the Defendant stated that a number of independent Himalaya Alliance CEOs and others hold custody and possession of approximately $100 million in capital including the Farm Loan fund.

A subpoena is required to compel these individuals to testify under oath and produce financial records clarifying the true custody and ownership of the Farm Loan assets. I seek to expose a fundamental flaw in the prosecution's logic:

- The Tracing Failure: If $130 million of the Farm Loan capital is held by ACA Capital and or separate executives (Himalaya Alliance CEOs) and or others, the Government cannot meet its statutory burden to prove that these funds represent the Defendant's criminal proceed.
- The Manufactured "RICO Enterprise": By blindly pinning the independent financial actions of ACA Capital and the Alliance CEOs onto the Defendant, the DOJ prosecutors have manufactured a fictitious RICO asset pool. They have converted independent, third-party corporate capital including my own contributions into a centralized "criminal enterprise" without performing the mandatory line-item tracing required by Second Circuit case *United States v. Banco Cafetero Panama, 797 F.2d 1154 (2d Cir. 1986)*.

The Court cannot allow the Government to seize an entire corporate ecosystem under a RICO forfeiture order when the record proves the Defendant lacked ownership and control over $100 million dollars of the funds in question. Subpoenas must be issued to ACA Capital and the Himalaya Alliance leadership to compel a transparent accounting and halt this unconstitutional inflation of the forfeiture pool.

5) **Wang Xuebing (or Wang Xuebin, 王雪冰)**, CEO of the New Zealand Farm and Himalaya Alliance Chairman

The testimony of Wang Xuebing is vital to resolving a core dispute of fact in this forfeiture proceeding: whether the G-Series Farm Loan funds were the "alter ego" of the Defendant or whether they were entirely controlled, manipulated, and withheld by independent regional operators.

My specific transactional history provides prima facie evidence of independent third-party management and potential self-dealing:

a) The Capital Contributions: Between [redacted], 2020, and [redacted] 2022, I executed a series of wire transfers totaling [redacted] directly to the New Zealand Farm Loan program.

b) Procedural Irregularities: At the direction of Mr. Wang's direct subordinate (Wen Xiao), I was instructed to execute a blank Farm Loan contract, specifically was told to omit the date and the dollar amount, leaving only my signature (attached hereto as Exhibit). This highly irregular procedure ensured the contract was never properly executed or counter-signed by Wang Xuebing, leaving my fund entirely exposed.

c) Post-Arrest Unilateral Modification: The Defendant was arrested on March 15, 2023. Months later, on [redacted] 2023, while the Defendant was in federal custody and completely unable to attend any corporate entities events, Wang Xuebing executed a unilateral contract extension (attached hereto as Exhibit), arbitrarily extending the Farm Loan maturity term by an additional two years without my consent or knowledge.

The Government's forfeiture case relies on the theory that the Defendant maintained unfettered dominion and control over all incoming investors' funds. Mr. Wang's actions completely refute this:

- Independent Dominion: The fact that Wang Xuebing could unilaterally alter financial contracts and retain [redacted] of my capital *after* the Defendant's arrest conclusively proves that the Defendant did not possess or control these funds.

- Investigating Potential Conversion: I have a right under Fed. R. Crim. P. 32.2(c) to discover the current location and custody of my asset. Mr. Wang's deceptive practices strongly indicate an intent by local leadership to convert the Farm Loan program capital to their own personal use, entirely independent of any alleged conspiracy by the Defendant.

The Government cannot legally forfeit my [redacted] as property of the Defendant when an independent operator in New Zealand is actively altering

contracts and withholding the funds. A subpoena is strictly necessary to compel Wang Xuebing to account for the precise location of my capital and to expose the fatal defects in the Government's "alter ego" forfeiture narrative.

In conclusion, the current evidentiary record in this case is fundamentally flawed because it relies on the unvetted narratives of individuals who have a profound financial and legal interest in concealing the truth. As established in Document 388, individuals such as William Je, Xia Qidong, Wei Lihong (Sarah Wei), and Attorney Zhang Yongbing are designated co-conspirators of the Defendant.

Upon information and belief, Xia, Wei, and Zhang have entered into non-prosecution, cooperation, or immunity agreements with the DOJ. In exchange for accusing the Defendant of wrongdoing and supporting the Government's narrative, these individuals have been insulated from indictment.

The structural defect in the Government's forfeiture and criminal narrative rests on three critical realities:

a) The Insulated Parties are the True Custodians of the Assets

While the Government has systematically pinned 100% of the financial liability on the Defendant under an overbroad "alter ego" theory, the documentary evidence demonstrates that it is these unindicted co-conspirators who exercised autonomous control over, and actively withheld my capital, including the $[redacted] VOG investment handled by Sarah Wei and later by Zhang Yongbing.

b) Weaponized Coercion and Witness Bias

By granting immunity to the very operational leaders who managed the day-to-day transactions of the G-Series entities, the Government has incentivized these actors to mischaracterize legitimate third-party capital contributions as "fraud proceeds." This arrangement allowed these co-conspirators to deflect criminal culpability while simultaneously shielding themselves from accounting for the missing investor funds.

c) The Absolute Necessity for a Rule 32.2(c) Ancillary Hearing

My right to due process cannot be bypassed by an administrative agreement between prosecutors and self-interested co-conspirators. To determine the true "taint" and ultimate disposition of the seized property, these individuals must be formally summoned to court. I have a statutory right to subject these witnesses to rigorous cross-examination at a mandatory evidentiary hearing to uncover the location of her missing property and expose the manufactured nature of the forfeiture pool.

For the foregoing reasons, I respectfully request this Court to vacate the premature forfeiture determinations and remand this matter with instructions to issue the requested subpoenas and immediately convene a full ancillary proceeding.

**Preyor For Relief**

WHEREFORE, I respectfully request that this Court enter an Order granting the following relief:

1. Recognition of Statutory Title: Formally recognize my standing and property rights as a superior, bona fide owner under 21 U.S.C. § 853(n) regarding all documented capital contributions made to the G-Series entities;
2. Issuance of Subpoenas: Issue subpoenas *ad testificandum* and *duces tecum* pursuant to Federal Rule of Civil Procedure 45, compelling the appearance and production of records from the following material witnesses:
    - Luc Despins, Chapter 11 Trustee (Paul Hastings LLP)
    - Wei Lihong (Sarah Wei), former CEO of Arizona Phoenix Farm
    - Attorney Zhang Yongbing, legal representative for investor claims
    - Wang Xuebing, CEO of the New Zealand
    - Guo Shuai, Ha-En, and Cosmos leadership personnel
    - William Je, ACA Capital;
3. Conduct Evidentiary Hearing: Convene a full ancillary evidentiary hearing pursuant to Federal Rule of Criminal Procedure 32.2(c) to accurately determine the true, traceable dimensions of the forfeiture asset pool; and

4. Additional Equitable Relief: Grant such other and further relief as this Court deems just, proper, and necessary to protect Petitioner's procedural due process rights and prevent a constructive fraud upon the Court.

**Privacy / Sealing Request Under Fed. R. Crim. P. 49.1**

I respectfully request to file this motion in redacted public form (redacting name, address, email, phone, financial data and sealing my ID information such as name, address, DOB, ID# etc.).

**Declaration**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,
Dated, May 21, 2026
Anna [redacted]

**Certificate of Service**

I certify on May 21, 2026, submitted this filing to:
The Court's Pro Se Intake for docketing
via email ProSe@nysd.uscourts.gov
and
via US Mail:
Clerk of Court
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

US Attorney's Office SDNY:

- ryan.finkel@usdoj.gov (Ryan Finkel, Assistant US Attorney)
- justin.horton@usdoj.gov
- micah.fergenson@usdoj.gov

Defense counsel:

- msarafa@sarafalaw.com
- jdratel@dratellewis.com
- jkaley@doarlaw.com

**Attachments/Exhibits: Personal ID, Investment Proofs and Evidences**

**Respectfully submitted,**

Signature: [redacted]
Print: Name Anna [redacted]
Address: [redacted]
Telephone: [redacted]
Email: [redacted]

LIST OF THE ATTACHMENTS/EXHIBITS

1) MY ID
2) SUMMARY OF MY INVESTMENT
3) PROOF OF MY INVESTMENT – 19 PAGES
4) [redacted] FROZEN/[redacted] FRIEND [redacted] BANK
5) AGREEMENT WITH ATTORNEY ZHANG YONGBING TO GET [redacted] VOG REFUND
6) KOREA EN-DIAN FARM MATTERS
7) NEW ZEALAND FARM LOAN MATTERS


中华人民共和国外交部请各国军
政机关对持照人予以通行的便利和
要的协助。
The Ministry of Foreign Affairs of the People's Republic of China requests all civil and military authorities of foreign countries to allow the bearer of this passport to pass freely and afford assistance in case of need.
中华人民共和国
护照
PASSPORT
PEOPLE'S REPUBLIC OF CHINA
P
CHN
中国/CHINESE
公安部出入境管理局
MPS Exit & Entry Administration

| | DATE | FROM MY ACCOUNT | TO ACCOUNT (THROUGH 3RD PARTY/MIDDLE MAN) | AMOUNT | CURRENCY | IN USD | PURPOSE |
|---|---|---|---|---|---|---|---|
| 1 | [redacted] | AGRICULTURAL BANK OF CHINA; SELF, ACCT [redacted] | WELLS FARG[redacted] | [redacted] | USD | [redacted] | VOG |
| 2 | [redacted] | AGRICULTURAL BANK OF CHINA; SELF, ACCT [redacted] | WELLS FARGO, [redacted] | [redacted] | USD | [redacted] | VOG |
| | | | TOTAL VOG/REPRESENTED BY ATTORNEY ZHANG YONGBING | [redacted] | USD $ | [redacted] | |
| 3 | [redacted] | STANDARD CHARTER BANK,SELF, ACCT [redacted] | NONGHYUP BANK, [redacted] | [redacted] | USD | [redacted] | KOREA EN DIAN FARM LOAN |
| | | | TOTAL TO KOREAN EN DIAN FARM LOAN HA-EN/COSMOS | [redacted] | $ | [redacted] | |
| 4 | [redacted] | CHINA CONSTRUCTION BANK, SELF, ACCT [redacted] | CHINA[redacted] | [redacted] | YUAN | RATE @ 1.7 | NEW ZEALAND FARM LOAN |
| 5 | [redacted] | CHINA CONSTRUCTION BANK; SELF; ACCT [redacted] | CHINA[redacted] | [redacted] | YUAN | RATE @ 1.7 | NEW ZEALAND FARM LOAN |
| 6 | [redacted] | CHINA CONSTRUCTION BANK; SELF; ACCT [redacted] | BANK[redacted] | [redacted] | YUAN | RATE @ 1:7 | NEW ZEALAND FARM LOAN |
| 7 | [redacted] | CHINA CONSTRUCTION BANK; SELF; ACCT [redacted] | CHINA[redacted] | [redacted] | YUAN | RATE @ 1:7 | NEW ZEALAND FARM LOAN |
| 8 | [redacted] | CHINA CONSTRUCTION BANK; SELF; ACCT [redacted] | CHINA [redacted] | [redacted] | YUAN | RATE @ 1:7 | NEW ZEALAND FARM LOAN/ALD |
| 9 | [redacted] | AGRICULTURAL BANK OF CHINA; SELF; ACCT [redacted] | CHINA [redacted] | [redacted] | YUAN | RATE @ 1:7 | NEW ZEALAND FARM LOAN/ALD |
| | | | TOTAL TO NEW ZEALAND FARM LOAN WANG XUEBING | [redacted] | YUAN $ | [redacted] | |
| 10 | [redacted] | CHINA CONSTRUCTION BANK, SELF, ACC[redacted] | BANK[redacted] | [redacted] | YUAN | | |
| 11 | [redacted] | CHINA CONSTRUCTION BANK, SELF; ACCT[redacted] | CHINA [redacted] | [redacted] | YUAN | | |
| | [redacted] | [redacted]N [redacted] CONVERTED T[redacted] | | | YUAN | [redacted] | GCLUB #[illegible] |
| 12 | [redacted] | CHINA CONSTRUCTION BAN[redacted] | BANK OF[redacted] | [redacted] | YUAN | [redacted] | GCLUB #[illegible] |
| 13 | [redacted] | AGRICULTURAL BANK OF CHINA; SELF, [redacted] | BANK OF[redacted] | [redacted] | YUAN | | |
| 14 | [redacted] | CHINA CONSTRUCTION BANK; SEL[redacted] | BANK OF [redacted] | [redacted] | YUAN | | |
| | [redacted] | [redacted]UAN[redacted] | | | YUAN | [redacted] | GCLUB #[illegible] |
| | | | TOTAL TO GCLUB | [redacted] | YUAN $ | [redacted] | |
| 15 | 2/28/2023 | AGRICULTURAL BANK OF CHINA [redacted] | BANK O[redacted] | [redacted] | YUAN | [redacted] | H-DOLLAR, USED TO PURCHASE H-COIN |
| | | | TOTAL TO H-DOLLAR/USED TO BUY H-COIN ALLOTMENT @$0.1 EACH | [redacted] | YUAN $ | [redacted] | |
| | | | GRAND TOTAL FOR ALL INVESTMENT | | | [redacted] | |


中国电信
汇款详情
汇款账户 [redacted]
外币子账户 美元现汇
手续费 0.00美元(手续费)
0.00美元(电报费)
实际支出金额 [redacted]美元
汇款状态 受理成功
收款方名称 [redacted]
收款账户 [redacted]
SWIFT/BIC [redacted]
收款银行名称 WELLS FARGO BANK, N.A.

AGRICULTURAL BANK OF CHINA

超级柜台客户回执

交易类型:汇出汇款
受理终端:[redacted]
发汇账号:[redacted]
客户姓名:[redacted]
交易结果:交易成功
购汇金额:
成交汇率:
收款方账号:[redacted]
收款方姓名:LIHONG WEI
汇款金额:[redacted]
汇款币种:美元
费用承担方式:共同承担
手续费:[redacted]
邮电费:[redacted]
附言:
受理日期/时间:[redacted]

国农业银行股份有限公


[redacted]
易所需的短信验证码为[redacted]，
转入账户尾号[redacted]收款[redacted]
**的,金额[redacted]USD。切勿
将验证码告知他人！请警惕电信
诈骗，切勿向陌生人转账汇款。
EMUI已防止第三方应用恶意读取和使用
验证码，切勿泄露他人。
复制验证码
3分钟前
【[redacted]】尊敬的客户，您
本次海外电汇申请（序列号
[redacted]）已提交
处理。
2分钟前
【[redacted]】尊敬的客户，您
本次海外电汇交易（序列号
[redacted]已成
功。
2分钟前
【[redacted]】您尾号为[redacted]的

客户姓名 Customer Name: [redacted]

客户邮寄地址 Customer Mailing Address: [redacted]

账户号码 Account Number: [redacted]

交易区间 Transaction Period: [redacted]

S[redacted]个人活期账户交易明细

[redacted] Individual Account Transaction D

| 记账日期 Posting Date | 交易日期 Transaction Date | 收入/支出 Income/Expense | 金额 Amount | 余额 Balance | 交易名称 Transaction Name | |
|---|---|---|---|---|---|---|
| 2020[redacted] | [redacted] | 收入 | [redacted] | [redacted] | [redacted] | [redacted] |
| 2020[redacted] | [redacted] | 支出 | [redacted] | [redacted] | [redacted] | [redacted] |
| 2020[redacted] | [redacted] | 收入 | [redacted] | [redacted] | [redacted] | [redacted] |
| 2020[redacted] | [redacted] | 收入 | [redacted] | [redacted] | [redacted] | [redacted] |
| 2020[redacted] | [redacted] | 支出 | [redacted] | [redacted] | [redacted] | [redacted] |
| 2020[redacted] | [redacted] | 收入 | [redacted] | [redacted] | 利息 | [redacted] |
| 2020[redacted] | [redacted] | 支出 | [illegible] | [redacted] | 现金提款 | [redacted] |
| 2020[redacted] | [redacted] | 支出 | [redacted] | [redacted] | 转账 | [redacted] |

END

[illegible]

将702，721，373韩币，칠억이백칠십이만일천삼백칠십삼원

韩币交予联盟委托收款人：

1. 张丽（温暖姐姐）

2. 成先铭（西瞬鲜）

3. 王璟皓（至暗时刻）

地点：서울시 도림동216-2

查验并交付完成

2021.04.05

委托人签字　　付款人签字　　收款人签字

1.　　1. [illegible]

2. [illegible]　　2. [illegible]

3. 王璟皓

你[redacted]了 [redacted]

[redacted]



跨行转出

¥-[redacted]

| | |
|---|---|
| 交易账户 | 建设银行[redacted] |
| 交易时间 | [redacted] |
| 交易地点/附言 | 跨行转出 |
| 对方账户 | [redacted] |
| 记账日 | [redacted] |
| 账户余额 | [redacted] |

跨行转出

¥-[redacted]

| | |
|---|---|
| 交易账户 | [redacted] |
| 交易时间 | [redacted] |
| 交易地点/附言 | 跨行转出 |
| 对方账户 | [redacted] |
| 记账日 | [redacted] |

# 跨行转出

¥[redacted].00

| | |
|---|---|
| 交易账户 | [redacted] |
| 交易时间 | [redacted] |
| 交易地点/附言 | 跨行转出 |
| 对方账户 | [redacted] |
| 记账日 | [redacted] |
| 账户余额 | [redacted] |

明细详情

跨行转出

¥-[redacted]

| | |
|---|---|
| 交易账户 | [redacted] |
| 交易时间 | [redacted] |
| 交易地点/附言 | 跨行转出 |
| 对方账户 | *[redacted] |
| 记账日 | [redacted] |

| | |
|---|---|
| 交易类型 | 向他行账户转账 |
| 交易渠道 | 手机银行 |
| 转账金额 | [redacted] |
| 大写金额 | [redacted] |
| 凭证号 | [redacted] |

收款方

| | |
|---|---|
| 户名 | [redacted] |
| 账号 | [redacted] |
| 收款银行 | [redacted] |

付款方

| | |
|---|---|
| 户名 | [redacted] |
| 账号 | [redacted] |

[redacted]
电子回单
专 用 章

# 通知收款人

[redacted]

¥ [redacted]

| | |
|---|---|
| 付款人 | [redacted] |
| 付款账户 | [redacted] |
| 收款人 | [redacted] |
| 收款账户 | [redacted] |
| 收款银行 | [redacted] |
| 转账金额 | [redacted] |



中国农业银行

业务凭证

[redacted]

# 跨行转出

¥[redacted]

| | |
|---|---|
| 交易账户 | 建设银行[redacted] |
| 交易时间 | [redacted] |
| 交易地点/附言 | [redacted] |
| 对方账户 | [redacted] |
| 记账日 | [redacted] |

# 跨行转出

¥-[redacted]

| | |
|---|---|
| 交易账户 | [redacted] |
| 交易时间 | [redacted] |
| 交易地点/附言 | [redacted] |
| 对方账户 | [redacted] |
| 记账日 | [redacted] |
| 账户余额 | [redacted] |

回单详情

| | |
|---|---|
| 交易时间 | [redacted] |
| 交易类型 | 向他行账户转账 |
| 交易渠道 | 手机银行 |
| 转账金额 | [redacted] |
| 大写金额 | [redacted] |
| 凭证号 | [redacted] |

收款方

| | |
|---|---|
| 户名 | [redacted] |
| 账号 | [redacted] |
| 收款银行 | [redacted] |

付款方 [redacted]


通知收款人
[redacted]
付款人 [redacted]
付款账户 [redacted]
收款人 [redacted]
收款账户 [redacted]
收款银行 [redacted]
转账金额 [redacted]
交易时间 [redacted]

# 跨行转出

¥-[redacted]

交易账户 [redacted]

交易时间 [redacted]

交易地点/附言 [redacted]

对方账户 [redacted]

记账日 [redacted]

账户余额 [redacted]

| | |
|---|---|
| 付款人 | [redacted] |
| 付款账户 | [redacted] |
| 收款人 | [redacted] |
| 收款账户 | [redacted] |
| 收款银行 | [redacted] |
| 转账金额 | [redacted] |




中国农业银行
业务凭证

上海商業儲蓄銀行國際金融業務分行
THE SHANGHAI COMMERCIAL & SAVINGS BANK, LTD OBU BRANCH
外匯活期存款取款憑條暨匯出匯款申請書
CURRENT ACCOUNT WITHDRAW SLIP AND APPLICATION FOR OUTWARD REMITTANCE

日期 Date: [redacted]

(1) 銀行存執 Bank's Copy

D[redacted]
茲聲明本戶並非境內個人、法人或政府機關，就請惠依下列指示匯款，並自下述帳戶支取扣付匯款金額及費用。I/We declare that I/We am/are not a local individual, corporate body or government institution. In payment of the remittance and charges below, you are authorized to debit my/our A/C No.2710800[redacted]

扣款金額(幣別/大寫) debit amount(in characters): [redacted]

[redacted]

[redacted] (in figures)
(本金額☐已內含手續費☐未含手續費，授權貴行自上開帳戶支取)
(service charges included/excluded)

存款人簽章 Signature(s) Chops of Applicant
請蓋原留存取款印鑑

| | |
|---|---|
| 匯款人 Name in English [redacted] | 匯出編號 Reference [redacted] |
| 地址 Address [redacted] | 匯款方式 Remittance Method<br>☐電匯 Swift/Telex ☐轉帳 A/C transfer<br>☐票匯 Demand Draft |
| 電話 Tel: [redacted] | 匯率 Exchange Rate |
| 收款人 Beneficiary [redacted] | 手續費 Service Charges |
| 地址 Address [redacted] | 匯款金額 Remittance Amount [redacted] |
| 電話 Tel: | 代理銀行費用自匯款金額中扣除 Correspondent's charges will be deducted [redacted] |
| 帳號 A/C No. [redacted] | 匯款性質 Nature of remittance<br>(1)進口貨款 Import Proceeds<br>☐已進口 Imported ☐未進口 Not yet Imported<br>(2)其他 Others: |
| 收款銀行 A/C with Bank [redacted] | 銀行專用 For Bank Use Only |
| 銀行代號 Bank code [redacted] | 經辦 核對 主管 |
| 地址 Address | |
| 備註 Remarks [redacted] | |

[illegible] I/We agree to comply with the Offshore Banking Act ... that local individual, corporate body and government institution are prohibited from remitting or withdrawing foreign currencies from their OBU accounts.

[redacted]

今天美元[redacted]率是

[redacted]

元+滙款手續[redacted]

共[redacted]。

今天人民币[redacted]

一共需要[redacted]

[redacted]，差额尚[redacted]

元。[redacted]

[redacted]

款项最慢后天会到，您到时确认一下。

[redacted]

[redacted]


中国移动
[redacted]
[redacted]
[redacted]
[redacted]
[redacted]
目前二审，主要是针对刑期和
罚款金额两个部分，金额问题
不大，最主要刑期减轻是关键，

Privileged and Confidential

# Service Agreement

1. **Engagement**

[redacted] Client), agree to sign the legal service agreement with Law Offices of Yongbing Zhang (ZYB & Associates LLC, or "The Firm") for [redacted] asset distribution from the Fair Fund administrator. The Firm will provide the [redacted]

2. **Services.**

   a. filing claim form with supporting documents on my behalf with GTV Media Group Fair Fund [redacted]

   b. [redacted] to secure the distribution of my proportional investment fund for GTV media group from GTV Fair Fund ("the Fair Fund") created by the United States Securities and Exchanges Commission (SEC) under the File Number of 3-20537;

   c. depositing the secured distribution from the Fair Fund to the Firm's client trust account (trust account), if the Firm's efforts result in successful and favorable distribution for me;

   d. maintaining the secured distribution in the client trust account of the Firm until my authorization to withdraw it out of the trust account.

3. **Excluded Services.**

The Firm is not hired to:

1) litigate against any parties regarding your right in GTV Stock or Digital Assets; 2) increase the value of your recovered investment through making investment in the market or making loans to other parties, which are beyond our expertise; and 3) other unrelated matters to the Engagement.

4. **Legal Fees and payment.**

I agree to the attorney fee at 1% of the requested distribution refund sought by me, which is

$[redacted] at this time, but is subject to change in the course of representation.

5. **Governing Law and Dispute Resolution**

This agreement is governed by the law of State of Illinois of the United States. By entering this agreement, I give the United States federal or state courts in Cook County of Illinois the exclusive jurisdiction to resolve the disputes out of the agreement.

AGREED by:

[redacted]

[redacted]
Date

AGREED by:
Yongbing Zhang on behalf of ZYB & Associates LLC

*Yongbing Zhang*

Signature

[redacted]




[redacted]

← 99 # 联盟公告 ›

自从 12:49 以来有 89 条新消息 ×

April 10, 2022

**草根小哥** 2022/4/10, 09:23

尊敬的各位战友大家好:

请所有与原韩国天池农场有过经济往来并被cosmos团伙（涉案人员包括：cosmos、温暖姐姐、华仔#8065、熵➕#6311、瑞沃路森）诈骗钱款、数字货币等资产的战友自愿填写以下信息，并且上传陈述书与委任状给律师，律师会根据您的证据向cosmos诈骗团伙发起诉讼追讨被诈骗的钱款

希望被骗的战友们尽快配合提交，我们会督促韩国法律团队尽快将诈骗团伙绳之以法，归还大家被骗的资产

https://forms.gle/amjS25FEDRk8pSjVA

如需更进一步咨询请联系韩国农场的负责人朴昌海先生

Case: 26-1626, 06/12/2026, DktEntry: 8.1, Page 53 of 61



# BORROWERS NOTICE OF LOAN EXTENSION PURSUANT TO AGREEMENT OF AUGUST 1, 2020

TO: LENDER

[redacted]

LENDER'S Email: [redacted]

FROM, BORROWER
Vogmz2020 Limited
154A Long Dr., St Heliers, Auckland, New Zealand 1740

Dear Lender:

Pursuant to the terms of our loan agreement dated August 11, 2020, at Parag 1(f) thereon, I submit to you that "notice to extend the final maturity date" of the loan another 24 months.

Thank you for your attention to this matter.

Date: August 9, 2023

Borrower: Vogmz2020 Limited

Name (Print)

____Xuebing Wang________

Title:

____Director_____________

Signature ____________________

Exhibit B

5/22/26 Mailed
the District Court



Exhibit B

Emailed

From: Pro Se Filing <pro_se_filing@nysd.uscourts.gov>
Date: On Friday, May 22nd, 2026 at 12:04 PM
Subject: IMPORTANT INFORMATION, PLEASE REVIEW
To: [redacted]

IMPORTANT INFORMATION, PLEASE REVIEW

Your email has been received by the Pro Se Intake Unit of the United States District Court for the Southern District of New York. (This is not the United States Bankruptcy Court.)

Documents from pro se litigants that meet the required standards for electronic filing will be filed and will appear on the ECF docket within two business days of receipt (see required standards below). If you send your document by email and it is accepted for filing, you should not deliver a hard copy version to the court.

Requirements for Filing a New Action by Email:

- Documents must be attached to the email in PDF format, no larger than 15 megabytes;
- The complaint must be signed by the filing party;
  - Fee requirements and instructions:
  - **Please note that your complaint will not be reviewed until the court receives payment of the filing fees.**
- Payment must be made within 30 days of the date your case is assigned a docket number. If mailing payment, please send a certified check, bank check, or money order to: **Cashiers Room 260, 500 Pearl Street, New York, NY 10007.**
- Your payment must include the docket number, which you can learn by calling (212) 805-0175.
- If you have not consented to e-service, your docket number will also be mailed to you, at the address provided on the complaint, in a form order that will include payment instructions. If you do not make payment within 30 days of the date a docket number is assigned to your case, the action will be dismissed without prejudice.
- If you cannot pay the filing fees and want to request that the court waive the filing fees, you must email an application to proceed *in forma pauperis*.

Filing Documents in an Existing Case by Email:

- Documents must be attached to the email in PDF format, no larger than 10 megabytes;
- The email and attached document must contain the docket number, filer's name, address, and telephone number;
- Documents must be signed by the filing party;
- Any additional comments, questions, or other messages in the email will be disregarded;
- Any additional correspondence included in the email will be disregarded.

For any submission, if your document does not appear on the ECF docket within two business days, it has not met the required standards for electronic filing. If so, you must submit your document to the court in paper form by (a) sending your document by mail, or overnight delivery service, to the appropriate courthouse listed below; or (b) delivering your document in-person to the appropriate courthouse listed below between the hours of 9:30 AM to 1:30 PM; or (c) depositing your document after hours in the court's night depository box at the 500 Pearl Street, NY, NY courthouse.

United States Courthouse
Pro Se Intake Unit
500 Pearl Street
New York, NY 10007

Exhibit C

# Anna ([redacted]) DOCKETING STATUS case #1-23-cr-118(AT)

From [redacted]
To ProSe@nysd.uscourts.gov
Date Friday, May 29th, 2026 at 5:18 AM

Dear Hon. Judge Torres,

I would like to know the docketing status on my May 22, 2026 filing - if there is a requirement that has not been met for the filing to be docketed, please advise.

Thank you.

Regards.

Anna [redacted]
G-series Investor
China

------- Forwarded Message -------
From: [redacted]
Date: On Friday, May 22nd, 2026 at 12:09 PM
Subject: Fw: IMPORTANT INFORMATION, PLEASE REVIEW
To [redacted]

> ------- Forwarded Message -------
> From: Pro Se Filing <pro_se_filing@nysd.uscourts.gov>
> Date: On Friday, May 22nd, 2026 at 12:04 PM
> Subject: IMPORTANT INFORMATION, PLEASE REVIEW
> To: [redacted]
>
> > IMPORTANT INFORMATION, PLEASE REVIEW
> >
> > Your email has been received by the Pro Se Intake Unit of the United States District Court for the Southern District of New York. (This is not the United States Bankruptcy Court.)
> >
> > Documents from pro se litigants that meet the required standards for electronic filing will be filed and will appear on the ECF docket within two business days of receipt (see required standards below). If you send your document by email and it is accepted for filing, you should not deliver a hard copy version to the court.

Exhibit D

# IMPORTANT INFORMATION, PLEASE REVIEW

From Pro Se Filing <pro_se_filing@nysd.uscourts.gov>

To [redacted]

Date Tuesday, June 2nd, 2026 at 9:59 PM

IMPORTANT INFORMATION, PLEASE REVIEW

Your email has been received by the Pro Se Intake Unit of the United States District Court for the Southern District of New York. (This is not the United States Bankruptcy Court.)

Documents from pro se litigants that meet the required standards for electronic filing will be filed and will appear on the ECF docket within two business days of receipt (see required standards below). If you send your document by email and it is accepted for filing, you should not deliver a hard copy version to the court.

Requirements for Filing a New Action by Email:

- Documents must be attached to the email in PDF format, no larger than 15 megabytes;
- The complaint must be signed by the filing party;
  - Fee requirements and instructions:
  - **Please note that your complaint will not be reviewed until the court receives payment of the filing fees.**
- Payment must be made within 30 days of the date your case is assigned a docket number. If mailing payment, please send a certified check, bank check, or money order to: **Cashiers Room 260, 500 Pearl Street, New York, NY 10007.**
- Your payment must include the docket number, which you can learn by calling (212) 805-0175.
- If you have not consented to e-service, your docket number will also be mailed to you, at the address provided on the complaint, in a form order that will include payment instructions. If you do not make payment within 30 days of the date a docket number is assigned to your case, the action will be dismissed without prejudice.
- If you cannot pay the filing fees and want to request that the court waive the filing fees, you must email an application to proceed *in forma pauperis*.

Filing Documents in an Existing Case by Email:

Exhibit E

# IMPORTANT INFORMATION, PLEASE REVIEW

From Pro Se Filing <pro_se_filing@nysd.uscourts.gov>

To [redacted]

Date Friday, June 5th, 2026 at 5:18 AM

IMPORTANT INFORMATION, PLEASE REVIEW

Your email has been received by the Pro Se Intake Unit of the United States District Court for the Southern District of New York. (This is not the United States Bankruptcy Court.)

Documents from pro se litigants that meet the required standards for electronic filing will be filed and will appear on the ECF docket within two business days of receipt (see required standards below). If you send your document by email and it is accepted for filing, you should not deliver a hard copy version to the court.

Requirements for Filing a New Action by Email:

- Documents must be attached to the email in PDF format, no larger than 15 megabytes;
- The complaint must be signed by the filing party;
  - Fee requirements and instructions:
  - **Please note that your complaint will not be reviewed until the court receives payment of the filing fees.**
- Payment must be made within 30 days of the date your case is assigned a docket number. If mailing payment, please send a certified check, bank check, or money order to: **Cashiers Room 260, 500 Pearl Street, New York, NY 10007.**
- Your payment must include the docket number, which you can learn by calling (212) 805-0175.
- If you have not consented to e-service, your docket number will also be mailed to you, at the address provided on the complaint, in a form order that will include payment instructions. If you do not make payment within 30 days of the date a docket number is assigned to your case, the action will be dismissed without prejudice.
- If you cannot pay the filing fees and want to request that the court waive the filing fees, you must email an application to proceed *in forma pauperis*.

Filing Documents in an Existing Case by Email:

Respectfully submitted

The undersigned, Anna [redacted], declares under penalty of perjury the foregoing is true and correct to the best of Petitioner's knowledge and belief.

Signature: [redacted]

Court of Appeals
For The Second Circuit
RECEIVED
JUN 12 2026
BY: -------

## Certificate of Service

Petitioner certifies that on June 9th, 2026, Petitioner submitted this Writ of Mandamus filing to the following parties:

Via USPS:
The Hon. Analisa Torres, SDNY District Court
500 Pearl Street, New York, NY 10007 -1312

Nathan Rehn
United States Attorney's Office for the SDNY
26 Federal Plaza, 37th Floor
New York, NY 10278

Via email only:
Counsels for the Defendant

- msarafa@sarafalaw.com
- jdratel@dratellewis.com
- jkaley@doarlaw.com

Signature: [redacted]

SERVICE® | MAIL

…s apply).*
…ernational destinations.

POSTAGE PAID [redacted]

10007

…DC 03 1 Lb 6.50 Oz

…FIRMLY TO SEAL

…ELOPE
…RNATIONAL USE

USPS

FROM [redacted]

EXPECTED DELIVERY DAY: 06/12/26

USPS TRACKING® #

[redacted]

…kage Pickup,
…code.

TO:

Clerk of Court
US Court of Appeal
2nd Circuit
40 Foley Square
New York, NY 10007

…INSURED